**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

GOVERNMENT OF THE UNITED
STATES VIRGIN ISLANDS,                              No. 22-cv-10904-JSR

                Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

                Defendant.

_____

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................2

ARGUMENT ...........................................................................................................................4

I.     The TVPA Claim (Count I) Should Be Dismissed .............................................................4

        A.     Section 1595(d) Does Not Apply Retroactively .....................................................4

        B.     USVI Lacks Standing Under §1595(d) ...................................................................5

        C.     The Complaint Does Not State A Claim For A Violation Of §1591(a) ..................7

                1.     The Complaint does not plausibly allege that JPMC participated in a commercial sex trafficking venture ...............................................................7

                2.     The Complaint does not plausibly allege that JPMC knew that force, fraud, or coercion would be used ............................................................10

                3.     The Complaint does not plausibly allege that JPMC knew any benefit it received arose from any sex-trafficking venture involving Epstein ....................................................................................................13

II.    USVI's Territorial-Law Claims (Counts II-IV) Are Impermissibly Extraterritorial And Fail To State A Claim ..............................................................................................14

        A.     USVI's Territorial-Law Claims (Counts II-IV) Are Impermissibly Extraterritorial ...................................................................................................15

        B.     The Complaint Does Not Plead CICO Claims (Counts II and III) .......................16

                1.     USVI fails to plead the elements of a CICO claim ....................................17

                        a)     USVI fails to allege JPMC was associated with a CICO enterprise .............................................................................17

                      b)     JPMC did not conduct or participate in the affairs of the alleged "Epstein Enterprise" .............................................18

                      c)     USVI fails to allege a pattern of criminal activity ........................19

                2.     USVI fails to allege predicate criminal activity ........................................20

        C.     USVI Lacks Standing to Pursue A CICO Claim Predicated on BSA Violations (Count III) ............................................................................................23

        D.     The Complaint Does Not Plead a Consumer Protection Claim (Count IV) ..........25

CONCLUSION .......................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari v. Kellogg Brown & Root, Inc.*,
   845 F.3d 184 (5th Cir. 2017) ...................................................................5

*Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*,
   458 U.S. 592 (1982)........................................................................5, 7

*American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*,
   221 F.3d 1211 (11th Cir. 2000) .......................................................15, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................2

*Beauchamp v. City of New York*,
   3 A.D. 3d 465 (N.Y. App. Div. 2004) ....................................................16

*Canosa v. Ziff*,
   2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ....................................9, 13, 14

*Charleswell v. Chase Manhattan Bank, N.A.*,
   308 F. Supp. 2d 545 (D.V.I. 2004) .......................................................17

*Chemtex, LLC v. St. Anthony Enterprises, Inc.*,
   490 F. Supp. 2d 536 (S.D.N.Y. 2007)....................................................13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)....................................................................23, 24

*D'Addario v. D'Addario*,
   901 F.3d 80 (2d Cir. 2018)................................................................19

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ............................................................13

*Doe v. Alsaud*,
   12 F. Supp. 3d 674 (S.D.N.Y. 2014)......................................................18

*E.S. v. Best Western Int'l, Inc.*,
   510 F. Supp. 3d 420 (N.D. Tex. 2021) ...................................................10

*G.G. v. Salesforce.com, Inc.*,
   2022 WL 1541408 (N.D. Ill. May 16, 2022) ..............................................9

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...........................................................................8, 13

*H.H. v. G6 Hospitality, LLC*,
    2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) .......................................................................10

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ..............................................................................................................16

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
    520 U.S. 939 (1996) ................................................................................................................5

*In re Agape Litigation*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ...................................................................................12

*Jingyu Chen v. Yong Zhao Cai*,
    2022 WL 917575 (S.D.N.Y. Mar. 28, 2022) ........................................................................18

*Lawson v. Rubin*,
    2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ..............................................................8, 9, 12

*Martinez v. Colombian Emeralds, Inc.*,
    51 V.I. 174 (2009) .................................................................................................................15

*Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
    619 F. Supp. 727 (S.D.N.Y. 1985) .......................................................................................15

*Missouri ex rel. Koster v. Harris*,
    847 F.3d 646 (9th Cir. 2017) ..................................................................................................5

*New York by Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir. 1987) .................................................................................................6

*New York ex rel. Spitzer v. Cain*,
    418 F. Supp. 2d 457 (S.D.N.Y. 2006) ................................................................................5, 6

*New York v. Facebook, Inc.*,
    549 F. Supp. 3d 6 (D.D.C. 2021) .......................................................................................6, 7

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................................7, 8

*Pearson v. Northeast Airlines, Inc.*,
    309 F.2d 553 (2d Cir. 1962) .............................................................................................15, 16

*People v. McKenzie*,
    66 V.I. 3 (Super. Ct. 2017) ...............................................................................................17, 19

*Purdue Pharma L.P. v. Kentucky*,
 704 F.3d 208 (2d Cir. 2013)........................................................................6

*Ratzlaf v. United States*,
 510 U.S. 135 (1994)............................................................................21, 23

*Ricchio v. McLean*,
 853 F.3d 553 (1st Cir. 2017)....................................................................10

*Rosner v. Bank of China*,
 528 F. Supp. 2d 419 (S.D.N.Y. 2007)......................................................19

*S.J. v. Choice Hotels Int'l, Inc.*,
 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................10, 11, 12

*Simon v. Eastern Kentucky Welfare Rights Organization*,
 426 U.S. 26 (1976)....................................................................................23

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)..................................................................................23

*U.S. ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*,
 318 F. Supp. 3d 680 (S.D.N.Y. 2018) (Rakoff, J.) ..................................11

*USVI v. Adams*,
 2010 WL 7371482 (V.I. Super. Ct. Nov. 12, 2010) ................................18

*USVI v. Takata Corp.*,
 67 V.I. 316 (Super. Ct. 2017)...................................................................17

*Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*,
 2019 WL 2327810 (S.D.N.Y. May 30, 2019) ..........................................19

*Velez v. Sanchez*,
 693 F.3d 308 (2d Cir. 2012)........................................................................5

*Xiangyuan Zhu v. First Atlantic Bank*,
 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) ..........................................19

*Zamora v. FIT Int'l Group Co.*,
 834 F. App'x 622 (2d Cir. 2020) ..............................................................18

**Statutes & Codes**

18 U.S.C.
 §1591(a)(2) .......................................................................................7, 10, 11
 §1591(e)(4) ......................................................................................................7
 §1595(d).................................................................................................4, 5, 6

31 U.S.C.
§5318(g)-(i) ...................................................................................................20
§5322(a) ........................................................................................................20

1 V.I.C. §2 .............................................................................................................15

5 V.I.C.
§31(3(B) ........................................................................................................25
§3541 ............................................................................................................20

