**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

GOVERNMENT OF THE UNITED
STATES VIRGIN ISLANDS,

        Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

        Defendant.

No. 22-cv-10904-JSR

**JPMORGAN CHASE BANK, N.A.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

I.      The TVPA Claim (Count I) Should Be Dismissed .............................................................1

        A.      Section 1595(d) Does Not Apply Retroactively .......................................................1

        B.      USVI Lacks Standing Under §1595(d) ....................................................................2

        C.      The Complaint Does Not State A Claim For A Violation Of §1591(a) ...................3

II.     USVI's Territorial-Law Claims (Counts II-IV) Are Impermissibly Extraterritorial And Fail To State A Claim ........................................................................................................7

        A.      USVI's Territorial-Law Claims Are Impermissibly Extraterritorial .......................7

        B.      The Complaint Does Not Plead CICO Claims .........................................................7

              1.      USVI fails to plead the elements of a CICO claim ....................................7

              2.      USVI fails to allege predicate criminal activity ..........................................9

        C.      USVI Lacks Standing To Pursue A CICO Claim Predicated On BSA Violations ...........................................................................................................9

        D.      The Complaint Does Not Plead A Consumer Protection Claim .............................10

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
    458 U.S. 592 (1982) ................................................................................................................3

*Anthony v. FirstBank V.I.*,
    58 V.I. 224 (2013) ...................................................................................................................9

*Arellano v. McDonough*,
    143 S. Ct. 543 (2023) ..............................................................................................................9

*Canosa v. Ziff*,
    2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ...........................................................................4

*City of Indianapolis v. West*,
    81 N.E.3d 1069 (Ind. Ct. App. 2017) .....................................................................................7

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018) .....................................................................................................8

*Ditullio v. Boehm*,
    662 F.3d 1091 (9th Cir. 2011) ................................................................................................2

*E.S. v. Best Western Int'l, Inc.*,
    510 F. Supp. 3d 420 (N.D. Tex. 2021) ..................................................................................5

*G.G. v. Salesforce.com, Inc.*,
    603 F. Supp. 3d 626 (N.D. Ill. 2022) .....................................................................................4

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...................................................................................5

*H.H. v. G6 Hospitality, Inc.*,
    2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ........................................................................6

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
    520 U.S. 939 (1997) ................................................................................................................2

*Infospan, Inc. v. Emirates NBD Bank PJSC*,
    903 F.3d 896 (9th Cir. 2018) ..................................................................................................7

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ................................................................................................................1

*Lawson v. Rubin*,
    2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .......................................................................5

*Lozano v. Montoya Alvarez*,
    572 U.S. 1 (2014) ........................................................................................................... 9

*M.A. v. Wyndham Hotels & Resorts Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................................................................ 4

*Missouri ex rel. Koster v. Harris*,
    847 F.3d 646 (9th Cir. 2017) ....................................................................................... 3

*New York v. Facebook, Inc.*,
    549 F. Supp. 3d 6 (D.D.C. 2021) ................................................................................. 3

*Niles Freeman Equipment v. Joseph*,
    161 Cal. App. 4th 765 (2008) ...................................................................................... 2

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) .......................................................................... 5

*Panos v. Universal Forest Products, Inc.*,
    2020 WL 416445 (S.D.N.Y. Jan. 27, 2020), *aff'd*, 828 F. App'x 81 (2d Cir. 2020) ........... 8

*People v. McKenzie*,
    66 V.I. 3 (Super. Ct. 2017) ........................................................................................... 8

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007) .......................................................................... 7

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) .......................................................................... 5

*Schwartz v. HSBC Bank USA, N.A.*,
    2017 WL 95118 (S.D.N.Y. Jan. 9, 2017), *aff'd*, 750 F. App'x 34 (2d Cir. 2018) ......... 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................................. 10

*United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*,
    318 F. Supp. 3d 680 (S.D.N.Y. 2018) .......................................................................... 6

*United States v. Gonzales*,
    520 U.S. 1 (1997) ......................................................................................................... 6

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012) ......................................................................................... 1

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) .................................................................................... 2, 3

# STATUTES, RULES, AND REGULATIONS

18 U.S.C.
    §1591(a)(2) ..................................................................................................3, 5, 6
    §1595(a) ....................................................................................................1, 2, 5, 6
    §1595(d) ......................................................................................................1, 2, 5

