**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| JPMORGAN CHASE BANK, N.A., | ) ) |
| Defendant. | ) ) |

Case No. 1:22-cv-10904-JSR

**GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS'**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY RESPONSES CONCERNING**
<u>**TEMPORAL SCOPE AND DOCUMENT CUSTODIAN**</u>

# TABLE OF CONTENTS

FACTUAL BACKGROUND ..................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    A.  Discovery Through 2019 is Relevant to the Government's Claims. ................................. 2

    B.  Mr. Dimon is a Source of Relevant Information for Whom Documents Should Be Produced for the Entire Time Period. ................................................................................ 5

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*Giuffre v. Maxwell*, 2020 WL 6947435 (S.D.N.Y. Nov. 25, 2020) .................................................. 4

*Iowa Pub. Employees Retirement System v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 6273396 (S.D.N.Y. Aug. 28, 2020) ................................................................................ 7

*Lindsey v. Butler*, 2017 WL 4157352 (S.D.N.Y. Sept. 19, 2017) .................................................. 5

*Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y. 1973) ............ 2

*Martin v. Town of Westport*, 558 F. Supp. 2d 228 (D. Conn. 2008) ............................................ 2

*Milione v. CUNY*, 950 F. Supp. 2d 704 (S.D.N.Y. 2013) ............................................................ 6

*Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738 (E.D.N.C. 2017) .................................. 6

*United Illuminating Co. v. Whiting-Turner Contracting Co.*, 2020 WL 7585873 (D. Conn. Nov. 19, 2020) .................................................................................................................................. 6

*Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28 (D.D.C. 2010) ................................................ 2

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 2, 4

# FACTUAL BACKGROUND

Plaintiff, the Government of the United States Virgin Islands ("Government"), brought this civil action against Defendant JPMorgan Chase Bank, N.A. ("JPMorgan") as part of its ongoing effort to protect public safety and to hold accountable those who facilitated or participated in, directly or indirectly, the trafficking enterprise of Jeffrey Epstein ("Epstein"). The Government's investigation has revealed that JPMorgan knowingly, recklessly, and unlawfully provided and pulled the levers through which Epstein's recruiters and victims were paid and was indispensable to the operation and concealment of the Epstein trafficking enterprise. Financial institutions can connect—or choke—human trafficking networks, and enforcement actions filed and injunctive relief obtained by attorneys general are essential to ensure that enterprises like Epstein's cannot flourish in the future.

The Government alleges that Chase's wrongful conduct continued through at least August 2019. First Amended Complaint (FAC) (Doc. 47-1), ¶¶ 6, 85-91, 94, 99, 101, 116, 120-28, 134-35. JPMorgan nevertheless objects to discovery requests for post-2013 material as overly broad and unduly burdensome and refuses to provide any or virtually any post-2013 or 2014 discovery. *See* Ex. A (Resp. and Obj. to Plaintiff's First Set of Interrogatories) at 7-8, Obj. 2; Ex. B (Resp. and Obj. to Plaintiff's First Set of Requests for Production) at 3, Gen. Obj. 10; *id.* at 8, Obj. 4.

The Government designated a number of document custodians for whom JPMorgan must produce documents, including JPMorgan's CEO, James (Jamie) Dimon. Mr. Dimon was personally involved both in decisions to retain Epstein's accounts in the face of acknowledged high-risk activity, Ex. C (JPM-SDNYLIT-00003706), and in meetings and review related to Epstein's referrals of prominent and high-wealth potential clients, Ex's D-F (JPM-SDNYLIT-

00002151, 00005443 & 00006005, 00022475-77). Despite Mr. Dimon's close connections to this highly relevant subject matter, JPMorgan agrees to provide documents for him only through the year 2014.[1]

## ARGUMENT

### A. Discovery Through 2019 is Relevant to the Government's Claims.

The Government alleges that JPMorgan's unlawful conduct in facilitating Epstein's criminal sex-trafficking continued until at least August 2019. FAC ¶¶ 90-91; *see also id.* ¶¶ 6, 85-89, 94, 99, 101, 116, 120-28, 134-35. Information and documents for the entire time period through and including 2019 therefore are relevant to the Government's claims and fall well within the bounds of permissible discovery. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"); *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 233 (D. Conn. 2008) ("The relevant time period in this case can be discovered from the complaint[.]").

The Government's Complaint provides a baseline, not a ceiling, for the permissible temporal scope of discovery. *See Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 36 (D.D.C. 2010) (permitting employment discrimination plaintiff discovery covering one year before and two years after her employment); *see generally Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 589 (S.D.N.Y. 1973) ("[D]iscovery under the Federal Rules, particularly in antitrust cases, is extremely broad, and not limited to the allegations of the pleadings.").

