IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　　　　　Defendant. | Case No. 22-cv-10904 (JSR) |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF GOVERNMENT OF THE UNITED STATES VIRGIN
ISLANDS' MOTION TO COMPEL**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

    A.    Allegations related to Epstein ........................................................................... 2

    B.    Allegations related to JPMC ............................................................................. 3

    C.    JPMC's Agreement to Expansive Discovery ..................................................... 3

ARGUMENT .................................................................................................................................. 5

    A.    USVI's Request for a Blanket Extension of Discovery to 2019 is Unjustified . 5

    B.    USVI's Exaggerated and Unnecessary Arguments About JPMC's CEO ......... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*,
    No. 11-cv-0071, 2015 WL 13649823 (S.D.N.Y. July 29, 2015) ......................................... 5

*EM Ltd. v. Republic of Argentina*,
    695 F.3d 201 (2d Cir. 2012) ............................................................................................... 7

*Robertson v. People Mag.*,
    No. 14-cv-6759, 2015 WL 9077111 (S.D.N.Y. Dec. 16, 2015) ......................................... 7

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
    No. 12-cv-6383, 2016 WL 4703656 (E.D.N.Y. Sept. 7, 2016) ..................................... 5, 6

*Vaigasi v. Solow Mgmt. Corp.*,
    No. 11-cv-5088, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ........................................... 7

**Federal Statutes**

18 U.S.C. § 1591(a)(2) ................................................................................................................. 6

14 USVI § 607 .............................................................................................................................. 8

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................................................................................... 7

**PRELIMINARY STATEMENT**

USVI's motion should be denied. It seeks to put JPMC to extraordinary, unnecessary, and disproportionate burden for custodial ESI discovery, insisting that JPMC search the ESI for many of the agreed upon custodians over a *twenty-year* period, including *more than six years after USVI concedes that JPMC terminated its banking relationship with Jeffrey Epstein* in 2013. There is no reasonable justification for such an excessive period given USVI's allegations—made after it spent years litigating with Epstein's estate—that Epstein misused his accounts at JPMC "[b]etween 2003 and 2013." The searches JPMC has proposed go beyond that window (for many custodians from 2000 to 2014) and, in an attempt to avoid burdening the court with this dispute, JPMC offered targeted additional discovery with respect to limited allegations relating to the period after Epstein left the bank. Forcing JPMC to search another five years of ESI for all custodians would only add to the already disproportionate burden it has undertaken in a case in which the USVI's own press release confirms it is seeking a double recovery for exactly the purported damages it has already recovered from its settlement with Epstein's estate for more than $105 million.

USVI also brings this motion for the improper purpose of drawing press attention to its specious and unnecessary arguments about JPMC's CEO, Jamie Dimon, who JPMC in the spirit of compromise, *had already agreed* to make an ESI custodian for a ten-year period starting with the day he joined the company through 2014. Tellingly, Dimon is the *only* one of the twenty-three agreed-upon custodians about whom USVI makes any individualized argument (or even mentions by name). Even more tellingly, is the USVI does so by attaching and misconstruing documents to erroneously argue that he has unique relevance. The superfluity of those arguments, except as a (successful) way of garnering media attention, is evident from fact that the latest of the documents USVI cited was sent more than two and a half years *before* the date through which JPMC has already agreed to review Dimon's ESI.

USVI's Motion to Compel should be denied.

## BACKGROUND

A.   **Allegations related to Epstein**

Prior to his arrest on federal charges in July 2019, Epstein was not the infamous, household name that he became. He was investigated by federal and local authorities in 2005, arrested in 2006, and he resolved those charges by pleading guilty in Florida state court in 2008 to two solicitation charges. Dkt. 16 ("FAC") ¶¶ 36-38[1]; *see also* Dep't of Just., *Executive Summary of Report: Investigation into the U.S. Attorney's Office for the Southern District of Florida's Resolution of its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and its Interactions with Victims during the Investigation* at ii (Nov. 2020) (hereinafter, "DOJ Report").[2] That same year, Epstein and federal law enforcement entered into a non-prosecution agreement. FAC ¶ 39; DOJ Report at i-ii. On the solicitation charges, Epstein was sentenced to eighteen months in county jail, but he was allowed to leave on unsupervised work release for up to twelve hours a day and only ended up serving thirteen months of his sentence before he was released. FAC ¶ 38; DOJ Report at iii.

After being released, Epstein returned to the USVI, registered as a sex offender, and was feted by the USVI with more than $80 million in tax incentives. In July 2019, federal prosecutors in New York indicted Epstein for sex trafficking between 2002 and 2004 and arrested him. *See* FAC ¶ 32; Press Release, *Jeffrey Epstein Charged In Manhattan Federal Court With Sex Trafficking Of Minors* (July 8, 2019), https://www.justice.gov/usao-sdny/pr/jeffrey-epstein-charged-manhattan-federal-court-sex-trafficking-minors.

