IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>        Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>        Defendant/Third-Party Plaintiff. | Case No. 22-cv-10904-JSR<br><br>JURY TRIAL DEMANDED |
| JPMORGAN CHASE BANK, N.A.,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>JAMES EDWARD STALEY,<br><br>        Third-Party Defendant. | |

**JPMORGAN CHASE BANK, N.A.'S THIRD-PARTY COMPLAINT
AGAINST JAMES EDWARD STALEY**

Pursuant to Federal Rule of Civil Procedure 14(a), Defendant JPMorgan Chase Bank, N.A. ("JPMC"), by its undersigned counsel, files this Third-Party Complaint against Third-Party Defendant James Edward "Jes" Staley ("Staley") for indemnity, contribution, breach of fiduciary duty, and breach of the faithless servant doctrine. In support, JPMC alleges as follows:

**PRELIMINARY STATEMENT**

1. On December 27, 2022, Plaintiff the Government of the United States Virgin Islands ("the USVI") filed this action entitled *Government of the United States Virgin Islands v. JP*

*Morgan Chase Bank, N.A.*, Case No. 22-cv-10904-JSR (S.D.N.Y.). The USVI filed a First Amended Complaint on January 10, 2023 ("USVI Complaint"). Dkt. 17 (attached as Ex. A). JPMC moved to dismiss that complaint (Dkt. 39) and has not yet filed an answer.

2.      This Court consolidated this case for pretrial purposes with a case brought against JPMC by Jane Doe 1 ("Doe") on behalf of herself and others, *Doe v. JPMorgan Chase Bank, N.A.*, 22-cv-10019-JSR (S.D.N.Y.). Doe filed a First Amended Complaint on January 13, 2023 ("Doe Complaint") (attached as Ex. B). JPMC has moved to dismiss that complaint and has not yet filed an answer.

3.      This Third-Party Complaint references unproven allegations in the Doe Complaint and the USVI Complaint. To be clear, JPMC does not admit those allegations, denies all liability, and disputes both Doe's and the USVI's right to recover under the law from JPMC. Rather, *if* JPMC is responsible for any damages to Doe, it is entitled to recover the entire amount of any damages from Staley as indemnification or a percentage of those damages in contribution. JPMC also brings independent claims against Staley for breach of fiduciary duty and violation of the faithless servant doctrine.

## PARTIES

4.      JPMC is a national bank whose main office is located in Columbus, Ohio, as designated in its Articles of Association.

5.      On information and belief, third-party defendant Staley is a citizen and resident of New York, New York.

## JURISDICTION

6.      This Court has subject matter jurisdiction over JPMC's third-party claims under 28 U.S.C. § 1367(a) because they are so related to Doe's claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Section 1367(b) does not divest this Court of supplemental jurisdiction because Doe has asserted claims under federal law, and this Court has jurisdiction over those claims under 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over JPMC's third-party claims against Staley because: (i) its claims do not raise novel or complex issues of state law; (ii) its claims do not predominate over Doe's claims; and (iii) no exceptional circumstances compel this Court to decline jurisdiction. 28 U.S.C. § 1367(c).

## VENUE

9. Venue is proper in this district under the doctrine of ancillary venue.

10. Venue is also proper in this district as Staley is a resident of this district, and a substantial part of the property and events that are the subject of the action are situated in this district.

## DOE'S COMPLAINT

11. Doe seeks damages from JPMC for herself and other individuals allegedly exploited by Jeffrey Epstein ("Epstein") under New York intentional tort law, New York negligence law, and the federal Trafficking Victims Protection Act ("TVPA"). Ex. B, ¶¶ 286–490.

12. Doe alleges, among other things, that she was a victim of Epstein's "sex trafficking scheme" and that "from 2006 through 2013, Epstein sexually abused Jane Doe 1 on a number of occasions in New York, Florida, New Mexico, and the United States Virgin Islands." *Id*., ¶¶ 94–99.

