**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | |
|       Plaintiff, | |
| v. | Case Number: 1:22-cv-10019-JSR |
| JPMORGAN CHASE BANK, N.A. | |
|       Defendant/Third-Party Plaintiff. | |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, | |
|       Plaintiff, | |
| v. | Case Number: 1:22-cv-10904-JSR |
| JPMORGAN CHASE BANK, N.A. | |
|       Defendant/Third-Party Plaintiff. | |
| JPMORGAN CHASE BANK, N.A. | |
|       Third-Party Plaintiff, | |
| v. | |
| JAMES EDWARD STALEY | |
|       Third-Party Defendant. | |

**THIRD-PARTY DEFENDANT JAMES STALEY'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD.................................................................................................................. 6

ARGUMENT ............................................................................................................................ 7

I.  The Indemnity and Contribution Claims (Counts I and II) Fail as a Matter of Law ............... 7

    A.  JPMorgan's Shotgun Pleading Warrants Dismissal of Counts I and II ...................... 7

    B.  There Is No Right To Indemnity or Contribution Under the TVPA............................. 8

    C.  JPMorgan's Indemnification Claim Fails for Additional Reasons ........................... 11

        i.  Mr. Staley's Contractual Indemnity Precludes Common Law Indemnity Here ... 12

        ii.  JPMorgan Fails To State a Claim for Indemnification Because USVI and Doe
            Seek To Hold JPMorgan Directly, Not Vicariously, Liable ................................. 13

        iii.  JPMorgan's Indemnification Claim Fails Because JPMorgan's Alleged
            Misconduct Was Outside the Scope of Mr. Staley's Responsibilities.................. 14

    D.  JPMorgan's Contribution Claim Fails .......................................................... 15

    E.  JPMorgan Cannot Receive Contribution for Punitive Damages ............................... 16

II.  Because the Indemnity and Contribution Claims Fail, the Employment Claims Should Be
    Dismissed For Non-Compliance with Rule 14 ...................................................... 17

III.  The Employment Claims Fail on the Merits................................................................ 18

    A.  The Employment Claims Are Time-Barred..................................................... 18

    B.  The Employment Claims Are Improperly Pleaded........................................... 20

        i.  JPMorgan Fails to State a Claim for Breach of Fiduciary Duty ........................... 21

        ii.  JPMorgan Fails to State a Claim Under the Faithless Servant Doctrine ............. 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
  2007 WL 633951 (S.D.N.Y. Feb. 26, 2007) ........................................................... 10

*ALP, Inc. v. Moskowitz*, 167 N.Y.S.3d 45 (1st Dep't 2022) .................................... 18, 19

*Anderson v. Griffin*, 397 F.3d 515 (7th Cir. 2005) ................................................. 8, 10

*Anderson v. Loc. Union No. 3*, 751 F.2d 546 (2d Cir. 1984) ........................................ 8

*Aozora Bank Ltd. v. Deutsche Bank Sec.*, 29 N.Y.S.3d 10 (1st Dep't 2016) ............................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 6

*Babbitt v. Koeppel Nissan, Inc.*, 2020 WL 3183895 (E.D.N.Y. June 15, 2020) ..................... 7, 22

*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021) ................................................. 8

*Baron v. Grant*, 852 N.Y.S. 374 (2d Dep't 2008) ....................................................... 14

*Bd. of Managers of the 125 N. 10th Condo. v. 125North10, LLC*,
  55 N.Y.S.3d 374 (2d Dep't 2017) ..................................................................... 13

*Bellis v. Tokio Marine & Fire Ins. Co.*, 2002 WL 193149 (S.D.N.Y. Feb. 7, 2002) ................. 15

*Cannariato v. Cannariato*, 24 N.Y.S.3d 214 (2d Dep't 2016) ...................................... 19

*Cisse v. Annucci*, 2022 WL 1183274 (N.D.N.Y. Apr. 21, 2022) ................................... 8

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013) ...................................... 7

*Corley v. Country Squire Apartments, Inc.*, 80 N.Y.S.2d 900 (2d Dep't 2006) .................... 14

*Don King Prods./Kingvision v. Ferreira*, 950 F. Supp. 286 (E.D. Cal. 1996) ...................... 7

*Ebel v. G/O Media, Inc.*, 2021 WL 2037867 (S.D.N.Y. May 21, 2021) ......................... 24, 25

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) .......................... 18

*Felice v. Delporte*, 524 N.Y.S.2d 919 (4th Dep't 1988) ............................................. 17

*Feltenstein v. City Sch. Dist. of New Rochelle*,
  2015 WL 10097519 (S.D.N.Y. Dec. 18, 2015) ........................................................ 9

*Genesee/Wyoming YMCA v. Bovis Lend Lease LMB, Inc.*,
  951 N.Y.S.2d 768 (4th Dep't 2012) .................................................................. 13

*Grewal v. Cuneo*, 2016 WL 308803 (S.D.N.Y. Jan. 25, 2016) .................................................... 25

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ................................................ 8, 10

*Honeywell, Inc. v. J.P. Maguire Co.*, 1999 WL 102762 (S.D.N.Y. Feb. 24, 1999) ..................... 12

*In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54 (2d Cir. 2013) ............................................ 8

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................................... 3

*Lamela v. Verticon, Ltd.*, 128 N.Y.S.3d 91 (3d Dep't 2020) .................................................. 12, 13

*Laub v. Faessel*, 745 N.Y.S.2d 534 (1st Dep't 2002) ................................................................. 23

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC,*
    2015 WL 7078641 (S.D.N.Y. Nov. 12, 2015) ....................................................................... 17

*Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426 (S.D.N.Y. 2015) ............................ 19, 20, 21

*Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233 (E.D.N.Y. 2009) ................................................. 10

*McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794 (N.Y. 2011) ................................................. 13

*Miller v. Levi & Korsinsky, LLP*, 2021 WL 535599 (S.D.N.Y. Feb. 12, 2021) ........................... 25

*Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 523 N.E.2d 803 (N.Y. 1988) ........ 16

*Neurological Surgery, P.C. v. MLMIC Ins. Co.*, 175 N.Y.S.3d 266 (2d Dep't 2022) ................. 22

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................... 9

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77 (1981) ......................... 9, 10, 11

*Paulsen v. Stifel, Nicolaus & Co.*, 2019 WL 2415213 (S.D.N.Y. June 4, 2019) ........................... 3

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491 (S.D.N.Y. 2012) ........... 6

*Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184 (2d Cir. 2003) ....................... 24, 25

*Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204 (S.D.N.Y. 2013) .................................................. 22

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ....................................................................... 20

*Rubio v. BSDB Mgmt. Inc.*, 2021 WL 102651 (S.D.N.Y. Jan. 12, 2021) .............................. 21, 24

*Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097 (9th Cir. 2020) ................................... 11

*Sea Trade Mar. Corp. v. Coutsodontis*, 744 F. App'x 721 (2d Cir. 2018) .................................. 23

*Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*, 573 N.Y.S.2d 513 (1st Dep't 1991) ..... 12

*Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*, 906 F. Supp. 2d 202 (S.D.N.Y. 2012) ...................... 12

