**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS<br><br>Plaintiff,<br><br>V.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>Defendant/Third-Party Plaintiff.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>Third-Party Plaintiff,<br><br>V.<br><br>JAMES EDWARD STALEY<br><br>Third-Party Defendant. | Case Number: 1:22-cv-10904-JSR |

**GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS'
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE
<u>DEFENDANT'S AFFIRMATIVE DEFENSES 5 THROUGH 8</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ............................................................................................................................ 4

   A.  The Equitable Defenses Should Be Stricken. ................................................................ 4

   B.  The Fault-Shifting Defense Should Be Stricken. ........................................................... 8

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*City of New York v. FedEx Ground Package System, Inc.*,
   314 F.R.D. 348 (S.D.N.Y. 2016) .................................................................. 2, 3, 4, 5, 6, 8

*Clear Channel Outdoor, Inc. v. City of New York*,
   594 F.3d 94 (2d Cir. 2010) ........................................................................................... 6

*Coach, Inc. v. Kmart Corps.*,
   756 F. Supp. 2d 421 (S.D.N.Y. 2010) ....................................................................... 3, 4

*DeJesus v. Virgin Islands Water and Power Auth.*,
   2011 WL 5864552 (V.I. Super. Ct. Oct. 26, 2011) ...................................................... 9

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
   189 F.R.D. 269 (S.D.N.Y. 1999) .................................................................................. 4

*FTC v. Crescent Publ. Grp., Inc.*,
   129 F. Supp. 2d 311 (S.D.N.Y. 2001) ....................................................................... 3, 8

*Jujamcyn Theaters LLC v. FDIC*,
   ___ F. Supp. 3d ___, 2023 WL 2366789 (S.D.N.Y. March 6, 2023) ........................... 3

*Maldonado by and through Ochoa v. City of Sibley*,
   58 F.4th 1017 (8th Cir. 2023) ....................................................................................... 9

*McGaughey v. District of Columbia*,
   684 F.3d 1355 (D.C. Cir. 2012) ..................................................................................... 9

*Perez v. Gov't of the Virgin Islands*,
   847 F.2d 104 (3d Cir. 1988) .......................................................................................... 9

*SEC v. Electronics Warehouse, Inc.*,
   689 F. Supp. 53 (D. Conn. 1988) ................................................................................... 7

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
   395 F. Supp. 2d 109 (S.D.N.Y. 2005) .......................................................................... 3

*State of New York v. United Parcel Services, Inc.*,
   160 F. Supp. 3d 629 (S.D.N.Y. 2016) .......................................................................... 6

*United States v. Angell*,
   292 F.3d 333 (2d Cir. 2002) ......................................................................................... 6

*United States v. Philip Morris Inc.*,
   300 F. Supp. 2d 61 (D.D.C. 2004) ................................................................................ 6

*United States v. Summerliln*,
   310 U.S. 414 (1940) ...................................................................................................... 6

*United States v. Vineland Chem. Co., Inc.*,
   692 F. Supp. 415 (D.N.J. 1988) .................................................................................... 7

**Statutes**

18 U.S.C. §§ 1581-1597 ....................................................................................................... 1

18 U.S.C. § 1591 ............................................................................................................. 1, 5

18 U.S.C. § 1591(a)(2) ........................................................................................................ 1

18 U.S.C. § 1591(d) ............................................................................................................ 2

18 U.S.C. § 1595(a) ............................................................................................................ 5

18 U.S.C. § 1595(d) .................................................................................................... 1, 2, 5

18 U.S.C. § 1964(c) ............................................................................................................ 5

18 U.S.C. §§ 2341 *et seq.* ................................................................................................... 4

18 U.S.C. § 2346(b) ............................................................................................................ 4

18 U.S.C. § 2346(b)(1)-(2) ................................................................................................. 5

**Rules**

Fed. R. Civ. P. 12(f) ............................................................................................................ 3

**INTRODUCTION**

Plaintiff, the Government of the United States Virgin Islands ("Government"), brought this civil action against Defendant JPMorgan Chase Bank, N.A. ("JPMorgan") as part of its ongoing effort to protect public safety and to hold accountable those who facilitated or participated in the trafficking venture or enterprise of Jeffrey Epstein ("Epstein"). The Government's investigation has revealed that JPMorgan knowingly, recklessly, and unlawfully provided and pulled the levers through which Epstein's recruiters and victims were paid and was indispensable to the operation and the concealment of Epstein's trafficking. Financial institutions can connect—or choke—human trafficking networks, and attorney generals' public enforcement actions are essential to prevent trafficking ventures like Epstein's from flourishing in the future. JPMorgan had real-time information on Epstein's activity that the Government did not and had specific legal duties to report this information to law enforcement authorities, which it intentionally decided not to do.

