# EXHIBIT 85

**Kellerhals Ferguson Kroblin PLLC**

Royal Palms Professional Building, 9053 Estate Thomas, Suite 101, St. Thomas, V.I. 00802
▮▮▮▮ Telephone | ▮▮▮▮ Fax | www.kellfer.com

April 25, 2019

**Via Hand Delivery**

JUSTICE: ATTORNEY GENE
APR 25 2019 PM 4:0

Denise N. George Counts, Esq.
Attorney General Nominee
Department of Justice
Office of the Attorney General
34-38 Kronsprindsens Gade
GERS Building, 2nd Floor
St. Thomas V.I. 00802

Re:   **Change in Notification Procedures**

Dear Attorney General Counts:

We represent Mr. Jeffrey Epstein, who is registered on the U.S. Virgin Islands Sexual Offender Registry. For the reasons explained below, we are respectfully requesting that the U.S. Virgin Islands Department of Justice ("USVIDOJ") reinstate the proven travel notification procedures that have been in effect since Mr. Epstein's initial registration. Since initially registering with the Registry in 2009, Mr. Epstein has strictly followed the USVIDOJ's same travel notification procedures, which fully comply with both U.S. Virgin Islands statutory law and the United States Sex Offender Registration and Notification Act ("SORNA"). By letter to Mr. Epstein dated March 14, 2019, then Acting Assistant Attorney General Carol Thomas Jacobs acknowledged Mr. Epstein's well documented history of frequent and extensive travel, but advised that the USVIDOJ would no longer permit Mr. Epstein to follow these procedures, despite the fact that they have worked flawlessly for the past ten (10) years.

**Mr. Epstein's Frequent and Extensive Travel**

Both Mr. Epstein's former attorney, Maria Hodge, and Mr. Epstein's stateside counsel, Darren Indyke, previously provided substantial documentation to the USVIDOJ as to Mr. Epstein's frequent and extensive travel for business and other legitimate purposes. In nearly all cases, Mr. Epstein has been required to travel, both internationally and domestically, on little notice and to change his travel plans frequently on equally little notice. The email travel notification authorized under Virgin Islands law has provided the most efficient and workable method to keep the USVIDOJ instantly informed of Mr. Epstein's frequent and extensive travel plans and the changes regularly required to be made to those plans. As a result of this system of email travel notification, the USVIDOJ has been aware of Mr. Epstein's location every single day of his life without exception for the past ten (10) years. This is confirmed by the USVIDOJ's own files which contain hundreds of Mr. Epstein's email travel notices and changes to those notices that have been provided to Ms. Shani Pinney, the USVIDOJ Sexual Offender Registry Coordinator, during that ten (10) year period.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                          VI-JPM-000012395

Letter to Denise George Counts, Esq.
April 25, 2019
Page 2

### The USVIDOJ's Failure to Notify the Dominican Republic of Mr. Epstein's Travel

Mr. Epstein has a ten (10) year record of perfect compliance with his travel notification obligations to the USVIDOJ. In many cases, Mr. Epstein has over-notified the USVIDOJ regarding his travel in order to ensure his continuing compliance. To our knowledge, the only issue ever to occur with respect to Mr. Epstein's travel is related to his recent travel to the Dominican Republic on February 19, 2019. Mr. Epstein bears absolutely no responsibility for this issue as he gave timely notice to the USVIDOJ of his intended travel to the Dominican Republic. It is our understanding that the issue arose solely as a result of the USVIDOJ's inadvertent failure to notify the Dominican Republic of Mr. Epstein's intended travel to that jurisdiction, as required by 14 V.I.C. §1726(d). Because of the USVIDOJ's failure, Mr. Epstein was detained for several hours by the Dominican Republic authorities and eventually refused entry into the country. Unfortunately, we believe that this incident, caused solely by the USVIDOJ, and not by Mr. Epstein, resulted in additional scrutiny regarding Mr. Epstein's travel reporting, and that this in turn gave rise to the recent decision to change the travel reporting procedures that have worked perfectly for the past ten (10) years. Attached as Appendix 1, you will find a detailed account of Mr. Epstein's extensive notification efforts relating to his trip to the Dominican Republic and the response from the USVIDOJ.

### Request to Reinstate the Prior Travel Notification Procedures

I have included for your review, as Appendix 2, the correspondence between Attorney Hodge and then-Attorney General Vincent Frazer in which then-Attorney General Frazer confirmed the twenty-four (24) hour statutory notice period applicable to Mr. Epstein's frequent travel outside the Virgin Islands, as well as Mr. Epstein's right to provide travel notification to the USVIDOJ via email and by facsimile in lieu of in person notification.

