LAW OFFICES
# WILLIAMS & CONNOLLY LLP

STEPHEN L. WOHLGEMUTH
(202) 434-5390
swohlgemuth@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 22, 2023

Hon. Jed S. Rakoff
Via ECF

Re: *USVI v. JPMorgan Chase Bank, N.A.*; Privilege Waiver

Dear Judge Rakoff:

Third-party Defendant James Staley seeks an order requiring JPMorgan to produce documents that are currently being withheld despite the bank having waived privilege and work-product protections through its claims and conduct in this matter. The bank has waived privilege and work product in two ways: 1) by placing the knowledge and conduct of its inhouse lawyers directly at issue; and 2) by using and preparing a witness with a privileged document while withholding other documents concerning the same subject matter.

*At-Issue Waiver*: JPMorgan has placed the knowledge and conduct of its general counsel (and his staff) directly at issue in this case. In its third-party complaint, JPMorgan alleges that Mr. Staley deceived the bank into keeping Jeffrey Epstein as a client, claiming that Mr. Staley's supposed "vouching" led to the bank retaining Epstein. TPC ¶¶ 61, 72. ███████████████████████████████████████████████████████████████████ JPMorgan's claims thus depend on proving that its general counsel was in fact impacted by Mr. Staley's supposed "vouching." These circumstances lead to a straightforward at-issue waiver, as Mr. Staley must have the opportunity to probe all information that the general counsel (and his staff) knew when making Epstein-retention decisions. And there is reason to believe that discovery into these issues will bear fruit. ███████████████████████████████████████████████████████████████████

It is black-letter law that a party waives privilege by making "factual assertions the truth of which can only be assessed by examination of the privileged communication." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027566, at *6 (S.D.N.Y. Dec. 30, 2022). Consistent with this principle, courts find waiver where a party's contentions implicate the knowledge or conduct of its attorneys. *See, e.g., Pereira v. United Jersey Bank*, 1997 WL 773716, at *5-6

WILLIAMS & CONNOLLY LLP®
June 22, 2023
Page 2

(S.D.N.Y. Dec. 11, 1997) (finding at-issue waiver where defendant's inhouse counsel played a "critical role" in "matters intimately related" to defendant's defense and thus the "factual assertions surrounding" the defense could "only be fully assessed by examining [defendant's] otherwise privileged communications with counsel"); *Paramount Comm., Inc. v. Donaghy*, 858 F. Supp. 391, 397 (S.D.N.Y. 1994) (noting that waiver is appropriately found where "the attorneys themselves independently took actions or made decisions relevant to the case"); *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) ("An attorney-client privilege may be waived if a party 'injects into ... litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct.'"). Indeed, a party can waive privilege merely by placing its knowledge at issue if the full scope of that knowledge can be ascertained only by examining privileged communications. *See PRCM Advisers LLC*, 2022 WL 18027566, at *7 (S.D.N.Y. Dec. 30, 2022) (finding that assertions of fraudulent concealment and misrepresentation implicated the defendant's state of mind, thus constituting a waiver of communications with attorney that would reveal what the defendants knew and when); *Lombardi v. Whitehall XII/Hubert St., LLC*, 2008 WL 2557419, at *1 (S.D.N.Y. June 26, 2008) (finding waiver over communications with counsel where they "may bear" on defendant's "knowledge or lack thereof").

JPMorgan has plainly waived privilege and work product under these lines of cases. The third-party complaints hinge on allegations that Mr. Staley deceived the bank into keeping Epstein as a client through alleged false assertions provided directly or indirectly to its lawyers. The bank contends that Mr. Staley was a "direct and proximate cause of JPMC's decision to continue to do business with Epstein until 2013" by "fraudulently concealing from JPMC relevant facts" relating to Epstein, "affirmatively misrepresent[ing] the true facts of his and Epstein's personal interactions," and "provid[ing] misleading information to JPMC when vouching for Epstein's character and conduct." TPC ¶¶ 60-61, 63. The only way to test the bank's assertion (which Mr. Staley disputes) is to probe what the general counsel in fact knew and relied upon when assessing the bank's relationship with Epstein.

JPMorgan's sole response has been to claim that reputational risk assessments of the sort the general counsel made about Epstein are business, as opposed to legal, decisions. That is beside the point and ignores the testimony in this case: what matters is the general counsel's *knowledge* about Epstein based on the information he received, not whether the general counsel was using that knowledge to render legal advice. In other words, because JPMorgan has put the general counsel's state of mind at issue, it must produce communications—including allegedly-privileged communications—that show what he knew and relied upon when making determinations about the bank's relationship with Epstein. For example, if such communications reflect that the bank's general counsel (or staff) was made aware that Epstein was engaging in improper conduct, that would directly refute the bank's contention that its decision-making was predicated on Mr. Staley's alleged fraudulent vouching for Epstein.

And the evidence in the case appears to reflect that JPMorgan had plenty of information independent of Mr. Staley.

WILLIAMS & CONNOLLY LLP
June 22, 2023
Page 3



This is likely the tip of iceberg, as it appears that even more information available to the bank's general counsel is being withheld. JPMorgan's privilege log lists numerous communications that the bank's inhouse counsel had regarding Epstein that have not been produced, including those related to his litigation and relationship with Bear Stearns.

Simply put, it is critical for Mr. Staley to discover the general counsel's office's knowledge regarding Epstein, as well as the information he had available when declining to terminate Epstein as a client. Allowing JPMorgan to withhold such information, while permitting it to baldly claim that Mr. Staley deceived the general counsel, would deprive Mr. Staley of "access to material that might disprove or undermine" the bank's contentions. *PRCM Advisers LLC*, 2022 WL 18027566, at *7.

*Selective Waiver:* JPMorgan has also waived privilege by selectively disclosing and using a document evidencing legal advice from inhouse counsel to Mr. Staley with respect to Mr. Epstein. When a party selectively discloses privileged communications, privilege is waived not only over the produced communications, but over all other communications that "concern the same subject matter" and "ought in fairness be considered together." Fed. R. Evid. 502(a). This rule is most often implicated where a party uses privilege as both a sword and shield by disclosing a privilege communication "that is beneficial to its case while withholding related privileged information that is damaging." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 1930294, at *3 (S.D.N.Y. May 13, 2021). Such abuse of the attorney-client privilege results in both prejudice to the other party and a "distortion of the judicial process." *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987).



JPMorgan's only argument against waiver is the contention that the document evidences business, as opposed to legal, advice. But before Mr. Staley raised this issue, JPMorgan appears

WILLIAMS & CONNOLLY LLP
June 22, 2023
Page 4

to have conceded that the document was privileged by placing it (or a version of it) on their privilege log. See Ex. 7 at entry 10898. And even if the actual decision to exit a client is a business decision, an inhouse counsel's advice to a bank employee about the decision-making process would be privileged because it implicates consideration of legal and regulatory requirements. See In re Cnty. of Erie, 473 F.3d 413, 422 (2d Cir. 2007); Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc., 2014 WL 1327952, at *3 (S.D.N.Y. Apr. 3, 2014).

Moreover, production of this privileged document was not inadvertent. The bank not only produced the document—it actually used it to prepare its witnesses *before it was produced*.[1] ███████████████████████ Rule 502(a) and basic principles of fairness demand that JPMorgan produce all other communications relating to the respective roles of Mr. Staley and others in the bank's decision to continue working with Epstein.

\*   \*   \*   \*

For the foregoing reasons, JPMorgan should produce all communications relating to its inhouse counsel's knowledge of Epstein and all communications concerning Epstein's status as a customer of the bank. The bank must also produce all communications relating to the respective roles of Mr. Staley or others in the Epstein decision-making process.

Respectfully submitted,

/s/Stephen L. Wohlgemuth

Stephen L. Wohlgemuth

---

[1] This incident led the Court to enter an order permitting the USVI to "re-depose [the witness prepped with the secret document] at JP Morgans expense." See 5/12/2023 Minute Entry.