July 19, 2023

**BY ECF**

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

Hon. Jed S. Rakoff
United State District Court
  for the Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  *Government of the U.S. Virgin Islands v. JPMorgan Chase Bank*, N.A., Case No. 1:22-cv-10904-JSR (S.D.N.Y.)

Judge Rakoff:

USVI—after having furthered Epstein's sex crimes for years—now claims to be pursuing the noble goal of deterring another Epstein from flourishing in its territory. But USVI's claimed *motivations* do not entitle it to relief. USVI can obtain only those specific remedies allowed by law. USVI's "answer" to this Court's questions confirms that it is seeking no such thing.

USVI's letter consists of two parts: (i) USVI's demand for money, and (ii) its demand for equitable relief. The two must be analyzed separately because all plaintiffs "must demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).

**USVI's Demands For Monetary Relief**

USVI attempts to identify its standing to pursue "civil penalties, disgorgement, restitution, [and] damages, including punitive damages." USVI Ltr. 3. These are distinct remedies. USVI is entitled to none of them.

**Penalties.** USVI has no authority to seek fines or penalties under the TVPA, especially for conduct predating 2018. The TVPA's "fines" are contained in its criminal provisions, which cannot apply retroactively, *Landgraf v. USI Film Prod.*, 511 U.S. 244, 266 (1994), and which only the federal government may charge. USVI is not a federal law enforcement entity, and this is not a criminal case. Rather, USVI's sole authority to bring this case derives from 18 U.S.C. § 1595(d), where Congress granted state attorneys general permission to "bring a civil action" against "any person who violates section 1591" and obtain "relief"—not punishment. USVI does not and cannot cite any case allowing a state to seek imposition of the TVPA's criminal penalties, for good reason: there is no such case because Congress made no such authorization.

The three cases USVI *does* cite (at 3 n.2) share a common thread: all involve express statutory authorization for the government to seek financial penalties. A state may authorize its attorney general to seek fines, as New York did in *People by Underwood v. LaRose Industries LLC*, 386 F.

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109

Beijing   Berlin   Boston   Brussels   Denver   Frankfurt   London   Los Angeles   New York   Palo Alto   San Francisco   Washington

Supp. 3d 214, 216 (N.D.N.Y. 2019), where New York sued as *parens patriae* to enforce New York consumer protection laws. *See* N.Y. Gen. Bus. Law § 350-d. The United States can seek penalties when federal law so authorizes, as the SEC regularly does. *SEC v. Lek Securities Corp.*, 612 F. Supp. 3d 287, 298 (S.D.N.Y 2020); 15 U.S.C. § 78u(d)(3). And Congress sometimes expressly authorizes states to seek "penalties" for violations of federal law, as in *New Mexico ex rel. Balderas v. Real Estate Law Center, P.C.*, 430 F. Supp. 3d 761, 861-862 (D.N.M. 2019) (state action pursuant 12 U.S.C. § 5538, which authorizes states to obtain "restitution" and "penalties"). This case does not fall into any of these categories. Section 1595(d) says nothing of "penalties" or "fines." And USVI is not a sovereign enforcing its own law. This is precisely why USVI cannot avail itself of a sovereign's immunity from equitable defenses when enforcing its own law—it is doing no such thing in this case. *See* Dkt. 159.

**Restitution**. This same analysis controls USVI's demand for "restitution." Having "dropped its claims for proprietary damages for its own losses or harms," USVI Ltr. 1, USVI concedes it is not a "victim" to whom restitution could be due under 18 U.S.C. § 1593(b)(1). Regardless, that section applies only to criminal actions, which this is not. *See* 18 U.S.C. § 1593(a) (restitution available "for any *offense* under this chapter") (emphasis added); § 1593(b)(2) (restitution order must accord with 18 U.S.C. §§ 3663A and 3664, governing *sentencing for federal crime*); § 1593(c) (restitution available to victim harmed "as a result of *a crime* under this chapter") (emphasis added).

**Disgorgement.** Nor is USVI entitled to "disgorgement." As an initial matter, the TVPA makes no mention of "disgorgement" in any provision, in contrast to the case relied on by USVI, *Real Estate Law Center*, 430 F. Supp. 3d at 861-863 (citing 12 U.S.C. §§ 5538(b)(1)(D), 5565(a)(2)(D)). And like with fines and penalties, governments may only seek "disgorgement" when imposing their own law—as in the other case cited by USVI, *State of Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027 (9th Cir. 2014), and as is generally the case, *see e.g.*, *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 998 (S.D. W. Va. 2012) ("A state may have a quasi-sovereign interest in 'bringing an action to enforce *its laws* [and] disgorge the proceeds of ill-gotten gains.") (emphasis added).

In any event, "disgorgement" is strictly limited to compensating *victims*. *Liu v. SEC*, 140 S. Ct. 1936, 1946 (2020). Here, as explained below, the victims have *already* been compensated, and USVI lacks standing to pursue the compensatory damages personal to victims in any event.

**Compensatory Damages.** USVI has abandoned any claim to compensatory damages. USVI admits (at 1) that it originally "sought proprietary damages in the form of tax revenue," but has now "dropped its claims for … its own losses or harms." USVI conceded to JPMC the same thing one day after close of fact discovery when it served a supplemental interrogatory response that disavowed "propriety damages of any kind in this action." Ex. A, at 5-6. Instead, USVI now admits (at 4) that it seeks only the "compensatory damages suffered by victims," a position it confirmed in another supplemental interrogatory response served *today*. Ex. A at 7 ("The

Government seeks compensatory, consequential, general, and nominal damages, *as suffered by Jeffrey Epstein's victims … .* '"(emphasis added)). The bedrock principle of *parens patriae* is a sovereign interest that stands "*apart* from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982) (emphasis added). As this Court explained, "States and territories that seek to sue *parens patriae* must … seek relief to the territory's injury that would be unavailable to individual plaintiffs." Dkt. 130 at 17; s*ee People of State of N.Y. by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996). Thus, when a sovereign "only seeks to recover money damages for injuries suffered by individuals, the award … will not compensate the state for any harm done to its quasi-sovereign interests," and "the state as *parens patriae* lacks standing[.]" *People of State of N.Y. by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987). That ends the inquiry. "Compensatory damages suffered by victims" is exactly what a *parens patriae* action cannot recover.[1]

USVI argues (at 5) that its interests stand apart because victims "do not have TVPA claims for disgorgement or civil penalties (or injunctive relief)." As to "disgorgement" and "civil penalties," neither does USVI. But as to "compensatory damages," those belong to the victims alone—and have been obtained by way of the two preliminarily-approved class settlements under this Court's jurisdiction. "Parens patriae standing [] requires a finding that individuals could not obtain complete relief through a private suit." *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982), *vacated on other grounds*, 718 F.2d 22 (2d Cir. 1983) (en banc). Here, the individuals not only "could" obtain relief, they have. And the Second Circuit has long rejected USVI's odd insistence (at 5) that it still "controls" the victims' claims despite the class settlements. Where "plaintiffs agree[] to release [their] claims," as the classes have done, states are barred "from bringing … claims derivative of the plaintiffs' rights." *In re Baldwin-United Corp.* 770 F.2d 328, 336-337 (2d Cir. 1985). "Whether a state represent[s] itself to be acting as a 'sovereign' … or described its prayer as one for 'restitution' or a 'penalty' would make no difference if the recovery sought by the state was to be paid over to the plaintiffs." *Id.*

**Punitive Damages.** Finally, USVI has no claim to "punitive" damages for at least three reasons.

*First*, "punitive damages … cannot be invoked without some compensatory injury." *Virgilio v. City of New York*, 407 F.3d 105, 117 (2d Cir. 2005). "Once a claim for compensatory damages is barred, the possibility of a punitive award is likewise relinquished." *Id.* Nothing about the TVPA abrogates this common-law principle. And awarding punitive damages untethered to compensatory damages would run afoul of the "principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996). Courts must consider the ratio between compensatory and punitive damages when

---

[1] USVI claims (at 5) it wants to collect victims' damages that it can "distribute on an equitable basis to [] victims." But again, *Operation Rescue* explicitly disallows a "damages award … designed solely to reimburse [third parties] for harm to their interests." 80 F.3d at 71-72.

WilmerHale

evaluating the constitutional validity of any punitive damages award.[2] But here, USVI has disavowed any compensatory damages of its own and cannot commandeer those of the victims, as explained above. There can be no ratio whose denominator is zero.[3]

*Second*, a free-floating "deterrence-focused" punitive damages award that bears no relationship to an actual injury to USVI is nothing more than a "criminal penalty under the guise of civil relief"— a "criminal penalty" USVI cannot seek to impose in this civil case. *See U.S. v. Priv. San. Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1151 (E.D.N.Y. 1992). As explained above, the TVPA does not allow the USVI to bring a claim for criminal penalties or civil fines. And to interpret the TVPA's provision of *parens patriae* standing in 2018 to *sub silentio* allow for quasi-criminal punitive damages for pre-2018 conduct would violate the "*Ex Post Facto Clause* [which] flatly prohibits retroactive application of penal legislation." *Landgraf*, 511 U.S. at 266. "The very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions." *Id.* at 281. "[R]etroactive imposition of punitive damages would raise a serious constitutional question," *id.*, and cannot be applied here.

*Finally,* the standard for obtaining punitive damages under the TVPA is demanding, requiring "intentional and outrageous" conduct, *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011), or a "particularly depraved act," *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 458 (E.D. Va. 2015). In the related case, the Court already held that plaintiffs cannot plead, let alone prove, that JPMC was a direct perpetrator of trafficking—or "acted with the specific intent of benefitting from a sex-trafficking venture." Dkt. 130, at 40. As such, no punitive damages can be imposed.

**USVI's Demand For Equitable Relief**

USVI seeks "an injunction to prevent JPMorgan from participating in sex trafficking ventures in the future and to protect and prevent potential future victims of traffickers." USVI Ltr. 2. At the motion to dismiss stage—when all allegations were assumed true—the Court held that USVI's "asserted interest in 'assuring its residents it will act to protect them from the harmful effects of

---

[2] In TVPA cases, courts typically find a "1:1 ratio sufficient." *Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, 2021 WL 2065398, at *15 (D. N. Mar. I. May 24, 2021).

[3] USVI's cited authorities do nothing to address this issue. In *United States v. Hooker Chemicals & Plastics Corp.*, the state sought punitive damages after first demonstrating substantial compensatory damages—in particular, "70,000 tons of hazardous chemical waste" causing obvious proprietary harm to New York's environment. 749 F.2d 968, 970-972, 984 (2d Cir. 1984) (noting that *parens patriae* suits address "damage to [a State's] general economy or environment"). USVI's second case, *BanxCorp v. Costco Wholesale Corp.*, weakens USVI's position. That court declined to award punitive damages to private plaintiffs for a violation of New York state law specifically *because* they did not offer evidence of public harm. 723 F. Supp. 2d 596, 620-621 (S.D.N.Y. 2010). Indeed, the court stressed that, under New York law, "[i]f the harm is solely against a private interest, punitive damages are not available." *Id.* at 621. "Private interests," while unavailable to USVI, are all the compensation it seeks.

WILMERHALE

criminal sex-trafficking enterprises … directly parallels the interest that Puerto Rico successfully asserted in *Snapp*." Dkt. 130 at 18. And so the Court allowed USVI to proceed as *parens patriae* to seek facts to justify forward-looking relief that might prevent future "sex-trafficking," a "problem that might well re-occur[.]" *Id.* Now, with fact discovery complete, it has become clear that an injunction under the TVPA is not available.

*First*, plaintiffs lack "standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

USVI cannot make that showing here. USVI's allegations all concern long past behavior. And while USVI has retained experts to opine on their preferred banking policies, the critically missing detail is any proof whatsoever that JPMC poses a risk of a TVPA injury to USVI or any of its residents. It does not, and nothing about USVI's allegations or desired remedies changes that fact. At bottom, although sex trafficking is devastatingly a "problem that might well re-occur" as a general matter, there is no evidence that USVI or its residents are at any future risk from TVPA injuries by operation of JPMC's banking services. In *Snapp*, Puerto Rico (like the sovereigns in every successful *parens patriae* case cited in that opinion) sought to enjoin ongoing or imminent harm posed by the defendants they sued. *See* 458 U.S. at 598-599, 600-603. In contrast, USVI has not marshaled any evidence of any ongoing or imminent harm to the territory caused by JPMC at all. USVI has not introduced evidence of any current sex-trafficking activity in its territory, let alone a sex-trafficking venture through which JPMC is knowingly benefitting through the provision of banking services. The focus of this lawsuit is, instead, on JPMC's relationship with a client that JPMC exited over a decade ago, in a regulatory environment and AML program vastly different from the one in place today.

*Second*, as a civil plaintiff guilty of the very allegations in its complaint—and having shielded a predator for profit—USVI is still subject to JPMC's equitable defenses, for all the reasons explained in JPMC's opposition to the motion to strike. Since filing its opposition, the facts undergirding JPMC's affirmative defenses have only grown stronger—with USVI's Attorney General conceding under oath at his deposition that ███████████████████████ ███████ Frazer Tr. 13:25-14:11, ███████████████████████ ███████████████████████ Frazer Tr. 174:20-25, and with USVI's First Lady similarly admitting she personally helped Epstein craft that legislation, C. de Jongh Tr. 165:19-25, 168:2-170:21. In view of its own thoroughgoing misconduct—the same misconduct it accuses of others—USVI has no recourse to this Court's equitable relief.

WilmerHale

Respectfully submitted,

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth