**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant/Third-Party Plaintiff. | Case No. 22-cv-10904 (JSR) |
| JPMORGAN CHASE BANK, N.A.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>JAMES EDWARD STALEY,<br><br>Third-Party Defendant. | |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**
**AGAINST THE GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .............................................................................................................2

LEGAL STANDARD.........................................................................................................3

ARGUMENT ..................................................................................................................3

I.     USVI Demands Unavailable Categories Of Relief.................................................3

     A.    USVI Cannot Recover Victims' Compensatory Damages ......................4

     B.    USVI Cannot Recover The Victims' Punitive Damages.........................8

     C.    The TVPA Does Not Provide A Means For USVI To Seek Fines Or Penalties .................................................................................................10

     D.    Any Damages Award to USVI Must Be Offset....................................13

II.    USVI Cannot Prevail On Its Obstruction Claim As A Matter Of Law .............................14

     A.    USVI Does Not Have Standing To Pursue Its Obstruction Claim .......................15

     B.    USVI Cannot Establish The Elements Of Its Obstruction Claim .........................16

III.   USVI's TVPA Claims Cannot Apply Retroactively To Conduct Made Liable By The TVPA's 2008 Amendments.......................................................................20

     A.    Count V (Obstruction) Cannot Apply To Pre-2008 Conduct ...............................21

     B.    USVI Must Prove A "Knowing" Violation Of The TVPA Prior To 2008...........21

CONCLUSION................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alfred L. Snapp & Son, Inc., v. P.R. ex rel. Barez*,
 458 U.S. 592 (1982)..............................................................................4, 8, 13, 15

*In re Baldwin-United Corp.*,
 770 F.2d 328 (2d Cir. 1985).................................................................................6

*BMW of N. Am., Inc. v. Gore*,
 517 U.S. 559 (1996).............................................................................................9

*Boise v. Boufford*,
 121 F. App'x 890 (2d Cir. 2005) .........................................................................4

*Canal v. Dann*,
 2010 WL 3491136 (N.D. Cal. Sept. 2, 2010) .....................................................14

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)............................................................................................20

*Cleveland v. Xiong*,
 2023 WL 100871 (E.D. Cal. Jan. 4, 2023) .........................................................11

*Ditullio v. Boehm*,
 662 F.3d 1091 (9th Cir. 2011) ............................................................................10

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
 No. 1:22-cv-10018-JSR (S.D.N.Y. June 27, 2023) .............................................5

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
 No. 1:22-cv-10019-JSR (S.D.N.Y. June 29, 2023) .............................................5

*Doe v. Fitzgerald*,
 2022 WL 425016 (C.D. Cal. Jan. 6, 2022) .........................................................15

*New York v. Facebook, Inc.*,
 549 F. Supp. 3d 6 (D.D.C. 2021)........................................................................11

*Gilbert v. U.S. Olympic Comm.*,
 423 F. Supp. 3d 1112 (D. Colo. 2019)...........................................................15, 17

*New York v. Kraft Gen. Foods, Inc.*,
 862 F. Supp. 1030 (S.D.N.Y.)............................................................................13

*Lagasan v. Al-Ghasel*,
    92 F. Supp. 3d 445 (E.D. Va. 2015) ...................................................................10

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)....................................................................................9, 12

*Liu v. SEC*,
    140 S. Ct. 1936 (2020)......................................................................................12

*Martinez v. Bynum*,
    461 U.S. 321 (1983)............................................................................................5

*West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*,
    842 F. Supp. 2d 984 (S.D. W. Va. 2012) ...........................................................12

*New York by Abrams v. 11 Cornwell Co.*,
    695 F.2d 34 (2d Cir. 1982)..................................................................................6

*New York by Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir. 1987)...............................................................6, 7, 8, 15

*New York by Vacco v. Operation Rescue Nat'l*,
    80 F.3d 64 (2d Cir. 1996) ....................................................................5, 7, 8, 15

*Oak-Jin Oh v. Soo Bok Choi*,
    2016 WL 11430442 (E.D.N.Y. Feb. 29, 2016)...................................................14

*United States v. Priv. San. Indus. Ass'n of Nassau/Suffolk, Inc.*,
    793 F. Supp. 1114 (E.D.N.Y. 1992) ..............................................................9, 11

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017)........................................................................................3, 7

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012).........................................................................21, 22

*Virgilio v. City of N.Y.*,
    407 F.3d 105 (2d Cir. 2005)................................................................................9

*Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*,
    2021 WL 2065398 (D. N. Mar. I. May 24, 2021)...............................................14

*Williams v. Messa*,
    2022 WL 2110198 (E.D. Cal. June 10, 2022) ....................................................11

**Federal Statutes**

12 U.S.C. § 5538.....................................................................................................11

15 U.S.C. § 6309(c) ...................................................................................................11

18 U.S.C. § 248(c)(3) .................................................................................................11

18 U.S.C. § 1591(a)(2) ...........................................................................................3, 21

18 U.S.C. § 1591(d) ............................................................................................ *passim*

18 U.S.C. § 1593(a) ...................................................................................................12

18 U.S.C. § 1593(b)(1) ..............................................................................................11

18 U.S.C. § 1595(d) ........................................................................................... *passim*

18 U.S.C. §§ 3663A and 3664 ..................................................................................12

49 U.S.C. § 14711 .....................................................................................................11

Pub. L. 106-386, 114 Stat. 1464, 1487 (Oct. 28, 2000) ...........................................22

Pub. L. 110-457, 122 Stat. 5044, 5069 (Dec. 23, 2008) ......................................21, 22

**Other Authorities**

11 Moore's Federal Practice—Civil § 56.122 .............................................................3

Fed. R. Civ. P. 56 .........................................................................................................3

## PRELIMINARY STATEMENT

This is not a case about Jeffrey Epstein's victims.  This is a case in which a complicit governmental actor, the United States Virgin Islands (USVI), knowingly used its sovereign powers to enable Epstein's sex crimes, including by soliciting his input on its own sex offender legislation, waiving sex offender monitoring requirements for him, facilitating the provision of ESL classes and visas that allowed him to bring victims to USVI, and actively looking the other way whenever he arrived at USVI airports accompanied by young women and girls.  Rather than account for its own failures to investigate and monitor this criminal under its jurisdiction and to protect its citizens and sovereign interests, USVI blames a third-party bank that did not have USVI's authority to enforce any law, nor USVI's knowledge of Epstein's crimes in USVI's territory, and seeks to pursue such claims at the expense of dragging Epstein's victims through yet more litigation.  At trial, JPMC will thoroughly refute USVI's claims and also lay bare how USVI created a haven for Epstein's criminal activity.  That is not for resolution now.

Now that fact and expert discovery are complete, JPMC moves for summary judgment on three grounds, none of which requires resolution of the contested portions of the record—and which together dictate the proper scope of this case going forward.

*First*, USVI cannot seek monetary relief.  The government has now expressly disclaimed any damages related to its territorial or quasi-sovereign interests—the only category of damages to which it could be entitled as *parens patriae*.  Rather, USVI now claims *solely* the same damages available to (and, in fact, already obtained by) victims—the category of damages which *parens patriae* law expressly forbids.  Even if USVI conjures up a new compensatory theory, Second Circuit precedent would bar this novel claim given the express releases already in place as part of JPMC's settlement with the nationwide class of Epstein's victims.  With no claim to compensatory damages, USVI has no claim to punitive damages either.  Nor can USVI, as a civil plaintiff, pursue

fines or penalties that are exclusively available to the United States government in criminal actions. Even if USVI could overcome these hurdles and lay claim to victims' personal damages, the offsets required by its collection of settlement pay outs from Epstein's estate and ██████████ reduce those damages to nothing.

*Second*, USVI cannot proceed on its obstruction claim as a matter of law.  To be clear, USVI does not allege that JPMC obstructed a *USVI investigation* into Epstein—USVI facilitated Epstein's conduct, but never investigated any of it.  Instead, USVI claims that it is entitled to relief because JPMC allegedly obstructed a *federal* TVPA investigation.  But that claim must be brought by the federal government itself or, at most, the individual victims—USVI is neither.  Regardless, the record is devoid of any fact suggesting that JPMC *intentionally obstructed* a TVPA investigation.  To the contrary, the uncontested record shows that JPMC provided federal officials with Epstein-related information for years.  No reasonable juror could find intentional obstruction on these facts, and summary judgment should enter accordingly.

*Finally*, principles of retroactively severely limit USVI's ability to rely upon conduct prior to December 2008 to prove its claims.  The TVPA's *obstruction* cause of action was first enacted in December 2008 and can have no retroactive application to alleged pre-2008 conduct.  Separately, prior to December 2008, only "knowing" violations of the TVPA were civilly actionable.  To the extent that USVI argues JPMC "recklessly disregarded" Epstein's crimes prior to 2008, it is squarely precluded by Second Circuit and this Court's rulings regarding limitations on retroactive application of the TVPA.

## BACKGROUND

The minimal background relevant to this motion is straightforward and provided in JPMC's opposition to USVI's motion to strike (Dkt. 186), in the accompanying LR 56.1 Statement of Material Facts (SUMF), and in the argument below.  In short, USVI brings two claims pursuant to

18 U.S.C. § 1595(d)'s provision of a "civil remedy" to State attorneys general.  First, USVI brings

a claim for a violation of 18 U.S.C. § 1591(a)(2), alleging that JPMC knowingly benefited from

participating in a sex trafficking venture with "knowledge or reckless disregard of the fact" that

Jeffrey Epstein trafficked underage girls and used force, fraud, and coercion to traffic women.

(Count I).  Second Am. Compl. ("SAC") (Dkt. 119) ¶¶ 102-119.  Second, USVI brings a claim for

a violation of 18 U.S.C. § 1591(d), alleging that JPMC intentionally obstructed enforcement of the

TVPA (Count V).  *Id.* ¶¶ 147-168.  Despite the fact that the TVPA included neither a reckless

disregard clause nor an obstruction provision until 2008, *see infra* III.A-B, USVI alleges that

JPMC's violations date back to 2003.  *Id.* ¶¶ 42, 75.

## LEGAL STANDARD

Summary judgment must be granted if "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[S]ummary

judgment may be requested not only as to an entire case but also as to a claim, defense, or part of

a claim or defense."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment; Fed. R.

Civ. P. 56(a) (allowing summary judgment on a "part of each claim or defense").  Indeed, "[t]he

freedom to use summary judgment procedure to address particular issues or elements of a claim is

an important feature of Rule 56, making it a much more useful case management device."  11

Moore's Federal Practice—Civil § 56.122.

## ARGUMENT

## I.    USVI DEMANDS UNAVAILABLE CATEGORIES OF RELIEF

Like any plaintiff, USVI "'must demonstrate standing for each claim [it] seeks to press and

for each form of relief that is sought.'"  *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439

(2017).  In its July 14 Letter Brief, Dkt. 205, filed in response to this Court's request for "precisely

what interests USVI is seeking to vindicate—and what damages USVI claims," Dkt. 204 at 1-2,

USVI confirmed it is seeking legally unavailable categories of damages which it has no standing to pursue.  Summary judgment should enter in JPMC's favor on all of USVI's damages claims. *See Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005) (affirming summary judgment for defendant on category of damages unavailable to plaintiff as a matter of law).

### A.     USVI Cannot Recover Victims' Compensatory Damages

The relief USVI seeks is limited by its *parens patriae* role in this case.  The bedrock principle of *parens patriae* is a state interest that stands "apart from the interests of particular private parties."  *Alfred L. Snapp & Son, Inc., v. P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982) (emphasis added).  An "alleged … injury to an identifiable group of individual residents" is insufficient.  *Id.*  As such, USVI's damages claims survived the motion to dismiss solely because USVI sought damages to redress alleged harm "suffered by the Government."  SAC ¶ 119; *id.* ¶ 168 (alleging "harm to the Virgin Islands"); SUMF ¶ 52 (originally claiming damages "as suffered by the Government").  This Court held that USVI had standing as *parens patriae* to pursue such damages because USVI—similar to Puerto Rico's suit for discrimination in *Snapp*—claimed an intention to quell the "harmful effects of criminal sex-trafficking" in its territory.  MTD Order 18 ("MTD Order") Dkt. 130.  In contrast, the Court was clear that USVI cannot pursue damages that are available to victims individually.  MTD Order 17 ("States and territories that seek to sue *parens patriae* must … seek relief to the territory's injury that would be unavailable to individual plaintiffs.").

This case proceeded through discovery with this understanding.  Then, the day after fact discovery closed, USVI sawed off the branch it was sitting on, abandoning "proprietary damages of any kind in this action."  SUMF ¶ 52.  Where previously it sought "tax revenue lost to the Virgin Islands," it now seeks *only* damages "on behalf of victims and residents of the United States Virgin Islands."  *Id.* at 6.  And in its Letter Brief, as well as a third supplemental discovery response

served a few days later, USVI confirmed this position.   Dkt. 205 at 1; SUMF ¶ 52 ("The Government seeks compensatory, consequential, general, and nominal damages, *as suffered by Jeffrey Epstein's victims* … ." (emphasis added)).   Such a reversal would be remarkable in any litigation.   Here, it is also fatal to USVI's damages theory—*parens patriae* damages sought solely "on behalf of victims" is precisely what *Snapp*, Second Circuit precedent, and this Court's Motion to Dismiss order squarely forbids.   No state or territory can "merely litigate as a volunteer the personal claims of its competent citizens."   *New York by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996) (quoting *New York by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987)).   Yet USVI now concedes this is exactly its goal.

There are two threshold defects in USVI's new damages theory.   First, USVI can only sue to vindicate the interests of "residents," 18 U.S.C. § 1595(d), and here it has no proof that any victim was a resident of the USVI (rather than a person trafficked to or from the Islands).   *See Martinez v. Bynum*, 461 U.S. 321, 330 (1983) (noting that residency "generally requires both physical presence *and* an intention to remain" indefinitely (emphasis added)).   Second, USVI's demand for damages "on behalf of victims" ignores the fact that victims have *already* obtained damages in the two related cases.   Dkt. 95, *Doe 1 v. Deutsche Bank Aktiengesellschaft* ("*Doe 1 v. Deutsche Bank*"), No. 1:22-cv-10018-JSR (S.D.N.Y. June 27, 2023); Dkt. 183, *Doe 1 v. JPMorgan Chase Bank, N.A.* ("*Doe 1 v. JPMC*"), No. 1:22-cv-10019-JSR (S.D.N.Y. June 29, 2023).   Even were USVI permitted to recover for itself damages suffered by others—it is not—JPMC should not pay those damages twice: first to actual victims, then again to the territory that failed them and protected Epstein.   As this Court observed at the fairness hearing in *Doe 1 v. JPMC*: "Here [*i.e.,* the *Doe* litigation] we have two very large settlements. … [W]hat point would there be in having the Virgin Islands say, well [']we're going to take a little bit of what we got for the injuries that

were visited on the Virgin Islands and add that to what the victims got, even though they have agreed through the settlement to release JPMorgan from any further recovery.'" SUMF ¶ 54. The Court's question answers itself: there would be no point. "*Parens patriae* standing [] requires a finding that individuals could not obtain complete relief through a private suit." *New York by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982), *vacated on other grounds*, 718 F.2d 22 (2d Cir. 1983). Here the individuals not only "could" obtain relief through a "private suit"— they did.

In its Letter Brief, USVI appeared to recognize the danger posed by the class settlements to its goal of extracting additional pay-outs, and so insisted that it still "controls" the victims' claims no matter this Court's exercise of jurisdiction over the settlement process. Dkt. 205 at 5. USVI wholly ignores the Second Circuit's precedential bar to its newest argument. When "plaintiffs agree[] to release [their] claims," as the classes have done in this case, this "*bar[s] the states* from bringing … claims derivative of the plaintiffs' rights." *In re Baldwin-United Corp.*, 770 F.2d 328, 336-337 (2d Cir. 1985) (emphasis added) (approving injunction against state lawsuits pending approval of class settlement). "Whether a state represent[s] itself to be acting as a 'sovereign' … or described its prayer as one for 'restitution' or a 'penalty' would make no difference if the recovery sought by the state was to be paid over to the plaintiffs." *Id.* So too here.

Regardless, USVI cannot collect victims' damages here. The Second Circuit's decisions in *Seneci* and *Operation Rescue* explain why. In *Seneci*, New York invoked *parens patriae* standing to seek damages arising from an allegedly fraudulent scheme involving video games. Critically, New York did not seek damages "for an injury to a quasi-sovereign interest of the state itself—for example, an injury to the general economy of the state." 817 F.2d at 1017. Instead,

New York sought redress "solely for injury to … the state's citizens."  *Id.*  The "issue," therefore, was "whether the state has standing to sue in a representative capacity to recover those damages." *Id.*  The Court held that "it does not."  *Id.*  Where a state "only seeks to recover money damages for injuries suffered by individuals, the award … will not compensate the state for any harm done to its quasi-sovereign interests," and as such, "the state as *parens patriae* lacks standing[.]"  *Id.*

Indeed, even if the state invokes general injuries to the "well-being of all its citizens" (as USVI surely will in response), that is still insufficient.  *Id.*  The standing inquiry is *relief*-specific, and when (as here) "the monetary relief sought … is not designed to compensate the state for those [*i.e.* sovereign] damages," vague invocations of state interests "cannot serve as the foundation for the state's authority to act … as a representative of its citizens."  817 F.2d at 1017-1018; *Town of Chester*, 581 U.S. at 439 (plaintiffs "'must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought'").

The Second Circuit reached a similar conclusion in *Operation Rescue*.  There again, New York invoked *parens patriae* standing to seek damages allegedly suffered by individual third parties (specifically, costs suffered by a clinic stemming from an illegal protest).  The district court had awarded such damages, but the Second Circuit reversed—explaining again that a state's standing "does not extend to the vindication of the private interests of third parties," and that when a "damages award … [is] designed solely to reimburse [third parties] for harm to their interests," "such relief [is] … invalid."  *Operation Rescue*, 80 F.3d at 71-72.  The Court affirmed the guiding principle in *Snapp* that any state invoking *parens patriae* standing "must articulate an interest apart from the interests of particular private parties."  *Id.* at 71 (quoting *Snapp*, 458 U.S. at 607).  Otherwise, as this Court explained in its prior order, *parens patriae* standing is unavailable.  MTD Order 17-18.

USVI's claim for damages mirrors those in *Seneci* and *Operation Rescue*. There is no daylight between USVI's demand for "compensatory damages suffered by victims," Dkt. 205, at 4, and a forbidden "monetary award … sought solely for injury to … the state's citizens," *Seneci*, 817 F.2d at 1017, or a prohibited award "designed solely to reimburse [third party victims] for harm to their interests," *Operation Rescue*, 80 F.3d at 71-72. Indeed, USVI removed any doubt as to this conclusion when it explicitly affirmed that it had abandoned "proprietary damages of any kind," SUMF ¶ 52, and "dropped its claims for proprietary damages," Dkt. 205, at 1, and was instead seeking "compensatory, consequential, general, and nominal damages *as suffered by Jeffrey Epstein's victims,*" SUMF ¶ 52 (emphasis added).[1] Thus, just as in *Seneci* and *Operation Rescue*, USVI seeks not to vindicate its *own* sovereign or quasi-sovereign interests but rather to commandeer damages personal to victims and recoverable by those victims. *Parens patriae* allows no such thing. *Snapp*, 458 U.S. at 602 ("Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement."); *id.* at 600 ("[When] the State is only a nominal party without a real interest of its own—then it will not have standing under the *parens patriae* doctrine.").

In short, USVI is entitled only to seek redress for sovereign or quasi-sovereign harms. *See Snapp*, 458 U.S. at 607. Having now conceded it is not seeking any such thing, summary judgment should enter on USVI's damages demands.

## B.    USVI Cannot Recover The Victims' Punitive Damages

---

[1] Further, USVI retained a putative "sex trafficking expert," Bridgette Carr, and appended to the end of her report ████████████████████████████████████████████ SUMF ¶ 53.  Carr's ██████████████ are unreliable, but they are also irrelevant. ████████████ ████████████████████████████████ In her report (consistent with USVI's Letter Brief), Carr also suggests ████████████ which is exactly what *Operation Rescue* forbids in a *parens patriae* action: a "damages award … designed solely to reimburse [third parties] for harm to their interests." 80 F.3d at 71-72.

Because USVI has no compensatory damages, it has no punitive damages.  "[P]unitive damages … cannot be invoked without some compensatory injury."  *Virgilio v. City of N.Y.*, 407 F.3d 105, 117 (2d Cir. 2005).  "Once a claim for compensatory damages is barred, the possibility of a punitive award is likewise relinquished."  *Id.*  Nothing about the TVPA abrogates this common-law principle.  Moreover, awarding punitive damages untethered to compensatory damages would run afoul of the "principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996).  Courts must consider the ratio between compensatory and punitive damages when evaluating the constitutional validity of any punitive damages award.  *Id.*  But here, USVI has disavowed any compensatory damages of its own and cannot commandeer those of the victims, as explained above.  There can be no ratio whose denominator is zero.

Nor can USVI—in the name of "deterrence"—seek a free-floating punitive damages award that bears no relationship to an actual injury.  This would be nothing more than a "criminal penalty in the guise of civil relief"—a "criminal penalty" USVI cannot seek to impose in this civil case. *United States v. Priv. San. Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1151 (E.D.N.Y. 1992).  As explained below, the TVPA does not allow the USVI to bring a claim for criminal penalties or civil fines.  And to interpret the TVPA's provision of *parens patriae* standing in 2018 to *sub silentio* allow for quasi-criminal punitive damages for pre-2018 conduct would violate the "*Ex Post Facto* Clause [which] flatly prohibits retroactive application of penal legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).  "The very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions."  *Id.* at 281.  "Retroactive imposition of punitive damages would raise a serious constitutional question," *id.*, and cannot be applied here.

Finally, the standard for obtaining punitive damages, including under the TVPA, is demanding, requiring "intentional and outrageous" conduct or a "particularly depraved act." *See Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 458 (E.D. Va. 2015). In the related case, the Court already held that plaintiffs cannot plead, let alone prove, that JPMC was a direct perpetrator of trafficking—or "acted with the specific intent of benefitting from a sex-trafficking venture." MTD Order 40. While JPMC denies all liability, no reasonable juror could find that JPMC *intended* to benefit from participation in a sex trafficking venture, and thus no punitive damages can be imposed.

### C.     The TVPA Does Not Provide A Means For USVI To Seek Fines Or Penalties

In addition to derivatively seeking damages already paid to classes of Epstein's victims, USVI demands that "JP Morgan [] pay appropriate fines to the Government." SAC at 40-41; Dkt. 205 at 3-4. Indeed USVI "recognizes" that such "penalties" "are not damages." SUMF ¶ 55. Yet it demands them even so.[2] It may not: it is a civil plaintiff pursuing a "civil remedy," not a sovereign enforcing its own law.

The TVPA is first and foremost a criminal statute, MTD Order 23, and is prosecutable (like any federal crime) by the federal government alone. USVI is obviously not a federal law enforcement entity. Rather, its sole authority to bring this case derives from 18 U.S.C. § 1595(d), wherein Congress granted state attorneys general permission to "bring a civil action" against "any person who violates section 1591"—nothing more. To be sure, Congress knows how to grant

---

[2] USVI went so far as to retain two former federal enforcement officers—a former prosecutor, and a former SEC Commissioner ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUMF ¶ 55. The former prosecutor, Jonathan Rusch, seeks to tell this Court ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, while the former SEC Commissioner, Robert Jackson Jr., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SUMF ¶ 55. To state the obvious, this is neither a criminal case nor a securities enforcement matter, making those opinions irrelevant and inadmissible.

states authority to prosecute federal laws and seek their penalties when it wants to. *E.g.*, 18 U.S.C. § 248(c)(3) (authorizing states to seek "civil penalties" against those who violate federal laws that prohibit impeding access to reproductive health services); 12 U.S.C. § 5538 (authorizing states to seek "restitution" and "penalties" for violations of regulations promulgated by the CFPB or FTC); 15 U.S.C. § 6309(c) (authorizing states to seek "fines" for violations of the Professional Boxing Safety Act); 49 U.S.C. § 14711 (authorizing states to impose "civil penalties" for violations of federal motor carrier safety laws).[3]

Here, Congress spoke clearly: USVI may only bring "a civil action," and obtain "relief." 18 U.S.C. § 1595(d). It said nothing—and thus intended nothing—with respect to the fines, penalties, and imprisonment that federal prosecutors may seek in criminal cases that charge 18 U.S.C. § 1591. Thus, like any civil plaintiff, "the government may not obtain … [a] criminal penalty" in a civil case, nor "impose a criminal penalty under the guise of civil relief." *Priv. San. Indus.*, 793 F. Supp. at 1151; *see also Williams v. Messa*, 2022 WL 2110198, at *9 (E.D. Cal. June 10, 2022) ("[T]he sections cited by Plaintiff under Title 18 [including § 1589] provide for fines, penalties, and incarceration for criminal offenses. There is no language in these sections that would imply a cause of action exists to allow Plaintiff to seek a remedy for these criminal statutes in this action."); *Cleveland v. Xiong*, 2023 WL 100871, at *5 (E.D. Cal. Jan. 4, 2023) (no civil cause of action for statute that "provide[s] for fines or incarceration for criminal offenses").[4] And

---

[3] Congress also knows how to withhold such authority. *E.g.*, *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 38-39 (D.D.C. 2021) ("Congress, however, specifically rejected an amendment that would have authorized the attorney general of any State to bring a suit in the name of the United States to enforce any of the antitrust laws.") (cleaned up), *aff'd sub nom. New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023).

[4] To the extent USVI is seeking "restitution" or "disgorgement," the same analysis applies. First, by disavowing any "proprietary damages of any kind," USVI concedes it is not a "victim" to whom restitution could be due under 18 U.S.C. § 1593(b)(1). And TVPA "restitution" applies

USVI cannot evade these principles by claiming some "deterrence" based free-floating punitive damages award for the reasons already explained.

Indeed, even if Congress did authorize USVI to impose the TVPA's criminal sanctions—including its provision for fines—USVI certainly could not do so retroactively. Congress created USVI's "civil remedy" in 2018. This Court permitted USVI to seek "damages" predating 2018, MTD Opp. 7, solely because USVI's cause of action encompassed conduct already within the "private right of action" Congress provided victims in 2003, *id.* at 23; *id* at 21. As the Court explained, "in 2018, when Congress empowered state attorneys general to assert TVPA claims, it merely gave a new set of plaintiffs the right to vindicate potential liabilities [that] already existed," *i.e.*, the "civil liability" Congress created in 2003. MTD Order 23. But if Congress had authorized USVI to seek *criminal* penalties, retroactive application of that authority would not only violate this Court's rulings and the strong "presumption against statutory retroactivity." *Landgraf*, 511 U.S. at 286. It would also—like USVI's claim for a free-floating "deterrence"-focused "punitive" damages claim—blatantly violate the "*Ex Post Facto* Clause [which] flatly prohibits retroactive application of penal legislation." *Id.* at 266. That was not what Congress did, and it would be unconstitutional even if it had.

---

only in criminal actions, which this is not. *See* 18 U.S.C. § 1593(a) (restitution available "for any *offense* under this chapter") (emphasis added); § 1593(b)(2) (restitution order must accord with 18 U.S.C. §§ 3663A and 3664, governing *sentencing for federal crimes*); § 1593(c) (restitution available to victim harmed "*as a result of a crime* under this chapter") (emphasis added). Second, the TVPA makes no mention of "disgorgement" in any provision, and like with fines and penalties, governments may only seek "disgorgement" when imposing their own law. *E.g.*, *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 998 (S.D. W. Va. 2012) ("A state may have a quasi-sovereign interest in 'bringing an action to enforce *its laws* [and] disgorge the proceeds of ill-gotten gains."). In any event, "disgorgement" is strictly limited to compensating victims regardless of USVI's "deterrent" motivations. *Liu v. SEC*, 140 S. Ct. 1936, 1946 (2020). Here, as explained above, the victims have *already* been compensated, and USVI lacks standing to pursue the compensatory damages personal to victims in any event.

At bottom, just as no private plaintiff can leverage civil process to enforce criminal law, USVI cannot assume for itself federal authority to prosecute 18 U.S.C. § 1591.  It is a civil plaintiff like any other.  *E.g.*, *New York v. Kraft Gen. Foods, Inc.*, 862 F. Supp. 1030, 1033 (S.D.N.Y.) ("The State of New York sues as *parens patriae* on behalf of the citizens of New York.  Although the State of New York is a governmental actor, it is considered a private party[.]"), *aff'd*, 14 F.3d 590 (2d Cir. 1993).  And like any plaintiff, USVI must prove its own damages to "obtain" any "relief" in the manner Congress prescribed in the "civil remedy" it allowed.  18 U.S.C. § 1595(d).

USVI claims an interest in "deterring" sex trafficking.  JPMC shares that goal, but it is ultimately irrelevant.  What is relevant is that USVI demands unlawful relief.  This Court gave USVI a narrow path as *parens patriae* to pursue relief to its quasi-sovereign interests in the manner Puerto Rico sought declaratory and injunctive relief against unlawful discrimination against Puerto Ricans generally.  *See Snapp*, 458 U.S. at 598-599.  But USVI has now abandoned even the pretence of hewing that line.  What USVI wants, despite years of selling official services to a predator under its supervision—catering both its law and policy to serve his deviance—is more cash:  either the "compensatory damages" Epstein's victims can and have now obtained under the TVPA, SUMF ¶ 52, or criminal penalties only the federal executive may seek via a grand jury, indictment, and criminal trial.  It is entitled to neither.  The Supreme Court does not allow any state to simply "represent the interests of particular citizens."  *Snapp*, 458 U.S. at 600.  And no private plaintiff may wield the government's sword.  Summary judgment should enter on USVI's damages claims.

### D.     Any Damages Award to USVI Must Be Offset

Even if USVI had a legal basis for it damages demands, any award would be offset by the ██████████ USVI has already collected as settlement from Epstein's Estate and ████████ for alleged losses arising from the same course of conduct at issue here.  Damages awarded under the

TVPA are offset by money received to settle claims "aris[ing] from the same injuries and the same scheme." *Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, 2021 WL 2065398, at *17 (D. N. Mar. I. May 24, 2021) (applying offsets in TVPA labor trafficking case); *Canal v. Dann*, 2010 WL 3491136, at *4 n.1 (N.D. Cal. Sept. 2, 2010), *amended*, 2011 WL 3903166 (N.D. Cal. Sept. 6, 2011) (TVPA compensatory damages offset by restitution); *Oak-Jin Oh v. Soo Bok Choi*, 2016 WL 11430442, at *16 (E.D.N.Y. Feb. 29, 2016) (in mixed TVPA and RICO case, "one satisfaction rule" offset applied).  USVI collected ███████ from the Estate and ██████████████ ████████ SUMF ¶¶ 30-32.  Unlike here, USVI sued the Epstein Estate in a sovereign capacity for violation of its own laws, making clear that its claims were "distinct from … the claims of victims … ."  SUMF ¶ 30.  ████████████████████████████████████████████ ███████████████████████████  SUMF ¶ 32.  USVI has failed to calculate the total damages it believes it is due, but in no event could any award exceed ██████████—the amount it has already received.  Whatever USVI's demand, it would be reduced to nothing.  There should be no trial for USVI to pursue legally foreclosed damages theories that would be offset in any event.

## II.   USVI CANNOT PREVAIL ON ITS OBSTRUCTION CLAIM AS A MATTER OF LAW

Summary judgment should also enter on Count V, USVI's claim that JPMC "obstructed" enforcement of the TVPA in violation of 18 U.S.C. § 1591(d).  USVI concedes it has no sovereign or quasi-sovereign damages related to obstruction—rather, its obstruction "damages are tied not to harm (or alleged benefit) to the Government, but to resident victims."  Dkt. 168, at 10.  Further, USVI admits that its "TVPA obstruction claim turns on *federal* investigations."  Dkt. 168, at 10.  Both assertions are self-defeating.  As explained, *parens patriae* does not allow USVI to claim the damages available to (and obtained by) the victims individually, and USVI has no standing to pursue the federal government's claims.

Regardless, even if USVI could collect damages suffered by victims based on JPMC's alleged obstruction of a federal investigation, no reasonable juror could find that JPMC obstructed anything, let alone did so intentionally. Thus, whether based on USVI's lack of standing or lack of proof, summary judgment should enter.[5]

### A.    USVI Does Not Have Standing To Pursue Its Obstruction Claim

Consistent with its general concession that it has abandoned "proprietary damages of any kind" in favor of damages "on behalf of victims," SUMF ¶ 52, USVI specifically confirmed its obstruction "damages are tied not to harm (or alleged benefit) to the Government, but to resident victims." Dkt. 168, at 10. As already explained, *parens patriae* does not permit a state to recover a "monetary award … sought solely for injury to … the state's citizens," *Seneci*, 817 F.2d at 1017, or an award "designed solely to reimburse [third party victims] for harm to their interests," *Operation Rescue*, 80 F.3d at 71-72. The Court allowed the *Doe* plaintiffs to proceed on their obstruction claim in the related case because, the Court reasoned, they could (and did) claim to be "victims" of obstruction within the meaning of 18 U.S.C. §§ 1591(d) and 1595(a), with their own personal damages. MTD Order 33-34. But USVI can claim no such thing—it has eschewed "proprietary damages of any kind," SUMF ¶ 52, and conceded it can prove no "harm … to the Government," Dkt. 168, at 10. USVI is therefore "only a nominal party without a real interest of its own," *Snapp*, 458 U.S. at 600, and does "not have standing under the *parens patriae* doctrine," *id.*

---

[5] JPMC further reiterates and preserves its argument, not accepted by the Court at the motion to dismiss stage, that the *only* "victim" of the obstruction of enforcement targeted in § 1591(d) is the federal government—the entity "enforcing" the criminal penalties—and not any private individuals. *See, e.g.*, *Doe v. Fitzgerald*, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022) (private plaintiffs have no private right of action under § 1591(d)); *see also Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1143 (D. Colo. 2019) (§ 1591(d) concerns only government enforcement, not investigation by private party).

Similarly, USVI lacks standing to advance its theory that JPMC obstructed a *federal* investigation. Such a claim would belong to the federal government alone. Had USVI conducted its own investigation into Epstein (rather than facilitate his crimes)—it could seek relief against obstruction of that hypothetical effort. But USVI did no such thing. Former Governors John de Jongh and Kenneth Mapp—whose tenures covered 2007 to 2015, and 2015 to 2019, respectively—admitted that they never cared to investigate Epstein during their collective 12-year tenure in office. SUMF ¶ 25. Despite Epstein's indictment in 2019, and being aware that Epstein "copped a plea to having sex with a hooker who was under age," current Governor Albert Bryan Jr. "turned [his] attention elsewhere" after learning that "none of [Epstein's] victims were *from* the Virgin Islands." SUMF ¶ 26. And even as to USVI's oft-repeated (and factually baseless) complaint that ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████ SUMF ¶ 29. In other words, USVI did nothing to investigate Epstein, ███████████████████████████████████

In sum: USVI does not and cannot claim it was harmed as a government by any alleged obstruction, and it cannot invoke *parens patriae* as a talisman to subsume the obstruction claims of actual victims. USVI has no standing to bring its own obstruction claim, and summary judgment should enter.

### B.   USVI Cannot Establish The Elements Of Its Obstruction Claim

Even if USVI had standing, no reasonable juror could find that JPMC intentionally obstructed anything.  As this Court explained, a plaintiff alleging "obstruction" of the TVPA must prove the defendant "(1) kn[e]w of an effort to enforce the TVPA and (2) intentionally obstruct[ed] or attempt[ed] to obstruct that enforcement effort."  MTD Order 32-33 (quoting *United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014)).[6]  The record is devoid of any facts to support either element.

First, no reasonable juror could find that JPMC actually "kn[e]w of an effort to enforce the TVPA."  MTD Order 32-33.  USVI bears the burden as to every element of every claim, and it has marshalled no evidence of an ongoing federal investigation into Epstein that JPMC somehow obstructed.  It is undisputed that no federal law enforcement agency made any inquiry of JPMC or otherwise alerted JPMC to any investigation, whether under the TVPA or otherwise.  SUMF ¶¶ 37-39, 42, 51.  USVI will surely point to various news articles in 2010 and 2011 that speculated as to potential federal charges and crimes and were discussed internally at JPMC.  As to Count I, those articles and emails present questions of fact unfit for resolution at summary judgment.  But the bottom line as to "obstruction" under Count V is that USVI must identify facts that allow a jury to conclude that JPMC actually "kn[e]w" of a federal TVPA investigation and took "intentional[]" steps to thwart it.  There are no such facts.

Rather, while JPMC has no burden to prove it *didn't* obstruct an investigation, here is what the undisputed record shows:  Following the news articles (in *The Daily Beast*, *New York Post*, and *Gawker*) in 2010 and 2011 on which USVI relies, JPMC affirmatively reached out to Epstein's

---

[6] Though USVI appears to allege that JPMC was aware of private lawsuits against Epstein, private lawsuits are not "effort[s] to enforce the TVPA" within the meaning of § 1591(d), which requires actual knowledge of government enforcement. *See Gilbert*, 423 F. Supp. 3d at 1143 ("Obstruction of a private investigation does not give rise to liability under Section 1590(b) or 1591(d).")

lawyers to inquire whether there was any federal investigation.  SUMF ¶¶ 33-36.  They denied it.

SUMF ¶¶ 34-36.   JPMC then affirmatively reached out to the United States Attorney for the

Southern District of Florida.  SUMF ¶ 37.  He could not confirm whether there was any federal

case.  SUMF ¶ 37.  JPMC also reached out to the FBI.  SUMF ¶ 38.  They never returned the phone

call.  SUMF ¶ 38.   Affirmatively reaching out to the potential target of a federal investigation—

and to the federal government itself—is not "obstruction" of a federal investigation.   It is the

opposite.

What is more, JPMC repeatedly alerted the federal government to Epstein.  ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

First, between 2002 and 2013, JPMC filed approximately 150 CTRs related to Epstein and

his accounts in which JPMC identified its relationship with Epstein, █████████████████

████████████████████████████████████████   SUMF ¶ 40.  Seventy-

three of these CTRs were filed before Epstein was arrested in July 2006.  SUMF ¶ 41.  Law

enforcement never reached out to JPMC in response to any CTR.  SUMF ¶ 42.

███████████████████████████████████████████████████████████

███████████████████   SUMF ¶ 43.  █████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████   SUMF ¶¶ 47, 48.  ████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ SUMF ¶¶ 47, 48. ██████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████ SUMF ¶¶ 49-50. ██████████████████████████████████

██████████████████████████████████████████ SUMF ¶ 51.  Once again,

USVI must prove that JPMC *intentionally* obstructed the federal government's enforcement of the

TVPA.██████████████████████████████████████████████████

██████, and no reasonable juror could conclude that JPMC intentionally obstructed enforcement

of the TVPA.

        *Finally*, USVI argues that ████████████████████████████████████

███████████████████████████████████████████████████████████

Even taking this argument on its strongest terms—█████████████████████████

████████████████████████████████████—does not prove "intentional[]

obstruct[ion]."  MTD Order 33.  There is no evidence that JPMC███████████████

███████████████████████████████████████████████████████████

██████.  On that basis alone summary judgment should enter.

        But the argument fails for multiple other reasons too.  For one, ██████████████

███████████████████████████████████████████████████████████

The FBI was *already* in possession of information acquired from its investigation into Epstein

between 2006 and 2008 (including the names of at least thirty-three alleged victims)—but ██

███████████████████████████████████████████████████████████

regardless.  SUMF ¶ 7, 8. █████████████████████████████████████

████████████████████████████████████████—again, law enforcement knew the

identities of dozens of victims and Epstein's co-conspirators, and federal authorities never expressed any concerns over the sufficiency of the evidence against Epstein in explaining why he received the Non-Prosecution Agreement instead of federal charges.   USVI's own law enforcement expert ███████████████████████████████████████████████████ ████████████████████████████████.  SUMF ¶ 9.  ███████████████████████████ ███████████████████████████████████, and thus there is no basis for USVI's argument.

*  *  *

In retrospect, JPMC regrets its relationship with Epstein and wishes it exited him as a client sooner.  But that is not the same thing as intentionally obstructing a federal TVPA investigation. USVI has had ample opportunity to take discovery to prove that JPMC employees knew of federal efforts to hold Epstein accountable and intentionally tried to stop it.  There are no such facts, and no reasonable juror could conclude otherwise.  Rather, JPMC alerted the government about Epstein time and again.  Unfortunately, it took far too long for law enforcement to seek to bring Epstein to justice.   But USVI's allegations against JPMC depend on speculation as to the federal government's charging decisions, *i.e.*, "'the unfettered choices made by independent actors not before the Court.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).  USVI cannot proceed on such a claim to trial—summary judgment must enter.

III.   **USVI's TVPA CLAIMS CANNOT APPLY RETROACTIVELY TO CONDUCT MADE LIABLE BY THE TVPA's 2008 AMENDMENTS**

Finally, the bar against retroactive application of the TVPA limits the scope of USVI's claims as a matter of law.  As already explained, USVI asserts two claims as *parens patriae* pursuant to 18 U.S.C. § 1595(d).  First, it alleges that JPMC "knowingly and intentionally participated in Epstein's sex trafficking venture" and "benefitted from and received value for its

participation" in violation of 18 U.S.C. § 1591(a)(2) (Count I).  SAC ¶¶ 102-119.  Second, it

alleged that JPMC intentionally obstructed a federal TVPA investigation in violation of 18 U.S.C.

§ 1591(d) (Count V).  *Id.* ¶¶ 147-168.  Both claims are severely cabined by this Court's and the

Second Circuit's holdings regarding the TVPA's retroactivity, and summary judgment clarifying

the scope of USVI's claims should enter accordingly.

### A.      Count V (Obstruction) Cannot Apply To Pre-2008 Conduct

The relevant statutory history of USVI's obstruction claim is straightforward.  That cause

of action, arising under § 1591(d), first surfaced on December 23, 2008.  *See* Pub. L. 110-457, 122

Stat. 5044, 5069 (Dec. 23, 2008).  TVPA "obstruction," as a category of actionable conduct, did

not exist prior to that time—it was available neither to the government in criminal cases, nor to

any class of civil plaintiffs.  It follows from this Court's holdings and *Velez v. Sanchez*, 693 F.3d

308 (2d Cir. 2012), that any application of USVI's obstruction claim to pre-December 2008

conduct is impermissibly retroactive.  "Nothing in the language of the TVPRA or its legislative

history indicates that Congress intended retroactive application," *Velez*, 693 F.3d at 325, and the

creation of a brand new category of actionable conduct is self-evidently an impermissible

"increase[]" of a "party's liability for previously occurring conduct," *id.*  If the creation of a new

criminal law (like "obstruction" here) does not "increase[] parties' liabilities," MTD Order 20,

then nothing does.  Summary judgment should accordingly enter precluding any application of

§ 1591(d) to alleged pre-December 2008 conduct that USVI claims constitutes "obstruction."

### B.      USVI Must Prove A "Knowing" Violation Of The TVPA Prior To 2008

The prohibition against retroactive application of the TVPA also curtails the scope of

USVI's claim for a violation of 18 U.S.C. § 1591(a)(2).  USVI's *parens patriae* claim under 18

U.S.C. § 1595(d), on its own terms, can only be brought against a "person who violates section

1591."  In its original form, § 1591 criminally prohibited only "knowingly" benefiting from

participating in a sex trafficking venture, while also "knowing that force, fraud, or coercion … will be used to cause [a victim] to engage in a commercial sex act."  Pub. L. 106-386, 114 Stat. 1464, 1487 (Oct. 28, 2000).  Then, in 2008, Congress amended § 1591, expanding criminal liability to those who not just "know," but "reckless[ly] disregard" that "force, threats of force, fraud, [or] coercion" will be used by a "venture" to cause a "commercial sex act."  *See* Pub. L. 110-457, 122 Stat. 5044, 5069 (Dec. 23, 2008).   Thus, in 2008, Congress expanded § 1591's *mens rea* requirement, and thus "increase[d] a party's liability."  *Velez*, 693 F.3d at 325.  *Before* December 2008, the law was clear and stringent: liability attached only to those who "knowingly"—who actually knew—that they were benefitting from participation in a sex trafficking venture.  Nothing less was actionable civilly or criminally.

The implications here are clear.  To the extent that USVI seeks relief from JPMC under § 1591(a) for conduct pre-dating December 2008, it must prove that JPMC "knowingly" benefitted from participation in Epstein's sex trafficking with full knowledge of that trafficking—not that it acted with "reckless disregard[]."  *See* Pub. L. 106-386, 114 Stat. 1464, 1487 (Oct. 28, 2000) (pre-2008 liability under § 1591).  JPMC of course denies any such knowledge (both before 2008 and otherwise), and the record is devoid of any facts to support any such allegation.  But at the very least, the Court should clarify the scope and nature of this claim if it goes forward: that USVI cannot prevail on any claim that JPMC "reckless[ly] disregarded" the existence of a sex trafficking venture in which it allegedly participated, or obstructed a federal TVPA investigation, prior to December 2008.  Rather, for any alleged conduct predating December 2008, USVI must satisfy the TVPA's pre-2008 requirements of actual knowledge—just as *Landgraf*, *Velez*, and this Court's holdings require.

**CONCLUSION**

Summary judgment should enter for JPMC and against USVI on Count V (obstruction) and on both Counts with respect to USVI's demands for monetary relief.  In the alternative, summary judgment should enter on Count V (obstruction) with respect to any alleged pre-December 2008 alleged conduct, and on Count I insofar as USVI alleges that JPMC acted with reckless disregard rather than with actual knowledge of a sex trafficking venture prior to December 2008.

Dated: July 24, 2023

**MASSEY & GAIL LLP**

/s/ *Leonard A. Gail*
Leonard A. Gail (*pro hac vice*)
Rachel Morse (*pro hac vice*)
50 East Washington Street, Suite 400
Chicago, IL 60602
(t) (312) 283-1590
lgail@masseygail.com
rmorse@masseygail.com

Respectfully submitted,

**WILMER CUTLER PICKERING
    HALE AND DORR LLP**

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth
John J. Butts
Andres O'Laughlin
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com
andy.olaughlin@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Alan E. Schoenfeld
Christopher Bouchoux
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
alan.schoenfeld@wilmerhale.com
christopher.bouchoux@wilmerhale.com

*Attorneys for JPMorgan Chase Bank, N.A.*