# EXHIBIT 147



🌐 Translate ⌄

Department of Financial Services

Reports and Publications

# SUPERINTENDENT LACEWELL ANNOUNCES DFS IMPOSES $150 MILLION PENALTY ON DEUTSCHE BANK IN CONNECTION WITH BANK'S RELATIONSHIP WITH JEFFREY EPSTEIN AND CORRESPONDENT RELATIONSHIPS WITH DANSKE ESTONIA AND FBME BANK

*First Enforcement Action by a Regulator Against a Financial Institution for Dealings*

# with Jeffrey Epstein

Superintendent of Financial Services Linda A. Lacewell announced today that Deutsche Bank AG, its New York branch, and Deutsche Bank Trust Company America (collectively "Deutsche Bank" or the "Bank") have agreed to pay $150 million in penalties as part of a Consent Order entered into with the New York State Department of Financial Services ("DFS" or the "Department") for significant compliance failures in connection with the Bank's relationship with Jeffrey Epstein and correspondent banking relationships with Danske Bank Estonia ("Danske Estonia") and FBME Bank ("FBME").

This agreement marks the first enforcement action by a regulator against a financial institution for dealings with Jeffrey Epstein.

"Banks are the first line of defense with respect to preventing the facilitation of crime through the financial system, and it is fundamental that banks tailor the monitoring of their customers' activity based upon the types of risk that are posed by a particular customer," **Superintendent Lacewell said.** "In each of the cases that are being resolved today, Deutsche Bank failed to adequately monitor the activity of customers that the Bank itself deemed to be high risk. In the case of Jeffrey Epstein in particular, despite knowing Mr. Epstein's terrible criminal history, the Bank inexcusably failed to detect or prevent millions of dollars of suspicious transactions."

With respect to the case of Jeffrey Epstein, the Bank failed to properly monitor account activity conducted on behalf of the registered sex offender despite ample information that was publicly available concerning the circumstances surrounding Mr. Epstein's earlier criminal misconduct. The result was that the Bank processed hundreds of transactions totaling millions of dollars that, at the very least, should have prompted additional scrutiny in light of Mr. Epstein's history, including:

- payments to individuals who were publicly alleged to have been Mr. Epstein's co-conspirators in sexually abusing young women;
- settlement payments totaling over $7 million, as well as dozens of payments to law firms totaling over $6 million for what appear to have been the legal expenses of Mr. Epstein and his co-conspirators;
- payments to Russian models, payments for women's school tuition, hotel and rent expenses, and (consistent with public allegations of prior wrongdoing) payments directly to numerous women with Eastern European surnames; and
- periodic suspicious cash withdrawals — in total, more than $800,000 over approximately four years.

This substantive failure was compounded by a series of procedural failures, mistakes, and sloppiness in how the Bank managed and oversaw the Epstein accounts. For example, certain conditions imposed upon the Epstein accounts by a Bank reputational risk committee — conditions that, if followed, might have detected and prevented many subsequent suspicious transactions — (a) were not transmitted to the majority of the account relationship team; and (b) were misinterpreted by a compliance officer in a way that resulted in very little actual change in how the monitoring of the accounts occurred. Throughout the relationship, very few problematic transactions were ever questioned, and even when they were, they were usually cleared without satisfactory explanation.

In the cases of Danske Estonia and FBME, the Department concluded that Deutsche Bank failed to properly monitor the activities of their foreign bank clients with respect to their correspondent and dollar clearing business.

Danske Estonia, which is at the center of one of the world's largest money laundering scandals, suffered from inherent control failures that resulted in large quantities of money being moved on behalf of Russian oligarchs. Over the course of the years-long relationship between Deutsche Bank and Danske Estonia, Deutsche Bank was repeatedly put on notice of these failings and of the fact that few improvements were undertaken by Danske Estonia. Despite the fact that Deutsche Bank assigned Danske Estonia its highest possible risk rating, Deutsche Bank failed to take appropriate action to prevent Danske Estonia from transferring billions of dollars of suspicious transactions through Deutsche Bank accounts in New York.

Deutsche Bank's relationship with FBME similarly represented a failure by the Bank to act on red flags concerning a correspondent banking relationship with a foreign bank. From the beginning of its relationship with FBME, Deutsche Bank considered FBME to be a high-risk client that required annual enhanced anti-money laundering checks. Despite these checks, there was little evidence that FBME improved the quality of its controls over several years. Eventually, FBME's failings resulted in the U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") mandating that all Banks operating in the United States to stop doing business with FBME. By that point, Deutsche Bank was the last major Western bank with a correspondent banking relationship with FBME.

**A copy of the consent order can be found on the DFS website.**

###