# FACSIMILE COVER SHEET

**TO:** Jeffrey Epstein  **FAX NUMBER:** 212-517-7779

**FROM:** Noah Greenhill  **FAX NUMBER:** ▮

**TEL:** ▮

**DATE:** 1/3/10  **# PAGES (incl. cover):** 5

CONFIDENTIAL    ESTATE_JPM010125

## AFFIDAVIT OF GLENN DUBIN

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

Glenn Dubin, being duly sworn, deposes and says:

1. I am over twenty-one years of age and am competent to testify to the matters stated in this affidavit. I have personal knowledge of the facts and statements herein. Each of the facts and statements herein is true and correct.

2. Starting in 2002, an entity that I both owned and controlled, currently known as Dubin & Swieca Asset Management, LLC ("DSAM"), owned interests in the general partner and in the investment manager of D.B. Zwirn Special Opportunities Fund, L.P. (the "Zwirn Fund"). The Zwirn Fund was named after Daniel Zwirn ("Zwirn"). While Zwirn was responsible for the day-to-day management and operations of the Zwirn Fund, after Zwirn spun off his business from DSAM (then known as Highbridge Capital Management, LLC), I helped introduce investors to Zwirn, invested my personal and family foundation assets with Zwirn, and my firm allocated assets of Highbridge Capital Corporation ("HCC") to an account managed by Zwirn's company which was also the investment manager of the Zwirn Fund.

3. One of the early investors that I introduced to Zwirn was Jeffrey Epstein ("Epstein"). Epstein was both a personal friend of mine and a long-time investor in HCC. My understanding is that beginning in 2002 Epstein invested assets in the Zwirn Fund through an entity called Financial Trust Company, Inc.

CONFIDENTIAL

ESTATE_JPM010126

4. In the fall of 2006, Zwirn called me and told me that he was firing the Zwirn Fund's Chief Financial Officer. Zwirn told me that there had been various irregularities at the Zwirn Fund, including that investors' money was used to pay for an airplane that would be owned by Zwirn's company.

5. During October 2006, Zwirn told me that he was making attempts to contact each investor in the Zwirn Fund, including Epstein, to explain the irregularities to them.

6. After speaking with Zwirn, Epstein called me very upset. Epstein said that Zwirn had initially described the irregularities as "nonmaterial", but on a subsequent call, Zwirn's description of the issues made it clear to Epstein that the problems were in fact very material. Epstein told me that when he confronted Zwirn about the earlier description of the irregularties, Zwirn said that his counsel had told Zwirn to use the word "non-material". Epstein felt that Zwirn had lied to him. Epstein told me that he wanted to redeem Financial Trust Company, Inc.'s entire capital account in the Zwirn Fund immediately and that Epstein had made that demand to Zwirn.

7. I subsequently spoke to Zwirn about Epstein's demand. Zwirn was concerned that a complete redemption could cause a "run-on-the-bank." Zwirn asked me to discuss with Epstein reducing his demand to one-half of Financial Trust Company, Inc.'s total capital account in the Zwirn Fund at the time, and I agreed I would discuss it with Epstein.

8. Subsequently, I participated in a three-way call with both Zwirn and Epstein. During this call, Epstein demanded from Zwirn the withdrawal of all of Financial Trust

CONFIDENTIAL  ESTATE_JPM010127

Company, Inc.'s capital account in the Zwirn Fund. Epstein said he wanted to redeem all of Financial Trust Company, Inc.'s 140 plus million dollars in that capital account immediately. Zwirn responded that such a redemption could cause a "run-on-the-bank" and asked Epstein to reduce his redemption demand to half of that amount. Zwirn said that if Epstein made only a partial redemption request, Zwirn would honor the request quickly. During this discussion with Epstein, Epstein agreed to redeem slightly more than half of Financial Trust Company, Inc.'s total capital account and said that Financial Trust Company, Inc. would redeem 80 million dollars, and Zwirn agreed to honor that request. Zwirn did not dispute that Epstein had the right to the total redemption of Financial Trust Company, Inc.'s capital account in the Zwirn Fund. It is my understanding, based on subsequent conversations with Epstein, that after this conversation, Epstein made a written request for that partial redemption of Financial Trust Company, Inc.'s capital account in the Zwirn Fund and that Zwirn refused to honor this request.

_____
Glenn Dubin

Sworn to before me this 3 day of February, 2010.

_____
Notary Public

(Seal)

Timothy Donnelly
State of New York
County of New York
01DO6207223
My Commission Expires: 6/8/2013

CONFIDENTIAL

ESTATE_JPM010128