LAW OFFICES

# WILLIAMS & CONNOLLY LLP®

| | 680 MAINE AVENUE SW | |
|---|---|---|
| STEPHEN L. WOHLGEMUTH | WASHINGTON, DC 20024 | EDWARD BENNETT WILLIAMS (1920-1988) |
| (202) 434-5390 | (202) 434-5000 | PAUL R. CONNOLLY (1922-1978) |
| swohlgemuth@wc.com | WWW.WC.COM | |

July 26, 2023

Hon. Jed S. Rakoff

   Re: *USVI v. JPMorgan Chase Bank, N.A.*; Privilege Waiver Relating to Settlement Discussions

Dear Judge Rakoff:

  As this Court has already ruled, because JPMorgan seeks to hold Jes Staley liable for its $290 million settlement with the Jane Doe class, the bank must provide discovery regarding that settlement, including "documents relating to causation of the settlement (specifically, going to [JPMorgan's] motive for settling)." July 7, 2023, minute entry. To date, however, the only materials JPMorgan has produced in response to the Court's order are a limited number of communications concerning media coverage that say little, if anything, about the bank's motives. It has produced nothing else. The bank contends that—notwithstanding the Court's ruling that its "motive for settling" is properly subject to discovery—it has somehow *not* placed at issue its lawyers' communications that necessarily informed that motive. This is a preposterous position; the bank cannot seriously be claiming it paid a nine-figure settlement for reasons *unconnected* to legal communications and analysis regarding its potential liability. Indeed, it is a near certainty that those communications are among the most critical documents that could be used to test the bank's true motive for settling, which the bank has placed at issue. Accordingly, JPMorgan must be ordered to produce at least the 149 documents that it is presently withholding, as well as any other communications relating to the settlement that are currently being withheld by the bank on attorney-client privilege or work-product grounds.[1]

  It is black-letter law that a party waives privilege by making "factual assertions the truth of which can only be assessed by examination of [a] privileged communication." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027566, at *6 (S.D.N.Y. Dec. 30, 2022); *see also MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *6 (S.D.N.Y. July 3, 2012) ("[W]aiver is justified 'when a party uses an assertion of fact . . . while denying its adversary access to privileged material potentially capable of rebutting the assertion.'"); *cf. United States v.*

---

[1] On July 14, 2023, the bank produced a privilege log listing 149 communications and documents that the bank withheld on the basis that they were "Attorney-client privileged communication[s] seeking or providing legal advice related to JPMC settlement with Jane Doe 1 Class." These entries include, among other things, notes, memos, and presentations created for JPMorgan's board of directors, who presumably had the final approval power over whether to enter into the settlement agreement.

WILLIAMS & CONNOLLY LLP
July 26, 2023
Page 2

*Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991) ("[C]ourts cannot sanction the use of the privilege to prevent effective cross-examination on matters reasonably related to those introduced in direct examination.").

Based on this principle, multiple courts have held, in language too clear to be susceptible of misunderstanding, that:

> [B]y bringing an indemnification action, which of necessity injects the issue of the reasonableness of the settlement, plaintiff must be deemed to have waived whatever attorney-client or work-product privilege would otherwise attach to communications with their attorneys or adjusters relating to the bases for the settlement.

*Scotstoun Shipping Co. v. Diplomatic Marine, Inc.*, 1980 WL 6688497 (S.D.N.Y. Jan. 21, 1980); *accord Cooper v. Meridian Yachts, Ltd.*, 2008 WL 2229552, at *10–11 (S.D. Fla. May 28, 2008) ("[B]ecause Third-Party Plaintiffs must necessarily demonstrate the reasonableness of their settlement with [plaintiff], they have waived claims of privilege with respect to the evidence necessary to evaluate that issue."); *Union Pac. R.R. Co. v. Loram Maint. of Way, Inc.*, 2006 WL 8459287, at *4 (D. Utah Feb. 1, 2006) ("The nature of indemnity litigation makes prior work by counsel very significant."); *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 117 (W.D. La. 1998) (plaintiff seeking indemnification "has put at issue the basis for its liability, its liability analysis, and the reasonableness of the settlement," and thus waived privilege); *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 1992 WL 486801, at *3 (N.D. Cal. Dec. 8, 1992) (plaintiff seeking indemnity for settlement of derivative suit waived privilege as to documents "which bear upon the allocation" of settlement costs between plaintiff and its directors).[2]

Here, more than just the *reasonableness* of the settlement is at issue. Because the bank played its own active role in the management of Jeffrey Epstein's accounts—wholly separate and apart from any actions by Mr. Staley—JPMorgan must also prove that Mr. Staley's conduct "caused" the potential liability that it decided to settle. *See* Dkt. 59 ¶ 65. As the Court has already held, that puts directly at issue *why* JPMorgan thought it should settle with the Jane Doe class: was it because of Mr. Staley, or was it because of the bank's own actions (including failures in its internal controls) and its concerns about continuing negative publicity and regulatory risk? Without access to the bank's communications with its counsel on this point, both Mr. Staley *and* the factfinder would have to take the bank at its word as to its motive, which is "untenable" from a fairness standpoint. *See Scotstoun Shipping Co.*, 1980 WL 6688497. As one court has noted:

> It is not acceptable for [a party] to take the position "Trust us. The justifications we are putting forward here are why we settled."

---

[2] *See also DH Holdings Corp. v. Marconi Corp. PLC*, 809 N.Y.S.2d 404, 407 (Sup. Ct. 2005) ("[P]laintiffs cannot on the one hand seek indemnification for the settlement and costs, and on the other hand refuse to produce the documentary record leading to such settlement").

WILLIAMS & CONNOLLY LLP
July 26, 2023
Page 3

*In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 2226591, at *5 (S.D.N.Y. May 19, 2017) (emphasis and citation omitted). In sum, JPMorgan cannot be permitted to argue to the factfinder that it settled with the Jane Doe class because it believed that it faced liability *due to Mr. Staley's conduct*, while at the same time withholding documents that may contradict that argument. *See Scotstoun Shipping Co.*, 1980 WL 6688497 (communications with counsel relevant to "whether the liability settled was proximately caused by the behavior of the [indemnitor] defendants").

To avoid this outcome—and to carry its burden to assert privilege[3]—the bank has identified several cases that, it contends, show that a party seeking damages based on a prior settlement does not *necessarily* place at issue its otherwise-privileged communications. *See* Email of July 11, 2023 (citing *AngioDynamics, Inc. v. Biolitec, Inc.*, 2010 WL 11541926, at *5 (N.D.N.Y. May 25, 2010); *Deutsche Bank Trust Co. of Americas v. Tri-Links Investment Trust*, 43 A.D.3d 56, 64–66 (N.Y. App. Div. 2007); *AIU Insurance Co. v. TIG Insurance Co.*, 2008 WL 5062030, at *1 (S.D.N.Y. Nov. 25, 2008); and *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, at *16 (S.D.N.Y. Dec. 5, 2002)). None of these cases is helpful to the bank.

Common to each of these cases (and critically different from the present case) is that in each instance, there was no question of causation – the link between the underlying liability and the indemnity defendant was already established by contract. *See AngioDynamics, Inc.*, 2010 WL 11541926, at *1 (products distributor settled patent infringement suits and sued product manufacturer for contractual indemnity); *Deutsche Bank*, 43 A.D.3d at 57–60 (agent for collective of lenders sued the majority controller of the collective for contractual indemnity); *AIU Ins. Co.*, 2008 WL 5062030, at *1–2 (insurer brought breach of contract action against its reinsurer for failure to indemnify the cost of settling insured's personal injury lawsuits); *Bovis Lend Lease*, 2002 WL 31729693, at *16 (insurer brought contribution claim for 50% of settlement and associated costs against co-insurer). Hence, the *only* questions in each case were (i) the indemnitee's good faith in settling,[4] and (ii) the overall reasonableness of the settlement quantum. Both of these questions, the courts held, could be adequately evaluated without reference to privileged communications, and the courts found that there had been no waiver.

Here, by contrast, the causal connection between Mr. Staley (on one hand) and JPMorgan's liability to the victims of Jeffrey Epstein (on the other) is very much in dispute. The bank's relationship with (and failure to address) Epstein arose wholly independently of Mr. Staley (who joined JPMorgan's private bank after Epstein was already a client). JPMorgan would have facilitated (and did facilitate) certain of Epstein's transactions whether or not Mr. Staley ever

---

[3] *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) (party asserting privilege bears burden to show privilege applies).

[4] "Good faith" in settling and "motive for settling" are not synonymous. Indeed, two of the bank's cited cases recognized that "good faith" was proven *only* by establishing the "objective reasonableness" of the settlement. *AngioDynamics, Inc.*, 2010 WL 11541926, at *7 (citing *Deutsche Bank*, 43 A.D.3d at 67 n.9).

Case 1:22-cv-10904-JSR   Document 248   Filed 07/26/23   Page 4 of 4

WILLIAMS & CONNOLLY LLP

July 26, 2023
Page 4

worked for the bank. Nor was Mr. Staley the only JPMorgan employee with access to negative information on Epstein: as the Court has observed, "JP Morgan either knew or should have known that Jeffrey Epstein operated a sex-trafficking venture perhaps as early as 2002," simply because of suspicious transaction activity—which activity *Mr. Staley is not alleged to have known about*. Dkt. 171 at 6.

For this reason, it is more than plausible that the bank chose to settle with the Jane Doe class because it saw that *its own* negligence, and not any alleged misconduct by Mr. Staley, could give rise to substantial liability and other consequences. But only its internal communications will show what its motive was. If, as the bank asserts, it was motivated to settle *because of* Mr. Staley's conduct, then its communications with counsel ought to confirm that fact. Regardless, the bank should not be permitted to argue to the factfinder that Mr. Staley's conduct *alone* caused the bank to enter into the settlement agreement without permitting Mr. Staley to probe the basis for that assertion, which necessarily includes the bank's communications with its counsel that the bank has put at issue. Neither Mr. Staley nor the factfinder should be forced to take the bank at its word as to its motivations for settling and the reasonableness of its settlement.

\*   \*   \*   \*

For the foregoing reasons, JPMorgan should produce all communications between itself and its in-house and outside counsel as well as attorney work-product relating to the reasonableness and causation of the settlement.

Respectfully submitted,

/s/ *Stephen L. Wohlgemuth*

Stephen L. Wohlgemuth