# EXHIBIT 90
# FILED UNDER SEAL

# Government of the United States Virgin Islands

v.

# JPMorgan Chase Bank, N.A.;

# JPMorgan Chase Bank, N.A.

v.

# James Edward Staley

Expert Report of Carlyn Irwin

Carlyn Irwin
Senior Advisor
Cornerstone Research

June 23, 2023

Confidential—Subject to Protective Order

incomplete and contains information that is contradicted by Southern Trust's 2015 reporting package. For example:

    a. The spreadsheet indicates that Southern Trust had "Gross Sales" of only ▉▉▉, compared to ▉▉▉ reported on the tax return.[152]

    b. The spreadsheet indicates that Southern Trust paid ▉▉▉, compared to $4.2 million of reported taxes paid in the reporting package.[153]

58. In 2016–2018, Southern Trust continued to receive benefits from the EDC program, but at much lower levels due to a significant decline in Southern Trust's revenues and profitability. See **Exhibit 1**.

### III. Summary of Findings and Opinions with Respect to USVI Tax Benefits

59. Between 1999 and 2018, USVI's EDC awarded Financial Trust and Southern Trust more than $300 million in tax benefits. For those years in which Mr. Epstein's companies reported positive ordinary business income, the cost / benefit ratio of tax benefits to Financial Trust and Southern Trust was far lower than EDC's target ratio, as discussed further below:[154]

---

[152] VI-JPM-000037452, tab *Employment & Taxes*; VI-JPM-000007474–533 at 477.
[153] VI-JPM-000037452, tab *Employment & Taxes*; VI-JPM-000007474–533 at 474.
[154] Cost / benefit ratios are only shown for years in which Financial Trust or Southern Trust reported positive ordinary business income ▉▉▉. In 2016–2018, Southern Trust continued to receive benefits from the EDC program, but at much lower levels due to a significant decline in Southern Trust's revenues and profitability. In addition, I noted that the 2015 cost / benefit spreadsheet is incomplete and contains information that is contradicted by Southern Trust's 2015 reporting package. In the September 7, 1999 Executive Session, Mr. Francois Dominique, a Special Assistant in the IDC, stated that ▉▉▉ See VI-JPM-000018885–917 at 885, 889. Governor Albert Bryan stated in his June 6, 2023 deposition that a good return on investment from that tax benefits [USVI was] given" was "[d]efinitely at least one and a half, two, would be good." See Deposition of Governor Albert Bryan, Jr., June 6, 2013 ("Bryan Deposition"), 47:9–20. I present the lower of the target cost / benefit ratios for purposes of this table. Actual cost / benefit ratios for Financial Trust and Southern Trust as listed in the *Benefits* tab of EDC's cost-benefit analysis spreadsheets. See VI-JPM-000032792; VI-JPM-000032774; VI-JPM-000032775; VI-JPM-000032776; VI-JPM-000032777; VI-JPM-000032778; VI-JPM-000032779; VI-JPM-000032780; VI-JPM-000093347; VI-JPM-000037451; VI-JPM-000037452; VI-JPM-000020120; VI-JPM-000020331; VI-JPM-000093348.

| Year | Target Cost / Benefit Ratio | Cost / Benefit Ratio Reported by EDC |
|---|---|---|
| 1999 | | |
| 2000 | | |
| 2001 | | |
| 2002 | | |
| 2003 | | |
| 2004 | | |
| 2005 | | |
| 2006 | | |
| 2013 | | |
| 2014 | | |
| 2015 | | |
| 2016 | | |
| 2017 | | |
| 2018 | | |

### A. USVI Gave Mr. Epstein Over $300 Million in Tax Breaks

60. During the period 1999 through 2018, USVI's IDC/EDC gave Mr. Epstein over $300 million of tax breaks associated with his 100% ownership of Financial Trust and Southern Trust to incentivize him to conduct business in USVI. Attached as **Exhibit 1** is a summary of: (i) the taxes and duties paid by Financial Trust and Southern Trust to USVI; and (ii) the reported value of the tax exemptions awarded to Mr. Epstein. According to the tax returns submitted by Mr. Epstein's companies to the IDC/EDC each year, Mr. Epstein paid ▌▌▌▌ on ▌▌▌▌ earned by Financial Trust and Southern Trust during the period 1999–2018. This indicates that as a result of the IDC/EDC awards, Mr. Epstein's net effective income tax rate ▌▌▌▌ earned by his USVI-based companies was only ▌▌.[155]

### B. Giving Mr. Epstein $300 Million in Benefits Made No Economic Sense

61. As discussed above, based on the methodology used by the IDC in 1999, it was projected that Financial Trust would generate a cost / benefit ratio of ▌▌.[156] This indicates that for

---

[155] ▌▌ (income taxes paid 1999–2018) *divided by* ▌▌ (ordinary business income 1999–2018) *equals* approximately ▌▌. See **Exhibit 1**.
[156] VI-JPM-000018885–917 at 888–889.

every ▇ of tax breaks that was to be given to Financial Trust (and Mr. Epstein as he was the sole owner of this pass-through company), USVI expected to receive ▇ of economic benefits in the form of increased local employment, local tax receipts, and local investment.

62. However, Financial Trust's actual cost / benefit was significantly below the IDC's projections and its so-called "▇" of ▇ to ▇.[157] As reflected in Financial Trust's annual reporting packages and the available EDC cost / benefit spreadsheets produced in discovery, Financial Trust's actual cost / benefit ratios in 1999–2001 were:

   a. 1999 ratio = ▇ to ▇;[158]
   b. 2000 ratio = ▇ to ▇;[159] and
   c. 2001 ratio = ▇ to ▇.[160]

63. Each of these ratios calculated by the EDC were well below: (i) the forecasted ratio of ▇ to ▇ that was  and (ii) the "▇" ratio of ▇ to ▇.

64. Southern Trust's actual cost / benefit was similarly also significantly below the EDC's projections and its so-called "▇" of ▇ to ▇. For example, per the EDC's cost / benefit calculations produced in discovery, the actual cost / benefit in 2014 was only ▇ to ▇.[161]

65. This ratio was well below: (i) the projected ratio that the EDC discussed when it decided to approve Southern Trust's award; (ii) the ▇ to ▇ "▇" level discussed by the EDC in 1999;[162] and (iii) the ▇ to ▇ "▇" level discussed by the EDC in 2013.[163]

66. Thus, from 1999 to 2018, neither Financial Trust nor Southern Trust came close to generating sufficient benefits to USVI to offset the tax incentives granted to Mr. Epstein and these companies let alone reach the thresholds the EDC considered "▇." Based on the record, the EDC was aware of Mr. Epstein's companies' multi-year history of poor cost / benefit performance yet agreed to extend Financial Trust's certificate in 2009 and granted Southern Trust a new certificate in 2013 regardless.

---

[157] VI-JPM-000018885–917 at 889.
[158] VI-JPM-000032792, tab *Benefits*.
[159] VI-JPM-000032774, tab *Benefits*.
[160] VI-JPM-000032775, tab *Benefits*.
[161] VI-JPM-000037451, tab *Benefits*.
[162] VI-JPM-000018885–917 at 889.
[163] VI-JPM-000018918–926 at 920.

C. **USVI Failed to Ask Questions or Develop an Appropriate Basis to Support Extending the $300 Million in Benefits**

67. USVI's EDC did not properly evaluate Mr. Epstein's applications for benefits and failed to ask him even the most basic questions based on information that was uniquely available to it about his companies.

68. In awarding hundreds of millions of dollars in benefits to Mr. Epstein, USVI failed to perform even perfunctory examination of information that was uniquely available to it and ignored its own calculations that Mr. Epstein's companies were not conferring the promised economic benefits on USVI. In 2009 and 2013, the awards to Mr. Epstein were ultimately approved by Governor de Jongh. He approved these benefits while his wife, First Lady Cecile de Jongh, was the office manager for Mr. Epstein's companies and received a salary, bonuses, and other benefits, including tuition for their children, from Mr. Epstein.[164] Based on my review of the record, I have not seen any evidence that USVI or the EDC employed any procedure to manage or investigate the real and/or perceived conflict of interest by Governor de Jongh's approval of tax benefits that directly benefitted his family.[165] Governor de Jongh testified that no such measures were put in place.[166]

69. Moreover, based on my review of the record, it does not appear that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In 1999, when testifying in front of the EDC on behalf of Financial Trust Company, Mr. Epstein made exaggerated statements, including that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[167] He also testified "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[168] but also stated he would "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[169] The EDC did not ask ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, nor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[164] Government of the United States Virgin Islands v. JPMorgan Chase Bank, N.A, Case 1:22-cv-10904-JSR, JPMorgan Chase Bank, N.A.'s Opposition to USVI's Motion to Strike Affirmative Defenses, May 23, 2023 ("JPMC Opposition to Motion to Strike"), Exhibit 23, ESTATE_JPM024371; JPMC Opposition to Motion to Strike, Exhibit 25, ESTATE_JPM024548; JPMC Opposition to Motion to Strike, Exhibit 26, ESTATE_JPM024549; Deposition of Governor John de Jongh, May 30, 2023 ("John de Jongh Deposition"), 136:19–138:22; Cecile de Jongh Deposition, 10:20–22; 76:3–78:12.
[165] Bryan Deposition, 133:23–134:2.
[166] John de Jongh Deposition, 162:19–164:1.
[167] VI-JPM-000016248–270 at 253.
[168] VI-JPM-000016248–270 at 264.
[169] VI-JPM-000016248–270 at 256.

▌. In addition, when Financial Trust applied for a renewal of EDC benefits for Financial Trust in February 2009, ▌ ▌.[170] Based on my review of the record, the EDC did not ask ▌ ▌ ▌.[171] Moreover, the EDC did not ask ▌ ▌. Again, based on my review of the record, I am not aware if ▌ ▌.

70.     USVI also did not conduct checks on Financial Trust during the renewal period.  A January 2009 EDC due diligence report states that ▌ ▌ ▌ ▌. Yet, I am not aware of anything in the record that indicates the EDC ▌. In July 2011, a researcher with the Daily Beast confirmed that Financial Trust was never registered with any of those entities.[172]

71.     Nor does the record reflect that the EDC did anything to review—or even acknowledge—Mr. Epstein's criminal history during their granting of benefits to him despite it being laid out and included in his application.  In fact, the Chairman of the EDC from 2007 to 2014, current USVI Governor Albert Bryan, Jr., testified he was not aware of news in 2011 that Mr. Epstein had settled more than two dozen lawsuits and claims against him by teenagers who say they gave him sexually charged massages and/or sex in exchange for money despite the fact that this information was publicly available at the time the EDC was voting to renew tax benefits for Financial Trust.[173]  Mr. Bryan testified that the EDC was generally *less* concerned about the ethics and integrity of the owner of a business receiving EDC benefits if the business was up for renewal, as Financial Trust was after Mr. Epstein's arrest, because the EDC had a track record of

---

[170] VI-JPM-000016200–205 at 202; Associated Press, "A Timeline of the Jeffrey Epstein, Ghislaine Maxwell Scandal," *U.S. News & World Report*, June 28, 2022, available at https://www.usnews.com/news/politics/articles/2022-06-28/a-timeline-of-the-jeffrey-epstein-ghislaine-maxwell-scandal.
[171] VI-JPM-000016200–205 at 202.
[172] VI-JPM-000033049–063 at 051. Note that the NFA administers registration and examination of intermediaries on behalf of the CFTC.  See "Be Smart: Check Registration & Backgrounds Before You Trade," *CFTC*, https://www.cftc.gov/check.
[173] Bryan Deposition, June 6, 2013, 74:7–25; 75:1–13.

relation to economic development benefits brought to USVI.[228]   Again, the EDC considered a cost / benefit ratio of ▮ to ▮ to be "▮▮▮▮▮▮▮▮."[229]

90.    Based on my review of the record, the EDC was aware that the cost-benefit ratios for Financial Trust ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  In 1999, for ▮▮▮▮ of tax breaks that USVI gave to Financial Trust, USVI received only ▮▮ in economic benefits.[230]  In 2000, for every ▮ of cost (tax breaks given away to Financial Trust), USVI received only ▮▮▮▮ (taxes received, local employment, and local purchases).[231]  In 2001, for every ▮ of cost (tax breaks given away to Financial Trust), USVI received only ▮▮ of benefits.[232]  The EDC Board recognized ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[233]



91.    Moreover, granting EDC benefits to Southern Trust also failed to meaningfully spur investment and growth in USVI.  For example, in 2014, Southern Trust's award resulted in an actual cost / benefit ratio of ▮ of cost for every ▮ in benefits.[234]  .

92.    The EDC's grant of tax benefits to Mr. Epstein's USVI-based companies was contrary to its mission and conferred only paltry benefits to the residents of USVI.  The lack of economic sense raises the obvious question of why these benefits continued to be granted to Mr. Epstein's companies over a twenty-year period.

93.    I have reviewed the Motion to Strike Opposition filed by JPMC in this case and the supporting exhibits.  That filing lays out facts suggesting an improper quid-pro-quo relationship between Mr. Epstein and certain high-placed USVI officials with influence over the benefits.  For example, First Lady de Jongh received a salary, bonuses, and tuition payments for her children from Financial Trust and Southern Trust.[235]  Her husband, the Governor, signed off on

---

[228] United States Virgin Islands Economic Development Authority, FY2012 Annual Report, p. 13.
[229] VI-JPM-000018885–917 at 889
[230] VI-JPM-000032792, tab *Benefits*.
[231] VI-JPM-000032774, tab *Benefits*.
[232] VI-JPM-000032775, tab *Benefits*.
[233] VI-JPM-000018918–926 at 920.
[234] VI-JPM-000037451, tabs Employment & Taxes, Procurement, and Benefits.
[235] JPMC Opposition to Motion to Strike, Exhibit 23, ESTATE_JPM024371; JPMC Opposition to Motion to Strike, Exhibit 25, ESTATE_JPM024548; JPMC Opposition to Motion to Strike, Exhibit 26, ESTATE_JPM024549; John de Jongh Deposition, 136:19–138:22; Cecile de Jongh Deposition, 10:20–22; 76:3–78:12.

███████████████████████████████████. Without such a benchmark, Mr. Amador's "analysis" lacks context and his opinion is unsupported and speculative.

101. Second, Mr. Amador has not presented any analysis of any ██████████████████ ████████████████████████████████████████ He merely points to the fact that ████████████████████████████████████████████████████. Mr. Amador does not explain why this fact supports his opinion that █████████████████ █████████, rendering his opinion baseless and speculative.

102. Third, there are potential legitimate reasons why it is not unusual to have separate entities hold title to different aircraft. For example, for liability purposes, it is best practice (and financial institutions and/or insurance companies often recommend) that ownership of significant assets be owned by separate legal entities. This is done not only to protect the value of one aircraft should liabilities be generated from another aircraft, but also to maintain corporate formalities.

103. Mr. Amador has failed to present any analysis to support his opinions. He has also failed to consider the nature and scope of Mr. Epstein's businesses and asset holdings.

Executed on this 23rd day of June 2023

*Carlyn Irwin*
_____
Carlyn Irwin

**Exhibit 1**
**Analysis of Economic Development Commission Credits**



**Exhibit 1**
**Analysis of Economic Development Commission Credits**



Source: VI-JPM-000012940; VI-JPM-000012922; VI-JPM-000012885; VI-JPM-000012850; VI-JPM-000012816; VI-JPM-000012743; VI-JPM-000012722; VI-JPM-000012689; VI-JPM-000012630; VI-JPM-000013335; VI-JPM-000013219; VI-JPM-000013122; VI-JPM-000013087; VI-JPM-000012996; VI-JPM-000007315; VI-JPM-000007407; VI-JPM-000007474; VI-JPM-000007534; VI-JPM-000007588; VI-JPM-000007663