# EXHIBIT 103
# FILED UNDER SEAL

```
 1      UNITED STATES DISTRICT COURT FOR THE
             SOUTHERN DISTRICT OF NEW YORK
 2                       - - -

 3   GOVERNMENT OF THE UNITED       : Case Number:
     STATES VIRGIN ISLANDS          : 1:22-cv-
 4          Plaintiff,              : 10904-JSR
            v.                      :
 5   JPMORGAN CHASE BANK, N.A.      :
            Defendant/Third-Party   :
 6          Plaintiff.              :
     _____
 7   JPMORGAN CHASE BANK, N.A.      :
            Third-Party Plaintiff,  :
 8          v.                      :
     JAMES EDWARD STALEY            :
 9          Third-Party Defendant.  :

10
                         - - -
11                  APRIL 28, 2023
                 HIGHLY CONFIDENTIAL
12                       - - -

13              Videotaped deposition of

14   KEVIN McCLEEREY, taken pursuant to

15   notice, was held at the law offices of

16   Porzio, Bromberg & Newman, P.C., 100

17   Southgate Parkway, 3rd Floor, Morristown,

18   New Jersey 07960, commencing at

19   9:13 a.m., on the above date, before

20   Amanda Dee Maslynsky-Miller, a Certified

21   Realtime Reporter and Notary Public in

22   and for the State of New York.

23                       - - -
          GOLKOW LITIGATION SERVICES, INC.
24        877.370.3377 ph| 917.591.5672 fax
```

```
 1          Q.   Given your experience in
 2   risk management, did you believe that
 3   Mr. Epstein presented an intolerably high
 4   reputational risk to the bank?
 5               MR. BUTTS:  Objection to
 6          form.
 7               You may answer.
 8               THE WITNESS:  Mr. Epstein
 9          represented a reputational risk to
10          the firm.  My group did not have
11          any responsibility for onboarding
12          or exiting any clients.  That was
13          the business's role.
14   BY MS. OLIVER:
15          Q.   I think my question was a
16   little different, which was, did you
17   personally believe that Mr. Epstein
18   presented an intolerably high
19   reputational risk to the firm?
20               MR. BUTTS:  Objection to
21          form.
22               You may answer.
23               THE WITNESS:  I don't know
24          what "intolerable" means.  People
```

Kevin McCleerey - Highly Confidential

1   to kick clients out or to open accounts
2   for clients.
3          Q.   I understand that you didn't
4   have the authority to exit the clients.
5          A.   Right.  Right.
6          Q.   Despite not having the
7   authority to exit a client, did you have
8   a view, at this time, about whether
9   Mr. Epstein should be exited from the
10  bank?
11             MR. BUTTS:  Objection.
12             THE WITNESS:  My view was it
13        was -- the reputational risk of
14        the firm was increasing with these
15        allegations, if they were true.
16        We knew in previous news articles
17        some of the information was not
18        true.  So we needed to get the
19        facts.
20             But until then, we should
21        have a meeting to review the
22        current allegations in the press.
23        That was my view.
24  BY MS. OLIVER:

Case 1:22-cv-10904-JSR   Document 263-50   Filed 08/07/23   Page 5 of 7

Kevin McCleery - Highly Confidential

```
1   BY MS. OLIVER:
2        Q.   Did you believe, in December
3   of 2010, that Mr. Epstein should be
4   exited from the bank?
5             MR. BUTTS:  Objection.
6        Asked and answered.
7             THE WITNESS:  I'm going to
8        say it again.  Newspaper articles
9        appeared.  We knew in the past
10       they were not totally accurate.
11       He was now, quote, being
12       investigated for sex trafficking.
13       It now required another meeting
14       with the rapid response team.
15            My view was it increased the
16       reputational risk of the firm by
17       keeping the client.  And that was
18       my view.
19  BY MS. OLIVER:
20       Q.   Yes or no, did you believe
21  Mr. Epstein should be exited as a client
22  in December of 2010?
23            MR. BUTTS:  Objection.
24            THE WITNESS:  My view was we
```

Kevin McCleerey - Highly Confidential

```
 1          MR. BUTTS:  You have gotten
 2   the answer.
 3          MS. OLIVER:  I have not
 4   gotten the answer, John.
 5          MR. BUTTS:  You have gotten
 6   the answer.
 7          Do you want to give it for
 8   the fifth time?
 9          THE WITNESS:  Sure.
10   Allegations of sex trafficking
11   appeared in the press.  We had
12   previously known that the press
13   reports were not totally accurate.
14   But these charges were troubling,
15   and it increased the reputational
16   risk of the firm if we kept the
17   client.
18          And in my role, it was
19   necessary to schedule a rapid
20   response meeting.  I was not in
21   charge of the business.  I didn't
22   have responsibility or authority
23   to open or close accounts.
24          So my view was, the risk
```

Kevin McCleerey - Highly Confidential

```
 1           increased, let's have a meeting.
 2                    -  -  -
 3              (Whereupon, Exhibit
 4         McCleerey-20,
 5         JPM-SDNYLIT-00204777, 12/23/10
 6         E-mail, was marked for
 7         identification.)
 8                    -  -  -
 9   BY MS. OLIVER:
10        Q.    Mr. McCleerey, I'm handing
11   you what has been marked McCleerey-20,
12   with Bates number 00204777.
13              Again, I know you have not
14   seen this e-mail chain, but I'd like you
15   to look about halfway down the page to an
16   e-mail that Mr. DeLuca sent to William
17   Langford on December 23rd, 2010.  The
18   e-mail starts, Yep.
19              Do you see that?
20        A.    Yep.  Yes.
21        Q.    Yep.  Yep.
22              On cell if needed.  And I
23   sent you an e-mail yesterday on that scum
24   Epstein.  That looks good, too.  I
```