## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

GOVERNMENT OF THE UNITED            )
STATES VIRGIN ISLANDS               )
                                    )
  Plaintiff,              )
                                    )
  v.                       )  Case Number: 1:22-cv-10904-JSR
                                    )
JPMORGAN CHASE BANK, N.A.           )
                                    )
  Defendant/Third-Party Plaintiff. )
_____)
                                    )
JPMORGAN CHASE BANK, N.A.           )
                                    )
  Third-Party Plaintiff,   )
                                    )
  v.                       )
                                    )
JAMES EDWARD STALEY                 )
                                    )
  Third-Party Defendant.   )
_____)

**GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS' RESPONSE TO DEFENDANT'S LOCAL 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

  Pursuant to Local Civil Rule 56.1(b), Plaintiff the Government of the United States Virgin Islands ("Government") respectfully submits the following responses and additional material facts to Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan") Local Rule 56.1 Statement of Undisputed Material Facts:

**I.  PARTIES**

  **A.  JPMorgan Chase Bank, N.A.**

  1.  JPMorgan Chase Bank, N.A. ("JPMC") is a national bank whose main office is located in Columbus, Ohio, as designated in its Articles of Association.

**RESPONSE:** The Government does not dispute that JPMorgan is a national bank. However, as stated in JPMorgan's Answer to Second Am. Compl. and Stmnt. of Affirm. Defenses, JPMorgan maintains "its main office in New York, New York." Dkt. 124 ¶ 4. The Government further notes that this paragraph lacks "citation to evidence which would be admissible" as required by Local Civil Rule 56.1(d)

        **B.**      **The United States Virgin Islands**

       2.       The United States Virgin Islands ("USVI") are a group of Caribbean islands and an unincorporated and organized territory of the United States.

**RESPONSE:** Undisputed.

       3.       The USVI consists of the islands of St. Croix, St. John, and St. Thomas, as well as surrounding minor islands, including Jeffrey Epstein's private islands, Little St. James and Great St. James.

**RESPONSE:** The Government does not dispute that the US Virgin Islands consists of the islands of St. Croix, St. John and St. Thomas, as well as other "territorial domain, islands, cays, and waters acquired by the United States" in 1916. 48 U.S.C. § 1541(a). The Government disputes the statement to the extent it implies that Epstein currently owns islands comprising the Virgin Islands. The islands have been sold. Ackerman Decl.[1], Ex. 1 at 32:21-33:12.

       4.       Epstein purchased Little St. James Island in 1998. Ex. 1.

**RESPONSE:** Undisputed.

---

[1] Citations to "Ackerman Decl." refer to the accompanying Declaration of David I. Ackerman filed concurrently with this Response.

II.      **EPSTEIN'S ARREST, INCARCERATION, AND RELEASE**

5.       Epstein was indicted in Florida state court for felony solicitation of prostitution on July 19, 2006. Exs. 2, 3 at i. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-21.

**RESPONSE:** The Government does not dispute the first sentence of this paragraph. The Government disputes that the second sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mem. Supp. Mot. Partial Summ. J. (Dkt. 218) ("Government Motion") at 27-39. To the extent the information is material, the Government offers the following additional facts:

5-a.      The information was never communicated to the US Virgin Islands in a form and from a source sufficient to initiate an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 (Dkt. 236-7) at 167:3-170:3.

5-b.      The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

6.       █████████████████████████████████ Ex. 5 at JDoe_DBAG_005461. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-21.

**RESPONSE:** The Government does not dispute the first sentence of this paragraph. The Government disputes that the second sentence of this paragraph is material to Defendant's Motion

for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot.at 27-39. To the extent the information is material, the Government offers the following additional facts:

> 6-a.    The information was never communicated to the US Virgin Islands in a form and from a source sufficient to initiate an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 (Dkt. 236-7) at 167:3-170:3.

> 6-b.    The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

7.    By the time of Epstein's June 30, 2008, guilty plea, federal law enforcement possessed the following information about Epstein:

> a.    The identities of at least 33 alleged victims. Ex. 3 at 270 n.424; Ex. 6 at JDoe_JPMC_008593;

> b.    ██████████████████████████████████████ Ex. 5 at JDoe_DBAG_005376-005381;

> c.    ████████████████████████ Ex. 7 at JDoe_JPMC_003422-003423;

> d.    ███████████████████████████████████████ Ex. 7 at JDoe_JPMC_003419; Ex. 8 at JDoe_JPMC_003058-003060, 003062; and

> e.    Records related to Epstein's travel, communications, and financial transactions. Ex. 3 at 22.

**RESPONSE:** The Government does not dispute that federal law enforcement possessed the specific information listed above.  The Government disputes this paragraph to the extent it implies

that JPMorgan's lack of financial reporting did not matter and offers the following additional material facts:

        7-a. 

Liu Decl. Ex. 275 (Dkt. 235-25) at –683.

        7-b.     The 2006 Bank Secrecy Act / Anti-Money Laundering Examination manual states: "Suspicious activity reporting forms the cornerstone of the BSA reporting system.  It is critical to the United States' ability to utilize financial information to combat … crimes." Ackerman Decl. Ex. 3 at 60.

        7-c.     SARs have been instrumental in enabling law enforcement to initiate or supplement major criminal cases. Ackerman Decl. Ex. 4 ¶ 5.226.

        7-d.  Ellsworth Decl. Ex. 45 (Dkt. 231-47) (emphasis in original).

        7-e.     Shaun O'Neill, former Special Agent with the Federal Bureau of Investigations ("FBI"), states that "the FBI relies on financial institutions as a key partner to . . . obtain the information necessary to answer the questions of who, what, when, where, and why." Liu Decl. Ex. 274 (Dkt. 235-24) at 17.

7-f.　　O'Neill further states that "When it became public that Jeffrey Epstein had been arrested and that he had used cash to commit his sexual crimes against children, ███████ ████████████████████ impaired the government's ability to prosecute the crimes that it was investigating against Epstein." *Id*. at 25.

7-g.　██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████

7-h.　███████████████████████████████████████
███████████████████████████████████████████████

7-i.　██████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████

7-j.　　In September 2007, Lisa Waters (then Managing Director AWM) emails Erdoes an article about Epstein from Page Six that stated: "THE sordid sex case involving **Jeffrey Epstein** may be coming to an unhappy ending – with a plea deal that would put the publicity-shy billionaire behind bars for 15 months for allegedly soliciting underage teen girls for sex at his Palm Beach mansion." Liu Decl. Ex. 92 (Dkt. 225-92) at –501 (emphasis in original).

7-k.　　On March 8, 2007, Maria Hornak forwards an email from Rich Kahn (Epstein's accountant) to Mary Casey, subject "FW: New Chase Credit Cards" with the attachment "JE - Chase Credit Cards.xls." Liu Decl. Ex. 73 (Dkt. 225-73) at -494. The attachment lists "Jeffrey

Epstein Chase Credit Cards" for ████████ and █████████████ through NES LLC c/o Jeffrey Epstein. The expected charges on the credit card for ████████ were for "[t]ravel() through Paris, Europe and US Virgin Islands and US monthly." *Id.* at -496. The expected charges on the credit card for █████████████ were for "permanently resides in Geneva / All charges in Europe are ok." *Id.*

       7-l.    An August 14, 2006 news report, that was part of due diligence conducted by JPMorgan in September 2006, titled "Jeffrey Epstein craved big homes, elite friends – and, investigators say, underage girls," stated that Epstein gave "$100,000" donation to "Ballet Florida." Liu Decl. Ex. 45 (Dkt. 225-45) at –397.

       8.



Ex. 9 at JDoe_JPMC_003010-003011, JDoe_JPMC_003014.

**RESPONSE:** The Government does not dispute this paragraph.

       9.    USVI's retained expert, former FBI special agent Shaun O'Neill, testified that he believed Epstein should have received federal charges in 2008. Ex. 10 at 55:20-56:10, 76:5-77:3, 78:1-18, 113:6-13, 234:15-235:7, 242:16-22.

**RESPONSE:** The Government disputes this paragraph as it misstates Shaun O'Neill's testimony. Shaun O'Neill testified:

> I'm establishing the facts based off of federal law, in which he should have been charged, is that he paid for a commercial sex act with the minor and there is no need to prove – there is no analysis to need to be conducted for fraud, force, or coercion. I say that because in . . . AML groups . . . they're supposed to know the law, whether it be narcotics, trafficking, or anything else human trafficking is no different. . . . But my point is . . . it doesn't take an attorney or an experienced law enforcement

officer to understand that . . . victimizing horrendously a 14-year-old and paying
them cash is indeed human trafficking.

Ellsworth Decl. Ex. 10 (Dkt. 231-18) at 76:5-77:3.

10.     The Non-Prosecution Agreement was kept under seal until September 18, 2009,

when it was unsealed by a Florida court. Ex. 3 at 240.

**RESPONSE:** The Government does not dispute that the NPA itself was kept under seal until

September 18, 2009. The Government disputes this paragraph to the extent it suggests there were

no public reports about the plea deal in 2007. Gov't SUF (Dkt. 219) ¶114-15.[2]

11.     ███████████████████████████████████████████████

████████████████████████████████████████████████████

████. Ex. 11. He was incarcerated in Florida the same day. Ex. 12 at VI-JPM-000012204. USVI's

law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18,32:16-

35:21.

**RESPONSE:** The Government does not dispute the first two sentences of this paragraph. The

Government disputes that the third sentence of this paragraph is material to Defendant's Motion

for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in

support of Defendant's arguments. Additionally, the Government's investigative decisions cannot,

as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To

the extent the information is material, the Government offers the following additional facts:

11-a.    The Virgin Islands never received credible complaints of misconduct

involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-

---

[2] Citations to "Government SUF" refers to the Government's Statement of Undisputed Material
Facts (Dkt. 219).

208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

12.     On May 1, 2009, an individual under the pseudonym "Jane Doe No. 102" filed suit against Epstein in the Southern District of Florida. Ex. 13. In it, she alleged that she had been transported on Epstein's private plane to locations, including in the Caribbean. Ex. 13 at ¶ 20. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18, 36:5-39:14.

**RESPONSE:** The Government does not dispute the first two sentences of this paragraph. The Government disputes that the third sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

12-a.   The information was never communicated to the US Virgin Islands in a form and from a source sufficient to initiate an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 (Dkt. 236-7) at 167:3-170:3.

12-b.   The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

12-c.   The USVI did not monitor public dockets for mentions of Epstein, and it would be unreasonable to expect a law enforcement agency to do so. Ackerman Decl., Ex. 7 at 171:3-8; Ex. 8 at 146:6-147:8.

13.     Epstein was released from incarceration in Florida and placed into home confinement on July 22, 2009. Ex. 3 at 117. He was also registered as a sex offender in Florida. Ex. 3 at 117.

**RESPONSE:** Undisputed.

14.     On March 5, 2010, Epstein visited the USVI while on home confinement. His travel permit to travel from Florida to the USVI stated he would be traveling by private plane accompanied by staff. Ex. 14 at VI-JPM-000012205. While in USVI, he registered as a sex offender in that jurisdiction on a form signed by Merlyn Petty of the USVI sex offender registration office. Ex. 14 at VI-JPM-000012206. A handwritten note on the USVI sex offender registration form reads, "Visiting every other week – will notify when returning to Reside." Ex. 14 at VI-JPM-000012206.

**RESPONSE:** The Government disputes that this paragraph contains facts that are material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. The Government does not dispute the accuracy of the statements set forth in this paragraph.

15.     On July 20, 2010, the Daily Beast published an article titled, "Billionaire Pedophile Goes Free." Ex. 14 at VI-JPM-0000122215-12218. As a national news article, this article was available to the USVI Attorney General's office. Ex. 16 at 127:15-17. Attorney General Carole Thomas-Jacobs testified, "I'm sure the Virgin Islands would be aware of any national press accounts." Ex. 16 at 127:15-17. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18, 30:4-32:11.

**RESPONSE:** The Government disputes that the information set forth in this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's

investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

15-a.   The information was never communicated to the US Virgin Islands in a form and from a source sufficient to initiate an investigation. News reports, "rumors" or "innuendo" were not a sufficient basis to initiate an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 (Dkt. 236-7) at 167:3-170:3.

15-b.   The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

16.   Epstein completed his home confinement on July 21, 2010. Ex. 3 at 118. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18.

**RESPONSE:** The Government does not dispute the first sentence of this paragraph. The Government disputes that the information set forth in the second sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

16-a.   The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-

208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

17.     On July 22, 2010, the Florida Offender Registration & Tracking Services notified the USVI that Epstein had announced an intention to change his primary place of residence from Florida to the USVI and indicated a forwarding address in the USVI. Ex. 14 at VI-JPM-000012219-12220. On July 22, 2010, USVI contacted the Florida Sex Offender Unit to obtain information about Epstein's charges. Ex. 14 at VI-JPM-000012207. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18.

**RESPONSE:** The Government disputes that the information set forth in this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39.

18.     On August 9, 2010, Epstein registered as a sex offender as a permanent resident of the USVI. Ex. 14 at VI-JPM-000012223.

**RESPONSE:** The Government disputes that the information set forth in this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. To the extent the information is material, the Government does not dispute the facts cited in this paragraph, except for JPMorgan's use of the phrase "permanent resident," which does not appear on the face of the document cited.

19.     On August 25, 2010, Epstein was designated a Level III Sex Offender in the State of New York. Ex. 17 at VI-JPM-000012226.

**RESPONSE:** The Government disputes that the information set forth in this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government disputes that the designation occurred on August 25, 2010 and offers the following additional facts:

19-a.    New York employed a different methodology of classifying sex offenders than the method set forth in the Virgin Islands statutes. Ackerman Decl., Ex. 7 at 272:8-273:24. Ellsworth Decl., Ex. 17 (Dkt. 231-23) at VI-JPM-000012226.

19-b.    The document cited in support of this statement indicates that it was signed by a New York judge on January 18, 2011.

20.    On January 26, 2017, an individual proceeding under the pseudonym "Jane Doe 43" filed a public lawsuit against Epstein in the Southern District of New York that alleged abuse by Epstein in USVI. Ex. 18 at ¶ 42. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18, 39:21-42:9.

**RESPONSE:** The Government does not dispute the first sentence of this paragraph. The Government disputes that the second sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

20-a.   The information was never communicated to the US Virgin Islands in a form and from a source sufficient to initiate an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 (Dkt. 236-7) at 167:3-170:3.

20-b.   The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

20-c.   The USVI did not monitor public dockets for mentions of Epstein, and it would be unreasonable to expect a law enforcement agency to do so. Ackerman Decl., Ex. 7 at 171:3-8; Ex. 8 at 146:6-147:8.

21.   On December 8, 2018, the Virgin Islands Daily News reported allegations that Epstein had been trafficking girls to his private island in the Caribbean. Ex. 19 at VI-JPM-000079662. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 25:17-26:18, 42:19-47:15.

**RESPONSE:** The Government disputes the accuracy of JPMorgan's description of the December 8, 2018 Virgin Islands Daily News article cited in this paragraph.  The article reports only that the FBI was previously investigating allegations of misconduct in the Caribbean. It does not describe or explain the substance of the allegations. Ellsworth Decl., Ex. 19 (Dkt. 231-24). The Government disputes that the second sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

14

21-a.   The information was never communicated to the US Virgin Islands in a form and from a source sufficient to initiate an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 (Dkt. 236-7) at 167:3-170:3.

21-b.   The Virgin Islands never received credible complaints of misconduct involving Epstein sufficient to trigger an investigation. Liu Decl., Ex. 280 (Dkt. 236-5) at 206:6-208:17; Ex. 282 (Dkt. 236-7) at 164:3-167:2; Ackerman Decl., Ex. 2 at 11:5-24, 14:17-15:9, 21:3-22:12, 28:2-5, 51:16-21, 53:2-12.

22.     On July 2, 2019, Epstein was indicted by federal grand jury in the Southern District of New York for one count of sex trafficking of minors and one count of conspiracy to commit sex trafficking of minors. Ex. 3 at iv; Ex. 21. He was arrested on July 6, 2019. Ex. 3 at iv. USVI's law enforcement agencies did not open an investigation into Epstein. Ex. 4 at 37:539:8.

**RESPONSE:** The Government does not dispute the first two sentences of this paragraph. The Government disputes that the third sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

22-a.   The Government did not initiate an investigation following his arrest out of deference to the federal government. Ackerman Decl., Ex. 9 at 167:3-170:3, 172:6-174:3.

23.     A bail hearing was held before Judge Richard Berman of the Southern District of New York on July 15, 2019. Ex. 20. At that hearing, prosecutors alleged that a search of Epstein's home and revealed "many, many, many photographs of nude and partially nude women and girls who appear to be young." Ex. 20 at 20:2-4. USVI's law enforcement agencies did not open an

investigation into Epstein for the same or similar offenses at that time. Ex. 4 at 25:17-26:18, 51:5-54:25.

**RESPONSE:** The Government does not dispute the first two sentences of this paragraph. The Government disputes that the third sentence of this paragraph is material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the information is material, the Government offers the following additional facts:

        23-a.   The Government did not initiate an investigation following his arrest out of deference to the federal government. Ackerman Decl., Ex. 9 at 167:3-170:3, 172:6-174:3.

        24.    In July 2019, then-Attorney General Denise George reportedly told the Virgin Islands Daily News that "there was no reason for her to investigate Epstein," because the allegations in a civil lawsuit filed in another state "[were] not sufficient to launch a local investigation." Ex. 22. In an article published following her termination in January 2023, she was quoted as saying at the time, "an investigation is not triggered because criminal activity was occurring in another jurisdiction, or another state." *Id.*

**RESPONSE:** The Government disputes that the allegations in this paragraph are material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative defenses. *See* Gov't Mot. at 27-39. To the extent the allegations are material, the Government does not dispute the allegations set forth in this paragraph.

25.     Former Governors John de Jongh and Kenneth Mapp—whose tenures covered 2007 to 2015, and 2015 to 2019, respectively—admitted that they never cared to investigate Epstein. Ex. 23 at 30:21-31:18, 33:10-21; Ex. 24 at 76:13-22, 82:1-14.

**RESPONSE:** The Government does not dispute JPMorgan's description of the time period that former Governors John de Jongh and Kenneth Mapp served in office, but does dispute JPMorgan's characterization of the cited testimony. Neither individual testified "that they never cared to investigate Epstein." Former Governor de Jongh testified only that he did not request an investigation into Epstein, nor did he contact law enforcement authorities. Ellsworth Decl., Ex. 23 (Dkt. 226-24) at 30:21-31:18, 33:10-21. The cited testimony says nothing about his motivations for his actions. The cited testimony of former Governor Mapp confirms specifically that he "didn't have any information that gave (him) cause to ask anybody to investigate Mr. Epstein." *Id.* at Ex. 24 (Dkt. 226-25) at 82:1-4. The Government further offers the following additional facts:

25-a.    Former Governor de Jongh testified that he was not aware of allegations of Epstein misconduct occurring in the Virgin Islands during his tenure, but learned more about accusations against Epstein after he left office. Ackerman Decl., Ex. 10 at 28:19-29:18, 69:21-70:19, 74:2-19, 131:6-17.

25-b.    Former Governor Mapp testified that he never received any information during his tenure as Governor indicating that Epstein was engaged in improper behavior in the Virgin Islands. Ackerman Decl., Ex. 11 at 81:1-82:1.

25-c.    Former Governor Mapp testified that he was not aware of the specifics of allegations against Epstein until after he left office. Ackerman Decl., Ex. 11 at 78:25-79:9, 83:2-22.

26.     Despite Epstein's indictment in 2019, and being aware that Epstein (in his words) "copped a plea to having sex with a hooker who was under age," current Governor Albert Bryan Jr. "turned [his] attention elsewhere" after learning that "none of [Epstein's] victims were from the Virgin Islands." Ex. 25 at 57:25-58:2, 227:1-11, 239:17-21.

**RESPONSE:** The Government disputes JPMorgan's characterization of the cited testimony. Governor Bryan's testimony was parroting the language in a "tabloid" article that counsel showed him at his deposition. Ackerman Decl., Ex. 12 at 55:24-56:10. The Government further offers the following additional facts:

26-a.   Governor Bryan testified that he was aware when meeting with Epstein that Epstein had pled to a charge but was not aware of the specifics. Ackerman Decl., Ex. 12 at 10:17-11:8.

26-b.   Governor Bryan testified that he did not follow news regarding Epstein at the time of his arrest or thereafter. Ackerman Decl., Ex. 12 at 238:21-239:6.

27.     Epstein was found dead by suicide in the Manhattan Detention Facility on August 10, 2019. Ex. 3 at v.

**RESPONSE:** Undisputed.

28.     At no point from his arrest in 2006 until his death in 2019 did any USVI law enforcement entity open an investigation into alleged sex trafficking offenses committed by Epstein or his associates. Ex. 4 at 25:17-26:18.

**RESPONSE:** The Government disputes that the allegations in this paragraph are material to Defendant's Motion for Summary Judgment. Neither the Motion nor the Memorandum of Law cite this paragraph in support of Defendant's arguments. Additionally, the Government's investigative decisions cannot, as a matter of law, form a basis for JPMorgan's affirmative

defenses. *See* Gov't Mot. at 27-39. To the extent the allegations are material, the Government does not dispute the allegations set forth in this paragraph.

29.     USVI "does not possess formal policies or procedures relating to Suspicious Activity Reports" and "did not enter into any formal Memoranda of Understanding with the Financial Crimes Enforcement Network that would have permitted [USV] access to [Suspicious Activity Reports]." Ex. 26 at 5-6. Prior to December 1, 2020, Suspicious Activity Reports concerning Epstein were not shared with USVI. Ex. 26 at 5-6.

**RESPONSE:** Undisputed.

### III. USVI'S PRIOR SETTLEMENTS

30.     After Epstein's death, on January 15, 2020, USVI brought suit against Epstein's Estate, seeking multiple forms of relief including, among others: a declaratory judgment; forfeiture and divestment of real and personal property within the USVI used to facilitated Epstein's alleged criminal enterprise as well as other proceeds from or assets used in furtherance of the alleged enterprise; civil penalties; and disgorgement of ill-gotten gains. Ex. 27 at 46-48. USVI sued the Epstein Estate in a sovereign capacity for violation of its own laws and made clear that its claims were "distinct from ... the claims of victims ...." Ex. 27 at 7, 21-48.

**RESPONSE:** The Government does not dispute the allegations in this paragraph and further offers the following additional facts:

30-a.   The Government did not assert any claims for relief under the TVPA in the action it filed against Epstein's Estate. The Government asserted claims for violation of the Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I.C. § 600 *et seq.*, and a common law claim for civil conspiracy. Ackerman Decl., Ex. 1 at 60:20-61:9; *see generally* Ellsworth Decl., Ex. 27 (Dkt. 226-28) at 21-45.

30-b.    The Government did not seek compensatory damages on behalf of Epstein's victims in the action it filed against Epstein's Estate. Ackerman Decl., Ex. 1 at 14:21-19:1; *see generally* Ellsworth Decl., Ex. 27 (Dkt. 226-28).

31.    On November 28, 2022, USVI and the Estate settled for $105 million dollars, plus half the proceeds of the sale of Little St. James Island. Ex. 28 at VI-JPM-000041944. In May 2023, USVI received $30 million in proceeds from the sale of Little St. James Island. Ex. 29.

**RESPONSE:** The Government denies that the first sentence of this paragraph accurately reflects the entirety of the settlement agreement. In addition to the amounts described above, the Government also received $450,000 paid to the credit of the Department of Planning and Natural Resources. Ellsworth Decl., Ex. 28 (Dkt. 231-28) at 4. The Government disputes the second sentence of this paragraph, which is based upon impermissible hearsay and which contradicts record testimony. Ackerman Decl., Ex. 1 at 32:21-33:4; 55:7-21. The Government offers the following additional facts:

31-a.    The Settlement Agreement provides that proceeds from the sale of Little St. James "shall be provided to a trust fund . . . to fund projects, services, counseling programs and activities that help Virgin Islands residents or inhabitants who are victims of sexual assault, sex trafficking, human trafficking, sexual misconduct and child sexual abuse." Ellsworth Decl., Ex. 28 (Dkt. 231-28) at 4.

31-b.    The Government intends to use a significant portion of the settlement funds, including proceeds from the sale of Little St. James, on projects consistent with the terms of the settlement agreement, including victim services (such as counseling) for victims of sexual assaults, sex trafficking, human trafficking, sexual misconduct, and sexual abuse. Ackerman Decl., Ex. 1 at 45:22-46:13; 55:7-57:3.

32. ██████████████████████████████████████████

████████████████████ Ex. 30 at VI-JPM-000041936. ██████████████

█████████████████████████████████████████████████

██████████████████████████ *Id.* █████████████████████████

████ *Id.*

**RESPONSE:** ███████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████ Ellsworth Decl., Ex. 30 (Dkt. 231-29) at 1. The

Government offers the following additional fact:

32-a. █████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████ Ellsworth Decl., Ex. 30 (Dkt. 231-29) at 1.

## IV.   JPMC'S INQUIRIES REGARDING A FEDERAL INVESTIGATION

33.     In summer 2010 and early 2011, media reports suggested that there may have been

a current investigation into Epstein. Ex. 31; Ex. 15; Ex. 32.

**RESPONSE:** The Government does not dispute this paragraph.

34. ████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ Ex. 33. ██████████████████████████████. *Id.* █████████████

██████████████████████████████████████████████████████

██ *Id.*

**RESPONSE:** The Government does not dispute the first or third sentences of this paragraph. The Government disputes Ellsworth Decl. Ex. 33 (Dkt. 231-31) supports the allegation ████████████

██████████████████████████████████████████████████████. The Government offers the following additional facts:

34-a.   On January 20, 2011, Lesley Groff emailed Rosa Da Silva, Subject: Jeffrey Epstein-Ken Starr, and said: "Jeffrey requested I send you Ken Starr's office phone number at Baylor University." Ackerman Decl. Ex. 13 at –833. Rosa Da Silva forwarded the email to Stephen Cutler. *Id.*

34-b.   Langford testified that the point of the meeting with Starr was, at the request of Jes Staley, to have Starr explain why it was that he thought Epstein's plea agreement would be tossed out. Ackerman Decl. Ex. 14 at 494:22-495:2.

34-c.   Langford did not think meeting with Kenneth Starr was going to change his mind nor did it change his mind about exiting Epstein. *Id.* at 391:23-392:10, 420:9-13.

34-d.   Langford testified the conversation went the way he expected for a criminal defense attorney representing Epstein, and that it was the only time he ever spoke with a defense attorney about a client relationship. *Id.* at 395:2-397:6.

34-e.   Langford does not recall asking Kenneth Starr any questions because "it was mostly listening to Ken Starr." *Id.* at 394:15-21.

34-f.   Schwartz and Langford did not get information from Starr about Epstein's cash withdrawals, his wire transfers to Eastern European women, or his payments to ████████. *Id.* at 396:3-15.

35.     On March 9, 2011, Jonathan Schwartz discussed with Stephen Cutler, then-General Counsel for JPMC, the need to determine where "there's actually a live federal investigation" into Epstein. Ex. 34 at JPM-SDNYLIT-00274529.

**RESPONSE:** The Government does not dispute that on March 9, 2011, Jonathan Schwartz emailed Stephen Cutler. Ellsworth Decl. Ex. 34 (Dkt. 226-35) at –528-29. The Government disputes JPMorgan's characterization of the email as a discussion regarding "the need to determine" whether "there's actually a live federal investigation." *Id.*  Schwartz emailed Stephen Cutler and said: "It is all very unseemly (to say the least) and doesn't exactly make me think of the statement from JPM on many an executive's wall. *I would like to know* nonetheless if there's actually a live federal investigation (via Lefkowitz or the USAO). Also, I have no idea what the standards and precedents are within PB. . . . Wouldn't want to single this client out. But all in all, not one good thing about this." *Id.*

36.     On March 15, 2011, Jonathan Schwartz contacted Jay Lefkowitz, Epstein's attorney, to inquire whether there was any such investigation. Mr. Lefkowitz explained that he and Epstein had heard nothing to suggest that there was a current FBI or other law enforcement agency investigation. Ex. 34 at JPM-SDNYLIT-00274528. As to any suggestion in the media of an ongoing investigation, "according to Jay, [they] don't seem to have any basis." *Id.*

**RESPONSE:** The Government does not dispute the first sentence of this paragraph. The Government disputes the second and third sentences of this paragraph as incomplete representations of the conversation between Schwartz and Lefkowitz. Ellsworth Decl. Ex. 34 (Dkt. 226-35) at –528.  Schwartz said: "Spoke with Jay. . . . Said that he and Epstein have heard nothing to suggest that there is a current FBI or other law enforcement investigation. Believes any pre-plea conduct is subsumed within plea/NPA. ***Acknowledges that there could be current investigation***

*he doesn't know about* but doesn't think likely." *Id*. (emphasis added).  The Government offers the following additional facts:

36-a.   Stephen Cutler testified regarding this email: "I read this to have him say neither he nor his client is aware of such an investigation. That doesn't definitely mean that there wasn't." Ackerman Decl. Ex. 15 at 381:1-382:5.

36-b.   In March 2011, JPMorgan's General Counsel, Steve Cutler, wrote to Jonathan Schwartz (General Counsel Investment Bank) that the news reports "seem to be pretty definitive about the existence of a current investigation." Ellsworth Ex. 34 at –527.

37.   On or about March 22, 2011, Jonathan Schwartz spoke to the United States Attorney for the Southern District of Florida, who did not disclose any investigation into Epstein. Ex. 35; Ex. 36 at 18.

**RESPONSE:** The Government does not dispute that on or about March 22, 2011, Jonathan Schwartz spoke to the United States Attorney for the Southern District of Florida. Ellsworth Decl. Ex. 35 (Dkt. 226-36). The Government disputes the remainder of this paragraph to the extent it suggests the United States Attorney said there was no investigation into Epstein. The Government offers the following additional facts:

37-a.   Prior to speaking to the United States Attorney for the Southern District of Florida, Schwartz told Cutler, "Not sure he'd tell me anything." Ellsworth Ex. 34 (Dkt. 226-35).

37-b.   On July 29, 2010, *The Daily Beast* reported that "The U.S. Attorney General's Office in Florida (said) that it is against policy to confirm or deny the existence of an investigation." Liu Decl. Ex. 105 (Dkt. 227-5) at -903.

37-c.   Jonathan Schwartz testified regarding his conversation with the U.S. Attorney in the Southern District of Florida: "I don't have a recollection of speaking to him. I

know there's later e-mails in which I'm reporting that I did, but I – even having seen that – those e-mails saying I spoke to him, I don't recall speaking to him." Ackerman Decl. Ex. 16 at 51:11-52:1.

38.    JPMC also reached out to the FBI to ask for a contact at the agency who may have been working on any ongoing investigation into Epstein. The FBI never returned the phone call. Ex. 36 at 18; Ex. 37 at 151:19-152:14; 329:5-330:21.

**RESPONSE:** The Government does not dispute this paragraph except to the extent it suggests the FBI confirmed the lack of an investigation and offers the following additional facts:

38-a.    Disclosing information concerning ongoing criminal, civil, or administrative investigations is against DOJ policy: "DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations. . . . DOJ personnel shall not respond to questions about the existence of an ongoing investigation or comment on its nature or progress before charges are publicly filed." Ackerman Decl. Ex. 17.

39.    Between 2006 and 2018, JPMC did not receive an Epstein-related subpoena from any federal law enforcement investigation. Ex. 38 at 136:23-137:11; Ex. 39 at ¶ 30 n.28; Ex. 40 at JPM-SDNYLIT-W-00031038.

**RESPONSE:** The Government disputes this paragraph to the extent that Bear Stearns received a subpoena in 2007 and JPMorgan acquired Bear Stearns in 2008. The Government offers the following additional facts:

39-a.    ███████████████████████████████████████████████████
███████████████████████████████████████████████ Liu Decl. Ex. 125 (Dkt. 227-25) at –074.

39-b.    In 2008, JPMorgan acquired Bear Stearns. Liu Decl. Ex. 122 (Dkt. 227-22) at 1; Liu Decl. Ex. 123 (Dkt. 227-23) at 285:8-286:2.

39-c.    ██████████████████████████████████████████ Gov't SUF ¶171.

39-d.    After Bear Stearns was acquired by JPMorgan, Arthur Middlemiss assumed a similar role with JPMorgan AML compliance, working with Langford. *Id*. ¶172.

39-e.    While at Bear Stearns, Middlemiss was the AML Officer responsible for responding to a 2007 subpoena by the federal prosecutors investigating Epstein for federal sex crimes. *Id*. ¶173.

39-f.    On January 10, 2011, Ryan e-mails Langford, DeLuca, and Nichols, Subject: Re: Jeffrey Epstein: "Seems JPMC never was served a subpoena, which I find odd since we were his #1 bank and actually Bear got one in 07. Rich is getting me the AUSA correspondence and we will compare their ask of Bear (something about $1000 and $100,000 transactions were of interest to them)(.)" Liu Decl. Ex. 127 (Dkt. 227-27) at -192.

39-g.    ████████████████████████████████████████████
████████████████████████████ Liu Decl. Ex. 128 (Dkt. 227-28) at -247. ██████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███ Liu Decl. Ex. 129 (Dkt. 227-29) at -248, -251-52; Liu Decl. Ex. 125 (Dkt. 227-25) at -075.

39-h.    JPMorgan received a subpoena in 2019 from law enforcement. Ackerman Decl. Ex. 18 at 136:23-137:11.

**V.    JPMC'S CTRS ███████**

26

A.      **Cash Transaction Reports.**

40.      Between 2002 and 2013, JPMC filed approximately 150 CTRs related to Epstein and his accounts in which JPMC identified its relationship with Epstein, flagged his large cash withdrawals, and ████████████████████████████████████████████ Ex. 39 at ¶ 95; *see generally* Ex. 41.

**RESPONSE:** The Government does not dispute that JPMorgan filed approximately 150 CTRs related to Epstein's affiliates and entities between 2002 and 2013. Ellsworth Decl. Ex. 39 (Dkt. 231-34) at ¶ 95; Ellsworth Decl. Ex. 41 (Dkt. 231-36). ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ellsworth Decl. Ex. 41 (Dkt. 231-36). ████████████████

██████████████████████████ *Id.* The Government offers the following additional facts:

40-a.   ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ Ackerman Decl. Ex. 14 at 233:22-234:23

40-b.   JPMorgan's 30(b)(6) witness, Francis Pearn, testified: "The CTR is merely a record of cash transactions above the 10,000 threshold. The suspicious activity report . . . is when the bank believes that there is potentially suspicious activity involving a transaction or a series of transactions. . . . Structuring is not involved in CTRs. Structuring is a crime . . ." Ackerman Decl. Ex. 18 at 119:16-120:7. JPMorgan's 30(b)(6) witness also agreed that "structured transactions are reported in SARs, not CTRs." *Id.* at 120:13-15.

40-c.   CTRs do not reflect potential structuring. *Id.*; Ackerman Decl. Ex. 4 ¶ 5.53-5.54.

27

40-d.   ███████████████████████████████████████

███████   Ellsworth Decl. Ex. 41 (Dkt. 231-36).

41.     Seventy-three of these CTRs were filed before Epstein was arrested in July 2006. Ex. 41.

**RESPONSE:** The Government does not dispute this paragraph, subject to the additional facts *supra* 40-a – 40-b.

42.     Law enforcement never contacted JPMC in response to any CTR. Ex. 38 at 136:23-137:11; Ex. 39 at ¶ 30 n.28.

**RESPONSE:** The Government disputes this paragraph accurately summarizes, nor is it supported by, the underlying testimony and report. Specifically, the paragraph omits the following:

42-a.   JPMorgan's 30(b)(6) witness, Francis Pearn, testified:

Q: Can you tell me who else you've worked for and when?

A: So 1990 through 2001, JPMorgan; 2001 through 2006, Bank of America; 2006 to 2009, Lehman Brothers; and then 2009 to today, JPMorgan.
. . .

Q: Was JPMorgan ever contacted in regards to any government investigation relating to Jeffrey Epstein?

Mr. Butts: Objection. You may answer as a 30(b)(1) witness.

A: We received, in July of 2019, a subpoena from the Southern District of New York regarding Jeffrey Epstein.

Q: Anything before July of 2019?

A: I do not believe so.

Ackerman Decl. Ex. 18 at 13:11-16, 136:23-137:11.

42-b.   JPMorgan's expert Teresa Pesce's report, June 23, 2023, states:



28



Ellsworth Decl. Ex. 39 (Dkt. 231-34) ¶ 30 n.28. (emphasis added).

**B.**

43.

Ex. 39 at ¶¶ 19-21, 30.

**RESPONSE:** The Government disputes this paragraph and offers the following additional facts:

43-a.

. Ellsworth Decl. Exs. 42-44 (Dkts. 231-44, 231-45, 231-46).

44.

Ex. 42.

**RESPONSE:** The Government does not dispute that

Ellsworth Decl. Ex. 42 (Dkt. 231-44).

*Id.* The Government disputes the remainder of this paragraph and offers the following additional facts:

44-a.  ███████████████████████████. *Id.* ██████████████████

██████████████████████████████████████████████

██████████████████ Ackerman Decl. Ex. 4 ¶ 5.253.

44-b.  ████████████████████████████ Ellsworth Decl. Ex.

42 at -790_001 (Dkt. 231-44).

44-c.  ██████████████████████████████████

████████████████████ *Id.*

44-d.  ██████████████████████████████████

███████ *Id.*

44-e.  ██████████████████████████████████

████████████████████████ *Id.*

44-f.  ██████████████████████████ *Id.*

44-g.  ██████████████████████████████████

██████████████████████████████████████████████

████████ Ellsworth Decl. Ex. 42; Ackerman Decl. Ex. 4 ¶ 5.253.

45.  ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████ Ex. 43.

**RESPONSE:** The Government does not dispute that ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████



█████████████████████████████ Ellsworth Decl. Ex. 43 (Dkt. 231-45). The Government

disputes the remainder of this paragraph and offers the following additional facts:

45-a. ████████████████████████ *Id.* ████████████████████

███████████████████████████████████████████████████████

███████████████████████ Ackerman Decl. Ex. 4 ¶ 5.253.

45-b. ███████████████████████████████████████

███████████████████████████ Ellsworth Decl. Ex. 43 (Dkt. 231-45).

45-c. ███████████████████████████████████████

████████ *Id.*

45-d. ███████████████████████████████████████

███████████████████████████████ *Id.*

45-e. ███████████████████████████████████████

███████████████████████████████████████████████████████

███████ Ellsworth Decl. Ex. 43; Ackerman Decl. Ex. 4 ¶ 5.253.

45-f. ███████████████████████████████████████

██████████████████████████████ Ellsworth Decl. Ex. 43 (Dkt. 231-45).

46. ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ Ex. 44.

**RESPONSE:** The Government does not dispute this paragraph and offers the following additional

facts:

46-a. ███████████████████████ Ellsworth Decl. Ex. 44 (Dkt. 231-

46). ████████████████████████████████████████

████████████████████████████ Ackerman Decl. Ex. 4 ¶

5.253.

46-b. ████████████████████████████

████████████████ Ellsworth Decl. Ex. 44 (Dkt. 231-46).

46-c. ████████████████████████████

████████ *Id.*

46-d. ████████████████████████████

██████████████████ *Id.*

46-e. ████████████████████████████

████████████ *Id.* at -791.003.

46-f. ████████████████████████████

████████████████████████████████████████

████████ Ellsworth Decl. Ex. 44; Ackerman Decl. Ex. 4 ¶ 5.253.

46-g. ████████████████████████████

████████████████████████ Ellsworth Decl. Ex. 44 (Dkt.

231-46).

47. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



███████████████████████████████████████████████████████████

█████████████████████ Ex. 45.

**RESPONSE:** The Government does not dispute the first, second, or third sentences of this

paragraph. The Government disputes that █████████████████████████████████████

████████████████████████████████████ and offers the following additional facts:

   47-a.   ████████████████████████████████████████████████

████████████████████████████████████████████████████████ *Supra*

¶¶5-6, 8, 11.

   47-b.   ████████████████████████████████████████████████

█████████████████████████████████████████████████████ Ellsworth

Decl. Ex. 45 (Dkt. 231-47); Gov't Mot. at 19-21, 24-27.

   47-c.   ████████████████████████████████████████████████

████████████████████ Ellsworth Decl. Ex. 45 (Dkt. 231-47); Gov't Mot. at 19-21, 24-27.

   47-d.   ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████ Ellsworth Decl. Ex. 45 (Dkt. 231-47); Gov't Mot. at 19-21, 24-27.

   48.   █████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████ Ex. 46 at JPM-SDNYLIT-W-00019086-00019096.

**RESPONSE:** The Government does not dispute the first two sentences of this paragraph.  The

Government disputes ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ and offers the following additional facts:

48-a.    JPMorgan did not seek an explanation for Epstein's excessive cash withdrawals until 2011. ██████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ Ellsworth Decl. Ex. 46 (Dkt.231-48); Gov't Mot. at 19 and Part I(B)(i)(d); Gov't SUF ¶¶241, 101, 98-99, 100-106.

48-b.    ████████████████████████████████████████████

Ellsworth Decl. Ex. 46 (Dkt.231-48).

48-c.    ████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ Ellsworth Decl. Ex. 46 (Dkt. 231-48); Gov't Mot. at 19-21, 24-27.

48-d.    ████████████████████████████████████████████

███████████████████ Ellsworth Decl. Ex. 46 (231-48); Gov't Mot. at 19-21, 24-27.

48-e.    ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ Ellsworth Decl. Ex. 46 (231-48); Gov't Mot. at 19-21, 24-27.

49.    ███████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ Ex. 47 at JPM-

SDNYLIT-W-00018180-00018196.

**RESPONSE:** The Government does not dispute this paragraph and offers the following additional

facts:

49-a.    ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ackerman Decl. Ex. 19.

49-b.    USA Patriot Act Section 314(b) allows financial institutions to share

information to identify and report to the federal government activities that may involve money

laundering and financial crimes. Ackerman Decl. Ex. 20.

49-c.    Banks must provide notice to the U.S. Department of the Treasury before

sharing information under Section 314(b). *Id.*

49-d.    ███████████████████████████████

████████████████████████████████████████████████

Ellsworth Decl. Ex. 47 (Dkt.231-49) at -196.

49-e.    ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████ *Id.*

49-f.    In 2007, JPMorgan's Risk Management had identified at least two of the

wires ████████████████ and notified the General Counsel of the Private Bank. Liu Decl.

Ex. 63 (Dkt. 225-63).

49-g.   ██████████████████████████████████████

███████████████████ Ellsworth Decl. Ex. 47 (Dkt.231-49) at -196; Gov't SUF ¶ 218

& Figure 9.2.

50.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ Ex. 48 at JPM-SDNYLIT-W-00002185-00002196.

**RESPONSE:** The Government does not dispute this paragraph and offers the following additional

facts:

50-a.   ███████████████████████████████████

███████████████████████████ Ackerman Decl. Ex. 19.

50-b.   ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ Ellsworth Decl. Ex. 48 (Dkt.231-54) at -195.

50-c.   ███████████████████████████████████

████████████████████████████████████████████

████████ Ackerman Decl. Ex. 19 at 5-14.

50-d.  ███████████████████████████████████████

█████████████  Ellsworth Decl. Ex. 48 (Dkt.231-54) at -195; Gov't SUF ¶¶ 224-25 & Figure

9.

51.  ███████████████████████████████████████

█████  Ex. 38 at 136:23-137:11; Ex. 39 at ¶ 30 n.28.

**RESPONSE:** The Government disputes this paragraph accurately summarizes, nor is it supported

by, the underlying testimony and report. Specifically, the paragraph omits the following:

>51-a.    JPMorgan's 30(b)(6) witness, Francis Pearn, testified:
>
>Q: Can you tell me who else you've worked for and when?
>
>A: So 1990 through 2001, JPMorgan; 2001 through 2006, Bank of America; 2006 to 2009, Lehman Brothers; and then 2009 to today, JPMorgan.
>
>. . .
>
>Q: Was JPMorgan ever contacted in regards to any government investigation relating to Jeffrey Epstein?
>
>Mr. Butts: Objection. You may answer as a 30(b)(1) witness.
>
>A: We received, in July of 2019, a subpoena from the Southern District of New York regarding Jeffrey Epstein.
>
>Q: Anything before July of 2019?
>
>A: I do not believe so.

Ackerman Decl. Ex. 18 at 13:11-16, 136:23-137:11.

>51-b.    JPMorgan's expert Teresa Pesce's report, June 23, 2023, states:



Ellsworth Decl. Ex. 39 (Dkt. 231-34) ¶ 30 n.28. (emphasis added).

## VI.     USVI'S DAMAGES CLAIMS

52.      USVI's remaining claims in this case are being pursued as *parens patriae*. In its initial response to JPMC's interrogatories regarding its damages, USVI answered that it sought damages "as suffered by the Government and/or Jeffrey Epstein's victims." Ex. 49 at 4. On May 31, 2023, USVI supplemented its response and stated that it was "no longer seeking proprietary damages of any kind" but was instead seeking damages "on behalf of victims and residents of the United States Virgin Islands." Ex. 49 at 5-6. On July 19, 2023, USVI further supplemented its response and stated that it now seeks damages "as suffered by Jeffrey Epstein's victims." Ex. 49 at 6.

**RESPONSE:** The Government does not dispute the first sentence of this paragraph. The Government disputes that the quotations above accurately summarize the contents of the Government's answers to this Interrogatory. In particular, the notion that the Government shifted an explanation from seeking damages "on behalf of victims and residents of the United States Virgin Islands" to seeking damages "as suffered by Jeffrey Epstein's victims" is not supported by the underlying document. As noted below, both the Government's Second Supplemental Response and its Third Supplemental Response confirmed that the Government was seeking damages "as suffered by Jeffrey Epstein's victims." Specifically, the paragraph omits the following information:

52-a.   The Government's initial response to the Interrogatory read, in pertinent part, as follows:

> The Government seeks the following damages from Defendant: compensatory, consequential, general, and nominal damages, as suffered by the Government and/or Jeffrey Epstein's victims, punitive and exemplary damages, all against JPMorgan in amounts to be awarded at trial; treble damages against Defendant in an amount to be determined at trial, including, but not limited to, treble damages of the at least $80.5 million in

> tax revenue lost to the Virgin Islands as a result of the fraud carried out by Epstein's entity Southern Trust Company (previously known as Financial Trust Co. Inc.); and restitution and disgorgement of all ill-gotten gains to the Government to protect the rights of victims and innocent persons in the interest of justice in amounts to be determined at trial.

Ellsworth Decl., Ex. 49 (Dkt. 226-50) at 4. The response further noted that the Government was also seeking "civil penalties, an injunction to prevent further illegal conduct and any concealment of illegal conduct, attorneys' fees and costs in amounts to be determined after trial; and any such other relief as the Court may deem just and proper." *Id.*

52-b.   The Government's Second Supplemental Response to the Interrogatory read, in pertinent part, as follows:

> In light of the Court's Opinion and Order on Defendant's Motion to Dismiss (Dkt. 130) and the rulings contained therein, the Government is no longer seeking proprietary damages of any kind in this action. The Government continues to pursue this action as *parens patriae* and, as previously advised, seeks compensatory damages and punitive damages on behalf of victims and residents of the United States Virgin Islands. . . .
>
> As noted above, the Government continues to seek the following damages from Defendant: compensatory, consequential, general, and nominal damages, as suffered by Jeffrey Epstein's victims, punitive and exemplary damages, all against JPMorgan in amounts to be awarded at trial; and restitution and disgorgement of all ill-gotten gains to the Government to protect the rights of victims and innocent persons in the interest of justice in amounts to be determined at trial.

Ellsworth Decl., Ex. 49 (Dkt. 226-50) at 6 (underlined emphasis added). The response further noted that the Government was also seeking "civil penalties, an injunction to prevent further illegal conduct and any concealment of illegal conduct, attorneys' fees and costs in amounts to be determined after trial; and any such other relief as the Court may deem just and proper." *Id.*

52-c.   The Government's Third Supplemental Response to the Interrogatory read, in pertinent part, as follows: "The Government seeks compensatory, consequential, general, and nominal damages, as suffered by Jeffrey Epstein's victims, and punitive damages, all against

JPMorgan in amounts to be determined at trial based on fact and expert witness testimony and documentary evidence." Ellsworth Decl., Ex. 49 (Dkt. 226-50) at 6-7. The Response provided further information concerning the calculation of civil penalties and disgorgement/restitution. *Id.*

53.    USVI retained Bridgette Carr as a purported expert in sex trafficking. Ex. 50 at ¶ 1. In her expert report, Ms. Carr recommends calculating victims' "compensatory damage[s] for emotional distress" and using that amount to set up a victim compensation fund to "compensate for the harms suffered by victims." Ex. 50 at ¶¶ 218-19.

**RESPONSE:** The Government does not dispute that it retained Professor Carr as an expert in sex trafficking and that Professor Carr recommends setting up a victim compensation fund to compensate for the harms suffered by victims.  The Government disputes that the paragraph accurately summarizes the substance of her opinions. In her report, Professor Carr states: "One way to think about the amount needed in such a fund would be to identify an average victim compensation amount and approximate the number of victims trafficked to the U.S. Virgin Islands. . . . This does not mean I recommend giving each victim who was trafficked in the U.S. Virgin Islands this amount; rather, it is my opinion this is a reasonable proxy for assessing how much money per victim would be needed to set up such a fund." Ellsworth Decl., Ex. 50 (Dkt.231-55) at ¶¶ 218-219.

54.    At the June 26, 2023, hearing to preliminarily approve the class settlement in *Doe 1 v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10019-JSR, the Court asked counsel for the USVI: "[H]ere we have two very large settlements. ... [W]hat point would there be in having the Virgin Islands say, well, [']we're going to take a little bit of what we got for the injuries that were visited on the Virgin Islands and add that to what the victims got, even though they have agreed through the settlement to release JPMorgan from any further recovery?[']" Ex. 51 at 9:20-10:6.

**RESPONSE:** The Government disputes that the allegations in this paragraph constitute a material fact. These allegations consist largely of a question asked by the Court, not a fact witness, on a matter of law. Without conceding that any of these questions or statements made at a hearing by the Court and Counsel are material facts, the Government further offers the following additional statements from the same Transcript of Proceedings:

54-a.    Counsel for the Government responded to the Court's query as follows: "Let me give you a real world example that I think will happen here. This is a claims-made settlement, but the entire class is giving a release. I think we know, given the history of these kinds of cases, that we're not going to see every victim file a claim. I hope they do, and I hope that solves the problem, but I don't think all 250 or 300 victims will file. Many of them are foreign nationals. Many of them are going to be difficult to find, despite all the efforts on notice. What's going to happen is those individuals will receive no compensation, and they will have released all of their claims. I think the Virgin Islands is entitled to protect that." Ellsworth Decl. Ex. 51 (Dkt. 226-52) at 10:7-19.

54-b.    The Court responded to Counsel for the Government's real-world example as follows: "You've raised some interesting points, which I need to consider. I do think the time to raise this – I mean, you will talk with each other – but is at the time of objections to the final approval of the settlement, so not in some subsequent time thereafter." Ellsworth Decl. Ex. 51 (Dkt. 226-52) at 10:20-24.

55.    USVI has also submitted expert reports that discuss criminal penalties under the United States Sentencing Guidelines and ███████████████████████████. Ex. 52; Ex. 53. The former prosecutor, Jonathan Rusch, seeks to tell this Court how to calculate a TVPA fine under the United States Sentencing Guidelines, Ex. 52, while the former SEC Commissioner,

Robert Jackson Jr., ██████████████████████████████ Ex. 53. USVI has separately

"recognize[d]" that such "penalties" "are not damages." Ex. 49 at 7.

**RESPONSE:** The Government does not dispute that it retained former prosecutor Jonathan Rusch

and former SEC Commissioner Robert Jackson Jr. as experts.  The Government disputes that the

paragraph accurately summarizes the substance of their opinions. The Government further disputes

that the paragraph accurately summarizes the Government's Third Supplemental Response to

JPMorgan's Interrogatories. Specifically, the paragraph omits the following information:

55-a.   In his report, Jonathan Rusch stated: "Because Count One charges

JPMorgan with tortious conduct in violation of a federal criminal offense, 18 U.S.C. § 1591(a)(2),

that fine and punitive damages *may be calculated with reference* to the United States Sentencing

Guidelines . . . I have used the 2021 edition of the Sentencing Guidelines Manual (Manual) to

*suggest* those calculations." Ackerman Decl. 4 ¶ 7.1.

55-b.   In his report, Robert Jackson Jr. states:

during my time on the Commission I reviewed and voted on enforcement
actions related to financial institutions' failure to file SARs. . . . ████████
████████████████████████████████████████████████

Table 2 below identifies and summarizes a selection of cases involving
(relief other than damages or monetary penalties). . . . Appropriate remedies
may be informed by ████████████████████████████████

Ellsworth Decl. Ex. 53 (Dkt. 231-57) ¶¶ 67-68, 74.

55-c.   The Government's Third Supplemental Response to the Interrogatory reads,

in pertinent part, as follows: "The Government seeks compensatory, consequential, general, and

nominal damages, as suffered by Jeffrey Epstein's victims, and punitive damages, all against

JPMorgan in amounts to be determined at trial based on fact and expert witness testimony and

documentary evidence." Ellsworth Decl., Ex. 49 (Dkt. 226-50) at 6-7. The Response provided further information concerning the calculation of civil penalties and disgorgement/restitution. *Id.*

Dated:  August 7, 2023

**ARIEL SMITH, ESQ.**
**ATTORNEY GENERAL**

By counsel,

/s/ *David I. Ackerman*
**DAVID I. ACKERMAN**
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Tel: (202) 849-4962
dackerman@motleyrice.com

**VENETIA VELAZQUEZ**
Admitted *Pro Hac Vice*
Acting Chief, Civil Division
Virgin Islands Department of Justice
Office of the Attorney General
213 Estate La Reine, RR1 Box 6151
Kingshill, St. Croix
U.S. Virgin Islands 00850
Tel.: (340) 773-0295 Ext. 202481
venetia.velazquez@doj.vi.gov

**LINDA SINGER** (Admitted *Pro Hac Vice*)
**MIMI LIU** (Admitted *Pro Hac Vice*)
**PAIGE BOGGS** (Admitted *Pro Hac Vice*)
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Tel: (202) 232-5504
lsinger@motleyrice.com
mliu@motleyrice.com
pboggs@motleyrice.com

*Attorneys for Plaintiff Government of the*
*United States Virgin Islands*