# EXHIBIT 1

```
                       CONFIDENTIAL
            UNITED STATES DISTRICT COURT FOR THE

              SOUTHERN DISTRICT OF NEW YORK

              CASE NUMBER:  22-CV-10904-JSR

                    ACTION FOR DAMAGES


GOVERNMENT OF THE UNITED STATES      )
VIRGIN ISLANDS,                      )
                                     )
                         Plaintiff,  )
                                     )
VS.                                  )
                                     )
JP MORGAN CHASE BANK, N.A.,          )
                                     )
                         Defendant.  )
                                     )
--------------------------------------



                       CONFIDENTIAL


              VIDEO RECORDED DEPOSITION OF

                      CHRIS TIMMONS

                  FRIDAY, JULY 14, 2023




REPORTED BY:

DENISE D. HARPER-FORDE
Certified Shorthand Reporter (CSR)
Certified RealTime Reporter (CRR)
Certified LiveNote Reporter (CLR)
Registered Professional Reporter (RPR)
Notary Public (FLORIDA)
```



```
 1           A.   Let's see if it blurs out.
 2           Q.   Yeah.  That definitely blurred
 3   out.
 4           A.   Yeah, I don't know.
 5           Q.   Oh, there we go.  Yeah.
 6                How is this?  Is there a --
 7   you know, one way we could do this is
 8   you could just take a picture with
 9   your phone and drop the picture into
10   the chat so that we would have them.
11           A.   My -- my phone isn't connected
12   to the chat.
13           Q.   Okay.
14                ATTORNEY ACKERMAN:  I think --
15   can we get them to you after the
16   deposition?
17                ATTORNEY NEIMAN:  Yeah, that's
18   fine.    But --
19                ATTORNEY ACKERMAN:  Yeah.
20                (BY ATTORNEY NEIMAN):
21           Q.   Okay.  Why don't you just read
22   them to me so we can --
23           A.   Sure.
24           Q.   -- do it at the start that
25   way.
```



```
 1         A.   So I have the agreed
 2   specification of topic 2, and then the
 3   categories of relief that were in the
 4   complaint are bullet-pointed.
 5         Q.   Okay.  So can you just read
 6   those to me?
 7         A.   Sure.  Injunctive Relief,
 8   civil penalties pursuant to 14 VIC
 9   Section --
10              (BY ATTORNEY NEIMAN):
11         Q.   I'm sorry.  Mr. Timmons, I'm
12   going to try to write this down, and
13   the Court Reporter is going to try to
14   write this down.
15              So if you could go just a
16   little bit slower, which is funny
17   coming from me because I know I talk
18   pretty fast.  But I'm going to ask you
19   to talk what seems exaggeratedly slow.
20         A.   Okay.  Injunctive Relief --
21         Q.   Thanks.
22         A.   -- civil penalties pursuant to
23   14 VIC Section 607(e) --
24         Q.   Okay.
25         A.   -- divestiture pursuant to 14
```



```
 1   VIC Section 607(a)(1) and 14 VIC
 2   Section 141 of Defendant's interests
 3   in any real and personal property used
 4   to facilitate the criminal
 5   enterprise.
 6              ATTORNEY ACKERMAN:  Peter, can
 7   I try to maybe shortcut this for him
 8   now?
 9              ATTORNEY NEIMAN:  Sure.
10              ATTORNEY ACKERMAN:
11   Mr. Timmons, are you reading from the
12   testimonial that was provided to
13   Ms. Borque?
14              THE WITNESS:  Yes.
15              ATTORNEY ACKERMAN:  Okay.  So
16   the document that Mr. Timmons is
17   reading from was marked as Exhibit 1
18   to --
19              ATTORNEY NEIMAN:  Oh.
20              ATTORNEY ACKERMAN:  -- Inais
21   Borque's deposition.
22              ATTORNEY NEIMAN:  Terrific.
23   Okay.  We can keep -- keep going.  I
24   don't have that in front of me.  So...
25              COURT REPORTER:  I need it.
```



```
 1   Borque?
 2             ATTORNEY ACKERMAN:
 3   B-O-R-Q-U-E.
 4             THE WITNESS:  It is -- it is
 5   that exhibit plus one handwritten note
 6   that the $450,000 paid to DPNR is --
 7   plans to be used for archeological
 8   preservation fund.  And that is based
 9   on my discussion with DPNR.
10             (BY ATTORNEY NEIMAN):
11        Q.   That was what Mr. Oriol told
12   you?
13        A.   That's correct.
14        Q.   Okay.  And I'm sorry.  We were
15   going through the various bullet
16   points before --
17        A.   Sure.
18        Q.   -- Mr. Ackerman --
19        A.   The next one --
20        Q.   -- chimed in.  So go ahead.
21        A.   -- forfeiture of any proceeds
22   or funds obtained by the Defendants in
23   the course of the criminal
24   enterprise --
25        Q.   Okay.
```



1        A.   -- divestiture pursuant to 14
2    VIC Section 607(a)(1) of any real
3    property or other interests used to
4    further the goals of the criminal
5    enterprise --
6        Q.   Okay.
7        A.   -- dissolution of the criminal
8    enterprise pursuant to 14 VIC Section
9    607(a)(3) and (a)(5) --
10       Q.   Okay.
11       A.   -- revocation of licenses,
12   permits and applications pursuant to
13   14 VIC Section 607(a)(4) --
14       Q.   Okay.
15       A.   -- an order placing all assets
16   and funds of the Estate into
17   receivership pursuant to 14 VIC
18   Section 607(a)(6) and 607(k) --
19       Q.   Okay.
20       A.   -- treble damages pursuant to
21   14 VIC Section 607.
22       Q.   All right.
23       A.   Those damages were the EDA
24   benefits and other equitable and
25   injunctive relief, including an award



```
 1  of fees, costs and interest.
 2          Q.  Okay.  So that's the -- is it
 3  -- have you now read what's on that
 4  testimonial --
 5          A.  No.
 6          Q.  -- guide?
 7          A.  It also has two bullet points
 8  regarding the planned usage of the
 9  settlement proceeds from the Indyke
10  action --
11          Q.  Uh-huh.
12          A.  -- $450,000 to be paid to
13  DPNR.
14          Q.  Okay.
15          A.  And the remainder of the
16  settlement payments are directed to
17  the general fund, which requires
18  appropriation consistent with Virgin
19  Islands laws.
20          Q.  Okay.  So that's the -- the
21  first document.
22              What's the second document?
23          A.  Pages 74 through 76 of the
24  complaint of in the -- of the second
25  amended complaint in the action
```



```
 1  here today, don't know the total
 2  amount that the Government of the
 3  Virgin Islands has received from the
 4  settlement?
 5        A.  I do not know the specific
 6  amount.
 7        Q.  Okay.  Can you put it in a
 8  range?
 9        A.  It would require some
10  speculation.
11        Q.  Can you explain?
12        A.  Well, I know what was due
13  under the agreement initially, but I
14  don't know whether -- whether it's
15  been received in its -- in its
16  total.
17        Q.  Do you know of any parts that
18  have definitely been received?
19        A.  I have no dollar numbers that
20  I am aware of.
21        Q.  Okay.  Do you know the amount
22  that Little St. James was sold for?
23            ATTORNEY ACKERMAN:  Object to
24  form, scope.
25            THE WITNESS:  Again, I don't
```



```
 1   have the -- I -- I don't have the
 2   specific number in front of me.  It
 3   was in the range of 27- or
 4   $28,000,000.
 5              (BY ATTORNEY NEIMAN):
 6         Q.   Okay.  And how about Greater
 7   St. James?
 8              ATTORNEY ACKERMAN:  Object to
 9   form, scope.
10              THE WITNESS:  It sold for more
11   than Little St. James.  I don't
12   remember the specific number.
13              (BY ATTORNEY NEIMAN):
14         Q.   Okay.  And let's just -- if we
15   could turn to page 3 of the settlement
16   agreement, which is Exhibit 1 to this
17   deposition.
18         A.   Okay.
19         Q.   And you'll -- I just want to
20   see if I can narrow down what's --
21   what's unknown versus what's known
22   here.  Okay, sir?  So there's a set of
23   payments that are supposed to be made
24   that are listed in items "A" through
25   "D" on page 3.  Do you see?
```



```
 1   the proposal?
 2              ATTORNEY ACKERMAN:  Object to
 3   form, scope.
 4              THE WITNESS:  The legislature
 5   -- is the legislature -- it's up to
 6   them to decide whether to act or -- or
 7   to introduce a bill or to -- to do
 8   something entirely different.
 9              (BY ATTORNEY NEIMAN):
10       Q.  Okay.  And have you done
11   anything to try to determine what the
12   legislature plans are in that
13   regard?
14              ATTORNEY ACKERMAN:  Object to
15   form, scope.  I'd also note that the
16   legislature is a separate branch of
17   Government that is not a party to this
18   action.
19              (BY ATTORNEY NEIMAN):
20       Q.  But you can answer.
21       A.  I have not.
22       Q.  Okay.  Okay.  Other than that
23   approximately $45,000,000, are there
24   any proposals, plans or the like about
25   what to do with any other portion of
```



```
 1   the proceeds of the settlement?
 2              ATTORNEY ACKERMAN:  Object to
 3   form.
 4              THE WITNESS:  In general, the
 5   plans are to -- to utilize the funds
 6   consistent with the terms of the
 7   settlement agreement, which
 8   contemplates the use of the proceeds
 9   for law enforcement, for victim
10   services or things like counseling,
11   other -- other services for victims of
12   -- of sexual violence and sexual
13   misconduct.
14              (BY ATTORNEY NEIMAN):
15        Q.   Okay.  And I understand that's
16   sort of a general description.  But
17   are there any concrete plans?
18              ATTORNEY ACKERMAN:  Object to
19   form.
20              THE WITNESS:  Again, unless
21   and until the -- the legislature
22   appropriates funds for a specific
23   purpose, we're putting the cart before
24   the horse.  So no.
25              (BY ATTORNEY NEIMAN):
```



```
 1   settlement agreement, Exhibit 1, and
 2   if you look at subsection 3(a), 3(e).
 3   See that?
 4          A.   "E" as in echo?
 5          Q.   "E" as in echo, yes.
 6          A.   Yes.  Okay.
 7          Q.   That is talking about what
 8   will happen with the LSJ payment.
 9          A.   That's right.
10          Q.   Has a trust fund been
11   established yet?
12          A.   I believe it's in the works.
13          Q.   Does that mean --
14          A.   If it has not, I -- I know
15   that there have been discussions about
16   establishing it.  Whether that is
17   complete, I am -- I'm not aware, but I
18   know that it is at least underway.
19          Q.   And have any funds been
20   received for funding that trust?
21          A.   I do not know.
22          Q.   Okay.  And have any plans been
23   put in place for what that trust will
24   do with the proceeds if and when they
25   are received?
```



1       A.   Again, even -- even those
2  funds held in trust will be subject to
3  appropriation under 33 VIC Section
4  3101.
5       Q.   So as you understand it, this
6  statement that the payment shall be
7  provided by the Government to a trust
8  fund to be established depends on when
9  the legislature chooses to do that?
10      A.   Now the fund -- the -- the re-
11 -- when the -- the funds will be
12 deposited into a trust account, and it
13 will be governed by the restrictions
14 in subsection (e).  It will be -- it
15 will -- but it will require
16 appropriation for projects, services,
17 counseling programs and activities
18 that help Virgin Islands residents or
19 inhabitants or victims of sexual
20 assaults, sex trafficking, human
21 trafficking, sexual misconduct, and
22 sexual abuse.
23           But to be clear, all of those
24 -- all of those categories of use will
25 be subject to an appropriation before



```
 1  -- before those -- those can be --
 2  those expenditures can be made and
 3  those programs can be created.
 4         Q.  I want to see if I understand
 5  this as a matter of Virgin Islands
 6  law.  If the legislature decided, you
 7  know what, we don't want to spend that
 8  money as described in subparagraph
 9  (e), we'd like to spend it on a race
10  track, does the legislature have that
11  power?
12              ATTORNEY ACKERMAN:  Object to
13  form, scope, calls for a legal
14  conclusion.
15              THE WITNESS:  Well, I -- I
16  think it exceeds the scope.  But I'll
17  say this:  I think the Constitution of
18  the United States trumps any -- any
19  Virgin Islands legislative
20  prerogative, and that would be an
21  impairment of contract.
22              (BY ATTORNEY NEIMAN):
23         Q.  Based on what?
24         A.  Pardon?
25         Q.  Based on what?
```



```
 1  to form.
 2              THE WITNESS:  In these early
 3  -- in these early days, you are
 4  correct.
 5              (BY ATTORNEY NEIMAN):
 6        Q.  Early days.  When was Little
 7  St. James sold?
 8        A.  It's been within the last 90
 9  days, I believe.
10              ATTORNEY NEIMAN:  Okay.  Okay.
11  Mr. Timmons, thank you for your time.
12  I have no further questions at this
13  time.
14              THE WITNESS:  Thank you.
15              ATTORNEY ACKERMAN:
16  Mr. Timmons, I have one question for
17  you.
18                  CROSS EXAMINATION
19              (BY ATTORNEY ACKERMAN):
20        Q.  In the Indyke action, did the
21  Government assert any claims for
22  relief under the TVPA?
23        A.  No.  The Indyke action was
24  focused upon the -- the Virgin Islands
25  CICO law and included a few common law
```



```
 1  claims.  It did not include any -- any
 2  Federal law claims.
 3       Q.  And to be clear, when I'm
 4  using the term "Indyke action," I'm
 5  referring to the Government's action
 6  against the Epstein Estate.  Is that
 7  how you understand it as well?
 8       A.  Yes.  The -- the civil action
 9  number ST2020-CV-0014.
10           ATTORNEY ACKERMAN:  Thank you.
11  I have nothing further.
12           ATTORNEY NEIMAN:  Just very
13  quickly, Mr. Timmons, you -- just in
14  follow-up on that last question that
15  you were asked.
16                REDIRECT EXAMINATION
17           (BY ATTORNEY NEIMAN):
18       Q.  Sir, as you understand it, are
19  there any differences in terms of the
20  damages available under the TVPA that
21  are not covered -- withdrawn.  Let me
22  ask the question a little differently.
23           As you understand it, sir, are
24  there any damages that are available
25  under the TVPA that would not be also
```

