164. *Langford testified that by the end of 2010 or early 2011, it was his view that "we should*

*exit Jeffrey Epstein as a client." Ex. 119 at 58:18-59:11.*

> **JPMC Response:** Undisputed that Langford testified as such.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

165. *DeLuca testified: "Maryanne [Ryan] was all over this, and like myself and William*

*[Langford], Maryanne wanted to see this client gone, the relationship terminated." Ex. 120 at*

*204:22-205:1.*

> **JPMC Response:** Undisputed that DeLuca testified as such.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

166. *On January 10, 2011, DeLuca emails Nichols, copying Langford, regarding Jeffrey*

*Epstein: "He is alleged to be involved in human trafficking of young girls and law enforcement is*

*allegedly investigating his involvement in this activity. . . . AML Operations went to a PB risk*

*meeting late last week requesting we exit this relationship." Ex. 70 at -748_R.*

> **JPMC Response:** Disputed to the extent USVI misstates the cited document. The cited text reads, "He is alleged to be involved in the human trafficking of young girls and law enforcement is also allegedly investigating his involvement in this activity . . . AML Operations went to a PB risk meeting late last week requesting that we exit this relationship." USVI Ex. 70 at -748_R. Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

167. *On March 12, 2013, Ryan emails DeLuca, Subject: High Profile, telling him: "Here are*

*the ones [accounts] I think should be closed where the LOB has disagreed and signed off to keep.*

██████████████████████████████████████    ████████████████████

*. . . PB customer Jeffrey Edward Epstein is an American financier and science and education*

*philanthropist, who is a convicted sex offender." Ex. 121 at -272.*

> **JPMC Response:** Disputed to the extent USVI misstates the cited document. The
> quoted text is emailed by Ryan to DeLuca on February 19, 2013. *See* USVI Ex. 121 at -
> 272. Otherwise, undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

168.    *JPMorgan admits that Erdoes was involved in decision making with respect to maintaining*

*Epstein as a customer of JPMorgan. Ex. 28 at Resp. 8.*

> **JPMC Response:** Undisputed that Erdoes was involved in decision making at certain
> points with respect to maintaining Epstein as a customer of JPMorgan.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

169.    *In 2008, JPMorgan acquired Bear Stearns. Ex. 122 at 1; Ex. 123 at 285:8-286:2.*

> **JPMC Response:** Undisputed that the cited document states that JPMorgan acquired
> Bear Stearns in 2008. *See* USVI Ex. 122 at 1.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or
> Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture.
> *See* CSMF ¶¶ 1-107.

170.    *JPMorgan knew that Epstein conducted his brokerage business at Bear Stearns. Ex. 124*

*at -175.*

> **JPMC Response:** Undisputed that the cited DDR for Jege, Inc. states that "Bear Stearns
> will hold the brokerage relationship with Mr. Epstein." *See* USVI Ex. 124 at -175.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or
> Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture.
> *See* CSMF ¶¶ 1-107.

171.    ████████████████████████████████████    *Ex. 125 at -076.*

> **JPMC Response:** ██████████████████████████████████████
> ████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

172.   *After Bear Stearns was acquired by JPMorgan, Arthur Middlemiss assumed a similar role with JPMorgan AML compliance, working with Langford.  Ex. 126 at 1; Ex. 120 at 155:21-158:6.*

**JPMC Response:**  Undisputed that the cited USVI Ex. 126 states that in June 2008 Mr. Middlemiss transitioned from Managing Director at Bear Stearns to Managing Director at JP Morgan Chase & Co. and that Mr. Langford testified that at some point Arthur Middlemiss "was a direct report" of his.  *See* USVI Ex. 120 at 155:21-22.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

173.   *While at Bear Stearns, Middlemiss was the AML Officer responsible for responding to a 2007 subpoena by the federal prosecutors investigating Epstein for federal sex crimes.  Ex. 125 at -076.*

**JPMC Response:** 

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

174.   *On January 10, 2011, Ryan e-mails Langford, DeLuca, and Nichols, Subject:  Re: Jeffrey Epstein: "Seems JPMC never was served a subpoena, which I find odd since we were his #1 bank and actually Bear got one in 07.  Rich is getting me the AUSA correspondence and we will compare their ask of Bear (something about $1000 and $100,000 transactions were of interest to them)[.]"  Ex. 127 at -192.*

**JPMC Response:**  Undisputed that Ryan emailed Langford, DeLuca, and Nichols on January 10, 2011 and the cited email contains the quoted text.

███████████████████████████████████████   ████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

175.   ████████████████████████████████████████████████████████████

███████████████████████████████████████   *Ex. 128 at -247.*   ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████   *Ex. 129 at -248, -251-52; Ex. 125 at -075.*

**JPMC Response:**   █████████████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

176.   ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████   *Ex. 129 at -251.*   ██████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████   *Id.*

**JPMC Response:**   █████████████████████████████████████████████
████████████████████████████████████████████████████████████████



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

177.

*Ex. 125 at -075.*

*Id. at -076.*

**JPMC Response:** Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

178.  *In 2007, JPMorgan knew, as part of its investigation of Epstein at that time, that it had made twenty transfers out of Epstein's accounts in the amount of $100,000 from January 2, 2007 to October 12, 2007.  Ex. 63 at -655-60.*

**JPMC Response:** Disputed that this email was part of any JPMC "investigation of Epstein at that time" as unsupported by the cited document.  Undisputed that on October 19, 2007 Dalessio emailed Verdon, copying McCleery, Waters, and Meisner, that includes an attachment of a chart that shows transactions related to Epstein's accounts from 2007.  JPMC disputes, however, that the cited document establishes as a legal conclusion that JPMC knew about the transfers in 2007.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

[black redaction bar]

179.    *On August 27, 2006, Staley emails Erdoes:  "Last night went to the Huggy Bear concert. The age difference between husbands and wifes [sic] would have fit in well with Jeffrey.  What a joke."  Erdoes responds, "Oh, and what I meant to tell you about last night was they [sic] were a few people laughing about Jeffrey.  One of the guys ran a unit of* ▮. *Apparently* ▮ *has 8 assistants, one is more beautiful than the other (even though he's gay). Anyway, lots of comparisons to JE."  Ex. 130 at -337.*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.  Erdoes' response to Staley's email on August 27, 2006 states "jeffrey," not "Jeffrey." *See* USVI Ex. 130 at -337.  Otherwise, undisputed that the cited email contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

180.    [black redaction bar]

[black redaction bar]

*Ex. 131 at -627.  The article discussed "alleged financier-perv\* billionaire Jeffrey Epstein, of whom it is alleged that he retained a procurer of underage girls."  Ex. 132 at 1.*

> **JPMC Response:**  [black redaction bar]  Undisputed that the cited article contains the quoted language.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

181.    *In May 2008, Erdoes writes to* ▮ *"This has turned into a cheezy broker fest . . . totally not cool, the only cool people are here at glenn's table-same as bat mitzvah!"* ▮ ▮ *responds: "Epstein there with miley cyrus?"  Ex. 133 at -475.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

182.   *In May 2008, Miley Cyrus was 15 and starring in "Hannah Montana" on the Disney*

*Channel.  Ex. 134 at 2.*

> **JPMC Response:**  Undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

183.   *On February 7, 2011, Ryan also said to Langford: ". . . wanted to catch up on Epstein as*

*he was featured ripped from the headline story on Law and Order SVU this week."  Ex. 135 at -*

*044; Ex. 36 at 145:21-148:2.*

> **JPMC Response:**  Disputed to the extent USVI misstates USVI Ex. 135.  The cited quote reads, "Wanted to catch up on Epstein as he was the featured ripped from the headlines story on Law and Order SVU this week."  Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

184.   *Ryan testified, "That entire series [Law and Order SVU] was based on real life stories,*

*and it's never difficult to figure out, since I am a New Yorker, I knew exactly what this particular*

*episode was on, and so I sent it to William so that he could see. . . . I saw it - happened to see it,*

*made sure I told William that a customer might have been the implied story that was out in the*

*news."  Ex. 36 at 147:4-148:2.*

> **JPMC Response:**  Undisputed that Ryan testified as such.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

185.   *Ryan testified that she wrote to Langford:   "I typed SVU and his name and there is a Gawker story, Law & Order commerates [sic] JE taste for teen hookers."  Ex. 135 at -044; Ex. 36 at 148:21-149:2.*

> **JPMC Response:**  Disputed to the extent USVI has misstated the Ryan's testimony. Ryan did not testify that she wrote to Langford "I typed SVU and his name and there is a Gawker story, Law & Order commerates [sic] JE taste for teen hookers."  In the cited portion of Ryan's testimony, the questioner states, "You write in the second sentence, I typed SVU and his name and there is a Gawker story, Law and Order commerates [sic] JE taste for teen hookers.  Do you see that?" and Ms. Ryan responds "Yes", that she sees that.  *See* USVI Ex. 36 at 148:21-149:2.  JPMC does not dispute that USVI Ex. 135 states, "I typed svu and his name and there is a gawker story Law and Order commerates JE taste for teen hookers."  USVI Ex. 135 at -044.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

186.   *The Gawker story states:  "Last night, for instance, Dick Wolf's Law & Order: SVU aired a 'ripped from the headlines' episode that seemed to be aimed directly at Epstein.  The villain was 'Jordan Hayes,' a 'billionaire pervert flying in underage girls for sex' on his private jet.  His parties make the society page, he's friends with 'a former president,' and Hayes almost gets away with the statutory rape of a young girl before our heroes uncover scores of underage girls he had sexually abused."  Ex. 136 at 1.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

187.   *The Law & Order episode and the Gawker story made Ryan "more anxious to get Jeffrey Epstein out of the bank."  Ex. 36 at 149:5-11. Ryan further testified "that all of these facts should be escalated to the business to make an informed decision about getting Epstein out of the bank."*

████████████████████████████████     ████████████████

*Id. at 149:17-21.  Ryan was of the opinion that Epstein should be out of the bank.  Id. at 149:20-*

*21.*

> **JPMC Response:**  Disputed to the extent USVI has misstated Ryan's testimony.  With respect to the first sentence, undisputed that Ryan testified that the Gawker story or the Law and Order episode about Epstein made her more anxious to get Epstein out of the bank.  For the second sentence, USVI has misstated Ms. Ryan's testimony.  Ryan testified, "I thought that all of these facts had to be escalated to the business to make an informed decision about getting him out of the bank.  I was of the opinion that he should be out of the bank."  USVI Ex. 36 at 149:5-21.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

188.    *On November 29, 2011, Ryan e-mails DeLuca an article, "FBI Set to Reopen Epstein Case*

*Based on Testimony of* ██████████ *" The article states:  "The FBI is reportedly preparing to*

*launch a new inquiry into Epstein after one of his under-age erotic masseuses,* ██████████*,*

*made a string of disturbing allegations about her role.  U.S. detectives are said to be furious that*

*Epstein, 58, escaped with only 13 months in jail for child sex offences [sic] after he struck a plea*

*bargain with prosecutors.  The deal protected him from further prosecution for offences in Florida.*

***But the significance of*** ██████████ ***claims that under-age girls were moved abroad for sex is***

***that she paves the way for the FBI to prosecute him for offences [sic] committed outside Florida***

***under the Trafficking Victims Protection Act.***" Ex.  137 at 689 (emphasis added).*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

189.    *On June 17, 2013, in a "Lync" chat from DeLuca with Jessica Gomel, who reported to*

*DeLuca, DeLuca repeated the contents of the article, including that "****the significance of*** ██████

██████ ***claims that under-age girls were moved abroad for sex is that she paves the way for***

*the FBI to prosecute him for offences [sic] committed outside Florida under the Trafficking*

*Victims Protection Act." Ex. 138 at -936 (emphasis added).*

> **JPMC Response:** Disputed to the extent the cited document does not support the assertion that Gomel reported to DeLuca or that DeLuca is repeating the contents of an article. Otherwise, undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

190.   In September 2012, David Brigstocke (then CFO of JPMorgan AWM) writes to Erdoes

regarding ▮▮▮▮▮▮▮▮ house:  "The size of the Union Club. In fact it used to be a club.

***Reminded me of JE's house, except it was more tasteful, and fewer nymphettes***. More like the

Frick. Art was fabulous. D." Erdoes responds:  "Wow." Ex 139 at -203 (emphasis added).

> **JPMC Response:** Disputed to the extent USVI misstates the quoted document. Brigstocke's email states "Union club," not "Union Club." *See* USVI Ex. 139 at -203. Otherwise, undisputed that the cited document contains the quoted text. Undisputed that Brigstocke was the CFO of JPMorgan AWM in September 2012. Disputed as to materiality.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

191.   *Staley was the senior person at JPMorgan with a business relationship with Epstein. Ex.*

*39 at Resp. 204.*

> **JPMC Response:** Undisputed that Staley was the senior person at JPMC with a business relationship with Epstein. *See* JPMC Ex. 62 at Resp. 204.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

192.   *JPMorgan admits that its employees consulted with Staley regarding Epstein's account*

*activities.  Ex. 39 at Resp. 144.*

**JPMC Response:**   Undisputed that JPMC employees consulted with Staley regarding Epstein's' account activities.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

193.   *JPMorgan admits that Staley communicated with Epstein through his JPMorgan email account jes.staley@jpmorgan.com.  Ex. 39 at Resps. 161, 162.*

**JPMC Response:**   Undisputed that Staley, at certain times, communicated with Epstein through his JPMorgan email account jes.staley@jpmorgan.com.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

194.   *JPMorgan employees were instructed to only use their email accounts "for business purposes."  Ex. 39 at Resp. 163.*

**JPMC Response:**   Disputed that JPMorgan employees were instructed to only use their email accounts for business purposes during the entirety of the relevant time period. Undisputed that in 2009, JPMorgan employees were subject to a Code of Conduct which included the instruction: "electronic mail (e-mail) systems and other electronic communications devices provided by JPMorgan Chase, whether in the workplace or elsewhere, are the property of the firm and should be used for business purposes; however, limited incidental personal use is permitted, consistent with the Code and all other policies of the firm."  *See* USVI Ex. 39 at Resp. 163, JPMC Ex. 63 at -129.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

195.   *JPMorgan admits that Epstein sent Staley photographs of women on Staley's JPMorgan's email address.  Ex. 39 at Resp. 164.*

**JPMC Response:**   Undisputed that Epstein sent Staley photographs of women on Staley's JPMorgan email address.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

196.   *JPMorgan admits that more than 1,200 email messages were sent between Staley and*

*Epstein over Staley's work account.  Ex. 39 at Resp. 165.*

> **JPMC Response:**   Undisputed that more than 1,200 email messages list both
> jes.staley@jpmorgan.com and jeevacation@gmail.com as either sender, receiver, or
> carbon copy.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

197.   *JPMorgan admits that Staley sent an email from his work account that referenced "Snow*

*White."  Ex. 39 at Resp. 166.*

> **JPMC Response:**   Undisputed that Staley sent an email from his JPMorgan email
> account that referenced "Snow White."
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

198.   *On July 9, 2010, Staley e-mailed Epstein, "That was fun. Say hi to Snow White." Epstein*

*responded, "what character would you like next." Staley responded, "Beauty and the Beast . . . ."*

*Epstein responded, "well one side is available." Ex. 140 at -669.*

> **JPMC Response:**  Disputed to the extent USVI misstates the cited document.  Epstein's
> response to Staley's email states, "well one side is availble."  *See* USVI Ex. 140 at -669.
> Otherwise, undisputed that cited document contains quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

199.   *On August 30, 2009, Epstein emailed Staley, "how long London? Do you need anything*

*there?"  Staley responded, "Yep."  Ex. 141 at -171.*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.
> Epstein's email states "london," not "London." *See* USVI Ex. 141 at -171.  Otherwise,
> undisputed that cited document contains quoted text.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆   ▆▆▆▆▆▆▆▆▆▆▆▆

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

200.   *On September 2, 2009, Epstein emailed* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *"jes staley is staying at the berkeley hotel in London tonight." Ex. 142 at -773.*

**JPMC Response:** Disputed to the extent USVI misstates the quoted document. Epstein's email states "london," not "London." *See* USVI Ex. Ex. 142 at -773. Otherwise, undisputed that cited document contains quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

201.   *On December 20, 2009, Epstein emailed Staley a blank email with only an attachment, which "appears to be a modeling photo":*



*Ex. 143 at -791-92; Ex. 144 at -005.*

**JPMC Response:** Undisputed that cited document USVI Ex. 144 contains quoted text. Disputed that the attachment in USVI Ex. 143 "appears to be a modeling photo," as the email provides no context for the photograph.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

202.    *On December 5, 2009, Epstein emailed Staley, "you were with larry , [sic] and I had to put up with . . . ." with the following attachment:*



*Ex. 145 at -715-16; Ex. 144 at -005.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Ex. 146 at -718.*

**JPMC Response:**  Disputed to the extent USVI misstates the quoted document. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* USVI Ex. 146 at -718. Otherwise, undisputed that cited documents contain quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

███████████████████████████████████████████████
█████████████████████████

203.    *On June 16, 2010, Staley wrote to Epstein "is she free tonight?" Epstein replied, "call*

*me." Staley replied, "I'm with A."  Ex. 144 at -998.*

> **JPMC Response:**   Undisputed that cited document contains quoted text.  *See* USVI Ex.
> 144 at -005.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

204.    *Staley testified he met* ██████████████ *at Epstein's townhouse.  Ex. 46 at 343:22-346:8.*

> **JPMC Response:**   Undisputed that Staley testified he met ████████ at Epstein's
> townhouse.  Disputed to the extent the underlying fact requires a credibility
> determination.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

205.    *Staley testified he met Lesley Groff at Epstein's townhouse.  Ex. 46 at 343:22-346:8.*

> **JPMC Response:**   Undisputed that Staley testified he met Groff at Epstein's townhouse.
> Disputed to the extent the underlying fact requires a credibility determination.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

206.    *Staley testified he met* ██████████ *at Epstein's townhouse.  Ex. 46 at 343:22-346:8.*

> **JPMC Response:**  Disputed that Staley testified he met ████ at Epstein's townhouse.
> Staley testified that he met ███████████████████████████████
> ████████ USVI Ex. 46 at 346:9-12.  Disputed to the extent the underlying fact requires
> a credibility determination.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

207.    *Staley testified* ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████  *Ex. 46 at 433:9-440:8.*

90

██████████████████████████████████████

**JPMC Response:** Undisputed that Staley testified ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

208.   *JPMorgan admits that Staley submitted, and JPMorgan reimbursed, the costs associated with expense reports reflecting purported meetings with Epstein. Ex. 39 at Resps. 168, 169.*

**JPMC Response:** Undisputed that Staley submitted, and JPMorgan reimbursed, the costs associated with expenses reports reflecting meetings with, among others, Epstein.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

209.   *JPMorgan admits that certain of its employees knew that Staley had visited Epstein while he was incarcerated and still a JPMorgan client. Ex. 39 at Resp. 175.*

**JPMC Response:** Undisputed that certain JPMorgan employees knew that Staley had visited Epstein while he was incarcerated and still a JPMorgan client.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

210.   *JPMorgan admits that Staley visited Epstein at Epstein's New York property while Epstein was a client of JPMorgan. Ex. 39 at Resp. 176.*

**JPMC Response:** Undisputed that Staley visited Epstein at Epstein's New York property while Epstein was a client of JPMorgan.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

211.   *JPMorgan admits that certain of its employees learned that Staley visited Little Saint James while Epstein was a client of JPMorgan. Ex. 39 at Resp. 177.*

**JPMC Response:**   Undisputed that certain of its employees learned that Staley visited Little Saint James while Epstein was a client of JPMorgan.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

212.   *JPMorgan admits that it gave Staley a bonus every year between 2001 and 2012.  Ex. 39 at Resp. 197.*

**JPMC Response:**   Undisputed that Staley received a bonus every year between 2001 and 2012.  Disputed as to materiality with respect to USVI's claims in this litigation.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

213.   *JPMorgan admits that Staley's bonus was related to his performance and performance of the business under his supervision, which may have included the revenue and business that they generated.  Ex. 39 at Resp. 198.*

**JPMC Response:**   Undisputed that Staley's bonus was related to his performance and performance of the businesses under his supervision, which may have included the revenue and business that they generated, among a broad range of additional quantitative and qualitative considerations.  Disputed as to materiality with respect to USVI's claims in this litigation.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

**JPMorgan Participated in Epstein's alleged sex-trafficking venture**

**JPMC Response**:  This is a header to which no response is warranted.  Disputed insofar as USVI contends that the statements and documents cited below establish as a matter of law that JPMorgan participated in Epstein's alleged sex-trafficking venture.

214.   *On July 6, 2020, the New York State Department of Financial Services entered into a Consent Order with Deutsche Bank imposing a $150 million penalty in connection to Deutsche Bank's relationship with Jeffrey Epstein.  Ex. 147; Ex. 148; Ex. 99 at 457:10-466:2. Regarding the Consent Order, Superintendent Lacewell said:   "despite knowing Mr. Epstein's terrible*

██████████████████████████████     ███████████████

*criminal history, the Bank inexcusably failed to detect or prevent millions of dollars of suspicious transactions." Ex. 147; Ex. 148; Ex. 99 at 457:10-466:2. The bank "processed hundreds of transactions totaling millions of dollars" including:*

- *payments to individuals who were publicly alleged to have been Mr. Epstein's co-conspirators in sexually abusing young women;*

- *settlement payments totaling over $7 million, as well as dozens of payments to law firms totaling over $6 million for what appear to have been the legal expenses of Mr. Epstein and his co-conspirators;*

- *payments to Russian models, payments for women's school tuition, hotel and rent expenses, and (consistent with public allegations of prior wrongdoing) payments directly to numerous women with Eastern European surnames; and*

- *periodic suspicious cash withdrawals — in total, more than $800,000 over approximately four years.*

*Ex. 147; Ex. 148; Ex. 99 at 457:10-466:2.*

**JPMC Response:** Undisputed that on July 6, 2020, the New York State Department of Financial Services entered into a Consent Order with Deutsche Bank imposing a $150 million penalty in connection to Deutsche Bank's relationship with Jeffrey Epstein. Undisputed that cited documents contain quoted text. Disputed as to materiality of the Deutsche Bank consent order in this matter.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169. Further contended that the cited material cannot be presented at trial in admissible form.

215. *In 2005, JPMorgan made two separate $25,000 payments from Epstein's JPMorgan accounts to* ████████. *Ex. 56 at 34, 36 and Figure 9.3 (copied below).*

**Figure 9.3: Direct Payments to** ████████████████

| Date | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/4/2005 | $25,000 00 | | | | | | | | | |
| 1/5/2005 | $25,000 00 | | | | | | | | | |
| 1/24/2008 | | | | $3,055 00 | | | | | | |
| 3/19/2008 | | | | $131,000 00 | | | | | | |
| 4/16/2009 | | | | | $500 00 | | | | | |
| 4/17/2009 | | | | | $14,000 00 | | | | | |
| 5/13/2009 | | | | | $4,000 00 | | | | | |
| 6/4/2009 | | | | | $6,000 00 | | | | | |
| 6/19/2009 | | | | | $4,000 00 | | | | | |
| 7/30/2009 | | | | | $1,025 00 | | | | | |
| 8/17/2009 | | | | | $4,000 00 | | | | | |
| 8/24/2009 | | | | | $5,000 00 | | | | | |

| Date | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/16/2009 | | | | | $4,000.00 | | | | | |
| 10/1/2009 | | | | | $13,000.00 | | | | | |
| 11/18/2009 | | | | | $4,000.00 | | | | | |
| 12/4/2009 | | | | | $4,000.00 | | | | | |
| 1/4/2010 | | | | | | $4,000.00 | | | | |
| 2/4/2010 | | | | | | $4,000.00 | | | | |
| 3/4/2010 | | | | | | $4,000.00 | | | | |
| 4/5/2010 | | | | | | $4,000.00 | | | | |
| 4/7/2010 | | | | | | $2,604.62 | | | | |
| 5/4/2010 | | | | | | $4,000.00 | | | | |
| 6/4/2010 | | | | | | $4,000.00 | | | | |
| 8/31/2010 | | | | | | $2,104.17 | | | | |
| 3/10/2011 | | | | | | $6,000.00 | | | | |
| 3/24/2011 | | | | | | $300,000.00 | | | | |
| 8/16/2011 | | | | | | | $12,252.60 | | | |
| 11/16/2011 | | | | | | | $6,105.75 | | | |
| 3/16/2012 | | | | | | | | $3,294.43 | | |
| 10/4/2012 | | | | | | | | $9,800.00 | | |
| 4/8/2013 | | | | | | | | | $100,000.00 | |
| 8/21/2013 | | | | | | | | | $15,000.00 | |
| Total | $50,000.00 | $0.00 | $0.00 | $134,055.00 | $63,525.00 | $334,708.79 | $18,358.35 | $13,094.43 | $115,000.00 | $728,741.57 |

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

216. *From August 2006 through August 2013, JPMorgan handled $678,741.57 in payments from Epstein's JPMorgan accounts to [redacted]. Ex. 56 at 34, 36 and Figure 9.3.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

217. *In August 2013, JPMorgan handled a payment of $15,000 from Epstein's JPMorgan account to [redacted]. Ex. 56 at 34, 36 and Figure 9.3.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

███████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.   *See* CSMF ¶¶ 108-169.

218.   *From August 2006 through January 2013, JPMorgan handled $607,804.30 in payments from Epstein's JPMorgan accounts to* ███████████. *Ex. 56 at 34-35 and Figure 9.2 (copied below).*

**Figure 9.2: Direct Payments to** ███████████

| Date | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2003 | $500.00 | | | | | | | | | | | |
| 3/9/2004 | | $1,166.00 | | | | | | | | | | |
| 4/8/2004 | | $2,000.00 | | | | | | | | | | |
| 4/22/2004 | | $1,517.82 | | | | | | | | | | |
| 4/28/2004 | | $3,000.00 | | | | | | | | | | |
| 6/1/2004 | | $10,000.00 | | | | | | | | | | |
| 8/5/2004 | | $5,000.00 | | | | | | | | | | |
| 10/19/2004 | | $10,000.00 | | | | | | | | | | |
| 11/22/2004 | | $2,168.29 | | | | | | | | | | |
| 12/1/2004 | | $1,713.45 | | | | | | | | | | |
| 1/4/2005 | | | $25,000.00 | | | | | | | | | |
| 1/19/2005 | | | $3,155.56 | | | | | | | | | |
| 4/12/2005 | | | $778.76 | | | | | | | | | |
| 4/26/2005 | | | $10,000.00 | | | | | | | | | |
| 7/19/2005 | | | $3,339.96 | | | | | | | | | |
| 8/15/2005 | | | $480.00 | | | | | | | | | |
| 8/25/2005 | | | $10,000.00 | | | | | | | | | |
| 10/11/2005 | | | $5,000.00 | | | | | | | | | |
| 10/24/2005 | | | $10,000.00 | | | | | | | | | |
| 1/4/2006 | | | | $10,000.00 | | | | | | | | |
| 2/3/2006 | | | | $11,000.00 | | | | | | | | |
| 3/2/2006 | | | | $6,786.00 | | | | | | | | |
| 4/10/2006 | | | | $15,000.00 | | | | | | | | |
| 4/28/2006 | | | | $7,362.50 | | | | | | | | |
| 7/18/2006 | | | | $5,000.00 | | | | | | | | |
| 9/6/2006 | | | | $25,000.00 | | | | | | | | |
| 10/3/2006 | | | | $1,025.00 | | | | | | | | |
| 12/18/2006 | | | | $1,724.30 | | | | | | | | |
| 3/19/2007 | | | | | $25,000.00 | | | | | | | |
| 6/8/2007 | | | | | $50,000.00 | | | | | | | |
| 9/25/2007 | | | | | $100,000.00 | | | | | | | |
| 1/24/2008 | | | | | | $3,055.00 | | | | | | |
| 7/3/2008 | | | | | | $2,000.00 | | | | | | |
| 9/3/2008 | | | | | | $100,000.00 | | | | | | |
| 7/8/2009 | | | | | | | $50,000.00 | | | | | |
| 12/7/2009 | | | | | | | $10,000.00 | | | | | |
| 1/15/2010 | | | | | | | | $10,000.00 | | | | |
| 2/17/2010 | | | | | | | | $25,000.00 | | | | |
| 5/24/2010 | | | | | | | | $20,000.00 | | | | |
| 7/29/2010 | | | | | | | | $20,000.00 | | | | |
| 10/6/2010 | | | | | | | | $25,000.00 | | | | |
| 1/18/2011 | | | | | | | | | $10,000.00 | | | |
| 2/28/2011 | | | | | | | | | $25,000.00 | | | |
| 4/1/2011 | | | | | | | | | $30,000.00 | | | |
| 4/14/2011 | | | | | | | | | $25,000.00 | | | |
| 6/20/2012 | | | | | | | | | | $20,000.00 | | |
| 10/10/2012 | | | | | | | | | | $10,000.00 | | |
| 10/11/2012 | | | | | | | | | | $10,000.00 | | |
| 1/17/2013 | | | | | | | | | | | $10,000.00 | |
| **Total** | **$500.00** | **$36,565.56** | **$67,754.28** | **$82,897.80** | **$175,000.00** | **$105,055.00** | **$60,000.00** | **$100,000.00** | **$90,000.00** | **$40,000.00** | **$10,000.00** | **$767,772.64** |

[REDACTED]

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

219.    *In 2004, 2005, and 2006, JPMorgan handled $36,565.56, $67,754.28, and $82,897.80, respectively, in payments from Epstein's JPMorgan accounts to* [REDACTED] *.  Ex. 56 at 34-35 and Figure 9.2.*

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

220.    [REDACTED]

[REDACTED] *Ex. 149*

[REDACTED]

**JPMC Response:**   Undisputed that cited document is a summary of transactions reflected in USVI Ex. 149.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

221.    *From October 1999 through July 2006, JPMorgan handled $25,146,955.30 in payments from Epstein's JPMorgan accounts to Ghislaine Maxwell.  Ex. 56 at 45-46 and Figure 15 (copied below).*

**Figure 15: Direct Payments to Ghislaine Maxwell**

| Date | 1999 | 2002 | 2003 | 2004 | 2005 | 2006 | 2009 | Grand Total |
|---|---|---|---|---|---|---|---|---|
| 10/19/1999 | $18,300,000.00 | | | | | | | $18,300,000.00 |
| 9/18/2002 | | $5,000,000.00 | | | | | | $5,000,000.00 |
| 2/27/2003 | | | $325,000.00 | | | | | $325,000.00 |
| 5/6/2003 | | | $250,000.00 | | | | | $250,000.00 |
| 6/20/2003 | | | $93,037.97 | | | | | $93,037.97 |
| 11/4/2004 | | | | $225,000.00 | | | | $225,000.00 |
| 11/18/2004 | | | | $34,867.33 | | | | $34,867.33 |
| 4/27/2005 | | | | | $205,000.00 | | | $205,000.00 |
| 5/20/2005 | | | | | $139,050.00 | | | $139,050.00 |
| 7/22/2005 | | | | | $200,000.00 | | | $200,000.00 |
| 7/25/2005 | | | | | $375,000.00 | | | $375,000.00 |
| 11/28/2006 | | | | | | $13,750.00 | | $13,750.00 |
| 4/23/2009 | | | | | | | $100,000.00 | $100,000.00 |
| **Total** | **$18,300,000.00** | **$5,000,000.00** | **$668,037.97** | **$259,867.33** | **$919,050.00** | **$13,750.00** | **$100,000.00** | **$25,260,705.30** |

> **JPMC Response:**   Undisputed that cited document is a summary of transactions
> prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was
> available to JPMorgan in this format during the time Epstein was a client of JPMorgan.
> Disputed as to materiality to the extent this summary fails to put Epstein's transactions in
> the appropriate context.  *See* JPMC Ex.60 ¶¶ 22, 92.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

222.   *From August 2006 through April 2009, JPMorgan handled $113,750 in payments from*

*Epstein's JPMorgan accounts to Maxwell.  Ex. 56 at 45-46 and Figure 15.*

> **JPMC Response:**   Undisputed that cited document is a summary of transactions
> prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was
> available to JPMorgan in this format during the time Epstein was a client of JPMorgan.
> Disputed as to materiality to the extent this summary fails to put Epstein's transactions in
> the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

223.   *In addition, JPMorgan received a $7.4 million wire from Epstein's Mellon Bank account*

*to Maxwell's JPMorgan account to purchase a helicopter.  On June 15, 2007, JPMorgan received*

*a $7.4 million wire to Maxwell's JPMorgan account ending in 6312 from Epstein's Mellon Bank*

*account.  Ex. 150 at -025 (June 2007 account statement from Ghislaine Maxwell's JPMorgan*

*account ending in #6312 showing a $7.4 million wire from Epstein's Mellon Bank account).  On*

*the same day, Maxwell transferred those same funds to Air Ghislaine, Inc.'s JPMorgan account*

*ending in 4324.  Ex. 151 at -878 (June 2007 account statement from Air Ghislaine, Inc.'s*

*JPMorgan account ending in 4324).  Then on June 18, 2007, $7,352,825.00 was transferred to*

*Sikorsky Aircraft as a down payment for the purchase of a green helicopter - Sikorsky S76C. Id.*

*According to the Aviation Database, as of June 27, 2007, the helicopter with tail number N908GM*

*was registered to Air Ghislaine, Inc. Ex. 56, Amador Exhibit G (aircraft registrations).*

> **JPMC Response:** Disputed as to date of transfer from Maxwell to Air Ghislaine, Inc.'s JPMorgan account.  The date provided in USVI Ex. 151 at -878 is June 18, not June 15. Undisputed that other payments occurred to specified accounts.  Undisputed that helicopter with tail number N908GM was registered to Air Ghislaine, Inc.  Disputed as to the materiality of this transaction between Maxwell and Epstein to the claims in this litigation.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

224.

*Figure 9: Direct Payments to Women from the Epstein Accounts*

| | Total Payment Amount |
|---|---|
| | $15,000.00 |
| | $5,000.00 |
| | $13,656.00 |
| | $5,000.00 |
| | $7,026.00 |
| | $3,000.00 |
| | $64,599.86 |
| | $5,000.00 |
| | $8,468.00 |
| | $2,400.00 |
| | $400.00 |
| | $500.00 |
| | $4,000.00 |
| | $58,000.00 |
| | $8,000.00 |
| | $30,000.00 |
| | $5,000.00 |
| | $20,000.00 |

| Total Payment Amount |
|---|
| $19,000.00 |
| $36,049.30 |
| $22,500.00 |
| $113,500.00 |
| $5,007.13 |
| $1,000.00 |
| $396.44 |
| $500.00 |
| $3,675.00 |
| $12,110.00 |
| $550.00 |
| $200.00 |
| $4,901.00 |
| $3,341.68 |
| $116,399.86 |
| $500.00 |
| $1,550.00 |
| $750.00 |
| $12,500.00 |
| $9,000.00 |
| $211,441.25 |
| $5,000.00 |
| $12,528.67 |
| $728,741.57 |
| $7,750.00 |
| $5,000.00 |
| $80,550.00 |
| $115,000.00 |
| $50,000.00 |
| $8,073.75 |
| $108,500.00 |
| $767,772.64 |
| $1,000.00 |
| $1,495.00 |
| $500.00 |
| $2,700.00 |
| $30,000.00 |
| $15,000.00 |
| $5,000.00 |
| $1,100.00 |
| $79,773.51 |
| $10,000.00 |
| $1,540.00 |

| | Total Payment Amount |
|---|---|
| | $81,000.00 |
| | $30,000.00 |
| | $21,739.73 |
| | $4,000.00 |
| | $1,320.00 |
| | $3,000.00 |
| | $27,743.00 |
| | $23,000.00 |
| | $4,200.00 |
| | $2,000.00 |
| | $10,140.00 |
| | $3,500.00 |
| | $1,650.00 |
| | $8,000.00 |
| | $300.00 |
| | $5,000.00 |
| | $38,031.49 |
| | $500.00 |
| **Total** | **$3,132,070.88** |

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

225.













**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI.
Disputed that this information was available to JPMorgan in this format during the time
Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors
when they received the payments as their age is not provided in the cited source.

Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

226.















**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

227.















**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

228.



**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

229.

**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

230.   *JPMorgan sent several of the payments by foreign wire to girls or women—including*



*—located in Belarus, Lithuania, and Russia.  Ex. 56 at 37-38 and Figure 10 (copied below).*

**Figure 10: Foreign Wire Transactions from the Epstein Accounts**

| Date | Beneficiary Bank | Location | | Amount |
|------|-----------------|----------|---|--------|
| 12/1/2008 | Alfa Bank | Moscow, Russia | | $3,000.00 |
| 12/1/2008 | VTB Bank | Moscow, Russia | | $2,000.00 |
| 1/8/2009 | SEB Vilniaus Bankas | Lithuania | | $2,000.00 |
| 9/8/2009 | VTB Bank | Moscow, Russia | | $292.00 |
| 11/4/2010 | ZAO Raiffeisenbank | Moscow, Russia | | $2,840.00 |
| 8/21/2012 | ZAO Raiffeisenbank | Moscow, Russia | | $2,000.00 |
| 1/14/2013 | Joint Stok Company | Minsky, Belarus | | $10,000.00 |
| 10/15/2013 | Joint Stok Company | Minsky, Belarus | | $20,000.00 |

> **JPMC Response:** Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

231.  *From 2004-2013, JPMorgan handled $211,411.25 in payments to* ▮▮▮▮▮ *from*

*Epstein's JPMorgan accounts. Ex. 56, Amador Exhibit F (chart showing breakdown of each direct*

*payment Epstein made to girls or women from his JPMorgan accounts).*

> **JPMC Response:** Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

232.  *JPMorgan also handled $158,958.34 in indirect payments from Epstein's JPMorgan*

*accounts for the benefit of girls or women. Ex. 56 at 38-40 and Figure 11 (copied below).*

120

██████████████████████████████████████
████████████████████████

*Figure 11: Indirect Payments for the benefit Women from the Epstein Accounts*

| Beneficiary/Payee | Amount |
|---|---|
| ██████████████ | |
| Steven D. Kaplan, DMD | $1,260.00 |
| ████████ **Total** | **$1,260.00** |
| | |
| ████████████ | █████████ |
| Spanish American Institute | $840.00 |
| ██████████ **Total** | **$840.00** |
| | |
| ██████████████ | |
| International Center of Photography | $1,290.00 |
| █████████████ **Total** | **$1,290.00** |
| | |
| ████████████ | █████████ |
| Castle Worldwide Inc. | $250.00 |
| Pacific College of Oriental Medicine | $21,245.86 |
| Steven D. Kaplan, DMD | $5,700.00 |
| ████████ **Total** | **$27,195.86** |
| | |
| ██████████████ | |
| Laguardia College | $2,425.85 |
| The World's Community College | $4,135.85 |
| ██████████ **Total** | **$6,561.70** |
| | |
| ███████████ | |
| New York Film Academy | $6,040.00 |
| Steven R. Erle, MD, PC | $450.00 |
| ████████ **Total** | **$6,490.00** |
| | |
| █████████ | |
| Bloomingdales | $532.77 |
| Express | $380.87 |

██████████████████████████████

| Beneficiary/Payee | Amount |
|---|---|
| I C Systems | $329.00 |
| Target | $352.10 |
| Victoria's Secret | $211.04 |
| ██████████ **Total** | **$1,805.78** |
| | |
| ██████████ | |
| Alan Barnett DLP, LLC | $10,400.00 |
| The International Culinary Center L | $42,000.00 |
| ██████████ **Total** | **$52,400.00** |
| | |
| ██████████ | |
| Samuel C. Klagsbrun M.D. | $2,000.00 |
| ██████████ **Total** | **$2,000.00** |
| | |
| ██████████ | |
| ATP USA, Inc. | $26,000.00 |
| ██████████ **Total** | **$26,000.00** |
| | |
| ██████████ | |
| New York Film Academy | $3,500.00 |
| ██████████ **Total** | **$3,500.00** |
| | |
| ██████████ | |
| Alliance Nursing | $2,275.00 |
| Dr. David Price | $412.00 |
| Dr. Gerald Imber | $20,000.00 |
| Dr. Jane Recant | $2,000.00 |
| Office Based Surgery Care | $1,500.00 |
| ██████████ **Total** | **$26,187.00** |
| | |
| ██████████ | |
| Fashion Institute of Technology | $2,020.00 |

| Beneficiary/Payee | Amount |
|---|---|
| ███████ **Total** | **$2,020.00** |
| | |
| ████████ | |
| ALCC American Language | $1,408.00 |
| ████████████ | **$1,408.00** |
| | |
| **Grand Total** | **$158,958.34** |

**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

233.    *JPMorgan also handled $5,600 in legal fees from Epstein's JPMorgan accounts for the benefit of three women—*███████████████████████ *Ex. 56 at 40-41 and Figure 12 (copied below).*

**Figure 12: Legal Fees Payments for Women from the Epstein Accounts**

| Date | Check # | Payee | Amount | Memo line: |
|---|---|---|---|---|
| 1/30/2009 | 2691 | Vincent A. Fuller, Jr., Esq. | $4,500.00 | ████████ |
| 1/11/2012 | 3359 | M. Arda Beskardes, Esq. | $600.00 | ██████ |
| 8/21/2012 | 3412 | M. Arda Beskardes, Esq. | $500.00 | ███████ |
| **Total** | | | **$5,600.00** | |

**JPMC Response:**   Undisputed that cited document and chart are summaries of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this

123

information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality.  *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

***Smaller Dollar and "Gift" Payments to Girls or Women and $100,000 Payments***

234.

*Ex. 156 (2012 Jeffrey E. Epstein Gift Tax Return).*







**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is

127

not provided in the cited source.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

235.







**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality of these payments based on the amounts or that they are provided to attorneys and law firms.  *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

236.





**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

237.



**JPMC Response:**  Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality of these payments

132

████████████████████████████    ██████████████████

from Epstein to a communications and reputation management firm to any of USVI's claims against JPMC. *See* JPMC Ex.64.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.

238.   *From September 2006 through December 2006, JPMorgan handled $883,750.00 in payments from Epstein's accounts to Alan Dershowitz, Roy Black, Gerald Lefcourt, and Jack Goldberger (relevant transactions identified and summarized in the chart below).*



**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality or relevance of payments from Epstein to his attorneys and law firms to USVI's claims in this matter. *See* JPMC Ex. 60 ¶ 91 & n.166████████████████████████████████████
████████████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

239.   █████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

| Date | Payee | Amount |
|------|-------|--------|
| 1/2/2007 | ALAN M. DERSHOWITZ | $178,000.00 |
| 2/7/2007 | ALAN M. DERSHOWITZ | $78,292.50 |
| 4/3/2007 | ALAN M. DERSHOWITZ | $137,458.00 |
| 5/9/2007 | ALAN M. DERSHOWITZ | $75,000.00 |



**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI.
Disputed that this information was available to JPMorgan in this format during the time



Epstein was a client of JPMorgan. Further disputed as to materiality or relevance of payments from Epstein to his attorneys and law firms to USVI's claims in this matter. *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

240. *From 2006 through 2013, JPMorgan handled $50,909,656.04 in payments from Epstein's JPMorgan accounts to various law firms, including $9,505,547.91 in payments from January 2006 through September 24, 2007; $5,597,358.02 in payments from September 25, 2007 through June 30, 2008; and $35,806,750.11 from July 1, 2008 through December 2013 (relevant transactions identified and summarized in the chart below).*

























**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality or relevance of payments from Epstein to his attorneys and law firms to USVI's claims in this matter. *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

241.   *JPMorgan Private Bank's Client Cash Transaction Guidelines states:  "The receipt of large cash deposits and disbursements of cash withdrawals for other than client casual spending needs to be discouraged.  It is the primary responsibility of the Banker to obtain explanations on the source of the cash and acceptability of the intended use of the case, and to assess the plausibility of these explanations for large cash transactions."  Ex. 157 at -224.*

147

███████████████████████████████

**JPMC Response:** Disputed to the extent USVI misstates the cited document. JPMorgan's Client Cash Transaction Guidelines, last review date November 20, 2012, state "The receipt of large cash deposits and disbursements of cash withdrawals for other than client casual spending needs is discouraged." *See* USVI Ex. 157 at -1227. Otherwise, undisputed that cited document contains quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

242.    *From September 2003 through November 2013, JPMorgan recorded cash withdrawals from Epstein's JPMorgan accounts totaling $5,018,472.  Ex. 56 at 24-26 and Figure 8 (copied below).*

*Figure 8: CTRs Relating to Epstein Accounts By Year*

| Year | Epstein #0438 | Epstein #0663 | Hyperion #4332 | NYSG #3130 | 116 East 65th St LLC#4235 | Total |
|------|------|------|------|------|------|------|
| 2003 | $175,310 | | | | | $175,310 |
| 2004 | $840,000 | | | | | $840,000 |
| 2005 | $901,337 | | | $3,000 | | $904,337 |
| 2006 | $935,265 | | | $3,000 | | $938,265 |
| 2007 | $520,000 | | | $6,000 | | $526,000 |
| 2008 | $460,000 | | | $9,000 | | $469,000 |
| 2009 | $100,011 | $60,000 | | | $5,000 | $165,011 |
| 2010 | $223,397 | $30,000 | | | | $253,397 |
| 2011 | $200,000 | | $60,000 | | | $260,000 |
| 2012 | | | $290,000 | | | $290,000 |
| 2013 | | | $197,152 | | | $197,152 |
| **Total** | **$4,355,320** | **$90,000** | **$547,152** | **$21,000** | **$5,000** | **$5,018,472** |

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

243.   *From 2006 through 2013, JPMorgan recorded $3,098,825 in cash withdrawals from Epstein's JPMorgan accounts.  Ex. 56 at 24-26 and Figure 8.*

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

244.   *From 2003 to 2007, JPMorgan recorded $3,383,912 in cash withdrawals from Epstein's JPMorgan accounts.  Ex. 56 at 24-26 and Figure 8.*

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

245.   *From 2005 to 2006, JPMorgan recorded $1,842,602 in cash withdrawals from Epstein's JPMorgan accounts.  Ex. 56 at 24-26 and Figure 8.*

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

██████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

246.    *From August 2006 through June 2008, JPMorgan recorded $1,134,000 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

| Transaction Date | Acct# | Amount |
|---|---|---|
| 8/10/2006 | Epstein #0438 | $40,000.00 |
| 8/24/2006 | Epstein #0438 | $40,000.00 |
| 9/7/2006 | Epstein #0438 | $60,000.00 |
| 9/21/2006 | Epstein #0438 | $40,000.00 |
| 10/19/2006 | Epstein #0438 | $40,000.00 |
| 11/10/2006 | Epstein #0438 | $40,000.00 |
| 11/20/2006 | Epstein #0438 | $25,000.00 |
| 12/15/2006 | Epstein #0438 | $40,000.00 |
| 1/18/2007 | Epstein #0438 | $40,000.00 |
| 2/20/2007 | Epstein #0438 | $40,000.00 |
| 3/1/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | NYSG #3130 | $3,000.00 |
| 5/2/2007 | Epstein #0438 | $40,000.00 |
| 6/11/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | NYSG #3130 | $3,000.00 |
| 8/2/2007 | Epstein | $40,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| | #0438 | |
| 9/4/2007 | Epstein #0438 | $40,000.00 |
| 9/19/2007 | Epstein #0438 | $40,000.00 |
| 10/24/2007 | Epstein #0438 | $40,000.00 |
| 11/27/2007 | Epstein #0438 | $40,000.00 |
| 12/14/2007 | Epstein #0438 | $40,000.00 |
| 1/7/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | NYSG #3130 | $3,000.00 |
| 3/5/2008 | Epstein #0438 | $40,000.00 |
| 4/1/2008 | Epstein #0438 | $40,000.00 |
| 4/24/2008 | Epstein #0438 | $40,000.00 |
| 5/21/2008 | Epstein #0438 | $40,000.00 |
| 6/16/2008 | Epstein #0438 | $40,000.00 |
| **Grand Total** | | **$1,134,000.00** |

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22,88,92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

247.   *From August 2006 through November 2013, JPMorgan recorded $2,485,560.00 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

151

| Transaction Date | Acct# | Amount |
|---|---|---|
| 8/10/2006 | Epstein #0438 | $40,000.00 |
| 8/24/2006 | Epstein #0438 | $40,000.00 |
| 9/7/2006 | Epstein #0438 | $60,000.00 |
| 9/21/2006 | Epstein #0438 | $40,000.00 |
| 10/19/2006 | Epstein #0438 | $40,000.00 |
| 11/10/2006 | Epstein #0438 | $40,000.00 |
| 11/20/2006 | Epstein #0438 | $25,000.00 |
| 12/15/2006 | Epstein #0438 | $40,000.00 |
| 1/18/2007 | Epstein #0438 | $40,000.00 |
| 2/20/2007 | Epstein #0438 | $40,000.00 |
| 3/1/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | NYSG #3130 | $3,000.00 |
| 5/2/2007 | Epstein #0438 | $40,000.00 |
| 6/11/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | NYSG #3130 | $3,000.00 |
| 8/2/2007 | Epstein #0438 | $40,000.00 |
| 9/4/2007 | Epstein #0438 | $40,000.00 |
| 9/19/2007 | Epstein #0438 | $40,000.00 |
| 10/24/2007 | Epstein #0438 | $40,000.00 |
| 11/27/2007 | Epstein #0438 | $40,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| 12/14/2007 | Epstein #0438 | $40,000.00 |
| 1/7/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | NYSG #3130 | $3,000.00 |
| 3/5/2008 | Epstein #0438 | $40,000.00 |
| 4/1/2008 | Epstein #0438 | $40,000.00 |
| 4/24/2008 | Epstein #0438 | $40,000.00 |
| 5/21/2008 | Epstein #0438 | $40,000.00 |
| 6/16/2008 | Epstein #0438 | $40,000.00 |
| 7/10/2008 | Epstein #0438 | $20,000.00 |
| 7/10/2008 | NYSG #3130 | $3,000.00 |
| 8/22/2008 | Epstein #0438 | $20,000.00 |
| 9/10/2008 | Epstein #0438 | $20,000.00 |
| 10/2/2008 | Epstein #0438 | $40,000.00 |
| 10/7/2008 | Epstein #0438 | $40,000.00 |
| 11/13/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | NYSG #3130 | $3,000.00 |
| 1/13/2009 | Epstein #0438 | $20,011.00 |
| 3/5/2009 | Epstein #0663 | $30,000.00 |
| 3/30/2009 | Epstein #0438 | $30,000.00 |
| 6/17/2009 | Epstein #0663 | $30,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| 8/20/2009 | Epstein #0438 | $30,000.00 |
| 11/19/2009 | Epstein #0438 | $20,000.00 |
| 11/19/2009 | 116 East 65th St LLC #4235 | $5,000.00 |
| 3/2/2010 | Epstein #0438 | $20,000.00 |
| 4/1/2010 | Epstein #0438 | $20,000.00 |
| 4/21/2010 | Epstein #0438 | $30,000.00 |
| 7/19/2010 | Epstein #0438 | $30,000.00 |
| 7/23/2010 | Epstein #0438 | $13,397.00 |
| 8/19/2010 | Epstein #0438 | $30,000.00 |
| 9/27/2010 | Epstein #0438 | $40,000.00 |
| 10/29/2010 | Epstein #0663 | $30,000.00 |
| 12/30/2010 | Epstein #0438 | $40,000.00 |
| 2/14/2011 | Epstein #0438 | $40,000.00 |
| 4/12/2011 | Epstein #0438 | $40,000.00 |
| 5/27/2011 | Epstein #0438 | $40,000.00 |
| 7/8/2011 | Epstein #0438 | $40,000.00 |
| 8/5/2011 | Epstein #0438 | $40,000.00 |
| 10/6/2011 | Hyperion #4332 | $30,000.00 |
| 12/13/2011 | Hyperion #4332 | $30,000.00 |
| 2/21/2012 | Hyperion #4332 | $30,000.00 |
| 3/19/2012 | Hyperion #4332 | $30,000.00 |
| 5/29/2012 | Hyperion #4332 | $30,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| 7/9/2012 | Hyperion #4332 | $30,000.00 |
| 7/31/2012 | Hyperion #4332 | $30,000.00 |
| 9/10/2012 | Hyperion #4332 | $30,000.00 |
| 9/28/2012 | Hyperion #4332 | $30,000.00 |
| 10/23/2012 | Hyperion #4332 | $40,000.00 |
| 12/7/2012 | Hyperion #4332 | $40,000.00 |
| 2/28/2013 | Hyperion #4332 | $40,000.00 |
| 6/4/2013 | Hyperion #4332 | $40,000.00 |
| 8/1/2013 | Hyperion #4332 | $20,000.00 |
| 11/1/2013 | Hyperion #4332 | $97,152.00 |
| **Grand Total** | | **$2,485,560.00** |

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

248.   *From September 2008 through November 2013, JPMorgan recorded $1,308,560 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| 9/10/2008 | Epstein #0438 | $20,000.00 |
| 10/2/2008 | Epstein #0438 | $40,000.00 |
| 10/7/2008 | Epstein | $40,000.00 |

155

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| | #0438 | |
| 11/13/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | NYSG #3130 | $3,000.00 |
| 1/13/2009 | Epstein #0438 | $20,011.00 |
| 3/5/2009 | Epstein #0663 | $30,000.00 |
| 3/30/2009 | Epstein #0438 | $30,000.00 |
| 6/17/2009 | Epstein #0663 | $30,000.00 |
| 8/20/2009 | Epstein #0438 | $30,000.00 |
| 11/19/2009 | Epstein #0438 | $20,000.00 |
| 11/19/2009 | 116 East 65th St LLC #4235 | $5,000.00 |
| 3/2/2010 | Epstein #0438 | $20,000.00 |
| 4/1/2010 | Epstein #0438 | $20,000.00 |
| 4/21/2010 | Epstein #0438 | $30,000.00 |
| 7/19/2010 | Epstein #0438 | $30,000.00 |
| 7/23/2010 | Epstein #0438 | $13,397.00 |
| 8/19/2010 | Epstein #0438 | $30,000.00 |
| 9/27/2010 | Epstein #0438 | $40,000.00 |
| 10/29/2010 | Epstein #0663 | $30,000.00 |
| 12/30/2010 | Epstein #0438 | $40,000.00 |
| 2/14/2011 | Epstein #0438 | $40,000.00 |
| 4/12/2011 | Epstein #0438 | $40,000.00 |
| 5/27/2011 | Epstein | $40,000.00 |

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| | #0438 | |
| 7/8/2011 | Epstein #0438 | $40,000.00 |
| 8/5/2011 | Epstein #0438 | $40,000.00 |
| 10/6/2011 | Hyperion #4332 | $30,000.00 |
| 12/13/2011 | Hyperion #4332 | $30,000.00 |
| 2/21/2012 | Hyperion #4332 | $30,000.00 |
| 3/19/2012 | Hyperion #4332 | $30,000.00 |
| 5/29/2012 | Hyperion #4332 | $30,000.00 |
| 7/9/2012 | Hyperion #4332 | $30,000.00 |
| 7/31/2012 | Hyperion #4332 | $30,000.00 |
| 9/10/2012 | Hyperion #4332 | $30,000.00 |
| 9/28/2012 | Hyperion #4332 | $30,000.00 |
| 10/23/2012 | Hyperion #4332 | $40,000.00 |
| 12/7/2012 | Hyperion #4332 | $40,000.00 |
| 2/28/2013 | Hyperion #4332 | $40,000.00 |
| 6/4/2013 | Hyperion #4332 | $40,000.00 |
| 8/1/2013 | Hyperion #4332 | $20,000.00 |
| 11/1/2013 | Hyperion #4332 | $97,152.00 |
| Grand Total | | $1,308,560.00 |

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

███████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

249.   *From August 2013 through November 2013, JPMorgan recorded $117,152 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| 8/1/2013 | Hyperion #4332 | $20,000.00 |
| 11/1/2013 | Hyperion #4332 | $97,152.00 |
| **Grand Total** | | **$117,152.00** |

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

250.   ████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████   *Ex. 158 at -133-134, -*

*206-210.*  ██████████████████████████████   *Id. at -134.*  ██

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████   *Ex.*

*159 at -001002, -175-182.*  █████████████████████████████

███████████   *Id. at -001.*

**JPMC Response:**  █████████████████████████████████████

████████████████████████████████████████████

*See* SUMF ¶ 22.

*ee* JPMC Ex. 60 ¶¶ 121-23.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

**JPMorgan Benefited from Participation in Epstein's alleged sex-trafficking venture**

> **JPMC Response**: This is a header to which no response is warranted.  Disputed insofar as USVI contends that the statements and documents cited below establish as a matter of law that JPMorgan benefited from participation in Epstein's alleged sex-trafficking venture.

251. *JPMorgan first opened an account for Epstein in 1985.  Ex. 39 at Resp. 1.*

> **JPMC Response:**  Undisputed that Epstein opened an account with one of JPMC's predecessor entities in 1985.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

252. *JPMorgan admits that it earned fees and revenue from providing banking services to Epstein.  Ex. 39 at Resp. 7.*

> **JPMC Response:**  Undisputed that JPMorgan earned fees and revenue from providing banking services to Epstein.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

253. *One of the factors impacting bonuses for JPMorgan Private Bankers was the revenues that clients brought into the bank.  Ex. 160 at 46:11-18; 48:4-49:18.*

> **JPMC Response:**  Undisputed that Morris testified that revenues were one factor that was taken into account to determine the discretionary bonus a Private Banker would receive.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

254.  *In 2003, Epstein brought in over $8.1 million in revenue to the Private Bank.  Ex. 161 at -*

*088.*

    **JPMC Response:**  Disputed that the $8.1 million in revenue in 2003 was from Epstein's accounts at the JPMorgan Private Bank.  USVI mischaracterizes the document, the $8.1 million includes revenue from other Private Bank clients, primarily ████.  *See* USVI Ex. 163 at -030. ████████ JPMC Ex. 65 at 123:19-125:12.

    Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

255.  *Epstein's $8.1 million in revenue in 2003 was the most investor revenue for JPMorgan*

*Wealth Management.  Ex. 161 at -088.*

    **JPMC Response:**  Disputed that the cited document establishes that Epstein was responsible for "the most investor revenue for JPMorgan Wealth Management" in 2003. The cited document reflects revenues from only a small subset of JPMorgan Private Bank clients, specifically just the Private Bank clients who were categorized as "investors." Moreover, the revenues related to Epstein include those derived from other clients, principally ████.  *See* USVI Ex. 163 at -030. █████ JPMC Ex. 65 at 123:19-125:12.

    Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

256.  *Epstein's $8.1 million in revenue in 2003 was nearly double the amount of JPMorgan*

*Wealth Management's second-highest client.  Ex. 161 at -088.*

    **JPMC Response:** Disputed that the cited document establishes that Epstein was responsible for revenues "nearly double the amount of JPMorgan Wealth Management's second-highest client" in 2003.  The cited document reflects revenues from only a small subset of JPMorgan Private Bank clients, specifically just the Private Bank clients who were categorized as "investors."  Moreover, the revenues related to Epstein include those derived from other clients, principally ████.  *See* USVI Ex. 163 at -030.

████████████████████████████████████████████████

████████████████████████████████████████████████   JPMC Ex. 65 at 123:19-125:12.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

257.   *In 2003, "Jeffrey Epstein, through the trading of his accounts and that [sic] of* ████

████   *generates one of the largest annual revenue flows of private clients in the private bank."*

*Ex. 162 at -098. In 2004, Epstein's JPMorgan Banker considered the Epstein/Wexner relationship*

*a "crucial relationship to the private bank." Ex. 163 at -030.*

> **JPMC Response:** Undisputed that cited documents contain quoted the text. Disputed to the extent that USVI contends that Epstein was the primary driver of the revenue flows or was the "crucial relationship." ██████████████ accounts were the driver of the revenue and the key part of the relationship.

>> Q: And you believe that [the Epstein ██████ relationship was a, quote, crucial relationship to the private bank; is that fair?

>> A: Mr. ████ was a crucial relationship to the private bank, yes.

>> Q: And Mr. Epstein?

>> A: Mr. Epstein was the money manager for Mr. ████ yes. So, therefore, he was part of an important relationship.

> JPMC Ex. 66 at 117:20-118:7. ██████████████████████
> ████████████████████████████████████   JPMC Ex.
> T65 at 123:19-125:12 .

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

258.   *Leading up to Epstein's indictment in 2006, he was one of JPMorgan's "very big clients."*

*Ex. 164 at -615.; Ex. 46 at 85:9-86:18.*

> **JPMC Response:** Undisputed that cited documents contain the quoted text. Disputed that Epstein was one of JPMorgan's "very big clients." ████████████
> ████████████████████████████████████████   JPMC Ex. 65 at 122:2-

123:18

*see also* JPMC Ex. 65 at 123:19-125:12

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.

259.   *In October 2006, Epstein's JPMorgan accounts totaled approximately $32 million.  Ex. 76 at -953.*

> **JPMC Response:**  Undisputed that as of October 17, 2006 a Rapid Response Team document states that "[t]he Epstein relationship . . . consists of banking, asset and credit accounts with balances totaling approximately $32 million."  USVI Ex. 76 at -953.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

260.   *At the October 2006 Rapid Response Team meeting, "[a]fter internal discussion with Jes Staley, Mary Erdoes, Catherine Keating, John Duffy and Mary Casey, it was decided that we will keep Mr. Epstein solely as a banking client and on a 'reactive', client service basis."  Ex. 39 at Resp. 44 (citing JPM-SDNYLIT-00127953 (Ex. 76)).*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.  The document states "[a]fter internal discussions," not "discussion."  USVI Ex. 76 at -953.  Otherwise, undisputed that cited document contains quoted text.  JPMorgan lacks knowledge as to whether the referenced internal discussion in fact occurred.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

261.   *Kevin McCleerey testified that these conditions were imposed to "mitigate[] the risk" presented by Epstein by capping "the number of accounts and relationships with him."  Ex. 35 at 119:2-120:5.*

> **JPMC Response:**  Disputed that McCleerey testified that these conditions were imposed to "mitigate[] the risk" presented by Epstein by capping "the number of accounts and relationships with him."  McCleerey testified that "limiting Mr. Epstein to banking and

custody. . . mitigat[ed] the risk presented by Mr. Epstein" because JPMorgan was "not
expanding the relationship based on the reputational risk that we knew of at the time in
October of 2006." USVI Ex. 35 at 119: 2-16. McCleerey further testified that "limiting
[Epstein] to being a banking-only client" should have "limit[]ed the risk presented by Mr.
Epstein" because "we would cap the number of accounts and relationships with him." *Id.*
at 119:17-120:1-4.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
170-175.

262. *In October 2007, JPMorgan continued doing "business as usual with Epstein's office."*

*Ex. 102 at -963.*

**JPMC Response:** Disputed that JPMorgan continued doing business as usual with
Epstein's office in October 2007. JPMorgan did not continue doing business as usual
with Epstein's office following his 2006 indictment and instead limited Epstein primarily
to banking services. *See* USVI Ex. 76 at -953. The cited document is an October 25,
2007 email from Casey, sent after the decision was made to limit Epstein to banking
services, that contains the text "[m]y current understanding is that we are business as
usual with Epstein's office" in the context of whether to authorize a new Letter of Credit
for Epstein's office. *See* USVI Ex. 102 at -963.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
170-175.

263. *At the time, Mary Erdoes wanted to "move forward based on our earlier decision to*

*continue doing business" with Epstein. Ex. 102 at -962; Ex. 32 at 264:16-265:2; 273:24-274:22.*

**JPMC Response:** Undisputed that the cited document regarding the decision whether to
authorize a new Letter of Credit for Epstein in October 2007 contains the quoted text.
Disputed that Erdoes "wanted" to move forward with authorizing a new letter of credit
for Epstein in October 2007. JPMorgan lacks knowledge as to Erdoes' state of mind
regarding whether or not to authorize a new Letter of Credit for Epstein in October 2007.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
170-175.

264. *By July 2008, Epstein's JPMorgan accounts had increased to total approximately $121.5*

*million. Ex. 165 at 944; Ex. 32 at 309:8-311:3.*

████████████████████████████████████████████

**JPMC Response:**  Undisputed that a July 15, 2008 Rapid Response Meeting document contains quoted text "[t]he Epstein relationship . . . mainly consists of banking and asset accounts with balances totaling approximately $121.5 million."  USVI Ex. 165 at -944.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

265.    *On August 28, 2008, Mary Casey emails Marcus Sheridan, subject:  "Re: '09 plan" and said: "Also, I would count Epstein's assets as a probable outflow for '08 ($120mm or so?) as I can't imagine it will stay (pending Dimon review)."  Ex. 301 at -706_R.*

**JPMC Response:**  Undisputed that cited document contains quoted text.  Disputed as to the underlying suggestion that Dimon was involved in any Epstein review.  Casey testified that she intended her email to reference Cutler, "and [she] did not mean it to be Jamie Dimon, as he had nothing to do with this."  JPMC Ex. 66 at 341:12-24.  Mr. Sheridan, the recipient of the email, also testified ███████████████████████████
███████████████████████████████████████████.  JPMC Ex. 67 at 129:8-23.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

266.    *On September 3, 2008, Epstein's JPMorgan accounts had a PCN Market Value of $156,218,451.45. Ex. 166 at -758; Ex. 39 at Resp. 3.*

**JPMC Response:**  Undisputed that cited document identifies a "PCN Market Value" of $156,218,451.45.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

267.    *JPMorgan admits that in October 2010 Epstein was one of JPMorgan's top 20 clients in the Closely Held Business Group.  Ex. 39 at Resp. 4.*

**JPMC Response:**  Undisputed that Epstein was one of JPMorgan's top 20 clients in the Closely Held Business Group as of October 2010.

████████████████████████████████████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

268. ████████████████████████████████████████████████

*Ex. 167 at -654.*

> **JPMC Response:** ████████████████████████████████
> ████████████████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

269. ████████████████████████████████████████████████

████████████████████████ *Ex. 167 at -654.*

> **JPMC Response:** ████████████████████████████████
> ████████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

270. ████████████████████████████████████. *Ex. 167 at -654.*

> **JPMC Response:** ████████████████████████████████
> ████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

271. *By 2011, Epstein was JPMorgan Private Bank's "GIO's biggest revenue producer." Ex. 168 at -977.*

> **JPMC Response:** Undisputed that cited document contains quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

272. *By July 2013, Epstein was still actively trading through the GIO. Ex. 169 at -230.*

**JPMC Response:** Undisputed that cited document, a July 3, 2013 email from Nelson to McCleerey and Duffy states, "The assets [Epstein] keeps at J.P. Morgan are his own money, which he actively trades through our Global Investment Opportunities desk with Paul Barrett's team." USVI Ex. 169 at -230.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

273. *At the time, Epstein's Banker (Justin Nelson) described Epstein as "one of the most active and sophisticated investors on the GIO desk." Ex. 169 at -230.*

**JPMC Response:** Undisputed that Epstein's banker described Epstein as "one of the most active and sophisticated investors on the GIO desk." USVI Ex. 169 at -230.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

274. *In September 2013, JPMorgan noted the impact of exiting Epstein roughly equated to "$0.5MM YoY revenue decrease in 2013. In 2014 it will be roughly a -$2MM revenue impact." Ex. 170 at -016. JPMorgan further noted, "He currently has $176MM with us and actually has TCP flows of +$72MM this year." Id.*

**JPMC Response:** Disputed that JPMorgan "noted the impact" of exiting Epstein equated to "$0.5MM YoY revenue decrease in 2013. In 2014 it will be roughly a -$2MM revenue impact." The quoted text appears in a September 24, 2013 email from Carmen Zee to Thomas K. Southmayd, which was sent after the decision was communicated to Epstein in August 2013 that JPMC would be exiting his relationship. *See* JPMC Ex. 68.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

275. *In or about the year 2000, Douglas "Sandy" Warner, then CEO of JPMorgan, said to Staley (then Head of Private Bank), "...[Y]ou should meet [sic] Epstein. He's one of the most connected people I know of in New York." Ex. 46 at 45:18-47:4.*

**JPMC Response:** Undisputed that Staley testified as to the quoted text. Disputed to the extent the underlying fact requires a credibility determination.

166

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

276.  *JPMorgan admits Epstein introduced and referred potential clients to JPMorgan Private Bank.  Ex. 39 at Resps. 5, 6.*

> **JPMC Response:**  Undisputed that Epstein introduced and referred clients Robert Lee Burch III, Kathryn Ruemmler, and Ghislaine Maxwell to the JPMorgan Private Bank. *See* USVI Ex. 39 at Resp. 29; JPMC Ex. 69 at Resp. 3.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

277.  *Epstein referred a number of ultra-high net worth clients to JPMorgan over the years.  Ex. 48 at Resp. 17; Ex. 46 at 86:19-23.*

> **JPMC Response:**  Undisputed that Epstein referred Robert Lee Burch III, Kathryn Ruemmler, and Ghislaine Maxwell to JPMC.  *See* USVI Ex. 39 at Resp. 29; JPMC Ex. 69 at Resp. 3.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

278.  *One of the factors impacting bonuses for JPMorgan Private Bankers was new client acquisition.  Ex. 171 at 83:18-84:4.*

> **JPMC Response:**  Disputed that one of the factors impacting bonuses for JPMorgan Private Bankers was new client acquisition.  The cited document does not support the proposition as Nelson testified that new client acquisition was "one of the factors that could be considered for compensation."  USVI Ex. 171 at 83:21-25; 84:1-4.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

279.  *One of the objectives that was instilled in JPMorgan Private Bankers was to acquire new clients. Epstein referred Bill Gates as a client to JPMorgan.  Ex. 46 at 88:3-4.*

**JPMC Response:** Disputed that "[o]ne of the objectives that was instilled in JPMorgan Private Bankers was to acquire new clients." The cited testimony does not support this proposition. Disputed to the extent Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

280. *Epstein referred Sergey Brin as a client to JPMorgan. Ex. 46 at 87:2-4.*

**JPMC Response:** Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17) ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). *See also* JPMC Ex 62 at Resp. 18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

281. *Epstein referred Google LLC as a client to JPMorgan. Ex. 46 at 87:5-6.*

**JPMC Response:** Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). Disputed that Epstein referred Google LLC as a client to JPMorgan.

*See* JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

282. *Epstein referred the Sultan of Dubai, Sultan Ahmed bin Sulayem as a client to JPMorgan.*

*Ex. 46 at 87:7-8.*

**JPMC Response:** Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). *See also* JPMC Ex. 62 at Resp. 26.

168

█████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

283.    *Epstein referred Mort Zuckerman as a client to JPMorgan.  Ex. 46 at 87:15-16.*

**JPMC Response:**  Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").  *See also* JPMC Ex. 62 at Resp. 28.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

284.    *Epstein referred the* ████████ *as a client to JPMorgan.  Ex. 46 at 87:17-18.*

**JPMC Response**: Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17) ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

285.    *Epstein referred David Gergen as a client to JPMorgan.  Ex. 46 at 88:8-9.*

**JPMC Response**: Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

286.    *Epstein referred Boris Nikolic as a client to JPMorgan.  Ex. 46 at 88:10-11; Ex. 160 at*

*17:13-18:4.*

**JPMC Response**: Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17) ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").  *See also* JPMC Ex. 72 at -701 ████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

287.   *Boris Nikolic was a medical advisor, who ran a venture fund. Ex. 160 at 17:13-18:4.*

**JPMC Response**: Undisputed that Morris testified during his deposition that, "Boris Nikolic was a medical advisor. He was an entrepreneur, runs a venture fund." *See* USVI Ex. 160 at 17:22-25.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

288.   *Boris Nikolic was "somehow related to Bill Gates." Ex. 160 at 17:13-18:4.*

**JPMC Response**: Undisputed that the cited deposition contains the quoted testimony. *See* USVI Ex. 160 at 18:2-4.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

289.   *Epstein referred Larry Summers as a client to JPMorgan. Ex. 46 at 88:12-13.*

**JPMC Response**: Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

290.   *Epstein referred Thomas Pritzker, chairman and CEO of the Pritzker Organization, as a client or for additional activities or funds to JPMorgan. Ex. 172 at Resp. 49; Ex. 46 at 310:19-311:4.*

**JPMC Response**: Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). *See also* USVI Ex. 39 at Resp. 31.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

291.   *Epstein facilitated meetings between Staley and Ehud Barak.  Ex. 46 at 89:11-16.*

**JPMC Response**: Disputed to the extent the cited testimony does not support the contention that Epstein facilitated meetings between Staley and Barak.  Staley testified that he met Barak.  USVI Ex. 46 at 89:11-16.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

292.   *In January 2008, Epstein facilitated an introduction between JPMorgan executives and Ehud Barak, and Staley directed his assistant to arrange the meeting through Jamie Dimon's office.  Ex. 173 at -152.*

**JPMC Response**: Disputed.  JPMorgan Chase did not need Epstein to facilitate a meeting with Barak (or others).  As JPMC's CEO testified:  "I don't think Jeff Epstein ever arranged for me to meet with anybody, to my knowledge.  And I knew Ehud Barak.  We did not need introductions to anybody."  JPMC Ex. 55 at 253:1-4.  Further disputed to the extent that USVI contends that there was an introduction through Epstein or that he facilitated a meeting between JPMC executives and Mr. Barak.  Otherwise, undisputed.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

293.   *Epstein facilitated meetings between Staley and Peter Mandelson.  Ex. 46 at 90:20-24.*

**JPMC Response**: Undisputed that Staley testified that Epstein facilitated meetings between Staley and Peter Mandelson.  USVI Ex. 46 at 90:20-24.  Disputed as to materiality in light of the fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

294.   *Lord Peter Mandelson was a senior member of the British Government.  Ex. 144 at -009.*

**JPMC Response**: Undisputed that the cited document states that Lord Peter Mandelson is a "senior member of the British Government."  Disputed as to materiality in light of the

171

███████████████████████████████    ████████████████

fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

295. *On June 5, 2009, Epstein wrote to Staley, "well , [sic] for all intends [sic] and purposes*

*peter mandelson is now deputy prime minister." Ex. 174 at -959; Ex. 144 at -009; Ex. 175 at 6.*

**JPMC Response**: Undisputed that the cited document contains the quoted language. Disputed as to materiality in light of the fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

296. *On June 17, 2009, Epstein wrote to Staley, "peter will be staying at 71 st over weekend,*

*do you want to organize either you, or you and Jamie,, [sic] quietly,, [sic] up to you." Ex. 176 at*

*-005; Ex. 144 at -009; Ex. 175 at 6.*

**JPMC Response**: Undisputed that the cited document contains the quoted language. Disputed as to materiality in light of the fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19 .

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

297. *In January 2009, Epstein wrote to Staley, "david gergen is coming to see me today.. [sic]*

*we should talk before twelve." Ex. 177 at -763; Ex. 144 at -006; Ex. 175 at 4.*

**JPMC Response**: Undisputed that the cited document contains the quoted language.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

298. *David Gergen is a former adviser to Presidents Nixon, Ford, Reagan, and Clinton. Ex.*

*144 at -006.*

**JPMC Response**: Undisputed that the cited document states, "David Gergen is the name of a former adviser to Presidents Nixon, Ford, Reagan and Clinton through 1994." USVI Ex. 144 at -006.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

299. *Epstein facilitated meetings between JPMorgan employees and Prince Andrew. Ex. 46 at*

*96:13-16.*

**JPMC Response**: Undisputed that Staley testified, "[y]es" when asked, "[b]ut Jeffrey Epstein at least facilitated meetings between persons working at the bank and Prince Andrew; is that fair?" USVI Ex. 46 at 96:13-16. Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank. *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73 at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

300. *On April 15, 2010, Epstein wrote to Prince Andrew the Duke of York,* ███████████*,*

*"jes staley will be in London on thurs the 22.. [sic] i think you should meet if you are in town..*

*[sic]." Ex. 178 at -534; Ex. 144 at -011; Ex. 175 at 6.*

**JPMC Response**: Disputed to the extent USVI misstates the quoted document. Epstein's email to Prince Andrew states "london," not "London." *See* USVI Ex. 178 at -534. Otherwise, undisputed that the cited document contains the quoted text. Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank. *See* JPMC Ex. 62 at Resp. 23 ; JPMC Ex. 73 at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

301. *On May 18, 2010, Epstein wrote to Staley, "anadrew [sic] will try to see you on your trip*

*to london." Ex. 179 at -970; Ex. 144 at -011; Ex. 175 at 6.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank. *See* JPMC Ex. 62 at Resp. 23 (JPMC Response to USVI RFA No. 23); JPMC Ex. 73 at Resp. 36.

███████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

302.    *On September 2, 2010, Lesley Groff wrote to Epstein, "Jes Staley's office called saying last night Jes met up with Prince Andrew and Tim Collins." Ex. 180 at -703; Ex. 144 at -011; Ex. 175 at 7.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank. *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73 at Resp. 36.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

303.    ████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████   *Ex. 181 at -071.*  ████

███████████████   *Id.*   ██████████████████   *Id.*

> **JPMC Response:**  ██████████████████████████
> ██████████████  *See* USVI Ex. 181 at -
> 071.  Otherwise, undisputed that the cited email contains the quoted text.  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23 ; JPMC Ex. 73at Resp. 36.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

304.    *On December 22, 2010, Prince Andrew wrote to Staley, "Wishing you a very happy Christmas and New Year.  Sorry to have missed you this week.  Hope to catch up sometime after the New Year.  I will be at Davos as usual." Ex. 182 at -808; Ex. 144 at -011; Ex. 175 at 7.*

**JPMC Response**:  Disputed to the extent USVI misstates the quoted document, which fails to use ellipses between each sentence contained in the quote. *See* USVI Ex. 182 at -808.  Otherwise, undisputed that the cited document contains the quoted text.  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73 at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

305.  *In November 2013, Prince Andrew hosted Jamie Dimon for dinner and performances at*

*Buckingham Palace.  Ex. 183 at -462-63.*

**JPMC Response**: Undisputed that the Financial Times reported that Prince Andrew hosted an event in November 2013 that "had a guestlist that included up to 100 corporate and political heavyweights, ranging from Kofi Annan, the former UN secretary-general, to Indian industrialist Ratan Tata." *See* USVI Ex. 183 at -462-63.  Disputed to the extent the document does not suggest there was a connection between this event and Jeffrey Epstein.  In fact, the document states that David Mayhew, a UK financier and adviser to JPMC at the time, was "[k]ey to organising the night."  JPMC Ex. 74).  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

306.  *Epstein facilitated meetings between Staley and Bill Gates.  Ex. 46 at 92:20-23.*

**JPMC Response**: Disputed to the extent the underlying fact, which is supported only by Staley's deposition testimony, requires a credibility determination.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

307.  *Epstein introduced his JPMorgan banker (Paul Morris) to Andrew Farkas.  Ex. 160 at*

*15:23-17:12.*

**JPMC Response**:  Undisputed that Morris testified that Epstein introduced him to Farkas.  Disputed as to materiality in light of the fact that Farkas did not become Morris's client, USVI Ex. 160 at 16:22-24, and Epstein did not refer Farkas to the Private Bank.  *See* JPMC Ex. 62 at Resp. 13; JPMC Ex. 73 at Resp. 28.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

308.   *Andrew Farkas is a major real estate investor who founded Island Capital Group.  Ex. 144 at -006.*

**JPMC Response**:  Undisputed that the cited document states "Andrew Farkas is a major real estate investor who founded Island Capital Group." *See* USVI Ex. 144 at -006. Disputed as to materiality in light of the fact that Farkas did not become Morris's client, USVI Ex. 160 at 16:22-24, and Epstein did not refer Farkas to the Private Bank. *See* JPMC Ex. 62 at Resp. 13; JPMC Ex. 73 at Resp. 28.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

309.   *Epstein introduced JPMorgan to David Mitchell, a real estate developer.  Ex. 160 at 14:20-15:5.*

**JPMC Response**: Undisputed that Morris testified that Epstein introduced him to Mitchell.  USVI Ex. 160 at 14:20-15:2.  Disputed as to materiality in light of the fact that Mitchell did not become Morris's client.  USVI Ex. 160 at 15:3-5.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

310.   *Epstein referred Robert Lee Burch II, former CEO of Jonathan Engineered Solutions and member of A.W. Jones' advisory board, as a client to JPMorgan.  Ex. 184 at -986; Ex. 39 at Resp. 29.*

**JPMC Response**: Undisputed.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

311.   *In 2003, Epstein's JPMorgan Private Banker (Casey) noted that Epstein "helped us source several managers, including Glenn Dubin and Steve Saltzman."  Ex. 185 at -893.*

███████████████████████████████████████████████

**JPMC Response**:  Disputed to the extent USVI misstates the cited document.  The cited document was not written by Mary Casey and states "Glen Dubin and Steve Salzman," not "Glenn Dubin and Steve Saltzman."  *See* USVI Ex. 185 at -893.  Otherwise, undisputed that the cited document contains the quoted text.  Disputed that Epstein did in fact refer Saltzman to the Private Bank.  *See* JPMC Ex. 62 at Resp. 30; JPMC Ex. 73 at Resp. 48.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

312.   ████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████    *Ex.*

*186 at -184_R.*

**JPMC Response**:  ██████████████████████████████

███████████████████████    *See* JPMC Ex. 62 at Resp. 12; JPMC Ex. 73 at Resp. 27.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

313.   ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████    *Ex. 187 at -559.*

**JPMC Response**: Undisputed that cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

314.   ████████████████████████████████████████████

████████████████████    *Ex. 188 at -001-003; Ex. 189 at -008.*

██████████████████████████████    ███████████████████████

**JPMC Response**: ████████████████████████████

████████████████████    USVI Ex. 188 at -001-003; USVI Ex.
189 at -008.  Disputed as to materiality in light of the fact that Epstein did not refer Brin
or Page to the Private Bank.  *See* JPMC Ex. 62 at Resps. 17, 18; JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
170-175.

315.  *Sergey Brin became a client of JPMorgan's San Francisco Private Bank in 2004.  Ex. 190*

*at -710.*

**JPMC Response**: Undisputed that Brin became a client of the Private Bank in 2004.
Disputed as to the inference that Epstein referred Brin.  *See* JPMC Ex. 62 at Resp. 18;
JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
170-175.

316.  *Staley referred Brin to Robert Keller, JPMorgan Banker/Managing Director in San*

*Francisco.  Ex. 189 at -001; Ex. 190 at -709.*

**JPMC Response**: Undisputed that Brin was referred to Keller by Staley.  Disputed as to
the inference that Epstein referred Brin.  *See* JPMC Ex. 62 at Resp. 18; JPMC Ex. 71 at
53:3-18 .

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
170-175.

317.  ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████    *Ex. 191 at -185.*

**JPMC Response**: ██████████████████████████████████████

███████████████████████████████████████    USVI
Ex. 191 at -185.  ████████████████████████

178

██████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

318. █████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████ *Ex.*

*192 at -515.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 192 at -515.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

319. █████████████████████████████████████

████████████████████████████████████

████ *Ex. 193 at -516.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 193 at -516.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

320. █████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████ *Ex. 194 at -517.*

**JPMC Response**: ███████████████████████████████
████████████████████████████████████████████
████████████████████████████████████



USVI Ex. 194 at -517.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

321.

*Ex. 195 at -519.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 195 at -519.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

322.   *On October 26, 2006, Ann Borowiec emailed Jes Staley, "Catherine spoke to me about the need to have a NY team for Jeffrey Epstein, as the advisor to the Google founders." Ex. 196 at -356.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 196 at -356.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

323.

███████████████████████████████████████████████

██████████████████████████████████████████████ *Ex. 197 at -*

*520.*

> **JPMC Response**:  Disputed to the extent USVI misstates the document.  Borowiec's email states "Which," not "which."  USVI Ex. 197 at -520.  Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

324. ████████████████████████████████████████████████

███████████████████████████████████ *Ex. 198 at -522.*

> **JPMC Response**: ████████████████████████████████
> ███████████ USVI Ex. 198 at -522.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

325. ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ *Ex. 199 at -590.*

> **JPMC Response**: ███████████████████████████████
> ███████████████████████████████████████████████
> ███████████████████████████████████████████████
> ███████████████████████████████████████████████
> ██████████████████ USVI Ex. 199 at -590. █
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

███████████████████████████████████████████████████

326. ███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ *Ex. 200 at -423.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 200 at -423.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

327. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ *Ex. 201 at -152.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 201 at -152.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

328. ███████████████████████████████████████████████

███████████████████████████ *Ex. 202 at -668.*██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ *Ex. 203 at -670.*

**JPMC Response**: Undisputed that the cited documents contain the quoted text.  USVI Ex. 203 at -670.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.



329. ██████████████████████████████████

*Ex. 204 at -671.*

**JPMC Response:**

USVI Ex. 204 at -671. ████████████████.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

330. ██████████████████████████████████

*Ex. 205 at -720.*

**JPMC Response:**

USVI Ex. 205 at -720. ████████████████.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

331. *In July 2014, JPMorgan noted "[t]he overall Brin relationship is one of the largest in the Private Bank, of +$4BN." Ex. 190 at -710.*