# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GOVERNMENT OF THE UNITED
STATES VIRGIN ISLANDS,

                    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

                    Defendant/Third-Party
                    Plaintiff.

Case No. 22-cv-10904 (JSR)

JPMORGAN CHASE BANK, N.A.,

Third-Party Plaintiff,

v.

JAMES EDWARD STALEY,

Third-Party Defendant.

## JPMORGAN CHASE BANK, N.A.'S REPLY
## TO USVI'S OPPOSITION TO SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...............................................................................................................................2

    A.    USVI Cannot Seek "Victim Damages" .....................................................2

    B.    USVI Cannot Seek Punitive Damages .......................................................5

    C.    USVI Cannot Seek Civil Penalties ...........................................................9

    D.    USVI Cannot Recover Restitution or Disgorgement..............................11

    E.    USVI Cannot Prevail On Elements Of Obstruction ...............................12

    F.    USVI Cannot Pursue Retroactive Relief..................................................14

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aiken v. Interglobal Mergers & Acquisitions*,
    2006 WL 1878323 (S.D.N.Y. July 5, 2006) ..........................................................................13

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982).............................................................................................................2, 3

*Astoria Fed. Sav. & Loan Assn. v. Solimino*,
    501 U.S. 104 (1991)................................................................................................................6

*Atherton v. FDIC*,
    519 U.S. 213 (1997)................................................................................................................6

*Illinois v. AU Optronics Corp.*,
    794 F. Supp. 2d 845 (N.D. Ill. 2011) ...................................................................................10

*New Mexico ex rel. Balderas v. Real Estate Law Ctr. PC*,
    430 F. Supp. 3d 761 (D.N.M. 2019) (12 U.S.C. §5538(b)) ............................................10, 11

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)................................................................................................................5

*Cartier Saada S.A. v. Bank of America, N.A.*,
    2022 WL 195598 (S.D.N.Y. Jan. 21, 2022) .........................................................................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..............................................................................................................13

*David v. Signal Int'l, LLC*,
    2015 WL 5254625 (E.D. La. Sept. 9, 2015) ..........................................................................7

*Davis v. Passman*,
    442 U.S. 228 (1979)..............................................................................................................10

*Ditullio v. Boehm*,
    662 F.3d 1091 (9th Cir. 2011) ................................................................................................8

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
    520 U.S. 939 (1997)..............................................................................................................11

*King v. Macri*,
    993 F.2d 294 (2d Cir. 1993)....................................................................................................7

*Landgraf v. USI Film Prod.*,
   511 U.S. 244 (1994)...............................................................................8, 14, 15

*Lee v. Edwards*,
   101 F.3d 805 (2d Cir. 1996).............................................................................7

*Liu v. SEC*,
   140 S. Ct. 1936 (2020)....................................................................................12

*Loughrin v. United States*,
   573 U.S. 351 (2014).........................................................................................2

*West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*,
   842 F. Supp. 2d 984 (S.D.W. Va. 2012).........................................................11

*Meghrig v. KFC Western, Inc.*,
   516 U.S. 479 (1996).........................................................................................9

*I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*,
   502 U.S. 183 (1991).......................................................................................11

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
   442 F.3d 101 (2d Cir. 2006).............................................................................6

*New York by Abrams v. Seneci*,
   817 F.2d 1015 (2d Cir. 1987)...........................................................................3

*New York by Underwood v. LaRose Indus. LLC*,
   386 F. Supp. 3d 214 (N.D.N.Y. 2019)............................................................10

*New York by Vacco v. Operation Rescue Nat'l*,
   80 F.3d 64 (2d Cir. 1996)............................................................................3, 10

*People by Abrams v. 11 Cornwell Co.*,
   695 F.2d 34 (2d Cir. 1982)...............................................................................3

*People Helpers Found., Inc. v. City of Richmond, Va.*,
   12 F.3d 1321 (4th Cir. 1993) ...........................................................................6

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007)..........................................................................................6

*United States v. Priv. San. Indus. Ass'n of Nassau/Suffolk, Inc.*,
   793 F. Supp. 1114 (E.D.N.Y. 1992) .................................................................7

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013).......................................................................10, 11

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,*
    444 U.S. 11 (1979) ........................................................................................10

*Velez v. Sanchez,*
    693 F.3d 308 (2d Cir. 2012) .............................................................10, 14, 15

*Virgilio v. City of N.Y.,*
    407 F.3d 105 (2d Cir. 2005) ...........................................................................5

*Wachovia Bank v. Schmidt,*
    546 U.S. 303 (2006) .......................................................................................9

*Wang v. Gold Mantis Constr. Decoration (CNMI), LLC,*
    2021 WL 2065398 (D.N.M. May 24, 2021) ...................................................7

**Federal Statutes**

12 U.S.C. § 5538(b) .........................................................................................10

12 U.S.C. §§ 5538(b)(1), 5565(a)(2) ...............................................................11

15 U.S.C. § 1117(a) .........................................................................................11

15 U.S.C. § 6309(c) .........................................................................................10

18 U.S.C. § 248(c)(3) .......................................................................................10

18 U.S.C. § 1591(d) ...................................................................................14, 15

18 U.S.C. § 1593(a) ...........................................................................................9

18 U.S.C. § 1593(a)-(b) ...................................................................................11

18 U.S.C. § 1595 ..............................................................................................11

49 U.S.C. § 14711(a) .......................................................................................10

## PRELIMINARY STATEMENT

After twice failing to articulate a cognizable theory for damages—first in its (denied) motion to strike, and again after this Court *sua sponte* inquired about "precisely what interests USVI is seeking to vindicate" and "what damages USVI claims"—USVI has failed for a third time to explain why it is entitled (in its own words) to "victim damages"—especially as this Court is presently supervising the allocation of those very same "victim damages" to actual victims. It fails to explain why it is entitled to "punitive damages" when it has no compensatory harm to begin with. It fails to explain why a total lack of Congressional authorization to seek "fines" or "penalties" is somehow evidence of a mandate to enforce federal criminal law—let alone retroactively. And it fails to cite anything that suggests JPMC intentionally manipulated any ███ ██ federal filing for any purpose, let alone to thwart an investigation it never knew existed and that all parties agree the federal government never revealed.

USVI cannot justify these claims because they are not justifiable. USVI cannot commandeer victims' claims or profit from the pain it helped Epstein inflict. It cannot assume federal enforcement authority or impose federal "fines." And it cannot overcome these legal barriers by ignoring them and pointing instead to Epstein's monstrosity or snippets of a legislative history that confirms only what everyone already knows—that sex trafficking is a scourge. As JPMC said at the outset, USVI's case is not about Epstein's victims. It is about whether USVI can use those victims to obtain a windfall from JPMC. Summary judgment is the tool that "prevent[s] the system of extremely simple pleadings from shielding claimants without real claims." Wright & Miller, Fed. Prac. & Proc. § 2712 (4th ed.). After intense discovery and ample briefing, USVI's inability to articulate any viable damages theory—or to identify any facts that could constitute intentional "obstruction"—is now plain. Summary judgment should enter.

## ARGUMENT

**A.      USVI Cannot Seek "Victim Damages"**

USVI now freely concedes that it has no quasi-sovereign interest in money damages, but rather "seeks victim damages"—*i.e.*, the "interests of a private party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601-602 (1982).  For several independently sufficient reasons, USVI cannot annex these "private" interests, and summary judgment should enter saying so.

*First*, USVI lacks a cause of action to seek "victim damages."  Section 1595(d) simply does not—as USVI incorrectly claims—say USVI can "seek damages for individuals."  Opp. 7.  Just the opposite, it says USVI can vindicate "an interest of residents" collectively—*not* the interests of any individual resident—and seek the "appropriate relief" for a state acting as "*parens patriae*."  In other words, § 1595(d) incorporates the scope and nature of *parens patriae* as described in *Snapp*, "*the* leading case … on *parens patriae* standing."  MTD Order at 19 (emphasis original).  USVI knows this is fatal to its demand for "victim damages."  That is why it does not rely on the text of § 1595(d), but rather different language used in different provisions of different laws.  But those statutes have nothing to do with this case and do nothing more than prove that Congress knows how to write the words it omitted in § 1595(d).  "When Congress includes particular language" in one place, but "omits it in another," that means "Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014).  Here, Congress said nothing about Attorneys General obtaining individual "victim damages."  It instead gave USVI a traditional *parens patriae* cause of action, just as this Court recognized at the motion to dismiss.

*Second*, looking to *Snapp* as § 1595(d) directs, it is clear USVI lacks Article III standing to seek "victim damages."  "Article III of the Constitution has been interpreted to impose distinct requirements for standing to sue in federal court," which here entail "an injury to a quasi-sovereign

interest" and "relief to the territory's injury that would be unavailable to individual plaintiffs." MTD Order 16-17. "[A] State may, for a variety of reasons, attempt to pursue the interests of a private party … [but] interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Snapp*, 458 U.S. at 601-602. In such situations, "the State is only a nominal party without a real interest of its own," and does "not have standing under the *parens patriae* doctrine." *Id.* at 600. These constitutional principles are, as this Court explained, "the final word." MTD Order 16. And they categorically foreclose USVI's attempt to convert claims available to (and obtained by) Epstein's victims into government revenue—as the Second Circuit has explained time and again. *New York by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996); *New York by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987).

JPMC's motion explained this, and yet USVI still did not attempt to articulate a "quasi-sovereign" interest that would satisfy *Snapp* and the Second Circuit and this Court's holdings. Instead, USVI reiterated its intent to seek exactly what the caselaw forbids—a "monetary award … sought solely for injury … to the state's citizens." *Seneci*, 817 F.2d at 1017. No matter how broadly USVI wishes to interpret the words "appropriate relief" in § 1595(d), it cannot abrogate the clear guardrails established by *Snapp* and reaffirmed by the Second Circuit and this Court.

*Third*, USVI lacks standing to pursue "victim damages" because the victims are collecting those same damages already. As JPMC explained, "*parens patriae* standing [] requires a finding that individuals could not obtain complete relief through a private suit." *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982). This Court has already made that clear, explaining that USVI can only seek "relief to the territory's injury that would be unavailable to individual plaintiffs." MTD Order 16-17. Sometimes that inquiry requires hypothesizing what claims are

available to individuals and whether they have the proper incentives to bring them. Not here. Here, this Court has preliminarily approved and is currently supervising what it called an "excellent" classwide settlement for "all persons who were harmed, injured, exploited, or abused by Jeffrey Epstein, or by any person who is connected to or otherwise associated with Jeffrey Epstein or any Jeffrey Epstein sex trafficking venture." *Doe v. JP Morgan Chase Bank, N.A.,* Case No. 1:22-cv-10019, Dkt. 181-2. There can be no stronger evidence that USVI's demand for "victim damages" is "available" to the victims—and thus categorically unavailable to USVI as *parens patriae*—than a classwide settlement for that very relief in this very Court.

*Fourth,* USVI outright ignores *In re Baldwin*, which disposes of its argument that USVI somehow "controls" the claims released by the victims in the class settlement. 770 F.2d 328 (2d Cir. 1985). The Second Circuit expressly held that a classwide release of claims "bar[s] the states from bringing claims … derivative of the plaintiff's rights," regardless of whether the state "represented itself to be acting as a 'sovereign,'" or "described its prayer as one for 'restitution' or a 'penalty.'" *Id.* at 336-337. It also does not matter (as USVI suggests) that the state brings its case under a "remedial provision" that "only the state" can invoke. *Id.* at 341. What matters is that Second Circuit precedent expressly forbids states from derivatively pursuing released claims, full stop. The law could not be otherwise. "The success of any federal settlement [is] dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts. If states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement." *Id.* at 337. That unequivocal language was maybe why USVI ignored the case. It is also why this Court should grant summary judgment.

4

USVI is wrong that this argument is "premature" because (i) victims could opt-out or (ii) the settlement awaits final approval. The first argument is irrelevant on two levels. USVI cannot represent any victim's private interests regardless of their decision to participate in the settlement. The claims remain the victims' alone. As to the second, the settlement at issue in *In Re Baldwin* also awaited final approval. That did not stop the Second Circuit from approving an injunction preventing states from asserting claims derivative of those the district court was supervising. It follows that this Court should decline USVI's bid to leverage the *Doe* settlement to serve its duplicative claims here.

*Finally*, that USVI cannot seek "victim damages" does not "strip section 1595(d) of any teeth." Opp. 1. USVI perhaps (like any plaintiff) had standing to pursue proprietary damages. It gave those up. Under *Snapp*, it had *parens patriae* standing to pursue damages to "quasi-sovereign" interests. It failed to pursue, prove, or calculate any such thing—*i.e.*, quantifiable "effects of criminal sex-trafficking enterprises flourishing in the Islands." MTD Order 18. It, like Puerto Rico in *Snapp*, at least has *standing* to pursue an injunction, even if it has failed to adduce any facts that would justify forward-looking relief. Indeed, it describes injunctive relief as the "quintessential" remedy in *parens patriae* actions. Dkt. 205 at 2.

USVI does not, however, have standing to pursue "victim damages," especially those damages the victims have already obtained through private lawsuits. A consistent line of caselaw makes that clear. And the fact that USVI cannot collect those damages a second time is no defect of the TVPA. It is simply the necessary consequence of USVI's *parens patriae* posture.

## B.    USVI Cannot Seek Punitive Damages

"[P]unitive damages … cannot be invoked without some compensatory injury." *Virgilio v. City of N.Y.*, 407 F.3d 105, 117 (2d Cir. 2005). To do otherwise would contradict the "principle

that exemplary damages must bear a 'reasonable relationship' to compensatory damages." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996).

As explained above, USVI cannot utilize *parens patriae* to represent the private interests of victims. It is also "forbid[den] … to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties," "*e.g.*, victims whom [USVI] do[es] not represent." *Philip Morris USA v. Williams*, 549 U.S. 346, 348, 353 (2007). It follows that USVI has no viable path to punitive damages. USVI offers four reasons why it should be exempt from this rule. None suffices.

*First*, USVI cannot avoid the clear statement of law in *Virgilio* and so it complains that case arose under New York law. But *Virgilio* does not stand alone—it is emblematic of the majority common law rule that establishes punitive damages may be awarded only "when the plaintiff has suffered legally recognized harm" in the first instance. Dan B. Dobbs et al., The Law of Torts § 483 (2d ed.). Congress "is understood to legislate against a background of common-law adjudicatory principles," *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108, (1991), and there is no indication it abrogated this familiar rule in the TVPA. *See, e.g.*, *People Helpers Found., Inc. v. City of Richmond, Va.*, 12 F.3d 1321, 1327 (4th Cir. 1993) (applying federal law, "persuaded by the law of a majority of the states" that "[w]hen a plaintiff has failed to prove actionable harm, compensatory damages are not recoverable and logically it follows that punitive damages are also barred"). Stated differently, the presumption is that "Congress 'acts … against the background of the total *corpus juris* of the states.'" *Atherton v. FDIC*, 519 U.S. 213, 218 (1997). *Virgilio* explains what that *corpus* is. And USVI fails to acknowledge, let alone overcome, the resulting presumption that the TVPA is not an outlier, but rather hews the traditional line that punitives depend upon predicate compensatory damages.

*Second*, citing nothing in support, USVI attempts to avail itself of the narrow exception for untethered punitive awards under § 1983 and other civil rights statutes. *See, e.g.*, *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006). No case applies that exception to the TVPA.[1] And the case on which USVI relies acknowledged the potential impropriety of awarding punitive damages for claims (like USVI's here) that are "too insubstantial to support any compensatory awards" as a matter of law. *King v. Macri*, 993 F.2d 294, 298 (2d Cir. 1993).

Nor does the rationale for the *sui generis* § 1983 rule—namely that "violations of civil rights" can be "particularly egregious" but "result in only a small amount of economic damages or … whose monetary value is difficult to determine," *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996) (internal quotations omitted)—have any application to the TVPA, under which victims of sex-trafficking typically have little difficulty proving significant concrete harm, or to this case, where USVI seeks to hold JPMC secondarily liable for providing ordinary commercial services. Indeed, when plaintiffs (unlike USVI) do prove compensatory TVPA damages, courts have no trouble balancing a punitive damages award consistent with *Gore*'s mandate for a reasonable ratio. *E.g. Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, 2021 WL 2065398, at *15 (D.N.M. May 24, 2021) (TVPA courts have "frequently awarded punitive damages in [TVPA] cases at the same amount of compensatory damages and have found a 1:1 ratio sufficient"). But as JPMC explained, here USVI has no compensatory damages, and no punitive damages award can bear a "reasonable relationship" to a nullity.

---

[1] The only case USVI cites in support of doing so—a 2015 decision from a district court in the Eastern District of Louisiana relying upon a law review article—simply recognized the unremarkable proposition that the TVPA allows for nominal damages. *David v. Signal Int'l, LLC*, 2015 WL 5254625, at *2 (E.D. La. Sept. 9, 2015).

*Third*, even if USVI *could* seek punitive damages for *others*' private harms, such a free-floating award would, in both fact and effect, be a "criminal penalty," *United States v. Priv. San. Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1151 (E.D.N.Y. 1992), which obviously cannot be applied retroactively to pre-2018 conduct, *see Landgraf v. USI Film Prod.*, 511 U.S. 244, 266 (1994).  USVI again elides this principle by advancing the irrelevant observation that *victims* could obtain punitive damages under § 1595(a) prior to 2018.  USVI is not a victim and that isn't the point.  The fact that TVPA victims (who have compensatory damages) could obtain a punitive damages award in their own cases does not mean USVI can impose its own retroactive, free-floating penalty for pre-2018 conduct simply by dint of the label "punitive damages," and wash its hands of *Landgraf*.  The prohibition against retroactive application of criminal punishment cannot be so lightly discarded.

*Finally*, USVI (at 10-11) protests that a reasonable juror could award punitive damages because it alleges that "JPMorgan knowingly handled" Epstein's transactions.  But punitive damages cannot be premised upon mere knowing conduct—JPMC's actions must have been "intentional and outrageous." *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).[2]  Nowhere in the record will the Court find facts substantiating JPMC's "intent" to violate any law or cause any harm.  Indeed, this Court has already recognized that plaintiffs cannot plead, let alone prove, that JPMC acted "with the specific intent of benefiting from a sex-trafficking venture."  Dkt. 130 at 40.  Thus, even if punitive damages were available to USVI, it cannot prove them as a matter of law.

---

[2] "Knowingly handling" a financial transaction, whatever that means in the context of a bank processing customer transactions, is a far cry from "knowingly participating" in a sex-trafficking venture.

### C.     USVI Cannot Seek Civil Penalties

USVI ignores entirely JPMC's argument that only the federal government can enforce the criminal provisions of the TVPA.  Rather, as described above, Congress afforded USVI a "civil remedy" as "*parens patriae*," providing USVI the cause of action that the Supreme Court described and circumscribed in *Snapp*.  That is all § 1595(d) says, and all it can mean.  It says nothing, and thus means nothing, concerning "fines" or "penalties."

USVI's first error in arguing otherwise is to hang its case on § 1593(a)—a separate provision of no relevance here that mandates victim restitution in criminal TVPA cases, which only federal prosecutors may bring.  By its own terms, that provision has no application in a civil case like this one, no matter USVI's self-serving description (at 11) of this civil lawsuit as a "law enforcement action."  And § 1593(a)'s mandate for criminal restitution in criminal cases "in addition to any other civil or criminal penalties *authorized by law*" only highlights the fact that— as USVI acknowledges—§ 1595(d) authorizes no such thing.  18 U.S.C. § 1593(a) (emphasis added).

USVI's argument does not improve from there.  Because § 1595(d) does not "authorize" a "civil penalty," USVI again looks abroad to *parens patriae* provisions of other federal statutes that expressly provide for state enforcement actions to collect civil fines or penalties.  Again, that only proves Congress knows how to give the states authority that it did not give in the TVPA.  *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("Congress thus demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy.").  USVI quotes Latin to avoid this common sense, but *in pari materia* suggests only that "statutes addressing the same subject matter generally should be read 'as if they were one law.'"  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006) (emphasis added) (internal quotations omitted).  That canon does *not* mean

that USVI can read into a federal anti-trafficking statute the detailed remedial schemes of entirely different federal statutes governing subject matter ranging from access to reproductive health services (18 U.S.C. § 248(c)(3)), to unfair or deceptive acts or practices concerning mortgage loans, (12 U.S.C. § 5538(b)), interstate transport of household goods (49 U.S.C. § 14711(a)), or professional boxing safety (15 U.S.C. § 6309(c)), simply because the statutes share the words "*parens patriae*."  The existence of a *parens patriae* cause of action is "analytically distinct" from the secondary question of what specific relief that cause of action affords.  *Davis v. Passman*, 442 U.S. 228, 239 (1979).  Here, § 1595(d) does not provide for civil penalties and so USVI cannot obtain them.  *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 21 (1979).[3]

At bottom, USVI wants this Court to invent a novel cause of action that would permit it to recover penalties it admits "are not damages," SUMF ¶ 55, and are akin to the consent order it repeatedly cites between the New York Department of Financial Services and Deutsche Bank AG for violations of the New York Banking Law.  Dkt. 205, at 3-4.  But USVI is not a regulatory entity like NYDFS, and it has no authority to enforce any federal law, whether under § 1595(d) or otherwise.  Even if the statute could be so read, it would constitute "a significant expansion of civil

---

[3] These principles are underscored by USVI's failure to cite anything to contravene them. It cites no precedent awarding civil penalties under § 1595(d).  And every case it *does* cite involved not just different laws but also the express authorization of civil penalties—whether under federal or state law—that is entirely missing in the TVPA provision under which USVI proceeds.  *New Mexico ex rel. Balderas v. Real Estate Law Ctr. PC*, 430 F. Supp. 3d 761 (D.N.M. 2019) (12 U.S.C. §5538(b)); *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845 (N.D. Ill. 2011) (740 ILCS 10/7); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013) (*parens patriae* claim brought by Kentucky pursuant to Kentucky statute to enforce Kentucky laws); *New York by Underwood v. LaRose Indus. LLC*, 386 F. Supp. 3d 214 (N.D.N.Y. 2019) (*parens patriae* claim brought by New York to enforce state laws governing the safety and marketing of children's toys).  USVI also claims (at 12) that *Operation Rescue* held that New York had "[*parens patriae*] standing to enforce compliance … by seeking noncompensatory fines[.]" (alteration in original).  New York had that authority because it was a (i) party to an injunction, (ii) another party violated that injunction, and (iii) it suffered sovereign damages as a result.  *Operation Rescue*, 80 F.3d at 71.  None of those facts exist here.

liability" under the TVPA and thus could not have retroactive application. *Velez v. Sanchez*, 693 F.3d 308, 324-25 (2d Cir. 2012); *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 950 (1997).  Summary judgment should so enter.

### D.      USVI Cannot Recover Restitution or Disgorgement

Similarly, USVI is not entitled to recover restitution or disgorgement under § 1595(d).  As USVI concedes (at 13), restitution is authorized as a *criminal* punishment under a separate provision of the TVPA.  *See* 18 U.S.C. § 1593(a)-(b).  That concession alone is enough to defeat its claim to restitution in a *parens patriae* "civil action" authorized under the TVPA's "civil remedy."  18 U.S.C. § 1595.  *See I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").  Restitution and disgorgement appear nowhere in the TVPA's provision of civil remedies under § 1595—not to victims under § 1595(a) nor to states under § 1595(d)—and USVI cannot recover them here.

Yet again, USVI cites everything but the statute that gives its claim life.  Every provision it cites as proof that § 1595(d) contemplates "restitution" is a provision that actually says what the TVPA does not.  *See Balderas*, 430 F. Supp. 3d at 875 (12 U.S.C. §§ 5538(b)(1), 5565(a)(2)); *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 998 (S.D.W. Va. 2012) (*parens patriae* claim brought under the West Virginia Consumer credit and Protection Act, W. Va. Code § 46A-7-111); *Purdue Pharma*, 704 F.3d at 215.  USVI also cites *4 Pillar Dynasty LLC v. New York & Co., Inc.* to protest that disgorgement is "consistent with deterrence objectives of *parens patriae* actions."  933 F.3d 202, 213 (2d Cir. 2019).  But *4 Pillar* was not a *parens patriae* case; it was a trademark case arising under the Lanham Act, which specifically provides for recovery of a defendant's profits for trademark infringement subject to "principles of equity." 15

11

U.S.C. § 1117(a).  And as the Supreme Court has since held, disgorgement only aligns with these "principles of equity" when that money is used to compensate actual victims.  *See Liu v.  SEC*, 140 S. Ct. 1936, 1941, 1946-47 (2020).  As discussed *supra*, the victims have been compensated by the nationwide class settlement this Court has already preliminarily approved and praised, and *parens patriae* does not allow USVI to collect and distribute those damages in any event.

### E.   USVI Cannot Prevail On Elements Of Obstruction

USVI's opposition proves it cannot prevail on its obstruction claim even assuming all its facts to be true.  USVI does not dispute that JPMC was never made privy to the existence of a TVPA investigation despite its repeated efforts to determine whether Epstein was the target of a federal probe.  SUMF ¶¶ 33-39.  Nor does USVI controvert the substantial evidence that JPMC alerted federal regulators to a number of ███████ transactions related to Epstein's accounts, SUMF ¶¶ 40-41, 43, 47-50, and that the federal government (which, unlike USVI, has anti-money-laundering expertise) never followed up, SUMF ¶¶ 42, 51.  USVI instead weaves an imaginary narrative in which, at every turn, federal investigators were thwarted because JPMC's efforts to ███████████████████████.  But this does not save USVI's obstruction claim from summary judgment for at least three reasons.

*First*, USVI still never explains how JPMC actually knew about an investigation whose existence investigators refused to confirm.  USVI continues to insist that press clippings about possible criminal probes, payments to ███████, and a neither-confirm-nor-deny response from federal officers add up to actual knowledge that a TVPA investigation was underway.  They do not.  Internal discussions showing that JPMC, in response to media reports, took seriously the *possibility* that Epstein might be under federal investigation do not show that JPMC *actually knew* an investigation was in progress.  Opp. 16-18.  Nor can USVI establish knowledge through JPMC's involvement in "handling payments … ███████████████," Opp. 18, particularly

given that JPMC affirmatively asked Epstein's lawyers whether he was under federal investigation and was told that he was not.  JPMC MSJ 17-18.  And no rational juror could credit USVI's double-negative argument that JPMC "knew" of a TVPA investigation because "[t]he AUSA and the FBI did not tell the Bank there was *no* investigation."  Opp. 18 (emphasis added).

*Second*, USVI cannot wield the TVPA's obstruction provisions to seek damages for federal regulatory failures untethered to its asserted injuries.  ████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████  USVI does not enforce the BSA—FinCEN does.  And the BSA, which creates no private right of action, affords private parties like USVI no relief for alleged reporting violations: "'[I]t is now well settled that the anti-money-launder[ing] obligations of banks, as established by the Bank Secrecy Act ... do not create a private cause of action.'"  *Cartier Saada S.A. v. Bank of America, N.A.*, 2022 WL 195598, at *2 (S.D.N.Y. Jan. 21, 2022); *see also Aiken v. Interglobal Mergers & Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ("[N]either the Bank Secrecy Act nor the Patriot Act affords a private right of action.").  Nor can USVI meet the basic Article III requirement that it demonstrate an injury "fairly traceable" to JPMC's conduct.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).  ████████

████████████████████████████████████████████████████████████

██████████████████████████

*Finally*, USVI's obstruction claim hinges on what it contends were at most *negligent* shortcomings ████████████████████████████, not deliberate efforts to obstruct an investigation.  *See* Opp. 16-23.  According to USVI—an entity with no responsibility for or expertise in the enforcement of anti-money-laundering regulations—JPMC should have "████████████████████████████████████████████████████████████



.” Opp. 19.

. USVI cannot prove that JPMC *intentionally obstructed* a TVPA investigation by insisting ever more strenuously that JPMC

.

At bottom, USVI's opposition was its final opportunity to identify for this Court a single fact in the voluminous record that shows JPMC not just knew of a federal TVPA investigation, but also *intentionally* tried to thwart it. It failed to do so. It failed even to address the question of JPMC's intent in this section of its opposition—the word "intent" appears once, when conceding that it is an element of USVI's claim. Opp. 16-23. That is because there are no facts to support this element. Summary judgment exists to prevent parties from wasting judicial resources by proceeding to trial on claims they have no possibility of proving. As to obstruction, USVI would stand before a jury and ask it to conclude that JPMC employees had the subjective motivation to stymie the FBI. It would be an argument made of air. Missing any facts whatsoever as to this critical element, USVI has no right to press this claim any further. Summary judgment must enter.

### F. USVI Cannot Pursue Retroactive Relief

Finally, USVI does not dispute that "[n]othing in the language of the TVPRA or its legislative history indicates that Congress intended retroactive application." *Velez*, 693 F.3d at 325. The only question is whether the 2008 amendments to the TVPA "increase[d] a party's liability for past conduct." *Landgraf*, 511 U.S. at 280. The answer is plainly yes. Prior to 2008, there was *no* liability whatsoever either (i) "obstructing" an effort to enforce the TVPA under § 1591(d), or (ii) for acting with "reckless disregard" that either an adult through use of force, fraud, or coercion or a minor was caused to engage in a commercial sex act under § 1591(a)(2). Nobody could be charged criminally for that conduct under § 1591, nor could they be held liable civilly for

it under § 1595(a).  In other words, the 2008 amendments imposed new categories of legal liability that did not exist previously.  MTD Order at 20; *Landgraf*, 511 U.S. at 280; *Velez*, 6963 F.3d at 325.  It follows that neither "obstruction" under § 1591(d) nor the "reckless disregard" standard of § 1591(a)(2) can be applied retroactively to conduct before 2008.

Rather than grapple with this text and precedent, USVI argues (at 23-26) that the 2008 amendments are not impermissibly retroactive because similar standards of liability existed under *other* statutes for *other* crimes.  For example, USVI argues that, by adding obstruction to § 1591, Congress "merely 'conform[ed]'" the sex-trafficking provisions of the TVPA with the statute's forced-labor provisions.  Opp. 23.  This misses the point.  The TVPA's sex-trafficking section addresses an entirely different set of conduct than its forced-labor section.  Regardless of Congress's purpose for the 2008 amendments, what it *did* was create a new cause of action and impose new liability specifically for violations of § 1591 that did not exist previously.  18 U.S.C. § 1591(d) ("Whoever obstructs … the enforcement of *this section* …." (emphasis added)).  It simply does not matter that "obstruction" or "reckless disregard" as general legal concepts existed under the letter of other statutes under which USVI has not brought claims, or in the spirit of federal banking statutes it has no standing to enforce.  What matters is that USVI brings claims for violations of §1591(a)(2) and (d), and that prior to 2008, those provisions did not reach categories of now-liable conduct.  Those categories cannot apply retroactively and, as such, summary judgment should enter.

## CONCLUSION

JPMC'S motion for partial summary judgment should be granted.

Dated: August 14, 2023

**MASSEY & GAIL LLP**

Leonard A. Gail (*pro hac vice*)
Rachel Morse (*pro hac vice*)
50 East Washington Street, Suite 400
Chicago, IL 60602
(t) (312) 283-1590
lgail@masseygail.com
rmorse@masseygail.com

**JONES DAY**

Bethany K. Biesenthal (*pro hac vice pending*)
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(t) (312) 269-4303
(f) (312) 782-8585
bbiesenthal@jonesday.com

Charlotte Taylor
51 Louisiana Ave. NW
Washington, DC 20001
(t) (202) 879-3872
(f) (202) 626-1700
ctaylor@jonesday.com

Respectfully submitted,

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth
John J. Butts
Andrés O'Laughlin
60 State Street
Boston, MA 02109
(t) (617) 526-6000
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com
andy.olaughlin@wilmerhale.com

Boyd M. Johnson III
Robert L. Boone
Alan E. Schoenfeld
Christopher Bouchoux
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
alan.schoenfeld@wilmerhale.com
christopher.bouchoux@wilmerhale.com

*Attorneys for JPMorgan Chase Bank,
N.A.*