UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS<br><br>  Plaintiff,<br><br>V.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>  Defendant/Third-Party Plaintiff.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>  Third-Party Plaintiff,<br><br>V.<br><br>JAMES EDWARD STALEY<br><br>  Third-Party Defendant. | Case Number: 1:22-cv-10904-JSR |

**GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS'
RESPONSE TO DEFENDANT'S LOCAL CIVIL RULE 56.1(B)
<u>COUNTERSTATEMENT OF ADDITIONAL MATERIAL FACTS</u>**

Pursuant to the Court's leave granted during the August 11, 2023 teleconference, Plaintiff Government of the United States Virgin Islands ("the Government") respectfully submits these summary responses to the paragraphs of Defendant JPMorgan Chase Bank, N.A.'s ("JPMorgan") Counterstatement of Additional Material Facts (Dkt. 255 at 230-302) ("CSMF") that deal exclusively with JPMorgan's Affirmative Defenses. In so doing, the Government does not admit or waive objections to paragraphs of the Counterstatement relating to the Government's affirmative claims. As discussed on the phone call, the Government proceeds in summary fashion so as to present these responses in as concise a manner as possible.

A.      **Response to Section Entitled "Epstein Made Payments To USVI Officials and Entities.**

   1.      **Response to Paragraphs 180-182, 191-194**

The Government does not dispute the emails cited in these paragraphs are quoted accurately, but does dispute that the paragraphs are material. The Department of Planning and Natural Resources had no authority or oversight over matters relating to sex offender registration and notification, and there is no evidence that Epstein received special treatment from that agency, in any event. Ex. 304[1] at 226:20-227:16, 233:6-19. Similarly, Epstein's companies were required to make donations pursuant to their Economic Development Commission ("EDC") certificates. Governor Bryan testified: (i) that he would offer suggestions to permit the companies to meet that contractual obligation and denied that those contributions "bought favor"; (ii) that he was unaware whether Epstein's companies ever made any donation to Junior Achievement; and (iii) that his response to Ms. de Jongh stated only that it would have been "self-serving" for Governor Bryan to recommend a donation to Junior Achievement. Ex. 305 at 15:24-16:8, 166:1-167:1, 168:14-169:6, 287:16-289:20. With respect to the proposed donation to the USVI police department, the Government notes that the Police Department received no complaints regarding Epstein. Ex. 306 11:5-19, 16:12-20, 18:11-19:6, 27:21-28:5, 51:16-21, 53:2-54:25.

   2.      **Response to Paragraphs 183-190**

The Government disputes these paragraphs because they are based solely upon inadmissible hearsay in violation of LCvR 56.1(d). The paragraphs cite only a news report and

---

[1] All references to "Exs. 304-319" are to Exhibits to the Declaration of David I. Ackerman in Support of Government of the United States Virgin Islands' Motion for Partial Summary Judgment.

improperly seek to rely on that report for the truth of the matter asserted therein. *See, e.g., Avalon Holdings Corp. v. Gentile*, 2019 WL 4640206, at *4 (S.D.N.Y. Sep. 24, 2019) (collecting cases).

3. **Response to Paragraphs 195-207**

The Government does not dispute the emails cited in these paragraphs are quoted accurately, but does dispute that the paragraphs are material. All the contributions discussed occurred after Delegate Stacey Plaskett left the employ of the Virgin Islands Government, and Delegate Plaskett testified she had no involvement in EDC tax decisions after she left EDA in 2012. Ex. 307 at 287:10-288:15. Delegate Plaskett also testified that Epstein never asked anything from her in exchange for political donations. *Id*. at 221:7-16.

4. **Response to Paragraphs 207-219**

The Government does not dispute the emails cited in these paragraphs are quoted accurately, but does dispute that the paragraphs are material. There is no evidence that any of the political contributions to campaigns of former Government officials were illegal or otherwise unauthorized. Ms. de Jongh testified that the $15,000 payment to the St. Croix Democratic Party described in paragraph 207 was not made on behalf of her husband. Ellsworth Decl. Ex. 208 (Dkt. 267-13) at 188:12-21. And Governor de Jongh confirmed the $15,000 payment to the Special Events Fund was not made at his direction. *Id.*, Ex. 224 at 102:1-13. Virgin Islands law permitted campaign donations of $1,000 per person. Ex. 308 at 34:2-14, 145:2-7; Ex. 309 at 80:5-17. There is no evidence of payments from Epstein to any candidate that exceeded that amount. The relationship between Epstein and the de Jongh family never played any role in the Government's monitoring of Epstein as a sex offender, and neither Cecile de Jongh nor Governor de Jongh ever reached out to anyone involved in sex offender monitoring concerning Epstein. Ex. 310 at 179:15-24. Governor Bryan further testified (i) that he never provided special treatment to Epstein; (ii) that

he had no knowledge of any contribution from Epstein to his campaign; (iii) that he was not involved at all in fundraising for his inaugural events; and (iv) that the inaugural effort was not undertaken by his campaign. Ex. 305 at 7:20-25, 142:19-22, 173:6-174:21, 280:3-17.

5.  **Response to Paragraphs 220, 232**

The Government disputes the information in this paragraph is material. Further, Celestino White was no longer a USVI senator as of the date of this email (2013). *See* JPM CSMF ¶ 232 (identifying Mr. White as a "former Senator").

6.  **Response to Paragraphs 221-231**

The Government does not dispute the facts concerning Ms. de Jongh's employment with Epstein or the financial benefits she received resulting therefrom; nor does it dispute the fact that Epstein loaned the de Jonghs $200,000. The Government does dispute that these facts are material to the summary judgment motion because they do not evidence special treatment by the Government. Testimony from numerous witnesses establishes that tuition payments are commonly provided by employers in the Virgin Islands. Ex. 304 at 236:23-238:9; Ex. 305 at 287:19-289:20, 295:4-24. With respect to paragraphs 226-228, the loan described occurred after Governor de Jongh left office and faced charges brought by the following administration. Governor de Jongh left office in January of 2015. Ex. 309 at 25:1-27:2. The loan was paid back the following year. *Id*. at 297:13-17. The relationship between Epstein and the de Jongh family never played any role in the Government's monitoring of Epstein as a sex offender, and neither Cecile de Jongh nor Governor de Jongh ever reached out to anyone involved in sex offender monitoring concerning Epstein. Ex. 310 at 179:15-24.

7.     **Response to Paragraphs 233-236**

The Government does not dispute the facts expressed in these paragraphs, but disputes they are material. There is no evidence of payments and the emails are all dated after the time period in which Cecile de Jongh was First Lady.

B.     **Response to Section Entitled "Epstein Gave USVI Officials and Entities Non-Monetary Benefits."**

8.     **Response to Paragraph 237**

The Government does not dispute the facts concerning Ms. de Jongh's stay in Epstein's New York apartment in 2017, but disputes the fact is material. Ms. de Jongh was no longer First Lady at that time, *see* CSMF ¶221, and stayed in the apartment while recovering from two surgeries. Ex. 311 at 42:22-43:22. There is no evidence that the Government office holders in 2017 provided Epstein preferential treatment because of this stay.

9.     **Response to Paragraphs 238-242**

The Government does not dispute the emails or testimony are quoted accurately, but disputes the information is material. There is no evidence that Epstein ever loaned the Government any money, let alone $50 million, as described in the email in paragraph 238. The emails involving Governor de Jongh all occurred after he was out of office. Ex. 309 at 342:4-343:5. The remaining paragraphs relate to communications with Governor Kenneth Mapp, who testified that Epstein was only one of a number of people from whom he sought advice concerning financial matters concerning the Virgin Islands. Ex. 308 at 40:2-42:21, 120:8-121:15, 216:1-15. Governor Mapp further testified that none of his interactions with Epstein gave any indication that Epstein was engaged in human trafficking in the Virgin Islands or anywhere else, and confirmed that he did not provide Epstein with "favors or benefits" that he would not have extended to other Virgin Islands residents. *Id*. at 256:3-257:2.

C.     **Response to Section Entitled "USVI Had Knowledge Of Epstein's Crimes."**

10.     **Response to Paragraphs 244-248, 250-251**

The Government does not dispute the description of the contents of the news articles cited therein. The Government disputes the implication that the Government somehow had "knowledge of Epstein's crimes" based upon news articles. Unlike a bank's obligation to conduct due diligence (*see* Gov't Statement of Material Facts ¶ 37), news articles and anonymous rumors were not sufficient to trigger an investigation at the Department of Justice and do not provide probable cause for a warrant. *See* Gov't Statement of Material Facts at ¶ 427-430.

11.     **Response to Paragraph 249**

The Government disputes that the paragraph accurately summarizes the document.  Ellsworth Decl. Ex. 257 (Dkt. 267-64); Ex. 306 at 133:18-134:20.

12.     **Response to Paragraph 252**

The Government does not dispute the accuracy of the testimony cited, but does dispute that the testimony is material or establishes that the Government had "knowledge" of allegations concerning Epstein sufficient to trigger a law enforcement investigation. *See* Gov't Statement of Material Facts at ¶ 427-430. In particular, Ms. Pinney testified that while DOJ had the ability to search the internet for articles, she did not believe "a Yahoo or a Google search would have been enough" to warrant an investigation. Ellsworth Decl. Ex. 261 (Dkt. 267-68) at 223:1-25. She also testified that the Department's resources did not enable them to conduct Google searches on every offender. Ex. 310 at 225:3-227:12.

13. **Response to Paragraph 253**

The Government disputes the paragraph accurately summarizes Attorney George's testimony. The cited testimony establishes only that, in April 2019, Attorney George undertook a review of publicly available information to educate herself on the news reports concerning Epstein. Ellsworth Decl. Ex. 262 (Dkt. 267-69) at 74:19-76:25. There is no testimony that she reviewed "civil complaints." *See also* Gov't Statement of Material Facts at ¶ 428-431.

14. **Response to Paragraphs 254-255**

The Government does not dispute the paragraphs accurately quote Attorney Thomas-Jacob's testimony, but dispute the paragraphs are material or complete. Attorney Thomas-Jacobs testified that it would be "an unreasonable obligation on the Virgin Islands" to require it to monitor every public docket in the country; testified that she didn't know whether the Virgin Islands monitored press accounts for Epstein; and confirmed multiple times that neither she nor the Department of Justice was aware of the allegations against Epstein. Ellsworth Decl. Ex. 263 (Dkt. 267-70) at 127:13-17; Ex. 312 at 132:18-135:25, 146:24-147:8.

D. **Response to Section Entitled "USVI's Lax Sex Offender Monitoring Of Epstein Facilitated His Crimes."**

15. **Response to Paragraphs 256-258**

The Government does not dispute the accuracy of the testimony cited, but does dispute that the testimony is material or establishes that the Government had "knowledge" of allegations concerning Epstein sufficient to trigger a law enforcement investigation. *See* Gov't Statement of Material Facts at ¶ 427-431. Attorney George further testified that she disagreed with the statement that "everybody knew" what was occurring on Epstein's island and that she found no evidence of complaints having been made to the Virgin Islands Department of Justice or Police Department. Gov't Statement of Facts ¶ 431, Ellsworth Decl. Ex. 264 (Dkt. 267-71) at 161:9-14. Moreover,

7

Attorney George testified that she believed there was a federal criminal investigation underway in the spring of 2019 and, pursuant to DOJ practice, did not want to interfere with that investigation. Ex. 314 at 167:3-171:17.

16.     **Response to Paragraphs 259-260**

The Government disputes that paragraph 259 accurately describes Attorney George's testimony. She testified that the Department was "critically understaffed" but did not state that the Department "did not have the resources it needed to investigate Epstein." The Government does not dispute the accuracy of the description of Ms. Pinney's testimony in paragraph 260, but disputes that it is material, as (1) the description of Attorney George's testimony in the preceding paragraph is incorrect and (2) "investigating" potential crimes and sex offender "monitoring" are different activities, thus there is no conflict between the cited testimony.

17.     **Response to Paragraphs 261-264**

The Government does not dispute the assertions in these paragraphs, but disputes they are material. There is no evidence that Epstein's parole was ever transferred to the Virgin Islands.

18.     **Response to Paragraphs 265-281**

Except as noted herein, the Government does not dispute the descriptions in these paragraphs concerning proposed legislation amending the Virgin Islands sex offender laws. The Government disputes any of this information is material because: (i) any changes to the law required approval of the U.S. Department of Justice (Gov't Statement of Facts ¶ 438); (ii) the travel notification statute only required notification of travel outside the United States (*Id.* ¶ 443; *see also* 14 V.I.C. § 1724(b)(4)) and (iii) the Legislature rejected Epstein's proposed version at the time of the negotiations (summer 2012) (Gov't Statement of Facts ¶ 439, JPM CSMF ¶ 278). The Government also received no complaints indicating that Epstein was trafficking women into the

8

Virgin Islands. Gov't Statement of Facts ¶ 431. With respect to paragraph 274, the Government notes that Ms. de Jongh's testimony concerning conversations her husband had is inadmissible hearsay. The Government further notes that Ms. Pinney is not a lawyer and that Attorney Frazer (the Attorney General at the time) testified that it was not unusual to receive comments or proposals on proposed legislation from defense counsel and that he did not consider the negotiations unusual or improper. Ex. 313 at 161:4-165:18.

19.     **Response to Paragraphs 282-283, 286-292**

The Government does not dispute the accuracy of these paragraphs regarding the discretionary travel waiver granted to Epstein, but disputes they are material for the reasons set forth in paragraphs 440-445 of the Government's Statement of Facts. The Government notes that Attorney Frazer testified that he never made any decisions regarding Epstein in order to curry favor with Governor de Jongh, that Governor de Jongh's opinion of his actions with respect to the travel waiver never factored into the Attorney General's decision, and that Epstein's employment of Ms. de Jongh never factored into the decisions he made regarding Epstein. Ellsworth Decl. Ex. 266 (Dkt. 268-2) at 247:12-248:14.

20.     **Response to Paragraphs 284-285**

The Government does not dispute the accuracy of these paragraphs but does dispute they are material because the cited amendments occurred after Epstein received his discretionary waiver and JPMorgan has identified no special treatment or improper conduct related to these amendments.

21.     **Response to Paragraphs 293-295**

The Government does not dispute the testimony cited in these paragraphs, but does dispute that they are material. Attorney Thomas-Jacobs confirmed that Attorneys General had the discretion to grant travel waivers and that it was not unusual for different government office

holders to have different opinions on the same issues, or to interpret statutory provisions differently. She did not believe that Attorney Frazer had done anything inconsistent with the statute in granting the waiver. Ex. 312 at 148:21-150:24. Attorney George similarly testified that she would not say that Attorney Frazer's waiver had been "improperly granted." She testified that she was not "reassess[ing]" Attorney Frazer's prior decision but rather considering a new request, and that she didn't know the basis for Attorney Frazer's decision or what information he had, nor did she research that in connection with her decision. Ex. 314 at 141:16-143:12; Ex. 315 at 176:9-177:21, 179:5-180:17, 206:16-208:8.

22. **Response to Paragraphs 296-300**

The Government disputes the information in these paragraphs is material. Attorney George testified that the Governor did not instruct her what decision to make on Epstein's waiver request. Ellsworth Decl. Ex. 264 (Dkt. 267-71) at 104:7-16. She confirmed that after she advised the Governor of her decision "his response to my decision was just thank you for the work you did on it, and that's it." Ex. 315 at 228:22-230:11, 236:10-21. The Government further notes that the outreach described in these paragraphs occurred in 2019—months before Epstein's arrest and years after JPMorgan had information that, if reported, would have resulted in his investigation.

23. **Response to Paragraphs 301-306**

The Government does not dispute the accuracy of the recitation of testimony and documents in these paragraphs but disputes that facts concerning Epstein's sex offender tier classification are material. Ms. Pinney confirmed that the tier classification had no impact on the monitoring requirements for a sex offender or travel notifications, but rather governed only how frequently the offender had to register in-person at the Department of Justice offices. Ex. 310 at 317:8-318:1.

24.     **Response to Paragraphs 307-314**

The Government disputes that these paragraphs are at all sufficient to establish a disputed material fact. The Government disputes the description of Ms. Borque's testimony in paragraphs 307 and 309 applies to the timeframe in which the Government was monitoring Epstein. Ms. Borque testified that the practice of performing "random" checks on sex offenders weekly began in 2019, and that there is no rule in the Virgin Islands requiring weekly checkups. Ex. 316 at 228:13-229:11. That testimony is consistent with Ms. Pinney's confirmation that there were no weekly checks. JPM CSMF ¶ 308. Further, JPMorgan challenged Ms. Borque's testimony on the grounds that she was not adequately prepared as a 30(b)(6) witness, and the Government offered Ms. Pinney, who was the sexual offender registry coordinator at the time, as a substitute witness. Dkt. 197; Gov't Statement of Facts ¶ 427. JPMorgan cannot now argue that it may withstand summary judgment because the witness it demanded provided more informed testimony. Ms. Pinney further confirmed that the "compliance checks" (which she referred to as "sweeps") (i) were performed in conjunction with the U.S. Marshals Service; (ii) were not required by Virgin Islands law; (iii) were only performed annually "depending on funding . . . that the US Marshals Service received"; and (iv) were not the equivalent of a search pursuant to a warrant and did not entitle law enforcement to conduct a search without consent. Ex. 310 at 399:4-400:17, 436:17-441:3; Gov't Statement of Facts ¶ 432.

25.     **Response to Paragraphs 315-320**

The Government does not dispute the accuracy of the descriptions in these paragraphs but disputes that the facts regarding this email are material. JPMorgan's recitation ignores that Ms. Pinney confirmed that the individual sending the email was "very questionable" and a "habitual drug user" who frequently sent "very belligerent" emails to the Department of Justice at odd hours

11

in the morning. Ellsworth Decl. Ex. 261 (Dkt. 267-68) at 443:14-444:7. Ms. Pinney further confirmed that the person "never provided audio or visuals on what was going on on Little St. James" to her or to the Department of Justice. Ex. 310 at 417:14-418:6. Ms. Pinney further testified that there were no other complaints suggesting that Epstein continued to engage in human trafficking. Gov't Statement of Facts ¶ 430.

E.   **Response to Section Entitled "Government Affiliated Officials Gave Epstein Influence And Access In Ways That Facilitated His Crimes And His Transport of Victims."**

26.   **Response to Paragraphs 321-328**

The Government does not dispute the descriptions of the documents in these paragraphs, except that the document cited as evidence for paragraph 326 does not support that Epstein had "meetings" with the VIPA Executive Director because Ex. 288 only describes one meeting. Additionally, the description of former Governor de Jongh's testimony in paragraph 327 is incomplete and misleading. JPMorgan fails to reference the former Governor's testimony that it was "more the federal government" that was "in charge of the facilities" in the airport and would have been responsible for "overseeing the comings and goings of people entering and exiting the island." Ellsworth Decl. Ex. 224 (Dkt. 267-29) at 130:3-11. The Government further notes that it was the federal government and not the Virgin Islands government that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ellsworth Decl. Ex. 286 (Dkt. 268-22). The Government disputes any of the facts in these paragraphs are material or support the premise that the Government "facilitated" Epstein's crimes.

27.   **Response to Paragraphs 329-333**

The Government does not dispute the accuracy of the descriptions in these paragraphs but disputes that they are material. All testimony and documents confirm that U.S. Customs controlled entry and exit from the Virgin Islands, and no testimony establishes that the Government was

12

responsible for those matters. *See* Gov't Statement of Facts ¶ 445; Ellsworth Decl. Ex. 224 (Dkt. 267-29) at 130:3-11. Gifts from Epstein to customs agents, even if given, do not establish evidence of wrongdoing by the Government. Ms. de Jongh testified that she was not aware whether the gifts were ever given, and testified that it was not uncommon in the Virgin Islands for gifts to be given around the holiday time. Ex. 311 at 86:22-87:22. Ms. de Jongh vigorously denied knowing about or facilitating Epstein's crimes in the Virgin Islands. Gov't Statement of Facts ¶ 468.

**28.    Response to Paragraphs 334-344**

The Government does not dispute the accuracy of the description of the documents in these paragraphs, except for paragraph 342. 

Ellsworth Decl. Ex. 300 (Dkt. 260-31). The Government disputes the facts are material or that they support the premise that the Government "facilitated" Epstein's crimes. Ms. de Jongh vigorously denied knowing about or facilitating Epstein's crimes in the Virgin Islands. Gov't Statement of Facts ¶ 468. She testified that she assumed the applications were for "people who worked on Little St. James," such as "housekeepers and people who didn't speak English." Ex. 311 at 126:12-127:1. With respect to the English as a Second Language classes, Ms. de Jongh did not know if the students ever enrolled and there is no evidence as to whether they ever enrolled. *Id*. at 127:2-9. She testified that she was not aware any of the women were potential trafficking victims. Gov't Statement of Facts ¶ 469. Ms. de Jongh's June 27, 2013 email claiming that the University was "structuring the class around the ladies" (Ellsworth Decl. Ex. 298 (Dkt. 260-29)) is inadmissible

13

hearsay, unsupported by testimony from any witness as to the meaning of the word "structuring," and must be read in connection with Ms. de Jongh's testimony that the University didn't offer the class every semester, but only when there was enough interest. Ex. 311 at 129:6-14.

    **29.**    **Response to Paragraphs 345-350**

The Government does not dispute the accuracy of the descriptions in these paragraphs but does dispute they are material. JPMorgan does not explain how the DPNR hearing described in paragraph 345 (which appears to relate to construction of a dock at a marina on St. Thomas) has anything to do with Epstein's crimes. With respect to paragraphs concerning the dental license, Ms. de Jongh testified that it was not unusual to assist individuals in the licensing process, which can take a long time in the Territory. Ex. 311 at 111:9-113:7. There is no evidence that Ms. de Jongh was aware the individual was a trafficking victim.

**F.**    **Response to Section Entitled "USVI Funded The Businesses It Claims Were Fronts For Sex Trafficking By Granting Them $300M In Tax Incentives."**

    **30.**    **Response to Paragraphs 351-353**

The Government does not dispute the accuracy of the statements in these paragraphs, but does dispute statements regarding EDC benefits are material to JPMorgan's affirmative defenses. The EDC statute requires that criminal conduct be "connected to the business activity" of the beneficiary and, during the time period during which Epstein's companies received benefits, it had no indication that Epstein's conviction or online allegations were "connected to the business activities" of his companies. Ex. 317 at 157:19-24, 170:3-172:3.

    **31.**    **Response to Paragraphs 354-364**

The Government does not dispute the accuracy of the statements in these paragraphs, but does dispute statements regarding EDC benefits are material to JPMorgan's affirmative defenses. Governor de Jongh testified that applications for EDC benefits must be approved by EDC staff

and then the Board before being presented to the Governor, and that the necessary diligence had been completed by EDC staff, the EDC Board and the Governor's legal counsel. Ex. 309 at 154:6-159:15.

32. **Response to Paragraphs 365-371**

The Government does not dispute the accuracy of the statements in these paragraphs, but does dispute the statements regarding EDC benefits are material to JPMorgan's affirmative defenses. In particular, the Government disputes the merits of JPMorgan's expert's opinion, which disregards entirely testimony from fact witnesses confirming that the cost-benefit ratios on which her opinion relies could be misleading and did not present the full picture. *See* Gov't Statement of Facts ¶ 456-458. Moreover, Governor Bryan and former Governor Mapp both testified that the benefits to the Territory from the EDC beneficiary program extend beyond what is reflected in those ratios. Gov't Statement of Material Facts, ¶ 458; Ex. 308 at 25:2-28:3.

33. **Response to Paragraphs 372-381**

The Government does not dispute the accuracy of the statements in these paragraphs, but does dispute the statements regarding EDC benefits are material to JPMorgan's affirmative defenses. With respect to the argument that STC was required to provide medical insurance coverage, JPMorgan fails to reference Governor de Jongh testimony that he did not receive any benefits pursuant to that requirement because he was not a beneficiary of his wife and received government insurance. Ellsworth Decl. Ex. 224 (Dkt. 267-29) at 174:2-18. The EDC was well aware that Ms. de Jongh was an employee of Epstein's companies and she was the agency's contact person, and that she was unaware of anyone expressing concern about the Governor signing the benefits certificate for the company. Ex. 317 at 101:7-19, 130:9-21, 193:8-17. Indeed, it was well

known throughout the Government and publicly reported that Ms. de Jongh was employed by Epstein. Ex. 318 at 5:25-8:16, 12:7-13:3.

34. **Response to Paragraphs 382-383**

The Government disputes that paragraph 382 accurately summarizes Ms. Benjamin's testimony. Ms. Benjamin testified that there was no reason to undertake an investigation outside of the EDC's normal business because EDC had no indication that Epstein's conviction or allegations were "connected" to his companies' "business activities." Ex. 317 at 157:19-24, 170:3-172:3. With respect to paragraph 383, JPMorgan omits that Epstein's attorney responded to the letter to confirm "[w]e do not believe that these media discussions will have any impact on the business activities of STC." Gov't Statement of Facts ¶ 455.

35. **Response to Paragraphs 384-393**

The Government does not dispute the accuracy of the statements in these paragraphs, but does dispute the statements regarding federally-authorized EDC benefits are material to JPMorgan's affirmative defenses. With respect to EDC compliance checks, Ms. Bess testified that due to a "backlog," it was not unusual for companies (not limited to Epstein's) to go several years without receiving a compliance report. Ex. 319 at 15:9-23, 106:22-109:5. She further explained that compliance checks did not involve a review of public allegations or the background of the beneficiary owner, but rather was focused on the beneficiary's compliance with the conditions set forth in the tax certificate. Ex. 319 at 16:4-13, 109:14-111:1. There is no evidence that the January 2019 email described in paragraph 389 was ever shared with anyone at the EDC. The EDC statute requires that criminal conduct be "connected to the business activity" of the beneficiary and, during the time period during which Epstein's companies received benefits, it had no indication that

Epstein's conviction or online allegations were "connected to the business activities" of his companies. Ex. 317 at 157:19-24, 170:3-172:3; Ex. 305 at 23:10-22.

**G.     Response to Section Entitled "Cecile de Jongh Had Official Responsibilities Within the Government As First Lady."**

**36.     Response to Paragraphs 394-403**

The Government does not dispute the accuracy of the statements in these paragraphs concerning Ms. de Jongh's functions, except for paragraphs 397 and 403. In paragraph 397, Ms. de Jongh did not testify that the Twitter account "was likely managed by a government employee," rather she testified only that tweets "might have been" authored by "somebody working for the government," and that she didn't separately hire someone to manage the account. Ellsworth Decl. Ex. 208 (Dkt. 267-13) at 23:3-17. Former Governor de Jongh's testimony regarding whether Cecile de Jongh "ever tr[ied] to avoid things coming to desk that would impact Epstein" lacks foundation and is inadmissible. Mr. de Jongh responded: "I don't know for certain but I'm assuming she did." Ellsworth Decl. Ex. 224 (Dkt. 267-29) at 212:3-11. With respect to the remaining allegations, the Government disputes they are material as they do not establish that Ms. de Jongh had any decision-making authority in the Government.

Dated: August 14, 2023            **ARIEL SMITH, ESQ.**
                                  **ATTORNEY GENERAL**

                                  By counsel,

                                  /s/ *David I. Ackerman*
                                  **DAVID I. ACKERMAN**
                                  Admitted *Pro Hac Vice*
                                  Motley Rice LLC
                                  401 9th Street NW, Suite 630
                                  Washington, DC 20004
                                  Tel: (202) 232-5504
                                  dackerman@motleyrice.com

                                  **VENETIA VELAZQUEZ**

Admitted *Pro Hac Vice*
Acting Chief, Civil Division
Virgin Islands Department of Justice
Office of the Attorney General
213 Estate La Reine, RR1 Box 6151
Kingshill, St. Croix
U.S. Virgin Islands 00850
Tel: (340) 773-0295 ext. 202481
venetia.velazquez@doj.vi.gov

**LINDA SINGER** (Admitted *Pro Hac Vice*)
**MIMI LIU** (Admitted *Pro Hac Vice*)
**PAIGE BOGGS** (Admitted *Pro Hac Vice*)
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Tel: (202) 232-5504
lsinger@motleyrice.com
mliu@motleyrice.com
pboggs@motleyrice.com

*Attorneys for Plaintiff Government of the United States Virgin Islands*