# EXHIBIT 312

```
 1              UNITED STATES DISTRICT COURT FOR THE

 2                 SOUTHERN DISTRICT OF NEW YORK

 3                CASE NUMBER:  22-CV-10904-JSR

 4                      ACTION FOR DAMAGES

 5
    GOVERNMENT OF THE UNITED STATES        )
 6  VIRGIN ISLANDS,                        )
                                           )
 7                            Plaintiff,   )
                                           )
 8  VS.                                    )
                                           )
 9  JP MORGAN CHASE BANK, N.A.,            )
                                           )
10                            Defendant.   )
                                           )
11  ---------------------------------------

12

13

14

15              VIDEO RECORDED DEPOSITION OF

16                   CAROL THOMAS JACOBS

17                  THURSDAY, JULY 13, 2023

18

19

20
    REPORTED BY:
21
    DENISE D. HARPER-FORDE
22  Certified Shorthand Reporter (CSR)
    Certified RealTime Reporter (CRR)
23  Certified LiveNote Reporter (CLR)
    Registered Professional Reporter (RPR)
24  Notary Public (FLORIDA)

25
```



```
 1  in 2017  -- at least I wasn't aware
 2  and I don't know if anyone at Attorney
 3  General's Office was aware of these
 4  allegations in 2017.
 5              (BY ATTORNEY NEIMAN):
 6       Q.  And do you know if the
 7  Attorney General's Office in the
 8  Virgin Islands did anything at anytime
 9  prior to 2019 to try to see what kind
10  of allegations were being made in
11  publicly filed lawsuits regarding
12  Jeffrey Epstein?
13              ATTORNEY ACKERMAN:  Object to
14  form.
15              THE WITNESS:  I'm not aware of
16  any.
17              (BY ATTORNEY NEIMAN):
18       Q.  Would you agree with me that
19  it would have been appropriate for the
20  Virgin Islands to make efforts to find
21  out what kind of allegations were
22  being made against a prominent
23  resident like Mr. Epstein in publicly
24  filed lawsuits?
25              ATTORNEY ACKERMAN:  Object to
```



```
 1   form.
 2             THE WITNESS:  If they were
 3   aware.  But like I say, I don't know
 4   if anyone at the Virgin -- I don't
 5   know if anyone -- at least I can only
 6   speak as to myself.  I know I wasn't
 7   aware, and I don't know if anyone in
 8   the Attorney General's Office was
 9   aware.
10             (BY ATTORNEY NEIMAN):
11        Q.   No.  I understand that.  But
12   I'm asking you a slightly different
13   question, which is given that Mr.
14   Epstein was a registered sex offender
15   living on the Virgin Islands and given
16   that he had been granted various
17   waivers of the ordinary registration
18   notification requirements and given
19   the difficulties that the Virgin
20   Islands had with the annual monitoring
21   visits, do you agree with me that it
22   would have been appropriate given
23   those facts for the law enforcement in
24   the Virgin Islands to make efforts
25   affirmatively to monitor what was
```



```
 1   being alleged about Mr. Epstein in
 2   publicly filed civil lawsuits?
 3              ATTORNEY ACKERMAN:  Object to
 4   form.
 5              THE WITNESS:  If they were
 6   aware of the publicly filed lawsuits,
 7   and I -- I have no information that
 8   the Virgin Islands was aware of this
 9   lawsuit in 2017.
10              (BY ATTORNEY NEIMAN):
11       Q.  Are you aware that it is not
12   hard to learn of publicly filed
13   lawsuits if you tried?
14              ATTORNEY ACKERMAN:  Object to
15   form.
16              THE WITNESS:  You know, I
17   don't know.  I don't know what -- I
18   don't know.
19              (BY ATTORNEY NEIMAN):
20       Q.  Okay.  Do you think that the
21   Virgin Islands should have at least
22   tried to find out what was going
23   alleged in publicly -- what was being
24   alleged in publicly filed lawsuits
25   regarding Mr. Epstein?
```



```
 1             ATTORNEY ACKERMAN:  Object to
 2   form Asked and answered.
 3             THE WITNESS:  The Virgin
 4   Islands can only respond to what they
 5   know.  And like I said, I don't know
 6   if anyone in the Virgin Islands knew.
 7   I was not aware, and I don't know if
 8   anyone was aware in 2017.
 9             (BY ATTORNEY NEIMAN):
10       Q.  All right.  I'm going to ask
11   my question in a slightly different
12   way, but same -- same question.
13             Do you think part of the
14   Virgin Islands' responsibility for
15   protecting the community included
16   making efforts to try to learn what
17   was being alleged about Mr. Epstein in
18   publicly filed lawsuits?
19             ATTORNEY ACKERMAN:  Object to
20   form.
21             THE WITNESS:  The Virgin
22   Islands can only take action on what
23   they know.  And I've said it, I have
24   no information that they were aware of
25   this.
```



1     Q.  We have met before.  I am
2  David Ackerman with the law firm of
3  Motley Rice.  We represent the
4  Government of the Virgin Islands in
5  this action.
6         I'm just going to have a few
7  questions for you.  And I want to
8  start with that document that was
9  marked as Exhibit 10.  Can you pull
10 that in front of you?
11    A.  Yes.
12    Q.  And this is a document that's
13 entitled "Complaint."
14        Do you see that?
15    A.  Yes.
16    Q.  Okay.  Does the document
17 indicate where the Complaint was
18 filed?
19    A.  It says United States District
20 Court Southern District of New York.
21    Q.  Was this Complaint filed in
22 the Virgin Islands?
23    A.  No, it was not.
24    Q.  Okay.  In your opinion, do you
25 believe law enforcement has an



1  obligation to monitor public dockets
2  of every court in the country for
3  allegations that may reference the
4  Virgin Islands?
5       A.  I don't.  I think it's
6  unreasonable.  It would be an
7  unreasonable obligation on the Virgin
8  Islands.
9       Q.  Okay.  Thank you.  We can put
10 that document aside.
11      Let's go to Exhibit 1, which
12 is that big document.  And I want to
13 start with the page that is -- I
14 apologize, I need to find it -- 12500
15 near the end of the document.  Are you
16 there?
17      A.  Yes.
18      Q.  And this is the E-mail chain
19 that counsel showed you involving
20 Clive Rivers and Denise George.  And
21 you were copied on several of these
22 E-mails; is that correct?
23      A.  Yes.
24      Q.  Okay.  If you would look
25 please at the second page at the very



1   bottom.  And there is an E-mail that
2   AG George sent to Attorney Kellerhals
3   and Attorney Rivers on June 2nd, 2019.
4            A.   Uh-huh.
5            Q.   Do you see that?
6            A.   Yes.
7            Q.   And then that E-mail continues
8   over to the next page, correct?
9            A.   Yes.
10           Q.   And if you look at the second
11  full paragraph on the next page, which
12  is Bates numbered 12502 --
13           A.   Yes.
14           Q.   -- do you see the section that
15  says, "While my predecessors have
16  apparently had differing
17  interpretations of Title 14, Section
18  1724B (4) of the Virgin Islands code."
19  Did I read that correctly?
20           A.   Yes.
21           Q.   Okay.  In your experience in
22  government, is it unusual for
23  different office holders to have
24  differing interpretations of statutory
25  provisions?



```
 1        A.   This is something -- you know,
 2   it happens.  Different Attorney
 3   Generals give different -- can have a
 4   different opinion on a particular
 5   issue.
 6        Q.   Okay.  Are you familiar with
 7   Section 1724B (4) of the Virgin
 8   Islands code?
 9        A.   Yes.
10        Q.   And did you become familiar
11   with that section in connection with
12   your review of materials relating to
13   Mr. Epstein's sex offender
14   registration?
15             ATTORNEY NEIMAN:  Objection to
16   form, leading.
17             THE WITNESS:  Yes, I did.
18             (BY ATTORNEY ACKERMAN):
19        Q.   Okay.  Let me ask the question
20   differently.
21             How did you become familiar
22   with that section?
23        A.   When the matter was -- the
24   issue was brought to me by Attorney
25   Shani, I reviewed the statute.
```



```
1         Q.   Okay.  Does that statute say
2    anything about the Attorney General's
3    role in the notification
4    requirements?
5         A.   It gives the Attorney General
6    the discretion to modify the
7    notification requirements.
8         Q.   Okay.  Do you have any -- any
9    understanding as to whether Attorney
10   General Frazer was exercising his
11   discretion in granting a waiver?
12        A.   From his letter, that's what
13   it appears.
14        Q.   Okay.  Do you believe that
15   Attorney General Frazer did anything
16   inconsistent with the statute in
17   granting the waiver to Mr. Epstein?
18        A.   Attorney Generals are free to
19   exercise their discretion however they
20   see fit.  And he exercised his
21   discretion one way, and I -- when I
22   was sitting Attorney General, I
23   exercised my discretion in a different
24   manner.
25        Q.   When you were sitting Attorney
```

