# EXHIBIT 315

```
 1            UNITED STATES DISTRICT COURT FOR THE

 2               SOUTHERN DISTRICT OF NEW YORK

 3             CASE NUMBER:  22-CV-10904-JSR

 4                    ACTION FOR DAMAGES

 5
     GOVERNMENT OF THE UNITED STATES          )
 6   VIRGIN ISLANDS,                          )
                                              )
 7                            Plaintiff,      )
                                              )
 8   VS.                                      )
                                              )
 9   JP MORGAN CHASE BANK, N.A.,              )
                                              )
10                            Defendant.      )
                                              )
11   --------------------------------------

12

13

14

15            VIDEO RECORDED DEPOSITION OF

16                    DENISE GEORGE

17                      VOLUME II

18              THURSDAY, JULY 20, 2023

19

20

21   REPORTED BY:

22   DENISE D. HARPER-FORDE
     Certified Shorthand Reporter (CSR)
23   Certified RealTime Reporter (CRR)
     Certified LiveNote Reporter (CLR)
24   Registered Professional Reporter (RPR)
     Notary Public (FLORIDA)

25
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1  Attorney General.
 2              And in waiving that, I think
 3  he reduced it to -- I don't remember
 4  whether it was a day or something like
 5  that.  I'm not sure.  But he
 6  definitely waived the 21 reporting
 7  requirement.
 8              (BY ATTORNEY O'LAUGHLIN):
 9       Q.  Do you know what the basis for
10  that waiver was?
11       A.  I can't say what the basis of
12  it is, because you know I'm not going
13  to go into his heads.  My main thing
14  is that you know he did that.  I
15  reviewed some documents that she --
16  she attached.  And so I don't know.
17              I can't speak for him or what
18  was before him or -- or what went
19  through his mind.  I was only looking
20  to that, because I had to make a
21  decision as far as what was before me
22  and so...
23       Q.  And in preparing yourself to
24  make that decision, did you uncover
25  any basis for what the prior waiver
```



1  grant was?
2           ATTORNEY ACKERMAN:  Object to
3  form.
4           THE WITNESS:  Not really.  I
5  was just -- you know I'm not there.  I
6  don't know what his -- what the
7  Attorney General is facing.
8           So I can only look at the
9  files, and I can look at this record
10 and the record in the files as far as
11 when he entered the waiver and just
12 read what's there.
13          But I have no way of knowing
14 what else the Attorney General at the
15 time was looking at or anything like
16 that.  But just based on just what I
17 saw, I had to make an assessment of
18 whether or not there's anything in
19 there that would be sufficient for me
20 to even consider whether or not he
21 ought to get a waiver.
22          (BY ATTORNEY O'LAUGHLIN):
23      Q.  The change -- the resending of
24 the waiver under Attorney
25 Thomas-Jacobs --



```
 1  think that there was justification for
 2  it.  I think overall, that's what it
 3  seemed that I saw from her review of
 4  it.
 5       Q.  Okay.  So it -- had the
 6  earlier waiver been improperly granted
 7  because there was no justification for
 8  it?
 9       A.  Well, I wouldn't say that.  I
10  wouldn't say that, that it was
11  improperly -- I don't know whether it
12  -- I have nothing to do with what any
13  prior person did.  In -- under the law
14  it states that a waiver can be granted
15  if it is -- if it is shown or proof is
16  shown to the satisfaction of the
17  Attorney General that the person, the
18  sex offender  travels internationally
19  frequently for business or for other
20  legitimate purpose.
21           So that's what is for the
22  Attorney General to decide.  So as far
23  as I'm concerned, whatever happened
24  before, that was of no concern to me.
25  My thing is that there is a request
```



```
 1   that's before me and I'm going to have
 2   to make the decision based on what's
 3   before me, and it had to be
 4   information that's satisfactory to me.
 5             But it -- it's obviously a
 6   discretionary thing.  But I had to
 7   make it according to what is
 8   satisfactory to me.  It really didn't
 9   matter so much to me, as far as what
10   was satisfactory to Vincent -- to
11   Attorney Vincent Frazer or what was
12   satisfactory to Attorney Jacobs.
13             Once I stepped in and the
14   request was made to me, I had to look
15   at everything that was before me and
16   make that decision independent of
17   anything that happened previously.
18       Q.   What did you do in response to
19   this letter?
20             ATTORNEY ACKERMAN:  Object to
21   form.
22             THE WITNESS:  Well, I did -- I
23   did eventually send a -- an answer to
24   her and my decision.  Giving her my
25   decision and making it clear that
```



```
 1   that purpose.
 2        Q.  So you didn't see any evidence
 3   that would have supported a granting a
 4   waiver under USVI law, correct?
 5             ATTORNEY ACKERMAN:  Object to
 6   form.
 7             THE WITNESS:  That would have
 8   been satisfactory to me?  No.  That
 9   has been satisfactory to me, I saw
10   nothing that would have -- that would
11   have proven to me, giving reliable
12   proof that that's what he'd be doing
13   in order to warrant any kind of
14   waiver.
15             (BY ATTORNEY O'LAUGHLIN):
16        Q.  So were the previous waiver
17   grants improper under USVI law?
18        A.  Previous waiver grants?
19        Q.  Yes.
20             ATTORNEY ACKERMAN:  Object to
21   form.
22             THE WITNESS:  I wouldn't --
23   well, the reason why I would not say
24   it -- I would not say it is.  And the
25   only reason why is because it's a
```



```
 1   discretionary matter.  Maybe it was
 2   satisfactory to -- I guess it was only
 3   Vincent Frazer that issued the waiver.
 4   But maybe -- maybe it was satisfactory
 5   to him.  I don't know.  I'm not in a
 6   position to know what he was
 7   considering or what was before him.
 8              I just knew my whole thing is
 9   like -- irrespective of what he looked
10   at or what was satisfactory to him or
11   what was satisfactory to Attorney
12   Jacobs.  I had to make the decision as
13   far as what was satisfactory to me.
14   And I was there at that time.  And in
15   looking at that, I made it very clear
16   that it can only be waived upon that
17   showing.
18              I made that clear, because I
19   wanted to make sure -- make it clear
20   to Jeffrey Epstein that he's going to
21   have to comply with the law and what
22   is required in order to get a waiver.
23   And that I will not be a part of him
24   trying to exert any kind of you know
25   political influence or anything like
```



```
 1  that.
 2           I'm not going to be a part of
 3  that.  He's going to have to look at
 4  the law.  He's going to have to
 5  produce the proof as required by law
 6  that is to my satisfactory --
 7  satisfaction.  And I did not see
 8  that.
 9           (BY ATTORNEY O'LAUGHLIN):
10      Q.  Do you think that the prior
11  decision may have been politically
12  influenced?
13      A.  I have no --
14           ATTORNEY ACKERMAN:  Object to
15  form.
16           THE WITNESS:  I have no idea.
17           (BY ATTORNEY O'LAUGHLIN):
18      Q.  Is it possible?
19      A.  I do not -- I have nothing to
20  say regarding that, because I was not
21  there and I was -- I have no idea what
22  you know -- I don't know.  I can't
23  comment on what, you know, prior
24  Attorney General had.  That wasn't --
25  that's not even my role to do that.  I
```



```
 1                THE WITNESS:  Yeah.  I don't
 2   mind speaking with you.
 3                ATTORNEY ACKERMAN:  Okay.  We
 4   need to go off the record because I
 5   need to know what this answer concerns
 6   before I can determine whether it's
 7   privileged or not.
 8                ATTORNEY O'LAUGHLIN:  Okay.
 9   Let's go off the record.
10                VIDEOGRAPHER:  Off the record
11   at 1:46.
12                     (Off the record)
13                     (Back on the record)
14                VIDEOGRAPHER:  On the record.
15   The time is 2:23 P.M.
16                (BY ATTORNEY O'LAUGHLIN):
17       Q.  Okay.  Ms. George, I
18   understand that you have had the
19   opportunity to confer with your
20   counsel.  Correct?
21       A.  Yes.  Yes.
22       Q.  And there's -- there's a
23   communication prior to litigation that
24   you wanted to give testimony about?
25       A.  Yes.  I just wanted to
```



1   complete my testimony with respect to
2   the communications with the Governor
3   regarding the sex offender registry
4   issue.
5         Q.  Okay.
6         A.  So that letter -- the date
7   that letter was sent, that E-mail
8   correspondence was sent to Attorney
9   Kellerhals and Attorney Rivers, I also
10  sent one to Governor Bryan, a similar
11  one.
12              But just explaining to him the
13  -- what the laws are, and that there
14  is a requirement that he comply with
15  providing proof.  And that my decision
16  was until that proof was provided,
17  that I would not be able to
18  consider -- I would not consider, you
19  know, any waiver.
20              I also indicated to him that
21  -- the reasons for it and the reasons
22  -- the reasons -- that the reason or
23  the purpose behind the statute.  And
24  that it's there to protect the
25  community and the importance of that.



1              And I did that just so that,
2    you know, that he can have an
3    understanding.  I felt that he needed
4    an understanding as to the importance
5    and the magnitude of that requirement.
6              And then he just responded,
7    well, thank you for your -- well,
8    I'm seeing what his response is.  But
9    he was just -- he just said, Well,
10   thank you for your work on this.  And
11   after that, there was nothing.
12        Q.  And the response from the
13   Governor, was that in E-mail form as
14   well?
15        A.  Yes.  That was E-mailed to
16   me.
17        Q.  Okay.  Was anyone copied on
18   that E-mail?
19        A.  No.
20        Q.  Do you still have a copy of
21   that E-mail?
22        A.  I might have a printed
23   version, but -- I might.
24        Q.  Okay.  Was this request that
25   you received from the Governor, were



```
 1  saying, that there was -- I don't
 2  recall any conversation or anything
 3  where the Governor reached out since
 4  that, you know, last communication.
 5  And which is why I indicated there was
 6  a response to my letter to him that
 7  ended the communication.  Nothing else
 8  after that pre-litigation.
 9              (BY ATTORNEY O'LAUGHLIN):
10       Q.  Did the position that you took
11  in response to the Governor's request
12  regarding Jeffrey Epstein's sex
13  offender monitoring impact your
14  standing with the Governor?
15              ATTORNEY ACKERMAN:  Object to
16  form.
17              THE WITNESS:  At that time I
18  don't know with respect to how he
19  perceived it, but his response to
20  my decision was just thank you for the
21  work you did on it, and that's it.
22              (BY ATTORNEY O'LAUGHLIN):
23       Q.  Knowing what you know now, do
24  you think it impacted your standing?
25              ATTORNEY ACKERMAN:  Objection
```

