# ATTACHMENT B

# PART 1

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　　　　　　　Defendant/Third-Party Plaintiff. | Case No. 22-cv-10904 (JSR) |
| JPMORGAN CHASE BANK, N.A.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>JAMES EDWARD STALEY,<br><br>Third-Party Defendant. | |

**JPMORGAN CHASE BANK, N.A.'S LOCAL CIVIL RULE 56.1(B) RESPONSE TO STATEMENT OF MATERIAL FACTS AS TO WHICH GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS CONTENDS THERE IS NO GENUINE DISPUTE**

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, Defendant/Third-Party Plaintiff

JPMorgan Chase Bank, N.A. ("JPMC" or "JPMorgan") hereby responds to the *Statement of*

*Material Facts as to which Government of the United States Virgin Islands Contends There is No*

*Genuine Dispute* ("USVI SUMF") filed by the Government of the United States Virgin Islands

("USVI").  *See* Dkt. 219.  To avoid repetition, JPMC incorporates by reference herein *JPMorgan*

*Chase Bank, N.A.'s Local Rule 56.1 Statement of Undisputed Material Facts in Support of*

*Defendant's Motion for Partial Summary Judgment* ("SUMF"), Dkt. 229, and *JPMorgan Chase*

*Bank, N.A.'s Local Civil Rule 56.1(b) Counterstatement of Additional Material Facts* ("CSMF")

and the supporting exhibits cited therein. JPMC further incorporates into its responses its

objection that USVI's cited materials cannot be presented at trial in a form that would be

admissible as evidence and has stated further specific objections below. All allegations

contained in headings, which are not supported by a citation to admissible evidence and thereby

fail to comply with the Local Rules, are also disputed for the reasons set forth in the

accompanying responses to paragraphs.[1]

**Epstein Engaged in a Sex-Trafficking Venture**

>    **JPMC Response**: This is a header to which no response is warranted. Disputed insofar
>    as USVI contends that the statements and documents cited below establish this fact as a
>    matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-
>    trafficking venture as a matter of law.

1.    *In the May 26, 2023 class certification hearing, counsel for JPMorgan stated, "I think the*

*way the Court could use those grand jury findings would be to ascertain something not contested,*

*which is **Mr. Epstein was engaged in horrendous criminal activity, including sex trafficking**.*

*That's not something being contested at all by JPMorgan." Tr. Class Certification Hr'g at 19:3-*

*7, Doe 1 v. JPMorgan Chase Bank, N.A., No. 22-cv-10019 (S.D.N.Y. May 26, 2023); see also id.*

*at 33:10-14 ("Your colleague has just acknowledged, as indeed JPMorgan has repeatedly, that*

*they do not dispute, **you do not dispute that Mr. Epstein was engaged in a longtime trafficking***

***venture** that involved enumerable young women and that required money to make it work."*

*(emphasis added)).*

---

[1] Unless otherwise specified, all citations in JPMC Resp. USVI SUMF and JPMC CSMF to "JPMC Ex. __"
refer to exhibits filed by JPMC in support of its motion for summary judgment and in opposition to USVI's motion
for summary judgment. Citations herein to "USVI Ex. __" refer to exhibits submitted by USVI in support of its
motion for summary judgment.

███████████████████████████████████     ████████████████

**JPMC Response:**  Undisputed that the quoted language is from the cited transcript.

Disputed insofar as USVI contends that the cited statement establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

2.     *In statements to the press following JPMorgan's settlement with Doe, JPMorgan stated: "We all now understand that Epstein's behavior was monstrous, and we believe this settlement is in the best interest of all parties, especially the survivors, who suffered unimaginable abuse at the hands of this man." "Any association with him was a mistake and we regret it.  We would never have continued to do business with him if we believed he was using our bank in any way to help commit heinous crimes." Ex. 1.*

**JPMC Response:**  Undisputed that JPMC made the quoted statements.

Disputed insofar as USVI contends that the cited statements establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

3.     ████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████     *Ex. 2 at -196.*

**JPMC Response:**  ████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

███████████████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

4.   ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

**JPMC Response:** ████████████████████████

████████████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

5.   ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

**JPMC Response**: ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

4



> Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

6.    *In 2019, a grand jury found that Epstein "sexually exploited and abused dozens of minor*

*girls at his homes in Manhattan, New York, and Palm Beach, Florida, among other locations."*

*Sealed Indictment at 1, United States v. Epstein, 19-cr-490 (S.D.N.Y. July 2, 2019), ECF No. 1.*

> **JPMC Response**: Undisputed that in July 2019 a grand jury charged that Epstein "sexually exploited and abused dozens of minor girls at his homes in Manhattan, New York, and Palm Beach, Florida, among other locations."
>
> Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

7.    ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

*Ex. 5 at -364. The article stated that federal prosecutors had charged Epstein with sex trafficking*

*in July 2019, Epstein was arrested on July 6, 2019, and Epstein died on August 10, 2019.  Ex. 6.*

> **JPMC Response**: ████████████████████████████████████ a New York Times article titled "Jeffrey Epstein Dead in Suicide at Jail, Spurring Inquiries" which stated that federal prosecutors had charged Epstein with sex trafficking in July 2019, Epstein was arrested on July 6, 2019, and Epstein died on August 10, 2019.
>
> Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

8.      *Ghislaine Maxwell was indicted and arrested in 2020 by the United States Attorney's*

*Office for the Southern District of New York for conspiracy to entice minors to travel to engage in*

*illegal acts, enticement of a minor to travel to engage in illegal sex acts, conspiracy to transport*

*minors with intent to engage in criminal sexual activity, and transportation of a minor with intent*

*to engage in criminal sexual activity.  Sealed Indictment, United States v. Maxwell, 20-cr-330*

*(S.D.N.Y. June 29, 2020), ECF No. 1. Maxwell was convicted on June 28, 2022.*

> **JPMC Response**: Undisputed to the extent that Maxwell was indicted in 2020 by the
> United States Attorney's Office for the Southern District of New York for conspiracy to
> entice minors to travel to engage in illegal acts, enticement of a minor to travel to engage
> in illegal sex acts, conspiracy to transport minors with intent to engage in criminal sexual
> activity, and transportation of a minor with intent to engage in criminal sexual activity.
>
> Disputed insofar as USVI contends that the cited document establishes that Epstein was
> engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly
> disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See*
> CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in
> admissible form.

9.      *JPMorgan admits that Epstein pled guilty to "felony solicitation of prostitution and*

*procurement of minors to engage in prostitution," "was sentenced to 18 months in jail," and "was*

*required to register as a sex offender." Def. JPMorgan Chase Bank, N.A.'s Answer to 2d Am.*

*Compl. and Statement of Affirmative Defenses, ¶ 38, ECF No. 124.*

> **JPMC Response**: Undisputed that the quoted language is from JPMC's Answer to 2d
> Am. Compl. and Statement of Affirmative Defenses.
>
> Disputed insofar as USVI contends that the cited document establishes that Epstein was
> engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly
> disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See*
> CSMF ¶¶ 1-107.

10.     *A Level 3 sex offender is the highest risk level and poses a "high risk of repeat offense and*

*threat to public safety."  Ex. 7.*

> **JPMC Response**: Undisputed that in New York state a "Level 3 sex offender is the
> highest risk level and poses a 'high risk of repeat offense and threat to public safety.'"

███████████████████████████████  ████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  CSMF ¶¶ 1-107.

11.   *In November 2011, Epstein's Level 3 sex offender status was unanimously affirmed by the New York Supreme Court, Appellate Division.  The court found that "[c]lear and convincing evidence . . . supported the assessment of points for risk factors sufficient for a level three sex offender adjudication."*

> *The evidence before the [Sex Offender Registration Act] hearing court established that defendant committed multiple offenses against a series of underage girls.  The girls were brought to defendant's home to provide 'massages' that led to very serious sex crimes. These facts were established by . . . Florida law enforcement authorities after their investigation . . . .  The probable cause affidavit was extremely detailed.  It set forth the sworn, tape-recorded statements of the victims.  The victims' detailed accounts of defendants' crimes corroborated each other, and were also corroborated by other evidence, including declarations against penal interest made by defendant's accomplice.*

**JPMC Response**: Undisputed as to the contents of the cited decision.  Disputed to the extent USVI suggests that Epstein was classified as a Level 3 sex offender in all jurisdictions.  *See* CSMF ¶¶ 304-306.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

12.   ███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████  *Ex. 8 at -006.*

**JPMC Response**: ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

[REDACTED]

[REDACTED]

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

13.    *At Ghislaine Maxwell's criminal trial, a victim testified under oath, using the pseudonym*

*"Kate." Kate testified that, starting when she was 17 years old, Maxwell and Epstein flew her "to*

*Palm Beach, to New York, and to the island," and Kate gave Epstein sexualized massages in each*

*of those locations. Trial Tr. at 1195:7-25, 1198:2-19, 1203:4-9, United States v. Maxwell, No. 20-*

*cr-330 (S.D.N.Y. Dec. 6, 2021), ECF No. 751.*

**JPMC Response**: Undisputed as to the contents of the cited document.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

14.    *Bridgette Carr, an expert in human trafficking for the U.S. Virgin Islands,* [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] *Ex. 9 at 65-66.*

**JPMC Response**: Undisputed that USVI's proffered expert Bridgette Carr [REDACTED]

[REDACTED]

████████████████████████████████████████

████████████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

15. *U.S. District Judge Marra stated in an opinion in February 2019:*

> *From about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls, including Petitioners . . . , at his mansion in Palm Beach, Florida and elsewhere in the United States and overseas. Because Epstein and his coconspirators knowingly traveled in interstate and international commerce to sexually abuse Jane Doe 1, Jane Doe 2 and others, they committed violations of not only Florida law, but also federal law. In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually. Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others.*

*Jane Doe 1 & Jane Doe 2 v. United States, 359 F. Supp. 3d 1201, 1204 (S.D. Fla. 2019)*

*(internal citations omitted).*

**JPMC Response**: Undisputed as to the content of the cited document.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

16. *After Epstein's death, Judge Berman held a hearing at which several of Epstein's victims gave statements. Victim* ███████████ *testified: "On my third or fourth time meeting [Epstein and Maxwell], they brought me to Jeffrey's island for the first time, and on the first night there,* ███████████ *came tapping on my door late at night to inform me Jeffrey was ready for another*

██████████████████████████████████████    ████████████████████████

*massage." That night, Epstein sexually assaulted her.   Hr'g Tr. at 44:4-22, United States v.*

*Epstein, No. 19-cr-490 (S.D.N.Y. Aug. 27, 2019), ECF No. 53.*

> **JPMC Response**:  Undisputed that the quoted language is from the hearing transcript in the cited case.
>
> Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

17.    *At the same August 27, 2019 hearing, Jane Doe No. 9 testified: "[I]n 2004, when I was 15*

*years old, I flew on Jeffrey Epstein's plane to Zorro Ranch, where I was sexual [sic] molested by*

*him for many hours." Id. at 75:10-12.*

> **JPMC Response**:  Undisputed that the quoted language is from the hearing transcript in the cited case.
>
> Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

18.    ██████████████████████████████████████████████████████████████

███████    *Ex. 10 at -003.*   ████████████████████████████████████

████████    *Id. at -018.*   ██████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████    *Id. at -019-20.*

> **JPMC Response**:   ████████████████████████████████████████████
> ████

███████████████████████████████████████████████████
███████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

19. ███████████████████████████████████████████████████

███████████████████████████████████████████████ *Ex. 11*

*at -036.* ████████████████████████████████████████████

███████████████████████████████████ *Ex. 12 at -029.* ███████████

█████████████████████████████████ *Id.*

**JPMC Response**: ██████████████████████████████████████.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

20. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████ *Ex.*

*13 at -440-41.* ████████████████████████████████████████

██████████████████████████████████████████ *Id. at -462.*

**JPMC Response**: ██████████████████████████████████
████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

21. ███████████████████████████████████████████████████

█████████████████████████████████████████████ *Ex. 15 at -458.*

11

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

22.        *filed a creditor's claim in the Epstein estate probate proceeding, alleging that Epstein sexually abused her in New York and the U.S. Virgin Islands "[b]eginning in 2004 and continuing for years thereafter." Ex. 16 ¶ 2.*

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

23.        *filed a creditor's claim in the Epstein estate probate proceeding, alleging that Epstein sexually abused her in New York, New Mexico, and the U.S. Virgin Islands from 2002 to 2004. Ex. 17 ¶¶ 42-59.*

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

24.    *Dozens of Epstein's victims filed private civil suits against him and his coconspirators, including but not limited to:*

   a.    *Jane Doe No. 2, who alleged that in 2004 or 2005 when she was 16 years old, Epstein sexually assaulted her during a massage in Epstein's Palm Beach residence. Ex. 18 ¶ 8.*

12

██████████████████████████████████████

**JPMC Response**: Undisputed that a plaintiff proceeding under the pseudonym Jane Doe No. 2 filed the cited private civil suit and made these allegations in the cited private civil suit.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

b.      ████   *who alleged that in 2002, when* ████  *was 16 years old, Epstein sexually*

*assaulted her more than 20 times during massages in his Palm Beach residence.*

*Ex. 19 at ¶¶ 24-37.  Epstein paid* ████  *$300 each time.  Id. at ¶ 36.*

**JPMC Response**: Undisputed that a plaintiff proceeding under the pseudonym ████ made these allegations in the cited private civil suit.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

c.      *Jane Doe No. 102, who alleged that Epstein abused her for four years starting in*

*1998 when she was 15 years old.  She traveled with Epstein to locations including*

*New York City, Santa Fe, Los Angeles, San Francisco, St. Louis, Europe, the*

*Caribbean, and Africa, and in each location Epstein "abused her to serve his every*

*sexual whim." Ex. 20 ¶¶ 17-20.*

**JPMC Response**: Undisputed that a plaintiff proceeding under the pseudonym Jane Doe No. 102 made these allegations in the cited private civil suit.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

████████████████████████████████████████    ███████████████

    d.      *Jane Doe 43, who alleged that she was recruited into Epstein's sex trafficking*

*scheme beginning in October 2006 and continuing through April 2007. Ex. 21 ¶¶*

*34, 38. Epstein and his recruiters told Doe 43 that Epstein would secure her*

*admission to fashion school in New York City. Doe 43 was coerced into engaging*

*in sexual acts with Epstein both in New York and in the U.S. Virgin Islands. Id. ¶*

*45. While in the U.S. Virgin Islands, Epstein maintained control of Doe 43's*

*passport and once conducted a search party to find Doe 43 after she attempted to*

*escape the island. Id. ¶ 49.*

**JPMC Response**: Undisputed that a plaintiff proceeding under the pseudonym Jane Doe No. 43 made these allegations in the cited private civil suit.

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

25.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████    *Ex. 9 at 74.*

**JPMC Response**:  Undisputed that the cited expert report of Bridgette Car contains the stated information. ████████████████████████

████████████████████████████    *See* JPMC Ex. 54 at 259:24-261:13 .

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

26.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    *Ex. 22 at -454.*    ████████████████████

███████████████████████████████████████████

███████████████████████████ *Id. at -464.  O*████████████

███████████████████████████████████████████

██████ *Id. at -466.* ████████████████████████████

█████████████████████████████████ *Id. at -474.*

**JPMC Response**: ████████████████████████████

███████████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

27. ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████ *Ex. 22 at -500.* ████████████████

███████████████████████████████████████████

*Id. at -536.* ████████████████████████████████

██████████████████████████████████████. *Id. at -566.*

**JPMC Response**: ████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

28. ██████████████████████████████████████

███████████████████████████████████████████

████████████ *Ex. 23 at -570.* ████████████████████

██████████████████████████████████████ *Id. at -*

571. ███████████████████████████████████████████████████

███████████████████████████████████  *Id. at -572.*  ███████████████████

████████████████████████████████████████████████████████

███████████  *Ex. 24 at -256-57.*

**JPMC Response**: ████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes hat Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

29. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████  *Ex. 24 at -205-06.*  ██████████████

███████████████████████████████████████████████  *Ex. 25 at -*
*401-02.*  ████████████████████████████████████████████

██████████████████████████████  *Id. at 391-92.*

**JPMC Response**: ████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

30. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████  *Ex. 25 at -381-82.*  ████████████████████████████

████████████████████████████████████████  *Id. at -362-63.*  ██████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ *Id. at -339-40.* ███████████

███████████████████████████████████ *Ex. 26 at - 491-92.*

**JPMC Response**: █████████████████████████████

████████████████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

31.   ██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████ *Ex. 26 at -473-74.*   ██████████

██████████████████████████████████████████████

*Id. at -429-30.*   █████████████████████████████

███████████████████████████████ *Id. at -423-24.*

**JPMC Response**: █████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

32.   *JPMorgan processed wire payments from Epstein to women in years that coincided with the women's trips to the U.S. Virgin Islands with Epstein:*

a.   ███████████████████████████████████████

███████████████████████ *Ex. 27 at -408.*   ██████████



*Id.*

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

*b.*

*Ex.27 at -406.*

*Id.*

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

*c.*

*Ex. 27 at -403.*

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.



d.

*Ex. 27 at -403.*

**JPMC Response:**

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

e.

*Ex. 27 at -406.*

**JPMC Response:**

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

f.

*Ex. 27 at -407.*

**JPMC Response:**

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.



*Ex. 27 at -407.*

**JPMC Response**:

Disputed insofar as USVI contends that the cited document establishes that Epstein was engaged in a sex-trafficking venture as a matter of law or that JPMC knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

**JPMorgan Knew or Recklessly Disregarded that Epstein Ran a Sex-Trafficking Venture**

> **JPMC Response**:  This is a header to which no response is warranted.  Disputed insofar as USVI contends that the statements and documents cited below establish that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law.

33.  *JPMorgan admits Mary Erdoes, Catherine Keating, and Mary Casey were aware in 2006 that Epstein was arrested for solicitation of prostitution. Ex. 28 at Resps. 90, 147, 112.*

> **JPMC Response**: Undisputed that Erdoes, Keating, and Casey were aware of Epstein's 2006 arrest for solicitation of prostitution.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

34.  *An internal JPMorgan document defines Know Your Client (KYC) as a "due diligence process that ensures we 'know' the clients we deal with and understand how and why they use our products and services.  Without KYC, we become vulnerable.  Unknowing to us, our clients could easily use PCS as a vehicle to perpetrate illegal activities." Ex. 29 at -026.*

> **JPMC Response**: Disputed to the extent USVI misstates the cited document.  The document defines KYC as "Know Your Customer."  USVI Ex. 29 at -026.  Otherwise, undisputed that the cited document contains the quoted text.

███████████████████████████████████    ████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

35.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████    *Ex. 30 at -915.*

> **JPMC Response**: ███████████████████████████████████
> ███████████████████████    Otherwise, undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

36.    *Red Dot information "is any derogatory information identified by Global Security Services which warrants the attention of the banker." Ex 31 at -574.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

37.    *JPMorgan's due diligence process required that it research and review news publications about clients or clients' businesses. Ex. 32 at 42:13-19.*

> **JPMC Response**: Undisputed that Casey testified that the review of news reports or publications with respect to the client or the client's business were part of her due diligence review. USVI Ex. At 42:13-19. Disputed to the extent USVI asserts that this testimony about Casey's own due diligence work establishes a fact about JPMC's overall due diligence process and policies.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

38.    *Negative news media was one of the main categories of information reviewed as part of JPMorgan's ongoing due diligence monitoring. Ex. 33 at 53:3-54:3; 60:8-20.* ███████████

████████████████████████████████████    *Ex. 34 at 31:14-32:10.*

███████████████████████████████████████

*JPMorgan's Global Security Services searched databases for negative media regarding clients to escalate to bankers and risk management. Ex. 35 at 340:6-341:3. JPMorgan Private Bank conducted negative media reviews as part of its approach to determine whether a client's activity was suspicious. Ex. 36 at 187:25-188:22.*

> **JPMC Response**: Disputed to the extent this paragraph consists of USVI's summary of Pearn, Sheridan, McCleerey, and Ryan's testimony. Disputed that cited USVI Ex. 33 supports the proposition that "[n]egative news media was one of the main categories of information reviewed as part of JPMorgan's ongoing due diligence monitoring."
>
> ████████████████████████████████████████████
>
> USVI Ex. 34 at 31:23-25; 32:1-3. Disputed that JPMorgan's Global Security Services searched databases for negative media regarding clients. Undisputed that JPMorgan Private Bank conducted negative media reviews as part of its approach to determine whether a client's activity was suspicious.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

39. *A JPMorgan Due Diligence Report for Epstein's entity YHS, LLC includes a section for news publications. Ex. 37 at -185-199.*

> **JPMC Response**: Undisputed that the cited Due Diligence Report for YHS, LLC includes a section titled "Publications." USVI Ex. 37 at -185.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

40. *Another JPMorgan Due Diligence Report for Epstein includes a section for news publications. Ex. 38 at -558-567.*

> **JPMC Response**: Undisputed that the cited Due Diligence Report for Jeffrey Epstein includes a section in the "Table of Contents" titled "Publications." USVI Ex. 38 at -551. Disputed to the extent that the cited pages were not provided with Ex. 38.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107.

41.     *JPMorgan admits certain JPMorgan employees received, reviewed, or read articles covering Epstein's 2006 arrest in Florida.  Ex. 39 at Resps. 32, 33.*

> **JPMC Response**: Undisputed that certain JPMorgan employees received, reviewed, or read articles covering Epstein's 2006 arrest in Florida.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

42.     *JPMorgan admits certain JPMorgan employees received, reviewed, or read a 2006 Palm Beach Post article stating that Epstein was indicted on one count of felon[y] solicitation of prostitution.  Ex. 39 at Resp. 41.*

> **JPMC Response**: Undisputed that certain JPMorgan employees received, reviewed, or read a 2006 Palm Beach Post article stating that Epstein was indicted on one count of felony solicitation of prostitution.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of law.  *See* CSMF ¶¶ 1-107.

43.     *The 2006 Palm Beach Post article states:  "Palm Beach billionaire Jeffrey Epstein paid to have underage girls and young women brought to his home, where he received massages and sometimes sex" and "police thought there was probable cause to charge Epstein with unlawful sex acts with a minor and lewd and lascivious molestation."  Ex. 40 at 1.  The article lays out in detail evidence from the Palm Beach Police Department Probable Cause Affidavit, including:*

> a.     *A college student gave Epstein a naked massage and then "brought him six girls, ages 14 to 16, for massage and sex-tinged sessions" at Epstein's home.  Id. at 2.*
>
> b.     *A 27-year-old Epstein employee,* ██████████*, would arrange the sessions and prepare the massage table.  Id. at 2.*
>
> c.     *Police obtained statements from five alleged victims and 17 witnesses.  Police contend Epstein "had sex with the girls" on three occasions.  Id. at 2.*

23

████████████████████████████████████    ████████████████████

d.      ████████████ met Epstein at age 17 and was recruited to massage him.  Epstein
told her he would "pay her to bring him more girls—the younger the better." She
stated she once brought a 23-year-old woman to him and "Epstein said she was
too old . . . ." She brought six girls to Epstein and said the girls were paid $200 for
each session.  ████████████ told police, "I'm like a Heidi Fleiss."  Id. at 3.

e.      One 14-year-old victim recounted the details of her encounter in February 2005
including being paid $300 for a massage in her bra and panties.  For bringing this
child to Epstein, ████████████ received $200.  Id. at 3.

f.      Police scoured the trash from Epstein's house and found notes with names and
phone numbers, sex toys and female hygiene products.  Notes stated that one female
could not "come over at 7 p.m. because of soccer.  Another said a girl had to work
Sunday—'Monday after school?' And still another note contained the work hours
of a girl, saying she leaves school at 11:30 a.m. and would come over the next day
at 10:30 a.m."  Id. at 4.

**JPMC Response**: Undisputed the 2006 Palm Beach Post article contains the cited
information.  Disputed as to the USVI's characterization that the article "lays out in detail
evidence" the Palm Beach Police Probable Cause Affidavit.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
knew or recklessly disregarded that Epstein ran a sex-trafficking venture as a matter of
law.  *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented
at trial in admissible form.

44.     *The 2006 Palm Beach Post article also states, "Palm Beach police often conducted
surveillance . . . at Palm Beach International Airport to see if his private jet was there . . . ." Ex.
40 at 4.*

**JPMC Response**: Undisputed the cited 2006 Palm Beach Post article contains the quoted
text.

███████████████████████████████████     ████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

45.  *The 2006 Palm Beach Post article said that Epstein paid $200 or $300 cash to the girls*

*and $200 cash to* ██████ *for recruiting the girls. Ex. 40 at 3.*

**JPMC Response**: Undisputed the cited 2006 Palm Beach Post article contains the cited information. The cited document speaks for itself.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein engaged in a sex-trafficking venture as a matter of law. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

46.  *JPMorgan admits the 2006 Palm Beach Post article mentioned* █████████   *Ex. 39 at*

*Resp. 42.*

**JPMC Response**: Undisputed that the 2006 Palm Beach Post article mentioned ██████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

47.  *The Palm Beach Police Department Probable Cause Affidavit discussed in the 2006 Palm*

*Beach Post article was filed May 1, 2006. Ex. 41 at 24.*

**JPMC Response**: Undisputed that the cited Probable Cause Affidavit from the Palm Beach Police Department was dated May 1, 2006.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

48.  *JPMorgan admits certain of its employees received, reviewed, or read one or more articles*

*that reference* █████████████ *JPMorgan otherwise refers to those articles for their contents.*

*Ex. 39 at Resp. 43.*

█████████████████████████████████████████████████

**JPMC Response**: Undisputed that certain of JPMC's employees received, reviewed, or read one or more articles that reference ██████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

49.     *A July 28, 2006 ABC News article, "Warrants Were Prepared to Arrest Others in Millionaire Sex Scandal," states:  "Palm Beach police were planning to arrest two women in connection with their investigation into Jeffrey Epstein . . . ████████ Epstein's assistant . . . and ██████████ . . . who police say was paid by Epstein to bring over young and underage girls to his house to massage Epstein . . . . Another woman involved in the scandal was Epstein's girlfriend ██████████ . . . . Though the documents do not mention that any charges were being sought against ██████████, one girl, who began massaging Epstein when she was 16 years old, told police that she was paid by Epstein to have sex with ████████ as he watched. The girl also told police that 'Epstein bragged he brought her ████████ into the United States to be his Yugoslavian sex slave,' according to the documents."  The article also states that the police submitted arrest warrant requests for ██████████ and ██████████. According to the report, '██████ was to be arrested . . . on four counts of unlawful sexual activity with certain minors and . . . on one count of lewd and lascivious molestation. ████████ warrant was for lewd and lascivious acts on a victim under 16 years of age."  Ex. 42 at -657.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

50.     *On August 14, 2006, Doreen Hewitt emailed Maria Hornak, Mary Casey and other JPMorgan employees, subject:   "Re: Article of J Epstein's Arrest" with the link*

*http://www.nypost.com/news/regionalnews/mystery_moguls_teen_sex_secret_bared_in_probe_r
egionalnews_dan_mangan.htm.  Ex. 43 at -859.  The article states:*

a.    *". . . According to one girl, 'Epstein asked for her real age, [and she] stated she
was 16.  Epstein advised her not to tell anyone her real age,' the records say.  The
girl alleged Epstein paid her to have sex with his girlfriend,* ▮▮▮▮▮▮▮ *. .
. . Epstein would then watch the women have sex and take photos of their trysts to
display at home, the records claim.  The teen told cops she always refused to have
intercourse with Epstein . . . . But one time . . . Epstein allegedly grabbed her and
forced himself on her. When the girl became upset and screamed, 'No!' Epstein
apologized, and he later paid her $1,000 for the visit, the records allege.  Palm
Beach cops prepared an arrest-warrant request proposing that Epstein be charged
with unlawful sexual activity with certain minors and with lewd and lascivious
molestation.  Instead, in a rare move, prosecutors brought the evidence to a grand
jury, which indicted Epstein only on the prostitution charge.  The frustrated police
now have given their evidence to the FBI's Miami division, which is considering
whether to investigate Epstein for possible federal crimes involving underage girls,
said Special Agent Judy Orihuela."*

b.    *The article also states that Epstein's "assistant,* ▮▮▮▮▮▮ *, helped arrange the
sessions" and that "[s]everal girls allege that* ▮▮▮ *, 26, led them to Epstein's
master bedroom, where she would set up a massage table and give them oils to rub
on Epstein.  Cops wanted to charge* ▮▮▮▮ *and* ▮▮▮▮ *for their roles in procuring
the girls. . . ."  Ex. 43 at 3-4.*

**JPMC Response**: Undisputed that Hewitt sent an email dated August 14, 2006,
containing the link to the cited article and that the article contains the quoted text.

[REDACTED]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

51.    *In "AML Operations Human Trafficking Overview, A "Reference Document on human trafficking prepared by JPMorgan Corporate AML Compliance," dated August 5, 2008, JPMorgan states:  "Sexual Slavery" means "the coercion of the unwilling into various sexual practices."  Ex. 44 at -052.*

> **JPMC Response**: Disputed to extent USVI misstates the document, which is described as a "Reference Document on human trafficking prepared by JPMC Corporate AML Compliance."  USVI Ex. 44 at -047.  Undisputed that the cited document states, "Sexual Slavery is a term that describes any coercion of the unwilling into various sexual practices."  *Id.* at -052.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

52.    [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]    *Ex. 45 at -395-97.*

> **JPMC Response**:  [REDACTED]
>
> [REDACTED]
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

53.    *On July 25, 2006, Staley met with Epstein in person at Epstein's home.  In that visit, Epstein admitted to the alleged "conduct of engaging in sex for money with young women"—only denying the "ages"—to Staley.  Ex. 46 at 796:11-799:6.*

**JPMC Response**: Undisputed that Staley testified as to the quoted text. Disputed as to the underlying fact to the extent it requires a credibility determination.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

54.   *On July 26, 2006, Staley wrote Erdoes: "I went and saw him last night. I've never seen him so shaken. He also adamantly denies the ages." Ex. 47 at -334.*

**JPMC Response**: Undisputed that cited document contains quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

55.   *Staley admits that in 2006 Jamie Dimon communicated with him regarding Epstein's arrest on charges of procuring a minor for prostitution and solicitation of a prostitute. Ex. 48 at Resp. 111. Staley also testified that on or about July 26, 2006, he spoke to Dimon about Epstein's indictment because Dimon was his boss and the indictment of Epstein, a client of the bank, "was a very public event." Ex. 46 at 17:2-19:16.*

**JPMC Response**: Disputed. Dimon clearly and repeatedly testified that he did not speak to Staley about Epstein's indictment in 2006:

> Q:  Did you speak with Jes Staley about the fact that Mr. Epstein had been indicted?
>
> A: I did not.
>
> Q: Did you receive a report from Jes Staley that he had visited with Mr. Epstein the day or so after the indictment?
>
> A: I did not.
>
> Q:  Did Mr. Staley inform you what Mr. Epstein said with respect to the indictment which had been returned a day or two before?
>
> A: Nope.
>
> Q: Did you speak with Mr. Staley at all in the year 2006 about Mr. Epstein?

████████████████████████████████

A:  I don't recall ever having a conversation with him about Jeff Epstein.

JPMC Ex. 55 at 11:12-12:4; *see also* JPMC Ex. 56 at No. 69 (denying that Dimon was aware in 2006 that Epstein had been arrested for prostitution and/or sexual misconduct).

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

56.     *JPMorgan admits that certain of its employees received, reviewed, or read the 2003 Vanity*

*Fair article, "The Talented Mr. Epstein" and refers to the article for its content.  Ex. 39 at Resp.*

*36.*

> **JPMC Response**: Undisputed that JPMC admits that certain of its employees received, reviewed, or read the 2003 Vanity Fair article, "The Talented Mr. Epstein".
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

57.     *In May 2003, Casey (then Rieth) sent the Vanity Fair article along with the Due Diligence*

*Report ("DDR") for Epstein's Financial Trust Company, Inc. to JPMorgan employee Paul Lahiff*

*so he would "get everything at once."  Ex. 49 at -281.*

> **JPMC Response**: Disputed.  The cited email does not support the contention that "Casey (then Rieth) sent the Vanity Fair article along with the Due Diligence Report . . . to Paul Lahiff."  The cited email states, "Just got the DDR back this morning; will have it approved by the afternoon.  I was waiting to pull everything together before sending down Vanity Fair article, so you'll get everything at once."  USVI Ex. 49 at -281.  Neither the Vanity Fair article nor the cited DDR are attached to the email from Rieth to Lahiff nor does the email establish that Casey in fact sent these materials to Lahiff.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

58.     *"The Talented Mr. Epstein" states:  "Epstein is known about town as a man who loves*

*women—lots of them, mostly young. Model types have been heard saying they are full of gratitude*

*to Epstein for flying them around, and he is a familiar face to many of the Victoria's Secret girls.*

*One young woman recalls being summoned by Ghislaine Maxwell to a concert at Epstein's town*

██████████████████████████████████████   ████████████████

*house, where the women seemed to outnumber the men by far. 'These were not women you'd see at Upper East Side dinners,' the woman recalls. 'Many seemed foreign and dressed a little bizarrely.' This same guest also attended a cocktail party thrown by Maxwell that Prince Andrew attended, which was filled, she says, with young Russian models. 'Some of the guests were horrified,' the woman says." Ex. 49 at p. 7-8.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

59.    *"The Talented Mr. Epstein" states: "There are many women in his life, mostly young, but there is no one of them to whom he has been able to commit. He describes his most public companion of the last decade, Ghislaine Maxwell, 41, the daughter of the late, disgraced media baron Robert Maxwell, as simply his "best friend." Ex. 49 at 3-4.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

60.    ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████   *Id. at -790_003.*

> **JPMC Response**: ██████████████████████████████████████████
> ██████████████

███████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

61. ████████████████████████████████████

████████████████████████████████████

████████████████████      *Ex. 51 at -792-792_003.*

████████████████████████████████████

████████████████      *Id. at -792_003.*

**JPMC Response**: ███████████████████
██████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

62. ████████████████████████████████████

████████████████████████████████████

████████████████      *Ex. 52 at -791-791_003.*

███████████████████████      *Id. at 791_003.*

**JPMC Response**: ███████████████████
██████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

63.   *A JPMorgan training document "What is Human Trafficking" identified "structured transactions" as a "Key Indicator/Red Flag[] of potential Human Trafficking activity." Ex. 53 at -918; Ex. 33 at 186:3-188:13, 191:23-192:7.*

**JPMC Response**: Undisputed that a JPMC document titled "Human Trafficking" states "structured transactions, particularly those conducted via MSBs" are "Key indicators/Red flags of potential Human Trafficking activity". Disputed as to materiality. The cited document was created in May of 2018 and JPMC terminated Epstein as a client in 2013.

██████████████████████████████████████████        ████████████

*See* SUMF ¶ 48.  JPMC's policies and trainings evolved in line with industry standards with respect to AML and human trafficking, *see* JPMC Ex. 57 at 137:5-25, but post-exit training materials are immaterial to JPMC's conduct related to Epstein and cannot be used to establish the prevailing standards at JPMC or the industry during the relevant time period.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

64. *The JPMorgan training document also states:   "Previous AML history, while not*

*necessarily HT-related, may be associated with an investigation related to suspicious activity, such*

*as interstate, excessive, or structured cash activity."  Ex. 33 at 191:23-192:7.*

**JPMC Response**: Undisputed that the quoted portion of the cited deposition in which the questioner purports to be reading from a JPMC training document contains the quoted language.  Disputed to the extent that testimony establishes what the document in fact says as USVI has not provided a cite to the document and, assuming USVI is referring herein to the document submitted as USVI Ex. 53, disputed for the reasons discussed in response to ¶ 63.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

65. ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████

**JPMC Response**: ██████████████████████████████████████████

███████████████████████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.



*Ex. 55 at -475.*

**JPMC Response**:

*Ex. 55 at -475.*

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

67. *From October 1999 through July 2006, JPMorgan handled $25,146,955.30 in payments*

*from Epstein's JPMorgan accounts to Ghislaine Maxwell. Ex. 56 at 45-46 and Figure 15.*

**JPMC Response**: Disputed to the extent USVI misstates the cited Figure. Figure 15 shows transactions totaling the amount cited by USVI occurring between October 1999 and July 2005. Otherwise undisputed that the cited Figure 15, which is a summary of transactions prepared by USVI's proffered expert Jorge Amador, shows the cited transactions. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

68.

*Ex. 61 at -033.*

**JPMC Response**:

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

████████████████████████████████████████████

69.    ████ *was a customer of JPMorgan. Ex. 62 at Resp. 7.*

    **JPMC Response**: Undisputed that ████ was a customer of JPMorgan.

    Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

70.    ████ *had a credit card with the Retail Bank. Ex. 63 at 651.*

    **JPMC Response**: Undisputed that ████ had a credit card with the Retail Bank.

    Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

71.    *In 2005, JPMorgan made two separate $25,000 payments from Epstein's JPMorgan accounts to* ████ *Ex. 56 at 34, 36, and Figure 9.3.*

    **JPMC Response**: Undisputed that the cited Figure 9.3, which is a summary of transactions prepared by USVI's proffered expert Jorge Amador, shows two $25,000 transactions to ████ Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.

    Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

72.    *From August 2006 through August 2013, JPMorgan handled $678,741.57 in payments from Epstein's JPMorgan accounts to* ████ *Ex. 56 at 34, 36, and Figure 9.3.*

    **JPMC Response**: Undisputed that the cited Figure 9.3 which is a summary of transactions prepared by USVI's proffered expert Jorge Amador, shows transactions to ████ totaling $678,741.57 from January 2008 through August 2013. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.

    Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

73.    ████ *was a customer of JPMorgan. Ex. 62 at Resp. 6.*

    **JPMC Response**: Undisputed that ████ was a customer of JPMorgan.



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

74.    *In 2004, sponsored by Epstein, JPMorgan opened accounts and credit cards for two teenagers,* ▮▮▮▮▮▮ *and* ▮▮▮▮▮▮ *, "models in NYC and friends of Jeffrey Epstein." Ex. 65 at -316; Ex. 66 at -804; Ex. 36 at 230:6-231:20.*

**JPMC Response**: Undisputed that in 2004 JPMorgan opened DDA accounts and credit cards for ▮▮▮ and ▮▮▮▮▮ and that Epstein was the guarantor. Disputed as to USVI's characterization that ▮▮▮ and ▮▮▮ were teenagers at this time. *See* USVI Ex. 66 (indicating that ▮▮▮ and ▮▮▮▮ were 18 years of age). Undisputed that USVI Ex. 65 contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

75.    *The DDR for* ▮▮▮▮ *was originally approved in February 2004. Ex. 67 at -700.*

**JPMC Response**: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Ex. 67 at -700.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

76.    *The DDR for* ▮▮▮▮▮ *was approved by the Private Bank even though there was no birthdate, passport number, driver's license number, or "confirmed" social security number. The Private Banker (Casey) never met* ▮▮▮▮▮ *as JPMorgan's process contemplated. Ex. 68 at -567.*

**JPMC Response**: Disputed. Additional documentation completed in connection with the opening of ▮▮▮▮▮ JPMC account included her birth date, which indicated that her account was opened when she 18 years old. *See* JPMC Ex. 58 at 1. That document also shows that ▮▮▮▮▮ application was verified by two forms of identification, her passport and a Florida's driver's license. *Id.* at 2. Additional documentation also confirms that JPMC personnel did meet ▮▮▮▮▮ in person. *See* JPMC Ex. 59.

███████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

77. *The DDR stated that* ████████████ *is a Slovakian citizen who has come to the US for modelling work. Jeffrey Epstein knows the model personally." and "Jeffrey Epstein often provides support to emerging models. In this case,* ████████████ *has arrived from the Slovak Republic and Epstein has asked us the favor of opening a checking account for her and he will guarantee her credit card application." Ex. 68 at -567.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

78. *The DDR represented* ████████ *net worth as $100,000 "earned" from "modeling assignments." Ex. 68 at -566.*

**JPMC Response**: Disputed to the extent USVI misstates the document. The document states that ████████ earned her wealth through "modelling assignments." USVI Ex. 68 at -566. Otherwise, undisputed.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

79. *The DDR listed* ████████ *address as* ████████████████
████████████████ *Ex. 68 at -565; Ex. 69 at -545.*

**JPMC Response**: Undisputed that the cited DDR lists ████████████
████████ USVI Ex. 68 at -565. ███████████
████████████████████████████████
████████████████████████████████
████████████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

80.   *In 2004, 2005, and 2006, JPMorgan handled $36,565.56, $67,754.28, and $82,897.80, respectively, in payments from Epstein's JPMorgan accounts to* ███████. *Ex. 56 at 34-35 and Figure 9.2.*

> **JPMC Response**: Undisputed that the cited Figure 9.2, which is a summary of transactions prepared by USVI's proffered expert Jorge Amador, shows transactions to ███████ with the cited amounts in 2004, 2005, and 2006.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

81.   *On January 7, 2011, Ryan (AML Compliance) emails DeLuca (AML Compliance), copying Middlemiss (AML Compliance): "I also spent a good deal of time looking at his assistant or young lady he brought over from Praque( [sic] or some place like that) account.  She was involved in some of the detailed escapades.  She opened accounts in PB sponsored by him.  Oh my were her debit transactions enlighting [sic] as compared to countless stories related to his escapades.  Lots of salon, lingerie shops, drug stores ny palm beach and in st thomas ( his places of residence).  Plus lots of video like girls gone wild and some other shops not fit for my good catholic upbringing!  The transactions are old 05 to 08.  Besides frequent spa like charges it has died down.  Surprised she was never subpoenaed."  Ex. 70 at -749_R.*

> **JPMC Response**: Disputed to the extent USVI misstates the document.  The last two sentences of the quoted language state, "Besides frequent frequent spa like charges it has died down.  Surprised she was never subpoened [sic]."  USVI Ex. 70 at -749_R.  Otherwise, undisputed that the cited document contains the quoted language.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

██████████████████████████████    ████████████

82.   *JPMorgan's own Human Trafficking white paper, "Human Trafficking Finance: Nature,*

*Scope and Control Project," discussed "upscale" sex-trafficking operations "incurr[ing]*

*expenses such as jewelry, lingerie, cosmetics, [and] sex toys." Ex. 71 at -983.*

> **JPMC Response**: Undisputed that the cited document, dated November 2010, stated that
> a source who provided background for the initiative stated, "upscale operations incurred
> expenses such as jewelry, lingerie, cosmetics, sex toys, as well as airlines, hotels, casinos,
> ground transportation services, sporting events and concerts." USVI Ex. 71 at -983.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

83.   *From August 2006 through January 2013, JPMorgan handled $607,804.30 in payments*

*from Epstein's JPMorgan accounts to* ████████████   *Ex. 56 at 34-35 and Figure 9.2.*

> **JPMC Response**: Disputed to the extent USVI misstates the cited Figure.  Figure 9.2
> shows transactions to ████████ totaling $607,804.30 occurring from September 2006
> through January 2013.  Otherwise undisputed that the cited Figure 9.2, which is a
> summary of transactions prepared by USVI's proffered expert Jorge Amador, shows the
> cited transactions.  Disputed that this information was available to JPMorgan in this
> format during the time Epstein was a client of JPMorgan.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

84.   ████████████████████████████████████████

████████████████████████████    *Ex. 2 at -196.*   ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████ *Id. at -*

*196.*

> **JPMC Response**: ███████████████████████████
> ██████████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

85.    *The article cited* ████████, *"Meet* ████████, *Star Girl of the Raunchiest*

*Part of Epstein Scandal," first published on July 28, 2006, referred to* ████████ *as "star girl*

*of Epstein scandal" and "an unknown Czech sex puppet" of Epstein's. Ex. 72 at 1-2.*

> **JPMC Response**: Disputed to the extent USVI suggests that anyone at JPMC received, reviewed, or read the cited article when it was first published on July 28, 2006 as unsupported by the citation. ███████████████████████████████
> ███████████████████████████████████████████
> ███████████████████████████████████████████
> ███████████████████████████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

86.    *On March 8, 2007, Maria Hornak forwards an email from Rich Kahn (Epstein's*

*accountant) to Mary Casey, subject "FW: New Chase Credit Cards" with the attachment "JE -*

*Chase Credit Cards.xls."  Ex. 73 at -494.  The attachment lists "Jeffrey Epstein Chase Credit*

*Cards" for* ████ *and* ██████ *a through NES LLC c/o Jeffrey Epstein.  Expected charges on*

*the credit cards were for "travel[] through Paris, Europe and US Virgin Islands and US monthly."*

*Id. at -496.*

> **JPMC Response**:  Undisputed that Hornack forwarded the email to Casey on March 8, 2007, and that the attachment lists ████ and ██████ as "Cardholders" through NES

█████████████████████████████████████

LLC.  Disputed to the extent USVI characterizes "travel[] through Paris, Europe and US Virgin Islands and US monthly" as "expected charges on the credit cards" as unsupported by the cited document.  The quoted language is included in a column titled "Notes" and provides no indication that these are the "expected charges."  USVI Ex. 73 at -496.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

87.   *The attachment also lists credit cards for Larry Visoski and David Rodgers,* ████████

████████████████████████   *through Jege, LLC.  Ex. 73 at -496; Ex. 24 at -198.*

**JPMC Response**: Disputed to the extent USVI misstates the document.  The cited document includes Rodgers and Visoski as "Cardholders", but the listed Epstein entity is "JEGE Inc." not "Jege LLC."  USVI Ex. 73 at -496.  Otherwise, undisputed.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

88.   *On June 9, 2010, Bonnie Perry (in Private Bank Risk Management) emailed Epstein's then-*

*banker (Paul Morris): "3 entities within the relationship do not currently have DDRs . . .116 East*

*65th St LLC[,] NES, LLC[, and] Zorro Trust."  Ex. 74 at -237.*

**JPMC Response**: Undisputed that Perry emailed Morris on June 9, 2010, and the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

89.   ████████████████████████████████████   *Ex. 75 at -318.*

**JPMC Response**: ████████████████████████
███████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

90.   *On October 17, 2006, JPMorgan held a "Rapid Response Team" meeting.  Ex. 76 at -953.*

**JPMC Response**: Undisputed that the document indicates that JPMC held a Rapid Response Team meeting on October 17, 2006.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

91.     *Rapid Response meetings were "escalations of . . . derogatory information to management*

*. . . [who would] review it and make a determination on how they want to proceed." Ex. 77 at*

*53:21-54:4.*

**JPMC Response**: Disputed to the extent that USVI misstates the quoted language. Perry testified that a rapid response meeting is "an escalation of information that was brought to us, derogatory information, where it seems something that should be escalated up to management and they just – we give them the facts, they review it and make a determination on how they want to proceed." USVI Ex. 77 at 53:21-54:4.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

92.     *The Rapid Response meeting memo notes: "Derogatory Information reported by Security*

*Services . . . . Several newspaper articles were found that detail the indictment of Jeffrey Epstein*

*in Florida on felony charges of soliciting underage prostitutes." Ex. 76 at -953.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

93.     *The memo from the Rapid Response meeting stated that Epstein had accounts "with*

*balances totaling approximately $32 million." The Rapid Response memo also noted: "Cash*

*withdrawals are routinely made in amounts for $40,000 to $80,000 several times a month, which*

*total over $750,000 year to date." Ex. 76 at -953.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.

███████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

94. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Ex. 78 at -995.*



**JPMC Response**:

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

95.  *In 2004 and 2005, JPMorgan recorded cash withdrawals from Epstein's JPMorgan accounts totaling $1,744,337.  Ex. 56 at 24-26 and Figure 8.*

**JPMC Response**: Undisputed that the cited report of USVI's proffered expert Jorge Amador includes a chart that asserts that the CTRs generated by JPMC relating to Epstein in 2004 and 2005 were $840,000 and $904,337, respectively, and that together those amounts equal $1,744,337.  Disputed as to USVI's characterization that JPMC "recorded cash withdrawals" or that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.

[REDACTED]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

96. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

*Ex. 80 at -718-19 (emphasis added); Ex. 36 at 19:13-19.*

**JPMC Response**: [REDACTED]

[REDACTED]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

97. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] *Id. at -937.* [REDACTED]

[REDACTED] *Id. at -936.*

**JPMC Response**: [REDACTED]

[REDACTED]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

98.     *On July 18, 2013, Ryan (AML compliance) emailed DeLuca (AML compliance), subject*

*Epstein more info found, and states: "Issue is he really never stopped the large cash withdrawals."*

*Ex. 82 at -965. DeLuca responds, "Shouldn't the business have been telling us this?" Id. at -965.*

> **JPMC Response**: Undisputed that Ryan emailed DeLuca on July 18, 2013 and that the cited emails contain the quoted language.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

99.     *On July 19, 2013, John Duffy (then CEO US Private Bank) emails Erdoes (then CEO*

*AWM), subject JE talking points, and asks what Erdoes thinks of three talking points for Epstein's*

*exit conversation: "1. The repetitive nature of your cash transactions is a problem for us and our*

*relationship with you[;] 2. The regulatory standards in the banking industry continue to evolve*

*with a very low tolerance for cash activity when combined with your personal history[;] 3. So,*

*given the intersection of these circumstances we are in a uniquely challenged situation.*

*Remediation is required and we need to ask you - in an orderly manner - to find another bank for*

*your needs." Ex. 83 at -966. Erdoes replies, "I think that is fine," Id.*

> **JPMC Response**: Disputed to the extent USVI misstates the document, the subject of the cited email is "JE talking pts.". *See* USVI Ex. 83 at -966. Disputed as to the proposition that the draft three talking points were in fact used "for Epstein's exit conversation" as not supported by the cited document. Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

100.    *The Rapid Response Team memo states: "Conclusion from follow-up Rapid Response of*

*1/07/11: Further meetings held with Jes Staley to discuss LOB decision for reapproval. Banker*

*Paul Morris spoke with Mr. Epstein with regard of large cash withdrawals. Mr. Epstein withdraws*

*anywhere from $20K to $40K in cash to pay for fuel expenses when he travels to foreign countries.*

██████████████████████████████    ██████████

*Banker Paul Morris was instructed by the Committee to update the entity KYC which holds the*

*operating account for Mr. Epstein's personal airplane, Hyperion, to document the purpose of the*

*cash withdrawals.  Further, Paul Morris informed Mr. Epstein that the SBLC [Stand By Letter of*

*Credit to MC2] would not be renewed.  Mr. Epstein will continue to be a banking only client."*

*Ex. 84 at -932.*

> **JPMC Response:** Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶ 1-107.

101.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████    *Ex. 85 at -825.* ███████████████████

████████████    *Id. at -826.*

> **JPMC Response:** ███████████████████████████
>
> ███████████████████████████████████████████████
>
> ███████████████████████████████████████████████
>
> ███████████████████████████████████████████████
>
> ███████████████████████████████████████████████
>
> ███████████████████████████████████████████████
>
> ███████████████████████████████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.



102. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ *Ex. 86 at -885, -890.*

**JPMC Response:**

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

103. ███████████████████████████████████████████

███████████████████████





*Ex. 87 at -089-93, -096.* 

▮▮▮▮▮▮ *Id. at -094.*

**JPMC Response:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

104.    *There is no evidence that the Bank asked Epstein for any receipts or other documentation to support his cash-for-fuel explanation.  They took Epstein "at his word."  Ex. 88 at 176:12-177:10, 344:23-346:17.*

**JPMC Response:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

105.    *The Rapid Response memo states: "During the period of March 2010 to December 2010,*

*there were eight large cash withdrawals totaling $240,000 where Currency Transaction Reports*

*were filed." Ex. 84 at -930.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶ 1-107.

106.    *Epstein was in jail from June 30, 2008 to July 2009 (13 months) and on house arrest from*

*July 2009 to July 20, 2010.  Ex. 89 at -049; Ex. 90 at -814-815.*

> **JPMC Response:**  Disputed to the extent that the cited portions of the documents do not provide the exact dates of Epstein's incarceration and house arrest.  USVI Ex. 89 at -049; Ex. 90 at -814-815.  Undisputed that Epstein was in jail from June 30, 2008 to July 2009 and on house arrest from July 2009 to July 20, 2010.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

107.    *The Rapid Response memo includes excerpts from the press and quotes a Palm Beach Post*

*article dated August 1, 2010: "According to the news website The Daily Beast, the feds are also*

*checking whether a modeling agency run by a friend of the Wall Street investor Epstein fed his*

*appetite for underage foreign girls.  Epstein was known to fly young women from Eastern Europe*

*to Palm Beach, where they'd massage him, among other services.  Because of double jeopardy*

*rules, Epstein - now a registered sex offender - can never be prosecuted again for crimes covered*

*by the state charges.  He pleaded guilty to felony solicitation of prostitution and procuring a person*

*under 18 for prostitution, also a felony.  Child trafficking, however, would offer two advantages*

*to federal prosecutors:  The charge would not be covered by double jeopardy; and there's no*

*statute of limitations." Ex. 84 at -930.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

108.    *In 2006, JPMorgan's due diligence included multiple news reports that Epstein "assembl[ed] a team of star lawyers" including Alan Dershowitz, Jack Goldberger, Roy Black, and Gerald Lefcourt—to "look into the backgrounds of his young accusers" and "to undermine the credibility of the 14- to 17-year-old girls." Ex. 37 at -188, -196. The same set of reports explain that another of Epstein's lawyers, Jack Goldberger, said Epstein "would never knowingly break the law." Id. at -192. Gerald Lefcourt, "one of Epstein's high-powered lawyers," says his client is innocent[.]" Id. at -194. "Epstein's camp was ready 'to get their story out.' They did that Monday via Goldberger and . . . attorney Roy Black, who also has represented Epstein in the case. 'We just think there has been a distorted view of this case in the media presented by the Palm Beach Police." Id. at -197.*

> **JPMC Response:**  Undisputed that JPMC's Due Diligence Report for YHS, LLC contained copies of new articles concerning Jeffery Epstein that included the quoted language.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

109.    *On July 26, 2006, Philip Schlakman emailed Casey (then Epstein's banker), subject: "epstein press" and states "it gets worse" with a link to a Palm Beach Post Article that notes the Palm Beach police spent months monitoring the Palm Beach International Airport to keep tabs on Epstein's private jet. Ex. 91 at -335, 1.*

> **JPMC Response:**  Undisputed that the cited email contains the quoted text, and the Palm Beach Post article reported that Palm Beach police watched the Palm Beach International Airport to keep tabs on Epstein's private jet.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶

1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

110.



*Ex. 45 at -395, -397-98.*

**JPMC Response:**

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

111.



[black redaction bar]

[black redaction bar]

*Ex. 45 at -397.*

> **JPMC Response:** [black redaction bar]
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.   Further contended that the cited material cannot be presented at trial in admissible form.

112.    *In September 2007, Lisa Waters (then Managing Director AWM) emails Erdoes an article about Epstein from Page Six that stated: "Sources tell Page Six that Epstein's high-powered lawyers - including Alan Dershowitz, Gerald Lefcourt, Roy Black and Kenneth Starr - have been negotiating a deal with federal prosecutors who are probing, among other things, whether the gray-haired money manager paid West Palm Beach girls for sex or transported them across state lines." Ex. 92 at -501.*

> **JPMC Response:**  Undisputed that Waters emailed the quoted text to Erdoes.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶ 1-107.

113.    *In a June 17, 2013 internal risk assessment matrix, JPMorgan acknowledged allegations that Epstein "supposedly bought his way to a lesser sentencing" and "paid a whole series of girls to stay quiet." Ex. 93 at -344 (Name Risk tab).*

> **JPMC Response:**  Disputed as to the characterization that JPMC "acknowledged" the allegations.  Undisputed that the cited document was attached to an email sent among JPMC employees and includes the quoted language.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶ 1-107.

114.    *On September 24, 2007, Epstein agreed to plead guilty to two prostitution charges in state*

*court, including the solicitation of a minor to engage in prostitution, in exchange for a federal*

*non-prosecution agreement ("NPA") providing him with immunity from federal child sex-*

*trafficking charges.  Ex. 94 at -010-011.*

> **JPMC Response:**  Disputed to the extent that the language of the NPA does not support
> the proposition that the NPA provided Epstein "with immunity from federal child sex-
> trafficking charges."  The NPA was based on the "authority of R. Alexander Acosta,
> United States Attorney for the Southern District of Florida" and does not purport to bind
> the United States as a whole from bringing any charges against Epstein and was limited
> "to offenses that may have been committed by Epstein against the United States from in
> or around 2001 through in or around 2007."  *See* USVI Ex. 94 at -010-011.  Further,
> Epstein was in fact indicted with federal sex-trafficking charges in 2019.  *See* SUMF ¶
> 22.
>
> Undisputed that on September 24, 2007 Epstein executed the NPA in which he agreed to
> plead guilty to one count of solicitation of prostitution in violation of Florida law and
> solicitation of minors to engage in prostitution in violation of Florida state law.  USVI
> Ex. 94 at -012, -020; *see also* SUMF ¶ 11.  In exchange for Epstein's completion of the
> terms and conditions of the NPA, the United States agreed not to institute charges on any
> offenses that were the subject of the joint investigation by the Federal Bureau of
> Investigation and the United States Attorney's Office, nor any offenses that arose from
> the Federal Grand Jury investigation and the charges against Epstein, if any, would be
> dismissed.  USVI Ex. 94 at -011, -014.  These potential offenses that the government
> declined to charges Epstein for included "knowingly, in and affecting interstate and
> foreign commerce, recruiting, enticing, and obtaining by any means a person knowing
> that the person had not attained the age of 18 years and would be caused to engage in a
> commercial sex act as defined in 18 U.S.C. § 1591(c)(1); in violation of Title 18, United
> States Code, Sections 1591(a)(1) and 2."  *Id.* at -011.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶
> 1-107.

115.    *JPMorgan's due diligence on Epstein in October 2007 contained a news article discussing*

*Epstein's plea deal.  Ex. 95 at -527; Ex. 63 at -652.*

> **JPMC Response:**  Undisputed that on October 10, 2007, Dalessio emailed McCleerey
> attaching an October 1, 2007 article from the New York Post that discussed Epstein's
> plea deal.  *See* USVI Ex. 95 at -526-527.  Undisputed that this article was also included in
> an email from Dalessio to Verdon, copying McCleerey, Waters, and Meisner, on October
> 19, 2007.  *See* USVI Ex. 63.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

116.    *On July 1, 2008, Keating, Casey, Sheridan, and Waters received a July 1, 2008 NYT article titled "Financier Starts Sentence in Prostitution Case." The article reported: "But then the United States attorney's office in Miami became involved. Last summer, Mr. Epstein got an ultimatum: plead guilty to a charge that would require him to register as a sex offender, or the government would charge him with sexual tourism, according to people who were briefed on the discussions. David Weinstein, an attorney in the government's Miami office, declined to discuss the specifics of the case. But he did address the subject of Mr. Epstein's means and prominent legal team, and dismissed a proposal by Mr. Epstein's lawyers—who opposed the application of the federal statutes in the case—that he be confined to his house in Palm Beach for a probationary period." Ex. 96 at -954.*

> **JPMC Response:**  Undisputed that the July 1, 2008 New York Times article was forwarded to Keating, Casey, Sheridan, and Waters and that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

117.    *On July 15, 2008, Perry circulated to Verdon, Dalessio, McCleerey, Waters, Sheridan, and Casey (all Private Bank personnel) "for the 2:00 pm EST Rapid Response Meeting on Jeffrey Epstein" an article titled "Rich Man Fought the Law – and He Mostly Won" and dated July 7, 2008. The article stated: "But that plea deal . . . does not account for all of the girls, one as young as 14, who alleged that Epstein sexually abused them. The slow, dissatisfying resolution of the case sends a message to the public that there's a different system of justice for the wealthy who*

████████████████████████████████

*hire high-powered lawyers . . . . The plea deal also drops a federal investigation of Epstein." Ex.*

*97 at -028.*

> **JPMC Response:** Disputed to the extent USVI misstates the document. The quoted portion of the cited document states, "But that plea deal . . . does not account for all five of the girls, one as young as 14, who alleged that Epstein sexually abused them . . . . The slow, dissatisfying resolution of the case sends a message to the public that there's a different system of justice for the wealthy who hire high-powered lawyers. . . . The plea deal also drops a federal investigation of Epstein." USVI Ex. 97 at -028. Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

118.    *The NPA stated that "the US Attorney's Office and the Federal Bureau of Investigation*

*have conducted their own investigation in Epstein's background and any offenses that may have*

*been committed by Epstein against the United States from in or around 2001 through in or around*

*September 2007, including . . . knowingly, in and affecting interstate and foreign commerce,*

*recruiting, enticing, and obtaining by any means a person, knowing that the person had not*

*attained the age of 18 years and would be caused to engage in a commercial sex act as defined in*

*18 U.S.C. §1591(c)(1); in violation of Title 19, United States Code, Section 1591(a)(1) and 2" Ex.*

*94 at -010-011.*

> **JPMC Response:** Disputed to the extent USVI misstates the document. The quoted portion of the cited document states, "the United States Attorney's Office and the Federal Bureau of Investigation have conducted their own investigation in Epstein's background and any offenses that may have been committed by Epstein against the United States from in or around 2001 through in or around September 2007, including . . . knowingly, in and affecting interstate and foreign commerce, recruiting, enticing, and obtaining by any means a person, knowing that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act as defined in 18 U.S.C. §1591(c)(1); in violation of Title 18, United States Code, Section 1591(a)(1) and 2." USVI Ex. 94 at -010-011. Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶

1-107. Further contended that the cited material cannot be presented at trial in admissible form.

119.    *The NPA stated: "The United States shall provide Epstein's attorneys with a list of individuals whom it has identified as victims, as defined in 18 U.S.C. § 2255 . . . If any of the individuals referred to [above] elects to file suit pursuant to 18 U.S.C. § 2255 . . . Epstein waives his right to contest liability and also waives his right to contest damages . . . and agrees to waive any other claim for damages . . ." Ex. 94 at -013.*

> **JPMC Response:** Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

120.    *The non-prosecution agreement identified* ███████ *and* ██████████ *as potential co-conspirators of Epstein. Ex. 94 at -014.*

> **JPMC Response:** Undisputed that the NPA identified ████ and ██████ as potential co-conspirators of Epstein.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

121.    *The non-prosecution agreement identified Lesley Groff as a potential co-conspirator of Epstein. Ex. 94 at -014.*

> **JPMC Response:** Undisputed that the NPA identified Groff as a potential co-conspirator of Epstein.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

122.    *On September 9, 2010, Perry emailed McCleerey, copying Dalessio, stating: "Epstein signed a federal non-prosecution agreement under which he would not be charged with related*

*federal crimes if he successfully served out his time and abided by the conditions under the state*

*charges.  He also waived his right to contest liability and damages in civil lawsuits by 33 minor*

*girls identified by the non-prosecution agreement." Ex. 98 at -703.*

> **JPMC Response:**  Undisputed that Perry emailed McCleerey, copying Dalessio, on
> September 9, 2010, and the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

123.    *Steve Cutler testified, "I know at a certain point I understood that there was a federal*

*nonpros agreement" and that sometime before 2011, "I think we would have seen the non-pros*

*agreement."  Ex. 99 at 150:4-6; 264:10-265:2.*

> **JPMC Response:**  Undisputed that Cutler testified that "I know at a certain point I
> understood that there was a federal nonpros agreement."  USVI Ex. 99 at 150:4-6.
> Cutler's full testimony from that cited portion of the transcript, however, states, "I know
> at a certain point I understood that there was a federal non-pros agreement.  I can't tell
> you exactly when.  And I can't tell you that I knew precisely what the terms of it were."
> *Id.* at 150:4-9.  Undisputed that Cutler testified that "by this date in 2011", by which he is
> referring to an email dated July 20, 2011 (*see id.* at 261:20-24, 262:21-263:2), "I think we
> would have seen the non-pros agreement."  *Id.* at 264:14-24.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

124.    *On March 15, 2011, Jonathan Schwartz (then General Counsel Investment Bank) e-mailed*

*Cutler: "Spoke with Jay [Lefkowitz].  He represented Epstein in state plea/fed NPA process . . . .*

*Believes any pre-plea conduct is subsumed within plea/NPA." Ex. 100 at -278.*

> **JPMC Response:**  Disputed to the extent USVI cites to the wrong page of the document.
> USVI Ex. 100 at -528 contains the quoted text.  Otherwise undisputed that on March 15,
> 2011, Schwartz emailed Cutler and the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

████████████████████████████████████     ████████████████

125.    *On October 19, 2007, Dalessio (Private Bank Risk Management) emailed Verdon (then*

*General Counsel Private Bank), copying McCleerey (Private Bank Risk Management) and Waters*

*(Managing Director AWM), Subject Epstein.  Dalessio stated: "Anne [Verdon], Lisa asked me to*

*send to you a list of PB entities in Epstein relationship with current balances . . . . Notable activity*

*in Epstein personal account: Cash withdrawals - CTRs filed --> 2007 ytd $400,000 (10 $40,000*

*withdrawals), 2006 $914,796 (18 $40,000 withdrawals, 1 $60,000, 1 $30,000, 1 $25,000) 2007*

*transaction activity>=$50,000." Ex. 63 at -651.*

> **JPMC Response:**  Disputed to the extent USVI cites to the wrong page of the document.
> USVI Ex. 100 at -528 contains the quoted text.  Otherwise undisputed that on October 19,
> 2007 Dalessio emailed Verdon, copying McCleery, Waters, and Meisner and the cited
> document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

126.    *Dalessio further stated in his email: "One of the accounts in the Epstein relationship is for*

*his 'girlfriend / model' -* ████████████ *- funds into her account are transfers from Epstein -*

*3/19/07 for $25,000, 6/8/07 from $50,000.  See attached article.  The two others mentioned in the*

*article,* ██████████████████ *are not PB clients.  **The[y] do appear to have Retail***

***credit cards (*** ██████ ***- active,*** ██████ ***- revoked)." Ex. 63 at -651 (emphasis added).***

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

127.    *Dalessio attached to his email a document "Epstein 2007 transactions.xls.zip" which*

*included millions of dollars in payments from Epstein accounts at JPMorgan to Epstein's lawyers*

*and their law firms, including Alan Dershowitz, Gerald Lefcourt, Roy Black (Black Srebnick), and*

██████████████████████████████    ███████████████████

*Jay Lefkowitz (Kirkland & Ellis). Ex. 63 at -655. It also included twenty payments from Epstein*

*accounts for $100,000. Id. at 655.*

> **JPMC Response:** Disputed as to the materiality of these statements to the claims at
> issue in this case. *See* JPMC Ex. 60 ¶ 91 & n.166 ███████████████████
> ██████████████████████████  Undisputed that the cited email from Dalessio
> includes a document titled "Epstein 2007 transactions.xls.zip" and that the cited
> document includes transactions from Epstein accounts to his attorneys, including Alan
> Dershowitz, Gerald Lefcourt, Roy Black (Black Srebnick), and Jay Lefkowitz (Kirkland
> & Ellis). Undisputed that the cited document contains transactions in the amount of
> $100,000.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

128.    *On October 6, 2007, the New York Post reported: "THE owners of MC2 models are*

*denying industry speculation that massage maven Jeffrey Epstein is a secret financial backer of*

*the agency being run by scandal-scarred Jean-Luc Brunel, who was once accused of taking*

*advantage of underage models. Epstein, who this week agreed to plead guilty to soliciting*

*underage prostitutes at his Florida mansion in a deal that will send him to prison for about 18*

*months, reportedly gave 'millions' to start MC2, which opened in October 2005 with offices in*

*New York, Miami and Tel Aviv. One of the girls Epstein, 54, was accused of soliciting massages*

*from was described in court documents as being just 14. 'E equals MC squared . . . get it, like the*

*equation? E equals Epstein. He just thinks everyone is too dumb to figure it out,' said a model*

*industry insider. 'He's a desperate old man that fantasizes and takes advantage of young girls.' .*

*. . . MC2 president Jeffrey Fuller confirmed Brunel was a partner in the company, but denied any*

*working relationship with either Epstein or Marie. 'We have no relationship business-wise with*

*Gerald Marie. Jeffrey Epstein has no ownership or involvement in our company and never has.*

*Jean-Luc Brunel and I are the only two partners and owners of MC2 Model Management,' Fuller*

*said.  Epstein's rep said he was not involved in the agency.  'He has no business relationship with them,' said Howard Rubenstein." Ex. 101 at -593.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

129.  *JPMorgan admits that in 2005 JPMorgan approved a $1 million Stand By Letter of Credit ("SBLC") in Epstein's name to support a loan from Mellon United National to MC2 Model Management, LLC.  Ex. 39 at Resp. 66.*

> **JPMC Response:**  Undisputed that JPMorgan approved a $1 million Stand By Letter of Credit ("SBLC") in Epstein's name to support a loan from Mellon United National to MC2 Model Management, LLC.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

130.  *JPMorgan admits that a $1 million letter of credit in Epstein's name to backstop a loan from Mellon United National to MC2 Model Management, LLC was subject to annual review.  Ex. 39 at Resp. 67.*

> **JPMC Response:**  Undisputed that the SBLC was subject to annual review.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

131.  *JPMorgan admits that it renewed the SBLC in Epstein's name to support a loan from Mellon United National to MC2 Model Management, LLC until March 2011.  Ex. 39 at Resp. 68.*

> **JPMC Response:**  Disputed.  The cited response states that "JPMC admits that it did not renew a Stand by Letter of Credit in Epstein's name to backstop a loan from Mellon United National to MC2 Model Management, LLC in March 2011."  USVI Ex. 39 at Resp. 68.