# ATTACHMENT B

# PART 2

██████████████████████████████     ████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

132.   *On October 25, 2007, Christopher French emails Mary Casey, subject: "Re: Jeffrey Epstein new LOC" and states in response to Casey's request to open a new line of credit for Epstein: "we do still have an existing $1MM LC that we issued a few years ago . . . supporting the Modeling Agency's loan to Mellon."  Ex. 102 at -962-63.*

> **JPMC Response:**  Disputed to the extent USVI misstates the document.  The quoted language states "we do still have an existing $1MM LC that we issued a few years ago . . . supporting the Modelling Agency's loan to Mellon."  USVI Ex. 102 at -962-63. Disputed that the cited document establishes that Mary Casey was requesting a new line of credit for Epstein.  In the cited document, it is clear Casey is passing along the request from Richard Kahn at Jeffrey Epstein's office and asking for advice on how to proceed. USVI Ex. 102 at -962-63.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

133.   ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

134.   *In a July 31, 2010 email, Erdoes tells Staley, describing a July 31, 2010 NY Post article: "The feds many not be quite done with (JE).  Having just completed 13 months in a fl jail for solicing[sic] prost [sic] from a minor, he now might be under investig [sic] for other possible*

*crimes, inclduing [sic] whether there's any evidence of child trafficking.  E has settled several*

*lawsuits by teens who say they were lured to his palm beach mansion for massages or sx [sic].*

*The us AG in fl wouldn't comment.  E's lawyer, jack goldberger, says he know nothing of any*

*probe, and 'they are not and should not be any pending criminal investigations.'" Ex. 104 at -251.*

**JPMC Response:**  Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

135.    *The July 31, 2010 NY Post article "Jeffrey Epstein may face child trafficking probe" states:*

> *The Feds may not be quite done with Jeffrey Epstein.  Having just completed 13 months in a Florida jail for soliciting prostitution from a minor, he now might be under investigation for other possible crimes, including whether there's any evidence of child trafficking, reports The Daily Beast.  Epstein has settled several lawsuits by teens who say they were lured to his Palm Beach mansion for massages or sex.  The US attorney general in Florida wouldn't comment.  Epstein's lawyer, Jack Goldberger, says he knew nothing of any probe and, "There are not and should not be any pending criminal investigations."*

*Ex. 90 at -814.*

**JPMC Response:**  Disputed to the extent USVI misstates the document, the NY Post article is titled "Epstein Probe".  *See* USVI Ex. 90 at -814.  Otherwise undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

136.    *The July 29, 2010 Daily Beast article cited in the NY Post article states: "The Justice*

*Department is investigating Jeffrey Epstein for child trafficking . . . and has widened the scope of*

*its probe to include a famous modeling agency." "Federal investigators continue to investigate*

*Epstein's activities, to see whether there is evidence of child trafficking—a far more serious charge*

████████████████████████████████     ████████████████

than the two in his non-prosecution agreement, the arrangement between Epstein and the

Department of Justice allowing him to plead guilty to lower level state crimes.  Trafficking can

carry a 20-year sentence." "The FBI is also investigating Epstein's friend Jean Luc Brunel, whose

MC2 modeling agency appears to have been a source of girls from overseas who ended up on

Epstein's private jets." Ex. 105 at -902-903.

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

137.    JPMorgan admits that in 2010, certain of its employees received, reviewed, or read a

Newstex Web Blog, Jezebel, article ("2010 Newstex article") identifying "MC2" as "the modeling

agency owned by Jean Luc Brunel." Ex. 39 at Resp. 70.

> **JPMC Response:**  Undisputed that, in 2010, certain JPMC employees received, reviewed, or read a Newstex Web Blog, Jezebel, article identifying "MC2" as "the modeling agency owned by Jean Luc Brunel."
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

138.    The 2010 Newstex article states:

    a.    "Jeffrey Epstein, the billionaire financier who the FBI believes molested around 40 underaged girls" Ex. 106 at 596.

    b.    Buying a 14-year old Yugoslavian girl named ██████████ from her parents in order to keep her as his "sex slave" Id.

    c.    Paying women to bring him "economically desperate" teenagers to give him massages "that often led to sexual contact" Id.

    d.    Receiving two 12-year old French girls as a "birthday present" Id.

█████████████████████████████████     █████████

e.      Flagging Epstein's relationship with Jean Luc Brunel, owner of MC2 Modeling, and that Epstein, Maxwell, Brunel, Alfredo Rodriguez, and ████████ used the agency to "lure minor children . . . mostly girls under the age of 17 . . . to engage in sexual play for money" Id.

f.      References that the FBI is investigating MC2 and Brunel for "possibly engaging in child sex trafficking" Id.

g.      Mentions Epstein's plea of soliciting sex with a minor and settling a dozen civil lawsuits from victims Id.

h.      "These same civil complaints allege that young girls from South America, Europe, and the former Soviet republics . . . were recruited for Epstein's sexual pleasure" Id.

i.      "Brunel, along with numerous young models, was a frequent passenger on Epstein's private jet, according to flight manifests" Id.

j.      "The agency owner also allegedly received $1 million from Epstein in 2005, when he founded MC2 . . . [but] denied any such payment from the billionaire pervert in 2007, when rumors started swirling" Id.

k.      "Whether the money was a secret investment in MC2, or a payment for Brunel's service as a procurer, is unknown" Id.

**JPMC Response:** Disputed to the extent USVI misstates the cited document. The sentence quoted in ¶ 138(b) states, "buying a 14-year-old Yugoslavian named ████████ ████████ from her parents in order to keep ████████ as his 'sex slave'[.]" USVI Ex. 106 at -596. The sentence quoted in ¶ 138(e) states, "'luring minor children . . . mostly girls under the age of 17 . . . to engage in sexual play for money'" and the sentence quoted in ¶ 138(k) states, "Whether the money was a secret investment in MC2, or a payment for Brunel's services as a procurer, is unknown." *See* USVI Ex. 106 at -596. Otherwise, undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

139.    *A DDR regarding Epstein approved by Morris (then banker), Sheridan (then overseeing Morris); and Keating (then CEO U.S. Private Bank) stated: "As of 3/4/2011: Numerous articles detail various law enforcement agencies investigating Jeffrey Epstein for allegedly participating in child trafficking and molesting underage girls.  Jeffrey Epstein is required to register as a sex offender.  Jeffrey Epstein has settled a dozen civil lawsuits out of court from his victims regarding solicitation for an undisclosed amount.  MC2 Model Management received $1 million from Epstein in 2005.  It is unknown if the money was given as a secret investment or payment for services as a procurer.  Jean Luc Brunel, owner of MC2 Model Management and Jeffrey Epstein engaged in racketeering that involved luring in minor children for sexual play for money.  In addition, Brunel was a frequent passenger on Epstein's private jet and often visited Epstein in jail.  MC2 Model Management was issued a citation by the Florida Business and Professional Regulation for acting as a talent agent without a license.  MC2 Model Management LLC has two outstanding federal tax liens totaling $593,789 ($443,728 + $150,061)." Ex. 31 at -574.   Global Security & Investigations, Due Diligence Unit circulated "A Red Dot Memo for Jeffrey Epstein" containing the same information that was circulated to Morris, Casey, Dalessio, and Perry, among others, in early March 2011. Ex. 107 at -499-500.*

> **JPMC Response:**  Undisputed that Morris, Sheridan, and Keating approved the cited DDR and that the cited DDR contains the quoted text.  Undisputed that a Red Dot Memo for Jeffrey Epstein was circulated to Morris, Casey, Dalessio, and Perry, among others, on March 7, 2011 containing the quoted language from the DDR.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.



140.

*Ex. 9 ¶*

206.

*Id. ¶ 206.*

**JPMC Response:**

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107. Further contended that the cited material cannot be presented at trial in admissible form.

141. *JPMorgan's own due diligence process also required that it research and review civil and other lawsuits that may be filed by or against clients. Ex. 32 at 42:20-24.*

**JPMC Response:** Disputed. The cited testimony for this proposition does not support the conclusion the JPMorgan's due diligence process required that employees research and review civil lawsuits involving its clients. In response to questions about her personal review of civil lawsuits that may be filed by or against a client, Casey, a JPMC Private Banker and not a member of JPMC's compliance function, testified that "[t]hey are included within the due diligence review." USVI Ex. 32 at 42:20-24. This testimony relates only to Casey's understanding regarding the conducting of due diligence and does not reflect an overall policy by JPMC to affirmatively require review of civil lawsuits.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

142. *In 2007, news reports stated Epstein was "bracing for a slew of lawsuits from as many as 40 young women who came to his Palm Beach mansion for massage sessions." Ex. 63 at -652.*

**JPMC Response:** Undisputed that the cited document, an October 15, 2007 article from the New York Post's "Page Six" gossip column, contains the quoted text.

███████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

143.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████   *Ex. 108 at -685.*

**JPMC Response:**  ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
█████████████   USVI Ex. 108 at -685.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

144.   ████████████████████████████████████████████████

████████████████████████████████   *Ex. 109 at -686.*

**JPMC Response:**  ████████████████████████████████████
████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

145.   *The February 7, 2008 New York Post article stated that "the teen -identified only as 'Jane Doe No. 2' - says she was lured to Epstein's Palm Beach mansion and then sexually assaulted in his massage room . . . . He then paid her $200 . . . ." Ex. 110 at 1. The article further states: ". . .Jane Doe No. 1 . . . says she was 14 when she went to Epstein's home to give him a massage and wound up getting sexually assaulted by him" and that Epstein is "currently only facing criminal charges related to Jane Doe No. 1."  Id. at 1-2.*

████████████████████████████████████████

**JPMC Response:**  Disputed to the extent that USVI's citation for the quoted text in its first quotation is only to page 1; the quoted text appears on pages 1 and 2.  *See* USVI Ex. 110 at 1-2.  Otherwise undisputed that the cited document contains the quoted language.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.  Further contended that the cited material cannot be presented at trial in admissible form.

146.   *On June 30, 2008, Epstein pled guilty to felony solicitation of prostitution and procurement of a minor to engage in prostitution on June 30, 2008 and was "sentenced to 18 months in jail" and "required to register as a sex offender." Def. JPMorgan Chase Bank, N.A.'s Answer Second Am. Compl. ("Answer") ¶ 38.*

**JPMC Response:**  Disputed to the extent the citation does not support the proposition that Epstein plead guilty on June 30, 2008.  Otherwise, undisputed.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

147.   ████████   *knew the victim was a 14-year-old girl.  Ex. 109 at -686; Ex. 110 at 1-2.*

**JPMC Response:** 



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.



148.

*Ex. 2 at -196; Ex. 3 at -523.*

**JPMC Response:**

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

149.   *In 2011, Langford communicated to Cutler "concern" about retaining Epstein as a client.*

*Cutler testified: "Those concerns are heightened, if you will, by the human trafficking initiative*

*that we're doing, given that he was convicted of these crimes." Ex. 99 at 343:12-24.*

**JPMC Response:**  Disputed.  In the cited testimony, Cutler testified that Langford communicated to him "concern about ***the reputational issues***".  USVI Ex. 99 at 343:19-21 (emphasis added).

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

150.   *Ex. 55 at -475.*

**JPMC Response:**

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

151.   *The August 5, 2008 AML Operations Human Trafficking Overview states that "nearly two-thirds of the women trafficked for prostitution worldwide come from Eastern Europe" and "former Eastern bloc countries such as Albania, Moldova, Romania, Bulgaria, Russia, Belarus and Ukraine have been identified as major trafficking source countries for women and children." Ex. 44 at -053.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

152.   *In 2010, additional "news stories . . . connects Jeffrey Epstein to human trafficking." Ex. 112 at -262.*

> **JPMC Response:**  Disputed to the extent USVI characterizes the news stories as "additional".  Undisputed that the cited document contains the quoted text and states that these news stories appeared during 2010.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

153.   *On November 8, 2010, Dalessio emails Morris and Casey, with a cc to McCleerey, Subject: Excerpt from recent articles.  Dalessio writes: "See below new allegations of an investigation related to child trafficking - are you still comfortable with this client who is now a registered sex offender?" Ex. 90 at -814.  Dalessio attaches excerpts from four articles:*

> 1.   *The Palm Beach Post 8/1/10 "Epstein may be under new sex crime scrutiny from feds": "Epstein . . . may be under investigation for other sex crimes, including child trafficking . . . According to the news website The Daily Beast,*

*the feds are also checking whether a modeling agency run by a friend of the Wall Street Investor Epstein fed his appetite for underage foreign girls. Epstein was known to fly young women from Eastern Europe to Palm Beach, where they'd massage him, among other services." Id.*

2.   *NY Post 7/31/10 "Epstein Probe": "The Feds may not be quite done with Jeffrey Epstein . . . [H]e now might be under investigation for other possible crimes, including whether there's any evidence of child trafficking, reports The Daily Beast. Epstein has settled several lawsuits by teens who say they were lured to his Palm Beach mansion for massages or sex." Id.*

3.   *Palm Beach Daily News 7/18/10 "House arrest nears home stretch for Epstein": "Epstein has settled more than two dozen lawsuits and claims against him by teenagers who say they were lured to his Palm Beach mansion to give him sexually charged massages and/or sex in exchange for money . . . A secret deal with federal prosecutors revealed Epstein could have been charged with multiple federal counts of sexual exploitation of minors, resulting in much harsher penalties. But the feds deferred to two state charges that got him an 18-month sentence." Id. at -814-815.*

4.   *Palm Beach Daily News 9/19/10 article "Woman sues Epstein for $50 M, alleging abuse as teen":* ▮▮▮ *"alleges repeated sexual abuse by Epstein" and that "she was coerced into prostitution as a minor by Epstein, assisted by his employee* ▮▮▮▮▮▮▮▮▮ *"* ▮▮▮▮ *alleges Epstein has transferred and is transferring his assets overseas and elsewhere to conceal them from her and to*

71

███████████████████████████████    ███████

*prevent* ███ *from obtaining those assets in any judgment she may receive*
*against him." Id. at -815.*

**JPMC Response:** Undisputed that Dalessio emailed Morris and Casey, copying
McCleerey, on November 8, 2010, and the email contained the quoted language.
Disputed to the extent USVI misstates the document with respect to the inclusion of the
four article excerpts as attachments; the excerpts are copied into the body of McCleerey's
email. Otherwise, undisputed that the document contains the quoted excerpts of the listed
articles.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
1-107. Further contended that the cited material cannot be presented at trial in admissible
form.

154.    *The JPMC Corporate AML Compliance Human Trafficking Finance: Nature, Scope and*

*Control Project, November 2010, states that one of the results achieved from the program was*

*that JPMorgan "Led effort to draw industry attention to human trafficking as an AML-related*

*issue" and notes multiple industry presentations given by JPMorgan related to human trafficking*

*issues and/or its human trafficking project findings. Ex. 71 at -975, -977-78. On December 21*

*2010, Ryan writes to DeLuca : "My fear is will all our touting of good will on the HT work, if*

*anyone should ever say yet we bank Epstein, a known child sleaze." DeLuca responds: "That is*

*what I was thinking when I read this. I'll call you." Ex. 113 at -018.*

**JPMC Response:** Undisputed that the cited documents contain the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
1-107.

155.    *"HT" in Ryan's email refers to a project "within investigations related to human*

*trafficking and certain typology work that they were looking to dig through to identify human*

*trafficking." Ex. 36 at 56:14-57:6.*

**JPMC Response:** Undisputed that Ryan testified that "the HT work" referred to in the
email cited as USVI Ex. 113 was "a project that was going on within investigations

72

related to human trafficking and certain typology work that they were looking to dig through to identify human trafficking." USVI Ex. 36 at 56:25-57:6.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

156.    *On December 22, 2010, DeLuca writes Langford again and states: "This will be raised to the Rapid Response team (Catherine Keating) after the first of the year. McCleerey agrees this customer should go." Ex. 114 at -738.*

**JPMC Response:** Undisputed that DeLuca emailed Langford on December 22, 2010 and the cited email contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

157.    *On December 23, 2010, DeLuca writes Langford and states: "... I sent you an e-mail yesterday on that scum Epstein. That looks good to. I reminded McCleerey that he listened to 2 days of HT at the forum and this account could be problematic in several ways." Langford responds: "Good. Let me know if McCleerey waffles on Epstein. No patience for this." Ex. 115 at -777.*

**JPMC Response:** Undisputed that DeLuca emailed Langford on December 23, 2010 and the cited email contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

158.    *On January 4, 2011, Dalessio e-mails Morris, with a cc to Casey, Perry, and McCleerey, Subject: Rapid Response meeting this Thursday, stating: "See attached draft document for the Rapid Response meeting this Thursday [sic] We were asked by the firms AML Compliance Director, William Langford, to re-evaluate our sponsorship of Epstein and request re-approval from Steve Cutler if we wanted to retain." Morris responds: "I thought we decided this was not*

*necessary." Dalessio responds: "william langford requested that we responsor this client in light*

*of the new allegations of human trafficking which the firm has been actively assisting law*

*enforcement in uncovering others engaged in this practice." Ex. 116 at -967.*

> **JPMC Response:** Disputed to the extent USVI misstates the cited document. The original email from Dalessio to Morris, copying Casey, Perry, and McCleerey, is sent on January 3, 2011. USVI Ex. 116 at -967. Otherwise, undisputed.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

159.    *On January 5, 2011, Ryan wrote to DeLuca: "BTW, 4 tomorrow is the rapid response*

*meeting on Epstein, the sleazy PB client." DeLuca responded the next day: "This is the guy who*

*likes young girls, correct? Hope they do not cave!" Ex. 117 at -062; Ex. 36 at 68:11-69:18.*

> **JPMC Response:** Disputed to the extent USVI misstates the cited document. DeLuca's response to Ryan's email on January 6, 2011 states, "This is the guy who likes young girls, correct? Hope that they do not cave!!" USVI Ex. 117 at -062. Otherwise, undisputed.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

160.    *By "sleazy PB client," Ryan was referring to the allegations against Epstein of sexual*

*misconduct with children. Ex. 36 at 68:11-19.*

> **JPMC Response:** Disputed. USVI mischaracterizes Ryan's testimony in which she stated it was likely, but not definitive, that her use of "sleazy PB" client referred to the allegations against Epstein of sexual misconduct with children. *See* USVI Ex. 36 at 68:11-15 (Q: When you say, the sleazy PB client, are you referring to the allegations of sexual misconduct with children that you had referred to in a previous email? A: Likely, yes.).

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

█████████████████████████████████

161.   *On January 7, 2011, Ryan emails DeLuca, copying Middlemiss, writing, "Epstein was released in July from house arrest and the Palm Beach Post carried two articles saying that DOJ may be investigating for child trafficking via a modeling agency he is part owner in." Ex. 118 at -066_R; Ex. 36 at 88:24-90:2.*

> **JPMC Response:**  Disputed to the extent USVI misstates the cited document.  The cited text reads, "Epstein was released in July from house arrest and the Palm Beach Post carried two articles saying DOJ may be investigating for child trafficking via a modeling agency he is part owner in."  USVI Ex. 118 at -066_R.  Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

162.   *Ryan testified: "So, Phil was of the mindset, as was I, that [Epstein] had to go." Ex. 36 at 70:19-71:3.*

> **JPMC Response:**  Undisputed that Ms. Ryan testified, "So, Phil was of the mindset, as was I, that [Epstein] had to go."  Disputed to the extent USVI contends that Ryan's testimony establishes DeLuca's mindset with respect to Epstein's status as a client.  The cited testimony was provided in response to a question on what Ryan understood an email from DeLuca to mean and is not supported by her personal knowledge of DeLuca's views about Epstein.  *See* USVI Ex. 36 at 70:19-71:3.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

163.   *Langford testified:  "We were pushing it. I had asked for this to be redone, to push again, to say it's time that we exit Epstein." Ex. 119 at 278:17-21.*

> **JPMC Response:**  Disputed to the extent USVI misstates Langford's testimony.  Langford testified, "We were pushing it.  I had ask that this be redone, to push again, to say it's time that we exit Epstein."  USVI Ex. 119 at 278:17-21.  Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

164.    *Langford testified that by the end of 2010 or early 2011, it was his view that "we should*

*exit Jeffrey Epstein as a client." Ex. 119 at 58:18-59:11.*

> **JPMC Response:**  Undisputed that Langford testified as such.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

165.    *DeLuca testified:   "Maryanne [Ryan] was all over this, and like myself and William*

*[Langford], Maryanne wanted to see this client gone, the relationship terminated." Ex. 120 at*

*204:22-205:1.*

> **JPMC Response:**  Undisputed that DeLuca testified as such.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

166.    *On January 10, 2011, DeLuca emails Nichols, copying Langford, regarding Jeffrey*

*Epstein:  "He is alleged to be involved in human trafficking of young girls and law enforcement is*

*allegedly investigating his involvement in this activity. . . . AML Operations went to a PB risk*

*meeting late last week requesting we exit this relationship." Ex. 70 at -748_R.*

> **JPMC Response:**  Disputed to the extent USVI misstates the cited document.  The cited
> text reads, "He is alleged to be involved in the human trafficking of young girls and law
> enforcement is also allegedly investigating his involvement in this activity . . . AML
> Operations went to a PB risk meeting late last week requesting that we exit this
> relationship." USVI Ex. 70 at -748_R.  Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

167.    *On March 12, 2013, Ryan emails DeLuca, Subject:  High Profile, telling him: "Here are*

*the ones [accounts] I think should be closed where the LOB has disagreed and signed off to keep.*

██████████████████████████████████████████

*. . . PB customer Jeffrey Edward Epstein is an American financier and science and education*

*philanthropist, who is a convicted sex offender." Ex. 121 at -272.*

> **JPMC Response:** Disputed to the extent USVI misstates the cited document. The quoted text is emailed by Ryan to DeLuca on February 19, 2013. *See* USVI Ex. 121 at -272. Otherwise, undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

168.   *JPMorgan admits that Erdoes was involved in decision making with respect to maintaining*

*Epstein as a customer of JPMorgan. Ex. 28 at Resp. 8.*

> **JPMC Response:** Undisputed that Erdoes was involved in decision making at certain points with respect to maintaining Epstein as a customer of JPMorgan.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

169.   *In 2008, JPMorgan acquired Bear Stearns. Ex. 122 at 1; Ex. 123 at 285:8-286:2.*

> **JPMC Response:** Undisputed that the cited document states that JPMorgan acquired Bear Stearns in 2008. *See* USVI Ex. 122 at 1.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

170.   *JPMorgan knew that Epstein conducted his brokerage business at Bear Stearns. Ex. 124*

*at -175.*

> **JPMC Response:** Undisputed that the cited DDR for Jege, Inc. states that "Bear Stearns will hold the brokerage relationship with Mr. Epstein." *See* USVI Ex. 124 at -175.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

171.   ████████████████████████████████████   *Ex. 125 at -076.*

> **JPMC Response:** ████████████████████████████
> ████████████████████████████████████████████



> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

172.   *After Bear Stearns was acquired by JPMorgan, Arthur Middlemiss assumed a similar role*

*with JPMorgan AML compliance, working with Langford.  Ex. 126 at 1; Ex. 120 at 155:21-158:6.*

> **JPMC Response:**  Undisputed that the cited USVI Ex. 126 states that in June 2008 Mr. Middlemiss transitioned from Managing Director at Bear Stearns to Managing Director at JP Morgan Chase & Co. and that Mr. Langford testified that at some point Arthur Middlemiss "was a direct report" of his.  *See* USVI Ex. 120 at 155:21-22.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

173.   *While at Bear Stearns, Middlemiss was the AML Officer responsible for responding to a*

*2007 subpoena by the federal prosecutors investigating Epstein for federal sex crimes.  Ex. 125 at*

*-076.*

> **JPMC Response:**

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

174.   *On January 10, 2011, Ryan e-mails Langford, DeLuca, and Nichols, Subject:  Re: Jeffrey*

*Epstein: "Seems JPMC never was served a subpoena, which I find odd since we were his #1 bank*

*and actually Bear got one in 07.  Rich is getting me the AUSA correspondence and we will compare*

*their ask of Bear (something about $1000 and $100,000 transactions were of interest to them)[.]"*

*Ex. 127 at -192.*

> **JPMC Response:**  Undisputed that Ryan emailed Langford, DeLuca, and Nichols on January 10, 2011 and the cited email contains the quoted text.

[REDACTED]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

175. [REDACTED]

[REDACTED] *Ex. 128 at -247.*

[REDACTED]

[REDACTED]

[REDACTED] *Ex. 129 at -248, -251-52; Ex. 125 at -075.*

**JPMC Response:** [REDACTED]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

176. [REDACTED]

[REDACTED]

[REDACTED] *Ex. 129 at -251.*

[REDACTED]

[REDACTED] *Id.*

**JPMC Response:** [REDACTED]



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

177.

*Ex. 125 at -075.*

*Id. at -076.*

**JPMC Response:** Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

178.  *In 2007, JPMorgan knew, as part of its investigation of Epstein at that time, that it had made twenty transfers out of Epstein's accounts in the amount of $100,000 from January 2, 2007 to October 12, 2007.  Ex. 63 at -655-60.*

**JPMC Response:**  Disputed that this email was part of any JPMC "investigation of Epstein at that time" as unsupported by the cited document.  Undisputed that on October 19, 2007 Dalessio emailed Verdon, copying McCleerey, Waters, and Meisner, that includes an attachment of a chart that shows transactions related to Epstein's accounts from 2007.  JPMC disputes, however, that the cited document establishes as a legal conclusion that JPMC knew about the transfers in 2007.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

[REDACTED]

179.    *On August 27, 2006, Staley emails Erdoes:  "Last night went to the Huggy Bear concert.*
*The age difference between husbands and wifes [sic] would have fit in well with Jeffrey.  What a*
*joke."  Erdoes responds, "Oh, and what I meant to tell you about last night was they [sic] were a*
*few people laughing about Jeffrey.  One of the guys ran a unit of* [REDACTED] *Apparently* [REDACTED] *has*
*8 assistants, one is more beautiful than the other (even though he's gay). Anyway, lots of*
*comparisons to JE."  Ex. 130 at -337.*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.  Erdoes'
> response to Staley's email on August 27, 2006 states "jeffrey," not "Jeffrey." *See* USVI
> Ex. 130 at -337.  Otherwise, undisputed that the cited email contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

180.    [REDACTED]

[REDACTED]

*Ex. 131 at -627.  The article discussed "alleged financier-perv\* billionaire Jeffrey Epstein, of*
*whom it is alleged that he retained a procurer of underage girls."  Ex. 132 at 1.*

> **JPMC Response:**  [REDACTED]
> [REDACTED]   Undisputed that the cited article
> contains the quoted language.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

181.    *In May 2008, Erdoes writes to* [REDACTED] *:  "This has turned into a cheezy broker fest . .*
*. totally not cool, the only cool people are here at glenn's table-same as bat mitzvah!"* [REDACTED]
[REDACTED] *responds: "Epstein there with miley cyrus?"  Ex. 133 at -475.*

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

182.   *In May 2008, Miley Cyrus was 15 and starring in "Hannah Montana" on the Disney Channel. Ex. 134 at 2.*

   **JPMC Response:** Undisputed.

   Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

183.   *On February 7, 2011, Ryan also said to Langford: ". . . wanted to catch up on Epstein as he was featured ripped from the headline story on Law and Order SVU this week." Ex. 135 at -044; Ex. 36 at 145:21-148:2.*

   **JPMC Response:** Disputed to the extent USVI misstates USVI Ex. 135. The cited quote reads, "Wanted to catch up on Epstein as he was the featured ripped from the headlines story on Law and Order SVU this week." Otherwise, undisputed.

   Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

184.   *Ryan testified, "That entire series [Law and Order SVU] was based on real life stories, and it's never difficult to figure out, since I am a New Yorker, I knew exactly what this particular episode was on, and so I sent it to William so that he could see. . . . I saw it - happened to see it, made sure I told William that a customer might have been the implied story that was out in the news." Ex. 36 at 147:4-148:2.*

   **JPMC Response:** Undisputed that Ryan testified as such.

   Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

185.   *Ryan testified that she wrote to Langford:   "I typed SVU and his name and there is a*

*Gawker story, Law & Order commerates [sic] JE taste for teen hookers." Ex. 135 at -044; Ex. 36*

*at 148:21-149:2.*

> **JPMC Response:** Disputed to the extent USVI has misstated the Ryan's testimony.
> Ryan did not testify that she wrote to Langford "I typed SVU and his name and there is a
> Gawker story, Law & Order commerates [sic] JE taste for teen hookers." In the cited
> portion of Ryan's testimony, the questioner states, "You write in the second sentence, I
> typed SVU and his name and there is a Gawker story, Law and Order commerates [sic]
> JE taste for teen hookers. Do you see that?" and Ms. Ryan responds "Yes", that she sees
> that. *See* USVI Ex. 36 at 148:21-149:2. JPMC does not dispute that USVI Ex. 135
> states, "I typed svu and his name and there is a gawker story Law and Order commerates
> JE taste for teen hookers." USVI Ex. 135 at -044.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

186.   *The Gawker story states:  "Last night, for instance, Dick Wolf's Law & Order: SVU aired*

*a 'ripped from the headlines' episode that seemed to be aimed directly at Epstein. The villain was*

*'Jordan Hayes,' a 'billionaire pervert flying in underage girls for sex' on his private jet. His*

*parties make the society page, he's friends with 'a former president,' and Hayes almost gets away*

*with the statutory rape of a young girl before our heroes uncover scores of underage girls he had*

*sexually abused." Ex. 136 at 1.*

> **JPMC Response:** Undisputed that the cited document contains the quoted text.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

187.   *The Law & Order episode and the Gawker story made Ryan "more anxious to get Jeffrey*

*Epstein out of the bank." Ex. 36 at 149:5-11. Ryan further testified "that all of these facts should*

*be escalated to the business to make an informed decision about getting Epstein out of the bank."*

██████████████████████████████████████████    █████████████████████

*Id. at 149:17-21.  Ryan was of the opinion that Epstein should be out of the bank.  Id. at 149:20-*

*21.*

> **JPMC Response:**  Disputed to the extent USVI has misstated Ryan's testimony.  With
> respect to the first sentence, undisputed that Ryan testified that the Gawker story or the
> Law and Order episode about Epstein made her more anxious to get Epstein out of the
> bank.  For the second sentence, USVI has misstated Ms. Ryan's testimony.  Ryan
> testified, "I thought that all of these facts had to be escalated to the business to make an
> informed decision about getting him out of the bank.  I was of the opinion that he should
> be out of the bank."  USVI Ex. 36 at 149:5-21.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶
> 1-107.

188.    *On November 29, 2011, Ryan e-mails DeLuca an article, "FBI Set to Reopen Epstein Case*

*Based on Testimony of* ████████████ *" The article states:  "The FBI is reportedly preparing to*

*launch a new inquiry into Epstein after one of his under-age erotic masseuses,* ████████,

*made a string of disturbing allegations about her role.  U.S. detectives are said to be furious that*

*Epstein, 58, escaped with only 13 months in jail for child sex offences [sic] after he struck a plea*

*bargain with prosecutors.  The deal protected him from further prosecution for offences in Florida.*

**But the significance of** ████████ **claims that under-age girls were moved abroad for sex is**

**that she paves the way for the FBI to prosecute him for offences [sic] committed outside Florida**

**under the Trafficking Victims Protection Act.***"* Ex.  137 at 689 (emphasis added).

> **JPMC Response:**  Undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture.  *See* CSMF ¶¶
> 1-107.  Further contended that the cited material cannot be presented at trial in admissible
> form.

189.    *On June 17, 2013, in a "Lync" chat from DeLuca with Jessica Gomel, who reported to*

*DeLuca, DeLuca repeated the contents of the article, including that "***the significance of*** ████

████ **claims that under-age girls were moved abroad for sex is that she paves the way for**

*the FBI to prosecute him for offences [sic] committed outside Florida under the Trafficking*

*Victims Protection Act.*"  *Ex. 138 at -936 (emphasis added).*

> **JPMC Response:**  Disputed to the extent the cited document does not support the
> assertion that Gomel reported to DeLuca or that DeLuca is repeating the contents of an
> article.  Otherwise, undisputed that the cited document contains the quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

190.    In September 2012, David Brigstocke (then CFO of JPMorgan AWM) writes to Erdoes

regarding ▮▮▮▮▮▮▮▮ house:  "The size of the Union Club. In fact it used to be a club.

***Reminded me of JE's house, except it was more tasteful, and fewer nymphettes***. More like the

Frick. Art was fabulous. D." Erdoes responds:  "Wow."  Ex 139 at -203 *(emphasis added)*.

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.
> Brigstocke's email states "Union club," not "Union Club." *See* USVI Ex. 139 at -203.
> Otherwise, undisputed that the cited document contains the quoted text.  Undisputed that
> Brigstocke was the CFO of JPMorgan AWM in September 2012.  Disputed as to
> materiality.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

191.    *Staley was the senior person at JPMorgan with a business relationship with Epstein.  Ex.*

*39 at Resp. 204.*

> **JPMC Response:**   Undisputed that Staley was the senior person at JPMC with a
> business relationship with Epstein.  *See* JPMC Ex. 62 at Resp. 204.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

192.    *JPMorgan admits that its employees consulted with Staley regarding Epstein's account*

*activities.  Ex. 39 at Resp. 144.*

**JPMC Response:**   Undisputed that JPMC employees consulted with Staley regarding Epstein's' account activities.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

193.   *JPMorgan admits that Staley communicated with Epstein through his JPMorgan email account jes.staley@jpmorgan.com.  Ex. 39 at Resps. 161, 162.*

**JPMC Response:**   Undisputed that Staley, at certain times, communicated with Epstein through his JPMorgan email account jes.staley@jpmorgan.com.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

194.   *JPMorgan employees were instructed to only use their email accounts "for business purposes."  Ex. 39 at Resp. 163.*

**JPMC Response:**   Disputed that JPMorgan employees were instructed to only use their email accounts for business purposes during the entirety of the relevant time period. Undisputed that in 2009, JPMorgan employees were subject to a Code of Conduct which included the instruction: "electronic mail (e-mail) systems and other electronic communications devices provided by JPMorgan Chase, whether in the workplace or elsewhere, are the property of the firm and should be used for business purposes; however, limited incidental personal use is permitted, consistent with the Code and all other policies of the firm."  *See* USVI Ex. 39 at Resp. 163, JPMC Ex. 63 at -129.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

195.   *JPMorgan admits that Epstein sent Staley photographs of women on Staley's JPMorgan's email address.  Ex. 39 at Resp. 164.*

**JPMC Response:**   Undisputed that Epstein sent Staley photographs of women on Staley's JPMorgan email address.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

196.   *JPMorgan admits that more than 1,200 email messages were sent between Staley and*

*Epstein over Staley's work account.  Ex. 39 at Resp. 165.*

> **JPMC Response:**   Undisputed that more than 1,200 email messages list both
> jes.staley@jpmorgan.com and jeevacation@gmail.com as either sender, receiver, or
> carbon copy.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

197.   *JPMorgan admits that Staley sent an email from his work account that referenced "Snow*

*White."  Ex. 39 at Resp. 166.*

> **JPMC Response:**   Undisputed that Staley sent an email from his JPMorgan email
> account that referenced "Snow White."
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

198.   *On July 9, 2010, Staley e-mailed Epstein, "That was fun. Say hi to Snow White." Epstein*

*responded, "what character would you like next." Staley responded, "Beauty and the Beast . . . ."*

*Epstein responded, "well one side is available." Ex. 140 at -669.*

> **JPMC Response:**  Disputed to the extent USVI misstates the cited document.  Epstein's
> response to Staley's email states, "well one side is availble."  *See* USVI Ex. 140 at -669.
> Otherwise, undisputed that cited document contains quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶
> 1-107.

199.   *On August 30, 2009, Epstein emailed Staley, "how long London? Do you need anything*

*there?"  Staley responded, "Yep."  Ex. 141 at -171.*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.
> Epstein's email states "london," not "London." *See* USVI Ex. 141 at -171.  Otherwise,
> undisputed that cited document contains quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

200.    *On September 2, 2009, Epstein emailed* ▮▮▮▮▮▮▮▮▮▮▮▮▮ *"jes staley is staying at the berkeley hotel in London tonight."  Ex. 142 at -773.*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document. Epstein's email states "london," not "London." *See* USVI Ex. Ex. 142 at -773. Otherwise, undisputed that cited document contains quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

201.    *On December 20, 2009, Epstein emailed Staley a blank email with only an attachment, which "appears to be a modeling photo":*



*Ex. 143 at -791-92; Ex. 144 at -005.*

> **JPMC Response:**  Undisputed that cited document USVI Ex. 144 contains quoted text. Disputed that the attachment in USVI Ex. 143 "appears to be a modeling photo," as the email provides no context for the photograph.

88

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

202.    *On December 5, 2009, Epstein emailed Staley, "you were with larry , [sic] and I had to put up with . . . ." with the following attachment:*



*Ex. 145 at -715-16; Ex. 144 at -005.*                         *Ex. 146 at -718.*

**JPMC Response:**  Disputed to the extent USVI misstates the quoted document. *See* USVI Ex. 146 at -718. Otherwise, undisputed that cited documents contain quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

███████████████████████████████████████████

203. *On June 16, 2010, Staley wrote to Epstein "is she free tonight?" Epstein replied, "call me." Staley replied, "I'm with A." Ex. 144 at -998.*

> **JPMC Response:**   Undisputed that cited document contains quoted text. *See* USVI Ex. 144 at -005.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

204. *Staley testified he met ███████████ at Epstein's townhouse. Ex. 46 at 343:22-346:8.*

> **JPMC Response:**   Undisputed that Staley testified he met ████████ at Epstein's townhouse. Disputed to the extent the underlying fact requires a credibility determination.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

205. *Staley testified he met Lesley Groff at Epstein's townhouse. Ex. 46 at 343:22-346:8.*

> **JPMC Response:**   Undisputed that Staley testified he met Groff at Epstein's townhouse. Disputed to the extent the underlying fact requires a credibility determination.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

206. *Staley testified he met ███████████ at Epstein's townhouse. Ex. 46 at 343:22-346:8.*

> **JPMC Response:**  Disputed that Staley testified he met ██████ at Epstein's townhouse. Staley testified that he met ██████████████████████████████ ██████" USVI Ex. 46 at 346:9-12.  Disputed to the extent the underlying fact requires a credibility determination.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

207. *Staley testified ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ Ex. 46 at 433:9-440:8.*

**JPMC Response:** Undisputed that Staley testified █████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

208.  *JPMorgan admits that Staley submitted, and JPMorgan reimbursed, the costs associated with expense reports reflecting purported meetings with Epstein.  Ex. 39 at Resps. 168, 169.*

> **JPMC Response:** Undisputed that Staley submitted, and JPMorgan reimbursed, the costs associated with expenses reports reflecting meetings with, among others, Epstein.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

209.  *JPMorgan admits that certain of its employees knew that Staley had visited Epstein while he was incarcerated and still a JPMorgan client.  Ex. 39 at Resp. 175.*

> **JPMC Response:** Undisputed that certain JPMorgan employees knew that Staley had visited Epstein while he was incarcerated and still a JPMorgan client.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

210.  *JPMorgan admits that Staley visited Epstein at Epstein's New York property while Epstein was a client of JPMorgan.  Ex. 39 at Resp. 176.*

> **JPMC Response:** Undisputed that Staley visited Epstein at Epstein's New York property while Epstein was a client of JPMorgan.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

211.  *JPMorgan admits that certain of its employees learned that Staley visited Little Saint James while Epstein was a client of JPMorgan.  Ex. 39 at Resp. 177.*

**JPMC Response:** Undisputed that certain of its employees learned that Staley visited Little Saint James while Epstein was a client of JPMorgan.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

212.   *JPMorgan admits that it gave Staley a bonus every year between 2001 and 2012. Ex. 39*

*at Resp. 197.*

**JPMC Response:** Undisputed that Staley received a bonus every year between 2001 and 2012. Disputed as to materiality with respect to USVI's claims in this litigation.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

213.   *JPMorgan admits that Staley's bonus was related to his performance and performance of*

*the business under his supervision, which may have included the revenue and business that they*

*generated. Ex. 39 at Resp. 198.*

**JPMC Response:** Undisputed that Staley's bonus was related to his performance and performance of the businesses under his supervision, which may have included the revenue and business that they generated, among a broad range of additional quantitative and qualitative considerations. Disputed as to materiality with respect to USVI's claims in this litigation.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan knew or recklessly disregarded that Epstein ran a sex-trafficking venture. *See* CSMF ¶¶ 1-107.

**JPMorgan Participated in Epstein's alleged sex-trafficking venture**

**JPMC Response:** This is a header to which no response is warranted. Disputed insofar as USVI contends that the statements and documents cited below establish as a matter of law that JPMorgan participated in Epstein's alleged sex-trafficking venture.

214.   *On July 6, 2020, the New York State Department of Financial Services entered into a*

*Consent Order with Deutsche Bank imposing a $150 million penalty in connection to Deutsche*

*Bank's relationship with Jeffrey Epstein. Ex. 147; Ex. 148; Ex. 99 at 457:10-466:2. Regarding*

*the Consent Order, Superintendent Lacewell said: "despite knowing Mr. Epstein's terrible*

███████████████████████        ████████████████

*criminal history, the Bank inexcusably failed to detect or prevent millions of dollars of suspicious*

*transactions." Ex. 147; Ex. 148; Ex. 99 at 457:10-466:2.   The bank "processed hundreds of*

*transactions totaling millions of dollars" including:*

- *payments to individuals who were publicly alleged to have been Mr. Epstein's co-conspirators in sexually abusing young women;*

- *settlement payments totaling over $7 million, as well as dozens of payments to law firms totaling over $6 million for what appear to have been the legal expenses of Mr. Epstein and his co-conspirators;*

- *payments to Russian models, payments for women's school tuition, hotel and rent expenses, and (consistent with public allegations of prior wrongdoing) payments directly to numerous women with Eastern European surnames; and*

- *periodic suspicious cash withdrawals — in total, more than $800,000 over approximately four years.*

*Ex. 147; Ex. 148; Ex. 99 at 457:10-466:2.*

> **JPMC Response:**   Undisputed that on July 6, 2020, the New York State Department of Financial Services entered into a Consent Order with Deutsche Bank imposing a $150 million penalty in connection to Deutsche Bank's relationship with Jeffrey Epstein. Undisputed that cited documents contain quoted text.  Disputed as to materiality of the Deutsche Bank consent order in this matter.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.  Further contended that the cited material cannot be presented at trial in admissible form.

215.   *In 2005, JPMorgan made two separate $25,000 payments from Epstein's JPMorgan*

*accounts to* ███████████ *Ex. 56 at 34, 36 and Figure 9.3 (copied below).*

**Figure 9.3: Direct Payments to** ████████████████

| Date | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Grand Total |
|------|------|------|------|------|------|------|------|------|------|-------------|
| 1/4/2005 | $25,000 00 | | | | | | | | | |
| 1/5/2005 | $25,000 00 | | | | | | | | | |
| 1/24/2008 | | | | $3,055 00 | | | | | | |
| 3/19/2008 | | | | $131,000 00 | | | | | | |
| 4/16/2009 | | | | | $500 00 | | | | | |
| 4/17/2009 | | | | | $14,000 00 | | | | | |
| 5/13/2009 | | | | | $4,000 00 | | | | | |
| 6/4/2009 | | | | | $6,000 00 | | | | | |
| 6/19/2009 | | | | | $4,000 00 | | | | | |
| 7/30/2009 | | | | | $1,025 00 | | | | | |
| 8/17/2009 | | | | | $4,000 00 | | | | | |
| 8/24/2009 | | | | | $5,000 00 | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/16/2009 | | | | | $4,000.00 | | | | | |
| 10/1/2009 | | | | | $13,000.00 | | | | | |
| 11/18/2009 | | | | | $4,000.00 | | | | | |
| 12/4/2009 | | | | | $4,000.00 | | | | | |
| 1/4/2010 | | | | | | $4,000.00 | | | | |
| 2/4/2010 | | | | | | $4,000.00 | | | | |
| 3/4/2010 | | | | | | $4,000.00 | | | | |
| 4/5/2010 | | | | | | $4,000.00 | | | | |
| 4/7/2010 | | | | | | $2,604.62 | | | | |
| 5/4/2010 | | | | | | $4,000.00 | | | | |
| 6/4/2010 | | | | | | $4,000.00 | | | | |
| 8/31/2010 | | | | | | $2,104.17 | | | | |
| 3/10/2011 | | | | | | $6,000.00 | | | | |
| 3/24/2011 | | | | | | $300,000.00 | | | | |
| 8/16/2011 | | | | | | | $12,252.60 | | | |
| 11/16/2011 | | | | | | | $6,105.75 | | | |
| 3/16/2012 | | | | | | | | $3,294.43 | | |
| 10/4/2012 | | | | | | | | $9,800.00 | | |
| 4/8/2013 | | | | | | | | | $100,000.00 | |
| 8/21/2013 | | | | | | | | | $15,000.00 | |
| **Total** | $50,000.00 | $0.00 | $0.00 | $134,055.00 | $63,525.00 | $334,708.79 | $18,358.35 | $13,094.43 | $115,000.00 | $728,741.57 |

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

216. *From August 2006 through August 2013, JPMorgan handled $678,741.57 in payments from Epstein's JPMorgan accounts to* ▮▮▮▮▮ *Ex. 56 at 34, 36 and Figure 9.3.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

217. *In August 2013, JPMorgan handled a payment of $15,000 from Epstein's JPMorgan account to* ▮▮▮ *Ex. 56 at 34, 36 and Figure 9.3.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

218.   *From August 2006 through January 2013, JPMorgan handled $607,804.30 in payments from Epstein's JPMorgan accounts to* ████████████ *Ex. 56 at 34-35 and Figure 9.2 (copied below).*

**Figure 9.2: Direct Payments to** ████████████

| Date | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/3/2003 | $500.00 | | | | | | | | | | | |
| 3/9/2004 | | $1,166.00 | | | | | | | | | | |
| 4/8/2004 | | $2,000.00 | | | | | | | | | | |
| 4/22/2004 | | $1,517.82 | | | | | | | | | | |
| 4/28/2004 | | $3,000.00 | | | | | | | | | | |
| 6/1/2004 | | $10,000.00 | | | | | | | | | | |
| 8/5/2004 | | $5,000.00 | | | | | | | | | | |
| 10/19/2004 | | $10,000.00 | | | | | | | | | | |
| 11/22/2004 | | $2,168.29 | | | | | | | | | | |
| 12/1/2004 | | $1,713.45 | | | | | | | | | | |
| 1/4/2005 | | | $25,000.00 | | | | | | | | | |
| 1/19/2005 | | | $3,155.56 | | | | | | | | | |
| 4/12/2005 | | | $778.76 | | | | | | | | | |
| 4/26/2005 | | | $10,000.00 | | | | | | | | | |
| 7/19/2005 | | | $3,339.96 | | | | | | | | | |
| 8/15/2005 | | | $480.00 | | | | | | | | | |
| 8/25/2005 | | | $10,000.00 | | | | | | | | | |
| 10/11/2005 | | | $5,000.00 | | | | | | | | | |
| 10/24/2005 | | | $10,000.00 | | | | | | | | | |
| 1/4/2006 | | | | $10,000.00 | | | | | | | | |
| 2/3/2006 | | | | $11,000.00 | | | | | | | | |
| 3/2/2006 | | | | $6,786.00 | | | | | | | | |
| 4/10/2006 | | | | $15,000.00 | | | | | | | | |
| 4/28/2006 | | | | $7,362.50 | | | | | | | | |
| 7/18/2006 | | | | $5,000.00 | | | | | | | | |
| 9/6/2006 | | | | $25,000.00 | | | | | | | | |
| 10/3/2006 | | | | $1,025.00 | | | | | | | | |
| 12/18/2006 | | | | $1,724.30 | | | | | | | | |
| 3/19/2007 | | | | | $25,000.00 | | | | | | | |
| 6/8/2007 | | | | | $50,000.00 | | | | | | | |
| 9/25/2007 | | | | | $100,000.00 | | | | | | | |
| 1/24/2008 | | | | | | $3,055.00 | | | | | | |
| 7/3/2008 | | | | | | $2,000.00 | | | | | | |
| 9/3/2008 | | | | | | $100,000.00 | | | | | | |
| 7/8/2009 | | | | | | | $50,000.00 | | | | | |
| 12/7/2009 | | | | | | | $10,000.00 | | | | | |
| 1/15/2010 | | | | | | | | $10,000.00 | | | | |
| 2/17/2010 | | | | | | | | $25,000.00 | | | | |
| 5/24/2010 | | | | | | | | $20,000.00 | | | | |
| 7/29/2010 | | | | | | | | $20,000.00 | | | | |
| 10/6/2010 | | | | | | | | $25,000.00 | | | | |
| 1/18/2011 | | | | | | | | | $10,000.00 | | | |
| 2/28/2011 | | | | | | | | | $25,000.00 | | | |
| 4/1/2011 | | | | | | | | | $30,000.00 | | | |
| 4/14/2011 | | | | | | | | | $25,000.00 | | | |
| 6/20/2012 | | | | | | | | | | $20,000.00 | | |
| 10/10/2012 | | | | | | | | | | $10,000.00 | | |
| 10/11/2012 | | | | | | | | | | $10,000.00 | | |
| 1/17/2013 | | | | | | | | | | | $10,000.00 | |
| **Total** | **$500.00** | **$36,565.56** | **$67,754.28** | **$82,897.80** | **$175,000.00** | **$105,055.00** | **$60,000.00** | **$100,000.00** | **$90,000.00** | **$40,000.00** | **$10,000.00** | **$767,772.64** |

██████████████████████████████    ████████████████████████

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

219.   *In 2004, 2005, and 2006, JPMorgan handled $36,565.56, $67,754.28, and $82,897.80, respectively, in payments from Epstein's JPMorgan accounts to* ████████████    *Ex. 56 at 34-35 and Figure 9.2.*

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

220.   ████████████████████████████████████████████████

██████████████████████████  *Ex. 149*

██████████████████

**JPMC Response:**  Undisputed that cited document is a summary of transactions reflected in USVI Ex. 149.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

221.   *From October 1999 through July 2006, JPMorgan handled $25,146,955.30 in payments from Epstein's JPMorgan accounts to Ghislaine Maxwell.  Ex. 56 at 45-46 and Figure 15 (copied below).*

**Figure 15: Direct Payments to Ghislaine Maxwell**

96

| Date | 1999 | 2002 | 2003 | 2004 | 2005 | 2006 | 2009 | Grand Total |
|---|---|---|---|---|---|---|---|---|
| 10/19/1999 | $18,300,000.00 | | | | | | | $18,300,000.00 |
| 9/18/2002 | | $5,000,000.00 | | | | | | $5,000,000.00 |
| 2/27/2003 | | | $325,000.00 | | | | | $325,000.00 |
| 5/6/2003 | | | $250,000.00 | | | | | $250,000.00 |
| 6/20/2003 | | | $93,037.97 | | | | | $93,037.97 |
| 11/4/2004 | | | | $225,000.00 | | | | $225,000.00 |
| 11/18/2004 | | | | $34,867.33 | | | | $34,867.33 |
| 4/27/2005 | | | | | $205,000.00 | | | $205,000.00 |
| 5/20/2005 | | | | | $139,050.00 | | | $139,050.00 |
| 7/22/2005 | | | | | $200,000.00 | | | $200,000.00 |
| 7/25/2005 | | | | | $375,000.00 | | | $375,000.00 |
| 11/28/2006 | | | | | | $13,750.00 | | $13,750.00 |
| 4/23/2009 | | | | | | | $100,000.00 | $100,000.00 |
| **Total** | **$18,300,000.00** | **$5,000,000.00** | **$668,037.97** | **$259,867.33** | **$919,050.00** | **$13,750.00** | **$100,000.00** | **$25,260,705.30** |

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex.60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

222.   *From August 2006 through April 2009, JPMorgan handled $113,750 in payments from*

*Epstein's JPMorgan accounts to Maxwell. Ex. 56 at 45-46 and Figure 15.*

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

223.   *In addition, JPMorgan received a $7.4 million wire from Epstein's Mellon Bank account*

*to Maxwell's JPMorgan account to purchase a helicopter. On June 15, 2007, JPMorgan received*

*a $7.4 million wire to Maxwell's JPMorgan account ending in 6312 from Epstein's Mellon Bank*

*account. Ex. 150 at -025 (June 2007 account statement from Ghislaine Maxwell's JPMorgan*

*account ending in #6312 showing a $7.4 million wire from Epstein's Mellon Bank account). On*

*the same day, Maxwell transferred those same funds to Air Ghislaine, Inc.'s JPMorgan account*

*ending in 4324. Ex. 151 at -878 (June 2007 account statement from Air Ghislaine, Inc.'s*

[REDACTED]

*JPMorgan account ending in 4324).   Then on June 18, 2007, $7,352,825.00 was transferred to*

*Sikorsky Aircraft as a down payment for the purchase of a green helicopter - Sikorsky S76C. Id.*

*According to the Aviation Database, as of June 27, 2007, the helicopter with tail number N908GM*

*was registered to Air Ghislaine, Inc. Ex. 56, Amador Exhibit G (aircraft registrations).*

> **JPMC Response:** Disputed as to date of transfer from Maxwell to Air Ghislaine, Inc.'s
> JPMorgan account.  The date provided in USVI Ex. 151 at -878 is June 18, not June 15.
> Undisputed that other payments occurred to specified accounts.  Undisputed that
> helicopter with tail number N908GM was registered to Air Ghislaine, Inc.  Disputed as to
> the materiality of this transaction between Maxwell and Epstein to the claims in this
> litigation.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

224.   [REDACTED]

[REDACTED]

[REDACTED]

*Figure 9: Direct Payments to Women from the Epstein Accounts*

| Payee Name | Total Payment Amount |
|---|---|
| [REDACTED] | $15,000.00 |
| [REDACTED] | $5,000.00 |
| [REDACTED] | $13,656.00 |
| [REDACTED] | $5,000.00 |
| [REDACTED] | $7,026.00 |
| [REDACTED] | $3,000.00 |
| [REDACTED] | $64,599.86 |
| [REDACTED] | $5,000.00 |
| [REDACTED] | $8,468.00 |
| [REDACTED] | $2,400.00 |
| [REDACTED] | $400.00 |
| [REDACTED] | $500.00 |
| [REDACTED] | $4,000.00 |
| [REDACTED] | $58,000.00 |
| [REDACTED] | $8,000.00 |
| [REDACTED] | $30,000.00 |
| [REDACTED] | $5,000.00 |
| [REDACTED] | $20,000.00 |

| Payee Name | Total Payment Amount |
|---|---|
| | $19,000.00 |
| | $36,049.30 |
| | $22,500.00 |
| | $113,500.00 |
| | $5,007.13 |
| | $1,000.00 |
| | $396.44 |
| | $500.00 |
| | $3,675.00 |
| | $12,110.00 |
| | $550.00 |
| | $200.00 |
| | $4,901.00 |
| | $3,341.68 |
| | $116,399.86 |
| | $500.00 |
| | $1,550.00 |
| | $750.00 |
| | $12,500.00 |
| | $9,000.00 |
| | $211,441.25 |
| | $5,000.00 |
| | $12,528.67 |
| | $728,741.57 |
| | $7,750.00 |
| | $5,000.00 |
| | $80,550.00 |
| | $115,000.00 |
| | $50,000.00 |
| | $8,073.75 |
| | $108,500.00 |
| | $767,772.64 |
| | $1,000.00 |
| | $1,495.00 |
| | $500.00 |
| | $2,700.00 |
| | $30,000.00 |
| | $15,000.00 |
| | $5,000.00 |
| | $1,100.00 |
| | $79,773.51 |
| | $10,000.00 |
| | $1,540.00 |

█████████████████████████████████████████████████████

| Payee Name | Total Payment Amount |
|---|---|
| ██████████████ | $81,000.00 |
| | $30,000.00 |
| | $21,739.73 |
| | $4,000.00 |
| | $1,320.00 |
| | $3,000.00 |
| | $27,743.00 |
| | $23,000.00 |
| | $4,200.00 |
| | $2,000.00 |
| | $10,140.00 |
| | $3,500.00 |
| | $1,650.00 |
| | $8,000.00 |
| | $300.00 |
| | $5,000.00 |
| | $38,031.49 |
| | $500.00 |
| **Total** | **$3,132,070.88** |

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

225. ████████████████████████████████████████████████



██████













**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source.

Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

226.















**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

227.















**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

228.



**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

███████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

229.   ████████████████████████████████████████

████████████████████████████████████████

████████████████



**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

230.   *JPMorgan sent several of the payments by foreign wire to girls or women—including*

—*located*

*in Belarus, Lithuania, and Russia.   Ex. 56 at 37-38 and Figure 10 (copied below).*

**Figure 10: Foreign Wire Transactions from the Epstein Accounts**

| Date | Beneficiary Bank | Location | | | Amount |
|------|-----------------|----------|--|--|--------|
| 12/1/2008 | Alfa Bank | Moscow, Russia | | | $3,000.00 |
| 12/1/2008 | VTB Bank | Moscow, Russia | | | $2,000.00 |
| 1/8/2009 | SEB Vilniaus Bankas | Lithuania | | | $2,000.00 |
| 9/8/2009 | VTB Bank | Moscow, Russia | | | $292.00 |
| 11/4/2010 | ZAO Raiffeisenbank | Moscow, Russia | | | $2,840.00 |
| 8/21/2012 | ZAO Raiffeisenbank | Moscow, Russia | | | $2,000.00 |
| 1/14/2013 | Joint Stok Company | Minsky, Belarus | | | $10,000.00 |
| 10/15/2013 | Joint Stok Company | Minsky, Belarus | | | $20,000.00 |

> **JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

231.   *From 2004-2013, JPMorgan handled $211,411.25 in payments to ▮▮▮▮▮ from*

*Epstein's JPMorgan accounts.  Ex. 56, Amador Exhibit F (chart showing breakdown of each direct*

*payment Epstein made to girls or women from his JPMorgan accounts).*

> **JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

232.   *JPMorgan also handled $158,958.34 in indirect payments from Epstein's JPMorgan*

*accounts for the benefit of girls or women.  Ex. 56 at 38-40 and Figure 11 (copied below).*