# ATTACHMENT B

# PART 3

*Figure 11: Indirect Payments for the benefit Women from the Epstein Accounts*

| Beneficiary/Payee | Amount |
|---|---|
| ███████████ | |
| Steven D. Kaplan, DMD | $1,260.00 |
| ███████ **Total** | **$1,260.00** |
| | |
| ████████████ | |
| Spanish American Institute | $840.00 |
| ███████ **Total** | **$840.00** |
| | |
| ████████████ | |
| International Center of Photography | $1,290.00 |
| ██████████ **Total** | **$1,290.00** |
| | |
| ██████████ | |
| Castle Worldwide Inc. | $250.00 |
| Pacific College of Oriental Medicine | $21,245.86 |
| Steven D. Kaplan, DMD | $5,700.00 |
| ██████ **Total** | **$27,195.86** |
| | |
| ████████████ | |
| Laguardia College | $2,425.85 |
| The World's Community College | $4,135.85 |
| █████ **Total** | **$6,561.70** |
| | |
| ████████ | |
| New York Film Academy | $6,040.00 |
| Steven R. Erle, MD, PC | $450.00 |
| ███████ **Total** | **$6,490.00** |
| | |
| ███████ | |
| Bloomingdales | $532.77 |
| Express | $380.87 |

| Beneficiary/Payee | Amount |
|---|---|
| I C Systems | $329.00 |
| Target | $352.10 |
| Victoria's Secret | $211.04 |
| ██████████ Total | $1,805.78 |
|  |  |
| ██████████ |  |
| Alan Barnett DLP, LLC | $10,400.00 |
| The International Culinary Center L | $42,000.00 |
| ██████████ Total | $52,400.00 |
|  |  |
| ██████████ |  |
| Samuel C. Klagsbrun M.D. | $2,000.00 |
| ██████████ Total | $2,000.00 |
|  |  |
| ██████████ |  |
| ATP USA, Inc. | $26,000.00 |
| ██████████ Total | $26,000.00 |
|  |  |
| ██████████ |  |
| New York Film Academy | $3,500.00 |
| ██████████ Total | $3,500.00 |
|  |  |
| ██████████ |  |
| Alliance Nursing | $2,275.00 |
| Dr. David Price | $412.00 |
| Dr. Gerald Imber | $20,000.00 |
| Dr. Jane Recant | $2,000.00 |
| Office Based Surgery Care | $1,500.00 |
| ██████████ Total | $26,187.00 |
|  |  |
| ██████████ |  |
| Fashion Institute of Technology | $2,020.00 |

| Beneficiary/Payee | Amount |
|---|---|
| ██████ **Total** | **$2,020.00** |
| | |
| ██████ | |
| ALCC American Language | $1,408.00 |
| ██████ | **$1,408.00** |
| | |
| **Grand Total** | **$158,958.34** |

**JPMC Response:** Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

233.   *JPMorgan also handled $5,600 in legal fees from Epstein's JPMorgan accounts for the benefit of three women—*████████████████████████*. Ex. 56 at 40-41 and Figure 12 (copied below).*

**Figure 12: Legal Fees Payments for Women from the Epstein Accounts**

| Date | Check # | Payee | Amount | Memo line: |
|---|---|---|---|---|
| 1/30/2009 | 2691 | Vincent A. Fuller, Jr., Esq. | $4,500.00 | ██████ |
| 1/11/2012 | 3359 | M. Arda Beskardes, Esq. | $600.00 | ██████ |
| 8/21/2012 | 3412 | M. Arda Beskardes, Esq. | $500.00 | ██████ |
| **Total** | | | **$5,600.00** | |

**JPMC Response:** Undisputed that cited document and chart are summaries of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this

███████████████████████████████████████████████████████

information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality.  *See* JPMC Ex. 60 ¶ 91 & n.166

███████████████████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

### *Smaller Dollar and "Gift" Payments to Girls or Women and $100,000 Payments*

234.   ███████████████████████████████████████████████

█████████████████████████████████████████████.  *Ex. 156 (2012 Jeffrey E.*

*Epstein Gift Tax Return).*████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

| ████████████████████████████████████████████ | | | | | | |
|---|---|---|---|---|---|---|
| ████ | █████ | ████ | ██████ ███ | | ███ | ███ |
| ███ | █████ | ████ | █████ | ██ | ███ | ███ |
| ███ | ██████ ██ | █████ | ████ | ██ | ███ | ████ |
| ████ | ██████ | █████ | █████ | | ███ | ███ |
| ███ | ████ ██ | ████ | █████ | ██ | ███ | ████ |
| ███ | ████ ██ | ████ | █████ | ██ | ███ | ████ |

████████████████████████████████████

| ██ | ██ | ████████████████ | | ██ | ██ | ██ |
|---|---|---|---|---|---|---|
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ████████ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |





**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI's proffered expert Jorge Amador.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

not provided in the cited source.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

235.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

| Date | Amount | Payee |
|---|---|---|
| ████ | █ | ████████████████████████ █ |
| █ ████ | █ | ████████████████████████████ █ |
| █ ████ | █ | ████████████████████████████ █ |
| █ ████ | █ | ████████████████████████████ █ |
| ████ | █ | ████████████████████████████ █ |
| ████ | █ | ████████████████████████████ █ |
| ████ | █ | ████████████████████████████ █ |
| ████ | █ | ████████████████████████ █ |
| ████ | █ | ████████████████████ █ |
| █ ████ | █ | ████████████████████████ █ |
| ████ | █ | ████████████████████ █ |
| ████ | █ | ████████████████████████████████ █ |
| ████ | █ | ██████████████████████████████ █ |
| ████ | █ | ████████████████████████████████ █ |
| ████ | █ | ████████████████████████████ █ |
| ████ | █ | ████████████████████████████ █ |
| ████ | █ | ██████████████████████████ █ |
| ████ | █ | ████████████████████████████████ █ |
| ████ | █ | ████████████████████████ █ |
| ████ | █ | ██████████████████████████ █ |
| ████ | █ | ████████████████████ █ |
| ████ | █ | ██████████████████ █ |
| ████ | █ | ████████████████ █ |
| ████ | █ | ██████████████████ █ |
| ████ | █ | ████████████████████ █ |
| ████ | █ | ████████████████ █ |
| █ ████ | █ | ██████████████ █ |
| ████ | █ | ████████████ █ |





**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality of these payments based on the amounts or that they are provided to attorneys and law firms.  *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

236.









**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to whether the persons listed were minors when they received the payments as their age is not provided in the cited source. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 23, 91, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

237.



**JPMC Response:**  Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality of these payments

from Epstein to a communications and reputation management firm to any of USVI's claims against JPMC. *See* JPMC Ex.64.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.

238. *From September 2006 through December 2006, JPMorgan handled $883,750.00 in payments from Epstein's accounts to Alan Dershowitz, Roy Black, Gerald Lefcourt, and Jack Goldberger (relevant transactions identified and summarized in the chart below).*



**JPMC Response:** Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Further disputed as to materiality or relevance of payments from Epstein to his attorneys and law firms to USVI's claims in this matter. *See* JPMC Ex. 60 ¶ 91 & n.166 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

239. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

| Date | Payee | Amount |
|------|-------|--------|
| 1/2/2007 | ALAN M. DERSHOWITZ | $178,000.00 |
| 2/7/2007 | ALAN M. DERSHOWITZ | $78,292.50 |
| 4/3/2007 | ALAN M. DERSHOWITZ | $137,458.00 |
| 5/9/2007 | ALAN M. DERSHOWITZ | $75,000.00 |



**JPMC Response:**   Undisputed that this is a summary of transactions prepared by USVI.
Disputed that this information was available to JPMorgan in this format during the time

Epstein was a client of JPMorgan.  Further disputed as to materiality or relevance of payments from Epstein to his attorneys and law firms to USVI's claims in this matter. *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

240.    *From 2006 through 2013, JPMorgan handled $50,909,656.04 in payments from Epstein's JPMorgan accounts to various law firms, including $9,505,547.91 in payments from January 2006 through September 24, 2007; $5,597,358.02 in payments from September 25, 2007 through June 30, 2008; and $35,806,750.11 from July 1, 2008 through December 2013 (relevant transactions identified and summarized in the chart below).*



























**JPMC Response:**  Undisputed that this is a summary of transactions prepared by USVI. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Further disputed as to materiality or relevance of payments from Epstein to his attorneys and law firms to USVI's claims in this matter. *See* JPMC Ex. 60 ¶ 91 & n.166

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

241.    *JPMorgan Private Bank's Client Cash Transaction Guidelines states:  "The receipt of large cash deposits and disbursements of cash withdrawals for other than client casual spending needs to be discouraged.  It is the primary responsibility of the Banker to obtain explanations on the source of the cash and acceptability of the intended use of the case, and to assess the plausibility of these explanations for large cash transactions."  Ex. 157 at -224.*

**JPMC Response:** Disputed to the extent USVI misstates the cited document. JPMorgan's Client Cash Transaction Guidelines, last review date November 20, 2012, state "The receipt of large cash deposits and disbursements of cash withdrawals for other than client casual spending needs is discouraged." *See* USVI Ex. 157 at -1227. Otherwise, undisputed that cited document contains quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

242.    *From September 2003 through November 2013, JPMorgan recorded cash withdrawals from Epstein's JPMorgan accounts totaling $5,018,472.  Ex. 56 at 24-26 and Figure 8 (copied below).*

*Figure 8: CTRs Relating to Epstein Accounts By Year*

| Year | Epstein #0438 | Epstein #0663 | Hyperion #4332 | NYSG #3130 | 116 East 65th St LLC#4235 | Total |
|------|------|------|------|------|------|------|
| 2003 | $175,310 | | | | | $175,310 |
| 2004 | $840,000 | | | | | $840,000 |
| 2005 | $901,337 | | | $3,000 | | $904,337 |
| 2006 | $935,265 | | | $3,000 | | $938,265 |
| 2007 | $520,000 | | | $6,000 | | $526,000 |
| 2008 | $460,000 | | | $9,000 | | $469,000 |
| 2009 | $100,011 | $60,000 | | | $5,000 | $165,011 |
| 2010 | $223,397 | $30,000 | | | | $253,397 |
| 2011 | $200,000 | | $60,000 | | | $260,000 |
| 2012 | | | $290,000 | | | $290,000 |
| 2013 | | | $197,152 | | | $197,152 |
| **Total** | **$4,355,320** | **$90,000** | **$547,152** | **$21,000** | **$5,000** | **$5,018,472** |

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 88, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

243. *From 2006 through 2013, JPMorgan recorded $3,098,825 in cash withdrawals from Epstein's JPMorgan accounts. Ex. 56 at 24-26 and Figure 8.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 88, 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

244. *From 2003 to 2007, JPMorgan recorded $3,383,912 in cash withdrawals from Epstein's JPMorgan accounts. Ex. 56 at 24-26 and Figure 8.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 88 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

245. *From 2005 to 2006, JPMorgan recorded $1,842,602 in cash withdrawals from Epstein's JPMorgan accounts. Ex. 56 at 24-26 and Figure 8.*

**JPMC Response:** Undisputed that cited document is a summary of transactions prepared by USVI's proffered expert Jorge Amador. Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan. Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context. *See* JPMC Ex. 60 ¶¶ 22, 88 92.

149

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

246.    *From August 2006 through June 2008, JPMorgan recorded $1,134,000 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

| Transaction Date | Acct# | Amount |
|---|---|---|
| 8/10/2006 | Epstein #0438 | $40,000.00 |
| 8/24/2006 | Epstein #0438 | $40,000.00 |
| 9/7/2006 | Epstein #0438 | $60,000.00 |
| 9/21/2006 | Epstein #0438 | $40,000.00 |
| 10/19/2006 | Epstein #0438 | $40,000.00 |
| 11/10/2006 | Epstein #0438 | $40,000.00 |
| 11/20/2006 | Epstein #0438 | $25,000.00 |
| 12/15/2006 | Epstein #0438 | $40,000.00 |
| 1/18/2007 | Epstein #0438 | $40,000.00 |
| 2/20/2007 | Epstein #0438 | $40,000.00 |
| 3/1/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | NYSG #3130 | $3,000.00 |
| 5/2/2007 | Epstein #0438 | $40,000.00 |
| 6/11/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | NYSG #3130 | $3,000.00 |
| 8/2/2007 | Epstein | $40,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| | #0438 | |
| 9/4/2007 | Epstein #0438 | $40,000.00 |
| 9/19/2007 | Epstein #0438 | $40,000.00 |
| 10/24/2007 | Epstein #0438 | $40,000.00 |
| 11/27/2007 | Epstein #0438 | $40,000.00 |
| 12/14/2007 | Epstein #0438 | $40,000.00 |
| 1/7/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | NYSG #3130 | $3,000.00 |
| 3/5/2008 | Epstein #0438 | $40,000.00 |
| 4/1/2008 | Epstein #0438 | $40,000.00 |
| 4/24/2008 | Epstein #0438 | $40,000.00 |
| 5/21/2008 | Epstein #0438 | $40,000.00 |
| 6/16/2008 | Epstein #0438 | $40,000.00 |
| **Grand Total** | | **$1,134,000.00** |

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22,88,92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

247.   *From August 2006 through November 2013, JPMorgan recorded $2,485,560.00 in cash*

*withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized*

*in the chart below).*

151

| Transaction Date | Acct# | Amount |
|---|---|---|
| 8/10/2006 | Epstein #0438 | $40,000.00 |
| 8/24/2006 | Epstein #0438 | $40,000.00 |
| 9/7/2006 | Epstein #0438 | $60,000.00 |
| 9/21/2006 | Epstein #0438 | $40,000.00 |
| 10/19/2006 | Epstein #0438 | $40,000.00 |
| 11/10/2006 | Epstein #0438 | $40,000.00 |
| 11/20/2006 | Epstein #0438 | $25,000.00 |
| 12/15/2006 | Epstein #0438 | $40,000.00 |
| 1/18/2007 | Epstein #0438 | $40,000.00 |
| 2/20/2007 | Epstein #0438 | $40,000.00 |
| 3/1/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | Epstein #0438 | $40,000.00 |
| 4/5/2007 | NYSG #3130 | $3,000.00 |
| 5/2/2007 | Epstein #0438 | $40,000.00 |
| 6/11/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | Epstein #0438 | $40,000.00 |
| 7/10/2007 | NYSG #3130 | $3,000.00 |
| 8/2/2007 | Epstein #0438 | $40,000.00 |
| 9/4/2007 | Epstein #0438 | $40,000.00 |
| 9/19/2007 | Epstein #0438 | $40,000.00 |
| 10/24/2007 | Epstein #0438 | $40,000.00 |
| 11/27/2007 | Epstein #0438 | $40,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| 12/14/2007 | Epstein #0438 | $40,000.00 |
| 1/7/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | Epstein #0438 | $40,000.00 |
| 2/13/2008 | NYSG #3130 | $3,000.00 |
| 3/5/2008 | Epstein #0438 | $40,000.00 |
| 4/1/2008 | Epstein #0438 | $40,000.00 |
| 4/24/2008 | Epstein #0438 | $40,000.00 |
| 5/21/2008 | Epstein #0438 | $40,000.00 |
| 6/16/2008 | Epstein #0438 | $40,000.00 |
| 7/10/2008 | Epstein #0438 | $20,000.00 |
| 7/10/2008 | NYSG #3130 | $3,000.00 |
| 8/22/2008 | Epstein #0438 | $20,000.00 |
| 9/10/2008 | Epstein #0438 | $20,000.00 |
| 10/2/2008 | Epstein #0438 | $40,000.00 |
| 10/7/2008 | Epstein #0438 | $40,000.00 |
| 11/13/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | NYSG #3130 | $3,000.00 |
| 1/13/2009 | Epstein #0438 | $20,011.00 |
| 3/5/2009 | Epstein #0663 | $30,000.00 |
| 3/30/2009 | Epstein #0438 | $30,000.00 |
| 6/17/2009 | Epstein #0663 | $30,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| 8/20/2009 | Epstein #0438 | $30,000.00 |
| 11/19/2009 | Epstein #0438 | $20,000.00 |
| 11/19/2009 | 116 East 65th St LLC #4235 | $5,000.00 |
| 3/2/2010 | Epstein #0438 | $20,000.00 |
| 4/1/2010 | Epstein #0438 | $20,000.00 |
| 4/21/2010 | Epstein #0438 | $30,000.00 |
| 7/19/2010 | Epstein #0438 | $30,000.00 |
| 7/23/2010 | Epstein #0438 | $13,397.00 |
| 8/19/2010 | Epstein #0438 | $30,000.00 |
| 9/27/2010 | Epstein #0438 | $40,000.00 |
| 10/29/2010 | Epstein #0663 | $30,000.00 |
| 12/30/2010 | Epstein #0438 | $40,000.00 |
| 2/14/2011 | Epstein #0438 | $40,000.00 |
| 4/12/2011 | Epstein #0438 | $40,000.00 |
| 5/27/2011 | Epstein #0438 | $40,000.00 |
| 7/8/2011 | Epstein #0438 | $40,000.00 |
| 8/5/2011 | Epstein #0438 | $40,000.00 |
| 10/6/2011 | Hyperion #4332 | $30,000.00 |
| 12/13/2011 | Hyperion #4332 | $30,000.00 |
| 2/21/2012 | Hyperion #4332 | $30,000.00 |
| 3/19/2012 | Hyperion #4332 | $30,000.00 |
| 5/29/2012 | Hyperion #4332 | $30,000.00 |

| Transaction Date | Acct# | Amount |
|---|---|---|
| 7/9/2012 | Hyperion #4332 | $30,000.00 |
| 7/31/2012 | Hyperion #4332 | $30,000.00 |
| 9/10/2012 | Hyperion #4332 | $30,000.00 |
| 9/28/2012 | Hyperion #4332 | $30,000.00 |
| 10/23/2012 | Hyperion #4332 | $40,000.00 |
| 12/7/2012 | Hyperion #4332 | $40,000.00 |
| 2/28/2013 | Hyperion #4332 | $40,000.00 |
| 6/4/2013 | Hyperion #4332 | $40,000.00 |
| 8/1/2013 | Hyperion #4332 | $20,000.00 |
| 11/1/2013 | Hyperion #4332 | $97,152.00 |
| **Grand Total** | | **$2,485,560.00** |

**JPMC Response:**  Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

248.   *From September 2008 through November 2013, JPMorgan recorded $1,308,560 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| 9/10/2008 | Epstein #0438 | $20,000.00 |
| 10/2/2008 | Epstein #0438 | $40,000.00 |
| 10/7/2008 | Epstein | $40,000.00 |

155

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| | #0438 | |
| 11/13/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | Epstein #0438 | $20,000.00 |
| 12/11/2008 | NYSG #3130 | $3,000.00 |
| 1/13/2009 | Epstein #0438 | $20,011.00 |
| 3/5/2009 | Epstein #0663 | $30,000.00 |
| 3/30/2009 | Epstein #0438 | $30,000.00 |
| 6/17/2009 | Epstein #0663 | $30,000.00 |
| 8/20/2009 | Epstein #0438 | $30,000.00 |
| 11/19/2009 | Epstein #0438 | $20,000.00 |
| 11/19/2009 | 116 East 65th St LLC #4235 | $5,000.00 |
| 3/2/2010 | Epstein #0438 | $20,000.00 |
| 4/1/2010 | Epstein #0438 | $20,000.00 |
| 4/21/2010 | Epstein #0438 | $30,000.00 |
| 7/19/2010 | Epstein #0438 | $30,000.00 |
| 7/23/2010 | Epstein #0438 | $13,397.00 |
| 8/19/2010 | Epstein #0438 | $30,000.00 |
| 9/27/2010 | Epstein #0438 | $40,000.00 |
| 10/29/2010 | Epstein #0663 | $30,000.00 |
| 12/30/2010 | Epstein #0438 | $40,000.00 |
| 2/14/2011 | Epstein #0438 | $40,000.00 |
| 4/12/2011 | Epstein #0438 | $40,000.00 |
| 5/27/2011 | Epstein | $40,000.00 |

| Transaction Date | Acct# | Total Cash |
|---|---|---|
|  | #0438 |  |
| 7/8/2011 | Epstein #0438 | $40,000.00 |
| 8/5/2011 | Epstein #0438 | $40,000.00 |
| 10/6/2011 | Hyperion #4332 | $30,000.00 |
| 12/13/2011 | Hyperion #4332 | $30,000.00 |
| 2/21/2012 | Hyperion #4332 | $30,000.00 |
| 3/19/2012 | Hyperion #4332 | $30,000.00 |
| 5/29/2012 | Hyperion #4332 | $30,000.00 |
| 7/9/2012 | Hyperion #4332 | $30,000.00 |
| 7/31/2012 | Hyperion #4332 | $30,000.00 |
| 9/10/2012 | Hyperion #4332 | $30,000.00 |
| 9/28/2012 | Hyperion #4332 | $30,000.00 |
| 10/23/2012 | Hyperion #4332 | $40,000.00 |
| 12/7/2012 | Hyperion #4332 | $40,000.00 |
| 2/28/2013 | Hyperion #4332 | $40,000.00 |
| 6/4/2013 | Hyperion #4332 | $40,000.00 |
| 8/1/2013 | Hyperion #4332 | $20,000.00 |
| 11/1/2013 | Hyperion #4332 | $97,152.00 |
| **Grand Total** |  | **$1,308,560.00** |

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

157

[black redaction bar]

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

249.    *From August 2013 through November 2013, JPMorgan recorded $117,152 in cash withdrawals from Epstein's JPMorgan accounts (relevant transactions identified and summarized in the chart below).*

| Transaction Date | Acct# | Total Cash |
|---|---|---|
| 8/1/2013 | Hyperion #4332 | $20,000.00 |
| 11/1/2013 | Hyperion #4332 | $97,152.00 |
| **Grand Total** | | **$117,152.00** |

**JPMC Response:**   Undisputed that cited document is a summary of transactions prepared by USVI.  Disputed that this information was available to JPMorgan in this format during the time Epstein was a client of JPMorgan.  Disputed as to materiality to the extent this summary fails to put Epstein's transactions in the appropriate context.  *See* JPMC Ex. 60 ¶¶ 22, 88 92.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 108-169.

250.   [black redaction bar]

[black redaction bar]

[black redaction bar] *Ex. 158 at -133-134, -*
*206-210.* [black redaction bar] *Id. at -134.* [black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar] *. Ex.*
*159 at -001002, -175-182.* [black redaction bar]

[black redaction bar] *Id. at -001.*

**JPMC Response:** [black redaction bar]

[black redaction bar]

158



*See* SUMF ¶ 22.

*See* JPMC Ex. 60 ¶¶ 121-23.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan participated in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 108-169.

## JPMorgan Benefited from Participation in Epstein's alleged sex-trafficking venture

**JPMC Response**: This is a header to which no response is warranted. Disputed insofar as USVI contends that the statements and documents cited below establish as a matter of law that JPMorgan benefited from participation in Epstein's alleged sex-trafficking venture.

251. *JPMorgan first opened an account for Epstein in 1985. Ex. 39 at Resp. 1.*

**JPMC Response:** Undisputed that Epstein opened an account with one of JPMC's predecessor entities in 1985.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

252. *JPMorgan admits that it earned fees and revenue from providing banking services to Epstein. Ex. 39 at Resp. 7.*

**JPMC Response:** Undisputed that JPMorgan earned fees and revenue from providing banking services to Epstein.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

253. *One of the factors impacting bonuses for JPMorgan Private Bankers was the revenues that clients brought into the bank. Ex. 160 at 46:11-18; 48:4-49:18.*

**JPMC Response:** Undisputed that Morris testified that revenues were one factor that was taken into account to determine the discretionary bonus a Private Banker would receive.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

254. *In 2003, Epstein brought in over $8.1 million in revenue to the Private Bank. Ex. 161 at -088.*

**JPMC Response:** Disputed that the $8.1 million in revenue in 2003 was from Epstein's accounts at the JPMorgan Private Bank. USVI mischaracterizes the document, the $8.1 million includes revenue from other Private Bank clients, primarily ███████████. *See* USVI Ex. 163 at -030. ████████████████████████████████████████ JPMC Ex. 65 at 123:19-125:12.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

255. *Epstein's $8.1 million in revenue in 2003 was the most investor revenue for JPMorgan Wealth Management. Ex. 161 at -088.*

**JPMC Response:** Disputed that the cited document establishes that Epstein was responsible for "the most investor revenue for JPMorgan Wealth Management" in 2003. The cited document reflects revenues from only a small subset of JPMorgan Private Bank clients, specifically just the Private Bank clients who were categorized as "investors." Moreover, the revenues related to Epstein include those derived from other clients, principally ███████████. *See* USVI Ex. 163 at -030. ██████████████████████ ████████ JPMC Ex. 65 at 123:19-125:12.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

256. *Epstein's $8.1 million in revenue in 2003 was nearly double the amount of JPMorgan Wealth Management's second-highest client. Ex. 161 at -088.*

**JPMC Response:** Disputed that the cited document establishes that Epstein was responsible for revenues "nearly double the amount of JPMorgan Wealth Management's second-highest client" in 2003. The cited document reflects revenues from only a small subset of JPMorgan Private Bank clients, specifically just the Private Bank clients who were categorized as "investors." Moreover, the revenues related to Epstein include those derived from other clients, principally ███████████. *See* USVI Ex. 163 at -030.

███████████████████████████████████████████

████████████████████████████████████ JPMC Ex. 65 at 123:19-125:12.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

257.   *In 2003, "Jeffrey Epstein, through the trading of his accounts and that [sic] of* ████

████, *generates one of the largest annual revenue flows of private clients in the private bank."*

*Ex. 162 at -098.   In 2004, Epstein's JPMorgan Banker considered the Epstein/Wexner relationship*

*a "crucial relationship to the private bank."  Ex. 163 at -030.*

**JPMC Response:**  Undisputed that cited documents contain quoted the text.  Disputed to the extent that USVI contends that Epstein was the primary driver of the revenue flows or was the "crucial relationship."  ██████████████ accounts were the driver of the revenue and the key part of the relationship.

Q: And you believe that [the ███████████] relationship was a, quote, crucial relationship to the private bank; is that fair?

A: Mr. ██████ was a crucial relationship to the private bank, yes.

Q: And Mr. Epstein?

A:  Mr. Epstein was the money manager for Mr. ██████, yes.  So, therefore, he was part of an important relationship.

JPMC Ex. 66 at 117:20-118:7.  ████████████████████████████████
████████████████████████████████████████  JPMC Ex.
T65 at 123:19-125:12 .

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

258.   *Leading up to Epstein's indictment in 2006, he was one of JPMorgan's "very big clients."*

*Ex. 164 at -615.; Ex. 46 at 85:9-86:18.*

**JPMC Response:**  Undisputed that cited documents contain the quoted text.  Disputed that Epstein was one of JPMorgan's "very big clients." ████████████████████
██████████████████████████████████  JPMC Ex. 65 at 122:2-

123:18

*see also* JPMC Ex. 65 at 123:19-125:12 (

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.

259.   *In October 2006, Epstein's JPMorgan accounts totaled approximately $32 million.  Ex. 76 at -953.*

> **JPMC Response:**  Undisputed that as of October 17, 2006 a Rapid Response Team document states that "[t]he Epstein relationship . . . consists of banking, asset and credit accounts with balances totaling approximately $32 million."  USVI Ex. 76 at -953.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

260.   *At the October 2006 Rapid Response Team meeting, "[a]fter internal discussion with Jes Staley, Mary Erdoes, Catherine Keating, John Duffy and Mary Casey, it was decided that we will keep Mr. Epstein solely as a banking client and on a 'reactive', client service basis."  Ex. 39 at Resp. 44 (citing JPM-SDNYLIT-00127953 (Ex. 76)).*

> **JPMC Response:**  Disputed to the extent USVI misstates the quoted document.  The document states "[a]fter internal discussions," not "discussion."  USVI Ex. 76 at -953. Otherwise, undisputed that cited document contains quoted text.  JPMorgan lacks knowledge as to whether the referenced internal discussion in fact occurred.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

261.   *Kevin McCleerey testified that these conditions were imposed to "mitigate[] the risk" presented by Epstein by capping "the number of accounts and relationships with him."  Ex. 35 at 119:2-120:5.*

> **JPMC Response:**  Disputed that McCleerey testified that these conditions were imposed to "mitigate[] the risk" presented by Epstein by capping "the number of accounts and relationships with him."  McCleerey testified that "limiting Mr. Epstein to banking and

custody. . . mitigat[ed] the risk presented by Mr. Epstein" because JPMorgan was "not expanding the relationship based on the reputational risk that we knew of at the time in October of 2006." USVI Ex. 35 at 119: 2-16. McCleerey further testified that "limiting [Epstein] to being a banking-only client" should have "limit[]ed the risk presented by Mr. Epstein" because "we would cap the number of accounts and relationships with him." *Id.* at 119:17-120:1-4.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

262.  *In October 2007, JPMorgan continued doing "business as usual with Epstein's office."*

*Ex. 102 at -963.*

> **JPMC Response:**  Disputed that JPMorgan continued doing business as usual with Epstein's office in October 2007.  JPMorgan did not continue doing business as usual with Epstein's office following his 2006 indictment and instead limited Epstein primarily to banking services.  *See* USVI Ex. 76 at -953.  The cited document is an October 25, 2007 email from Casey, sent after the decision was made to limit Epstein to banking services, that contains the text "[m]y current understanding is that we are business as usual with Epstein's office" in the context of whether to authorize a new Letter of Credit for Epstein's office.  *See* USVI Ex. 102 at -963.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

263.  *At the time, Mary Erdoes wanted to "move forward based on our earlier decision to*

*continue doing business" with Epstein.  Ex. 102 at -962; Ex. 32 at 264:16-265:2; 273:24-274:22.*

> **JPMC Response:**  Undisputed that the cited document regarding the decision whether to authorize a new Letter of Credit for Epstein in October 2007 contains the quoted text. Disputed that Erdoes "wanted" to move forward with authorizing a new letter of credit for Epstein in October 2007.  JPMorgan lacks knowledge as to Erdoes' state of mind regarding whether or not to authorize a new Letter of Credit for Epstein in October 2007.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

264.  *By July 2008, Epstein's JPMorgan accounts had increased to total approximately $121.5*

*million.  Ex. 165 at 944; Ex. 32 at 309:8-311:3.*

**JPMC Response:** Undisputed that a July 15, 2008 Rapid Response Meeting document contains quoted text "[t]he Epstein relationship . . . mainly consists of banking and asset accounts with balances totaling approximately $121.5 million." USVI Ex. 165 at -944.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

265.   *On August 28, 2008, Mary Casey emails Marcus Sheridan, subject:  "Re: '09 plan" and said: "Also, I would count Epstein's assets as a probable outflow for '08 ($120mm or so?) as I can't imagine it will stay (pending Dimon review)."  Ex. 301 at -706_R.*

**JPMC Response:** Undisputed that cited document contains quoted text. Disputed as to the underlying suggestion that Dimon was involved in any Epstein review. Casey testified that she intended her email to reference Cutler, "and [she] did not mean it to be Jamie Dimon, as he had nothing to do with this." JPMC Ex. 66 at 341:12-24. Mr. Sheridan, the recipient of the email, also testified ███████████████████████████████. JPMC Ex. 67 at 129:8-23.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

266.   *On September 3, 2008, Epstein's JPMorgan accounts had a PCN Market Value of $156,218,451.45. Ex. 166 at -758; Ex. 39 at Resp. 3.*

**JPMC Response:** Undisputed that cited document identifies a "PCN Market Value" of $156,218,451.45.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

267.   *JPMorgan admits that in October 2010 Epstein was one of JPMorgan's top 20 clients in the Closely Held Business Group.  Ex. 39 at Resp. 4.*

**JPMC Response:** Undisputed that Epstein was one of JPMorgan's top 20 clients in the Closely Held Business Group as of October 2010.

164

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

268. 

*Ex. 167 at -654.*

> **JPMC Response:** 
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

269. 

*Ex. 167 at -654.*

> **JPMC Response:** 
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

270. . *Ex. 167 at -654.*

> **JPMC Response:** 
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

271. *By 2011, Epstein was JPMorgan Private Bank's "GIO's biggest revenue producer." Ex.*

*168 at -977.*

> **JPMC Response:** Undisputed that cited document contains quoted text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

272. *By July 2013, Epstein was still actively trading through the GIO. Ex. 169 at -230.*

**JPMC Response:** Undisputed that cited document, a July 3, 2013 email from Nelson to McCleerey and Duffy states, "The assets [Epstein] keeps at J.P. Morgan are his own money, which he actively trades through our Global Investment Opportunities desk with Paul Barrett's team." USVI Ex. 169 at -230.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

273.   *At the time, Epstein's Banker (Justin Nelson) described Epstein as "one of the most active and sophisticated investors on the GIO desk." Ex. 169 at -230.*

**JPMC Response:** Undisputed that Epstein's banker described Epstein as "one of the most active and sophisticated investors on the GIO desk." USVI Ex. 169 at -230.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

274.   *In September 2013, JPMorgan noted the impact of exiting Epstein roughly equated to "$0.5MM YoY revenue decrease in 2013. In 2014 it will be roughly a -$2MM revenue impact." Ex. 170 at -016. JPMorgan further noted, "He currently has $176MM with us and actually has TCP flows of +$72MM this year." Id.*

**JPMC Response:** Disputed that JPMorgan "noted the impact" of exiting Epstein equated to "$0.5MM YoY revenue decrease in 2013. In 2014 it will be roughly a -$2MM revenue impact." The quoted text appears in a September 24, 2013 email from Carmen Zee to Thomas K. Southmayd, which was sent after the decision was communicated to Epstein in August 2013 that JPMC would be exiting his relationship. *See* JPMC Ex. 68.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

275.   *In or about the year 2000, Douglas "Sandy" Warner, then CEO of JPMorgan, said to Staley (then Head of Private Bank), "...[Y]ou should meet [sic] Epstein. He's one of the most connected people I know of in New York." Ex. 46 at 45:18-47:4.*

**JPMC Response:** Undisputed that Staley testified as to the quoted text. Disputed to the extent the underlying fact requires a credibility determination.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

276.    *JPMorgan admits Epstein introduced and referred potential clients to JPMorgan Private Bank. Ex. 39 at Resps. 5, 6.*

> **JPMC Response:**  Undisputed that Epstein introduced and referred clients Robert Lee Burch III, Kathryn Ruemmler, and Ghislaine Maxwell to the JPMorgan Private Bank. *See* USVI Ex. 39 at Resp. 29; JPMC Ex. 69 at Resp. 3.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

277.    *Epstein referred a number of ultra-high net worth clients to JPMorgan over the years. Ex. 48 at Resp. 17; Ex. 46 at 86:19-23.*

> **JPMC Response:**  Undisputed that Epstein referred Robert Lee Burch III, Kathryn Ruemmler, and Ghislaine Maxwell to JPMC.  *See* USVI Ex. 39 at Resp. 29; JPMC Ex. 69 at Resp. 3.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

278.    *One of the factors impacting bonuses for JPMorgan Private Bankers was new client acquisition. Ex. 171 at 83:18-84:4.*

> **JPMC Response:**  Disputed that one of the factors impacting bonuses for JPMorgan Private Bankers was new client acquisition.  The cited document does not support the proposition as Nelson testified that new client acquisition was "one of the factors that could be considered for compensation."  USVI Ex. 171 at 83:21-25; 84:1-4.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

279.    *One of the objectives that was instilled in JPMorgan Private Bankers was to acquire new clients. Epstein referred Bill Gates as a client to JPMorgan.  Ex. 46 at 88:3-4.*

**JPMC Response:** Disputed that "[o]ne of the objectives that was instilled in JPMorgan Private Bankers was to acquire new clients." The cited testimony does not support this proposition. Disputed to the extent Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

280.  *Epstein referred Sergey Brin as a client to JPMorgan. Ex. 46 at 87:2-4.*

**JPMC Response:** Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17) ("I don't think [Epstein] referred clients to him, but I don't think he was making a referral."). *See also* JPMC Ex 62 at Resp. 18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

281.  *Epstein referred Google LLC as a client to JPMorgan. Ex. 46 at 87:5-6.*

**JPMC Response:** Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). Disputed that Epstein referred Google LLC as a client to JPMorgan.

*See* JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

282.  *Epstein referred the Sultan of Dubai, Sultan Ahmed bin Sulayem as a client to JPMorgan.*

*Ex. 46 at 87:7-8.*

**JPMC Response:** Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). *See also* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

283.    *Epstein referred Mort Zuckerman as a client to JPMorgan.  Ex. 46 at 87:15-16.*

**JPMC Response:**  Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").  *See also* JPMC Ex. 62 at Resp. 28.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

284.    *Epstein referred the* ████████ *as a client to JPMorgan.  Ex. 46 at 87:17-18.*

**JPMC Response**: Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17) ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

285.    *Epstein referred David Gergen as a client to JPMorgan.  Ex. 46 at 88:8-9.*

**JPMC Response**: Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

286.    *Epstein referred Boris Nikolic as a client to JPMorgan.  Ex. 46 at 88:10-11; Ex. 160 at*

*17:13-18:4.*

**JPMC Response**: Disputed.  Staley's testimony does not support the assertion that Epstein referred any clients to JPMC.  *See* JPMC Ex. 70 at 386:14–17) ("I don't think [Epstein] referred clients to the bank.  I met clients through him, but I don't think he was making a referral.").  *See also* JPMC Ex. 72 at -701 ████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

287. *Boris Nikolic was a medical advisor, who ran a venture fund. Ex. 160 at 17:13-18:4.*

**JPMC Response**: Undisputed that Morris testified during his deposition that, "Boris Nikolic was a medical advisor. He was an entrepreneur, runs a venture fund." *See* USVI Ex. 160 at 17:22-25.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

288. *Boris Nikolic was "somehow related to Bill Gates." Ex. 160 at 17:13-18:4.*

**JPMC Response**: Undisputed that the cited deposition contains the quoted testimony. *See* USVI Ex. 160 at 18:2-4.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

289. *Epstein referred Larry Summers as a client to JPMorgan. Ex. 46 at 88:12-13.*

**JPMC Response**: Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

290. *Epstein referred Thomas Pritzker, chairman and CEO of the Pritzker Organization, as a client or for additional activities or funds to JPMorgan. Ex. 172 at Resp. 49; Ex. 46 at 310:19-311:4.*

**JPMC Response**: Disputed. Staley's testimony does not support the assertion that Epstein referred any clients to JPMC. *See* JPMC Ex. 70 at 386:14–17 ("I don't think [Epstein] referred clients to the bank. I met clients through him, but I don't think he was making a referral."). *See also* USVI Ex. 39 at Resp. 31.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

291.   *Epstein facilitated meetings between Staley and Ehud Barak.  Ex. 46 at 89:11-16.*

   **JPMC Response**: Disputed to the extent the cited testimony does not support the contention that Epstein facilitated meetings between Staley and Barak.  Staley testified that he met Barak.  USVI Ex. 46 at 89:11-16.

   Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

292.   *In January 2008, Epstein facilitated an introduction between JPMorgan executives and Ehud Barak, and Staley directed his assistant to arrange the meeting through Jamie Dimon's office. Ex. 173 at -152.*

   **JPMC Response**: Disputed.  JPMorgan Chase did not need Epstein to facilitate a meeting with Barak (or others).  As JPMC's CEO testified:  "I don't think Jeff Epstein ever arranged for me to meet with anybody, to my knowledge.  And I knew Ehud Barak. We did not need introductions to anybody."  JPMC Ex. 55 at 253:1-4.  Further disputed to the extent that USVI contends that there was an introduction through Epstein or that he facilitated a meeting between JPMC executives and Mr. Barak.  Otherwise, undisputed.

   Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

293.   *Epstein facilitated meetings between Staley and Peter Mandelson.  Ex. 46 at 90:20-24.*

   **JPMC Response**: Undisputed that Staley testified that Epstein facilitated meetings between Staley and Peter Mandelson.  USVI Ex. 46 at 90:20-24.  Disputed as to materiality in light of the fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19.

   Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

294.   *Lord Peter Mandelson was a senior member of the British Government.  Ex. 144 at -009.*

   **JPMC Response**: Undisputed that the cited document states that Lord Peter Mandelson is a "senior member of the British Government."  Disputed as to materiality in light of the

fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

295.   *On June 5, 2009, Epstein wrote to Staley, "well , [sic] for all intends [sic] and purposes peter mandelson is now deputy prime minister." Ex. 174 at -959; Ex. 144 at -009; Ex. 175 at 6.*

**JPMC Response**: Undisputed that the cited document contains the quoted language. Disputed as to materiality in light of the fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

296.   *On June 17, 2009, Epstein wrote to Staley, "peter will be staying at 71 st over weekend, do you want to organize either you, or you and Jamie,, [sic] quietly,, [sic] up to you." Ex. 176 at -005; Ex. 144 at -009; Ex. 175 at 6.*

**JPMC Response**: Undisputed that the cited document contains the quoted language. Disputed as to materiality in light of the fact that Epstein did not refer Mandelson to the Private Bank. *See* JPMC Ex. 62 at Resp. 19 .

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

297.   *In January 2009, Epstein wrote to Staley, "david gergen is coming to see me today.. [sic] we should talk before twelve." Ex. 177 at -763; Ex. 144 at -006; Ex. 175 at 4.*

**JPMC Response**: Undisputed that the cited document contains the quoted language.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

298.   *David Gergen is a former adviser to Presidents Nixon, Ford, Reagan, and Clinton. Ex. 144 at -006.*

**JPMC Response**: Undisputed that the cited document states, "David Gergen is the name of a former adviser to Presidents Nixon, Ford, Reagan and Clinton through 1994."  USVI Ex. 144 at -006.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

299.    *Epstein facilitated meetings between JPMorgan employees and Prince Andrew.  Ex. 46 at 96:13-16.*

**JPMC Response**: Undisputed that Staley testified, "[y]es" when asked, "[b]ut Jeffrey Epstein at least facilitated meetings between persons working at the bank and Prince Andrew; is that fair?"  USVI Ex. 46 at 96:13-16.  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73 at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

300.    *On April 15, 2010, Epstein wrote to Prince Andrew the Duke of York,* ███████████ *, "jes staley will be in London on thurs the 22.. [sic] i think you should meet if you are in town.. [sic]." Ex. 178 at -534; Ex. 144 at -011; Ex. 175 at 6.*

**JPMC Response**:  Disputed to the extent USVI misstates the quoted document.  Epstein's email to Prince Andrew states "london," not "London." *See* USVI Ex. 178 at -534. Otherwise, undisputed that the cited document contains the quoted text.  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23 ; JPMC Ex. 73 at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

301.    *On May 18, 2010, Epstein wrote to Staley, "anadrew [sic] will try to see you on your trip to london." Ex. 179 at -970; Ex. 144 at -011; Ex. 175 at 6.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23 (JPMC Response to USVI RFA No. 23); JPMC Ex. 73 at Resp. 36.

██████████████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

302.   *On September 2, 2010, Lesley Groff wrote to Epstein, "Jes Staley's office called saying last night Jes met up with Prince Andrew and Tim Collins." Ex. 180 at -703; Ex. 144 at -011; Ex. 175 at 7.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank. *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73 at Resp. 36.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

303.   ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████   *Ex. 181 at -071.*   ████

████████████████████████. *Id.*   ████████████████████████. *Id.*

> **JPMC Response**:  ████████████████████████████████
> ██████████████  *. See* USVI Ex. 181 at -
> 071. Otherwise, undisputed that the cited email contains the quoted text. Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank. *See* JPMC Ex. 62 at Resp. 23 ; JPMC Ex. 73at Resp. 36.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

304.   *On December 22, 2010, Prince Andrew wrote to Staley, "Wishing you a very happy Christmas and New Year. Sorry to have missed you this week. Hope to catch up sometime after the New Year. I will be at Davos as usual." Ex. 182 at -808; Ex. 144 at -011; Ex. 175 at 7.*

**JPMC Response**:  Disputed to the extent USVI misstates the quoted document, which fails to use ellipses between each sentence contained in the quote. *See* USVI Ex. 182 at -808.  Otherwise, undisputed that the cited document contains the quoted text.  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73 at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

305.   *In November 2013, Prince Andrew hosted Jamie Dimon for dinner and performances at Buckingham Palace.  Ex. 183 at -462-63.*

      **JPMC Response**: Undisputed that the Financial Times reported that Prince Andrew hosted an event in November 2013 that "had a guestlist that included up to 100 corporate and political heavyweights, ranging from Kofi Annan, the former UN secretary-general, to Indian industrialist Ratan Tata."  *See* USVI Ex. 183 at -462-63.  Disputed to the extent the document does not suggest there was a connection between this event and Jeffrey Epstein.  In fact, the document states that David Mayhew, a UK financier and adviser to JPMC at the time, was "[k]ey to organising the night."  JPMC Ex. 74).  Disputed as to materiality in light of the fact that Epstein did not refer Prince Andrew to the Private Bank.  *See* JPMC Ex. 62 at Resp. 23; JPMC Ex. 73at Resp. 36.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

306.   *Epstein facilitated meetings between Staley and Bill Gates.  Ex. 46 at 92:20-23.*

      **JPMC Response**: Disputed to the extent the underlying fact, which is supported only by Staley's deposition testimony, requires a credibility determination.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

307.   *Epstein introduced his JPMorgan banker (Paul Morris) to Andrew Farkas.  Ex. 160 at 15:23-17:12.*

      **JPMC Response**:  Undisputed that Morris testified that Epstein introduced him to Farkas.  Disputed as to materiality in light of the fact that Farkas did not become Morris's client, USVI Ex. 160 at 16:22-24, and Epstein did not refer Farkas to the Private Bank.  *See* JPMC Ex. 62 at Resp. 13; JPMC Ex. 73 at Resp. 28.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

308.    *Andrew Farkas is a major real estate investor who founded Island Capital Group.  Ex. 144 at -006.*

> **JPMC Response**:  Undisputed that the cited document states "Andrew Farkas is a major real estate investor who founded Island Capital Group."  *See* USVI Ex. 144 at -006.  Disputed as to materiality in light of the fact that Farkas did not become Morris's client, USVI Ex. 160 at 16:22-24, and Epstein did not refer Farkas to the Private Bank.  *See* JPMC Ex. 62 at Resp. 13; JPMC Ex. 73 at Resp. 28.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

309.    *Epstein introduced JPMorgan to David Mitchell, a real estate developer.  Ex. 160 at 14:20-15:5.*

> **JPMC Response**: Undisputed that Morris testified that Epstein introduced him to Mitchell.  USVI Ex. 160 at 14:20-15:2.  Disputed as to materiality in light of the fact that Mitchell did not become Morris's client.  USVI Ex. 160 at 15:3-5.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

310.    *Epstein referred Robert Lee Burch II, former CEO of Jonathan Engineered Solutions and member of A.W. Jones' advisory board, as a client to JPMorgan.  Ex. 184 at -986; Ex. 39 at Resp. 29.*

> **JPMC Response**: Undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

311.    *In 2003, Epstein's JPMorgan Private Banker (Casey) noted that Epstein "helped us source several managers, including Glenn Dubin and Steve Saltzman."  Ex. 185 at -893.*

██████████████████████████████████████████████████████

**JPMC Response**:  Disputed to the extent USVI misstates the cited document.  The cited document was not written by Mary Casey and states "Glen Dubin and Steve Salzman," not "Glenn Dubin and Steve Saltzman."  *See* USVI Ex. 185 at -893.  Otherwise, undisputed that the cited document contains the quoted text.  Disputed that Epstein did in fact refer Saltzman to the Private Bank.  *See* JPMC Ex. 62 at Resp. 30; JPMC Ex. 73 at Resp. 48.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

312.  ██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████   *Ex.*

*186 at -184_R.*

**JPMC Response**:  ████████████████████████████████

████████████████   *See* JPMC Ex. 62 at Resp. 12; JPMC Ex. 73 at Resp. 27.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

313.  ██████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████   *Ex. 187 at -559.*

**JPMC Response**:  Undisputed that cited document contains the quoted text.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

314.  ██████████████████████████████████████████████████

██████████████████████.   *Ex. 188 at -001-003; Ex. 189 at -008.*

██████████████████████████████████████████████████

**JPMC Response**: ████████████████████████████ USVI Ex. 188 at -001-003; USVI Ex. 189 at -008.  Disputed as to materiality in light of the fact that Epstein did not refer Brin or Page to the Private Bank.  *See* JPMC Ex. 62 at Resps. 17, 18; JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

315.  *Sergey Brin became a client of JPMorgan's San Francisco Private Bank in 2004.  Ex. 190 at -710.*

**JPMC Response**: Undisputed that Brin became a client of the Private Bank in 2004. Disputed as to the inference that Epstein referred Brin.  *See* JPMC Ex. 62 at Resp. 18; JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

316.  *Staley referred Brin to Robert Keller, JPMorgan Banker/Managing Director in San Francisco.  Ex. 189 at -001; Ex. 190 at -709.*

**JPMC Response**: Undisputed that Brin was referred to Keller by Staley.  Disputed as to the inference that Epstein referred Brin.  *See* JPMC Ex. 62 at Resp. 18; JPMC Ex. 71 at 53:3-18 .

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

317.  ████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████ *Ex. 191 at -185.*

**JPMC Response**: ████████████████████████████████████████ USVI Ex. 191 at -185. ████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

318. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ *Ex. 192 at -515.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 192 at -515.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

319. ████████████████████████████████████████████

████████████████████████████████████████████

████ *Ex. 193 at -516.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 193 at -516.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

320. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Ex. 194 at -517.*

**JPMC Response**: ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

USVI Ex. 194 at -517.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

321.

*Ex. 195 at -519.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 195 at -519.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

322.   *On October 26, 2006, Ann Borowiec emailed Jes Staley, "Catherine spoke to me about the need to have a NY team for Jeffrey Epstein, as the advisor to the Google founders."  Ex. 196 at -356.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 196 at -356.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

323.

180

█████████████████████████████████████

*the Times since I knew he was a client.  I had it on my desk and gave it to Pooja."  Ex. 197 at -*

*520.*

> **JPMC Response**:  Disputed to the extent USVI misstates the document.  Borowiec's
> email states "Which," not "which."  USVI Ex. 197 at -520.  Otherwise, undisputed.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
> 170-175.

324.  ████████████████████████████████████████████

████████████████████████████████  *Ex. 198 at -522.*

> **JPMC Response**: ████████████████████████████████
> ███████  USVI Ex. 198 at -522.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
> 170-175.

325.  ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████  *Ex. 199 at -590.*

> **JPMC Response**: ████████████████████████████████
> ████████████████████████████████████████████
> ████████████████████████████████████████████
> ██████████  SVI Ex. 199 at -590.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
> 170-175.

██████████████████████████████████    ██████████████

326.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████    *Ex. 200 at -423.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 200 at -423.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

327.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████    *Ex. 201 at -152.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 201 at -152.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

328.  ████████████████████████████████████████████

████████████████████████████*Ex. 202 at -668.*████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████*Ex. 203 at -670.*

**JPMC Response**: Undisputed that the cited documents contain the quoted text.  USVI Ex. 203 at -670.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.



329. ████████████████████████████████████

*Ex. 204 at -671.*

**JPMC Response:**

USVI Ex. 204 at -671.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

330. ████████████████████████████████████

*Ex. 205 at -720.*

**JPMC Response:**

USVI Ex. 205 at -720.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

331. *In July 2014, JPMorgan noted "[t]he overall Brin relationship is one of the largest in the Private Bank, of +$4BN." Ex. 190 at -710.*

[redacted]

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 190 at -710.  Disputed as to the inference that Epstein referred Brin.  *See* JPMC Ex. 62 at Resp. 18; JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

332.   *Brin and the CEO, CFO, and CIO of his family office, Bayshore Global, met with Mary*

*Erdoes, Kelly Coffey, John Duffy and other JPMorgan regional executives.  Ex. 190 at -709.*

**JPMC Response**: Undisputed that the cited document states, "Sergey, as well as members of his family office: CEO, CFO and CIO have met with Mary Erdoes, Kelly Coffey, John Duffy and other regional executives."  USVI Ex. 190 at -709.  Disputed as to the inference that Epstein referred Brin.  *See* JPMC Ex. 62 at Resp. 18; JPMC Ex. 71 at 53:3-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

333.   [redacted]

[redacted]   *Ex. 61 at -033.*

**JPMC Response**:   [redacted]

[redacted]   SVI
Ex. 61 at -033.  Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan.  *See* JPMC Ex. 62 at Resp. 26

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

334.   [redacted]

[redacted]

[redacted]   *Ex. 61 at -033.*

**JPMC Response**:   [redacted]   USVI
Ex. 61 at -033.  Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan.  *See* JPMC Ex. 62 at Resp. 26.

184



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

335.

*Ex. 206 at -037; Ex. 207 at 1.*

*Ex. 206 at -037.*

**JPMC Response**: Disputed to the extent USVI omits text from the cited quote. *See* USVI Ex. 206 at -037. Otherwise, undisputed. Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan. *See* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

336.   *Sultan Ahmed bin Sulayem, was a senior United Arab Emirates official involved in ownership of the Dubai Ports. Ex. 144 at -009.*

**JPMC Response**: Undisputed that the cited document states, "Sultan Ahmed bin Sulayem . . . is a senior UAE official involved in ownership of the Dubai Ports." USVI Ex. 144 at -009. Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan. *See* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

337.   *On December 7, 2009, Epstein wrote to Staley, "if you can have a one on one off the record with sultan , [sic] he will meet you." Ex. 208 at -724; Ex. 144 at -012; Ex. 175 at 7.*

**JPMC Response**: Undisputed that the cited documents contain the quoted text. USVI Ex. 208 at -724; USVI Ex. 144 at -012; USVI Ex. 175 at 7. Disputed as to materiality in

light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan. *See* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

338.   *On December 8, 2009, Epstein wrote to Staley, "no to china /ports yet.. [sic] sultan will*

*meet you privately to give you guidance. . . ." Ex. 209 at -897; Ex. 144 at -012; Ex. 175 at 7.*

    **JPMC Response**:  Undisputed that the cited documents contain the quoted text.  USVI Ex. 209 at -897; USVI Ex. 144 at -012; USVI Ex 175 at 7.  Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan. *See* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

339.   *On December 8, 2009, Epstein wrote to Sultan bin Sulayem, copying Staley, "sultan , [sic]*

*jes is free thurs,, [sic] from 5-10 p.m. where and when,, [sic] only the two of you please." Ex. 210*

*at -727; Ex. 144 at -012; Ex. 175 at 7.*

    **JPMC Response**:  Undisputed that the cited documents contain the quoted text.  USVI Ex. 210 at -727; USVI Ex. 144 at -012; USVI Ex. 175 at 7.  Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan. *See* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

340.   *On December 9, 2009, Epstein wrote to Staley, "sultan is laying the groundwork for you*

*to establish a serious presence.. [sic] jpm reputation in the region is poor." Ex. 211 at -729; Ex.*

*144 at -012; Ex. 175 at 7.*

    **JPMC Response**:  Undisputed that the cited documents contain the quoted text.  USVI Ex. 144 at -012; USVI Ex. 175 at 7.  Disputed as to materiality in light of the fact that Epstein did not refer Sultan Ahmed Bin Sulayem as a client to JPMorgan. *See* JPMC Ex. 62 at Resp. 26.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

341.    *Epstein's client, Leon Black, was a customer of JPMorgan Private Bank. Ex. 39 at Resp. 192.; Ex. 212 at -010; Ex. 160 at 38:4-41:13.*

> **JPMC Response**: Undisputed that Leon Black was a customer of the Private Bank. Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan. *See* USVI Ex. 39 at Resp. 11.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

342.    *One of Epstein's JPMorgan Bankers testified, "Leon Black had a very significant net worth and he was a CEO of a large investment firm, and I looked at him as a priority prospect." Ex. 160 at 53:15-54:2.*

> **JPMC Response**:  Undisputed that Morris testified to the cited information.  USVI Ex. 160 at 53:15-54:2.  Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan. *See* USVI Ex. 39 at Resp. 11.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

343.    *Epstein occasionally brought opportunities to JPMorgan for them to "deepen" their relationship with Leon Black. Ex. 171 at 46:9-15.*

> **JPMC Response**:  Undisputed that Nelson testified to the cited information.  USVI Ex. 171 at 46:9-15.  Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan. *See* USVI Ex. 39 at Resp. 11.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

344.    *In July 2012, Epstein sought a loan through JPMorgan on behalf of Leon Black for an art purchase. Ex. 213 at -569; Ex. 160 at 173:8-21.*

**JPMC Response**: Undisputed that the cited email from Duffy to Erdoes discusses a loan "Jeffrey is pursuing […] on Leon's behalf," USVI Ex. 213 at -569, and that Morris testified that Epstein wanted to bring him on an art loan for Leon Black, USVI Ex. 160 at 173:8-21. Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan. *See* USVI Ex. 39 at Resp. 11.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

345.

*Ex. 214 at -112.*

**JPMC Response**:



USVI Ex. 214 at -112.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

346.

*Ex. 215 at -892.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 215 at -892. Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan. *See* USVI Ex. 39 at Resp. 11.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.



347.

*Ex. 216 at -912.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 216 at -912.  Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan.  *See* USVI Ex. 39 at Resp. 11.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

348.

*Ex. 217 at -423.*

**JPMC Response**:  Disputed to the extent USVI omits text from the cited quote.

USVI Ex. 217 at -423.  Otherwise, undisputed.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

349.

*Ex. 218 at -646.*

**JPMC Response**:  Undisputed that the cited document contains the quoted text.  USVI Ex. 218 at -646.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

189

███████████████████████████████████████████

350.  *On March 23, 2011, Roy Navon wrote Jacob Frenkel and Staley, "Against all odds, we have been granted a meeting with Prime Minister Netanyahu." Staley forwarded the email from Navon to Epstein and said, "Thanks." Epstein responded to Staley, "surprisee [sic] surprise." Ex. 219 at -841; Ex. 144 at -008; Ex. 175 at 6.*

> **JPMC Response**:  Disputed to the extent USVI misstates the cited documents.  Epstein's response to Staley states, "surprisee [sic] suprise [sic]."  USVI Ex. 219 at -841. Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

351.  *On April 10, 2011, Epstein wrote to Staley, "I will be back tomorow. [sic] Karim Wade son of the senegalese president and one of the most important players in africa, will be at the house this week, i think you will enjoy him."  Ex. 220 at -260; Ex. 144 at -008; Ex. 175 at 6.*

> **JPMC Response**: Undisputed that the cited documents contain the quoted text.  USVI Ex. 220 at -260; USVI Ex. 144 at -008; USVI Ex. 175 at 6.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

352.  *On September 16, 2011, Epstein wrote to Staley, "co founder of facebook , [sic] and founder of spotify, sean parker , [sic] will be at the house for dinner on sunday —come."  Ex. 221 at -368; Ex. 144 at -009; Ex. 175 at 6.*

> **JPMC Response**: Undisputed that the cited documents contain the quoted text.  USVI Ex. 221 at -368; USVI Ex. 144 at -009; USVI Ex. 175 at 6.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

353.  ███████████████████████████████████████████

████████████████████████   *Ex. 222 at Resp. 5.*

██████████████████████████████        ██████████████████████

**JPMC Response**: ████████████████████████████████████████
█████████████████████████████████████████

USVI Ex. 222 at Resp. 5.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

354.   *In August 2013, after JPMorgan informed Epstein of the decision to exit him from the bank,*

*Duffy and Erdoes decided it was okay to continue working with Epstein as long as it was through*

*his client accounts.  Ex. 212 at -010; Ex. 171 at 174:19-175:23.*

> **JPMC Response**:  Disputed.  Erdoes and Duffy selectively permitted further engagement where the client directed that JPMC interact with Epstein, but Epstein could not have decision making authority over the accounts. *See* JPMC Ex. 75. *See also* JPMC Ex. 61 at 302:19-303:11  ("[W]e can't stop someone from being affiliated with somebody else. But we wouldn't be taking direction from [Epstein] . . . ."); *see also* JPMC Ex. 76 at 175:2-177:11; JPMC Ex. 77 at 382:23-383:9.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

355.   *JPMorgan continued to work with Epstein on accounts for Leon Black, CEO of Apollo, a*

*private equity group.  Ex. 223 at -344; Ex. 224 at -434-35; Ex. 225 at -511; Ex. 226 at -218-19;*

*Ex. 171 at 45:8-13.*

> **JPMC Response**: Disputed to the extent the USVI mischaracterizes JPMorgan as "work[ing] with Epstein on accounts for Leon Black."  Disputed to the extent the cited documents do not support the assertion that JPMorgan "continued to work with Epstein on accounts for Leon Black."  In the cited deposition testimony, Nelson is asked, "[w]as there ever a point in time where Jeffrey Epstein was communicating with you on behalf of Leon Black related to any investment vehicles?"  Justin Nelson replies, "I don't remember."  USVI Ex. 171 at 45:4-8.  *See also* JPMC Response to ¶ 354, *supra*.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

356.   *Duffy gave Epstein's JPMorgan Banker (Nelson) permission to continue a relationship*

*with Epstein as a potential source of referrals.  Ex. 171 at 172:2-175:9.*

**JPMC Response**: Undisputed that during his deposition, Justin Nelson responded, "yes" when asked if, after Jeffrey Epstein had been terminated, Nelson got "the permission of John Duffy to continue a relationship with Jeffrey Epstein where he will be a potential source of future referrals?" USVI Ex. 171 at 172:2-175:9. Disputed as to the scope of the relationship implied by USVI's proposition. *See* JPMC Response to ¶ 354.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

357. *Nelson maintained a relationship with Epstein after he was terminated as a client. Ex. 171 at 43:6-24.*

**JPMC Response**: Undisputed as to the cited deposition testimony. USVI Ex. 171 at 43:6-24.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

358. *Nelson met with Epstein 8 to10 times after Epstein was terminated. Ex. 171 at 177:12-18.*

**JPMC Response**: Undisputed as to the cited deposition testimony. USVI Ex. 171 at 177:12-18.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

359. *JPMorgan admits that Mary Casey met with Epstein at his Manhattan townhouse two or three times between 2000 and before Epstein's arrest in 2006. JPMorgan admits that Mary Casey also met with Epstein at his Manhattan townhouse once in 2011 and once in the summer of 2013. Ex. 227 at Resp. 21.*

**JPMC Response**: Disputed to the extent the USVI misstates the cited document. Response 21 states that Erdoes, not Casey, "met with Epstein twice at his Manhattan townhouse in 2011 and in the Summer of 2013." USVI Ex. 227 at Resp. 21. Undisputed that the cited document states that Mary Casey met with Epstein "at his Manhattan townhouse on two or three occasions between 2000 and prior to [Epstein's] arrest in 2006." *Id.*



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

360.

*Ex. 228 at -644.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. Disputed as to materiality in light of the fact that Epstein did not refer Leon Black as a client to JPMorgan. *See* USVI Ex. 39 at Resp. 11.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

361.

*Ex. 229 at -300.*

**JPMC Response**:  Undisputed that cited document contains quoted text.  USVI Ex. 229 at -300.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

362.

*Ex. 230 at -592.*

**JPMC Response**:  Undisputed that cited document contains quoted text.  USVI Ex. 230 at -592.

███████████████████████████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

363. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Ex. 231 at -975.*

> **JPMC Response**:  Undisputed that cited document contains quoted text.  USVI Ex. 231 at -975.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

364. ████████████████████████████████████████

████████████████████████████████████████

██████████████████████████ *Ex. 232 at -177.*

> **JPMC Response**: ████████████████████████████
> ████████████████████████████████████████
> ████████████████████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

365. ████████████████████████████████████████

███████████████████████████ *Ex 233 at -618.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 233 at -618.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

██████████████████████████████████████        ████████████████

366.    *JPMorgan admits Epstein was involved in the establishment of a customer relationship*

*with Kathryn Ruemmler.  Ex. 234 at Resp. 3.*

> **JPMC Response**: Undisputed that the cited document states that "Mr. Epstein had some
> involvement in the establishment of customer relationships between JPMC's private bank
> and Ghislaine Maxwell and Kathryn Ruemmler."  USVI Ex. 234 at Resp. 3.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
> 170-175.

367.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████    *Ex. 235 at -394.*

> **JPMC Response**: ████████████████████████████████████████
> █████████████████████████████    SVI Ex. 235 at -394.
> ███████████████████████████████████████████████████████
> ███████████████████████████████████████████████████████
> ███████████████████████████████████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
> 170-175.

368.    ████████████████████████████████████████████████

████████████████████████████████████████████████████    *Ex.*

*236 at -392.*

> **JPMC Response**: ████████████████████████████████    *See*
> USVI Ex. 236 at -392. ████████████████████████
> █████████████████████████████████    *Id.* ███████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶
> 170-175.

369. ███████████████████████████████████████████████

████████████ *Ex. 237 at 467.*

> **JPMC Response**: ████████████████████████████████████████
> ██████████████████████████████████████████████ USVI Ex. 237 at -467.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
> 170-175.

370. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████ *Ex. 238 at -063.*

> **JPMC Response**: ████████████████████████████████████████
> ██████████████████████████████████████ USVI Ex. 238 at -063.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
> 170-175.

371. *Epstein was close friends with Glenn Dubin, the billionaire co-founder of Highbridge, and*

*godfather to one of Dubin's children. Ex. 239 ¶ 3; Ex. 240 at -164; Ex. 123 at 173:19-74:1.*

> **JPMC Response**: Disputed to the extent the USVI inserts the word "close" to describe
> the relationship. Undisputed that in the cited deposition testimony, Erdoes states, "I
> understood Mr. Epstein to be -- to have had a past relationship with Mr. Dubin's wife.
> And I understood that Mr. Epstein was the godfather of one of the Dubin -- the oldest of
> the Dubin children. That was my understanding." USVI Ex. 123 at 73:19-74:1.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
> 170-175.

372. *Epstein advised JPMorgan regarding the acquisition. Ex. 241 at 590; Ex. 242 at -149-50.*

> **JPMC Response**: Disputed to the extent the USVI mischaracterizes Epstein's role
> regarding the acquisition. On June 16, 2004, von Moltke emails Staley and Brigstocke,
> copying other JPMC employees. The email summarizes observations from a meeting the

previous day with Highbridge.  One of the items under "Next steps" states, "We continue to be concerned about the role Jeffrey Epstein is or is not playing.  One concern that we have is that Jeffrey has been educating Glenn & Henry about our structure and valuation thoughts behind our backs such that their expectations for yesterday's were higher.  This is clearly not in our interest."  USVI Ex. 242 at -150.  This information does not support the proposition that Epstein "advised" JPMC.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

373.  *Epstein also advised Highbridge regarding the acquisition.  Ex. 241 at -590; Ex. 242 at -149-50*

**JPMC Response**: Undisputed that the February 15, 2005 email sent from Shepherd to Staley and Brigstocke, copying Cook, sets out a "strawman proposal [sic] for the economics of a consulting arrangement at Highbridge for Jeff Epstein."  USVI Ex. 241 at -590.  Disputed as to the extent the USVI characterizes this proposal as representative of any final advising arrangement between Highbridge and Epstein or Epstein and JPMC.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

374.  *On June 16, 2004, James Von Moltke emailed Jes Staley and David Brigstocke with the subject line, "Thoughts on the 6/15/04 meeting with Highbridge," stating, "The good news is that we did not leave any money on the table and that, based on the 9-11x multiple range we discussed with Dimon et al . . . They should be encouraged to go ahead with the Dimon and Coulter lunch. . . . This would be a good part of a follow-up discussion, ideally with you and prior to the Dimon/Coulter meeting.  We continue to be concerned about the role Jeffrey Epstein is or is not playing. One concern that we have is that Jeffrey has been educating Glenn & Henry about our structure and valuation thoughts. " Ex. 242 at -149-50.*

**JPMC Response**: Undisputed that the cited document contains the quoted text although the underlying document is formatted as a series of distinct bullet points and not as continuous text, as this paragraph presents it.  USVI Ex. 242 at -149-50.  Disputed to the extent the cited document is selectively quoted and without appropriate context.  For instance, the language that USVI quotes suggests Highbridge "should be encouraged to

███████████████████████████████████     ████████████████████████

go ahead with the Dimon and Coulter lunch" *because of* the "9-11x multiple range we discussed with Dimon et al."  These statements, however, appear in different, unrelated sections of von Moltke's email.  USVI Ex. 249 at -50 (emphasis added).

Further disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

375.    *On January 14, 2004, the New York Times reported that JPMorgan had agreed to acquire*

*Bank One and stated:  "The combined company will be headed by William B. Harrison, 60, who*

*is currently the chairman and chief executive of J.P. Morgan Chase. James Dimon, 47, the*

*chairman and chief executive of Bank One, will become president and chief operating officer of*

*the combined company. He is to succeed Mr. Harrison as chief executive in 2006, although Mr.*

*Harrison will remain as chairman."  Ex. 243 at 1.*

**JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 243 at 1.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.  Further contended that the cited material cannot be presented at trial in admissible form.

376.    ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*Ex. 244 at -985, -987, -996, -998.*

**JPMC Response**: ████████████████████████████████████

████████████████████████████████████████     USVI Ex.

244 at -985, -987, -996, -998.



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

377.

*Ex. 245 at -780.*

**JPMC Response**:

SVI Ex. 245 at -780.

USVI Ex. 245 at 780.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

378.  *JPMorgan admits that Dubin & Swieca Holdings, Inc. paid Financial Trust Company, Inc. a fee related to JPMorgan's acquisition of a majority interest in Highbridge Capital Management in 2004.  Ex. 39 at Resp. 9.*

**JPMC Response**: Undisputed that Dubin & Swieca Holdings, Inc. paid Financial Trust Company, Inc. a fee related to JPMorgan's acquisition of a majority interest in Highbridge Capital Management in 2004.  USVI Ex. 39 at Resp. 9.

███████████████████████████████████   ███████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

379. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Ex.*

*246 at -246-47.*

> **JPMC Response**: ████████████████████████████████████
>
> █████████████████████████████████████████████████ USVI Ex. 246
>
> at -246-47.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

380. *Highbridge managed $7 billion in assets at the time JPMorgan acquired the majority interest. Ex. 247 at 1.*

> **JPMC Response**: Undisputed that the cited document, a New York Times article dated September 28, 2004, states that "Highbridge manages $7 billion in assets." USVI Ex. 247 at 1.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

381. *On June 11, 2009, JPMorgan completed its purchase of Highbridge and touted it as "one of the largest and most significant strategic alliances in the hedge fund industry." Ex. 248 at 1.*

> **JPMC Response**: Disputed as to USVI's characterization that the cited document "touted" anything. Undisputed that the cited document, dated June 11, 2009, contains the quoted text. USVI Ex. 248 at 1.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

382.   *At the October 2006 Rapid Response meeting, the Private Bank imposed a condition on Epstein's accounts—he could remain a "banking" but not an investment client. Ex. 76 at -953.*

> **JPMC Response**: Disputed.  USVI misstates the conclusion of the meeting and the cited document.  The cited document does not support the conclusion that the Private Bank imposed a condition that Epstein could not remain an investment client.  The cited Rapid Response Team memorandum states that "it was decided that we will keep Mr. Epstein solely as a banking client and on a 'reactive', client service basis.  We will not proactively solicit new investment business from him."  USVI Ex. 76 at -953.  JPMC decided that it would not "proactively solicit new investment business" from Epstein, not that Epstein could not be an investment client.  *Id.*; *see also* JPMC Ex. 71 at 66:17-67:12

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

383.   *At the time, Epstein's brokerage business was at Bear Stearns, not JPMorgan.  Ex. 124 at - 175; Ex. 249 at -787.*

> **JPMC Response**: Undisputed that the cited documents support that Epstein had a brokerage relationship with Bear Stearns.  USVI Ex. 124 at -175; USVI Ex. 249 at -787.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bearn Stearns benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

384.   *JPMorgan considered him "problematic" from an investment standpoint.  Ex. 250 at -254; Ex. 32 at 97:3-100:1.*

> **JPMC Response**: Undisputed that the cited document and testimony support that JPMC considered Epstein "problematic" from an investment standpoint.  USVI Ex. 250 at -254; USVI Ex. 32 at 97:30-100:1.  Disputed that this fact is at all material to the issues of this case.  The cited email shows that JPMC employees are discussing Epstein's "problematic" behavior in the context of his failure to pay fees and because "every transaction becomes problematic."  USVI Ex. 250 at -254.  This discussion has nothing to do with Epstein's arrest in 2006.  Ms. Casey testified that the cited email related to "the challenges of covering Jeffrey because he was a difficult investment client" and that the reference to Epstein being "problematic" was in connection with "an investment-related concern."  USVI Ex. 32 at 98:16-23.

███████████████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

385.   ██████████████████████████   *Ex. 167 at -654. By 2011, Epstein was the Private*

*Bank's investment arm's "biggest revenue producer."  Ex. 168 at -977.*



Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

386.   ███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████   *Ex. 251 at -223.*

**JPMC Response**: ███████████████████████ USVI Ex. 251 at -223.██████████

████████████████████████████████████████ *d.*

███████████████████████████████████ *See*

JPMC Response to ¶ 138, *supra*.

███████████████████████████████     ████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

387.    *On March 16, 2008, JPMorgan purchased Bear Stearns. Ex. 122 at 1.*

**JPMC Response**: Undisputed that on March 16, 2008, JPMorgan Chase and Co. purchased Bear Stearns.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

388.    *The purchase kept Bear Stearns, which was heavily in mortgage-backed securities investments, from bankruptcy following the housing market crash that led to the 2008 Great Recession. Ex. 122 at 1.*

**JPMC Response**: Undisputed that the cited document provides the cited information. USVI Ex. 122 at 1. Disputed that the cited document is competent evidence on the impact of the purchase of Bear Stearns or what led to Bear Stearns' bankruptcy.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

389.    ████████████████████████████████████████████████████████████

████████████████████████████████     *Ex. 252 at 1-2.*

**JPMC Response**: ████████████████████████████████████████

███████████████████████████████████████     USVI Ex. 252 at 1-2. ████

*See* JPMC Ex. 79 at 272:3-8 (Q: "And it's also consistent that JPMorgan retained Jeffrey Epstein as a client to deal with the Bear Stearns litigation that Jeffrey Epstein had, correct?" A: "I don't know that."); *id.* at 275:7-22 (explaining reasons JPMC retained Epstein around this time as "Mr. Staley felt very strongly that Mr. Epstein had paid his debt to society, had served his time, and was someone that a lot of other people trusted. I think Mr. Staley didn't agree with the notion that we shouldn't have him as a client.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175. Further contended that the cited material cannot be presented at trial in admissible form.

203

390.    *In August 2009, Epstein sued Bear Stearns for "fraudulently overstat[ing] the value of*

*Bear Stearns' mortgages, mortgage-backed and asset-backed securities and other derivative*

*financial instruments, the adequacy of its liquidity and capital reserves, and the quality of Bear*

*Stearns' risk management." Ex. 253 ¶ 15.*

> **JPMC Response**: Undisputed that on August 5, 2009, Epstein's entity, Financial Trust
> Company, Inc., filed a complaint against The Bear Stearns Companies Inc. and the
> complaint contains the quoted language.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or
> Bear Stearns benefited from participating in Epstein's alleged sex-trafficking venture.
> *See* CSMF ¶¶ 170-175.  Further contended that the cited material cannot be presented at
> trial in admissible form.

391.    *On July 19, 2011, JPMorgan offered Epstein a proposal to settle his High Grade Fund and*

*Bear Stearns claims together for $21 million. Ex. 254 at -561. The following day, Cutler*

*responded, "This is not an honorable person in any way. He should not be a client." Id.*

> **JPMC Response**: Disputed.  USVI misstates the cited document.  The document does
> not support the contention that "JPMorgan offered Epstein a proposal to settle" his claims
> for $21 million.  Rather, the cited document shows that JPMC responded *to Epstein's*
> *proposal* to settle his claims for $21 million.  *See* USVI Ex. 254 at -561.  On July 19,
> 2011, James Condren wrote to Staley, Erdoes, Cutler, and Shenker, "I just conveyed to
> Mr. Epstein *our response to his proposal* to settle his High Grade Fund and Bear Stock
> claims together for $21 million." *Id.* (emphasis added).  Undisputed that on July 20,
> 2011, Cutler responded to Condren's email and Cutler's response contains the quoted
> text.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture.

392.    *On July 21, 2011, Cutler wrote to Erdoes regarding a settlement offer to Epstein, "I would*

*like to put it and HIM behind us. Not a person we should do business with - period." Ex. 255 at -*

*958_R.*

> **JPMC Response**:  Undisputed that Cutler emailed Erdoes on July 21, 2011 and that
> email contains the quoted text.  USVI Ex. 255 at -958_R.  Disputed to the extent USVI
> contends that this fact supports an inference this litigation had any relevance to JPMC's

██████████████████████████████████

retention or exit decisions with respect to Epstein. *See* JPMC Ex. 79 at 272:3-8 (Q: "And it's also consistent that JPMorgan retained Jeffrey Epstein as a client to deal with the Bear Stearns litigation that Jeffrey Epstein had, correct?" A: "I don't know that."); *id.* at 275:7-22 (explaining reasons JPMC retained Epstein around this time as "Mr. Staley felt very strongly that Mr. Epstein had paid his debt to society, had served his time, and was someone that a lot of other people trusted. I think Mr. Staley didn't agree with the notion that we shouldn't have him as a client.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

393.    *On August 4, 2011, JPMorgan met for a fourth Rapid Response Meeting regarding Epstein and concluded that "Duffy to reach out to Jes Staley and advise that we exit while things are a bit settled." Ex. 256 at 31.*

**JPMC Response**: Undisputed that a Rapid Response meeting was held on August 4, 2011 and the cited document contains the quoted text. USVI Ex. 256 at 31.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

394.    *On April 8, 2011, Nina Shenker emailed Kevin McCleerey with the subject, "Rapid Response." Shenker wrote, "[I]f you could break down between ddas, brokerage and fund holdings and others [sic] categories. So that we can understand the process for offboarding the account." Ex. 257 at -025. Kevin McCleerey responded with the attachment, "Rapid Response Team – Jeffrey Espstein [ sic ] 3r Mtg – Jan 2011 – March 2011 update-doc.zip." Employees were working to collect information to "understand the process for offboarding the account." Id. at -025.*

**JPMC Response**: Disputed. USVI misstates the cited document. Undisputed that on April 8, 2011, Shenker emails McCleerey and the email contains the quoted text. McCleerey does not, however, respond to Shenker with the cited attachment. Rather, McCleerey forwards Shenker's email to James Dalessio, attaching the file titled "Rapid Response Team - Jeffrey Espstein [sic] 3r Mtg - Jan 2011 - March 2011 update-doc.zip," and states "Lets [sic] discuss her request." USVI Ex. 257 at -025.

████████████████████████████████████████████

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

395.  *In July 2011, when Epstein approved the settlement, Nina Shenker, then GC to the Private Bank, wrote to Erdoes, "Steve [Cutler] at conclusion of JE approval [of Bear Stearns settlement], asked when we are offboarding JE. I reminded him that we have the other matter outstanding." Ex. 258 at -982; Ex. 99 at 268:12-272:24.*

> **JPMC Response**: Undisputed that Shenker emailed Erdoes on July 22, 2011 and that email contains the quoted language. USVI Ex. 258 at -982.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

396.  ████████████████████████████████████████████

████████████████████████████████████████ *Ex. 259 at -106.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 259 at -106.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

397.  ████████████████████████████████████████████

████████████████████████ *Ex. 252 at 1-2; Ex. 260 at -610.*

> **JPMC Response**: ████████████████████████████
> ████████████████████████████████████████████
> ████████████████████████████████ *See* Ex. JPMC Ex. 79 at 274:17-275:5 ("I also don't know that we were not off-boarding Mr. Epstein because of [the Highbridge] litigation or litigation claim."); *id.* at 273:1-15 ("We did not, also, offboard him once the Zwirn matter was resolved."); *id.* at 275:7-22 (explaining reasons JPMC retained Epstein around this time as "Mr. Staley felt very strongly that Mr. Epstein had paid his debt to society, had served his time, and was someone that a lot of other people trusted. I think Mr. Staley didn't agree with the notion that we shouldn't have him as a client.").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175. Further contended that the cited material cannot be presented at trial in admissible form.

398.

*Ex. 261 at -948_R.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 261 at -948_R.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

399.

*Ex. 262 at -561.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 262 at -561.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

400.

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 262 at -560.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

401.    *"The Talented Mr. Epstein" states: "in his early 20s [Epstein] got a job teaching physics and math at Dalton, the elite Manhattan private school. While there he began tutoring the son of Bear Stearns chairman Ace Greenberg and was friendly with a daughter of Greenberg's. Soon he went to Bear Stearns, where, under the mentorship of both Greenberg and current Bear Stearns C.E.O. James Cayne, he did well enough to become a limited partner—a rung beneath full partner." Ex. 49 at 5.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 49 at 6.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan or Bear Stearns benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.  Further contended that the cited material cannot be presented at trial in admissible form.

402.    *In August 2010, Alan "Ace" Greenberg, who was now at JPMorgan, wanted to continue to do business with Epstein so he went to Cutler for an exception to the felon policy.  Ex. 263 at 910-11.*

> **JPMC Response**: Undisputed that the cited email states that "Ace Greenberg wants to do business with [Epstein]" and Todd Cook asks, "Did Ace go to him for an exception to the felon policy," to which Melissa Getler states, "That's my understanding."  USVI Ex. 263 at -910-11.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

403.    *In his deposition, Jes Staley agreed that Greenberg was "a fairly important person" with "heft" at JPMorgan around 2010.  Ex. 46 at 173:13-24.*

> **JPMC Response**: Disputed to the extent USVI mischaracterizes Staley's testimony. *See* USVI Ex. 46 at 173:13-24.  Undisputed that Staley testified that "Greenberg was important." *Id.* at 173:23-24.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

████████████████████████████████████████████████████████

404.    *Beginning in 2011, Staley and Erdoes had "regular communication with Jeffrey Epstein relating to certain strategic initiatives and business proposals." Ex. 144 at -012; Ex. 175 at 1.*

> **JPMC Response**: Undisputed that the cited documents contain the quoted text. USVI Ex. 144 at -012; USVI Ex. 175 at 1.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

405.    ████████████████████████████████████████████████████

████████████████████████████████████ *Ex. 302 at -555-56; Ex. 303 at -548-49.*

> **JPMC Response**: ███████████████████████████████████████
> ████████████████████████████████████████████████████████
> USVI Ex. 302 at -548-49; USVI Ex. 303. ██████████████████
> ███████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

406.    *JPMorgan admits that Epstein and JPMorgan personnel discussed a potential donor advised fund relating to The Bill and Melinda Gates Foundation and Bill Gates. Ex. 39 at Resp. 14.*

> **JPMC Response**: Undisputed that Epstein and JPMorgan personnel discussed a potential donor advised fund relating to The Bill and Melinda Gates Foundation and Bill Gates. USVI Ex. 39 at Resp. 14.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

407.    *On February 6, 2011, Epstein wrote to Staley regarding a potential donor advised fund for The Bill and Melinda Gates Foundation, "you could tie it initially just to the gates program,, [sic] miinimum [sic] gift. 100 million. it could then be opend [sic] up later. IT will be the largest foundation in the world . . . . done right its [sic] 100 billion dollars in 2 years. . . . .Farming the*

[REDACTED]

*investments to a highbridge is no brainer. . . .It will be the most sort [sic] after board in the country." Ex. 264 at -591; Ex. 144 at -012; Ex. 175 at 7.*

> **JPMC Response**: Undisputed that the cited documents contain the quoted text. USVI Ex. 264 at -591; USVI Ex. 144 at -012; USVI Ex. 175 at 7.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

408.    *In August 2011, Epstein wrote to Staley and Erdoes regarding* [REDACTED]

*noting it will be a "very HIGH profile" opportunity and recommending it require a minimum $100 million donation. Ex. 265 at -652; Ex. 144 at -013; Ex. 175 at 7.*

> **JPMC Response**: Undisputed that Epstein emailed Staley and Erdoes on August 10, 2011 and wrote, "This will be very HIGH profile. I propose a minimum of 100 million donation." USVI Ex. 265 at -654.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

409.    [REDACTED]

[REDACTED] *Ex. 266 at -924.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 266 at -924.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

410.    [REDACTED]

[REDACTED] *Ex. 267 at -666.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 267 at -666.

███████████████████████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

411. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ *Ex. 268 at -028.*

**JPMC Response**: Undisputed that the cited document contains the quoted text. USVI Ex. 268 at -028.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

412. *JPMorgan admits it had communication with Epstein about a fee for Epstein in connection with a proposed donor advised fund. Ex. 39 at Resp. 15.*

**JPMC Response**: Undisputed that JPMC had communication with Epstein about a fee for Epstein in connection with a proposed donor advised fund. Disputed as to materiality in light of the fact that, as provided in the full cited response, the donor advised fund was never established and JPMC did not pay Epstein any such fee. *See* USVI Ex. 39 at Resp. 15.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶ 170-175.

413. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Ex. 269 at -931-32.*

> **JPMC Response**: ████████████████████████████████████
> ████████████████████████████████ USVI Ex. 269 at
> -931. ████████████████████████████████████
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
> 170-175.

414.   *On April 27, 2009, Epstein emailed Staley, "*████ *can meet have dinner lunch a weekend*
*[sic] with any of the following seth Lloyd mit quantum computing.. [sic] murray gell-man , santa-*
*fe institute quarks ,, [sic] brian greene Columbia -string theory,, [sic] leonard Susskind ,, [sic]*
*strings theory, lawrence Krause,, [sic] origins institute phoenix Arizona.. [sic] lee smolin*
*perimeter institute, loop quantum gravity , [sic] she can see the large adron [sic] collider in*
*switzerland. private tour." Ex. 270 at -844; Ex. 144 at -004; Ex. 175 at 4.*

> **JPMC Response**: Disputed to the extent USVI misstates the document, the quoted text
> states, "████ can meet have dinner lunch a weekend [sic] with any of the following seth
> lloyd mit quantum computing.. [sic] murray gell-man , santa- fe institute, quarks ,, [sic]
> brian greene columbia -string theory,, [sic] leonard susskind ,, [sic] strings theory,
> lawrence krause,, [sic] origins institute phoenix arizona.. [sic] lee smolin perimeter
> institute, loop quantum gravity , [sic] she can see the large hadron [sic] collider in
> switzerland. private tour." USVI Ex. 270 at -844.  Otherwise, undisputed.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
> 170-175.

415.   ████████████████████████   *Ex. 144 at -004.*

> **JPMC Response**: ████████████████████████████████████

██████████████████████████      ████████████████████████

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.

416.    *On September 24, 2010, Staley forwarded an email chain between him,* ████████████

████*, and Staley's wife,* ██████████████████*, regarding a professor at Columbia to Epstein,*

*"can u [sic] get to this professor at Columbia?"  Ex. 271 at -121; Ex. 144 at -004; Ex. 175 at 4.*

*On September 25, 2010, Epstein responded, "in a snap."  Id.*

> **JPMC Response**: Disputed to the extent USVI misstates the quoted document.  Staley's wife's ██████████████████ and the quoted email from Staley reads, "Can u get to this professor at Columbia?"  USVI Ex. 274 at -121.  Otherwise, undisputed.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

417.    *On December 12, 2008, Erdoes wrote to Staley regarding Bernie Madoff, ". . . glenn and*

*I have been going back and forth all night.  This is terrible.  Just terrible.* ████████ *has over 1b.*

*Nicole has another client with 1b.  We have HUNDREDS of clients with some.  The ny/palm beach*

*community will be in shock.  Can you call JE to get scoop from down there?"  Ex. 272 at -627.*

> **JPMC Response**: Undisputed that the cited document contains the quoted text.  USVI Ex. 272 at -627.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

418.    *On April 7, 2023, in a CNN interview Jamie Dimon, in response to a question about*

*whether "JPMorgan should have acted more quickly after Epstein pleaded guilty to one of these*

*charges in 2008" said "Hindsight is a fabulous gift."  Ex. 273 at 21.*

> **JPMC Response**: Undisputed that Dimon provided the quoted response.  USVI Ex. 273 at 21.

> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan benefited from participating in Epstein's alleged sex-trafficking venture.  *See* CSMF ¶¶ 170-175.

███████████████████████████████████   ████████

419.    *In the same CNN interview, Jamie Dimon was asked, "[the U.S. Virgin Islands is] alleging*

*that your bank helped facilitate payments to Epstein's victims and benefited from human*

*trafficking while ignoring warnings. Do those allegations have merit?" Dimon responded, "[W]e*

*have some of the best lawyers in the world—compliance, out of the DOJ, out of SEC important*

*divisions who review all of these things and make decisions at the time based on what they know,*

*as best as they know." Ex. 273 at 20.*

> **JPMC Response**: Undisputed that Dimon provided the quoted response.  USVI Ex. 273
> at 20.
>
> Disputed insofar as USVI contends that this fact supports an inference that JPMorgan
> benefited from participating in Epstein's alleged sex-trafficking venture. *See* CSMF ¶¶
> 170-175.

**JPMorgan Obstructed Enforcement of the TVPA**

420.    *Shaun O'Neill, former Special Agent with the Federal Bureau of Investigations ("FBI"),*

*states that "the FBI relies on financial institutions as a key partner to . . . obtain the information*

*necessary to answer the questions of who, what, when, where, and why." Ex. 274 at 17. The*

*information in JPMorgan's possession "warranted a constant stream of information from JPMC*

*to the FBI about Epstein's* ███████████████████ *. . . Human trafficking is an ongoing crime,*

*with harm incurred every day that the crime continues." Id. at 18. "It shocks the conscience that*

*it was not until Epstein's death in prison that JPMC suddenly recognized Epstein's prior banking*

*transactions as* ████████ *Id. at 25. O'Neill further states that "When it became public that*

*Jeffrey Epstein had been arrested and that he had used cash to commit his sexual crimes against*

*children, JPMC's* ███████████████ *impaired the government's ability to prosecute the*

*crimes that it was investigating against Epstein." Id. Further,* ███████████████████

███████████████████████████*—"the sheer amount of cash being dispersed,"*



*"more than $3 million was paid by Epstein to women, many of whom had Eastern European surnames," and Epstein's loan to modeling agency MC2—"Epstein would have been federally charged at a much earlier date."  Id. at 18-25.   "Had the FBI been notified of this* ███ *banking activity all being related to Epstein . . . [Epstein] would not have been able to continue his criminal activity from 2008 onward."  Id. at 20-21.*

**JPMC Response**: Disputed.  JPMC does not dispute that the quoted text is included in the report of USVI's proffered expert Shaun O'Neill.  However, JPMC disputes the underlying conclusions and O'Neill's misstatement of the record. █████████████

*ee* JPMC Exs. 42, 43, 44, 45, 46, 47, 48. ████

PMC Ex. 80 at 59:8-60:10. ████████

*See* JPMC Ex. 81 ¶ 15.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan obstructed enforcement of the TVPA.  *See* CSMF ¶¶ 176-179.  Further contended that the cited material cannot be presented at trial in admissible form.

421.   ████████████████████

███████████████████

███████████████████

████ *Ex. 275 at -683.*

**JPMC Response**: ████████████

███████████████████



*See* USVI Ex. 421 at -683

*Id.* (emphasis added)).

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan obstructed enforcement of the TVPA. *See* CSMF ¶¶ 176-179. Further contended that the cited material cannot be presented at trial in admissible form.

422.



*Ex. 276 at -422.*

**JPMC Response**: Undisputed that the cited document contains the quoted language. USVI Ex. 276 at -422.

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan obstructed enforcement of the TVPA. *See* CSMF ¶¶ 176-179.

423.  *In 2019, Brunel was arrested and charged with rape of minors and sexual harassment and*

*was under investigation for human trafficking.  Ex. 277.*

**JPMC Response**: Disputed.  Brunel was arrested in December 2020, not 2019.  See USVI Ex. 277; JPMC Ex. 82 ("Brunel was arrested at Paris Charles de Gaulle Airport in December 2020 on counts of "'rape and sexual assault, rape and sexual assault on a minor under 15, rape and sexual assault on a minor over 15, sexual harassment, criminal associations and human trafficking to the detriment of minor victims for the purposes of sexual exploitation.'").

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan obstructed enforcement of the TVPA. *See* CSMF ¶¶ 176-179.  Further contended that the cited material cannot be presented at trial in admissible form.

424.

216



*Ex. 69 at -545.*

> **JPMC Response**: USVI Ex. 69 at -545-550.
>
> *See* USVI Ex. 69 at -545; JPMC Ex. 83

Disputed insofar as USVI contends that this fact supports an inference that JPMorgan obstructed enforcement of the TVPA. *See* CSMF ¶¶ 176-179.

## Facts Concerning Epstein's Registration as a Sex Offender in the Virgin Islands

425.   *Shani Pinney, coordinator for the sex offender registry, and former Attorney General Vincent Frazer both testified that they were not responsible for and did not enable Epstein's crimes. Ex. 278 at 266:17-268:8; Ex. 280 at 12:9-21, 455:24-456:20.*

> **JPMC Response**: Undisputed that Pinney and Frazer testified as such. Disputed that such testimony establishes as a legal conclusion that they "were not responsible for and did not enable Epstein's crimes." *See, e.g.*, CSMF ¶¶ 261-288, 290-320.

426.   *Epstein never failed to register as a sex offender. Ex. 280 at 85:2-87:2; 442:15-17.*

> **JPMC Response**: Undisputed that Pinney testified that Epstein never failed to register in the USVI. *See* USVI Ex. 280 at 442:15-17.

427.   *Shani Pinney, coordinator for the sexual offender registry, testified that news reports were not sufficient basis to initiate an investigation because they did not contain the requisite "concrete allegations" of wrongdoing. Ex. 280 at 12:9-21; 415:1-20; 446:5-447:9; 447:16-449:1.*

> **JPMC Response**: Undisputed that Pinney testified as such. Disputed as to the underlying fact that news reports were not sufficient basis to initiate an investigation into Epstein. *See* CSMF ¶¶ 252-255.

217

428.    *Former Attorney General Denise George similarly testified that she couldn't rely on "news reports," "rumor" or "innuendo" to initiate an investigation into Epstein.  Ex. 282 at 167:3-170:3.*

> **JPMC Response**: Undisputed that George testified as such.  USVI Ex. 282 at 167:3-170:30.  Disputed as to the underlying fact that news reports, rumor, or innuendo could not be used to initiate an investigation into Epstein.  *See* CSMF ¶¶ 252-55, 257-58.

429.    *As witnesses testified, absent an actual complaint from a victim or eyewitness evidence brought to the Department of Justice's attention, the Department could not initiate investigations. Ex. 280 at 415:1-20; 446:5-447:9; 447:16-449:1; Ex. 282 at 167:3-170:3.*

> **JPMC Response**: Undisputed that Pinney and George testified as such.  Disputed as to the underlying fact that absent an actual complaint from a victim or eyewitness evidence brought to the Department of Justice's attention, the Department could not initiate investigations.  *See* CSMF ¶¶ 255, 257-58.  Further disputed that the USVI lacked actual complaints from a victim or eyewitness.  *See* CSMF ¶¶ 244-48, 251, 315.

430.    *Ms. Pinney and Attorney George both confirmed they received no concrete complaints of misconduct by Epstein.  Ex. 280 at 206:6-208:17; Ex. 282 at 164:3-167:2.*

> **JPMC Response**: Undisputed that Pinney and George testified as such.  Disputed insofar as USVI contends that the cited testimony establishes that the USVI lacked sufficient evidence to investigate Epstein or that no information about Epstein's misconduct ever reached USVI officials.  *See* SUMF ¶¶ 24, 26; CSMF ¶¶ 244-55.

431.    *Upon assuming her role as Attorney General, Attorney George inquired of various agencies to confirm whether they had received any complaints regarding Epstein. She found no evidence that any complaints had been received. Ex. 282 at 164:3-167:2.*

> **JPMC Response**: Undisputed that George testified that she inquired with the local VIPD and the USVI Department of DOJ as part of a general "inquiry to find out do we have cases?  Do we have a record of . . .anyone complaining about seeing something that looked suspicious on Little St. James or – or with respect to Jeffrey Epstein in particular." USVI Ex. 282 at 164:16-165:5.  Disputed to the extent USVI suggests that George inquired about Epstein with any other agencies. *See id.* at 165:5-13 ("I didn't [inquire] with the federal authorities who were also there because they're – you know, they're not going to disclose if there's a pending investigation or anything like that."); s*ee also* CSMF ¶¶ 253, 257.