# EXHIBIT 239

## SEVERANCE AND RELEASE AGREEMENT

This **SEVERANCE AND RELEASE AGREEMENT** (this "Agreement") is entered into on December 13, 2019 by and between **SOUTHERN TRUST COMPANY, INC.** (the "Company"), a U.S. Virgin Islands corporation, and **CECILE R. de JONGH** ("Employee"), an individual.

## RECITALS

**WHEREAS**, the Company and Employee wish to set forth in this Agreement all of their respective rights and obligations resulting from the termination of Employee's employment by the Company.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants between the Parties, the sufficiency of which is hereby acknowledged, the Company and Employee hereby covenant and agree as follows:

## AGREEMENT

1. **Termination of Employment**. Employee's employment is hereby terminated effective as of December 20, 2019 (the "Termination Date"). The Company will pay Employee the compensation that the Employee has earned up to and including the Termination Date. The Employee will also receive any accrued, unused vacation time as of December 20, 2019.

2. **Severance Benefit**. In consideration of the mutual promises and agreements contained herein, and for other good and valuable consideration, the receipt of which is acknowledged by Employee, the Company and Employee agree that the Company shall pay Employee a lump sum payment of **THREE HUNDRED FIVE THOUSAND SEVEN HUNDRED SIXTY THREE AND 89/100 DOLLARS ($305,763.89)**, reduced by any applicable employment or withholding taxes. This Severance payment is equal to 19.83 months of Employee's pay. Provided that Employee does not revoke this Agreement on or before the Effective Date in accordance with the provisions of Section 16 hereof, amounts due to Employee pursuant to the terms of this Agreement shall be direct deposited into the Employee's account in accordance with customary payroll practices on December 27, 2019.

3. **No Further Compensation**. Employee acknowledges and agrees that other than the Severance Benefit described in Section 2 above, no further compensation or benefits or other monies are owed to Employee by the Company arising out of Employee's employment by the Company or any goods or services provided by the Employee to the Company. Employee acknowledges and agrees that Employee shall make herself or himself reasonably available on an as needed basis to the Company to assist with winding down the Company's operations.

4. **Release**. Employee, on Employee's behalf and on behalf of the successors, assigns, agents, heirs, executors, personal representatives, trustees and legal representatives thereof, hereby voluntarily and irrevocably releases and forever discharges the Company and any and all related entities, subsidiaries, affiliates, subdivisions, as well as their respective current

1

CONFIDENTIAL
ESTATE_JPM060776

and former directors, officers, members, managers, shareholders, agents, supervisors, employees, attorneys, executors, predecessors or successors in interest, assigns, insurers or other representatives, both in their official and individual capacities (collectively referred to herein as the "Releasees"), from and against any and all claims, obligations, debts, liabilities, demands, or causes of action of any kind whatsoever (all collectively referred to herein as the "disputes"), for, by reason of or on account of any matter, cause or circumstance whatsoever from the beginning of the world to the Effective Date of this Agreement (as defined in Section 16 hereof), including but not limited to, any disputes arising out of Employee's employment and separation from Employee's employment with the Company. Employee expressly acknowledges and agrees that this release acquits, discharges, and releases the Releasees from any and all claims or disputes Employee has or believes Employee may have against the Releasees, arising under any federal, territorial, state, local or foreign statute or regulation, including, without limitation, those relating to unfair or discriminatory employment practices or wage and hour or wage collection laws, including but not limited to any federal, territorial or state law or local ordinance dealing with employment compensation, discrimination, retaliation or wrongful discharge, or any claim under the Virgin Islands Wrongful Discharge Act. Employee also agrees that this release includes claims based on theories of contract or common law, including, but not limited to, breach of oral, written and/or implied contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge under any theory, including for lack of good cause, in violation of public policy, and constructive discharge, intentional and negligent infliction of emotional distress, negligent hiring, retention and supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, breach of fiduciary or other duty, invasion of privacy, defamation, and interference with contract and/or prospective economic advantage. Employee understands that the foregoing list is not intended to be exhaustive but merely illustrative, **and that this is a release of any and all disputes through the Effective Date of this Agreement.**

5. **Covenant Not to Sue**. Employee represents and warrants that Employee has not assigned or transferred or purported to assign or transfer any dispute against the Releasees, and is fully entitled to release the same, and Employee has not currently filed any lawsuits or actions with any federal, territorial, state, or local court against the Company and agrees not to sue the Company in connection with any of the matters released under Section 4 above. This Agreement does not prohibit Employee from filing a charge with a government agency, but this Agreement does release any claim which Employee has or may have for monetary relief, reinstatement, or for any other remedy for Employee personally, arising out of any proceeding before any government agency or court which has otherwise been specifically released hereunder. If any agency or court should take jurisdiction over any matter in which Employee has or may have any personal interest, whether initiated by Employee or otherwise, Employee will promptly inform that agency or court that this Agreement constitutes a full and final settlement by Employee of all claims released under this Agreement. **Thus, Employee understands and agrees that this Agreement constitutes a full and final bar to any and all disputes of any type that Employee now has against the Company, of and from any and all actions, causes of action, damages or demands of whatever name or nature arising out of any and all incidents or matters which have arisen or may arise from the beginning of time to the Effective Date of this Agreement. However, this Agreement does not affect claims of Employee arising out of this Agreement.**

CONFIDENTIAL                                                                                                                                          ESTATE_JPM060777

6. **Adequacy of Consideration**. The parties agree that the consideration enumerated herein is greater than any consideration that the Company would be obligated to provide Employee upon Employee's termination. The parties further acknowledge the adequacy of the "additional consideration" provided herein by each to the other, that this is a legally binding document, and that they intend to comply with and be faithful to its terms.

7. **Confidentiality**. Except as otherwise expressly provided, the parties agree that the terms and conditions of this Agreement are and will be deemed to be confidential and hereafter will not be disclosed by either party to any other person or entity, except (a) as may be required by law; (b) Employee may disclose to prospective employers the dates of Employee's employment, positions held, evaluations received, Employee's duties and responsibilities and salary history with the Company, (c) any party may disclose the existence, circumstances, terms, amount, contents, and fact of this Agreement to any attorneys representing them in this matter (provided that such parties are advised of this section and agree to abide by the terms hereof), (d) the Company may disclose this Agreement to any possible lending or financing source for the Company or to any party undertaking due diligence with respect to the Company or any advisors to any such persons (provided that such parties are advised of this section), and (e) since the Company is an asset of the Estate of Jeffrey E. Epstein, nothing shall preclude the executors of the Estate from disclosing any information covered by this Agreement in connection with the administration of the Estate. Employee agrees that if Employee finds it necessary to disclose the existence or terms of this Agreement to Employee's attorneys (i) Employee will advise such persons of this Section and that they are under an obligation to maintain the absolute confidentiality of such information and (ii) such persons shall agree to abide by the terms hereof. Each party assumes full responsibility pursuant to all terms of this Agreement for any such person's breach of this confidentiality clause. This confidentiality provision does not preclude Employee from truthfully responding to any lawful subpoena, order, investigation or request for information pursuant to court action.

8. **Company Property.** On or before the Termination Date, Employee shall deliver to the Company all Company property in Employee's possession, if any, including without limitation, keys, computer, memoranda, disks, files, notes, records or other documents which contain or are based upon Confidential Information and shall not retain any copies thereof in any format or storage medium (including computer disk or memory).

9. **No Admissions**. The parties agree that the entry by the parties into this Agreement, and the promises contained herein, are not and will not be construed in any way as an admission of liability on the part of any party hereto or any other persons hereby released or held harmless.

10. **No Disparaging Conduct**. Neither Employee nor the Company will commit any act or omission that would tend to disparage or adversely affect the reputation of the other party or any present or future subsidiaries, parents or affiliates of the other party or any of their respective principals, officers, directors, shareholders, members, managers, employees, businesses or operations. Without in any way limiting the generality of the foregoing, neither Employee nor the Company will make any disparaging or unfavorable statements to any third party, either orally or in writing, regarding the other party or any present or future subsidiaries, parents or affiliates of any other party or any of their respective principals, officers, directors,

CONFIDENTIAL
ESTATE_JPM060778

shareholders, members, managers, employees, businesses or operations. Non-disparaging conduct shall not include truthful responses to any lawful subpoena, investigation, or request for information pursuant to any court action. In the event the Employee breaches this non-disparaging conduct provision, the Company may seek injunctive relief in the enforcement of this Agreement in a court of competent jurisdiction.

11. **Governing Law; Jurisdiction; Construction; Severability**. This Agreement shall be governed by and interpreted in accordance with the laws of the United States Virgin Islands.

12. **Entire Agreement; Amendment; No Waiver**. This Agreement contains the entire agreement of the parties, and the parties hereby acknowledge and agree that this Agreement supersedes any prior statements, writings, promises, understandings or commitments between or among the Company on the one hand, and Employee, on the other hand. This Agreement may not be modified or amended without the express written consent of the parties hereto. Any failure by any party to enforce any of such party's rights and privileges under this Agreement will not be deemed to constitute waiver of any rights and privileges contained herein.

13. **Full and Knowing Waiver**. By signing this Agreement, Employee certifies that: (a) Employee has carefully read and fully understands the provisions of this Agreement, and has had a reasonable opportunity to ask questions concerning this Agreement and to have received answers thereto; (b) Employee understands that this Agreement is a binding contract; (c) Employee was advised by the Company in writing, via this Agreement, to consult with an attorney before signing this Agreement, and has either consulted with an attorney or has voluntarily elected not to do so; and (d) Employee agrees to the terms of the Agreement knowingly, voluntarily and without intimidation, coercion or pressure.

14. **Breach of Agreement.** In the event Employee breaches any of Employee's obligations under this Agreement, the Company may seek injunctive relief in the enforcement of this Agreement in a court of competent jurisdiction. If any suit is brought to enforce the provisions of this Agreement, the prevailing party shall be entitled to such party's costs, expenses and reasonable attorney fees as well as any other remedies available by law.

15. **Counterparts**. This Agreement may be signed in any number of counterparts, each of which will be an original but all of which together will constitute one and the same instrument.

16. **Revocation.** After executing this Agreement, Employee has seven (7) days in which to revoke this Agreement and this Agreement will not become effective or enforceable if such revocation is made in writing and received by December 20, 2019. If Employee decides to sign this Agreement and does not revoke it within the seven (7) day period, this Agreement shall become fully effective and enforceable. The eighth (8th) day following Employee's signature without revocation shall be considered the "Effective Date" of this Agreement.

4



**IN WITNESS WHEREOF**, the undersigned have set their hands to this Agreement as of the date first set forth above.

**Witnesses:**

_(signature)_

_(signature)_

**EMPLOYEE**

By: _(signature)_
Name: Cecile R. de Jongh, an individual

**COMPANY**

**SOUTHERN TRUST COMPANY, INC.**

By: _(signature)_
Name: Richard KAHN
Title: President

5

CONFIDENTIAL                                                                                                        ESTATE_JPM060780