# EXHIBIT 263

```
                UNITED STATES DISTRICT COURT FOR THE

                    SOUTHERN DISTRICT OF NEW YORK

                    CASE NUMBER:  22-CV-10904-JSR

                           ACTION FOR DAMAGES


    GOVERNMENT OF THE UNITED STATES       )
    VIRGIN ISLANDS,                       )
                                          )
                              Plaintiff,  )
                                          )
    VS.                                   )
                                          )
    JP MORGAN CHASE BANK, N.A.,           )
                                          )
                              Defendant.  )
                                          )
    ------------------------------------




                 VIDEO RECORDED DEPOSITION OF

                      CAROL THOMAS JACOBS

                    THURSDAY, JULY 13, 2023





    REPORTED BY:

    DENISE D. HARPER-FORDE
    Certified Shorthand Reporter (CSR)
    Certified RealTime Reporter (CRR)
    Certified LiveNote Reporter (CLR)
    Registered Professional Reporter (RPR)
    Notary Public (FLORIDA)
```



```
 1          A.   I reviewed the file and I
 2   consulted with Shani regarding course
 3   of action.
 4          Q.   Okay.  And what did you decide
 5   to do?
 6          A.   I decide to modify his -- the
 7   waiver that was in there -- that he
 8   had before.
 9          Q.   And when you say you decided
10   to modify the waiver that he had
11   before, can you explain to me --
12          A.   Well --
13          Q.   -- what you mean?
14          A.   Well, Attorney General Frazer
15   --
16          Q.   Uh-huh.
17          A.   -- had granted Mr. Epstein a
18   waiver of certain requirements, which
19   -- and so I -- after I reviewed, I
20   decided to modify that waiver.
21          Q.   And why did you decide to
22   modify the waiver?
23          A.   Because I did not -- upon my
24   review --
25          Q.   Uh-huh.
```



```
 1        A.   -- I did not see anything in
 2   the file to support the waiver.
 3        Q.   Okay.  When had the waiver
 4   occurred, as best you can recall?
 5        A.   I am -- I don't recall right
 6   now sitting here.
 7        Q.   All right.  We'll look at some
 8   documents in a minute.
 9        A.   Okay.
10        Q.   But did Shani explain to you
11   -- withdrawn.
12             Mr. Frazer had been the AG
13   from the 2007 to 2015 time period?
14   Does that sound right?
15        A.   Yes.
16        Q.   Okay.  And so this was a
17   waiver that had been at least several
18   years prior to when Shani came to
19   you?
20        A.   It was.
21        Q.   Okay.  Did Shani explain why
22   she was coming to you now about a
23   waiver from many years ago?
24             ATTORNEY ACKERMAN:  Well,
25   objection.  You can answer that
```



```
 1   conduct.
 2              (BY ATTORNEY NEIMAN):
 3        Q.   So from your point of view,
 4   part of this notification requirement
 5   is for the protection of the
 6   community?
 7              ATTORNEY ACKERMAN:  Object to
 8   form.
 9              THE WITNESS:  Yes, that's just
10   a -- that's the purpose.
11              (BY ATTORNEY NEIMAN):
12        Q.   When you looked at this issue
13   about the adequacy of what had been
14   done with regard to Mr. Epstein's
15   notification requirements in the
16   past?
17              ATTORNEY ACKERMAN:  Object to
18   form.
19              THE WITNESS:  Yes, I was
20   concerned.
21              (BY ATTORNEY NEIMAN):
22        Q.   Can you explain?
23        A.   Well, I -- after -- on my
24   review, I thought that every effort
25   should be made to comply with the
```



```
 1   statute as closely as possible.
 2        Q.  Okay.  And had that been done
 3   in the past?
 4             ATTORNEY ACKERMAN:  Object to
 5   form.
 6             THE WITNESS:  Well, I think
 7   the statutes allows their Attorney
 8   General the discretion to make
 9   modifications -- and so -- to the
10   basic requirements.  And I felt that I
11   wanted to stick closer to the basic
12   requirements of the statute.
13             (BY ATTORNEY NEIMAN):
14        Q.  Okay.  And why was that?
15        A.  Again, because to protect our
16   community.
17        Q.  Uh-huh.  Were you surprised
18   when you saw the waivers that had been
19   granted to Mr. Epstein previously?
20             ATTORNEY ACKERMAN:  Object to
21   form.
22             THE WITNESS:  Was I surprised?
23   Yes.
24             (BY ATTORNEY NEIMAN):
25        Q.  Explain?
```



1    A.  I was -- how do I explain I
2  was surprised?  That's -- I just felt
3  that at least for me, the better
4  course would have been to have him
5  comply as strictly as possible to the
6  statute.
7    Q.  Okay.  What happened after you
8  sent this letter?
9    ATTORNEY ACKERMAN:  Object to
10 form.
11   THE WITNESS:  Well, what
12 happened is that I think it was sent
13 to him.
14   (BY ATTORNEY NEIMAN):
15   Q.  Uh-huh.
16   A.  My understanding, it was sent
17 to him and that he had to come in in
18 person to -- if he's -- to notify us.
19   Q.  Uh-huh.
20   A.  I believe -- and I believe
21 that was done.  Because if wasn't
22 done, I want to believe Shani would
23 have notified me.
24   Q.  Uh-huh.  Okay.  And did you
25 ever get contacted by anybody either



```
 1        Q.   Uh-huh.
 2        A.   I don't have all the facts
 3   before me.  I don't know if there were
 4   other communications.  I just don't
 5   know.  So, again, I don't think I'm
 6   the best person to ask.  I think the
 7   best person would be the person who is
 8   responsible for the sex offender
 9   registration.
10             (BY ATTORNEY NEIMAN):
11        Q.   Okay.  But just for purposes
12   of my questions now, just assume for a
13   second with me that the context -- the
14   compliance checks reflected in these
15   documents are the only compliance
16   checks that were done.
17             Okay.  Just assume that for a
18   second.  And assume again that the
19   description of what happened in those
20   compliance checks in these documents
21   is accurate.  Okay?
22        A.   Uh-huh.
23        Q.   With those two assumptions, do
24   you think that the Virgin Islands did
25   an adequate job in its compliance
```



```
 1   checks regarding Mr. Epstein?
 2           ATTORNEY ACKERMAN:  Object to
 3   form.
 4           THE WITNESS:  I think Epstein,
 5   Mr. Epstein was evasive --
 6           (BY ATTORNEY NEIMAN):
 7       Q.  Uh-huh.
 8       A.  -- and clever in avoiding the
 9   verifications, if nothing else.
10       Q.  And do you think that
11   evasiveness should have triggered some
12   follow-up by the Virgin Islands
13   Department of Justice, which after all
14   was charged with protecting the
15   community?
16           ATTORNEY ACKERMAN:  Object to
17   form.
18           THE WITNESS:  Again, I -- you
19   know, I don't -- they may have been.
20   And if they wasn't, they should have
21   been.
22           (BY ATTORNEY NEIMAN):
23       Q.  Okay.  Did you ever look at
24   the question of whether Mr. Epstein
25   was appropriately classified at the
```



```
 1   some information about Mr. Epstein.
 2   Do you see that?
 3              ATTORNEY ACKERMAN:  Object to
 4   form.
 5              (BY ATTORNEY NEIMAN):
 6       Q.   The writer writes, "When was
 7   Epstein last visited by the DOJ at his
 8   little island palace?  When was the
 9   last time Epstein signed in to the DOJ
10   in St. Thomas?  If I do not get a
11   response from you and the AG, I will
12   result to plan B, which is to
13   embarrass the VIDOJ, if need be.
14   Remember, I work as a private chef
15   under my LLC.  We private chefs here
16   on the island are tight, and we see
17   and hear everything, specially what
18   goes on in Little St. James island.
19   We have pictures, audio, video of it
20   all going on."
21              Do you see that?
22       A.   Yes.
23       Q.   You agree with me that
24   pictures, audio and video of what was
25   going on on Little St. James would be
```



```
 1   of interest if there were interest in
 2   finding out whether Mr. Epstein was
 3   engaged in any sexual misconduct?
 4             ATTORNEY ACKERMAN:  Object to
 5   form.
 6             THE WITNESS:  Yes.
 7             (BY ATTORNEY NEIMAN):
 8       Q.  All right.  And you would
 9   therefore expect that the Virgin
10   Islands would follow up when somebody
11   claimed to have such pictures, audio
12   and video.
13             ATTORNEY ACKERMAN:  Object to
14   form.
15             THE WITNESS:  They should
16   have.
17             (BY ATTORNEY NEIMAN):
18       Q.  Do you any -- if any --
19   withdrawn.
20             Was this ever brought to your
21   attention?
22       A.  I don't recall this.
23       Q.  And you agree that follow-up
24   would have been appropriate?
25             ATTORNEY ACKERMAN:  Object to
```



```
 1  form.
 2          (BY ATTORNEY NEIMAN):
 3      Q.  Do you know if any follow-up
 4  happened?
 5      A.  I don't know.
 6      Q.  Did the Virgin Islands, to
 7  your knowledge, do anything to monitor
 8  press accounts related to Mr. Epstein
 9  to see whether there was reason to be
10  concerned that he was reoffending?
11          ATTORNEY ACKERMAN:  Object to
12  form.
13          THE WITNESS:  I don't know
14  when you say "monitor."  But if there
15  are press accounts, I'm sure the
16  Virgin Islands would be aware of any
17  national press accounts.
18          (BY ATTORNEY NEIMAN):
19      Q.  Okay.  And do you know if
20  anything --
21          ATTORNEY ACKERMAN:  You can
22  put that document aside.
23          (BY ATTORNEY NEIMAN):
24      Q.  -- was ever done --
25          THE WITNESS:  Oh, I was just
```



1           Do you see that?
2        A.  Yes.
3        Q.  And then if you continue to
4    the next page, you'll see in paragraph
5    46 that the lawsuit alleges that "On
6    one occasion after suffering verbal
7    abuse and threats by Defendants
8    Epstein, Maxwell and Kellen, Plaintiff
9    attempted to escape from Defendant
10   Epstein's private island, and a search
11   party located her and physically
12   returned her to the main house on the
13   island."
14          Do you see that?
15       A.  I do.
16       Q.  Do you agree with me that
17   these are the kind of allegations that
18   the Virgin Islands had a
19   responsibility to follow up on?
20          ATTORNEY ACKERMAN:  Object to
21   form.
22          THE WITNESS:  If the Virgin
23   Islands knew of these allegations,
24   they would -- yes, I would say they
25   have a responsibility.  I don't know



```
 1   in 2017  -- at least I wasn't aware
 2   and I don't know if anyone at Attorney
 3   General's Office was aware of these
 4   allegations in 2017.
 5              (BY ATTORNEY NEIMAN):
 6         Q.  And do you know if the
 7   Attorney General's Office in the
 8   Virgin Islands did anything at anytime
 9   prior to 2019 to try to see what kind
10   of allegations were being made in
11   publicly filed lawsuits regarding
12   Jeffrey Epstein?
13              ATTORNEY ACKERMAN:  Object to
14   form.
15              THE WITNESS:  I'm not aware of
16   any.
17              (BY ATTORNEY NEIMAN):
18         Q.  Would you agree with me that
19   it would have been appropriate for the
20   Virgin Islands to make efforts to find
21   out what kind of allegations were
22   being made against a prominent
23   resident like Mr. Epstein in publicly
24   filed lawsuits?
25              ATTORNEY ACKERMAN:  Object to
```

