# EXHIBIT 246

Main Menu > Transfers and Payments >                                                   Help

# DOMESTIC WIRE (USA DESTINATION)

**WIRE:**     From Account: ███████        Currency: **US Dollars**

Status: **Processed** - Confirmation Number is ███████████
Wire Fee: **$12.50**
Saved as Model

| **Beneficiary** | **Bank** |
|---|---|
| **Bear Stearns & Company**<br>New York<br>New York | Name: **CITIBANK NA**<br>ABA: ███████<br>Address: **New York**<br>**New York**<br>**New York** |

Beneficiary's Account number: ███████

Amount: **$15,000,000.00**
Date of transfer(s): **December 29, 2004**

Special Instructions:
f/f/c Financial Trust Company, Inc.
Acct # ███████

| Process another Wire |

Confidential                                                                  JPM-SDNYLIT-00016246

# FINANCIAL
# T R U S T
# C O . ,  I N C.

6100 RED HOOK QUARTER, B3
ST. THOMAS, VI 00802-1348

telephone: 340.775.2525
facsimile:  340.775.2528
e-mail: ftrust@attglobal.net

December 28, 2004

Mr. Ron Resnick
Highbridge Capital Management, LLC
9 West 57th Street
27th Floor
New York, NY 10019

OK to Pay ~~immediately~~
Rou

*Fees for merger and acquisition advice*:

Amount due:  $ 15,000,000

Please wire the funds as follows:

| | |
|---|---|
| Bank Name: | Citibank, N.A. |
| | New York, NY |
| ABA Routing No: | ███████ |
| For the Benefit of: | Bear Stearns & Company |
| Beneficiary Account: | ███████ |
| For Credit to: | Financial Trust Company, Inc. |
| Account No: | ███████ |

Confidential
JPM-SDNYLIT-00016247

# HIGHBRIDGE
CAPITAL MANAGEMENT, LLC
9 WEST 57TH STREET
27th FLOOR
NEW YORK, NEW YORK 10153
TEL: 212/751-4510
FAX: 212/759-6010

## FACSIMILE COVER SHEET

**TO:**  **Darren Indyke**      **FAX NUMBER:**   **(212) 750-0381**
         **Financial Trust Company, Inc.**   **PHONE:**   **(212) 750-1176**

**FROM:**  **Ron Resnick**      **FAX NUMBER:**   **(212) 287-4915**
                               **PHONE:**   **(212) 287-4939**

**DATE:**  **June 24, 2005**      **# PAGES (incl. cover):**   **10**

Dear Darren:

The revised Consulting Agreement follows for your review (blackline version).

Please do not hesitate to contact me if you have any questions.

Thank you.

Best wishes,

Ron

cc:   Glenn Dubin
      Mark Roberts
      Bill Shepherd
      Bob Caruso
      Yul Tobaly
      Bill Bulmer

JPM-SDNYLIT-00016248

## CONSULTING AGREEMENT

This Consulting Agreement (this "Agreement") is effective as of June 1, 2005, between Highbridge Capital Management, LLC, a Delaware company (the "Company") with its principal office at 9 West 57th Street, 27th Floor, New York, New York 10019, and Financial Trust Company, Inc., a United States Virgin Islands corporation ("Consultant"), with its principal office at 6100 Red Hook Quarter, Suite B-3, St. Thomas, U.S.V.I. 00802.

In consideration of the mutual promises in this Agreement, the parties hereto agree as follows:

## I.   ENGAGEMENT

(a)   The Company hereby engages Consultant, and the Consultant hereby accepts the engagement by the Company, to provide the Consulting Services (as hereinafter defined) to the Company, upon, subject to and in accordance with the terms, conditions and other provisions set forth in this Agreement.  For purposes of this Agreement, the "Consulting Services" shall mean those certain consulting services from time to time requested by the Company as are identified on Schedule A hereto.  <u>The Consultant will assign Jeffrey Epstein to perform all of the services contemplated herein.</u>

(b)   In performing its obligations hereunder, the Consultant shall at all times act in what it reasonably believes to be in the best interests of the Company and in accordance with the highest standards of professional conduct and integrity.  Except for gross negligence, bad faith or willful misconduct, or violation of applicable law, neither the Consultant nor any of its shareholders, officers, directors, employees, attorneys or agents shall be liable hereunder or otherwise for any action performed or omitted to be performed or for any errors of judgment in connection with the Consultant's performance of this Agreement.  In no event shall the Consultant be liable to the Company for any lost profits or any indirect, consequential, special, incidental, and/or punitive damages of any kind or nature whatsoever.

(c)   It is understood and agreed that the Company may accept or reject any advice given by the Consultant.  It is understood and agreed that the Company may arrange for or engage other persons or entities to perform the same work that Consultant performs hereunder.  In no event shall the Consultant have any liability to the Company based upon the Company's failure to follow any advice given by the Consultant or the Company's following advice given to the Company by any person or entity other than the Consultant.  Neither the Company's failure to follow any advice given by the Consultant, nor the engagement of any other advisors or consultants by the Company, whether or not for compensation, shall relieve the Company of its obligation to pay the fees due to the Consultant hereunder.

(d)   It is understood that the Consultant now performs and, throughout the Term, may perform financial and other consulting services, without limitation, those similar to the Consulting Services, for various clients other than the Company.  The

Confidential

Company acknowledges and agrees that all services to be provided hereunder by the Consultant shall be performed on a non-exclusive basis and at times reasonably convenient to the Company and the Consultant.

(e)     The Company agrees that the Consultant may give advice and take action in the performance of its duties with respect to any of its other clients which, depending on the characteristics, requirements, directives and objectives of such other clients, may differ from the advice given to the Company at any particular time.  Nothing in this Agreement shall be deemed to impose upon the Consultant any obligation to advise the Company to take any action or to omit to take any action which the Consultant, its principals, affiliates, employees or other clients may take or omit to take, as the case may be, for the Consultant's own benefit or for the benefit of any other client of the Consultant, if, in the sole discretion of the Consultant, such action or omission appears unsuitable, impractical or undesirable for the Company.

(f)     There shall be no minimum number of hours of Consulting Services which the Consultant shall be required to provide under this Agreement.

(g)     Consultant may not assign its rights or subcontract its obligations hereunder to others, without the express prior written consent of the Company.

(h)     The Company recognizes that the Consultant will perform some or all of the Consulting Services from its offices in the United States Virgin Islands.

## II.    TERM

(a)     Consultant shall provide services hereunder until the earlier of (i) December 31, 2009, or (ii) the time this Agreement is terminated as set forth below.

(b)     Either the Company or Consultant may terminate this Agreement by providing ten (10) days' written notice to the other.  If the Company terminates this Agreement other than for Good Cause (as hereinafter defined), or the Consultant terminates this Agreement for Good Cause, the Company shall promptly pay the Consultant the then unpaid portion of the Consulting Fee.  If the Company terminates this Agreement for Good Cause or the Consultant terminates this Agreement without Good Cause, then the Company shall pay the Consultant any then unpaid balance of the prorated portion of the Consulting Fee calculated through the date of such termination, but no further payment on account of the Consulting Fee shall be due or payable to the Consultant for any period after such termination.  Upon termination of this Agreement, whether with or without Good Cause, the Company shall reimburse the Consultant for all of the reasonable out-of-pocket expenses theretofore incurred by the Consultant as provided in Section III(b) hereof.

(c)     For purposes of this Agreement, a party hereto will have "Good Cause" to terminate this Agreement only in the event the other party hereto breaches any material provision of this Agreement and such breach remains uncured for a period of thirty (30) days after the breaching party is given written notice of such breach by the non-

Confidential                                                                                                      JPM-SDNYLIT-00016250

breaching party hereto.  In addition, the Company will have "Good Cause" to terminate this Agreement in the event of the death or disability of Jeffrey Epstein.

(d)     Sections IV and V of this Agreement shall survive the termination of this Agreement.

## III.   COMPENSATION

(a)     Payments.  As compensation for all services to be rendered by Consultant pursuant to this Agreement and for the covenants and agreements of Consultant contained herein, the Company agrees to pay the Consultant a fee of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000) (the "Consulting Fee").  The Consulting Fee shall be payable annually in five (5) equal installments of Four Hundred Fifty Thousand dollars ($450,000) per annum.  The first such installment shall be paid as soon as practicable after the execution of this Agreement by the parties hereto upon presentation by the Consultant to the Company of an invoice therefor, and each such subsequent installment shall be paid, upon presentation by the Consultant to the Company of an invoice therefor, on the 1st day of June in each subsequent year of the Term.  Each invoice shall include a description of the services rendered to the Company by the Consultant.  The Consultant will deliver to the Company an IRS Form W-9.

(b)     In addition, the  Qualified Funds (as hereinafter defined) will be permitted to be invested in collective investment vehicles managed by the Company or any affiliate thereof in an aggregate amount equal to 0.85% of the total amount of (i) assets from time to time under management in Highbridge Master L.P. ("HCC"),  plus (ii) funds engaged in an individual strategy within HCC, on the same fee basis (including  with respect to incentive fees, incentive allocations, management fees and administrative fees) upon which employees of the Company would be able to invest in such funds.  For purposes of this Agreement, "Qualified Funds" means funds invested by (i) the Consultant, (ii) Jeffrey Epstein or (iii) any affiliate of the Consultant owned, directly or indirectly, by Jeffrey Epstein, in each such case which are invested for such investors and thus directly or indirectly for Jeffrey Epstein's own account.  Consultant bears all responsibility for paying applicable state and federal income or other taxes with respect to any compensation paid to Consultant hereunder.  Consultant hereby agrees to indemnify and hold the Company harmless from and against any and all losses, claims, suits or legal actions with respect to Consultant's legal employment or tax status.

(c)     Expenses. The Company shall reimburse Consultant for all of the Consultant's reasonable out-of-pocket expenses properly incurred in connection with providing services under this Agreement.  Such reimbursement shall be made upon submission to the Company of adequate and appropriate documentation of such costs and expenses.

## IV.   SOLICITATION

The Consultant acknowledges and recognizes that Consultant will have access to confidential and other proprietary information pertaining to the Company and its

3

JPM-SDNYLIT-00016251

businesses and the funds it manages.  During the term of the Company's engagement of the Consultant and for the one year period after the termination of this Agreement (the "Non-Solicitation period"), the Consultant shall not directly or indirectly, induce, encourage or suggest any employee or consultant of the Company to terminate employment or consultancy with the Company, and shall not, directly or indirectly, employ or engage, or offer employment or engagement , to any person, either individually or as owner, agent, employee, director, partner, principal, investor, shareholder, consultant, advisor or independent contractor or in any similar capacity or otherwise, who during the Company's engagement of the Consultant is or was employed by the Company.

## V.    CONFIDENTIALITY

(a)    For purposes of this Agreement, the term "Confidential Information" shall mean all information of any type which is commonly considered of a confidential nature, and includes, but is not limited to, all materials or information (whether or not protectable by patent or copyright) commonly considered to be confidential which (i) in response to a specific problem or issue raised by the Company to the Consultant is developed, furnished or prepared by or on behalf of Consultant for the Company pursuant to this Agreement, whether originated, developed, made, conceived or authored by Consultant alone or jointly with others, or (ii) constitutes Company trade secrets, patents and copyrighted material, original or unique computer applications, systems, software and programs created by the Company or exclusively for the Company by third parties, original or unique financial models created by the Company or by third parties exclusively for the Company, lists of Company clients and their contacts and requirements (excluding any clients, contacts and requirements provided by the Consultant which were not known to the Company), lists of referrals (excluding any referrals provided by the Consultant which were not known to the Company), lists of employees or consultants, vendors, suppliers, investing and trading strategies developed by the Company or exclusively for the Company by third parties, confidential business information of the Company, including strategic plans and business dealings, and all other ideas, processes, designs, discoveries, inventions, improvements, concepts, methods, procedures, techniques, written material, and other know-how, not generally known in the Company's trade or industry (whether or not patentable or entitled to trademark, copyright, or other protection), developed or used solely in connection with the Company's business, but excluding information or materials which: (i) were previously developed, conceived of, or known by Consultant through lawful means, (ii) are known, independently ascertainable or readily available to experts, experienced personnel or sophisticated practitioners in the Company's trade or industry, (iii) are readily available to the public generally, or (iv) are subsequently disclosed to Consultant by a third party who is not under any confidentiality obligation to the Company.

(b)    Consultant hereby acknowledges that during the term hereof, Consultant will be given access to Confidential Information.  Consultant agrees that during and after the term hereof, subject to the Consultant's right to comply with any lawful demand of any court or governmental, regulatory or taxing authority having jurisdiction over the

4

JPM-SDNYLIT-00016252

Consultant and subject to the provisions of Section V(e) hereof, Consultant will disclose Confidential Information to persons or entities, other than directors, officers, employees or agents of the Company, only with, and strictly in accordance with the terms of, the prior written authorization of the Company.  Subject to the Consultant's right to comply with any lawful demand of any court or governmental, regulatory or taxing authority having jurisdiction over the Consultant and subject to the provisions of Section V(e) hereof, Consultant agrees that he possesses no rights of ownership or use in, and shall not at any time hereafter claim any rights of ownership or use in, any of the Confidential Information.

(c)    During and after the term hereof,  Consultant shall not remove or cause to be removed from the Company's premises or, subject to the Consultant's right to comply with any lawful demand of any court or governmental, regulatory or taxing authority having jurisdiction over the Consultant and subject to the provisions of Section V(e) hereof, use any Confidential Information or other material whatsoever belonging to the Company for purposes other than for authorized work Consultant performs hereunder.

(d)    Subject to the Consultant's right to comply with any lawful demand of any such court or governmental, regulatory or taxing authority having jurisdiction over the Consultant and subject to the provisions of Section V(e) hereof, upon the earlier to occur of (i) a request by the Company and (ii) the termination of this Agreement, Consultant will surrender to the Company all Confidential Information obtained by the Consultant hereunder.  Consultant agrees not to retain any copy of such Confidential Information subsequent to the termination of this Agreement, except to the extent necessary to keep accurate records of Confidential Information delivered by the Consultant to any court or governmental, regulatory or taxing authority having jurisdiction over the Consultant pursuant to a lawful demand of any such court or governmental, regulatory or taxing authority.

(e)    In the event that the Consultant receives a request from any court or governmental, regulatory or taxing authority with respect to the disclosure of any information, knowledge or data subject to the confidentiality provisions of this Agreement, the Consultant shall, if possible and legally permissible, promptly provide the Company with written notice of such request and shall, at the Company's sole cost and expense, cooperate fully with any efforts on the part of the Company to seek a protective order or other relief intended to limit the scope of such disclosure or to ensure that any information, knowledge or data so disclosed is accorded confidential treatment. If, after compliance with the terms of the immediately preceding sentence, the Company is legally obligated to disclose any such information, knowledge or data, the Company shall be permitted to do so without being deemed to have violated this Agreement.

## VI.    INDEMNIFICATION

Each party hereto agrees to indemnify and hold the other party hereto and its officers, directors, employees, agents and shareholders harmless from any claims or liability resulting from the gross negligence or willful misconduct of the indemnifying

Confidential

JPM-SDNYLIT-00016253

party hereto in connection with or arising out of this Agreement, <u>including tax or withholding obligations,</u> which indemnification by such indemnifying party shall cover all loss or liability so incurred by the other party hereto, including, without limitation, reasonable attorneys' fees and reasonable costs.

## VII.   LEGAL RELATIONSHIP

(a)     Consultant is for all purposes hereunder an independent contractor, and nothing in this Agreement shall be construed or inferred to imply that the Consultant is a partner, joint venturer or employee of the Company or that, except as expressly provided herein, Consultant is otherwise associated with the Company.  Neither party hereto shall have any authority to act as an agent of the other party hereto and neither party hereto shall make any representation to the contrary to any other person or entity. Consultant shall only consult, render advice and perform such tasks as the Consultant determines are necessary to achieve the results specified by the Company.  Neither party hereto shall make any, or otherwise represent to any third party that such party has the authority to make any, management decisions for the other party hereto or undertake to commit the other party hereto to any course of action in relation to any third party.

## VIII.   BREACH; NO ADEQUATE REMEDY AT LAW; INJUNCTIVE RELIEF

(a)     Each party hereto shall be entitled to recover damages, including, without limitation, reasonable costs and reasonable attorney's fees, resulting from any breach of this Agreement by the other party hereto.

(b)     Consultant hereby acknowledges that, subject to the provisions of Section V(e) hereof, a violation by the Consultant of any of the covenants and agreements contained in Sections IV and V of this Agreement will cause continuing irreparable injury to the Company and that in such event money damages would not be readily calculable and the Company would not have an adequate remedy at law. Accordingly, Consultant hereby agrees and consents that, subject to the provisions of Section V(e) if the Consultant violates any of said provisions of this Agreement, the Company, in addition to any other rights and remedies available under this Agreement or otherwise, shall be entitled to equitable relief, including, without limitation, an injunction to be issued by any court or tribunal of competent jurisdiction restraining Consultant from committing or continuing any violation of this Agreement.

(c)     If the Company shall institute any action or proceeding for such equitable relief to enforce the terms of Sections IV and/or V hereof, Consultant hereby waives and agrees not to assert the claim or defense that the Company has an adequate remedy at law.

(d)     The rights and remedies of each party hereto provided for in this Agreement shall be deemed to be cumulative and concurrent and in addition to and not in limitation or exclusion of all other rights and remedies, whether at law or in equity or otherwise, which may exist on the part of such party hereto by reason of any breach of

6

any provision of this Agreement.  The exercise or attempted exercise by any such party hereto of any such rights or remedies shall not preclude the simultaneous or later exercise by such party of any or all other such rights or remedies.  No course of dealing by any party hereto, or any delay or omission of any party hereto in exercising any rights or remedies under this Agreement, shall operate as a waiver of such right or remedy or any other rights or remedies of such party hereto.

## IX.   MISCELLANEOUS

(a)   This Agreement represents the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes all prior representations, warranties, covenants, promises, undertakings, commitments, conditions, agreements and other provisions, whether verbal or written, by any party hereto with respect to the subject matter hereof, which representations, warranties, covenants, promises, undertakings, commitments, conditions, agreements, and other provisions are hereby canceled.  Any modification hereof shall not be effective unless contained in a writing signed by parties hereto.  No waiver of any provision of this Agreement shall be effective unless in writing signed by the party against whom such waiver is sought to be enforced.  No effective waiver of any right under this Agreement shall preclude the further exercise of such right or the exercise of any other right under this Agreement. Each such effective waiver shall only be effective in the specific instance and for the specific purpose for which such waiver is given.

(b)   Each provision of this Agreement shall be considered severable such that if any one provision or clause conflicts with existing or future applicable law, or may not be given full effect because of such law, this shall not affect any other provision of this Agreement, which can be given effect without the conflicting provision or clause. The parties hereto agree that they will amend the terms of provisions determined to be invalid or unenforceable, but only in the most minimal manner necessary to make such terms valid and enforceable.

(c)   This Agreement shall inure to the benefit of the  parties hereto and their respective successors and assigns.

(d)   Each party hereto hereby represents that that such party has read and understands the terms of this Agreement, has had an opportunity to ask any questions and to seek the assistance of legal counsel regarding these terms, and is not relying upon any advice from the other party hereto in this regard.

(e)   This Agreement shall be governed by the laws of the State of New York, excluding its choice of law rules, regardless of where the Company's work is performed and any litigation with respect to this Agreement may be brought in the federal or state courts located in New York City.  Each party hereto hereby irrevocably submits to the non-exclusive personal jurisdiction of such courts and agrees that service to such party of all process in connection with all proceedings relating to, arising out of or connected with this Agreement before any of such courts will be effective if mailed to such party postage pre-paid by certified mail, return receipt requested at the address of such party

Confidential

JPM-SDNYLIT-00016255

set forth at the opening of this Agreement or to such other address as may be designated by such party by notice given to the other party hereto in like manner.

Executed by the undersigned, effective as of the first date written above:

**HIGHBRIDGE CAPITAL MANAGEMENT, LLC**

By: _____
     Glenn Dubin
     Co-Chief Executive Officer

**CONSULTANT**

**FINANCIAL TRUST COMPANY, INC.**

By: _____
     Jeffrey Epstein
     President

8

Confidential