# EXHIBIT 2

Confidential - Pursuant to Protective Order

```
 1              UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF NEW YORK
 2
      GOVERNMENT OF THE UNITED      )
 3    STATES VIRGIN ISLANDS         )
                                    )
 4         Plaintiff,               )
                                    )
 5    vs.                           ) 1:22-cv-10904-JSR
                                    )
 6    JPMORGAN CHASE BANK, N.A.,    )
                                    )
 7         Defendant/Third-         )
           Party Plaintiff.         )
 8    _____)
      JPMORGAN CHASE BANK, N.A.     )
 9                                  )
           Third-Party              )
10         Plaintiff,               )
                                    )
11    vs.                           )
                                    )
12    JAMES EDWARD STALEY,          )
                                    )
13         Third-Party              )
           Defendant.               )
14
                  THURSDAY, JULY 6, 2023
15
        CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
16                      - - -
17           Videotaped deposition of Special
      Agent Joseph Fonseca, FBI (Retired), held at
18    the offices of WilmerHale, 250 Greenwich
      Street, New York, New York, commencing at
19    9:07 a.m. Eastern, on the above date, before
      Carrie A. Campbell, Registered Diplomate
20    Reporter and Certified Realtime Reporter.
21
22
23                      - - -
24           GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
25              deps@golkow.com
```

```
 1          relates to fraud and anything else
 2          that's from the Act, I honestly -- I
 3          can't tell you.
 4   QUESTIONS BY MR. PENDELL:
 5          Q.    Well, and my question was a
 6   little bit broader than that, and I apologize
 7   if I asked a bad question.  That may happen
 8   from time to time.  I'm notorious for asking
 9   bad questions.
10                But I'm interested generally
11   in -- do you think that people and businesses
12   have an obligation to comply with the law,
13   whatever that law is?
14          A.    I would agree, yes.
15          Q.    Do you have any opinion as to
16   whether JPMorgan ████████████████████████
17   ████████████████████████████████
18   ████████████████████?
19          A.    I do not.
20          Q.    No opinion one way or the
21   other?
22          A.    I don't.
23          Q.    Okay.  Mr. Fonseca, what
24   subject areas do you consider yourself to be
25   an expert in?
```

Confidential Pursuant to Protective Order

```
 1         A.    Anything relevant to crimes
 2   against children.
 3         Q.    Okay.  You are not a certified
 4   public accountant; is that correct?
 5         A.    That is correct.
 6         Q.    Okay.  During your tenure as an
 7   FBI special agent, I understand that based on
 8   your CV, and we're going to talk about it a
 9   little bit more later, you had some
10   supervisory authority for other special
11   agents; is that true?
12         A.    That is correct.
13         Q.    Okay.  And during your time
14   with that supervisory authority over other
15   FBI special agents, did you expect that those
16   agents that you supervised were going to
17   gather as much evidence as possible for an
18   investigation that you were pursuing?
19               MR. BOUCHOUX:  Objection to the
20         form.
21               THE WITNESS:  I expected them
22         to do their job.  Collecting evidence
23         was part of them doing their job, yes.
24   QUESTIONS BY MR. PENDELL:
25         Q.    Do you ever recall a time when
```

 1   under the age of 18, and the responsibility
 2   for investigating that would fall outside of
 3   crimes against children?
 4          A.     That is correct.  That would --
 5   if you're referring back to the human
 6   trafficking scenario I just provided, if they
 7   were here and not documented and they were
 8   underage, the human trafficking squad -- the
 9   public corruption squad and their agent that
10   worked human trafficking there for
11   undocumented -- and I'll say women because
12   that is pretty much what we saw, was women --
13   they would work that case, correct.
14          Q.     And what about -- so if you had
15   sex trafficking of people under the age of 18
16   that were US citizens, would that fall under
17   crimes against children?
18          A.     Correct.  Adult or child, yes.
19          Q.     Okay.  When you say adult or
20   children, if somebody -- if there was a sex
21   trafficking operation and everyone involved
22   was over the age of 18, would crimes against
23   children, would that -- what do you call it,
24   a bureau or squad?
25          A.     The squad.

Confidential Pursuant to Protective Order

```
 1          Q.    Is it fair to say that your
 2   responsibility was in carrying out the
 3   policies?
 4               MR. BOUCHOUX:  Objection to
 5        form.
 6               THE WITNESS:  I would say my
 7        obligations were to follow protocols
 8        and to follow my experience in cases.
 9   QUESTIONS BY MR. PENDELL:
10          Q.    While employed by the FBI, were
11   you responsible for providing official
12   opinions interpreting FBI investigative
13   policy?
14          A.    No, I was not.
15          Q.    While employed by the FBI, were
16   you responsible for setting any other FBI
17   policies?
18          A.    No.
19          Q.    We talked a little bit about
20   your experience with the FBI in the crimes
21   against children squad.
22               I want to focus a little bit
23   more on your work within that department
24   specifically investigating sex trafficking.
25               How many investigations were
```

 1   you involved in at the FBI that specifically
 2   involved sex trafficking?
 3        A.    That's a difficult question to
 4   answer, specifically because I was involved
 5   as an investigator and as a coordinator for a
 6   task force that saw a dozen cases a week.  So
 7   it was -- it could be more than that.  So
 8   it's difficult to answer that question.  A
 9   lot.
10        Q.    Well, let me ask you this.  You
11   had talked earlier about an example of a case
12   you worked on with -- I don't want to call
13   him a gentleman, because I would argue that
14   he's not, but a man who lured an underage
15   person over the Internet across state lines
16   for the purposes of sex.
17              Although reprehensible and a
18   criminal act, would you agree that that
19   particular instance is not sex trafficking?
20              MR. BOUCHOUX:  Objection to the
21        form.
22              THE WITNESS:  I can't tell you
23        what he was -- I can't tell you what
24        he was charged with, if we're talking
25        about that case with Smith and --

Confidential Pursuant to Protective Order

```
 1    QUESTIONS BY MR. PENDELL:
 2         Q.    Do you think that the case
 3    against Mr. Epstein was a routine sex
 4    trafficking case in your opinion?
 5              MR. BOUCHOUX:  Objection to the
 6         form.
 7              THE WITNESS:  Can you define
 8         "routine"?
 9    QUESTIONS BY MR. PENDELL:
10         Q.    Well, I'm sort of
11    interested in -- let me -- well, let me ask
12    it this way.
13              You've come here and you've
14    testified based on your experience --
15         A.    Uh-huh.
16         Q.    -- that you've worked on
17    several, numerous, many, sex trafficking
18    cases, and you've never worked on one that
19    involved an individual with Mr. Epstein's
20    wealth.
21              So would you agree with me that
22    the sex trafficking case against Mr. Epstein
23    was not routine?
24         A.    No.
25         Q.    You would not agree with me?
```

Confidential Pursuant to Protective Order

```
 1        A.      I would not agree.
 2        Q.      Why not?
 3        A.      The supposition that wealth
 4   matters when you are working a case that has
 5   to do with paying juveniles small amounts of
 6   money, which we saw in every case, to
 7   sexually abuse them is not unusual.  Your
 8   wealth has nothing to do with those points of
 9   the sexual abuse.
10        Q.      Well, fair enough.
11                But we're not just talking
12   about wealth here, right?
13                Let me ask you this question.
14   How many sex trafficking cases have you been
15   involved in where there were over a hundred
16   victims?
17                MR. BOUCHOUX:  Objection to the
18        form.
19                THE WITNESS:  I don't think
20        any.
21   QUESTIONS BY MR. PENDELL:
22        Q.      So would you agree with me that
23   a sex trafficking case with over a hundred
24   victims is not a routine case?
25        A.      From the amount of victim point
```

Confidential Pursuant to Protective Order

```
 1    of view, I would say based on my experience,
 2    that is unusual to see that amount of
 3    victims.  The way of investigating the case
 4    would not be unusual.
 5         Q.    A hundred victims is a lot,
 6    isn't it?
 7         A.    A hundred victims is a lot
 8    compared to just one victim, yes.
 9         Q.    And one victim is bad enough.
10    A hundred is --
11         A.    Absolutely.
12         Q.    -- unfathomable, right?
13         A.    Absolutely.
14         Q.    You said something about
15    wealth had nothing to do with making it
16    routine or not routine.  I'm paraphrasing
17    here because you said something about small
18    amounts of money that were paid.
19               Have you looked at how much
20    money was involved specifically in this case?
21               MR. BOUCHOUX:  Objection to the
22         form.
23               THE WITNESS:  From the payments
24         that were made to the victims, I have
25         reviewed statements from the victims
```

Confidential Pursuant to Protective Order

```
 1           to the term "banking information."
 2           Vague.  Ambiguous.
 3                 THE WITNESS:  I know what --
 4           part of our team would be our
 5           intelligence analysts, but I never
 6           used banking information, so I
 7           don't -- I don't know who I'd assign
 8           that responsibility to except an
 9           intelligence analyst, I guess.
10   QUESTIONS BY MR. PENDELL:
11        Q.    And let me ask you another
12   question in light of counsel's objection,
13   which was fair.
14              During your tenure with the FBI
15   investigating sex trafficking of children,
16   were you ever responsible for reviewing the
17   financial information of a suspect?
18        A.    And to be clear, too, sex
19   trafficking is not just with children.  We
20   investigated adults as well.
21              But the financial interest?
22   Your question about that was?
23        Q.    Yes.  Did you ever review the
24   financial information of a suspect?
25                 MR. BOUCHOUX:  Objection to the
```