**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case Number: 1:22-cv-10019-JSR |
| JPMORGAN CHASE BANK, N.A. | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| JAMES EDWARD STALEY | |
| Third-Party Defendant. | |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, | |
| Plaintiff, | |
| v. | Case Number: 1:22-cv-10904-JSR |
| JPMORGAN CHASE BANK, N.A. | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| JAMES EDWARD STALEY | |
| Third-Party Defendant. | |

**THIRD-PARTY DEFENDANT JAMES STALEY'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF UNDISPUTED FACTS ............................................................................... 1

    A.    Jes Staley's Career at JPMorgan and Relationship with Epstein.................................. 1

    B.    The Bank's Management and Monitoring of Epstein's Accounts............................. 2

    C.    JPMorgan's Knowledge of Epstein's Sex Offense, Suspicious Cash Transactions, and Other Red Flags ......................................................................................................... 4

    D.    JPMorgan's Investigation of Its Relationship with Epstein and Mr. Staley................. 5

    E.    JPMorgan's Third-Party Complaint............................................................................. 6

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT .......................................................................................................................... 7

I.    JPMorgan Cannot Recover Its Settlement in the *Doe* Case or Associated Costs Via Contribution or Any Proportional Fault Theory. .......................................................... 7

II.    JPMorgan Cannot Recover for the Money That It Might Owe USVI................................. 9

III.  The Indemnification Claims Cannot Succeed on the Merits ................................................ 11

IV. JPMorgan's Employment Claims Are Time-Barred........................................................... 14

CONCLUSION ....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

Page

### FEDERAL CASES

*Anderson v. Greyhound Lines, Inc.*, 2011 WL 3480945 (S.D.N.Y. Aug. 3, 2011) ........................8

*Austin v. Fordham Univ.*, 2022 WL 4626485 (S.D.N.Y. Sept. 30, 2022) ....................................15

*Blackhawk Dev., LLC v. Krusinski Constr. Co.*,
2022 WL 1136760 (S.D.N.Y. Apr. 18, 2022)............................................................11, 12, 13

*Boise v. Boufford*, 121 F. App'x 890 (2d Cir. 2005) ....................................................................7

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387 (S.D.N.Y. 2015) .................................20

*Diffley v. Allied-Signal, Inc.*, 921 F.2d 421 (2d Cir. 1990)..........................................................14

*Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423 (S.D.N.Y. 1986) .........................20

*GE Transp. Parts, LLC v. Cent. Ry. Mfg., LLC*,
2021 WL 827146 (S.D.N.Y. Mar. 4, 2021) ..............................................................................14

*Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363 (S.D.N.Y. 2012)..............................8

*Koral v. Saunders*, 36 F.4th 400 (2d Cir. 2022) ....................................................................15, 17

*Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980)..............................................................................10

*Neuman v. Garcia*, 2022 WL 4448722 (S.D.N.Y. Sept. 23, 2022) ..............................................15

*Orsini v. Kugel*, 9 F.3d 1042 (2d Cir. 1993) ..................................................................................8

*People ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64 (2d Cir. 1996)..................................9

*Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131 (S.D.N.Y. 2004) ...........................................10

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
721 F.3d 54 (2d Cir. 2013)...........................................................................................................7

*Stanley v. Skowron*, 958 F. Supp. 2d 417 (S.D.N.Y. 2013)..........................................................10

*Steinberg v. Sherman*, 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ......................................11, 13

*United States v. Whitehill*, 2018 WL 459300 (W.D.N.Y. Jan. 18, 2018) ..................................9, 10

Page

## STATE CASES

*Bd. of Managers of Olive Park Condo. v. Maspeth Props., LLC*,
  95 N.Y.S.3d 344 (2d Dep't 2019) ............................................................................13

*Coty v. Steigerwald*, 692 N.Y.2d 556 (4th Dep't 1999) ...............................................8

*Diversified Grp., Inc. v. Marcum & Kliegman LLP*, 12 N.Y.S.3d 39 (1st Dep't 2015) ................7

*Elican Holdings, Inc. v. Hudson Oil Refin. Corp.*, 96 A.D.2d 792 (1st Dep't 1983) .....................9

*Epiphany Cmty. Nursery Sch. v. Levey*, 94 N.Y.S.3d 1 (1st Dep't 2019) .....................................15

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268 (N.Y. 2009) .................15, 19

*Prestandrea v. Stein*, 692 N.Y.S.2d 689 (2d Dep't 1999) ............................................................15

*Rosado v. Proctor & Schwartz, Inc.*, 484 N.E.2d 1354 (N.Y. 1985).....................................8, 9, 12

*Santoro v. Poughkeepsie Crossings, LLC*, 115 N.Y.S.3d 368 (2d Dep't 2019) ...........................12

*Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*,
  573 N.Y.S.2d 513 (1st Dep't 1991) ...........................................................................11

*Smith v. Guli*, 484 N.Y.S.2d 740 (4th Dep't 1985).....................................................................10

## FEDERAL STATUTE, REGULATION, AND RULE

18 U.S.C. § 1591 ...........................................................................................................................9

12 C.F.R. § 21.11 .........................................................................................................................17

Fed. R. Civ. P. 56 ..........................................................................................................................7

## STATE STATUTES

10 Del. C. § 8106 .........................................................................................................................14

N.Y. C.P.L.R.
  § 213.........................................................................................................................14
  § 1401.......................................................................................................................10

N.Y. Gen. Oblig. Law § 15-108.................................................................................................7, 8, 9

## OTHER AUTHORITY

David D. Siegel & Patrick M. Connors, *New York Practice* § 211 (6th ed.) ...............................19

## PRELIMINARY STATEMENT

JPMorgan Chase Bank, N.A. has tried to blame its decades-long relationship with Jeffrey Epstein solely on Jes Staley.  But discovery has revealed that the bank's effort to scapegoat Mr. Staley amounts to little more than a media stunt to distract from its own egregious compliance failures.  It is impossible to see how the bank could have ever, in good faith, claimed that Mr. Staley was the sole cause of Epstein's status as a JPMorgan client (an allegation that is the predicate for most of its case), given the undisputed facts that:

> (1) Epstein was a private banking client at JPMorgan before Mr. Staley joined JPMorgan's Private Bank, and Epstein remained a client after Mr. Staley left;

> (2) Others at the bank—not Mr. Staley—were responsible for monitoring Epstein's account activity, reporting his suspicious cash usage, and interacting with law enforcement investigating Epstein;

> (3) Mr. Staley was *not* the "ultimate decider" on Epstein's status as a client— according to CEO Jamie Dimon, the bank's general counsel, Steve Cutler, filled that role, SUF ¶ 29; and

> (4) Mr. Cutler and his team permitted Epstein to remain a client even though they knew he was a convicted sex offender with years of suspicious account activity and was the subject of persistent negative media reports and civil litigation over alleged sexual misconduct.

The undisputed record establishes that summary judgment must enter in favor of Mr. Staley on each of the bank's claims.  The contribution and indemnification claims are legally deficient and without factual foundation in light of this record.  And the employment claims—which concern events occurring over a decade ago and that the bank has known of since at least 2019— are time-barred.

## SUMMARY OF UNDISPUTED FACTS

### A.  Jes Staley's Career at JPMorgan and Relationship with Epstein

Jes Staley worked at JPMorgan from 1979 to 2013.  SUF ¶¶ 1, 9.  He held several senior positions at JPMorgan in the later part of his tenure.  In 1999, he became head of the Private Bank;

in 2001, he became CEO of JPMorgan's Asset and Wealth Management division; and, in 2009, he became CEO of the Investment Bank.  SUF ¶¶ 3, 7-8.  In each of those roles, Mr. Staley interacted with many of the bank's major clients, including Epstein.  SUF ¶¶ 4-6, 10-12.  ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████

     Mr. Warner's description proved apt.  Epstein helped connect the bank—particularly Mr. Staley—to other prominent and wealthy individuals.  SUF ¶¶ 10-12.  Epstein, for example, introduced Mr. Staley to ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

### B.  The Bank's Management and Monitoring of Epstein's Accounts

     Although Mr. Staley had a close business relationship with Epstein, he had no formal responsibilities for monitoring Epstein's accounts.  SUF ¶ 25.  At least five different layers of JPMorgan personnel had compliance responsibilities for Mr. Epstein.  None reported directly to Mr. Staley.



**C. JPMorgan's Knowledge of Epstein's Sex Offense, Suspicious Cash Transactions, and Other Red Flags**

The record is not disputed that numerous JPMorgan employees were keenly aware of serious issues surrounding Epstein. 

4

[REDACTED]

**D.  JPMorgan's Investigation of Its Relationship with Epstein and Mr. Staley**

In July 2019, Epstein was arrested on a federal sex-trafficking charge.  SUF ¶ 53.  That news caused JPMorgan to investigate its relationship with Epstein, including by reviewing all email messages between Epstein and Mr. Staley and interviewing at least one company witness. SUF ¶¶ 53-59.  As a result, JPMorgan discovered all of the essential elements of the employment claims that it now seeks to bring against Mr. Staley.

The undisputed written record is clear. [REDACTED]

[REDACTED]

[REDACTED]  The bank, however, pursued no civil claim against Mr. Staley until

filing the third-party complaints, which came a decade after his departure from the bank and more than three years after the bank's investigation.[1]

### E.  JPMorgan's Third-Party Complaint

The bank's third-party complaints advance claims for contribution and indemnification arising from the *Doe* and *USVI* cases, as well as independent claims for breach of fiduciary duty and violation of the faithless-servant doctrine (the "employment claims").  To support its allegations that Mr. Staley breached his fiduciary duties and acted as a faithless servant, the bank has identified seven instances starting in "late 2009 or early 2010" in which Mr. Staley allegedly "vouch[ed]" for Epstein's character and conduct.  SUF ¶ 73.  The alleged "vouching" boils down to Mr. Staley supposedly telling other employees things like "that he knew and trusted Epstein"; that Epstein "had paid his debt to society"; and that Mr. Staley had "a good relationship with him." SUF ¶ 74.  As to whether Mr. Staley "was aware of Epstein's alleged sex trafficking," the bank "does not presently take a position on th[e] issue."  SUF ¶ 75.

The damages sought by the bank have shifted over time.  Although the bank originally sought reputational damages from Mr. Staley, it dropped those damages once Mr. Staley asked for discovery on them.  SUF ¶ 77.  At this point, the bank seeks the following from Mr. Staley:  (1) the $290 million settlement that the bank recently reached with the *Doe* class, (2) any judgment awarded to USVI, (3) the legal fees it has incurred in these cases, and (4) Mr. Staley's entire compensation from 2006-2013.  *Id.*

---

[1] *See Doe v. JPMorgan*, 22-cv-10019-JSR, ECF No. 59, and *USVI v. JPMorgan*, 22-cv-10904-JSR, ECF No. 70.  Unless otherwise stated, docket citations in this brief will refer to entries in *USVI v. JPMorgan*, 22-cv-10904-JSR.

## LEGAL STANDARD

Summary judgment must be granted on issues where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment; *see* Fed. R. Civ. P. 56(a) (allowing summary judgment on a "part of each claim or defense").

## ARGUMENT

**I.   JPMorgan Cannot Recover Its Settlement in the *Doe* Case or Associated Costs Via Contribution or Any Proportional Fault Theory.**

It is black letter law in New York that a party is barred from seeking contribution from a third party when it settles a lawsuit.[2]  But JPMorgan's claims seek "the amount JPMorgan will pay to the [*Doe* class] to settle this action, in the amount of $290,000,000.00."  SUF ¶ 78.  That is not recoverable from Mr. Staley via a contribution theory, and this Court should grant summary judgment in Mr. Staley's favor as to this theory of asserted damages.  *See Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005) (affirming summary judgment for defendant on category of damages unrecoverable by plaintiff as a matter of law).

New York provides by statute that a party who has "obtained his own release from liability shall not be entitled to contribution from any other person."  N.Y. Gen. Oblig. Law § 15-108(c); *see Diversified Grp., Inc. v. Marcum & Kliegman LLP*, 12 N.Y.S.3d 39, 40 (1st Dep't 2015)

---

[2] Mr. Staley incorporates and preserves his argument advanced at the motion-to-dismiss stage that contribution and indemnification are categorically unavailable for liabilities arising under the TVPA.  *See* ECF No. 126, at 8-11; ECF No. 146, at 1-4.  In particular, "it is settled in this Circuit that there is no claim for contribution unless the operative federal statute provides one."  *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 65 (2d Cir. 2013).

(granting summary judgment to defendants on post-settlement contribution claim).[3]  Having

settled the *Doe* action, JPMorgan cannot seek contribution for any of its losses or costs.  *See*

*generally Orsini v. Kugel*, 9 F.3d 1042, 1046-48 (2d Cir. 1993).[4]

A settlement bars not only claims labeled "contribution," but also any other claim, however

labeled, that in practice acts as a contribution claim.  *See Rosado v. Proctor & Schwartz, Inc.*, 484

N.E.2d 1354, 1356-57 (N.Y. 1985) (warning that the "statutory bar to contribution may not be

circumvented" by pleading disguised contribution claims).  Permitting any so-called "disguised

contribution claim" after settlement would "void the protections of the contribution bar in § 15–

108(c)."  *Anderson v. Greyhound Lines, Inc.*, 2011 WL 3480945, at *5 n.5 (S.D.N.Y. Aug. 3,

2011) (dismissing indemnification claim post-settlement as disguised contribution claim); *see*

*Orsini*, 9 F.3d at 1046 (explaining the trade-off).  So JPMorgan's claims to recover the amount

paid to the *Doe* class cannot proceed under any theory that would require an assessment of Mr.

Staley's and the bank's comparative fault.  *Rosado*, 484 N.E.2d at 1357.

Accordingly, the Court should not only grant summary judgment on JPMorgan's

contribution claim in the *Doe* case but should also preclude the bank from seeking to recover its

settlement payment via its employment claims.  Breach-of-duty claims are subject to a comparative

fault defense, *see, e.g.*, *Coty v. Steigerwald*, 692 N.Y.2d 556, 557 (4th Dep't 1999), so the

employment claims will simply masquerade as a contribution claim: the jury would have to

apportion liability for the *Doe* settlement between the bank and Mr. Staley based on relative

---

[3] The stipulated settlement expressly states that it is governed by New York law.  *See* Stipulation of Settlement ("Settlement") ¶ 9.23, *Doe v. JPMorgan*, 22-cv-10019-JSR, ECF No. 181-1.

[4] Nor are attorney's fees recoverable damages under a contribution theory, as such costs are not paid out to a primary plaintiff as tort damages.  *See Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 391 (S.D.N.Y. 2012).

fault.  This is the exact type of circumvention of the contribution bar in section 15-108(c) that New York law forbids.

The Court should rule that the bank's contribution claim and employment claims in the *Doe* action are categorically precluded.  *See* N.Y. Gen. Oblig. Law § 15-108(c); *Rosado*, 484 N.E.2d at 1357.

## II.  JPMorgan Cannot Recover for the Money That It Might Owe USVI.

JPMorgan also cannot recover from Mr. Staley the amounts that USVI seeks from the bank in this case, and summary judgment should enter as to such damages.  USVI advances two claims against JPMorgan: (1) knowingly benefitting from a sex trafficking venture, in violation of 18 U.S.C. § 1591(a)(2); and (2) obstruction of enforcement of the TVPA, in violation of 18 U.S.C. § 1591(d).  While USVI and the bank disagree as to the propriety of recovery, at this stage all parties agree that the USVI seeks relief from JPMorgan via civil penalties, disgorgement and/or restitution, punitive damages, and equitable relief.[5]  None of that is recoverable under any of JPMorgan's claims against Mr. Staley.

Start with the civil penalties.  Both USVI and the bank agree that "such 'penalties' 'are not damages.'"  ECF No. 228, at 10.  And they are accordingly not recoverable from a third party. *See, e.g.*, *Elican Holdings, Inc. v. Hudson Oil Refin. Corp.*, 96 A.D.2d 792, 793 (1st Dep't 1983) ("To the extent that fines or similar penalties were imposed, civil or criminal, public policy considerations preclude either indemnification or contribution for the consequences of the illegal acts.").  A court in this circuit faced similar circumstances in *United States v. Whitehill*, 2018 WL

---

[5] USVI has abandoned any claim to its own compensatory damages.  *See* ECF No. 205, at 1. Although USVI has a lingering claim for damages on behalf of Epstein's victims, that relief is plainly not recoverable by the USVI for the reasons identified by JPMorgan in its summary judgment briefing.  *See* ECF No. 228, at 4-8; *see also People ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996) (explaining that *parens patriae* standing "does not extend to the vindication of the private interests of third parties").

459300 (W.D.N.Y. Jan. 18, 2018).  There, a defendant corporation was sued under the Clean Water Act.  The defendant sought contribution and indemnification from several third-party defendants.  *Id.* at *1.  The court rejected the third-party claims under New York law and granted judgment in favor of the third-party defendants because the third-party plaintiffs sought to offload not "damages"—such as injury to property, as N.Y. C.P.L.R. § 1401 permits—but instead "civil penalties" owed to the government under the federal statute.  The same is true here insofar as JPMorgan seeks to recoup from Mr. Staley the costs of civil penalties sought by USVI.[6]

At play here and in *Whitehill* is the principle that defendants cannot pass on *penalties* imposed by the government—which are directed at the person, not the harm.  *See Whitehill*, 2018 WL 459300, at *3; *see also Leist v. Simplot*, 638 F.2d 283, 313 n.35 (2d Cir. 1980) (Friendly, J.) ("Penalties and damages . . . are quite different in nature.").  Damages that are "in the nature of a penalty . . . are not subject to the principle of contribution."  *Smith v. Guli*, 484 N.Y.S.2d 740, 742 (4th Dep't 1985).  This is so regardless of whether recovery is sought through a "contribution" claim or some other cause of action.  *See, e.g.*, *Stanley v. Skowron*, 958 F. Supp. 2d 417, 427 (S.D.N.Y. 2013) (rejecting breach of fiduciary claim "insofar as its damages [we]re based on" amount of a settlement with the SEC).  Penalties are thus not recoverable under *any* of JPMorgan's four causes of action.

This rule is not limited to civil penalties.  It also applies to "equitable relief that requires a party to expend funds," or payouts in the forms of "restitution, disgorgement, or costs incurred in complying with an injunction."  *Whitehill*, 2018 WL 459300, at *3; *see Stanley*, 958 F. Supp. 2d

---

[6] Similarly, punitive damages are not recoverable via contribution claims, as JPMorgan previously conceded.  *See* JPMorgan's Opp'n to Staley Motion To Dismiss ("MTD Opp'n") at 16 n.2, ECF No. 140; *see also* Staley Memo. ISO Mot. To Dismiss at 16-17, ECF No. 126.  And "New York prohibits indemnification for punitive damages as against public policy."  *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 145 (S.D.N.Y. 2004).

at 427 (applying the same rule to block recoupment of disgorgement).  So JPMorgan cannot offload the costs of equitable relief, disgorgement, or civil penalties.

Because none of the relief sought by USVI can be recovered by JPMorgan from Mr. Staley, the Court should enter summary judgment in that action for Mr. Staley on the indemnification and contribution claims, as well as on the employment claims to the extent the bank seeks to use them to recover from Mr. Staley any of USVI's recovery from JPMorgan.

## III.    The Indemnification Claims Cannot Succeed on the Merits

Apart from any unrecoverable categories of damages, the indemnification claim in both the *Doe* and *USVI* cases fails on the merits.  JPMorgan seeks indemnification only under New York common law.[7]  Compl. ¶¶ 43-48; *see* ECF No. 293, at 16.  As this Court has stated, "a party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence" on its own behalf.  ECF No. 293, at 19 (citation omitted).  Consistent with this holding, New York law requires a common-law indemnification plaintiff to show, among other things, that it "delegated exclusive responsibility for the duties giving rise to the loss to the party from whom indemnification is sought."  *Blackhawk Dev., LLC v. Krusinski Constr. Co.*, 2022 WL 1136760, at *5 (S.D.N.Y. Apr. 18, 2022).   In other words, there is "no right to implied indemnification . . . when the proposed indemnitee retains a duty it owes directly to the plaintiff." *Steinberg v. Sherman*, 2008 WL 2156726, at *6 (S.D.N.Y. May 8, 2008) (alteration and citation omitted).  An indemnification claim also fails where the harm flowed "at least partially" from the indemnitee's "own negligence," regardless of whether the indemnitee engaged in any purposeful

---

[7] Mr. Staley renews and preserves the contention from his motion to dismiss that no such common-law indemnification can exist here benefitting the bank.  New York law instructs that any would-be claim for common-law indemnification is "extinguished" as a matter of law when the parties have already "contemplated and expressly addressed" the indemnity obligations in their relationship, as they did here.  *Serv. Sign Erectors Co. v. Allied Outdoor Advert., Inc.*, 573 N.Y.S.2d 513, 514 (1st Dep't 1991).

misconduct or not.  *Santoro v. Poughkeepsie Crossings, LLC*, 115 N.Y.S.3d 368, 373 (2d Dep't 2019) (citation omitted).  These same principles apply where a settling party seeks indemnification. *See, e.g.*, *Rosado*, 484 N.E.2d at 1356-57 ("A party who has settled and seeks what it characterizes as indemnification . . . must show that it may not be held responsible in any degree.").

This Court concluded at the motion-to-dismiss stage that it was too early to assess JPMorgan's indemnification claim.  ECF No. 293, at 19.  But discovery has put the lie to the bank's allegations.

The bank cannot establish that it delegated to Mr. Staley the "exclusive responsibility for the duties giving rise to the loss" allegedly suffered by the plaintiffs here.  *Blackhawk Dev.*, 2022 WL 1136760, at *5 (citations omitted).  There is simply no evidence of an exclusive delegation of responsibility to Mr. Staley.  To the contrary, there is a bevy of undisputed evidence that is inconsistent with any such delegation.  For example, it is undisputed that Epstein was a client of the bank before Mr. Staley met with him in or around 2000.  SUF ¶¶ 4-6, 30. ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

Moreover, Epstein remained a client of the Private Bank after Mr. Staley moved to the Investment Bank, and even after Mr. Staley left JPMorgan entirely.  SUF ¶¶ 3, 8, 30.  █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████

On these undisputed facts, the bank cannot establish that it had "delegated exclusive responsibility" to Mr. Staley for oversight of Epstein.  *Bd. of Managers of Olive Park Condo. v. Maspeth Props., LLC*, 95 N.Y.S.3d 344, 346 (2d Dep't 2019) (rejecting claim on that basis).  There is simply no evidence of an *exclusive* delegation of responsibility for Epstein to Mr. Staley.  *See Blackhawk*, 2022 WL 1136760, at *5.  Put differently, given the significant responsibilities of other bank employees with respect to Epstein, the undisputed facts establish that JPMorgan retained a duty that it owed to the plaintiffs.  *See Steinberg*, 2008 WL 2156726, at *6.

The indemnification claim is particularly deficient with respect to the settlement reached in the *Doe* case.  As the Court recognized at the motion-to-dismiss stage, Doe alleged "misconduct by JPMorgan that is independent from Staley."  ECF 293, at 19.  The Court did note that "at trial, the jury could decline to find that JPMorgan purposely engaged as a company in any misconduct but nevertheless reach the opposite conclusion as to Staley."  *Id.*  But now, given the *Doe* settlement, there will be no trial on Doe's mixed allegations, and the undisputed evidence shows that the bank paid for, and obtained, a dismissal of the *Doe* class complaint—which includes

13

allegations levied solely against the bank—and obtained broad releases for its own conduct and the conduct of its employees, officers, and agents other than Mr. Staley. *See* Settlement ¶¶ 1.26, 1.27. Moreover, the *Doe* settlement class covers all persons who were harmed by Jeffrey Epstein or his alleged sex trafficking venture "from January 1, 1998, to August 10, 2019." *Id.* ¶ 1.4. It is undisputed that Mr. Staley had not yet joined the Private Bank in January 1998, nor had any relationship with Epstein until years later. SUF ¶¶ 3, 6. Given these undisputed facts, Mr. Staley was not the exclusive source of the settlement amount and there can be no genuine dispute that the bank's settlement was "at least partially because of its own" fault. ECF No. 293, at 19. Mr. Staley cannot be held liable as indemnitor for the bank's decision to resolve allegations and pay for harm that he could not have had anything to do with.

## IV.   JPMorgan's Employment Claims Are Time-Barred.

Mr. Staley left JPMorgan in January 2013. SUF ¶ 9. At that time, any fiduciary duty and duty of loyalty to JPMorgan terminated. Because JPMorgan waited more than 10 years to bring its claims, those claims are timely only if they satisfy New York's two-year discovery rule. *See* N.Y. C.P.L.R. § 213(8); *see also* ECF No. 293, at 24 (MTD opinion).[8]

Actions sounding in fraud must be brought within either six years of accrual or "two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). Once a defendant makes "a prima facie case that a plaintiff

---

[8] "New York follows the traditional rule that statutes of limitations are procedural, and thus its own statute of limitations generally applies even where another state's substantive law governs." *GE Transp. Parts, LLC v. Cent. Ry. Mfg., LLC*, 2021 WL 827146, at *2 (S.D.N.Y. Mar. 4, 2021). And New York law determines not only the applicable statutes of limitations law but also "determines the related questions of what events serve to commence an action and to toll the statute of limitations." *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (citations omitted). Regardless, even under Delaware's three-year discovery rule, 10 Del. C. § 8106, and related tolling doctrines, JPMorgan's employment claims are barred, as explained below.

was on inquiry notice," the "burden then shifts to the plaintiff to establish that even if it had exercised reasonable diligence, it *could not* have discovered the basis for its claims before" the limitations period ended. *Epiphany Cmty. Nursery Sch. v. Levey*, 94 N.Y.S.3d 1, 5 (1st Dep't 2019) (emphasis added). "The test regarding when a plaintiff should have discovered an alleged fraud is an objective one." *Neuman v. Garcia*, 2022 WL 4448722, at \*11 (S.D.N.Y. Sept. 23, 2022) (quoting *Prestandrea v. Stein*, 692 N.Y.S.2d 689, 690 (2d Dep't 1999)). "[W]hether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which the fraud could be reasonably inferred." *Koral v. Saunders*, 36 F.4th 400, 408-09 (2d Cir. 2022) (cleaned up). "[A] duty of inquiry arises when the facts would suggest fraud to a person of ordinary intelligence. If the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose. If, however, some inquiry is made, the court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud." *Austin v. Fordham Univ.*, 2022 WL 4626485, at \*8 (S.D.N.Y. Sept. 30, 2022) (cleaned up).

The ultimate question is on what date, based on a reasonable inquiry, could "all elements of the tort[s] [have been] truthfully alleged in a complaint." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009) (citation omitted).

The undisputed facts now conclusively show that JPMorgan could have alleged the same employment claims it now brings at least three years before it actually did so. In its own words, JPMorgan's employment claims are based on allegations "that Staley abandoned the interests of JPMC and pursued exclusively personal ends." ECF No. 254, at 9. The bank describes "the very basis of [its] pending" claims as including allegations "that Staley regularly forwarded confidential information to Epstein . . . while simultaneously withholding material information from JPMC

regarding Epstein." *Id.* And for evidence, it points to allegations such as "Staley and Epstein regularly exchang[ing] emails about entirely personal matters, including their interest in women"; "Staley and Epstein repeatedly refer[ring] to each other [in these emails] as 'family'"; "Epstein help[ing] with Staley's daughter's graduate school admissions"; Mr. Staley taking "personal trips to Epstein's USVI residence, at Epstein's invitation"; as well as (false) allegations that Mr. Staley "sexually assaulted a woman introduced to him by Epstein." *Id.*

Mr. Staley denies, in the strongest terms, all allegations that he knew about anything improper relating to Epstein. But discovery has made clear beyond question that JPMorgan could have brought the same (meritless) employment claims no later than in 2019, and that it in fact had actual knowledge of its claims then but instead sat on its hands for over three years—until it wished to use a suit against Mr. Staley as media fodder to distract from its own compliance failures.

Following Epstein's arrest in July 2019, JPMorgan reviewed all email traffic between Mr. Staley's JPMorgan email address and Epstein—more than 1,200 emails in all. SUF ¶¶ 53-55, 59. As a result of that review, it created a 22-page, single-spaced digest focused largely on summarizing Mr. Staley's "close relationship" with Epstein and the supposedly confidential information that Mr. Staley shared with Epstein. SUF ¶¶ 59-60. The bank's review turned up all of the same emails that are cited in the plaintiffs' complaints, ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ SUF ¶¶ 60-61. (It had been publicly reported that Mr. Epstein used a modeling agency to recruit his victims. SUF ¶ 61.)

JPMorgan's investigation went further than simply reviewing emails, though. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

        ████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ But JPMorgan clearly had all of the information it needed to pursue these employment

claims in 2019, and it took the allegations against Mr. Staley seriously at that time. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Plainly, JPMorgan at

the time had sufficient "knowledge of facts from which the fraud [it asserts that Mr. Staley

committed] could be reasonably inferred." *Koral*, 36 F.4th at 408-09 (alteration and citation

omitted). ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

In other words, contrary to its contention at the motion-to-dismiss stage that all it had before 2022 were "[a] few tidbits" about Mr. Staley's relationship with Epstein, with no way to know "that Staley may have participated in Epstein's sex trafficking," ECF No. 150, at 19 (emphasis omitted), by 2019 at the latest the bank not only could have, but actually did, develop knowledge and allegations sufficient to plead the same claims that it brings now. [REDACTED]

[REDACTED]

[REDACTED] Similarly, USVI's complaint quotes from several emails between Mr. Staley and Epstein, concluding that they somehow show that Mr. Staley was aware of Epstein's sex trafficking.  ECF No. 17 at ¶¶ 55-61. [REDACTED]

[REDACTED]

Simply put, if the bank wanted to, it could have filed a suit alleging that Mr. Staley failed to report and in fact concealed his supposed knowledge of Epstein's sex trafficking.  Rather than bringing its claims then, when the underlying facts were *already* a decade old, the bank waited more than three additional years until it needed to use Mr. Staley to distract from the plaintiffs' allegations.

The bank will no doubt argue that it should not be charged with discovering its claims until it learned of Doe's allegations that Mr. Staley personally witnessed Epstein's abuse of women and even sexually assaulted her.  Those are the only Staley-related allegations that JPMorgan *did not* have access to as of November 2019.  But Doe's unproven allegation did not materially change what the bank already believed that it discovered by 2019 about Mr. Staley's supposed *disloyalty to JPMorgan*, which is what the employment claims concern.  ███████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████  The bank could have used these allegations to advance fiduciary duty and faithless servant claims in 2019, just as they are being used now, in 2023.  In fact, to the extent the bank has *ever* had allegations sufficient to allege that Mr. Staley learned about Epstein's sex trafficking by participating in it (which Mr. Staley denies), the bank could have made the same allegation in 2019.  After all, USVI made that very allegation based on even fewer facts.  Particularly given the "far [less] demanding" pleading standards in New York courts compared to federal courts, David D. Siegel & Patrick M. Connors, *New York Practice* § 211 (6th ed.), JPMorgan could have brought the employment claims starting in 2019 (if not earlier).  *See IDT Corp.*, 907 N.E.2d at 273.  It chose not to do so.

Nor can JPMorgan establish tolling of its claims based on Mr. Staley's supposed fraudulent concealment of his misconduct, as the bank alluded to in its opposition to Mr. Staley's motion to dismiss.  ECF No. 150, at 20.  JPMorgan has pointed to Mr. Staley signing a separation agreement with JPMorgan in 2013 in which he stated that he had reported to the bank all violations of its code

of conduct.  *Id.*  But tolling requires a plaintiff to show its actual "failure . . . to discover the operative facts underlying the action within the limitations period."  *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986).  Because JPMorgan—no later than late 2019—actually discovered the allegations that it needed to bring the claims at issue, it cannot invoke the doctrine of equitable tolling to justify bringing its claims *in 2023*.  And there definitively could not have been any fraudulent concealment given that JPMorgan at all times had access to the materials that it compiled in 2019—such as the email traffic between Mr. Staley and Epstein ███████████████████████████  SUF ¶¶ 53-56, 59-65.

Moreover, New York law's version of equitable tolling applies only where a plaintiff "establish[es] that subsequent and specific actions were taken by defendants, separate from those that provide the factual basis for the underlying cause of action, and that these subsequent actions by defendants somehow kept plaintiff from timely bringing suit."  *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 423 (S.D.N.Y. 2015) (cleaned up).  There is no evidence of any such subsequent and specific actions by Mr. Staley, and JPMorgan has not pursued any such evidence in the course of discovery.

At bottom, the record makes indisputably clear that JPMorgan could have brought its employment claims over three years ago, but it simply chose not to.  The Court should enter summary judgment recognizing the claims' expiration.

## CONCLUSION

For the foregoing reasons, Mr. Staley respectfully requests that the Court grant his motion for summary judgment and enter judgment in his favor on all claims.

Date: August 25, 2023                    Respectfully submitted,


                                         By: */s/ Stephen L. Wohlgemuth*

                                         Brendan V. Sullivan Jr.
                                         John M. McNichols
                                         Zachary K. Warren
                                         Eden Schiffmann
                                         WILLIAMS & CONNOLLY LLP
                                         680 Maine Avenue SW
                                         Washington, DC 20024
                                         Tel: (202) 434-5252
                                         Fax: (202) 434-5029
                                         bsullivan@wc.com

                                         Stephen L. Wohlgemuth
                                         WILLIAMS & CONNOLLY LLP
                                         650 Fifth Avenue, Suite 1500
                                         New York, NY 10019
                                         Tel: (202) 434-5390
                                         Fax: (202) 434-5029
                                         swohlgemuth@wc.com


                                         *Counsel for Third-Party Defendant*
                                         *James Edward Staley*

21