12A V.I.C. §336 ....................................................................................................25

14 V.I.C.
§604(h) ..........................................................................................................17
§604(j) ...........................................................................................................19
§604(j)(2)(B) ...........................................................................................19, 20
§605(a) ..............................................................................................16, 17, 18
§607 ...............................................................................................................24
§607(h) ..........................................................................................................20

Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L.
115-164, 132 Stat. 1253 (2018) .......................................................................4

Trafficking Victims Protection Act, 18 U.S.C. §§1591-1595 ...............................4

**Regulations**

31 C.F.R. §1010.620 .......................................................................................20, 22

31 C.F.R. §1010.620(a) ........................................................................................22

31 C.F.R. §1020.320 ............................................................................................20

31 C.F.R. §1020.320(b)(2) ...................................................................................23

**Other Authorities**

FFIEC, *Answers to Frequently Asked Questions Regarding Suspicious Activity
Reporting and Other Anti-Money Laundering Considerations*, Fin. Crimes
Enf. Network (Jan. 19, 2021) .....................................................................21, 23

FFIEC, Bank Secrecy Act/Anti-Money Laundering Examination Manual:
Suspicious Activity Reports - Overview (Feb. 27, 2015) ....................................23

## PRELIMINARY STATEMENT

Having sought and obtained more than $100 million from Jeffrey Epstein's estate and businesses for damages caused by his sex-trafficking crimes, the United States Virgin Islands (USVI) now casts farther afield for deeper pockets. But this suit involves neither Epstein's estate, nor his businesses, nor his victims. Rather, USVI's lawsuit against JPMorgan Chase Bank, N.A. (JPMC), which terminated its banking relationship with Epstein ten years ago, involves none of the right parties, is legally meritless, and should be dismissed.

USVI's lawsuit is a masterclass in deflection that seeks to hold JPMC responsible for not sleuthing out Epstein's crimes over a decade ago. Yet USVI had access at the time to the same information, allegations, and rumors about Epstein on which it alleges JPMC should have acted. Indeed, as a law-enforcement agency, USVI had access to much more, along with the investigative advantage of physical proximity to Epstein's crimes. USVI did nothing to stop Epstein during this period, notwithstanding the fact that he registered with the USVI as a Tier 1 sex offender. To the contrary, during the same period, USVI granted Epstein and his businesses lucrative privileges and massive tax incentives. Nonetheless, USVI's suit proceeds on the untenable theory that JPMC was a participant in an Epstein sex-trafficking venture and was somehow uniquely situated to bring it to a halt.

All of USVI's claims fail. USVI's parens patriae claim under the Trafficking Victims Protection Act (TVPA) fails because the attorney general provision does not apply retroactively, USVI lacks injury to any quasi-sovereign interest to support standing, and USVI fails to allege that JPMC knowingly benefited from or participated in a sex-trafficking venture. USVI's territorial law racketeering and unfair competition claims fail because USVI law does not apply to JPMC's alleged conduct in New York, and both claims are also insufficiently pled and time-barred. USVI's racketeering claims also fail because USVI lacks standing to bring a claim predicated on a federal

1

banking law violation.  Indeed, USVI's allegations that JPMC acted with the requisite willfulness to criminally violate federal banking law strain credulity—and are undermined by the USVI's own allegations that JPMC in fact ███████████████████████████████████

████████████  First Am. Compl. (FAC) ¶ 75.  The Amended Complaint should be dismissed.

<h3 align="center">BACKGROUND[1]</h3>

USVI has already pursued Epstein's estate and other Epstein-related entities for damages resulting from his crimes in the Virgin Islands.  *See* FAC ¶¶ 3, 23.  USVI settled that action in November 2022, and received $105 million plus half of the proceeds from the sale of Epstein's island.  USVI then filed this action against JPMC, where Epstein banked prior to JPMC's decision to terminate the banking relationship in 2013, roughly six years before his 2019 arrest on federal sex-trafficking charges.  *See id.* ¶¶ 32, 41, 50, 63.  USVI alleges that Epstein's use of JPMC's banking services prior to 2013 furthered his sex trafficking, and JPMC's alleged failure to detect that use at the time violated the TVPA and USVI's consumer protection and racketeering laws.

Prior to his arrest in 2019, Epstein and his associates "trafficked underage girls to the Virgin Islands, held them captive, and sexually abused them."  FAC ¶ 23.  During this same period, USVI itself granted Epstein lucrative privileges.   The Virgin Islands Economic Development Commission (EDC) granted one of Epstein's companies, the Southern Trust Company (STC), massive tax exemptions and other economic incentives from February 1, 2013 through January 31, 2023, purportedly for consulting services, *id.* ¶ 25—even though STC was instead allegedly funding Epstein's sex trafficking, *id.* ¶ 26.  Despite the fact that Epstein was a registered Tier 1

---

[1] For purposes of this motion only, JPMC accepts the Complaint's factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

sex offender in the Virgin Islands, *id.* ¶¶ 20-22, it is not clear what, if any, diligence the EDC conducted into STC or Epstein before granting these privileges.

USVI now alleges that JPMC failed to fulfill an unspecified duty to detect and report Epstein's sex trafficking. Between 1998 and 2013, USVI alleges that Epstein used JPMC accounts to make wire transfers and withdraw cash to further a sex-trafficking venture. FAC ¶¶ 6, 24, 30-31, 42, 66-68. In permitting Epstein to make large withdrawals and transfers common to high net-worth accounts, JPMC allegedly "knowingly and intentionally participated" in an Epstein sex-trafficking venture. *Id.* ¶ 94. USVI offers no specific factual allegations to support the inferences that JPMC knew that Epstein's "hundreds of millions of dollars," *id.* ¶ 41, and ███████████ *id.* ¶ 43, were tied up in sex trafficking, or that the numerous "business entities" that Epstein oversaw were all fronts for sex trafficking, *id.* ¶ 77. Rather, the Complaint merely points to public records and reports about Epstein, *see id.* ¶¶ 34-40, 44-48—information to which USVI also had access when it granted Epstein-related entities economic benefits, *see id.* ¶ 25. The Complaint also alleges that JPMC willfully ██████████████████████████████████ ███████████████████████████████████████████████████ *id.* ¶ 74, with respect to alleged "red flags," *id.* ¶ 65, and by not conducting sufficient due diligence as to Epstein's source of funds, *id.* ¶¶ 76, 125. Yet, USVI simultaneously contradicts itself and fatally undermines its own theory of "willfulness" by having to concede that JPMC in fact ██████████████████ ███████████████████████████████████ *Id.* ¶ 75.

USVI purports to sue both parens patriae and in its own right, but the Complaint contains only conclusory allegations that JPMC "caused serious harm to the Virgin Islands and its residents." FAC ¶ 107. Moreover, while the Complaint asserts that "damages [were] incurred"

until August 2019, it never explains how or why this was possible six years after JPMC decided to terminate its relationship with Epstein.  *See id.* ¶ 91.

## ARGUMENT

### I.    THE TVPA CLAIM (COUNT I) SHOULD BE DISMISSED

USVI brings suit under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§1591-1595, which criminalizes sex trafficking (§1591) and authorizes a state attorney general, as parens patriae, to bring a civil cause of action (§1595(d)) against anyone who violates §1591 if the attorney general "has reason to believe that an interest of the residents of that State" has been "threatened or adversely affected" by that person.  USVI alleges that JPMC violated §1591(a)(2), which prohibits knowingly benefitting from participation in a sex-trafficking venture.  FAC ¶ 94.

Count I should be dismissed for three independent reasons.  First, it is predicated on conduct that occurred prior to 2013, and §1595(d) does not apply retroactively to conduct preceding its 2018 enactment.  Second, USVI fails to meet the requirements of parens patriae standing under §1595(d).  Third, USVI fails to state a claim under §1591(a).

### A.    Section 1595(d) Does Not Apply Retroactively

Although the Complaint asserts that JPMC's misconduct did not cease until August 2019, FAC ¶ 91, USVI concedes that JPMC made the decision to terminate Epstein's accounts in 2013, *id.* ¶¶ 41, 63, 78, 79, and all of the Complaint's factual allegations concerning JPMC's conduct predate 2013, *id.* ¶¶ 41-51, 66-70, 74-78, 86.  Section 1595(d) was added to the TVPA in 2018 and does not apply retroactively.  *See* Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. 115-164, §6, 132 Stat. 1253, 1255 (2018).

To determine whether a statute applies retroactively, a court must (1) "determine whether Congress has expressly prescribed the statute's proper reach," and, if not, (2) evaluate whether retroactive application of the statute would "impair rights a party possessed," "increase a party's

liability," or "impose new duties" for pre-enactment conduct. *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) (cleaned up). Applying this rubric, the Second Circuit has concluded that §1595(a)'s private right of action for victims cannot be applied retroactively. *See Velez*, 693 F.3d at 325. The same logic applies to §1595(d).

First, nothing in §1595(d)'s language or the legislative history indicates that Congress intended it to apply retroactively. Second, because §1595(d) broadened the scope of civil liability by widening the universe of possible plaintiffs and relief, applying it retroactively would impermissibly "increase a party's liability" for conduct occurring before its enactment. *See Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 950 (1996) (amendment to qui tam statute did not apply retroactively because it "permit[ted] actions by an expanded universe of plaintiffs with different incentives"); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 204-205 (5th Cir. 2017) (relying on *Hughes Aircraft*, 2008 amendment to TVPA did not apply retroactively because amendment permitted actions by additional plaintiffs). Therefore, a case brought under §1595(d) cannot be predicated on acts occurring before its 2018 enactment date, and Count I should be dismissed.

###  B.    USVI Lacks Standing Under §1595(d)

Where, as here, a government sues parens patriae, it must satisfy not only Article III standing requirements—which USVI makes no attempt to do, not even gesturing at an injury to the territory, let alone alleging traceability and redressability—but also the more particular parens patriae requirements. *See Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 602 (1982); *Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017). To establish parens patriae standing, USVI must (1) allege an injury to a quasi-sovereign interest that affects a sufficiently substantial segment of its population, and (2) seek relief to the territory's injury that would be unavailable to individual plaintiffs. *See Snapp*, 458 U.S. at 607; *N.Y. ex rel. Spitzer v. Cain*, 418

F. Supp. 2d 457, 470-472 (S.D.N.Y. 2006); *see also N.Y. v. Facebook, Inc.*, 549 F. Supp. 3d 6, 21-23 (D.D.C. 2021).  In addition, §1595(d) requires a showing that "an interest of the residents of [USVI] has been or is threatened or adversely affected by any person who violates section 1591."

Fundamentally and fatally, USVI does not assert any quasi-sovereign interest sufficient to support parens patriae standing.  In the mine run of parens patriae cases, a State seeks injunctive relief for ongoing conduct that harms a quasi-sovereign interest—for example, to ensure residents' access to reproductive health services, *Spitzer*, 418 F. Supp. 2d at 470, or to ensure the "continuing prosperity of its economy" by avoiding suppressed innovation and investment in the social networking space, *Facebook*, 549 F. Supp. 3d at 22-23.  USVI fails to allege anything close.  JPMC terminated its banking relationship with Epstein in 2013, FAC ¶ 78, and never offered any banking services in the USVI during the relevant time period.  There is no ongoing conduct; there is nothing to enjoin.  Accordingly, the only injury USVI could be seeking to vindicate here would be some purported compensable damage *to the government* incurred prior to 2013.[2]  *See, e.g., N.Y. by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) (state lacks parens patriae standing to seek damages on behalf of individual victims).  But there is nothing sovereign about the damages USVI is seeking.  FAC ¶ 109 (alleging no interest to USVI beyond particularized injuries to Epstein's victims).

Nor does USVI plead an injury to a quasi-sovereign interest that is "sufficiently severe and generalized" so as to be distinct from the interests of particular private parties.  *Facebook*, 549 F. Supp. at 22-23; *see also Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013).  The only party identified in the Complaint as a USVI resident is Epstein.  FAC ¶ 20.  The Complaint

---

[2] While the Complaint asserts that "damages [were] incurred" until August 2019, it cannot explain how or why that could be possible six years after JPMC decided to terminate its relationship with Epstein.  *See* FAC ¶ 91.

does not allege that Epstein's victims included any USVI residents, but even if it did, USVI would still need to articulate how JPMC's conduct directly or indirectly injured a "substantial" portion of its population. *Cf. Snapp*, 458 U.S. at 607.

Contrast USVI's allegations with those in *Facebook*. The States there claimed that as a result of Facebook's allegedly anticompetitive means, "millions" of the States' residents "experienced a rise in the effective price of using Facebook." 549 F. Supp. 3d at 22-23. The States also alleged that smaller businesses lacked advertising alternatives, and that the States' economies suffered from suppressed innovation and investment. *Id.* The court found these allegations to be a "shade vague," but ultimately concluded that they satisfied the pleading requirements for parens patriae standing to seek an injunction for asserted antitrust violations. *Id.*

That *those* allegations were a "shade vague" demonstrates the complete absence of allegations here of injury to an unidentified quasi-sovereign interest. The Complaint's vague and conclusory references to "serious harm to the Virgin Islands and its residents," FAC ¶¶ 107, 118, 128, are not enough for either Article III or parens patriae standing.

### C.   The Complaint Does Not State A Claim For A Violation Of §1591(a)

To state a claim for participation in a sex-trafficking venture in violation of §1591(a)(2), as Count I alleges, FAC ¶ 94, a plaintiff must plausibly allege that JPMC (1) knowingly benefitted, (2) from participation in a commercial sex trafficking venture, (3) while knowing (or in reckless disregard of the fact) that means of force, fraud or coercion would be used to cause the trafficked person to engage in a commercial sex act. 18 U.S.C. §1591(a)(2); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523-524 (S.D.N.Y. 2018). The Complaint falls short.

#### 1.   The Complaint does not plausibly allege that JPMC participated in a commercial sex trafficking venture

USVI must allege that JPMC participated by "knowingly assisting, supporting, or facilitating" a sex-trafficking venture.  18 U.S.C. §1591(e)(4).  Because "liability[] cannot be established by association alone," USVI must allege "specific conduct that furthered the sex trafficking venture." *Noble*, 335 F. Supp. 3d at 524.  "[S]ome participation in the sex trafficking act itself must be shown." *Id.*  The Complaint alleges that JPMC "participated" in an Epstein sex-trafficking venture by: (1) "facilitating payments to women and girls, channeling funds to Epstein to fund the operation," FAC ¶ 94; and (2) "concealing Epstein's criminal conduct by failing to comply with federal banking law," *id.*  Neither theory survives a motion to dismiss.

*First*, the Complaint's allegations that JPMC provided banking services to Epstein, which he used for sex trafficking, are insufficient to plausibly allege JPMC's participation in the sex-trafficking venture itself.  FAC ¶¶ 6, 41-43, 65, 89, 103, 125.  They fail to allege that JPMC provided "financial support" for the sex-trafficking venture in the way §1591 requires: participation "must be participation in a sex-trafficking venture, not participation in other activities engaged in by the sex traffickers[.]" *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).  Allegations that JPMC provided its normal business services to a sex trafficker are insufficient to plead participation.[3]  *See id.* at 168 n. 4 (dismissing claim where defendant was alleged to have made "hush payments"); *Noble*, 335 F. Supp. 3d at 524 (dismissing claim where defendant was alleged to have "'facilitated' [perpetrator's] travel by virtue of his job responsibilities at TWC"); *Lawson v. Rubin*, 2018 WL 2012869, at *11 (E.D.N.Y. Apr. 29, 2018) (dismissing claim against lawyer paid by defendant to draft non-disclosure agreements between

---

[3] To the extent the Complaint asserts that JPMC "paid for" any Epstein sex-trafficking venture, FAC ¶ 101, or provided "financial support," none of the factual allegations supports such an inference.  No one would say that a bank "pays for" the purchases made by its customers with their own funds in any other context.

plaintiffs and perpetrator).  Instead, the defendant must have taken affirmative actions to further the sex-trafficking venture that were entirely inconsistent with their ordinary job duties.  *E.g.*, *Canosa v. Ziff*, 2019 WL 498865, at *3 (S.D.N.Y. Jan. 28, 2019) (allegations including that employee gave Harvey Weinstein medications and other paraphernalia to perform sexual acts enough to state participation).  Here, the Complaint's purported participation allegations as to JPMC's conduct are even more deficient than those deemed insufficient in *Geiss*, *Noble*, and *Lawson*.  The Complaint does not—and cannot—offer any well-pleaded allegations that JPMC *itself* made "hush" or "settlement" payments, or any payments at all.[4]

*Salesforce.com* demonstrates the point.  *See G.G. v. Salesforce.com, Inc.*, 2022 WL 1541408, at *15 (N.D. Ill. May 16, 2022).  The court held that it was insufficient to plead Salesforce's participation where the allegations concerned only what Backpage, a website advertising commercial sex, did with Salesforce's software (allegedly to scale and increase trafficking conducted on its site).  *Id.*  That Salesforce's software "played a critical role" in Backpage's expansion, "even if such expansion would not be possible without … that software," was not enough to demonstrate "Salesforce's *own* participation in any venture with Backpage." *Id.* (emphasis added).  So too here:  the Complaint does not allege the requisite "active engagement" to show JPMC's participation.  *See id.* at *12.

*Second*, the Complaint alleges that JPMC participated in Epstein's sex-trafficking venture by "fail[ing] to comply with federal banking regulations," FAC ¶¶ 65, 74-75, 83-84, "fail[ing] to

---

[4] Even if an Epstein venture "would not have been possible" without his JPMC accounts—which was not the case, as Epstein's post-2013 conduct, after he transitioned his accounts to another bank, shows—and even if it were true that Epstein's access to JPMC "played a critical role" in any venture, that still would not constitute participation for purposes of the TVPA.  *G.G. v. Salesforce.com, Inc.*, 2022 WL 1541408, at *15 (N.D. Ill. May 16, 2022).  What *Epstein* and his associates did with *his* funds in *his* accounts, FAC ¶¶ 28, 30, 31, 42, 66-68, is not JPMC's "active engagement" as required for participation under §1591(a).  *See* 2022 WL 1541408, at *12.

develop adequate due diligence on customers," *id.* ¶ 78, and "ignor[ing] numerous red flags," *id.* ¶ 86.  But the TVPA does not require a business to affirmatively stop someone else's trafficking, and a failure to adequately detect sex trafficking does not state a claim under the TVPA.  *See E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-428 (N.D. Tex. 2021) (allegations that defendants failed to alert authorities, properly intervene, or take reasonable steps to prevent sex trafficking insufficient); *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (failure to adequately detect signs of sex trafficking not sufficient to state claim).

### 2.    The Complaint does not plausibly allege that JPMC knew that force, fraud, or coercion would be used

USVI also fails to allege that JPMC knew or recklessly disregarded "that means of force, threats of force, fraud, [or] coercion" would be used to cause "the [trafficked] person," or that a person under the age of 18 would be caused, to engage in a commercial sex act.  18 U.S.C. §1591(a)(2).  Neither rumors and allegations surrounding Epstein's involvement with underage women nor alleged due diligence shortcomings are sufficient to allege the requisite scienter.

*First*, USVI must allege some knowledge as to the sex-trafficking of a specific victim.  *See, e.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (allegations that motel defendants ignored victim's plea for help and personally observed victim's "obvious physical deterioration" sufficient to plead knowledge); *see also H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at \*1-3 (S.D. Ohio Dec. 6, 2019) (hotel defendant allegedly saw "bottles of lubricants, boxes of condoms," and "physical signs of human trafficking including 'branding, restraints, bruises, physical deterioration'"; hotel cleaning staff allegedly saw plaintiff tied to bed and chained in bathroom, and heard "her desperate pleas for help").  While the Complaint alleges that Epstein used cash from his accounts at JPMC to pay victims, *see* FAC ¶¶ 42, 66-68, 101, these allegations contrast starkly with cases where defendants allegedly observed a specific victim's physical deterioration,

evidence specifically related to sexual activity, and pleas from victims for help to escape.  In fact, the only alleged victim described with any particularity in the Complaint is Jane Doe 1, a woman with an "Eastern European surname[]" who "according to news reports … Epstein purchased at the age of 14" and who "listed Epstein's apartments … in New York City … as her address." *Id.* ¶ 66.  But the Complaint fails to explain why either Jane Doe's perceived national origin or address were sufficient to give JPMC actual knowledge *at the time of the alleged payment* that she was a victim of Epstein's crimes.

More generally, USVI suggests that JPMC should have been aware of Epstein's "well-known and well-publicized" "reputation as a sex trafficker and abuser of women and girls," FAC ¶ 34, recounted in "numerous press reports," *id.* ¶ 35; s*ee also*, *e.g.*, *id.* ¶¶ 36, 86.  Yet, by USVI's own admission, these reports involved only "allegations" of wrongdoing.  *See, e.g.*, *id.* ¶ 36 ("Following these allegations"); *id.* ¶ 39 ("It revealed allegations"); *id.* ¶ 40 ("[P]ress reports noted allegations").  "[M]ere awareness of allegations concerning a defendant's misconduct is different from knowledge of actual misconduct."  *U.S. ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 701 (S.D.N.Y. 2018) (Rakoff, J.) (cleaned up).[5]

In any event, §1591(a)(2) requires a defendant to benefit from knowing participation in "*a venture*," and generalized reports fail to satisfy "the knowledge element as to *a particular* sex trafficking venture." *Choice Hotels*, 473 F. Supp. 3d at 154.  USVI alleges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but does not allege that

---

[5] The Complaint's allegation as to actual wrongdoing observes that Epstein pled guilty to Florida solicitation of a minor in 2008, FAC ¶ 38, a different offense with different elements that did not involve the use of JPMC funds and did not establish that Epstein was engaged in any ongoing conduct against any specific person.  It is thus insufficient to establish that JPMC recklessly facilitated "a *particular*" sex-trafficking venture through provision of general banking services to Epstein.  *See Choice Hotels*, 473 F. Supp. 3d at 154.

JPMC either knew (or recklessly disregarded) at the time that the funds were being used to further any particular sex-trafficking venture. FAC ¶ 42. Just as "knowledge or willful blindness of a general sex trafficking problem" in motels does not suffice, so too here any knowledge of Epstein's generalized reputation for sexual abuse does not suffice. *Choice Hotels*, 473 F. Supp. 3d at 154.[6]

Finally, USVI alleges that JPMC failed to act on "red flags" that "suggest[ed] a pattern of potentially illegal conduct," FAC ¶ 69; *see also id.* ¶¶ 65-68, 86, "failed to demonstrate even basic due diligence," *id.* ¶ 82, and ███████████████████████ *id.* ¶ 74; *see also* ¶¶ 75, 83. None of this, however, establishes that JPMC knew (or recklessly disregarded) that Epstein was using his funds held in JPMC accounts to pursue any sex-trafficking venture. USVI provides no grounds to infer that these so-called "flags" indicated criminal conduct, and alleges only that the indicators *suggest* a "pattern of *potentially* illegal conduct," *id.* ¶ 69 (emphasis added)—a far cry from the *actual* knowledge of *actual* criminal conduct required to state a claim under the TVPA.

In any event, allegations that a defendant missed "red flags" or failed to take appropriate steps to detect and prevent sex trafficking—even in violation of other legal duties—do not establish that the defendant "had the requisite knowledge of a specific sex trafficking venture [for it to] be held directly liable under the [TVPA]." *Choice Hotels*, 473 F. Supp. 3d at 154; *see also*

---

[6] USVI also focuses on the relationship that JPMC private banker Jes Staley developed with Epstein to imply that JPMC acted knowingly as to a particular Epstein sex-trafficking venture. *See* FAC ¶¶ 52-53 (noting that Staley and Epstein "developed a close relationship," even "profound friendship"); *id.* ¶¶ 54-61 ██████████████████████. But the communications between Epstein and Staley make no mention of the use of either force, fraud, or coercion or the involvement of underage women and thus do not suggest sex trafficking. At most, USVI alleges that a JPMC employee developed a personal bond with a wrongdoer customer, which does not suffice to allege JPMC's own liability. *See In re Agape Litig.*, 773 F. Supp. 2d 298, 315 (E.D.N.Y. 2011) (finding "a close relationship between a bank employee and the perpetrators of the Ponzi scheme" insufficient to establish the bank's knowledge of the perpetrator's wrongdoing).

*Lawson*, 2018 WL 2012869, at *13 (allegation that defendant "should have known about alleged trafficking based on its duty to monitor the premises" insufficient). Similarly, "even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'" *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) (quotation marks omitted). Even accepting USVI's unsubstantiated argument that JPMC should have done more to investigate Epstein, the Complaint does not come close to establishing that JPMC knew or recklessly disregarded an Epstein-led sex-trafficking venture.[7]

### 3. The Complaint does not plausibly allege that JPMC knew any benefit it received arose from any sex-trafficking venture involving Epstein

Finally, USVI must allege facts sufficient to show a "causal relationship" between JPMC's alleged "affirmative conduct furthering the sex-trafficking venture and [its] receipt of a benefit." *Geiss*, 383 F. Supp. 3d at 169. The Complaint fails to allege that JPMC received benefits *in return for* its support or facilitation of a particular sex-trafficking venture, and that JPMC knew this was the case. *See id*. at 169-170; *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).

Consider *Geiss*, in which the court concluded that while The Weinstein Company (TWC) "undoubtedly benefited" because Harvey Weinstein's "movies and influence generated revenue," some of which flowed to TWC's officers and directors, plaintiffs still did not sufficiently allege that Weinstein provided those benefits to TWC *because of* TWC's facilitation of his sexual misconduct. 383 F. Supp. 3d at 169-170. In *Canosa*, in contrast, the court concluded that benefit was plausibly alleged where defendants engaged in conduct atypical of production company

---

[7] For this reason, that the Office of the Comptroller of the Currency found JPMC "failed to identify significant volumes of suspicious activity" has no bearing here. FAC ¶ 78. If anything, it suggests that JPMC lacked knowledge of an Epstein sex-trafficking venture. Likewise, the Complaint's allegations as to the Consent Order between the New York Department of Financial Services and Deutsche Bank have no bearing on this case against JPMC. *See id.* ¶¶ 80-81.

directors (*e.g.*, signing non-disclosure agreements with victims and paying employees to cover up assaults), which could only have been intended to conceal Weinstein's behavior and retain him. 2019 WL 498865, at *24.

The allegations here are like those advanced in *Geiss*, not *Canosa*. Here, USVI alleges that JPMC received financial benefits from its relationship with Epstein, including "the deposit of funds" by Epstein and Epstein-controlled entities made to JPMC, FAC ¶ 96, and unidentified "referrals of business opportunities from Epstein and his co-conspirators," *id.* ¶ 97.[8] Completely lacking, however, is any allegation that JPMC knew it received those purported benefits *because* it was providing banking services that facilitated a specific Epstein sex-trafficking venture. There is no plausible allegation, for example, that Epstein threatened to pull business if the bank did not ignore alleged red flags, or that Epstein offered his business as a reward for JPMC's alleged facilitation. In the end, JPMC is alleged to have taken actions entirely consistent with normal banking activity for a wealthy client. Beyond reciting a legal conclusion, *id.* ¶¶ 74, 96-98, the Complaint does not support the inference that JPMC knew it was receiving benefits for facilitation of an illicit venture.

## II.   USVI'S TERRITORIAL-LAW CLAIMS (COUNTS II-IV) ARE IMPERMISSIBLY EXTRATERRITORIAL AND FAIL TO STATE A CLAIM

USVI asserts two claims under Virgin Islands law, for violation of its racketeering and consumer protection statutes. Both claims fail because they impermissibly seek to apply territorial law to conduct that took place entirely outside the Virgin Islands, in violation of both Virgin

---

[8] The Complaint alleges that "Epstein helped, or promised to help, Staley recruit ultrawealthy clients to JP Morgan." FAC ¶¶ 71-73. But there is no allegation that Epstein would not have conferred these so-called benefits on JPMC unless the bank "knowingly participated" in a sex-trafficking venture. Many wealthy clients seek to introduce other wealthy clients to their banks without any sordid arrangement of the type suggested in the Complaint.

Islands law and due process, as well as for multiple reasons particular to each cause of action.  All the territorial-law claims should be dismissed.

A.    **USVI's Territorial-Law Claims (Counts II-IV) Are Impermissibly Extraterritorial**

Disregarding both USVI law and due process, USVI attempts to apply its law to conduct that occurred entirely in New York.  That Epstein, JPMC's customer, lived in the USVI part-time or conducted some of his affairs there cannot save the USVI territorial-law claims.

The Virgin Islands Code cabins its reach to "the territory of the Virgin Islands, except as otherwise expressly provided."  1 V.I.C. §2; *see Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 186 n.6 (2009) (1 V.I.C. §2 "limits application of the Code to the territory of the Virgin Islands").  The Due Process Clause likewise constrains the application of Virgin Islands law, limiting USVI to enforcement consistent with its "legislative jurisdiction."  *Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) ("There must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction." (citation omitted)); *see also Pearson v. Ne. Airlines, Inc.*, 309 F.2d 553, 559 (2d Cir. 1962) (application of state law appropriate if State has "substantial ties to a transaction in dispute"; if connections are "wholly lacking or at best tenuous," State has "exceeded its constitutional power in applying its local law"); *Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 619 F. Supp. 727, 739 (S.D.N.Y. 1985) (nexus between New Mexico and defendants "sufficiently tenuous" to "preclude [plaintiff] as a matter of due process" from relying upon New Mexico law).

The Complaint's allegations concern conduct that occurred entirely in New York:  JPMC is "headquartered in New York City," FAC ¶ 4, and the Complaint fails to allege that JPMC's provision of banking services to Epstein and monitoring of Epstein's activities took place outside

15

of New York.  Although the Complaint conclusorily alleges that "[a]t all relevant times, [JPMC] engaged in business in the Virgin Islands," *id.* ¶ 5, it does not contain a single factual allegation to that effect—or that JPMC engaged in any supposed wrongdoing in the Virgin Islands.  Because USVI's connections to JPMC are thus "wholly lacking," it has no statutory basis or constitutional interest in applying its own law against JPMC.  *Pearson*, 309 F.2d at 559.

The fact that Epstein conducted some of his affairs and lived part-time in the USVI does not cure USVI's extraterritoriality problem; Epstein's contacts with USVI are not JPMC's.  In the analogous personal jurisdiction context, *see, e.g.*, *Am. Charities*, 221 F.3d at 1216, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).[9]  That is the case here.  Epstein's decision to spend time and money in the USVI while receiving banking services from JPMC in New York does not establish a connection between JPMC and USVI.

### B.    The Complaint Does Not Plead CICO Claims (Counts II and III)

In Counts II and III, USVI asserts claims under §605(a) of the Virgin Islands Criminally Influenced and Corrupt Organizations Act (CICO) based on alleged predicate violations of the TVPA (Count II) and the Bank Secrecy Act (BSA) (Count III).  FAC ¶¶ 115, 125.  USVI has failed to sufficiently plead the necessary elements of a CICO claim or the predicate violations of either the TVPA or BSA and Counts II and III should be dismissed.

---

[9] Notwithstanding the allegation that Staley "visited Epstein's Virgin Islands residence on multiple occasions," FAC ¶ 53, the Complaint contains no well-pleaded allegation that Staley's personal travel was within the scope of his employment.  There is no allegation, for instance, that Staley's trips were for business purposes.  Indeed, USVI alleges that Staley and Epstein shared "a close personal relationship and 'profound' friendship," further suggesting that Staley's visits were for personal reasons.  *Id.* ¶ 53; *see Beauchamp v. City of N.Y.*, 3 A.D. 3d 465, 466 (N.Y. App. Div. 2004) ("[W]here an employee's actions are taken for wholly personal reasons … his or her conduct cannot be said to fall within the scope of employment.").

### 1.      USVI fails to plead the elements of a CICO claim

Under CICO §605(a), a plaintiff must allege (1) the existence of an enterprise, as defined in §604(h); that the defendant (2) was "employed by, or associated with" that enterprise; (3) "conduct[ed] or participate[ed] in, directly or indirectly, the affairs of the enterprise"; and (4) did so "through a pattern of criminal activity," based on statutorily defined predicates in §604(e).  14 V.I.C. §605(a); *see also Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 575 (D.V.I. 2004) (same elements as §1962(c) claim).[10]  USVI's claim fails at every turn.

#### a)      USVI fails to allege JPMC was associated with a CICO enterprise

An "enterprise" "includes any individual, sole proprietorship, partnership, corporation, trust, or other legal entity, or any union, association or group of persons, associated in fact."  14 V.I.C. §604(h).  An association-in-fact enterprise—what the USVI alleges here—must have "three structural features: [i] a purpose, [ii] relationships among those associated with the enterprise, and [iii] longevity … to pursue the enterprise's purpose." *People v. McKenzie*, 66 V.I. 3, 12 (Super. Ct. 2017).  The "purpose" prong requires a "common interest or goal" shared by the associated persons.  *USVI v. Takata Corp.*, 67 V.I. 316, 370 (Super. Ct. 2017).

USVI offers no well-pled support to show that JPMC was a part of, or associated with, any CICO enterprise or pursued that enterprise's common purpose.  USVI neither includes JPMC in its definition of "the Epstein Enterprise," FAC ¶ 27, nor alleges that JPMC associated with that enterprise in pursuing the enterprise's alleged purpose of "procuring and subjecting underage girls and young women to unlawful sexual conduct, sex trafficking, and forced labor," *id*. ¶ 28.  Rather,

---

[10] "CICO is cast in the mold of the federal RICO statute, and Virgin Islands courts apply RICO analysis to CICO claims." *Charleswell*, 308 F. Supp. 2d at 577 (cleaned up).  Section 605(a) specifically "incorporates the same language as RICO §1962(c)." *Id*.

the Complaint alleges that JPMC violated certain federal statutes by "providing banking and payment-processing services to Epstein," *id*. ¶¶ 114-15, 125, in exchange for the profits associated with Epstein's accounts and those of clients referred by Epstein to JPMC, *id*. ¶¶ 87, 115, 134-135. And while the Complaint includes allegations about former JPMC employee Jes Staley's personal interactions with Epstein, *see*, *e.g.*, ¶¶ 54-62, it nowhere alleges that Staley acted within the scope of his employment or on behalf of JPMC in a way that would associate *JPMC* with the Epstein Enterprise and its sex trafficking purpose, or somehow expose JPMC to vicarious liability based on Staley's personal conduct.  Even at the motion to dismiss stage, courts "consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (collecting cases); *see also Jingyu Chen v. Yong Zhao Cai*, 2022 WL 917575, at *3 (S.D.N.Y. Mar. 28, 2022) (duties of organization's employees "simply do not include slavery, sexual abuse, or forced labor").  In other words, the Complaint only alleges that JPMC earned money by providing ordinary banking services to a client, which is insufficient to establish that JPMC shared a common purpose with the Epstein Enterprise, regardless of whether JPMC knew or should have known of the enterprise's illicit activity (and regardless of other alleged willful misconduct of a bank employee involving that client simply because money is involved).  *See USVI v. Adams*, 2010 WL 7371482, at *4 (V.I. Super. Ct. Nov. 12, 2010) (no CICO liability where merely "conducting his or her own affairs"); *Zamora v. FIT Int'l Grp. Co.*, 834 F. App'x 622, 626 (2d Cir. 2020) ("routine … provision of financial services" insufficient for common purpose).

> **b)** **JPMC did not conduct or participate in the affairs of the alleged "Epstein Enterprise"**

For similar reasons, the Complaint also fails to allege JPMC "conduct[ed] or participat[ed] in" the affairs of the Epstein Enterprise.  14 V.I.C. §605(a).  To satisfy this element, USVI must allege that JPMC played some part in the "operation or management" of the CICO enterprise. *Adams*, 2010 WL 7371482, at *4.  Specifically, JPMC must have had "some part in *directing* [the enterprise's] affairs," *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018), and "will not be liable for mere participation in a racketeering act," *id*.  For this reason, "courts in this District … have repeatedly held that providing banking services—even with knowledge of [an underlying] fraud—is not enough to state a claim under §1962(c)," the federal analogue to CICO §605(a).  *Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, 2019 WL 2327810, at *13 (S.D.N.Y. May 30, 2019) (cleaned up); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) (dismissing RICO claims where defendant bank only "provided banking services that aided in the perpetration of the fraudulent scheme" because this "does not qualify as participation in a RICO enterprise"); *Xiangyuan Zhu v. First Atl. Bank*, 2005 WL 2757536, at *5 (S.D.N.Y. Oct. 25, 2005) (defendant banks' transfers of funds that "eventually benefitted an alleged extortionist" not enough to allege RICO claim).

<strong>c)      USVI fails to allege a pattern of criminal activity</strong>

To sufficiently plead a "pattern of criminal activity" under CICO, USVI must establish: (1) two or more occasions of conduct; (2) that constitute criminal activity; (3) are related to the affairs of the enterprise; (4) are not isolated; and for predicate criminal violations under federal law, (5) that the last of the occasions of conduct occurred within "five years of the filing of th[is] action."  14 V.I.C §604(j); *see also McKenzie*, 66 V.I. at 17.  USVI fails to do so here.

First, USVI has failed to allege that any of JPMC's conduct was related to the affairs of the "Epstein Enterprise."  *See supra* Section II.B.1(a).  Second, where, as here, a CICO claim is predicated on criminal violations of federal law, §604(j)(2)(B) expressly limits the scope of the

19

claim by defining a "pattern of criminal activity" to require that the last occasion of any alleged criminal conduct have occurred "within five years of the filing" of the CICO claim.[11]  14 V.I.C. §604(j)(2)(B).  Though the Complaint alleges that JPMC engaged in criminal conduct by providing "banking and payment-processing services to Epstein and Epstein-controlled entities," FAC ¶¶ 115, 124, and ██████████████████████ or perform due diligence on the source of Epstein's funds, *id.* ¶ 125, none of that alleged conduct took place within five years of the filing of this action.  Rather, as the Complaint makes clear, JPMC voluntarily decided to terminate its banking relationship with Epstein in 2013, more than nine years prior to the filing of this action. *See* FAC ¶¶ 41, 63, 78-79.[12]  USVI thus cannot allege that JPMC was engaged in a "pattern of criminal activity" under CICO, and its CICO claims fail as a matter of law.

### 2.    USVI fails to allege predicate criminal activity

USVI's CICO claims are predicated on (1) alleged criminal violations of the TVPA, and (2) alleged criminal violations of the BSA.  As discussed above (at Section I), the TVPA claim fails, and so does the CICO claim predicated on it.  As to the BSA, the Complaint fails to sufficiently allege that JPMC committed any violations, let alone criminal ones.

The BSA and its implementing regulations require banks to, among other things, implement programs to perform customer due diligence and report suspicious activity.  *See, e.g.,* 31 U.S.C. §5318(g)-(i); 31 C.F.R. §1010.620; 31 C.F.R. §1020.320.  With exceptions not relevant

---

[11] For predicate criminal violations arising under USVI law, §604(j)(2)(B) incorporates the limitations period for such violations under 5 V.I.C. §3541 if longer than five years.

[12] For similar reasons, USVI's CICO claim is separately and independently time-barred by the five-year statute of limitations.  *See* 14 V.I.C. §607(h).  USVI admits that JPMC has not provided any "banking or payment-processing services" to Epstein or Epstein-controlled entities since JPMC voluntarily terminated its banking relationship with him in 2013—nine years prior to the filing of this action and well outside the limitations period.  *See* FAC ¶¶ 41, 50, 63, 78-79.  Further, USVI's allegation that JPMC ███████████████████████████████████████████████████████████████████ *See id.* ¶¶ 75, 90-91.

here, only "willful[]" violations of the BSA are criminal.  31 U.S.C. §5322(a).  The Supreme Court

has explained that "willfully violat[ing]" the BSA means that a defendant "acted with knowledge

that [its] conduct was unlawful."  *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994).

     USVI fails to adequately plead any criminal BSA violations.  USVI alleges that, after

Epstein's death, ██████████████████████████████████████████████████

████████████████  FAC ¶¶ 75, 90-91, but the Complaint does not identify any ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████.[13] ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

FAC ¶¶ 74-75, 83, 90-91.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.[14]

       ██████████████████████████████████████████████████████

████████████████████████████████████████.  Despite USVI's inflammatory

---

[13] As noted above, USVI alleges that ████████████████████████████████████
████████████████████████████████████  FAC ¶ 75,
████████████████████████████████████.

[14] *See, e.g.*, FFIEC, *Answers to Frequently Asked Questions Regarding Suspicious Activity Reporting and Other Anti-Money Laundering Considerations* at 2, Fin. Crimes Enf. Network (Jan. 19, 2021) (receipt of a grand jury subpoena should cause financial institution to review relevant account activity and transactions); *id.* at 4 (receipt of negative news "may" cause financial institution to review customer activity).  The Complaint specifically refers to FFIEC guidance, which informs when and how financial institutions comply with the BSA and its underlying regulations.  *See* FAC ¶¶ 15-18.

(and untrue) assertions that JPMC "concealed wire and cash transactions," FAC ¶ 6, and "turned a blind eye to evidence of human trafficking," *id.* ¶ 7, USVI itself alleges that JPMC in fact ███████████████████████████████████████████████████████████ *id.* ¶ 75 (emphasis added).  It strains credulity to claim that, at the same time that USVI itself alleges JPMC was in fact ██████████████████████████ *id.*, JPMC was in a criminal enterprise with Epstein and ████████████████████████████████████████████.

USVI also alleges that JPMC failed to conduct sufficient due diligence with respect to Epstein, in violation of 31 C.F.R. §1010.620.  *See* FAC ¶¶ 75, 125.  But failure to conduct due diligence on a single customer is insufficient to allege a violation of that provision, which requires financial institutions to "maintain a [reasonably designed] due diligence *program*."  31 C.F.R. §1010.620(a).  Even if JPMC had conducted insufficient due diligence as to Epstein—which the Complaint does not plausibly suggest—pleading such a fact would not allege a violation of 31 C.F.R. §1010.620, let alone a *willful*, criminal violation.

Two final errors in USVI's BSA claim warrant correction.  First, it is immaterial that JPMC entered into a consent order with the OCC in 2013.  FAC ¶ 78.  The consent order says nothing about whether JPMC committed *willful*, criminal violations of the BSA—the order was a result of civil proceedings, not a criminal prosecution—and does not reference JPMC's conduct with respect to Epstein or contain any admissions by JPMC whatsoever.  Second, USVI is incorrect that JPMC's "provi[sion of] banking and payment-processing services to Epstein and Epstein-controlled entities" somehow violated "federal banking regulations."  *Id.* ¶ 125; *see also id.* ¶ 43 (alleging JPMC ████████████████████████████████████████████████ ██████████████████████).  ███████████████████████████████ ████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████[15] The provision of services to high-risk clients cannot, in and of itself, constitute a BSA violation. Accordingly, USVI did not, and cannot, provide a factual basis for concluding that JPMC provided "banking and payment-processing services to Epstein and Epstein-controlled entities," FAC ¶ 125, "with knowledge that [doing so] was unlawful," *Ratzlaf*, 510 U.S. at 137.

### C.   USVI Lacks Standing to Pursue A CICO Claim Predicated on BSA Violations (Count III)

The Complaint also fails to demonstrate how USVI's injuries are "fairly traceable" to the "challenged conduct of" JPMC.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  As explained, the ██████████████████████████████████████████████ ████████████.  *See* 31 C.F.R. §1020.320(b)(2).  USVI's attempts to show traceability based on what might have happened if ████████████████████████████████████████ ██████████████, FAC ¶¶ 74-75, are speculative and insufficient to support standing.

An attempt by USVI to demonstrate traceability would necessarily "depend[] upon unalleged and unknown facts" concerning third parties.  *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45 n.25 (1976); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Any causation theory based on actions federal law enforcement might have taken would be too attenuated and speculative to satisfy the traceability requirement; they would rely on predictions that ████████████████████████████████████████████████████████████████

---

[15] ████████████████████████████████████████████████ ████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████ *id.* ¶¶ 74-75,

despite already having access to extensive public information, *see id.* ¶¶ 34-40, 44-48, 86; (3) the

resulting investigation would have revealed the extent of Epstein's conduct; (4) those authorities

would have again exercised their discretion, this time to present a case to a grand jury; (5) a grand

jury would have indicted Epstein; and (6) Epstein would have been arrested, preventing further

harm.  This attenuated causal chain, relying on assumptions and speculation concerning third

parties with nearly unbridled discretion, is insufficient to establish standing.  *See Clapper*, 568

U.S. at 410-414.

Any attempt to show traceability based on USVI itself somehow ███████████████

█████████████ FAC ¶¶ 74-75, fares no better. █████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████. █████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████. *See Clapper*, 568 U.S. at 410-

414.  According to the Complaint, Epstein's "reputation as a sex trafficker and abuser of women

and girls was well-known and well-publicized for more than a decade before his death."  FAC

¶ 34.  Those facts apparently were not enough to spur USVI to prevent Epstein's misdeeds. ███

██████████████████████████████████████████████████████

██████████████████████████████████████████████.[16]

---

[16] Relatedly, USVI has failed to adequately plead facts showing causation based on any alleged BSA violations, as required under 14 V.I.C. §607.

**D.      The Complaint Does Not Plead a Consumer Protection Claim (Count IV)**

Finally, USVI brings a cause of action (Count IV) under §304 of the Virgin Islands Consumer Fraud and Deceptive Business Practices Act (CFDBPA), alleging that JPMC engaged in "unfair methods of competition" through the conduct alleged in the Complaint.  *See* FAC ¶¶ 130-136.  USVI's theory appears to be that JPMC participated in Epstein's sex-trafficking operation in exchange for "referrals of high-value business opportunities," resulting in JPMC "unlawfully and unjustly enrich[ing] itself at the expense of other banks that complied with their legal obligations."  *Id.* ¶ 135.  The claim should be dismissed.

First, the claim is untimely because USVI concedes that JPMC "terminated its relationship with Epstein" in 2013—almost ten years ago—*id.* ¶ 78, and fails to allege any JPMC conduct that occurred within the six-year limitations period.  *See* 12A V.I.C. §336 (citing 5 V.I.C. §31(3)(B)).

Second, USVI does not plead facts sufficient to show that JPMC engaged in unfair competition, much less unfair competition affecting the Virgin Islands.  The Complaint includes no pertinent details about the "high-value business opportunities" JPMC allegedly obtained from Epstein as a result of its participation in his sex-trafficking venture—most importantly, who else competed for them, and whether or how the high-value business opportunities or the supposed competitors for referrals were in any way connected to the Virgin Islands.  Moreover, the Complaint includes no details about whether those financial institutions in fact "complied with their legal obligations" with respect to similarly situated customers.  The Complaint includes no plausible basis to infer that JPMC unjustly enriched itself at the expense of any financial institution in the Virgin Islands, much less to the detriment of the Virgin Islands or its residents.

**CONCLUSION**

The Complaint should be dismissed with prejudice.

Dated: February 1, 2023

Respectfully submitted,

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

Ronald C. Machen
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363
ronald.machen@wilmerhale.com

*Attorneys for JPMorgan Chase & Co.*