5 V.I.C.
    §31(3)(B)........................................................................................................10
    §31(4)(B)........................................................................................................10

12A V.I.C.
    §302................................................................................................................10
    §303(d) ...........................................................................................................10
    §336................................................................................................................10

14 V.I.C.
    §604(j)(2)(B)..................................................................................................8, 9
    §607..................................................................................................................2
    §607(h).............................................................................................................9

USVI's rhetoric cannot make up for the fundamental—and fatal—legal and factual deficiencies in its Amended Complaint.  For its TVPA claims, USVI fails to explain how retroactively applying §1595(d) is permissible; fails to meet its burden to plead parens patriae standing; and fails to explain how JPMC's provision of banking services constitutes the direct knowledge, participation, and benefit from sex trafficking required for TVPA liability.  Its territorial law claims fail, too.  USVI fails to justify applying USVI law to a bank's conduct entirely in New York.  Even if USVI could so extend its law, JPMC clearing transactions for Epstein is insufficient for racketeering liability, and USVI fails to explain how any alleged injury is traceable to JPMC's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (particularly when USVI alleges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, FAC ¶¶ 74-75).  Finally, USVI's consumer protection claims are time-barred and nonsensical.  USVI's misdirected and deficient Complaint should be dismissed.

## ARGUMENT

**I.     THE TVPA CLAIM (COUNT I) SHOULD BE DISMISSED**

    **A.     Section 1595(d) Does Not Apply Retroactively**

USVI concedes that Congress did not intend §1595(d) to have retroactive effect.[1]  And because USVI does not dispute that its §1595(d) parens patriae action must be based on a different injury and must seek different relief from what a victim of trafficking under §1595(a) could have brought prior to 2018 (Mot. 5-7; Opp. 9-10), it must also acknowledge that adding §1595(d) to the TVPA in 2018 expanded liability by allowing a new set of plaintiffs to bring civil suits for different injuries, seeking different relief.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012).

---

[1] USVI's (at best) confounding offer of a single floor statement referring to §1595(d) creating a "right of action," Opp. 8, to imply some meaningful distinction from creating a "*cause of action*," is the furthest thing from authoritative legislative history on this subject.

That USVI may have been able to sue under CICO for TVPA violations prior to 2018 for some of the relief available under §1595(d) does not change the analysis.[2] That private counsel for the Attorney General thinks it has the same incentives as victims does not change the analysis.[3] And that victims could sue for different relief for their different injuries prior to 2018 does not change the analysis. Before 2018, a defendant was liable to victims for damages and attorneys' fees for injuries from TVPA violations, 18 U.S.C. §1595(a); after 2018, defendants may be additionally liable to a different class of plaintiffs for a wider set of "appropriate relief" for different injuries to a state and its quasi-sovereign interest. Section 1595 increases a party's liability for pre-enactment conduct and cannot be applied retroactively to pre-2018 conduct.[4]

### B. USVI Lacks Standing Under §1595(d)

The burden to show parens patriae standing is well-established, *see* Mot. 5-7—and USVI has made no attempt to satisfy it here. USVI does not dispute the existence of this burden or its

---

[2] The potential for liability post-2018 is still greater because, for example, pain and suffering damages are available under the TVPA, *see, e.g.*, *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011), but not under CICO, *see* 14 V.I.C. §607 ("Damages shall not include pain and suffering.").

[3] *Hughes*'s discussion of the incentives of two different qui tam relators suing for the same injury and relief does not change the analysis of the two different classes of plaintiffs seeking relief for different injuries here. *See Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 948-949 (1997). The best USVI can point to is an inapposite California intermediate appellate decision, *Niles Freeman Equip. v. Joseph*, 161 Cal. App. 4th 765, 783-787 (2008) (no retroactivity where government agency given suspension authority that it and other government agency already had), and isolated floor statements irrelevant to the *Landgraf* analysis. Opp. 8.

[4] Recognizing its retroactivity problem, USVI now posits that JPMC ███████ ███████ after 2018. Opp. 8-9. That is not plausible on the face of the Complaint: ███████, FAC ¶ 75, and post-2018 ███████ is not what USVI alleged, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (party may not amend pleadings through brief). The allegations USVI points to, Opp. 9, refer only to Epstein's conduct, FAC ¶¶ 32, 42; mention no dates at all, *id.* ¶¶ 6, 94; or recite the vague conclusion that "the wrongdoing ceased in August 2019," *id.* ¶ 91. Nor does USVI allege the §1591 requirement that JPMC financially benefited after it exited Epstein in 2013, let alone after 2018.

2

distinct requirements. *Compare* Mot. 5-7 *with* Opp. 9-10. Instead, USVI gestures to the Complaint's generalizations that sex trafficking threatens public safety and uses money, and the bare conclusion that JPMC's alleged conduct somehow "caused serious [unspecified] harm to the Virgin Islands and its residents." Opp. 9-10. USVI does not—and cannot—link these generalizations to any specific quasi-sovereign interest or alleged injury to any residents. Instead, USVI erects and strikes down the straw man argument that it need not allege injury to a "specific number" of "persons," Opp. 10—avoiding (and admitting) that USVI cannot point to anything in the Complaint that alleges any articulable injury to any identifiable group of residents, as it must. *See Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982); *Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 651-655 (9th Cir. 2017); *N.Y. v. Facebook, Inc.*, 549 F. Supp. 3d 6, 21-23 (D.D.C. 2021).[5] Comparison to the pleadings in *Facebook* is illustrative, Mot. 7, but hardly necessary when USVI makes no attempt to meet its parens patriae standing pleading burden.

### C.   The Complaint Does Not State A Claim For A Violation Of §1591(a)

USVI's principal TVPA claim should be dismissed because USVI fails to plausibly allege that JPMC (1) knowingly benefitted, (2) from participation in a commercial sex trafficking venture, (3) with knowledge or reckless disregard of the sex trafficking. 18 U.S.C. §1591(a)(2). USVI's opposition misrepresents the Complaint and misapplies the governing law.

*Participation.* Allegations that JPMC provided routine banking services to Epstein, which he, in turn, illicitly used for sex trafficking, are insufficient to plausibly allege JPMC's participation in a sex-trafficking venture. USVI implicitly concedes this point, arguing instead that JPMC's provision of cash and wire services to Epstein was not routine. Indeed, according to

---

[5] Even if USVI's recitation from *Snapp* as to its purported "substantial interest" in protecting residents from criminal activity, Opp. 10, appeared in its Complaint, *see Wright*, 152 F.3d at 178, it does not show how any identifiable residents were harmed—unlike *Snapp*, where identifiable residents were impacted by the discrimination at issue, 458 U.S. at 597.

USVI, JPMC's conduct is "on all fours" with that of production companies in *Canosa v. Ziff*, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019).  Opp. 11.  Not even close.

In *Canosa*, the defendant production companies allegedly employed women responsible for "introducing Weinstein to young women and covering up his assaults." 2019 WL 498865, at *23.  The companies' employees "gave Weinstein the medications … to perform sexual acts" and "cleaned up after his sexual assaults." *Id.*  The companies even allegedly "linked [] job benefits to the commission of [] sexual assaults." *Id.*  None of this can arguably be the routine activity of a production company.  And those allegations do not resemble anything in this case.  Even under USVI's (inaccurate and salacious) telling of events, JPMC did not instruct employees to introduce Epstein to sex-trafficking victims; did not provide Epstein the instrumentalities of his sexual activity; and certainly did not pay any of its employees on a per-sexual-assault basis.[6]

Take instead *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626 (N.D. Ill. 2022).  There, the court found that the complaint did not plausibly allege "Salesforce's *own* participation in any venture with Backpage" even though Salesforce's ordinary platform services "played a critical role in Backpage's expansion." *Id.* at 648.  USVI's claim that *Salesforce.com* is inapposite because JPMC "handled payments" Epstein made to his victims, Opp. 13, again confuses JPMC's provision of routine banking services with Epstein's independent use of his funds toward illicit ends.  And USVI's conjecture that JPMC's services somehow became extraordinary because it allegedly failed to detect certain "red flags" overlooks that a mere failure to detect sex trafficking

---

[6] USVI's reference to *M.A. v. Wyndham Hotels & Resorts Inc.* fares no better.  425 F. Supp. 3d 959, 962 (S.D. Ohio 2019) (suggesting motel renting rooms to same individuals despite "signs of human trafficking including physical deterioration, no eye contact, and duration of stay" as well as "bottles of lubricants, boxes of condoms, used condoms in the trash, excessive requests for towels and linens, and cash payments" is not routine commercial activity (cleaned up)).

does not constitute participation in it.  *See E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-428 (N.D. Tex. 2021); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

Seeking to dodge that principle, which is fatal to its claims, USVI pivots to arguing that JPMC "*did* detect Epstein's sex-trafficking," through private banker Jes Staley.  Opp. 14.  Here, USVI misrepresents the Complaint, which alleges that Staley and Epstein "developed a close relationship," FAC ¶ 52, as evidenced by email correspondence including pictures of women, *see id.* ¶¶ 54-60.  The emails do not mention the use of force, fraud, or coercion, or underage women, and thus provide no basis to infer that Staley "detect[ed] Epstein's sex-trafficking."  Opp. 14.

In the end, this case falls short even of *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019), *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), and *Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018)—each featuring insufficient allegations of participation—because there is no allegation that JPMC itself made any "hush" or "settlement" payments to Epstein's victims.  USVI's attempt to distinguish these cases on the ground that they address only "conduct that took place after the trafficking," Opp. 12, is both inaccurate, *see, e.g.*, *Lawson*, 2018 WL 2012869, at *1 (defendant's conduct "part of [an] ongoing conspiracy"), and undercut by USVI's own Complaint—that JPMC purportedly participated in an Epstein sex-trafficking venture by "concealing [his] criminal conduct," FAC ¶ 94.

***Knowledge.***  USVI also fails to allege that JPMC knew or recklessly disregarded that "force, threats of force, fraud, [or] coercion" would be used to cause a "[trafficked] person," or that a person under the age of 18 would be caused, to engage in a commercial sex act.  18 U.S.C. §1591(a)(2).  USVI suggests that it need only demonstrate constructive knowledge but cites only one congressperson's irrelevant floor statements, Opp. 8, and cases applying §1595(a), Opp. 11 n.1.  But §1595(d) specifically omits §1595(a)'s "should have known" language and refers instead

5

to violations of §1591. "Given the straightforward statutory command, there is no reason to resort to legislative history." *United States v. Gonzales*, 520 U.S. 1, 6 (1997).

Beyond that smokescreen, USVI argues that Epstein's 2008 solicitation guilty plea to solicitation of a minor is sufficient to establish JPMC's scienter, Opp. 14, 17, but fails to explain how a prior solicitation plea would give JPMC actual knowledge that Epstein was engaging in sex trafficking and using his funds to do so. The rest of USVI's scienter argument regurgitates conclusory statements from the Complaint, each of which reveals (at most) either (1) knowledge of mere *allegations* of Epstein's misconduct publicly available around the time of the relevant conduct, *e.g.*, FAC ¶¶ 44-50; or (2) knowledge *now*, gained based on events six years after JPMC exited Epstein's accounts, that Epstein appears to have used his funds at JPMC for sex-trafficking, *e.g.*, *id.* ¶¶ 42, 75. Neither establishes that JPMC knew or recklessly disregarded that Epstein was using his funds to traffic a specific victim concurrently.[7]

***Benefit.*** Finally, USVI fails to show that JPMC was receiving any benefit *in return for* its alleged facilitation of sex-trafficking. USVI first argues that no such causal relationship is required, but it fails to explain how that interpretation is consistent with the statute's requirement that the defendant "benefits … *from* participation in a venture." 18 U.S.C. § 1591(a)(2) (emphasis added).[8] USVI alternatively claims it satisfies the causal test because it "alleges a long-standing and close relationship" between JPMC and Epstein, Opp. 19, but that does not allege that JPMC received anything of value "in exchange for" participation in sex trafficking. *Id.*; Mot. 14.

---

[7] USVI's points regarding *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 701 (S.D.N.Y. 2018), do not change this Court's common-sense observation that "mere awareness of allegations … is different from knowledge of actual [misconduct]." *Id.*

[8] Although *Geiss* is not controlling, Opp. 18 n.2, it holds more weight than *H.H. v. G6 Hosp., Inc.*, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019), which addressed a §1595(a) claim with "no actual knowledge requirement," unlike USVI's §1595(d) claim.

6

## II. USVI'S TERRITORIAL-LAW CLAIMS (COUNTS II-IV) ARE IMPERMISSIBLY EXTRATERRITORIAL AND FAIL TO STATE A CLAIM

### A. USVI's Territorial-Law Claims Are Impermissibly Extraterritorial

Although USVI contends in its brief that JPMC's "criminal activity under CICO occurred almost entirely in the Virgin Islands," Opp. 19, the Complaint lacks even a single allegation that JPMC conducted *any* activity outside of New York.[9] USVI's attempt to hold JPMC accountable under *USVI* law for JPMC's actions in *New York*—on the theory that JPMC's client, Epstein, unilaterally decided to spend time in *USVI*—disregards the limits of USVI's legislative jurisdiction. Just as in the analogous personal jurisdiction context, Epstein's unilateral activity in the USVI does not confer jurisdiction over JPMC. *See, e.g.*, *Infospan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 903 (9th Cir. 2018) (no personal jurisdiction over UAE bank that did business with Cayman Islands corporation and did not conduct "any unilateral activities in California").[10]

### B. The Complaint Does Not Plead CICO Claims

#### 1. USVI fails to plead the elements of a CICO claim

As with its TVPA claims, USVI does not dispute that providing routine banking services is not enough for association and participation in a CICO enterprise. Instead, it argues that JPMC "process[ed] payments" "with knowledge" of Epstein's sex trafficking, which it asserts amounts to providing non-routine services in furtherance of the enterprise. Opp. 20-22. But "handling payments," *id.* at 22, *is* a routine banking service. *See Rosner v. Bank of China*, 528 F. Supp. 2d

---

[9] USVI disputes JPMC's extraterritoriality argument only as to USVI's CICO claims, but USVI's CFDBPA claim is impermissibly extraterritorial as well. *See* Mot. 14-15.

[10] USVI fails to establish that Staley's personal travel to USVI was in the scope of his employment. The Complaint makes no allegations that JPMC "assigned Staley to manage Epstein … for his wealth, connections, and referrals." Opp. 20. Nor does Staley's use of his work email for inappropriate personal conversations with Epstein bring Staley's actions into the ambit of his employment. *See, e.g.*, *City of Indianapolis v. West*, 81 N.E.3d 1069, 1075 (Ind. Ct. App. 2017).

7

419, 423, 431 (S.D.N.Y. 2007) (no association and participation where bank merely facilitated "transfers and withdrawals"). USVI points to no allegation that JPMC did anything to "*direct*[]" the sex trafficking enterprise's affairs. *D'Addario v. D'Addario*, 901 F.3d 80, 101, 103 (2d Cir. 2018). And USVI's sleight of hand, Opp. 21, implying that Staley's activities impugn JPMC is wrong because, even assuming Staley acted to direct the enterprise, his conduct would be far beyond his remit as a JPMC employee. *See* Mot. 18 (collecting cases).

Nor does the USVI dispute that CICO's "complete and self-contained" definition of "pattern of criminal activity" requires alleged predicate criminal conduct under federal law to have occurred "within five years of the filing" of the Complaint. 14 V.I.C. §604(j)(2)(B); *People v. McKenzie*, 66 V.I. 3, 17, 20 (Super. Ct. 2017). JPMC terminated its banking relationship with Epstein in 2013, FAC ¶¶ 41, 63, and USVI is unable to identify even a single non-conclusory allegation demonstrating criminal conduct by JPMC over the last five years.

Instead, USVI argues, without any supporting authority, both that JPMC engaged in continuous criminal "conduct" until it ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ following Epstein's arrest in 2019 and concealed such activity so as to "trigger[] equitable tolling" of the statute of limitations. Opp. 23. Both arguments fail. First, USVI fails to allege how, after JPMC terminated its banking relationship with Epstein in 2013, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ after 2013 constitutes knowing benefit from participation in some venture in violation of the TVPA (particularly when USVI itself alleges that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊, FAC ¶¶ 74-75). Similarly, even if USVI could establish that JPMC knew that ▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊ at the time they were made—and it cannot—▊▊▊▊▊▊▊▊▊▊▊▊▊ would have constituted discrete BSA violations at that time, not continual unlawful acts. *See Panos v. Universal Forest Prods., Inc.*, 2020 WL 416445, at *6 (S.D.N.Y. Jan. 27, 2020)

8

(continuing violation doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct" (cleaned up)), *aff'd*, 828 F. App'x 81 (2d Cir. 2020); *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 (2013) (similar).  Second, the five-year lookback period is a fixed time limit embedded in the definition of a substantive CICO claim element and thus not subject to equitable tolling.  *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 13-14 (2014) (presumption in favor of equitable tolling has only been applied to statutes of limitations).[11]

### 2. USVI fails to allege predicate criminal activity

USVI's attempts to establish any predicate criminal violations of either the TVPA or BSA likewise fall flat.  USVI admits that it must show that JPMC *willfully* violated the BSA, but does not ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Paradoxically, the USVI asserts, in conclusory fashion with no supporting authority, that JPMC's efforts to *comply* with both the BSA and FFIEC guidance—based on a voluntary review of Epstein's terminated accounts in light of new information following his 2019 arrest—somehow shows that JPMC knew ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *See* Mot. 21 & n.14.[12]

### C. USVI Lacks Standing To Pursue A CICO Claim Predicated On BSA Violations

USVI's attempt to assert standing for a CICO claim predicated on BSA violations relies on the same recitation that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ "harmed [USVI] and its residents by facilitating the continuation of Epstein's trafficking" because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is, in

---

[11] Moreover, CICO has a separate statute of limitations, 14 V.I.C. §607(h), and expressly incorporates limitations periods longer than five years for predicate criminal acts arising under Virgin Islands, as opposed to federal, law, 14 V.I.C. §604(j)(2)(B); *see Arellano v. McDonough*, 143 S. Ct. 543, 548 (2023) (equitable tolling unavailable if inconsistent with statutory scheme).

[12] USVI abandons its claim that JPMC violated by the BSA by failing to conduct sufficient due diligence on Epstein, which, in any event, the Complaint fails to plausibly allege.  Mot. 22.

9

general, useful in combating criminal activity. Opp. 24. These "[m]ere incantations of 'concrete harm' and 'material risk of concrete harm'" are "plainly insufficient" to plead a concrete injury to confer standing. *Schwartz v. HSBC Bank USA, N.A.*, 2017 WL 95118, at *6 (S.D.N.Y. Jan. 9, 2017), *aff'd*, 750 F. App'x 34 (2d Cir. 2018). Moreover, USVI makes no attempt to demonstrate that there is any injury that is fairly traceable to any of JPMC's alleged conduct. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### D. The Complaint Does Not Plead A Consumer Protection Claim

Baldly reciting its allegations brings USVI no closer to explaining how JPMC engaged in unfair competition actionable under CFDBPA. And whichever statute of limitations applies, JPMC's alleged conduct, ending in 2013, *see* FAC ¶ 63, falls squarely outside that period.[13] Further, even assuming USVI's contention that Epstein's alleged referral of Highbridge Capital Management to JPMC denied other banks a business opportunity, *see* Opp. 25, USVI fails to explain how this constitutes an unfair method of competition in violation of the consumer protection statute. That other banks would have otherwise had the opportunity to be Epstein's bank in exchange for his business referrals still fails to demonstrate how any of JPMC's alleged conduct harmed *consumers*—a prerequisite for bringing a CFDBPA claim. *See* 12A V.I.C. §302 (purpose is "to protect the *consuming public* from deceptive and unfair acts" (emphasis added)).[14]

### CONCLUSION

The Complaint should be dismissed with prejudice.

---

[13] 12A V.I.C. §336 unambiguously states that CFDBPA claims are "governed by" the six-year statute of limitations in 5 V.I.C. §31(3)(B). Even if USVI wants 5 V.I.C. §31(4)(B) to control, that provision imposes an even more restrictive three-year limitations period.

[14] Banks, needless to say, are not "consumers" under CFDBPA. *See* 12A V.I.C. §303(d).

| | |
|---|---|
| Dated: February 22, 2023 | Respectfully submitted,<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br><br>/s/ Felicia H. Ellsworth<br>Felicia H. Ellsworth<br>John J. Butts<br>60 State Street<br>Boston, MA 02109<br>(t) (617) 526-6000<br>(f) (617) 526-5000<br>felicia.ellsworth@wilmerhale.com<br>john.butts@wilmerhale.com<br><br>Boyd M. Johnson III<br>Robert L. Boone<br>Hillary Chutter-Ames<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>(t) (212) 230-8800<br>(f) (212) 230-8888<br>boyd.johnson@wilmerhale.com<br>robert.boone@wilmerhale.com<br>hillary.chutter-ames@wilmerhale.com<br><br>Ronald C. Machen<br>2100 Pennsylvania Avenue NW<br>Washington, DC 20037<br>(t) (202) 663-6000<br>(f) (202) 663-6363<br>ronald.machen@wilmerhale.com<br><br>*Attorneys for JPMorgan Chase Bank, N.A..* |