JPMorgan has argued that its termination of Epstein's accounts in 2013 marks the outer temporal boundary of discovery. It does not. The Government's allegation that certain of JPMorgan's unlawful conduct with respect to Epstein's activity continued through at least August

---

[1] The parties held meet and confer calls on February 21 and 22, 2023, in which JPMorgan offered for the first time to provide custodial discovery for 2014. *See* Ex. G (2/21/2023 email of counsel).

2019, FAC ¶¶ 90-91, is central to its claims. *See id.* ¶¶ 94, 99, 101, 116, 120-28, 134-35. ▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JPMorgan's conduct and knowledge between 2013, when it exited Epstein's accounts (but not its relationship with Epstein), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, are important to the Government's claims.

Additionally, in 2013, JPMorgan entered into a Consent Order with the Office of Comptroller of Currency related to deficiencies in the same BSA/AML program that was responsible for ensuring compliance with respect to Epstein's accounts. As part of that Consent Order, JPMorgan was required to conduct look-backs on accounts for compliance deficiencies. Whether that review included Epstein – who was a high-risk account holder – and, if so, what was found are highly relevant and discoverable. Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. H (2/16/23 OCC letter). Thus, the Government is entitled to discover what JPMorgan did and learned regarding Epstein and the applicable compliance program between 2013 and 2019. It also is entitled to learn what if anything became clear to JPMorgan in 2019 regarding Epstein's conduct that would not have been obvious to it throughout the prior decade since the last time he was indicted for (and pled guilty to) child sex-trafficking conduct and since JPMorgan—internally—described Epstein's purchase of a 14-year old sex slave, FAC ¶ 36, and his provision of a line of credit to a modeling agency that was engaged in luring minor children for sexual play for money, *id.* ¶ 48.

3

Furthermore, JPMorgan's business referral relationship with Epstein continued even beyond the termination of his accounts and included the cultivation of other relationships of value to JPMorgan, providing additional rationale for the bank's ongoing compliance failures with respect to his activities. *See* Ex. I (JPM-USVI-00053881-82) (███████████████████████████████); Ex. J (JPM-USVI-00054066-67) (███████████████████████████████). The continuation of JPMorgan's business referral relationship with Epstein beyond 2013 and 2014 renders its insistence on either of these years (or any other before Epstein's passing) as an end-date for discovery insufficient to allow the Government to determine the full extent, duration, and importance of this relationship.

JPMorgan may also try to argue that discovery for the 2013 to 2019 period, even if relevant, is not proportional to the needs of the case. This argument, too, would have no merit. The Rule 26(b)(1) factors for assessing the proportionality of discovery—"the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"—weigh strongly in favor of allowing discovery for the full period covered by the Government's claims. The central issue in this action—alleged facilitation of criminal sex-trafficking—is of paramount public importance. *See Giuffre v. Maxwell*, 2020 WL 6947435, at *4 (S.D.N.Y. Nov. 25, 2020) ("The USVI's investigation of Epstein's estate indisputably vindicates multiple, substantial public interests, most notably shining a light on how Epstein utilized the Virgin Islands to facilitate his alleged sex trafficking operation."). So, too, is post-2013 discovery important to the Government's claims when JPMorgan has sought dismissal on the grounds that its unlawful conduct purportedly ceased in 2013. *See* Memorandum of Law in Support of Motion to Dismiss (Doc. 40) at 20.

Moreover, JPMorgan has not made any particularized showing to the Government as to the alleged burden of post-2013 (or 2014) discovery. *See Lindsey v. Butler*, 2017 WL 4157352, at *3 (S.D.N.Y. Sept. 19, 2017) ("[A] party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules, [the requested discovery] is overly broad, burdensome or oppressive.") (internal quotation marks and citations omitted). JPMorgan has not provided "hit counts" or any other estimate of the burden of searching for the period in question during the parties' negotiation.[2] In any event, any alleged production burden at this juncture would be of JPMorgan's own making. To date, JPMorgan has produced in response to the Government's requests just 113 new documents that were not part of its pre-suit productions to the Government or other law enforcement investigators.[3]

For each of the reasons set forth, the Court should compel JPMorgan to provide discovery responses and documents for the relevant time period through and including all of 2019.

### B. Mr. Dimon is a Source of Relevant Information for Whom Documents Should Be Produced for the Entire Time Period.

Jamie Dimon is a likely source of relevant and unique information based on his involvement both in decisions to retain Epstein as a customer, FAC, ¶ 51, and in discussions on Epstein's referrals of prominent and high-wealth potential clients to JPMorgan. The relevance of JPMorgan's retention of Epstein as a customer and continued servicing of his accounts after he pled guilty to a child-sex offense in 2008 is clear. *See* FAC ¶¶ 43-51, 95, 117. So, too, is JPMorgan's receipt of the benefit of Epstein's referrals of high-wealth and high-visibility

---

[2] To the extent JP Morgan asserts a burden in false positive hits of its search terms for this period or these custodians, the Government has offered to work with it to adjust search terms.

[3] With respect to alleged burden, the Government offered to exclude custodial discovery for the pre-2006 period if JPMorgan would agree not to contend that it engaged in any additional compliance activity during that period. JPMorgan has not yet responded to this proposal.

5

customers. *Id.* ¶¶ 71-73, 97, 117. As laid out below, Mr. Dimon is a unique source of information on both topics and the relationship between them for whom JPMorgan must provide documents not just for the years through 2014, as it agrees, but for the entire relevant time period through and including 2019.

JPMorgan may argue that Mr. Dimon's possession of relevant information is not enough for the Government to obtain further discovery because his position as CEO shields him from discovery under the apex doctrine. This is incorrect, as JPMorgan's agreement to provide some but not all document discovery for Mr. Dimon suggests.

First, the apex doctrine applies to proposed depositions of high-level executives, and not to document discovery as the Government seeks here. *See United Illuminating Co. v. Whiting-Turner Contracting Co.*, 2020 WL 7585873, at *2 (D. Conn. Nov. 19, 2020) (the apex doctrine "applies to the depositions of governmental officials or corporate officers, not to document discovery"); *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 749 (E.D.N.C. 2017) ("Defendants' appeal to the apex doctrine is problematic because courts applying the apex doctrine have done so to protect executives from the expense only of a deposition. In no case of which the court is aware has the apex doctrine been invoked to shield an executive from a request for production of documents.").

Second, even where the apex doctrine may apply, its proponent must make an evidentiary showing to invoke its protection by, for example, providing a sworn statement of the apex officer disavowing personal knowledge. *See Milione v. CUNY*, 950 F. Supp. 2d 704, 714 (S.D.N.Y. 2013) ("[Chancellor] Goldstein affirmed by affidavit that he has no personal knowledge of Plaintiff's employment, and the record does not indicate otherwise."). JPMorgan has not done this here.

Finally, JPMorgan cannot satisfy the apex doctrine's requirements with respect to Mr. Dimon in any event. *See generally Iowa Pub. Employees Retirement System v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020) (apex doctrine does not bar deposition where executive witness "has unique evidence, personal knowledge of the claims at issue, or . . . other witnesses are incapable of providing testimony about the alleged conduct"). Mr. Dimon is unique among fact witnesses for his involvement and decision-making authority *both* in JPMorgan's retention of Epstein as a client in the face of evidence of high-risk activity, Ex. C (JPM-SDNYLIT-00003706) (retention of Epstein accounts is "pending Dimon review"), *and* in discussions involving Epstein's referrals of prominent and high-wealth potential clients, Ex. D (JPM-SDNYLIT-00002151) (█████████████████████████████████████████████████); Ex. E (JPM-SDNYLIT-00005443, 6005) (█████████████████████████████████████████████████); Ex. F (JPM-SDNYLIT-00022475-22477) (█████████████████████████████████████████████████). Mr. Dimon therefore is uniquely positioned among fact witnesses to provide information on the *relationship* between Epstein's business referrals and JPMorgan's retention of Epstein as a customer in the face of his high-risk activity even if the apex doctrine did apply here, which it does not.



Moreover, since JPMorgan's business referral relationship with Epstein continued beyond 2013 and 2014, *supra* at 4, JPMorgan should be required to produce documents for Mr. Dimon for the entire relevant time period through and including 2019.

7

## **CONCLUSION**

For all of the foregoing reasons, the Court should order JPMorgan to designate Mr. Dimon as a document custodian and provide documents for the relevant time period through and including 2019.

Dated: February 23, 2023

**CAROL THOMAS-JACOBS, ESQ.**
**ACTING ATTORNEY GENERAL**

/s/ *Linda Singer*
Linda Singer (*pro hac vice*)
Mimi Liu (*pro hac vice* pending)
David I. Ackerman
Paige Boggs (*pro hac vice*)
MOTLEY RICE LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Tel: (202) 232-5504
Fax: (202) 232-5513
lsinger@motleyrice.com
mliu@motleyrice.com
dackerman@motleyrice.com
pboggs@motleyrice.com

Carol Thomas-Jacobs (*pro hac vice*)
Acting Attorney General of the
United States Virgin Islands
Virgin Islands Department of Justice
34-38 Kronprindsens Gade
St. Thomas, U.S. Virgin Islands 00802
Tel: (340) 774-5666 ext. 10101
carol.jacobs@doj.vi.gov

*Attorneys for Plaintiff Government of the*
*United States Virgin Islands*