---

[1]   For purposes of this Memorandum only, JPMC does not dispute the allegations in USVI's First Amended Complaint, because USVI relies on these allegations to establish the scope of relevant discovery.

[2]   Available at https://www.justice.gov/opr/page/file/1336471/download.

2

B.     **Allegations related to JPMC**

According to the USVI's complaint, "[b]etween 2003 and 2013, Epstein and/or his associates used Epstein's [JPMC] accounts to make numerous payments to individual women and related companies." FAC ¶ 66. During this time period, he also made "significant cash withdrawals," *id.* ¶ 67, and "appeared to be misusing" accounts for charitable organizations, *id.* ¶68.

Based on these purported "red flags," USVI claims that JPMC reached the wrong conclusion in a "2013 compliance report" that reported "'nothing unusual,'" "denie[d] that any 'unusual activity' was detected," and reported that "Epstein's transaction activity appears 'reasonable, normal, and expected for the type of business or industry in which the client engages.'" *Id.* ¶ 69. "In July 2013," JPMC "terminated [its] relationship with Epstein." *Id.* ¶ 63. Thereafter, USVI alleges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 75.

Based on those allegations, USVI asserts a *parens patriae* claim under the TVPA, a derivative claim under the USVI's Criminally Influence and Corrupt Organizations Act ("CICO"), a second CICO claim based on a purported criminal failure to comply with federal banking regulations ▮▮▮▮▮▮▮▮▮▮▮▮▮ (which USVI concedes requires a showing of willfulness), and a claim under the USVI's unfair competition statute.

C.     **JPMC's Agreement to Expansive Discovery**

Although each of USVI's claims fails as a matter of law, *see* Dkts. 39 & 55, JPMC has nonetheless agreed to provide expansive discovery, negotiating in good faith the parameters of collection and review of ESI through joint meet and confers with counsel for both USVI and Doe. *See* Dkt. 5 (consolidating this case with the *Doe* case "for all pre-trial

3

purposes"). Through those discussions, JPMC has agreed to search the ESI of twenty-three custodians, half of which for a *fifteen-year* period from 2000 to 2014, using a list of more than three hundred broad search terms.

At the outset of the parties' discussions, JPMC proposed to search twelve custodians for the period 2000 to 2013 in light of USVI's allegations that Epstein made improper uses of his accounts "[b]etween 2003 and 2013." The twelve custodians included Staley; the private bankers who covered Epstein's accounts from 2000 to his involuntary exit in 2013 (Mary Casey, Paul Morris, and Justin Nelson); other employees who worked on Epstein's accounts (Kyle Siebert and Tom McGraw); senior executives at JPMC's private bank (Mary Erdoes and Catherine Keating); and compliance and risk management personnel (William Langford, Philip DeLuca, Jim Dalessio, and Maryanne Ryan). Ex. 1 (B. Conery email on 2/3/23 at 8:11p). While JPMC did not believe more was required (or even reasonable), over the course of several exchanges between the parties, JPMC ultimately agreed, as a compromise, to Plaintiffs' requests for an additional eleven custodians—*including JPMC CEO Jamie Dimon*—albeit using individualized start dates and, with two exceptions, a 2013 end date. Ex. 2 (J. Butts email on 2/10/23 at 7:26p); Ex. 3 (J. Butts emails on 2/21/23 at 5:55p and 2/22/23 at 3:29p). USVI agreed to all custodians' start dates, but it demanded, with the same two exceptions, that JPMC search its custodians through 2019—that is, *six years after JPMC ended its relationship with Epstein*. For half of the custodians that equates to a review period of *twenty years*. Ex. 3 (D. Ackerman email on 2/22/23 at 4:26p).

USVI's rationale for this date range ████████████████████████████████. After further conferring with USVI, JPMC agreed to: ████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████; and (iii) extend the custodians with a 2013 end date to 2014. *See* Ex. 3

4

[D. Ackerman email on 2/22/23 at 4:49p] (scheduling call). USVI rejected JPMC's proposal and filed this motion.

## ARGUMENT

A.  **USVI's Request for a Blanket Extension of Discovery to 2019 is Unjustified**

As detailed above, JPMC has proposed reasonable date ranges for collection, review, and production of documents, including broad ESI searches of twenty-three custodians, twenty-one of whom will be reviewed through 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Those parameters are well tailored to USVI's allegations that "[b]etween 2003 and 2013," Epstein used his JPMC accounts for sex trafficking, FAC ¶ 66, and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ¶ 75. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not a basis for USVI to insist on blanket five-year extensions on ESI search parameters for all custodians. Five years of ESI is a lengthy period in any case, and here, it would result in a *twenty-year* search for many custodians.

To begin with, USVI has failed to articulate a concrete basis to justify this extended period. "[T]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. 12-cv-6383, 2016 WL 4703656, at *2 (E.D.N.Y. Sept. 7, 2016). USVI has not made this showing. Its conclusory allegations about the post-2014 period are not sufficient to warrant this discovery. *See United States ex rel. Bilotta v. Novartis Pharms.*

---

[3] *See* Dkt. 39 at 21 & n.14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

*Corp.*, No. 11-cv-0071, 2015 WL 13649823, at *3 (S.D.N.Y. July 29, 2015) ("[R]ote allegations of 'ongoing' illegal activity, unaccompanied by allegations of specific instances of wrongdoing, are insufficient to justify discovery beyond the time period during which specific instances of wrongdoing have been alleged.").

The only specific wrongdoing USVI alleges after 2014 is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ USVI's meager arguments do not justify such a broad expansion of the discovery period. It is telling that after taking broad discovery in the *Indyke* action against Epstein's estate, including third-party discovery from JPMC, the *only* document USVI can muster as support for its purported need to go beyond the 2014 date JPMC offered is a single email (Ex. J) between a JPMC employee and Epstein in 2015 that refers to the possibility of a line of credit for a third party who was an existing JPMC customer. In addition to USVI's inability to muster anything else, this lone email is no justification for any claimed wrongdoing, as TVPA claims require a benefit in return for facilitating sex-trafficking, *see* 18 U.S.C. § 1591(a)(2) (requiring that defendant "benefits … *from* participation in a venture" (emphasis added)). As USVI concedes in its complaint, JPMC had terminated its banking relationship with Epstein long before 2015.

Other than that lone email, all the USVI can do is speculate as to the possibility that in connection with the implementation of an OCC Consent Order that had nothing to do with Epstein, someone might have said something about him. That speculative assertion is, at best, an impermissible request to go on a fishing expedition and not a justification for a five-year extension of the discovery period. *See Sky Med. Supply*, 2016 WL 4703656, at *2.[4]

---

[4] The OCC's decision to waive, for purposes of this action, its supervisory privilege over the consent order in exchange for not having to comply with the breathtakingly broad *Touhy* request USVI sent the OCC is insignificant to this dispute. USVI Br. Ex. H. Among

6

In addition, the five-year expansion USVI seeks is wholly disproportionate to the needs of the case. The proportionality doctrine set forth in Rule 26(b)(1)—consistent with the "broad latitude" of district courts "to determine the scope of discovery and manage the discovery process," *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)—"serves to exhort judges to exercise their preexisting control over discovery more exactingly," *Robertson v. People Mag.*, No. 14-cv-6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015). Among other things, it considers "the importance of the discovery in resolving the issues," and whether "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In that respect, "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016).

The proportionality factors strongly favor denying USVI's motion. Rule 26 instructs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1). USVI's argument focuses almost entirely on the importance of sex trafficking as an issue. While JPMC does not dispute that sex trafficking is an important issue, it is well addressed by the extraordinary discovery JPMC has agreed to provide, including *15 years* of broad discovery along with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

As to the amount in controversy, the only purported damage USVI has identified is $80.5 million of tax incentives it gave Epstein (incentives it knowingly provided while he

---

other things, the OCC took no stance on relevance, burden, proportionality, or the many other issues at issue here.

7

was registered with the USVI as a sex offender). Ex. 4 (USVI Responses and Objections to JPMC's First Set of Interrogatories). That claim demonstrates the absence of any damage, as the USVI announced prior to filing this action that it had fully recovered that sum—and more—from Epstein's estate. Ex. 5 (Press Release, *U.S. Virgin Islands Attorney General Settles Sex Trafficking Case Against Estate of Jeffrey Epstein and Co-Defendants for Over $105 Million* (Dec. 1, 2022) (quoting the USVI Attorney General as stating "[t]he settlement … will return to the Virgin Islands more than $80 million in economic development tax benefits")). And while USVI's CICO claims provide a mechanism for civil penalties, the statute caps civil penalties at $1 million in the aggregate. 14 USVI § 607(e).

As to access to information, while it is true that JPMC has access to its own documents, USVI has access to a massive trove of information developed during its litigation against the Epstein estate, including documents from countless third parties (like JPMC) USVI subpoenaed along the way (as part of an apparently still-ongoing investigation). If there were evidence supporting discovery from JPMC from 2014-2019, USVI would have found it.

Finally, in contrast with USVI's paltry (if that) allegations of relevance, the burden imposed by an across-the-board expansion of discovery for a five-year period, *i.e.*, for all twenty-three custodians and all 300+ search terms, is extraordinary. Expanding the date range for USVI's custodians as USVI suggests would increase the number of documents captured by the custodian/search term protocol from at least 364,000 to at least 694,000.[5] When compared with USVI's tenuous arguments regarding relevance, this level of expansion is unjustified.

---

[5] Because the parties only reached agreement on search terms and custodians late last week, JPMC is still collecting data for a handful of custodians and has not been able to confirm final numbers for these parameters, which will likely increase when finalized.

### B.     USVI's Exaggerated and Unnecessary Arguments About JPMC's CEO.

The disingenuousness of USVI's motion is further evident from the fact that, of the twenty-three ESI custodians that the parties agreed upon, the *only* custodian USVI singles out is JPMC's CEO.  In fact, although JPMC had already agreed to make him a custodian, USVI devoted half of its motion to Dimon, ending with a duplicative claim for relief.  *Compare* Dkt. 58 ("USVI MOL") at 5 ("[T]he Court should compel JPMorgan to provide … documents … through and including all of 2019") *with id.* at 7 ("JPMorgan should be required to produce documents for Mr. Dimon … through and including 2019").  There is no reason for USVI to have made this argument other than drawing further media attention to this case in search of headlines.  *See, e.g.*, *Dimon Records Sought in Suits over JPMorgan's Epstein Ties*, Bloomberg (Feb. 23, 2013), https://www.bloomberg.com/news /articles/2023-02-23/jamie-dimon-records-sought-in-suits-over-jpmorgan-s-epstein-ties; *JPMorgan should reveal more about CEO Dimon's role in Epstein accounts -U.S. Virgin Islands*, Reuters (Feb. 23, 2023), https://www.reuters.com/legal/jpmorgan-should-reveal-more-about-ceo-dimons-role-epstein-accounts-us-virgin-2023-02-24/.

To be clear, although JPMC agreed to include him as a custodian, Dimon is not relevant to this action.  He was not involved in any decisions regarding Epstein's account, nor ███████████████████████████████████████████████████████████████.  Out of the inordinate number of documents USVI obtained in its litigation with Epstein's estate, USVI's arguments about Dimon's purported relevance are based on mischaracterizations or selective reference to only portions of a few documents, and, in one, trumpeting an errant reference.  For example, USVI describes one document (Ex. E) as reflecting "Epstein's arrangement of meetings between Dimon or Staley and foreign government finance official," omitting the fact that Staley rebuffed Epstein's request, responding that Dimon "is in Asia."  In another, USVI describes a document (Ex. F) as

9

reflecting "Epstein's introduction of American financier as potential client being reviewed by Dimon," when the email's reference to "our ceo" refers to a conversation with "[J]ohn [Duffy]," who was then the CEO of JPMC's US Private Bank.

Nevertheless, despite Dimon's lack of relevance, JPMC agreed to accept him as a custodian to demonstrate that to Plaintiffs and to avoid burdening the Court with this issue. Unfortunately, despite this agreement, USVI decided to take up the Court's time anyway. But nothing in USVI's motion provides a credible basis for continuing JPMC's search beyond 2014. The three documents USVI cites—from 2008, 2009, and 2012, USVI MOL at 7—fall within the over-ten-year JPMC agreed to search. Dimon's ESI, which begins on the day he joined JPMC in July 2004 through the end of 2014.[6] And nothing in those documents suggest any involvement by Dimon after that date.

## CONCLUSION

For the foregoing reasons, USVI's Motion to Compel should be denied.

---

[6] Without anything of real import to say, USVI spills significant ink addressing the question of whether the apex doctrine is relevant for document discovery purposes. USVI MOL at 6. Obviously, in agreeing to accept Dimon as a custodian, JPMC has not taken that position. The doctrine will, however, become relevant if plaintiffs seek Dimon's deposition, because the document review JPMC has agreed to do will by then have refuted USVI's insistence that Dimon has some unique relevance.

10

Dated: February 28, 2023					Respectfully submitted,

					**WILMER CUTLER PICKERING**
					    **HALE AND DORR LLP**

					/s/ Felicia H. Ellsworth
					Felicia H. Ellsworth
					John J. Butts
					60 State Street
					Boston, MA 02109
					(t) (617) 526-6000
					(f) (617) 526-5000
					felicia.ellsworth@wilmerhale.com
					john.butts@wilmerhale.com

					Boyd M. Johnson III
					Robert L. Boone
					Hillary Chutter-Ames
					7 World Trade Center
					250 Greenwich Street
					New York, NY 10007
					(t) (212) 230-8800
					(f) (212) 230-8888
					boyd.johnson@wilmerhale.com
					robert.boone@wilmerhale.com
					hillary.chutter-ames@wilmerhale.com

					*Attorneys for JPMorgan Chase Bank, N.A.*