13. JPMC denies Doe's tort allegations that it: knew of or committed some overt act in furtherance of Epstein or others battering Doe; acted intentionally to cause Doe emotional distress; caused her injuries; or had a duty to her to protect her from Epstein's acts. JPMC also denies Doe's

TVPA allegations that it: "perpetrate[d]" sex trafficking; "participate[d]" in an Epstein sex-trafficking venture; "knowingly" received benefits from any alleged participation; or knew that an Epstein venture trafficked Doe. JPMC also denies that: it aided or abetted any alleged acts unlawful under the TVPA; attempted to aid or abet or otherwise participate in the alleged sex trafficking venture; conspired to participate or benefit from the alleged sex trafficking venture; or obstructed any investigation into the alleged sex trafficking venture. JPMC has moved to dismiss Doe's complaint because it is without legal merit, and it will more fully detail its factual denials of Doe's claims if it is required to answer her complaint.

## THE USVI'S COMPLAINT

14. The USVI seeks damages from JPMC under four claims: (1) a claim for participating in a sex trafficking venture under the TVPA(18 U.S.C. §§ 1591(a)(2) and 1595(d)); (2) a claim under its own civil RICO statute (14 V.I.C. §§ 604(e) and 605(a)) for participating in an enterprise which violates the TVPA; (3) a claim under its civil RICO statute for violating the Bank Secrecy Act (31 U.S.C. § 5322(a)); and (4) a claim under its deceptive business practices act. Ex. A, ¶¶ 92–136.

15. JPMC denies the USVI's allegations that it: knowingly benefited from or participated in a sex-trafficking venture; engaged in racketeering or an otherwise criminal organization; engaged in unfair competition; or failed to abide by federal banking laws. JPMC has moved to dismiss the USVI's complaint because it is without legal merit, and it will more fully detail its factual denials of the USVI's claims if it is required to answer the USVI's complaint.

## JAMES STALEY

16. From 1979 to 2013, JPMC employed Staley in various positions. From 2001 to 2009, Staley was the Chief Executive Officer of JPMC's Asset Management line of business. In

4

2009, Staley became the Chief Executive Officer of JPMC's Corporate and Investment Banking line of business.

17. At all times during his employment, Staley had a duty of loyalty to JPMC, and he was required to act in good faith in JPMC's best interests. That duty required Staley to refrain from activities that he knew would damage JPMC, either financially or reputationally, and to report to JPMC any facts or knowledge relevant to his duties that could affect JPMC's reputation or that was relevant to JPMC's decisions to retain a client whose business with JPMC might damage that reputation. Instead, if the allegations of Doe and the USVI are true, Staley repeatedly abandoned the interests of JPMC and served his own and Epstein's interests.

18. Beginning in at least 2006 through 2012, Staley signed a written affirmation each year entitled "Code of Conduct [year] Affirmation Record." In each of those affirmations, Staley pledged: "I agree, as a condition of employment, to remain in compliance with the Code and the supplemental policies that apply to me, all as amended from time to time."

19. Each version of the JPMC Code of Conduct in effect from 2006 through 2012 emphasized that all JPMC employees must "conduct the firm's business in accordance with the highest ethical standards, respecting the firm's customers, suppliers, and other business counterparties, dealing responsibly with the firm's assets, and complying with applicable legal and regulatory requirements."

20. JPMC's Code of Conduct also expressly prohibited, among other things, engaging in outside activities that, even if outside the scope of employment, "reflect adversely on JPMorgan Chase or give rise to a real or apparent conflict of interest with your duties to the firm."

21. Upon his departure from JPMC in 2013, Staley executed an Agreement and Release with JPMC in which he agreed to continue to be bound by the JPMC's Code of Conduct and also

affirmed that he had advised the Company of all facts of which he was aware that he believed may constitute a violation of the Company's Code of Conduct and/or the Company's legal obligations.

## DOE'S ALLEGATIONS

22. Doe alleges that "Staley knew without any doubt that Epstein was trafficking and abusing girls" and that "all of [Epstein's] staff, including his main attorney and accountant, worked full time to conceal the illegal operation." Ex. A, ¶ 128.

23. Doe repeatedly alleges in her complaint that JPMC knew of or participated in Epstein's sex trafficking venture "through Staley." *See, e.g., id.*, ¶ 200 ("Not only was JP Morgan (through Staley) well aware of the allegations, but JP Morgan (through Staley) knew the identities of co-conspirators and many of the victims."); *see also id.*, ¶¶ 135, 164, 205–206, 230–231, 239, 327–328, 360.

24. Doe also alleges, "Staley had observed victims personally, and he was aware that Epstein was shelling out millions of dollars to attorneys to take on these well-founded allegations." *Id.*, ¶ 200.

25. Doe alleges that Staley "personally observed Doe as a sex trafficking and abuse victim at times including through his departure from JP Morgan in 2013." *Id.*, ¶ 115.

26. Doe further alleges that Staley "personally spent time with young girls whom he met through Epstein on several occasions"; "personally visited young girls at Epstein's apartments located at 301 East 66th Street"; "personally observed Epstein around young girls"; and personally observed, "Epstein sexually grab young women in front of him." *Id.*, ¶ 227; *see also id.*, ¶ 226.

27. Doe alleges that "one of Epstein's friends used aggressive force in his sexual assault of her and informed Jane Doe 1 that he had Epstein's permission to do what he wanted to her." *Id.*,

¶ 107. Upon information and belief, Staley is this person, who she described as a "powerful financial executive" she had historically been afraid to identify.

28. Doe also alleges that Staley promised to "use his clout within JP Morgan to make Epstein untouchable." *Id.*, ¶ 132. She claims that despite his alleged knowledge of the sex trafficking scheme, Staley repeatedly thwarted JPMC's efforts to sever ties with Epstein. *Id.*, ¶¶ 184, 188.

## THE USVI'S ALLEGATIONS

29. The USVI alleges that between 2008 and 2012, Staley had "a close personal relationship and 'profound' friendship" with Epstein, and that their correspondence "even suggest[s] that Staley may have been involved in Epstein's sex-trafficking operation." Ex. A, ¶ 53.

30. Further, the USVI alleges that Staley visited Epstein's residence in Palm Beach in January 2009 and that this visit corresponded with Epstein wiring $2,000 to a woman with an Eastern European surname. *Id.*, ¶ 54.

31. In addition, the USVI alleges after Staley emailed Epstein in late August 2009 that he would be in London a week later, Epstein asked whether Staley would need anything during his visit, and Staley replied, "Yep." *Id.*, ¶ 55. According to the USVI, on August 31, 2009, Epstein wired $3,000 to the same Eastern European woman. *Id.*

32. The USVI alleges that on July 10, 2010, Staley emailed Epstein, "Maybe they're tracking u?? That was fun. Say hi to Snow White." Epstein responded, "what character would you like next." Staley replied, "Beauty and the Beast….." Epstein responded, "well one side is available." Ex. A, ¶ 61.

33. In its First Amended Complaint, the USVI alleges that Staley had knowledge of Epstein's sex trafficking venture, as well as a role in convincing JPMC to maintain Epstein as a JPMC client. *See, e.g., id.*, ¶¶ 47, 52–63, 71–73.

## STALEY CONCEALED HIS PERSONAL ACTIVITIES WITH EPSTEIN AND HIS CONFLICT OF INTEREST WITH JPMC

34. While JPMC held discussions regarding Epstein, Staley was apparently in regular contact with Epstein. However, Staley never disclosed to anyone at JPMC that he had witnessed, was aware of, or participated in any of the activities described in paragraphs 22 through 33.

35. In 2013, JPMC "terminated its relationship with Epstein." Ex. A, ¶ 50.

36. At no point did Staley disclose to JPMC, nor did JPMC otherwise know, the information about Staley's personal activities contained in paragraphs 22 through 33.

37. Staley did not disclose this information despite having a fiduciary duty to do so and JPMC asking him to offer his views as to whether JPMC should retain Epstein as a client.

38. Even upon his departure from JPMC, and in spite of his explicit affirmation that he had reported to JPMC any violations of the Code of Conduct, Staley did not disclose to JPMC the information about his personal activities contained in paragraphs 22 through 33.

39. Instead, Staley repeatedly abandoned the interests of JPMC in pursuit of his own personal interests and benefits and those of Epstein.

40. Staley's failure to disclose the information alleged—although JPMC does not admit that Doe's and the USVI's allegations are true—was a direct and proximate cause of JPMC's decision to continue to do business with Epstein until 2013.

41. In addition, Staley's abandonment of the interests of JPMC in favor of his own personal interests and benefits and those of Epstein was a direct and proximate cause of JPMC's decision to continue to do business with Epstein until 2013.

42. Accordingly, to the extent that Staley knew of, participated in, or witnessed sexual abuse associated with Epstein and did not report it to, actively concealed it from, or misrepresented his knowledge to JPMC, Staley, not JPMC, is responsible for any injuries Epstein may have caused

to the USVI, even though the alleged knowledge, participation, and observations were not in connection with the performance of his duties for JPMC.

## COUNT I: INDEMNIFICATION

43. JPMC repeats and realleges paragraphs 1 through 42 hereof as if fully set forth herein.

44. JPMC is not liable to the USVI or any other person for any of the claims, if true, made by the USVI in its complaint.

45. As an employee of JPMC, Staley had a preexisting relationship with JPMC sufficient to give rise to a common-law duty to indemnify JPMC for any liability JPMC may have based on Staley's conduct.

46. The USVI seeks to hold JPMC liable based in substantial part on the acts or omissions of Staley, whom the USVI alleges was the primary actor (along with Epstein) responsible for its injuries.

47. If the USVI is successful on its claims, Staley is solely liable to the USVI, or liable to JPMC for all sums awarded to the USVI and against JPMC, if any, at trial.

48. Should the USVI succeed on any of its claims—and JPMC denies that it is liable to the USVI —Staley is liable to JPMC by way of indemnification for all damages awarded to the USVI, together with costs, attorneys' fees, and such other relief as the Court deems just and appropriate.

## COUNT II: CONTRIBUTION

49. JPMC repeats and realleges paragraphs 1 through 48 hereof as if fully set forth herein.

50. Courts in the United States Virgin Islands have recognized a common law right to contribution.

51. Contribution is also permitted under the TVPA.

52. In its First Amended Complaint, and through the ongoing discovery process, the USVI alleges that Staley had knowledge of Epstein's purported sex trafficking venture, as well as a role in convincing JPMC to maintain Epstein as a JPMC client. *See, e.g.*, Ex. A, ¶¶ 47, 52–63, 71–73.

53. If the USVI is successful on its claims—and JPMC denies that it is legally liable to the USVI —Staley's actions caused or substantially contributed to any resulting damages.

54. If the USVI is successful on its claims—and JPMC denies that it is legally liable to the USVI — Staley is solely liable to the USVI, jointly and severally liable to the USVI, or liable to JPMC for all sums awarded to the USVI and against JPMC, if any, at trial.

55. Should the USVI succeed on any of its claims—and JPMC denies that it is legally liable to the USVI —Staley is liable to JPMC by way of contribution for all damages awarded to the USVI, jointly and severally, together with costs, attorneys' fees, and such other relief as the Court deems just and appropriate.

## COUNT III: BREACH OF FIDUCIARY DUTY.

56. JPMC repeats and realleges paragraphs 1 through 55 hereof as if fully set forth herein.

57. Under New York law, an employee owes a fiduciary duty to their employer. That duty requires the employee to exercise the utmost good faith and loyalty in the performance of his duties at all times and to refrain from acting in any manner inconsistent with his agency or trust.

58. Staley owed a fiduciary duty to JPMC.

59. Based on the allegations of Doe and the USVI—which JPMC does not admit and has not yet answered—as well as the additional facts alleged herein, Staley continuously breached

his fiduciary duty, acting against the interests of JPMC and in his own personal interests and benefits and those of Epstein.

60. Staley breached his fiduciary duty by engaging in inappropriate conduct in his personal dealings with Epstein outside the scope of his employment that was harmful to JPMC's reputation and that posed a conflict of interest. By failing to report to, or fraudulently concealing from, JPMC relevant facts that he knew and actions he observed relating to Epstein, including with respect to JPMC's evaluations of Epstein's banking relationship, Staley harmed JPMC.

61. On the basis of the allegations of Doe and the USVI and the additional facts alleged herein, Staley affirmatively misrepresented the true facts of his and Epstein's personal interactions and activities to JPMC and repeatedly provided misleading information to JPMC when vouching for Epstein's character and conduct.

62. Staley's failure to report material facts to JPMC continued for years, from at least 2000 through his departure from JPMC in 2013, through to the filing of this complaint.

63. Staley's breach of fiduciary duty was a direct and proximate cause of JPMC's decision to continue to do business with Epstein until 2013.

64. As a result of Staley's breach of fiduciary duty, JPMC suffered adverse publicity from press coverage of the lawsuits from Doe and the USVI.

65. In addition to damages for the cost of defending Doe's and the USVI's actions, in the event JPMC has to pay any amounts in damages, Staley's breach of fiduciary duty will have caused those losses.

66. In light of Staley's intentional and outrageous conduct in failing to disclose pertinent information and abandoning JPMC's interests in favor of his own and Epstein's personal interests, JPMC is entitled to punitive damages.

**COUNT IV: VIOLATION OF THE FAITHLESS SERVANT DOCTRINE**

67. JPMC repeats and realleges paragraphs 1 through 66 hereof as if fully set forth herein.

68. An employee owes a duty of utmost loyalty to his employer.

69. An employee who is faithless in the performance of his services breaches the duty of loyalty, and he is not entitled to receive compensation for those services.

70. Based on the allegations of Doe and the USVI—which JPMC does not admit and has not yet answered—as well as the additional facts alleged herein, Staley breached his duty of loyalty and acted as a faithless servant to JPMC.

71. On the basis of the allegations of Doe and the USVI and the additional facts alleged herein, Staley abandoned the interests of JPMC and served his own and Epstein's interests.

72. As noted above, Staley failed to report his knowledge of and personal conduct with Epstein to JPMC and instead consistently and misleadingly vouched for Epstein's good character and conduct while JPMC was deliberating on whether JPMC should continue to do business with Epstein.

73. On the basis of the allegations of Doe and the USVI and the additional facts alleged herein, Staley's activities constitute misconduct that rises to the level of a breach of a duty of loyalty or good faith.

74. Staley's activities based upon Doe's and the USVI's allegations and the additional allegations alleged herein demonstrate that Staley substantially violated the JPMC Code of Conduct in a way that permeated his service to JPMC in material and substantial part.

75. On the basis of the allegations of Doe and the USVI and the additional facts alleged herein, Staley's acts of disloyalty occurred repeatedly, lasted for years, and persisted despite numerous opportunities to correct them.

76. Staley's acts of disloyalty also occurred in his primary area of responsibility.

77. On the basis of the allegations of Doe and the USVI and the additional facts alleged herein, Staley persisted for years—from at least 2006 until his departure from JPMC in 2013—in protecting Epstein in the face of attempts by JPMC to end the company's relationship with Epstein, omitted material information, made misrepresentations in the process, and continued to do so.

78. As a result of Staley's faithless service, JPMC is entitled to recover all compensation paid to Staley during the time period of his disloyalty.

79. In light of Staley's intentional and outrageous conduct in failing to disclose pertinent information and abandoning JPMC's interests in favor of his own and Epstein's personal interests, JPMC is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Defendant/Third-Party JPMC prays for judgment against Staley as follows:

1. In the event JPMC is found liable for any of the USVI's claims in this action, for indemnity against Staley for all damages awarded to the USVI;

2. In the event JPMC is found liable for any of the USVI's claims in this action, for contribution against Staley for his proportionate share of the amount awarded to the USVI;

3. For all damages caused to JPMC by Staley's breach of fiduciary duty, including any damages awarded to the USVI or Doe and JPMC's costs of defending those actions;

4. For all compensation paid to Staley during the time period of his disloyalty, from at least 2006 through 2013;

5. For punitive damages for Staley's breach of fiduciary duty and violation of the faithless servant doctrine;

6. For all costs and attorneys' fees associated with this third-party action; and

7.  For such other such relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

JPMC demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 8, 2023

Respectfully submitted,

**MASSEY & GAIL LLP**

/s/ Leonard A. Gail
Leonard A. Gail (*pro hac vice*)
Rachel Morse (*pro hac vice*)
Caitlin Kovacs (*pro hac vice*)
50 East Washington Street, Suite 400
Chicago, IL 60602
(t) (312) 283-1590
lgail@masseygail.com
rmorse@masseygail.com
ckovacs@masseygail.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

Ronald C. Machen
2100 Pennsylvania Avenue NW
Washington, DC 20037
(t) (202) 663-6000
(f) (202) 663-6363
ronald.machen@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*