*State Nat'l Ins. Co. v. Certain Interested Underwriters at Lloyd's London*,
    2022 WL 4547444 (S.D.N.Y. Sept. 29, 2022) .......................................................... 17

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) ....................................... 8, 9, 11

*Tobia v. United Grp. of Cos., Inc.*, 2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) .................... 22

*U.S. Fire Ins. Co. v. Raia*, 942 N.Y.S.2d 543 (2d Dep't 2012) .................................................. 22

*United States. ex rel. Kester v. Novartis Pharms. Corp.*,
    23 F. Supp. 3d 242 (S.D.N.Y. 2014) ....................................................................... 7, 22

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) ...................................... 21, 23, 24

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ....................................................................................... 9

*Zino Davidoff S.A. v. Selective Distrib. Int'l Inc.*, 2013 WL 1245974 (S.D.N.Y. Mar. 8, 2013) ... 7

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
    286 F. Supp. 3d 634 (S.D.N.Y. 2017) ..................................................................... 17, 18

## STATUTES

18 U.S.C. § 1591 ................................................................................................................... 4, 9

28 U.S.C. § 1367 ...................................................................................................................... 17

N.Y. C.P.L.R. § 213 ................................................................................................................. 19

N.Y. C.P.L.R. § 1401 ............................................................................................................... 15

## RULES

Federal Rule of Civil Procedure 8 ......................................................................................... 7, 8

Federal Rule of Civil Procedure 9(b) ............................................................................... *passim*

Federal Rule of Civil Procedure 10(b) ................................................................................... 7, 8

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 6, 18

Federal Rule of Civil Procedure 14 .................................................................................... 16, 17

Federal Rule of Civil Procedure 18 ......................................................................................... 17

Federal Rule of Evididence 201(b)(2) ....................................................................................... 3

## PRELIMINARY STATEMENT

In November 2022, Plaintiff Jane Doe sued JPMorgan Chase Bank, N.A. ("JPMorgan"). Her complaint asserts that JPMorgan ignored Jeffrey's Epstein's sex-trafficking crimes to retain him as a lucrative banking client, which in turn enabled Epstein to victimize Doe and others.  The Government of the U.S. Virgin Islands ("USVI") filed its own suit alleging that JPMorgan enabled Epstein to operate his enterprise out of its territory.

Confronted with documented failures in its anti-money-laundering compliance (along with a history of such failures in other matters), JPMorgan sought to change the narrative and deflect blame by pulling Jes Staley, one of its former employees, into the two cases via two third-party complaints.  The bank claims its fifteen-year-long relationship with Epstein was in fact all Mr. Staley's fault and that he must pay the plaintiffs' damages.  JPMorgan further seeks to claw back years of compensation from Mr. Staley, plus damages for "harm" to its already-sullied reputation.

But JPMorgan has failed to state any viable claim against Mr. Staley.  Indeed, the third-party complaints, while creating provocative media fodder, never explain how an employee who is not alleged to have had decision-making authority over Epstein's accounts—and who is not alleged to have seen any of the suspicious account activity that other JPMorgan employees ignored—caused the plaintiffs' alleged injuries.

Each of JPMorgan's four claims is legally deficient.  Neither the indemnification claim (Count I) nor contribution claim (Count II) is actionable.  *First*, the indemnification and contribution claims fail because the bank engages in defective, shotgun pleading that improperly tries to combine multiple claims (all lacking) into two cursory counts.  *Second*, the indemnification and contribution claims fail to the extent that they are based on the plaintiffs' claims under the Trafficking Victims Protection Act ("TVPA") because that statute does not permit contribution or

1

indemnification.  *Third*, the indemnification claim fails because JPMorgan does not (and cannot) plausibly allege that its liability is solely attributable to Mr. Staley's conduct.  *Fourth*, JPMorgan's contractual indemnification of Mr. Staley as one of its officers bars the bank's indemnification claim against him under black-letter New York law.  *Fifth*, JPMorgan fails to identify any distinct injury for which it seeks contribution.

The two additional claims—alleging that Mr. Staley breached his fiduciary duty to the bank during his employment and violated the "faithless servant doctrine" ("Employment Claims" at Counts III and IV)—also fail as a matter of law.  They do not meet the requirements for impleading under Rule 14.  And, for various reasons, they are deficient on the merits.

Whether or not JPMorgan is liable to Doe and the USVI remains to be seen.  What is certain is that the bank cannot treat Mr. Staley as its public relations shield by asserting claims that lack any legal (or factual) basis.

## BACKGROUND

Third-Party Defendant James Edward "Jes" Staley is a former JPMorgan executive.[1]  He began his career at the company in 1979 and rose up the ranks to the highest levels of management. *See* JPMorgan's Third-Party Compl. ("Complaint" or TPC") ¶ 16.[2]  From 2001 to 2009, Mr. Staley was the Chief Executive Officer of the bank's Asset Management group.  Starting in 2009, Mr. Staley moved to the Corporate and Investment Banking division, where he served as its Chief Executive Officer and reported to Jamie Dimon, the bank's President and Chairman.  *Id.*  Per its

---

[1] Although he vigorously denies many of the allegations in this case, Mr. Staley treats as true the Third-Party Complaint's factual allegations for purposes of this motion.

[2] *See* 22-cv-10019, ECF No. 59, and 22-cv-10904, ECF No. 70.  Although JPMorgan filed two third-party complaints, one in each of the cases by USVI and Doe, Mr. Staley addresses them together in this memorandum given their overwhelming overlap.  Only when content from the complaints differ will this filing distinguish between them (e.g., "Doe TPC" or "USVI TPC").

bylaws, JPMorgan agreed to indemnify corporate officers such as Staley "to the fullest extent permitted by applicable law." Ex A at 7.[3]

Mr. Staley left JPMorgan in January 2013, eventually joining its competitor Barclays as Chief Executive Officer.  TPC ¶ 21.  Upon departing JPMorgan, Mr. Staley allegedly signed an Agreement and Release in which he agreed to be bound by JPMorgan's code of conduct even after he left employment at the bank.  *Id.*

Since November 2022, JPMorgan has been embroiled in lawsuits relating to the bank's alleged involvement with Jeffrey Epstein and his sex-trafficking enterprise.  These suits began when Plaintiff "Jane Doe" sued the bank on November 24, 2022, with the U.S. Virgin Islands filing a similar complaint about a month later.

Doe's Allegations:  Doe's class action complaint alleges that JPMorgan supplied the "financial lifeblood" of Epstein's sex trafficking enterprise by providing him and his associates banking services and access to exorbitant amounts of cash from 1998 through August 2013.  First Am. Compl., 22-cv-10019 ("Doe FAC") at 1-2, ECF No. 36.  Doe claims that JPMorgan provided these services even though it knew that Epstein was engaged in sex trafficking.  *Id.*  While Doe alleges that JPMorgan's knowledge stemmed in part from what Mr. Staley observed, she alleges a plethora of other ways that JPMorgan knew of Epstein's misconduct completely independent of Mr. Staley's observations: (1) Epstein's widely reported arrest in 2006 that resulted in his incarceration and registering as a sex offender, *id.* ¶¶ 42, 79-81, 190-99, 216; (2) Epstein's

---

[3] This Court can consider matters appropriate for judicial notice when reviewing this motion to dismiss.  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  JPMorgan's bylaws qualify because they are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also Paulsen v. Stifel, Nicolaus & Co.*, 2019 WL 2415213, at *3 (S.D.N.Y. June 4, 2019) ("Courts in this Circuit have routinely taken notice of public disclosure documents filed with the SEC that are proffered as part of [a] motion to dismiss.") (collecting cases).

involvement in civil lawsuits, which resulted in payments that were sent from JPMorgan bank accounts, *id.* ¶¶ 83, 200, 207-11; and (3) Epstein's suspicious transaction history that included large cash withdrawals, wires to women with Eastern European surnames, and payments to known conspirators, *id.* ¶¶ 182, 261-62.  Doe alleges that she was trafficked by Epstein and unnamed associates.  *Id.* ¶¶ 159, 237.

Doe also alleges that JPMorgan skirted banking regulations to conceal its involvement with the trafficking enterprise.  *Id.* ¶ 178.  The bank, for example, neglected to file Suspicious Activity Reports (SARs) required by anti-money laundering laws and failed to adequately conduct "Know Your Customer" due diligence.  *Id.* ¶¶ 180-82, 271.  Doe alleges that, had the bank followed these standard practices, Epstein's conduct would not have flown under the radar for years.  *Id.* ¶ 272.  Awareness of Epstein's criminal conduct reached the bank's highest levels, including CEO Jamie Dimon, *id.* ¶¶ 216-17, and the CEO of private banking, Mary Erdoes, who nevertheless advocated to keep Epstein as a client, *id.* ¶¶ 161, 214.  JPMorgan continued to serve Epstein for the financial benefits to the bank, such as access to his network of wealthy potential customers.  *Id.* ¶¶ 164-71.

Notably, Doe alleges that JPMorgan's misconduct extended beyond 2013—when Mr. Staley left the bank.  In particular, JPMorgan refused to file SARs and continued to recommend Epstein as a client to others.  *Id.* ¶ 187.

Four of Doe's claims survived JPMorgan's motion to dismiss: (1) negligently failing to prevent physical harm; (2) negligently failing to exercise reasonable care as a banking institution providing non-routine banking; (3) knowingly benefitting from participating in a sex-trafficking venture in violation of 18 U.S.C. § 1591(a)(2); and (4) obstructing enforcement of the TVPA in violation of 18 U.S.C. § 1591(d).  Order on Motion To Dismiss, 22-cv-10019, ECF No. 66.

<u>USVI's Allegations</u>:  USVI's complaint makes similar allegations.  It claims that JPMorgan provided financial services and cash to Epstein even though the bank knew of his sex trafficking through various means, including (1) Epstein's suspicious transactions, such as wires to victims, withdrawals of large sums of cash, and payments to known recruiters, *see* USVI First Am. Compl., 22-cv-10904 ("USVI FAC") ¶¶ 42, 66-67, and (2) public reports of Epstein's arrest and misconduct, *id.* ¶¶ 36-40, 48.  USVI alleges that internal messages at the bank show that JPMorgan employees were aware of these facts and that this knowledge reached the highest levels of the bank, including CEO Jamie Dimon, *id.* ¶¶ 44-51, 86.  And JPMorgan's failure to follow required banking practices permitted the sex trafficking conspiracy to operate.  *Id.* ¶¶ 76-78, 82.  Following the Court's order on JPMorgan's motion to dismiss, the only remaining claim brought by the USVI arises under the TVPA.  Order on Motion To Dismiss, 22-cv-10904, ECF No. 90.[4]

<u>JPMorgan's third-party complaints</u>:  JPMorgan filed a third-party complaint in each case. Both complaints plead identical claims for common law indemnification, contribution, breach of fiduciary duty, and breach of the faithless servant doctrine.

JPMorgan first brings omnibus claims for contribution and indemnification that seek to hold Mr. Staley liable for all of the claims that Doe and the USVI bring against JPMorgan, lumping together Doe's common law and federal statutory claims.  JPMorgan alleges, despite contrary assertions in the plaintiffs' complaints, that the plaintiffs seek to hold the bank liable "based in substantial part on the acts or omissions of Staley."  TPC ¶ 46.  Thus, it alleges, if JPMorgan is

---

[4] Despite the Court's dismissal order, USVI has filed a second amended complaint that repleads all the original claims (even those that were dismissed).  This motion will address only the claim in the USVI's operative complaint that was <u>not</u> dismissed. While reserving all rights, Mr. Staley notes that, even if JPMorgan's complaint reached the repleaded claims, the same analysis would apply because there is no conflict between New York and Virgin Island law on contribution and indemnification.

held liable, then Mr. Staley must pay the bank "for all damages awarded" to the plaintiffs by means of indemnification and/or contribution. *Id.* ¶¶ 48, 55.

JPMorgan's claims for breach of fiduciary duty and breach of the faithless servant doctrine rely on the duties he owed the bank as an employee and his alleged agreement to abide by the bank's Code of Conduct, which he purportedly signed each year between 2006 and 2012, *id.* ¶¶ 18-19.  JPMorgan alleges that Mr. Staley breached his duties by acting against the interests of the bank, "failing to report" or "fraudulently concealing" information about Epstein, "affirmatively misrepresent[ing]" facts about his personal interactions with Epstein, and "repeatedly provid[ing] misleading information to JPMC when vouching for Epstein's character and conduct." *Id.* ¶¶ 59-61, 74-77.  As for the breach-of-fiduciary-duty claim, JPMorgan seeks damages related to (1) the "cost of defending," and "adverse publicity from," these lawsuits, and (2) "any amounts in damages" that JPMorgan might have to pay out to the plaintiffs.  *Id.* ¶ 64-65.  For the faithless servant claim, JPMorgan seeks disgorgement of Mr. Staley's compensation from the amorphous "period of his disloyalty." *Id.* ¶ 78.  The bank also seeks punitive damages.  *Id.* ¶¶ 66, 79.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While the Court must draw all reasonable inferences in the complaint's favor, it need not accept as true "mere conclusions of law or unwarranted deductions of fact." *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 502 (S.D.N.Y. 2012) (internal quotation marks omitted).

"Claims that sound in fraud are subject to the heightened pleading standards of" Rule 9(b).

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).  Such allegations must be "stated

with particularity," meaning that they must "specify the time, place, speaker, and content of [any]

alleged misrepresentations," "explain how the misrepresentations were fraudulent," and "plead

those events which give rise to a strong inference that the defendant had an intent to defraud,

knowledge of the falsity, or a reckless disregard for the truth."  *Id.* (cleaned up).  In other words,

"a plaintiff [must] set forth the who, what, when, where and how of" alleged fraudulent conduct.

*United States. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

Rule 9(b) applies to fiduciary-duty claims that sound in fraud.  *Babbitt v. Koeppel Nissan, Inc.*,

2020 WL 3183895, at *5 (E.D.N.Y. June 15, 2020).

## ARGUMENT

**I.    The Indemnity and Contribution Claims (Counts I and II) Fail as a Matter of Law.**

   **A.  JPMorgan's Shotgun Pleading Warrants Dismissal of Counts I and II.**

As an initial matter, the claims for indemnification and contribution are procedurally

improper because they violate Rules 8 and 10(b) by lumping together all of the plaintiffs'

outstanding claims under singular causes of action for contribution and common law

indemnification.  For each of these claims, JPMorgan seeks relief under two distinct bodies of

law—federal law for the plaintiffs' TVPA claims, and state law for Doe's common-law claims—

even though these claims require distinct analyses.  *See Don King Prods./Kingvision v. Ferreira*,

950 F. Supp. 286, 288-89 (E.D. Cal. 1996) (noting that right to indemnity for claim arising under

federal law must be treated separately from right relating to state-law claim); *Zino Davidoff S.A.*

*v. Selective Distrib. Int'l Inc.*, 2013 WL 1245974, at *4 (S.D.N.Y. Mar. 8, 2013) ("Whether a

defendant who incurs liability under a federal statute may pursue either contribution or

indemnification is a question of federal law.").  This haphazard style of pleading is "flatly

forbidden by the spirit, if not the letter, of" Rules 8(a)(2) and 10(b), because, among other vices, it confuses the parties, courts, and factfinders and hinders cogent analysis of each claim independently. *Barmapov v. Amual*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citation omitted); *Cisse v. Annucci*, 2022 WL 1183274, at *2 (N.D.N.Y. Apr. 21, 2022) (identifying failure to separate "into a different count each cause of action or claim for relief" as "shotgun pleading" (citation omitted)). The Court should dismiss the indemnification and contribution claims for this reason alone.

**B. There Is No Right To Indemnity or Contribution Under the TVPA.**

JPMorgan's indemnification and contribution claims also fail to the extent that they seek to offload liability for the plaintiffs' TVPA damages because the TVPA does not permit claims for indemnification or contribution against third parties. When an underlying claim arises under federal law, "there is no claim for contribution [or indemnification] unless the operative federal statute provides one." *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 65 (2d Cir. 2013); *see Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (affirming dismissal of New York state-law claims for contribution and indemnification for liability under Fair Labor Standards Act). Such claims are available only through (1) "the affirmative creation of a right of action by Congress, either expressly or by clear implication," or (2) "the power of federal courts to fashion a federal common law of contribution [or indemnification]." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).[5] Yet courts have been particularly "reluctant to recognize a right of contribution [or indemnification] as a matter either of federal common law or of statute." *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005) (collecting cases).

---

[5] While these cases address contribution, their "rationale . . . extends to claims for indemnification." *Anderson v. Loc. Union No. 3*, 751 F.2d 546, 548 (2d Cir. 1984).

The TVPA does not mention contribution or indemnification. To determine whether a statute nonetheless contains an implied right, courts have traditionally looked to "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 91 (1981). While the sole consideration is Congress's apparent intent, in recent decades the Supreme Court has signaled that courts should adopt "a far more cautious course before finding implied causes of action." *See Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

*First*, as mentioned, the TVPA provisions invoked by the plaintiffs are completely silent on the issue. *See generally* 18 U.S.C. § 1591. This omission is "significant" given that Congress certainly knows how to unambiguously create such rights. *See Nw. Airlines,* 451 U.S. at 91-92 & n.24 (contrasting § 11(f) of the Securities Act of 1933, where Congress did so); *Texas Indus.*, 451 U.S. at 640, n.11 (same). And this silence rings loudly given that Congress has routinely amended the TVPA since its enactment in 2000 and yet has never included such rights. Simply put, if Congress had wanted to include indemnification and contribution, it would have.[6]

*Second*, causes of action for contribution or indemnification would cut against the TVPA's mission to protect trafficking victims. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (explaining that civil remedies portion of TVPA serves "the remedial purpose of 'enhancing . . . protections of trafficking victims'") (quoting Trafficking Victims Protection Reauthorization

---

[6] The Supreme Court has also suggested that the lack of an express right to contribution or indemnification can be "dispositive" unless "the language of the statutes indicates that they were enacted for the special benefit of a class of which petitioner is a member." *Nw. Airlines*, 451 U.S. at 91-92. Here, JPMorgan is not among the class that the TVPA is intended to protect, which consists of trafficking victims. Rather, it is the party "whose conduct the statute was intended to regulate." *Feltenstein v. City Sch. Dist. of New Rochelle*, 2015 WL 10097519, at *3 (S.D.N.Y. Dec. 18, 2015) (citation omitted) (rejecting indemnity and contribution under the ADA).

Act of 2003, 117 Stat. 2878, § 4 (effective Dec. 19, 2003)).  As evident in this litigation, such claims serve to only to complicate and add expense to victims' suits.  *See Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233, 241 (E.D.N.Y. 2009) (finding right of contribution under Anti-Terrorism Act would not further goal of compensating victims of terrorism because it would add expense to litigation); *Anderson*, 397 F.3d at 523 ("[A]ll that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced . . . it will not be." (citation omitted)).  And to the extent that the statute is intended to deter would-be traffickers, permitting indemnification or contribution claims would undermine that purpose.  *See Anderson*, 397 F.3d at 523 (reasoning that absence of contribution or indemnification to divide damages among coconspirators itself "performs [a] deterrent function" for would-be violators who must risk being the unlucky one saddled with liability).

*Third*, the TVPA's remedial scheme makes clear that Congress did not intend to include rights to contribution or indemnity.  Courts have routinely cautioned "against creating any federal common-law rights of indemnity or contribution in areas where Congress has created comprehensive legislative remedies."  *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 2007 WL 633951, at *7 (S.D.N.Y. Feb. 26, 2007); *Nw. Airlines*, 451 U.S. at 93-94.  The TVPA presents such a comprehensive scheme.  Along with criminal punishments, it provides for various civil causes of action.  And the "express provision for private enforcement in certain carefully defined circumstances . . . strongly counsels against judicially engrafting additional remedies." *Herman*, 172 F.3d at 144.  Indeed, it is not the Court's "place simply to alter the balance struck by Congress" in determining how damages should be apportioned.  *Nw. Airlines*, 451 U.S. at 98.

*Fourth*, the relevant legislative history in the TVPA is silent on indemnity and contribution, showing that Congress did not even contemplate, let alone intend, for such rights.  Without express

10

language or even a hint of intent, "the essential predicate for implication of a private remedy simply does not exist" here. *Id.* at 94.

Further, it would be improper to craft such a remedy from federal common law.  The situations in which such judicial legislating is welcome are "few and restricted," *Texas Indus.*, 451 U.S. at 640, and they generally fall into one of two categories: (1) when "a federal rule is necessary to protect a uniquely federal interest," or (2) when "Congress has given the court the power to develop substantive law." *Id.* (cleaned up).  Neither applies here.  A defendant's "right of recovery from another [potential] wrongdoer . . . does not implicate any [federal] interests." *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1105 (9th Cir. 2020).  And there is no indication that Congress "has given the courts the power to develop substantive law" in the area of sex-trafficking enforcement, as it has in admiralty law, for example. *Tex. Indus.*, 451 U.S. at 640.

Since there is no hint that Congress intended for there to be a right of contribution or indemnification under the TVPA, and this issue does not implicate a federal interest or area of law expressly left to the courts to develop, the Court should not imply such causes of action here. JPMorgan's claims for indemnification and contribution arising under the TVPA—which include *all* of the claims alleged in the USVI FAC—therefore fail.

### C.  JPMorgan's Indemnification Claim Fails for Additional Reasons.

JPMorgan's claim for indemnification fails for three other reasons: (1) JPMorgan's contractual indemnity of Mr. Staley precludes any claim for common law indemnification in favor of the bank; (2) both Doe's and USVI's complaints allege that JPMorgan was directly, not

vicariously, liable for the misconduct; and (3) JPMorgan fails to allege that the decisions that caused plaintiffs' injuries were solely within Mr. Staley's province at the bank.[7]

      **i.**    **Mr. Staley's Contractual Indemnity Precludes Common Law Indemnity Here.**

Under black-letter New York law, contractual indemnity between parties flowing only in one direction extinguishes common law indemnity flowing in the other direction. *Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*, 573 N.Y.S.2d 513, 514 (1st Dep't 1991) ("With the subject of indemnification clearly contemplated and expressly addressed by . . . contract, we hold that under these circumstances there could only be a one-way obligation to indemnify by . . . the indemnitor, and any reciprocal obligation is extinguished."); *accord Lamela v. Verticon, Ltd.*, 128 N.Y.S.3d 91, 94 (3d Dep't 2020) (collecting cases); *Honeywell, Inc. v. J.P. Maguire Co.*, 1999 WL 102762, at *6 (S.D.N.Y. Feb. 24, 1999).

Here, JPMorgan agreed to indemnify Mr. Staley—as an officer and employee—to the "fullest extent" permitted by law. Ex. A [Section 5.01 of 2004 Bylaws]. These bylaws serve as a contract between the company and its officers. But nowhere in the bylaws or otherwise did Mr. Staley agree to indemnify JPMorgan. Since the parties agreed that JPMorgan would indemnify Mr. Staley without a reciprocal right to indemnification for the bank, the common law indemnification claim benefitting JPMorgan is foreclosed.

---

[7] Mr. Staley assumes that if the Court were to imply a cause of action for contribution and indemnification under the TVPA, it would find that New York state law supplies the rule of decision. *See Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*, 906 F. Supp. 2d 202, 233-34 (S.D.N.Y. 2012). Since Doe's common law claims are likewise analyzed under New York law, the Court can analyze the viability of these claims together.

ii.    **JPMorgan Fails To State a Claim for Indemnification Because USVI and Doe Seek To Hold JPMorgan Directly, Not Vicariously, Liable.**

Even if common law indemnification were available, the claim still fails because the plaintiffs' complaints seek to hold the bank liable for its own actions, not as Mr. Staley's employer. Under New York law, a "party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence . . . on its own part." *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 801 (N.Y. 2011); *see Lamela*, 128 N.Y.S. 3d at 94 (common law indemnification is available only "in favor of one who is held responsible *solely* by operation of law because of his [or her] relation to the actual wrongdoer'" (emphasis added) (citations omitted)); *Bd. of Managers of the 125 N. 10th Condo. v. 125North10, LLC*, 55 N.Y.S.3d 374, 376 (2d Dep't 2017) (affirming dismissal of claim for common-law indemnification where party seeking indemnity's liability was not "*purely* vicarious" (emphasis added) (citation omitted)). In other words, indemnification claims are not cognizable where the purported indemnitee's "liability . . . in the [pending] main action" would be based on "its own" failures. *Genesee/Wyoming YMCA v. Bovis Lend Lease LMB, Inc.*, 951 N.Y.S.2d 768, 771 (4th Dep't 2012) (citation omitted).

Here, none of the plaintiffs' claims seeks to hold JPMorgan liable solely because it employed Mr. Staley. To the contrary, both Doe and USVI premise liability on JPMorgan's *own* alleged misconduct. Underlying the outstanding common law and federal law claims is the allegation that JPMorgan provided financial services to Epstein and his associates in furtherance of their trafficking enterprise. Doe FAC ¶¶ 313, 326, 350, 473-74; USVI FAC ¶¶ 6, 94. These services included, for example, allowing Epstein to withdraw large sums of cash without question. Doe FAC ¶¶ 326, 350, 474. Doe also alleges that JPMorgan failed to follow "AML and anti-structuring reporting requirements found in the Bank[] Secrecy Act [BSA] and other laws," failed to "timely file with the federal government the required SARs that financial institutions must file

13

with FinCEN whenever there is a suspected case of money laundering or fraud," and "concealed from the federal government its numerous cash payments to. . . co-conspirators."  *Id.* ¶¶ 474-79. The USVI makes similar allegations.  USVI FAC ¶¶ 6, 76-77, 82, 87.  There is no allegation that this conduct by JPMorgan was undertaken solely by (or even known to) Mr. Staley.

The bank is solely responsible for those acts; nowhere is it alleged—in either the plaintiffs' complaints or JPMorgan's third-party complaints—that Mr. Staley provided cash or participated in decision-making on BSA compliance.  In fact, it is not even alleged that Mr. Staley was aware of Epstein's cash withdrawals or at all involved in the compliance function's consideration of whether the Epstein transactions breached banking laws.  And even if he did, Doe's allegations regarding the bank's willful failure to follow regulations extends beyond 2013, when Mr. Staley was no longer working at the bank.  Doe FAC ¶ 187.  Nor is it alleged that Mr. Staley had decision-making authority for Epstein's accounts such that he helped decide whether to keep Epstein as a client.  In short, it is clear on the face of these complaints that the bank is not being sued as Mr. Staley's employer, but rather because it allegedly provided Epstein with the financial tools and cover to maintain his trafficking ring.

### iii.    JPMorgan's Indemnification Claim Fails Because JPMorgan's Alleged Misconduct Was Outside the Scope of Mr. Staley's Responsibilities.

JPMorgan's claim for indemnification also fails because it seeks to hold Mr. Staley accountable for actions outside the scope of his responsibilities at the bank.  Under New York law, indemnification is actionable only where the "injury was due solely to the [proposed indemnitor]'s negligent performance or nonperformance of an act *solely within [his] province*."  *Corley v. Country Squire Apartments, Inc.*, 80 N.Y.S.2d 900, 900 (2d Dep't 2006) (emphasis added); *Baron v. Grant*, 852 N.Y.S. 374, 374 (2d Dep't 2008) ("The party seeking indemnification must have delegated exclusive responsibility for the duties giving rise to the loss to the party from whom

indemnification is sought." (citation omitted)).  Here, both USVI and Doe allege that they were injured by JPMorgan's decisions to retain Epstein as a client and to continue providing financial services that served as the "lifeblood" of his sex-trafficking scheme.  Doe FAC ¶ 193; USVI FAC ¶ 94.  They likewise claim that they were injured by JPMorgan's refusal to follow federal banking regulations.  Doe FAC ¶¶ 326-27; USVI FAC ¶¶ 6, 76-77, 82, 87.  JPMorgan has not pleaded that Mr. Staley had decision-making authority over Epstein's accounts or the compliance department, let alone that these were "solely within his province" at the bank.  JPMorgan concedes this, alleging that the conduct it places at issue in the third-party complaints "were not in connection with the performance of [Mr. Staley's] duties for JPMC."  TPC ¶ 42.  Thus, JPMorgan has failed to adequately plead indemnification.

### D.  JPMorgan's Contribution Claim Fails.

To state a claim for contribution, JPMorgan must plead that (1) Mr. Staley breached a duty that he owed to either the plaintiffs or JPMorgan; (2) his breach caused an injury; and (3) the injury was the same injury for which JPMorgan is being held liable.  *Bellis v. Tokio Marine & Fire Ins. Co.*, 2002 WL 193149, at *17 (S.D.N.Y. Feb. 7, 2002); *see* N.Y. C.P.L.R. § 1401.  JPMorgan fails to plead elements (1) and (3).

*First*, JPMorgan has failed to properly plead that Mr. Staley breached a duty that he owed to either the plaintiffs or to the bank.  Nowhere in the complaint does JPMorgan allege that Mr. Staley owed a duty to USVI or to Doe.  And while Staley may have owed a *fiduciary* duty to JPMorgan through their employee-employer relationship, JPMorgan has failed to adequately plead that such a duty was breached, as explained further below.  *See infra* pp. 21-23.

*Second*, JPMorgan has not adequately pleaded that Mr. Staley caused the same harm for which the bank has been sued.  No right of contribution arises where the injuries allegedly caused by the party are "separate and distinct."  *Nassau Roofing & Sheet Metal Co. v. Facilities Dev.*

15

*Corp.*, 523 N.E.2d 803, 805 (N.Y. 1988). Here, JPMorgan has failed to plead the injuries for which it is seeking contribution. Instead, JPMorgan merely claims that "[i]f Doe is successful on her claims . . . Staley's actions caused or substantially contributed to any resulting damages." TPC ¶ 53. This terse statement fails to state what harm Mr. Staley is being alleged to have caused. Perhaps this is no surprise because whatever injury the bank caused simply could not be the same as what Mr. Staley allegedly caused. The crux of the plaintiffs' complaints is that JPMorgan provided the "financial lifeblood" of Epstein's sex trafficking ring by providing access to limitless cash and helping Epstein evade detection by ignoring banking regulations. Doe FAC ¶¶ 313, 326, 350, 473-74; USVI FAC ¶¶ 6, 94. JPMorgan fails to allege how Mr. Staley, a lone bank employee who has no banking license and who is not alleged to have had control over Epstein's accounts or a formal compliance role, contributed to injuries that are uniquely caused by a financial institution.

JPMorgan also alleges that Mr. Staley sexually assaulted Doe. TPC ¶¶ 27, 52. Even accepting this baseless allegation as true as is required, it does not provide a basis for JPMorgan to seek contribution. Doe's claims do not seek damages for battery; instead, she seeks all damages arising from JPMorgan's financial support of Epstein's sex trafficking ring.

Because JPMorgan has failed to adequately plead the requirements for contribution, this claim must be dismissed.[8]

### E.  JPMorgan Cannot Receive Contribution for Punitive Damages.

Even if the Court finds that the contribution claim should stand, it should strike JPMorgan's attempt to receive contribution for any potential punitive damages awarded to Doe or USVI.

---

[8] JPMorgan's contribution and indemnification claims against Mr. Staley depend on the plaintiffs' pleading valid claims against JPMorgan. But the plaintiffs' claims against JPMorgan are deficient for at least the reasons identified by JPMorgan in its motions to dismiss, which Mr. Staley hereby incorporates by reference, for purposes of preservation. *See* Mot. To Dismiss, 22-cv-10019, ECF No. 46; Motions To Dismiss, 22-cv-10904, ECF Nos. 40, 123.

JPMorgan seeks "contribution for all damages awarded to Doe [and USVI]," who in turn both seek punitive damages.  TPC ¶ 55; Doe FAC ¶¶ 321, 346, 404; USVI FAC ¶ 109.  But because punitive damages are "in the nature of a penalty," contribution among tortfeasors for these damages "is not permissible."  *Felice v. Delporte*, 524 N.Y.S.2d 919, 920 (4th Dep't 1988).

## II.     Because the Indemnity and Contribution Claims Fail, the Employment Claims Should Be Dismissed For Non-Compliance with Rule 14.

Count III (breach of fiduciary duty) and Count IV (violation of the Faithless Servant doctrine) do not belong in this case.  If those two Employment Claims are the only claims remaining, the Court should dismiss them without prejudice under Rule 14(a).

Rule 14(a) permits a party to implead another "who is or may be liable to [the third-party plaintiff] for all or part of the [plaintiff's] claim against [the third-party plaintiff]."  Fed. R. Civ. P. 14(a)(1).  This "standard is not a mere technicality," as "[i]mpleader under Rule 14(a) is narrowly construed."  *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2015 WL 7078641, at *3 (S.D.N.Y. Nov. 12, 2015).  A third-party claim satisfies Rule 14(a) only "when the third party's liability is somehow <u>dependent</u> on the outcome of the main action or when the third party is secondarily liable to the defendant."  *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 656 (S.D.N.Y. 2017).   Unlike for supplemental jurisdiction under 28 U.S.C. § 1367—or for analyzing a discretionary motion to sever claims—"the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough."  *State Nat'l Ins. Co. v. Certain Interested Underwriters at Lloyd's London*, 2022 WL 4547444, at *2 (S.D.N.Y. Sept. 29, 2022).  Only if impleader is proper with at least one predicate claim—that is, one dependent on the outcome of the main action—can the third-party plaintiff join non-dependent claims.  *See* Fed R. Civ. P. 18(a).

Here, the Employment Claims are properly joined under Rule 18(a) only if Mr. Staley first is properly impleaded based on a third-party claim that satisfies Rule 14(a).  If the Court dismisses the contribution and indemnity claims, then impleader of the independent Employment Claims is improper.  Neither Employment Claim depends on the outcome of the plaintiffs' claims against JPMorgan.  *Zohar*, 286 F. Supp. 3d at 656.  While JPMorgan relies on Doe's and USVI's allegations as the basis for the purported breach of fiduciary duty, that alone is not sufficient.  In theory, JPMorgan could prevail entirely in the main actions and evade any liability yet still prevail against Mr. Staley on the Employment Claims and secure disgorgement of his salary or compensatory damages independent of what it could have owed the plaintiffs.  *See* TPC ¶¶ 64-65, 78.  Whereas the "crucial characteristic of a Rule 14 claim is" a defendant trying to "transfer to the third-party defendant the liability asserted against him by the original plaintiff," the Employment Claims here are "the type" that JPMorgan "could have asserted in an independent action."  *Zohar*, 286 F. Supp. 3d at 656-57 (citation omitted).  Accordingly, if, as argued above, the indemnification and contribution claims fail, the Employment Claims cannot stand.

## III.  The Employment Claims Fail on the Merits.

The Employment Claims are also subject to dismissal under Rule 12(b)(6).

### A.  The Employment Claims Are Time-Barred.

 "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).  Such is the case here.

In New York, the limitations period for breach of fiduciary duty claims generally depends on the substantive remedy that the plaintiff seeks.  *ALP, Inc. v. Moskowitz*, 167 N.Y.S.3d 45, 52 (1st Dep't 2022).  There is only a three-year limitations period when, as here, the remedy sought

is "purely monetary." *Id.*; *see* TPC at 13-14 (prayer for relief).  JPMorgan may argue that a six-year limitations period applies, claiming that this case should be covered by the longer limitations period for actions by a corporation against their directors and officers.  N.Y. C.P.L.R. § 213(7); *see Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 434-35 (S.D.N.Y. 2015).  The claim is time barred either way.  Mr. Staley left JPMorgan in early 2013, TPC ¶ 16, which was when his fiduciary duty and duty of loyalty to the company ended, and which is thus the most recent date the claim could arise.  JPMorgan, however, waited *over 10 years* to file these claims.  Its suit falls well outside even the six-year statute of limitations, so the Court should dismiss the claims.

To be sure, for "an action based upon fraud," the discovery-accrual rule extends the limitations period to the greater of six years or "two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).  Because JPMorgan's Employment Claims sound in fraud, *see infra* pp. 20-21, JPMorgan bears the burden to plead and establish that "the fraud could not have been discovered prior to the two-year period before the commencement of the action." *Cannariato v. Cannariato*, 24 N.Y.S.3d 214, 216 (2d Dep't 2016) (noting burden rests with plaintiff to raise sufficient factual issue and that the issue can be resolved at pleading stage).  Despite that burden, JPMorgan has pleaded *zero* facts as to why it could not have discovered the alleged claims before the past two years.

What is more, there is a duty to inquire; a plaintiff cannot claim ignorance of an alleged fraud when the facts call for investigation.  *Aozora Bank Ltd. v. Deutsche Bank Sec.*, 29 N.Y.S.3d 10, 14 (1st Dep't 2016).  In other pleadings in this case, JPMorgan heralds a "bombshell" *Miami Herald* story from *November 2018* that blew the lid open and "exposed shocking details" about Epstein's decades-long operation.  JPMorgan Mot. to Dismiss Doe Compl. at 1-2.  And in February

2020—two years after JPMorgan concedes that it learned of Epstein's misconduct through the article—media outlets reported that Mr. Staley was under investigation by the U.K.'s Financial Conduct Authority for his connection to Epstein.[9]   Surely the "bombshell" article, Epstein's subsequent arrest in 2019, Doe FAC ¶ 21, and the public investigation into Mr. Staley put JPMorgan on notice of at least the duty *to inquire* into its own dealings with Epstein, including Mr. Staley's alleged involvement.   After all, numerous JPMorgan employees knew that Mr. Staley had a relationship with Epstein, and the bank had access to Mr. Staley's communications from his tenure that JPMorgan now alleges reflect that relationship.   As pleaded, the Complaint provides no explanation for why JPMorgan sat on its putative claims.   The Court should dismiss the Employment Claims, which concern a job Mr. Staley left more than a decade ago, as time barred.

### B.  The Employment Claims Are Improperly Pleaded.

Untimeliness aside, JPMorgan fails to properly plead the Employment Claims.   As an initial matter, both claims must meet the heightened pleading standard of Rule 9(b).   The standard applies to not only causes of action stylized as fraud claims, but also those in which the "gravamen" of the claim relies on dishonest conduct.   *Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004). "Courts have found non-fraud claims to sound in fraud where the underlying conduct alleged has been fraud or closely linked with fraudulent behavior, such as . . . claims that the other party has attempted to induce action through misrepresentations or material omissions.   This can include claims for breach of fiduciary duty."   *Levy*, 103 F. Supp. 3d at 443 (collecting cases).

Here, Counts III and IV sound in fraud.   Both rely on the same alleged underlying conduct—namely, that Mr. Staley supposedly subverted the interests of his employer JPMorgan,

---

[9] *See, e.g.*, Simon Clark, *Barclays CEO Under Investigation Over Links to Jeffrey Epstein*, Wall Street Journal (Feb. 13, 2020), https://www.wsj.com/articles/barclays-ceos-links-to-jeffrey-epstein-probed-by-u-k-regulators-11581582115?mod=djemalertNEWS.

to which he owed a duty of good faith and loyalty.  TPC ¶¶ 56-79.  For support, JPMorgan practically trips over itself alleging varied deception by Mr. Staley: It alleges that he deceived it about a material conflict of interest, "fraudulently conceal[ed]" his misconduct, secretly "act[ed]" against the interests" of the bank, "repeatedly provided misleading information, "affirmatively misrepresented" facts," and "consistently and misleadingly vouched" for Epstein.  TPC ¶¶ 59-62. These claims, which rely on allegedly fraudulent statements and conduct, are precisely the kind that trigger Rule 9(b) scrutiny.  *E.g.*, *Rubio v. BSDB Mgmt. Inc.*, 2021 WL 102651, at *4 (S.D.N.Y. Jan. 12, 2021) (applying Rule 9(b) to counterclaim for violation of faithless servant doctrine because "the gravamen of" the claim was "Plaintiff's alleged fraudulent misrepresentations"); *cf. Levy*, 103 F. Supp. 3d at 447 (finding Rule 9(b) not triggered where breach claim "d[id] not allege that Levy tricked the organization into taking action it would not otherwise have taken").  Having leveled claims of fraud, JPMorgan must plead with particularity when and how Mr. Staley allegedly deceived the bank.

### i.  JPMorgan Fails to State a Claim for Breach of Fiduciary Duty.

JPMorgan fails to meet its burden and plead a viable breach of fiduciary duty claim.  Under New York law, "a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (cleaned up).

The Complaint falls far short.  *First*, while sweeping, the actual allegations of misconduct are conclusory and fatally vague, especially in the face of Rule 9(b).  When, how, and from whom did Mr. Staley "fraudulently conceal" facts and observations about Epstein?  TPC ¶ 60.  When, how, and to whom did Mr. Staley "affirmatively misrepresent" Epstein's activities or "provide[] misleading information" on Epstein's character and conduct?  TPC ¶ 61.  The Complaint leaves

the parties and the Court guessing as to the critical "who, what, when, where and how of the alleged fraud" underlying this claim. *Kester*, 23 F. Supp. 3d at 252. Such cursory pleading violates Rule 9(b) and merits the claim's dismissal. *Babbitt*, 2020 WL 3183895, at *5. Nor does JPMorgan properly plead that Mr. Staley had any duty to report to the bank information about Epstein or their alleged relationship. An agent, like Mr. Staley, is obligated to disclose only "information that is relevant to the affairs of the agency entrusted to him," not every fact on every topic. *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013); *see also Neurological Surgery, P.C. v. MLMIC Ins. Co.*, 175 N.Y.S.3d 266, 269 (2d Dep't 2022) (A "cause of action alleging fraudulent omission or concealment of material information requires an allegation that the defendant had a duty to disclose *that information*." (emphasis added)). Since JPMorgan has nowhere alleged that Mr. Staley had any official responsibilities regarding the Epstein accounts, Mr. Staley's purported failure to disclose information to the bank about Epstein does not give rise to a breach of his fiduciary duty.

*Second*, the Complaint fails to properly plead damages "directly caused by the defendant's misconduct." *U.S. Fire Ins. Co. v. Raia*, 942 N.Y.S.2d 543, 545 (2d Dep't 2012). For a breach of fiduciary duty claim, JPMorgan must plead both that it suffered damages and "that the alleged misrepresentations or other misconduct were the direct and proximate cause of the losses claimed," not merely a but-for cause. *Tobia v. United Grp. of Cos., Inc.*, 2016 WL 5417824, at *22 (N.D.N.Y. Sept. 22, 2016) (dismissing breach of fiduciary duty claim for failure to allege "damages directly caused by Defendants' conduct"); *accord Laub v. Faessel*, 745 N.Y.S.2d 534, 536-37 (1st Dep't 2002).

JPMorgan notably does not plead that, as of this date, it has actually lost any money from Mr. Staley's alleged deception. Indeed, Doe and USVI assert that JPMorgan "financially benefited

by earning millions of dollars" through its connection to Epstein, including from "interest, commissions, fees, and other financial benefits."  Doe FAC ¶¶ 267-68; USVI FAC ¶¶ 95-98.  The only damages that JPMorgan points to for Count III are (1) costs in defending, and "adverse publicity from," these lawsuits, and (2) "any amounts in damages" that JPMorgan might have to pay to the plaintiffs.  TPC ¶¶ 64-65.  But neither form of alleged damages suffices.  Mr. Staley did not "directly cause" this litigation initiated by independent plaintiffs some ten years after he left the company, nor any of the associated publicity.  Indeed, many of the allegations in USVI's and Doe's complaints are completely unrelated to Mr. Staley's conduct.  Similarly, any secondhand damages that JPMorgan *might* have to pay to the plaintiffs are completely remote and speculative and thus improperly pleaded.  *See*, *e.g.*, *Sea Trade Mar. Corp. v. Coutsodontis*, 744 F. App'x 721, 725-26 (2d Cir. 2018) (noting that in order to succeed on breach of fiduciary duty claim, plaintiff must prove "non-speculative damages" and that "the claim is not enforceable until damages are sustained").  Given JPMorgan's clear failure to point to any non-speculative damages that it has incurred through Mr. Staley's purported disloyalty, it has failed to properly plead a cause of action for breach of fiduciary duty, and this claim must be dismissed.

### ii.    JPMorgan Fails to State a Claim Under the Faithless Servant Doctrine.

Count IV's claim that Mr. Staley violated the Faithless Servant doctrine fails for similar reasons.  "New York courts are far from clear regarding the contours of—and interplay between—a claim for breach of fiduciary duty and the faithless servant doctrine."  *Feldman*, 977 F.3d at 242.  And some courts treat the cause of action as merely an alternate form of recovery for a breach of fiduciary duty claim.  *Id.*  But under the doctrine, one who owes a duty of loyalty to an employer but is "faithless" in the performance may be liable to forfeit his compensation.  *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003).  Courts apply alternate standards

to decide whether an employee's conduct merits disgorgement. *See Rubio*, 2021 WL 102651, at *4. One standard requires that the "misconduct and unfaithfulness . . . substantially violate the contract of service," while another requires that an agent "act adversely to his employer in any part of a transaction, or omit to disclose any interest which would naturally influence his conduct in dealing with the subject of his employment." *Id.* at *4 (cleaned up). But however the standard is stated, "New York courts have applied the faithless servant doctrine only in the limited circumstances where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Ebel v. G/O Media, Inc.*, 2021 WL 2037867, at *7 (S.D.N.Y. May 21, 2021).

Along with lacking particularity for the same reasons as Count III,[10] Count IV does not remotely allege such "limited circumstances." *Id.* The complaint here repeats stock phrases, such as that Mr. Staley "acted as a faithless servant," "abandoned the interests of [JPMorgan]," and "violated the [JPMorgan's] Code of Conduct in a way that permeated his service," *id.* ¶¶ 70-71, 74, but it lacks *factual allegations* that match the claim. There are no allegations that Mr. Staley embezzled, competed against JPMorgan, usurped business opportunities, or undertook any other activity that would put him at financial odds with the bank. *Ebel*, 2021 WL 2037867, at *7.[11] The

---

[10] The drive-by allegations for Count IV are just as conclusory as those relating to the breach of fiduciary duty claim. They fail under Rule 9(b), as JPMorgan does not detail when, how, and to whom Mr. Staley allegedly "consistently and misleadingly vouched for Epstein's good character," or when and how he subverted purported deliberations over whether the bank should keep Epstein as a client. TPC ¶ 72. Nor does JPMorgan say to whom Mr. Staley "made misrepresentations" when "protecting Epstein" from scrutiny. *Id.* ¶ 77. Given the charges of deceit, the bank must plead with particularity. And it is especially inadequate to just reference hundreds of pages of the plaintiffs' allegations that JPMorgan denies in its answer and even in its third-party complaints. *Rubio*, 2021 WL 102651, at *5 (dismissing faithless-servant counterclaim based on "insufficient conclusory statements").

[11] That the bank pleaded *zero* direct damages from Mr. Staley's alleged breach of fiduciary duty— instead relying on the speculative and remote costs of this litigation—underscores the mismatch.

closest JPMorgan gets is alleging that Mr. Staley lied to keep Epstein as a lucrative client for the bank.  But misconduct whose only remuneration is incremental profit from "increasing the amount of referred business" to *the employer* is not actionable under the very narrow faithless servant doctrine.  *Miller v. Levi & Korsinsky, LLP*, 2021 WL 535599, at *6 (S.D.N.Y. Feb. 12, 2021) (dismissing claim against lawyer who "acted unfaithfully to benefit other law firms and a mentor of hers" outside her firm when the only *financial* benefit derived from actions that profited her firm as well).  While JPMorgan "does allege insubordination and dishonesty, [it] fails to allege any element of self-dealing on [Mr. Staley]'s part," so the claim is "not actionable under the faithless servant doctrine."  *Grewal v. Cuneo*, 2016 WL 308803, at *8 (S.D.N.Y. Jan. 25, 2016). The Court should therefore dismiss Count IV.

## CONCLUSION

For the foregoing reasons, Mr. Staley respectfully requests that the Court dismiss the Complaint.

Date: April 24, 2023

Respectfully submitted,

By: */s/ Brendan V. Sullivan, Jr.*

Brendan V. Sullivan Jr.
Zachary K. Warren
Stephen L. Wohlgemuth
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5252
Fax: (202) 434-5029
zwarren@wc.com

*Counsel for Third-Party Defendant*
*James Edward Staley*

25