The Government's remaining claims are for violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1581-1597 ("TVPA"). Section 1595(d) provides a state attorney general a right of civil action as *parens patriae* for appropriate relief to protect the interests of state residents that have been threatened or adversely affected by any person who has violated 18 U.S.C. § 1591. The Government alleges that JPMorgan knowingly participated in and benefitted from Epstein's sex-trafficking venture by holding his accounts, processing payments to victims and recruiters, and concealing these suspicious transactions from law enforcement, in violation of 18 U.S.C. § 1591(a)(2). Second Amended Complaint (Dkt. 119) ("2AC"), ¶¶102-119 (Count One). The Government further alleges that JPMorgan's concealment of Epstein's suspicious transactions from law enforcement constitutes unlawful obstruction of TVPA enforcement, in violation of 18

U.S.C. § 1591(d). 2AC, ¶¶147-168 (Count Five). The Government seeks appropriate relief as *parens patriae* under 18 U.S.C. § 1595(d), including all available equitable and legal remedies.

JPMorgan answered the 2AC on April 24, 2023. Answer to Second Amended Complaint and Statement of Affirmative Defenses (Dkt. 124) ("Answer"). In addition to its admissions and denials of the Government's allegations, JPMorgan also pleads 25 separate affirmative defenses. *Id.* at 26-29. Among JPMorgan's defenses are those asserting that the Government's TVPA claims are barred by the doctrines of *in pari delicto*, unclean hands, and laches. *Id.* at 26, Defenses 5 through 7 (collectively, the "equitable defenses"). JPMorgan also asserts that the Government's damages "should be barred or reduced in accordance with the doctrines of comparative and contributory negligence or fault." *Id.*, Defense 8 (the "fault-shifting defense").

JPMorgan's equitable and fault-shifting defenses to the Government's TVPA *parens patriae* claims should be stricken. First, this Court and others long have held that equitable defenses—including *in pari delicto*, unclean hands, and laches—do not apply against government plaintiffs suing to vindicate public rights. *See, e.g., City of New York v. FedEx Ground Package System, Inc.*, 314 F.R.D. 348, 357-58 (S.D.N.Y. 2016) (where plaintiffs "are acting in law enforcement capacity in their roles as government entities, and not in a capacity akin to that of a private entity[,]" this "falls squarely into the line of authority prohibiting equitable defenses from applying to government actors exercising broad discretion to discharge statutory duties.") (internal quotation marks and citation omitted). The Government asserts its TVPA *parens patriae* claims as sovereign acting in its law enforcement capacity. JPMorgan's equitable defenses therefore do not apply and should be stricken.

Second, this Court and others also have held that fault-shifting defenses—including contributory or comparative negligence—addressed to law enforcement or regulatory acts or

2

omissions likewise do not apply against government plaintiffs suing to vindicate public rights. *See id.* at 359 ("The core premise of the defense is that Plaintiffs were negligent in their discretionary tax enforcement, a contention that is impermissible where the government seeks to vindicate the public interest via enforcement of a public statutory right."); *FTC v. Crescent Publ. Grp., Inc.*, 129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) ("'As a general rule . . . neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest.'") (quoting *Nevada v. U.S.*, 463 U.S. 110, 141 (1983)). JPMorgan's fault-shifting defense therefore likewise does not apply and should be stricken.

## LEGAL STANDARD

"The Court may strike from a pleading an insufficient defense[.]" Fed. R. Civ. P. 12(f). "The standard for striking an affirmative defense is three-pronged: (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005). "In determining whether to grant the motion to strike, a court will deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion." *Jujamcyn Theaters LLC v. FDIC*, ___ F. Supp. 3d ___, 2023 WL 2366789, at *8 (S.D.N.Y. March 6, 2023) (internal quotation marks and citation omitted).

A plaintiff is "prejudiced" for purposes of a motion to strike where inclusion of a facially deficient defense would require "additional discovery" and/or "expand the length and scope of the trial." *Specialty Minerals*, 395 F. Supp. 2d. at 114; *see also Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) ("Increased time and expense of trial may constitute sufficient

3

prejudice to warrant striking an affirmative defense."); *id.* ("Moreover, inclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation."); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999) ("Increased time and expense of trial may constitute prejudice to warrant granting plaintiff's Rule 12(f) motion.").

## ARGUMENT

**A. The Equitable Defenses Should Be Stricken.**

It is well-established within the Second Circuit and elsewhere that government plaintiffs suing to vindicate public rights are not subject to equitable defenses that may be invoked against private plaintiffs. In *City of New York v. FedEx, supra*, this Court addressed equitable defenses, including laches, unclean hands, and *in pari delicto*, 314 F.R.D. at 356, as follows:

> Once again, given the body of case law involving government plaintiffs and these equitable defenses, a basic principle emerges: "Courts have routinely held that, when acting in a capacity to enforce public rights in the public interest and discharge statutory responsibilities, government entities are not subject to all equitable defenses—such as laches or estoppel—that could ordinarily be invoked against a private actor."

*Id.* at 357 (quoting *State of New York v. United Parcel Service, Inc.*, 160 F. Supp. 3d 629, 640 (S.D.N.Y. 2016), *vacated in part on other grounds by*, 2016 WL 10672074, at *1 (June 21, 2016) (granting partial reconsideration, vacating order striking different non-equitable defense)).

The Court in *City of New York v. FedEx* struck the defendant's equitable defenses as legally inapplicable to the city and state government plaintiffs' public enforcement claims under 18 U.S.C. § 2346(b), part of the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341 *et seq.* ("CCTA"). The Court explained that:

> The CCTA authorizes State and local governments to seek various types of relief to restrain CCTA violations, but it does not provide a private right of action. With respect to the CCTA claim, therefore, Plaintiffs are "acting in law enforcement capacity in their roles as government entities," and "not in a capacity akin to that of

4

a private entity." This situation thus falls squarely into the line of authority prohibiting equitable defenses from applying to government actors exercising broad discretion to discharge statutory duties.

314 F.R.D. at 357-58 (quoting *State of New York v. UPS*, 160 F. Supp. 3d at 647).

The Government's TVPA *parens patriae* claims, like the CCTA claims in *City of New York v. FedEx*, are public law enforcement claims. *Compare* 18 U.S.C. § 2346(b)(1)-(2) (providing state or local government plaintiff right of action in federal court "to prevent and restrain violations of this chapter by any person" and for "other appropriate relief . . . , including civil penalties, money damages, and injunctive or other equitable relief"); *with* 18 U.S.C. § 1595(d) (providing state attorney general right of action in federal court "as parens patriae . . . to obtain appropriate relief" for violations of 18 U.S.C. § 1591) and Dkt. 130 (5/1/2023 Op. and Order) at 17 (Government satisfies *parens patriae* standing requirements that it "(1) allege an injury to a quasi-sovereign interest that affects a sufficiently substantial segment of its population and (2) seek relief to the territory's injury that would be unavailable to individual plaintiffs.").[1] The Government's TVPA claims therefore are not subject to JPMorgan's equitable defenses.

The general rule prohibiting equitable defenses to government plaintiffs' public enforcement claims applies here to JPMorgan's affirmative defense of laches (Seventh Defense). "[L]aches bars a party's claim in equity where the party has unreasonably delayed in a prejudicial manner[.]" *City of New York v. FedEx*, 314 F.R.D. at 356. Controlling and persuasive authority establishes that the defense of laches does not apply to claims by the government to enforce public

---

[1] The TVPA's provision of a *separate* private right of action by victims, 18 U.S.C. § 1595(a), does not convert the Government's *parens patriae* claims into private tort claims. *Contra City of New York v. FedEx*, 314 F.R.D. at 354 (addressing state and local governments' civil RICO claims under 18 U.S.C. § 1964(c), "which may be invoked by private parties"); *id.* at 358 ("Plaintiffs' role is arguably different in the context of their . . . RICO claims, because they 'are acting in a role that is more akin to that of a private actor, rather than in the role of a public enforcer of the public interest.'") (quoting *State of New York v. UPS*, 160 F. Supp. 3d at 648).

5

rights. *See, e.g., United States v. Summerliln*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights."); *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 111 (2d Cir. 2010) ("'Principles of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow.'") (quoting *La Trieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)); *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002) ("[L]aches is not available against the federal government when it undertakes to enforce a public right or protect the public interest."); *City of New York v. FedEx*, 314 F.R.D. at 358 (striking laches defense to state and city government plaintiffs' CCPA public enforcement claims); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 72 (D.D.C. 2004) ("'As a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest.'") (quoting *Utah Power & Light Co. v. U.S.*, 243 U.S. 389, 409 (1917)); *id.* at 74 (granting summary judgment for federal government on Philip Morris's laches defense).

The general rule prohibiting equitable defenses to government public enforcement claims also applies to JPMorgan's affirmative defenses of *in pari delicto* and unclean hands (Fifth and Sixth Defenses). "[U]nclean hands prohibits awarding equitable relief to a party that has acted fraudulently or deceitfully to gain an unfair advantage; and *in pari delicto* applies where the plaintiff is also a wrongdoer and thus equally responsible for the injury at issue." *City of New York v. FedEx*, 314 F.R.D. at 356-57. Substantial authority holds that these defenses do not apply to a government plaintiff's claims enforcing public rights. *See id.* at 358 ("'When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law. . . . In pari delicto* is similarly unavailable.'") (quoting *United States v. Philip Morris*, 300 F. Supp. 2d at 75-76); *State of New York v. UPS*, 160 F. Supp. 3d at 647-48 (granting motion to strike

6

unclean hands and *in pari delicto* defenses to CCTA public enforcement claim as "not cognizable as a matter of law"); *United States v. Vineland Chem. Co., Inc.*, 692 F. Supp. 415, 423 (D.N.J. 1988) ("[T]he equitable doctrine of unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare."); *SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988) ("The doctrine of unclean hands 'may not be invoked against a government agency which is attempting to enforce a congressional mandate in the public interest.'") (quoting *SEC v. Gulf & Western*, 502 F. Supp. 343, 348 (D.D.C. 1980)).[2]

Since the Government here is acting in its sovereign capacity to enforce public rights under the TVPA, JPMorgan's equitable defenses are not cognizable as a matter of law. Moreover, maintaining these legally inapplicable defenses would prejudice the Government by requiring additional discovery and expending trial time on questions about the Government's actions or inaction that are irrelevant to and distracting from the material questions of whether and how JPMorgan violated the TVPA. Indeed, JPMorgan has specifically cited its "*in pari delicto*" defense as justification for discovery requests in this litigation, signaling that JPMorgan intends to second-guess the USVI's discretionary governance decisions. But that type of argument—and the discovery it entails—is precisely what the above authority precludes. Given the necessity that government actors have discretion in making policy judgments and given the multiplicity of factors that influence the exercise of this discretion, courts have correctly concluded that private litigants may not assert affirmative defenses that effectively seek to relitigate government policy decisions.

---

[2] These opinions note authority recognizing a limited circumstance in which equitable defenses may be raised against the government "where the alleged misconduct occurred during the investigation leading to the suit and the misconduct prejudiced the defendant in his defense of the action." *SEC v. Electronics Warehouse*, 689 F. Supp. at 73. Here, JPMorgan pleads no such facts.

For all of these reasons, JPMorgan's equitable defenses of *in pari delicto*, unclean hands, and laches should be stricken.

### B. The Fault-Shifting Defense Should Be Stricken.

Government plaintiffs suing to vindicate public rights also are not subject to fault-shifting defenses. This includes JPMorgan's defense asserting that the Government's damages "should be barred or reduced in accordance with the doctrines of comparative and contributory negligence or fault." Answer at 26, Defense 8. This defense is both factually baseless and, for purposes of this Motion, legally inapposite.

In *City of New York v. FedEx*, this Court addressed the defendant's attempt to assert fault-shifting defenses against the city and state defendants and ruled that:

> The eighteenth defense is identical to the seventeenth defense, except that it also purports to raise what appears to be a defense of contributory or comparative negligence.
>
> That minor difference is of no import in the context of the CCTA claim. The core premise of the defense is that Plaintiffs were negligent in their discretionary tax enforcement, a contention that is impermissible where the government seeks to vindicate the public interest via enforcement of a public statutory right.

*Id.*; *see also FTC v. Crescent Publ.*, 129 F. Supp. 2d at 324 ("'As a general rule . . . neglect of duty on the part of officers of the Government is no defense to a suit by it or to enforce a public right or protect a public interest.' It is the attempt to assert a contributory- or comparative-negligence defense against Plaintiffs *in their public enforcement role* that is objectionable and compels striking of the eighteenth defense as to the CCTA claim.") (quoting *Nevada*, 463 U.S. at 141) (emphasis in original).

This Court's recognition that fault-shifting defenses are not available against government plaintiffs for alleged failure to enforce or regulate is consistent with Virgin Islands law applicable to the Government's policymaking and law enforcement activity. Courts applying Virgin Islands

8

law recognize the "public duty doctrine," which "preclude[es] suit for governmental negligence based only on the Government's failure to comply with a duty owed to the public in general[.]" *Perez v. Gov't of the Virgin Islands*, 847 F.2d 104, 107 (3d Cir. 1988); *see also DeJesus v. Virgin Islands Water and Power Auth.*, 2011 WL 5864552, at *4 (V.I. Super. Ct. Oct. 26, 2011) ("The public duty doctrine effectively immunizes the government and its officials from liability for a plaintiff's injuries except where a special relationship exists between the plaintiff and the government or official or where the official's acts are ministerial.") (internal quotation marks and citation omitted).

Courts applying the law of other states similarly recognize that alleged failure to engage in regulatory or enforcement action is not grounds to pin fault on a government actor. *See, e.g., Maldonado by and through Ochoa v. City of Sibley*, 58 F.4th 1017, 1022 (8th Cir. 2023) (under Iowa law, "the public-duty doctrine generally applies when the 'government fails to adequately enforce criminal or regulatory laws for the benefit of the general public or . . . protect the general public from somebody else's instrumentality.'") (quoting *Fulps v. City of Urbandale*, 956 N.W.2d 469, 475 (Iowa 2021)); *McGaughey v. District of Columbia*, 684 F.3d 1355, 1358 (D.C. Cir. 2012) (public duty doctrine barred claims against government for failure to investigate rape allegation: "Courts and juries are ill-equipped to review legislative and executive decisions about how to allocate limited municipal resources to best protect the public.").

Since JPMorgan's Eighth Defense seeks to shift fault to the Government for alleged failure to prevent Epstein's and JPMorgan's own trafficking-related activity, this defense is barred by the public duty doctrine and/or this Court's decisions holding that alleged neglect of duty is no defense to government law enforcement actions. Here, too, maintaining this legally inapplicable (and factually incorrect) defense would prejudice the Government by requiring additional discovery

9

and expending trial time on questions about the Government's actions or inaction that are irrelevant to and distracting from the material questions of whether and how JPMorgan violated the TVPA. For all of these reasons, JPMorgan's defense of comparative or contributory negligence or fault should be stricken.

## CONCLUSION

For all of the reasons set forth, the Court should strike JPMorgan's Affirmative Defenses 5 through 8.

Dated: May 8, 2023

**ARIEL SMITH, ESQ.**
**ATTORNEY GENERAL NOMINEE**

By counsel,

/s/ *Linda Singer*
**LINDA SINGER**
Admitted *Pro Hac Vice*
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Tel: (202) 232-5504
lsinger@motleyrice.com

**VENETIA VELAZQUEZ**
Admitted *Pro Hac Vice*
Acting Chief, Civil Division
Virgin Islands Department of Justice
Office of the Attorney General
213 Estate La Reine, RR1 Box 6151
Kingshill, St. Croix
U.S. Virgin Islands 00850
Tel: (340) 773-0295 ext. 202481
venetia.velazquez@doj.vi.gov

**DAVID I. ACKERMAN**
**MIMI LIU** (Admitted *Pro Hac Vice*)
**PAIGE BOGGS** (Admitted *Pro Hac Vice*)
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Tel: (202) 232-5504

10

dackerman@motleyrice.com
mliu@motleyrice.com
pboggs@motleyrice.com

*Attorneys for Plaintiff Government of the United States Virgin Islands*