Specifically, we are requesting reinstatement of the following travel notification procedures confirmed by the USVIDOJ[1]:

- Mr. Epstein will be allowed to notify the Department of Justice of his intention to travel outside the Territory twenty-four (24) hours prior to his departure;
- Notice must be given by Mr. Epstein himself, via in-person visit, by facsimile correspondence which is signed by him, or by email with an electronic signature;
- Mr. Epstein will be allowed to continue to notify the department when he is staying in one of his stateside homes. He must provide ... a current list of, and address for each of his stateside homes;
- If the jurisdiction to which he travels requires his registration for the duration of time he is there, he will comply with that registration requirement;
- When Mr. Epstein is staying at the home of an associate, he must notify the department of the city and state or country in which he is temporarily staying and his period of stay in the jurisdiction;

---

[1] This list reflects the relevant requirements communicated by letters dated July 25, 2012 and August 14, 2012 from then-Attorney General Vincent Frazer.

- When Mr. Epstein is staying in a non-private lodging he, or his representative, may provide the specifics of the name, city, and address of the establishment;
- Notice must be given of any modification from the travel itinerary, as originally advised after leaving the territory. Such notice may be submitted by facsimile or email by Mr. Epstein or his legal counsel; and
- Upon returning to the Virgin Islands, Mr. Epstein shall immediately notify the Department of Justice by visit, facsimile, or email with electronic signature.

### Current Notification Requirements

Attorney Jacobs letter of March 14, 2019 revoked the notification procedures previously confirmed by the USVIDOJ and now requires the following:

- [Mr. Epstein is] required to appear in person at the USVIDOJ at least twenty-one (21) calendar days prior to any travel outside the United States;
- Notification of any travel outside the U.S. Virgin Islands must be provided in person at the USVIDOJ when [Mr. Epstein] is in the territory;
- Notification by email can only serve as notification if [Mr. Epstein is] already outside the territory and planning on travelling to another destination or to notify of a change in the length of [Mr. Epstein's] travels while [Mr. Epstein is] outside the territory;
- If a reduction in the twenty-one (21) day notification is requested, [Mr. Epstein] must submit information in support of the request for approval at the discretion of the USVIDOJ.

### The Prior Travel Notification Procedures Fully Comply with SORNA and the USVI Statutes

As discussed in Attorney Hodge's letter of July 30, 2012, SORNA very clearly authorizes flexible travel notification procedures in cases, such as Mr. Epstein's, where registrants travel frequently for work or other legitimate purposes. As detailed in Attorney Hodge's letter of July 30, 2012:

> The Federal SORNA guidelines have already recognized that there are cases where flexibility in the application of SORNA's travel notification procedures is necessary. For example, the SORNA guidelines themselves discuss the case of an individual who is a "long haul trucker" who regularly drives thousands of miles through "dozens of jurisdictions in the course of his employment", as well as the cases of a home-improvement contractor and of a day laborer, who travel regularly to various locations that may change on a daily basis -- see The National Guidelines for Sex Offender Registration and Notification, pp. 39 and 43 -- or the case of an individual "who lives in a northern border state and who commutes to Canada for work on a daily basis" -- see Supplemental Guidelines for Sex Offender Registration and Notification, Federal Register, Vol. 76, No. 7 (January 11, 2011), p. 1638. These cases are analogous to any number of possible situations in our Territory, including pilots, fisherman, boat captains, boat workers, cruise ship workers, merchants and international businessman, all of whom travel to and from the Territory on a frequent and regular basis in the ordinary course of their employment or business. The burden on both the Department of Justice and the worker of requiring such a worker to give 72-hours and in some

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

cases 21-day prior notice each time he leaves the Territory and to confirm every location and address included in his travel notification would be substantial. In situations such as these, the SORNA guidelines permit the responsible jurisdictions to reduce notice requirements and simply require the traveling registrant to provide a most likely itinerary of "normal travel routes" and "general areas" of work. The National Guidelines for Sex Offender Registration and Notification, pp. 39 and 43. Mr. Epstein's case is no different from any of these cases where SORNA expressly permits this flexibility in the manner and content of travel notification.

Consider, for example, the case of a St. Thomas boat captain chartering trips to various islands in the Caribbean. Requiring that boat captain to provide 72 hours prior travel notice would prevent him from taking any charters unless requested of him more than three days in advance. With visiting tourists on short stays frequently requesting charters only a day or two in advance, such a requirement would substantially interfere with the boat captain's ability to conduct his business. Moreover, requiring him to provide specific addresses of his travels could also be problematic in that tourists chartering his boat might not even make such determinations until the day of the actual charter. Requiring the boat captain to be inflexible with his charter passengers would therefore also seriously interfere with his business. The supplemental SORNA guidelines have specifically stated in their own words that such requirements could be "pointlessly burdensome" and "unworkable". See Supplemental Guidelines for Sex Offender Registration and Notification, Federal Register, Vol. 76, No. 7 (January 11, 2011), p. 1638. Consistent with the flexibility afforded by the SORNA Guidelines, both Senator Russell and [then-Attorney General Frazer] acknowledged at that June 21, 2012 legislative hearing that the law must be flexible to enable those who must travel frequently and on short notice to do so.

The very same flexibility authorized by SORNA for frequent travel reporting is incorporated into Virgin Islands law. In fact, Section 1724(b)(4) provides for a mandatory exception to the twenty-one (21) day in person notice otherwise required for international travel. Section 1724(b)(4) explicitly states that "... a sex offender who provides reasonable and reliable proof satisfactory to the Department of Justice, that he travels frequently outside the United States for work or other legitimate purposes, or a sex offender who travels outside the United States for emergency situations, *shall notify the Department of Justice in writing* at least 24 hours before traveling outside of the United States for periods of more than 48 hours, and, in any such case, shall notify the Department of Justice in writing upon the sex offender's return to this jurisdiction."

Therefore, in cases such as Mr. Epstein's, where he has provided reasonable and reliable proof to the USVIDOJ that he travels outside the United States for work or other legitimate purposes, we believe he is only required to notify the USVIDOJ in writing (that is, by email) at least twenty-four (24) hours before travelling outside the United States and to notify the USVIDOJ in writing upon his return. We believe that the USVIDOJ is already in possession of substantial proof of Mr. Epstein's extensive and frequent international, as well as his domestic, business travel. However, in the event you would like us to resubmit any information, we would be happy to do so.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

VI-JPM-000012398

Letter to Denise George Counts, Esq.
April 25, 2019
Page 5

Further adopting the recommendations of federal SORNA guidelines, Virgin Islands law provides equal flexibility with respect to reporting travel between the USVI and the United States. Email travel reporting prior to departing the USVI for destinations in the United States fully complies with the requirements of Section 1724(c). Section 1724(c) provides that "[b]efore moving from the United States Virgin Islands to another jurisdiction within the United States, a person required to register shall register his new address, temporary or permanent, with the Department of Justice before he leaves the territory." By its very terms, Section 1724(c) specifically does not require in person notification. Therefore, Attorney Jacobs' requirement to appear in person to notify the USVIDOJ of travel between the USVI and the United States appears to exceed the requirements of Virgin Islands law.

Although Attorney Jacobs cited section 1724(b)(1) as the reasoning for revocation of the established travel procedures, we do not believe that this section is applicable to Mr. Epstein's travels to the United States. Among the many reasons that we believe that section 1724(b)(1) does not apply is the fact that Mr. Epstein has already registered his temporary lodging with the USVIDOJ. By its very language, section 1724(b)(1) appears only to apply in the event there are changes to Mr. Epstein's temporary lodging in the United States. Mr. Epstein maintains temporary lodging (vacation homes) in Florida, New York, and New Mexico. All of the required information regarding those temporary lodgings has been on file with the USVIDOJ since Mr. Epstein initially registered in the USVI in 2009. There have been no changes to Mr. Epstein's temporary lodging information since his initial registration, and there certainly have been no changes to his temporary lodging information since his last in person annual registration renewal earlier this year, as required by section 1724(d).

### Safeguards to Ensure Compliance

As a result of the incident in the Dominican Republic, we are conscious of the need to make sure there are safeguards in place to ensure Mr. Epstein's compliance and also to ensure that proper notification is given to jurisdictions that require it. We are respectfully requesting that going forward, the USVIDOJ provide Mr. Epstein with an email copy of all notifications it is required to make to jurisdictions outside the USVI pursuant to section 1726(d). By receiving an email copy of these notifications, Mr. Epstein will be able to confirm that the USVIDOJ has received each of his travel notices and, if necessary, take additional action to ensure that such notice has been received by the USVIDOJ and forwarded to the appropriate jurisdictions outside the USVI.

Mr. Epstein's counsel, Darren Indyke, and I would appreciate the opportunity to discuss this matter with you further. We will make ourselves available at your convenience.

Respectfully,

Erika A. Kellerhals

*Encl*

**APPENDIX 1**

In accordance with the procedures authorized by Attorney General Frazer in August 2012, Mr. Epstein gave proper email notice on February 16, 2019 to Ms. Shani Pinney, the Territorial Sexual Offender Registry Program Manager, of his intention to travel for a day trip to the Dominican Republic on February 19, 2019. Mr. Epstein's attorney, Darren Indyke, was copied on that email notice, and received the email at the same time Mr. Epstein emailed it to Ms. Pinney. *See* **Exhibit 1**. That notice included all international travel information necessary in order for the Department of Justice to give the Dominican Republic authorities the required advance notice of Mr. Epstein's arrival.

Mr. Epstein also emailed Ms. Pinney on February 18, 2019 regarding his obligation to annually renew his registration on March 5, 2019 and advised that after leaving at noon on February 19, 2019, Mr. Epstein anticipated being outside of the Territory until March 20, 2019. Mr. Epstein inquired in his email as to whether he should renew his registration before he left the next day or after he returned on March 20, 2019. Attorney Indyke was also copied on that email, and also received it when Mr. Epstein emailed it to Ms. Pinney. *See* **Exhibit 2**.

Despite Mr. Epstein's timely and proper notice to the Department of Justice of his travel to the Dominican Republic, the Dominican Republic did not receive advance notice of Mr. Epstein's travel. As a result, upon Mr. Epstein's arrival in the Dominican Republic on February 19, 2019, he was detained for several hours and ultimately denied entry. Having been refused entry, Mr. Epstein then traveled to his vacation home in Palm Beach, Florida, as his February 16, 2019 email notice advised he would do.

On February 21, 2019 at 9:57PM (EST), Attorney Indyke notified Ms. Pinney of a modification to Mr. Epstein's travel plans. As authorized by the travel notification procedures in effect prior to your March 14, 2019 letter, because Mr. Epstein was traveling and no longer in the Territory at that time, Attorney Indyke provided the changes to Mr. Epstein's itinerary by email to Ms. Pinney at the same email address that he had previously used to transmit his messages successfully. *See* **Exhibit 3**. All of the required information, including the required information for international travel, was included in that email.

Six (6) days after Mr. Epstein emailed his February 16, 2019 travel notice, and three (3) days after Mr. Epstein had been detained and refused entry to the Dominican Republic, Mr. Epstein received a response from Ms. Pinney. By email on February 22, 2019 at 9:11AM (EST), Ms. Pinney advised that:

> I am only now responding because I have been out of the office. Please note that an appointment is not needed to fulfill your registration obligation.
>
> In the future, report in person to DOJ to register and there will be Investigators that can assist in my absence.
>
> Also, I have not received your travel details. As you are aware these details must be provided prior to your departure. Please provide by the end of business day.

*See* **Exhibit 4**. Five (5) minutes later, at 9:16AM (EST), Mr. Epstein re-sent to Ms. Pinney the email travel notice that he sent on February 16, 2019 and copied Attorney Indyke on the email he re-sent. *See* **Exhibit 5**. Ms. Pinney responded by email at 9:43AM (EST) that she searched her emails and

could not find Mr. Epstein's original February 16, 2019 email travel notice. *See* **Exhibit 6**. However, Ms. Pinney did receive Mr. Epstein's February 18, 2019 email and Mr. Epstein's 9:16AM (EST) email on February 22, 2019. *See* the email chains in **Exhibits 4 & 6**. Ms. Pinney also stated that:

> In the future, cc SOR Investigator Augustin to assure that the travel details are received. Agent Augustin has been cc'd in this email. Also, you are required to report on March 11th after your return to the USVI on March 9th to complete your yearly registration.

*See* **Exhibit 6**.

In light of Ms. Pinney's advice that she had not received Mr. Epstein's emails, Mr. Epstein inquired as to whether she had received Attorney Indyke's February 21, 2019 email regarding the changes to Mr. Epstein's travel itinerary. Mr. Epstein sent Ms. Pinney four (4) separate emails on February 22, 2019 asking for confirmation that Attorney Indyke's February 21, 2019 email had been received. Both Attorney Indyke and Agent Augustin were copied on all of them. *See* **Exhibits 7, 8, 9 & 10**. Attorney Indyke received each of these emails at the time they were sent to Ms. Pinney. Attorney Indyke also sent emails to both Ms. Pinney and Agent Augustin on February 22, 2019, which included a copy of the February 21, 2019 email Attorney Indyke sent to Ms. Pinney. *See* **Exhibits 11 & 12**. Three (3) days later, on February 25, 2019, Ms. Pinney emailed Mr. Epstein that she had not received any notices from Attorney Indyke. *See* **Exhibit 13**. However, none of the emails sent by Attorney Indyke, or for that matter by Mr. Epstein, during the February 16, 2019 to February 28, 2019 period were returned as undelivered by the DOJ's email server, and Attorney Indyke and Ms. Pinney have communicated successfully by email for years.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER