# EXHIBIT 68

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>      Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>      Defendant/Third-Party Plaintiff.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>      Defendant/Third-Party Plaintiff,<br><br>vs.<br><br>JAMES EDWARD STALEY,<br><br>      Third-Party Defendant. | Case Nos. 1:22-cv-10904 (JSR) |

**JPMORGAN CHASE BANK, N.A.'S SUPPLEMENTAL**
**RESPONSES AND OBJECTIONS TO INTERROGATORIES**
**IN LIEU OF RULE 30(B)(6) DEPOSITION TESTIMONY**

Pursuant to Federal Rules of Civil Procedure 26, 30, and 33, and by agreement with Third Party Defendant James Edward Staley ("Staley") as an alternative to certain topics in Staley's request for deposition testimony under Rule 30(b)(6), Third Party Plaintiff JPMorgan Chase Bank, N.A. ("JPMC") hereby serves its supplemental objections and responses to the topics set forth below, based on information reasonably available to JPMC at this time and without prejudice to JPMC's right to revise, supplement, or amend these objections and responses in accordance with Rules 26 and 33.

## PRELIMINARY STATEMENT

These objections and responses are made solely for the purposes of the above-captioned case. Each of JPMC's objections and responses is based on information and documents presently available to JPMC after reasonable inquiry. JPMC reserves the right to amend or supplement these objections and responses as necessary, including in the event further information and documents are discovered. In addition, JPMC's objections and responses are given without prejudice to its rights to introduce at trial evidence of any subsequently discovered or unintentionally omitted facts or documents.

To the extent JPMC responds to a specific interrogatory below, JPMC does not admit to Staley's characterization of any documents, facts, theories, or conclusions, and JPMC's responses do not constitute acquiescence or agreement to any definition proposed by Staley.

JPMC's objections and responses are made without in any way waiving or intending to waive, but to the contrary, are intended to preserve:

1. All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the responses or subject matter thereof, in this action or any subsequent proceeding associated with this action or any other matter;

2. The right to object on any ground to the use of said responses, or the subject matter thereof, in any subsequent proceeding associated with this action or any other matter; and

3. The right to object at any time to other requests or other discovery procedures involving or relating to the subject matter of these interrogatories.

## GENERAL OBJECTIONS

1. JPMC incorporates by reference all General Objections stated in its Responses and Objections to Staley's Notice of Deposition to JPMorgan Chase Bank, N.A., which JPMC served on July 3, 2023.

## OBJECTIONS TO DEFINITIONS

1.  JPMC incorporates by reference all Objections to Definitions stated in its Responses and Objections to Staley's Notice of Deposition to JPMorgan Chase Bank, N.A., which JPMC served on July 3, 2023.

## SPECIFIC RESPONSES

**TOPIC NO. 6:**

For each person listed in JPMorgan's Response to Mr. Staley's Interrogatory No. 3, the date(s) that each person visited a property owned by Epstein, the location of each visit, the reason for each visit, and the information that was learned as a result of each visit.

**RESPONSE TO TOPIC NO. 6:**

In addition to and specifically incorporating its General Objections and Objections to Definitions, JPMC objects to Topic No. 6 because it would be more convenient, less burdensome, and less expensive to obtain this discovery through interrogatories under Rule 33 or requests for production under Rule 34. Fed. R. Civ. P. 26(b)(2)(C)(i); *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017). JPMC also objects to Topic 6 because the phrase "the information learned as a result of each visit" is vague and ambiguous.

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC has identified the following employees who have visited properties owned by Jeffrey Epstein, the date of each visit, the location of each visit, and the purpose of each visit, to the extent JPMC has been able to identify it through reasonable inquiry:

| Name | Location | Date(s) (Purpose(s)) |
| --- | --- | --- |
| Paul Barrett (former Managing Director, Private Bank) | Epstein's Manhattan townhouse | April 24, 2013 (routine account servicing) |

| Name | Location | Date(s) (Purpose(s)) |
| --- | --- | --- |
| Mary Casey (Managing Director, Private Bank) | Epstein's Manhattan townhouse | Two or three occasions between 2000 and prior to his arrest in 2006 (routine account servicing) |
| James Condren (Associate General Counsel, Legal) | Epstein's Manhattan townhouse | May 2011 (discuss Bear Steans litigation) |
| John Duffy (former CEO, Private Bank) | Epstein's Manhattan townhouse | April 24, 2013 (discuss Epstein business and accounts) |
| Mary Erdoes (CEO, Asset & Wealth Management) | Epstein's Manhattan townhouse | May 2011 (discuss Bear Stearns litigation); summer of 2013 (termination of Epstein as client of JPM Private Bank) |
| David Frame (Global Chief Executive, Private Bank) | Epstein's Manhattan townhouse | April 24, 2013 (routine account servicing) |
| Christopher French (Managing Director, Private Bank) | Epstein's Manhattan townhouse | June 6, 2013 (routine account servicing) |
| Joanna Jagoda (former Assistant General Counsel, Legal) | Epstein's Manhattan townhouse | May 2011 (discuss Bear Stearns litigation) |
| Jeffrey Matusow (former Managing Director, Private Bank) | Epstein's Manhattan townhouse | April 8, 2010 (routine account servicing) |
| Thomas McGraw (Managing Director, Private Bank) | Epstein's Manhattan townhouse | December 14, 2010; November 20, 2012; May 10, 2012; January 15, 2013; April 4, 2013 (routine account servicing) |
| Paul Morris (former Banker, Private Bank) | Epstein's Manhattan townhouse | April 8, 2010; December 14, 2010; May 10, 2012 (routine account servicing) |
| Justin Nelson (Managing Director, Private Bank) | Epstein's Manhattan townhouse | November 20, 2012; January 15, 2013; April 4, 2013; April 24, 2013; June 6, 2013 (routine account servicing); May 8, 2014; December 3, 2014; May 4, 2015; September 29, 2015; November 19, 2015; December 14, 2015; February 14, 2017 (Leon Black) |

| Name | Location | Date(s) (Purpose(s)) |
|---|---|---|
| | Zorro Ranch, New Mexico | January 2016 (tour property, Epstein not present) |
| Carolyn Reers (former Managing Director, Private Bank) | Epstein's Manhattan townhouse | December 14, 2015 (Leon Black) |
| James von Moltke (former employee) | Epstein's Manhattan townhouse | Early 2004 (discuss Highbridge investment) |
| James Staley (former CEO, Investment Bank) | Epstein's Manhattan townhouse | Early 2004; January 7, 2010; April 7, 2010; May 21, 2010; June 2, 2010; July 8, 2010; September 21, 2010; January 6, 2011; January 19, 2011 |
| | Zorro Ranch, New Mexico | November 1, 2009 |
| | Little St. James in the U.S. Virgin Islands | January 22, 2011 |

**TOPIC NO. 25:**

Every specific instance of Mr. Staley's alleged "vouching" for Epstein to personnel at JPMorgan that JPMorgan contends to have occurred, as alleged in paragraphs 61 and 72 of the Third-Party Complaint. This topic includes the person(s) whom Mr. Staley communicated with, the dates of each communication, the medium of communication, who participated in the communication, what was said by each party to the communication, and the reasons for the communication.

**RESPONSE TO TOPIC NO. 25:**

In addition to and specifically incorporating its General Objections and Objections to Definitions, JPMC objects to Topic 25 because it would be more convenient, less burdensome, and less expensive to obtain this discovery through interrogatories under Rule 33 or requests for production under Rule 34. *See Liveperson, Inc.*, 2015 WL 4597546 at *7 (denying motion to compel 30(b)(6) testimony because "depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to

trial, must be discovered by other means." (quoting *Liberty Mut. Ins. Co.*, 209 F.R.D. at 362)). Discovery of contentions and legal theories is more appropriately sought through contention interrogatories, *Glenmark Generics Ltd.*, 2009 WL 3463912 at *1. JPMC also objects to Topic 25 because it would be more convenient, less burdensome, and less expensive to obtain this discovery through interrogatories under Rule 33 or requests for production under Rule 34. Fed. R. Civ. P. 26(b)(2)(C)(i); *Blackrock Allocation Target Shares*, 2017 WL 9400671 at *2.

JPMC also objects to Topic 25 because Staley's use of the term "vouched" in his Notice of Deposition to JPMC removes the term from its proper context and eliminates its direct object as it appears in JPMC's third-party complaint against Staley. JPMC will interpret the term "vouched" within its proper context—which is also consistent with term's plain, dictionary definition—to mean "confirm" or "verify" "Epstein's good character and conduct." Third-Party Compl. ¶¶ 61, 72. JPMC further objects to Topic 25 because instances of Staley's "vouching" for Epstein are uniquely within the knowledge of Staley himself and therefore, in some instances this information is more appropriately gathered from him. Fed. R. Civ. 26(b)(2)(C)(ii).

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC states that Staley vouched for Epstein's good character and conduct on at least the following occasions:

- In late 2009 or early 2010, Lisa Waters and Mary Casey met with Staley in Staley's office to discuss Epstein. Casey told Staley that she "no longer wanted to cover Mr. Epstein." Casey Tr. (7/6/23) 530:13-14. Waters then inquired of Staley why Epstein was still a JPMC client and encouraged Staley to end his, and the firm's, relationship with Epstein, commenting that Staley had daughters. Staley responded that he knew and trusted Epstein, and that he would trust Epstein with his daughters.

- On January 14, 2011, in connection with a Rapid Response Meeting, Staley advocated to retain Epstein as a client by telling William Langford and Catherine Keating that Epstein had not committed a crime, explaining that Epstein's lawyers were working to "get the plea thrown out." He added that Epstein "didn't actually do" what he pled guilty to and encouraged Langford and Keating to talk to Epstein's lawyers. Langford Tr. 370:10-17.

- In April 2011, in the course of advocating to retain Epstein as a client, Staley told Cutler that Epstein "had turned a page … had paid his debt to society, and that we ought to be continuing to bank Mr. Epstein at JPMorgan." Cutler (7/10/2023) Tr. 59:25-60:4.

- In July 2011, in the course of advocating to retain Epstein as a client, Staley told Cutler that he "felt very strongly that Mr. Epstein had paid his debt to society, had served his time, and was someone that a lot of other people trusted." Cutler Tr. (5/24/2023) 275:17-22.

- In late 2011, in the course of advocating to retain Epstein as a client, Staley once again expressed to Cutler that "he had paid his debt to society, he is trusted by a lot of people. It was in the frame of … it would somehow be unfair for JPMorgan to jettison the Epstein account." Cutler (7/10/2023) Tr. 115: 18-21.

- On August 11, 2011, John Duffy met with Staley in person to discuss Epstein. JPM-SDNYLIT-00454037. Duffy stated: "I really don't understand why Mr. Epstein is still a client at the bank." Duffy Tr. 68:16-18. Staley "rebuffed" Duffy. *Id.* 69:5-6. Staley continued that he "would trust Jeffrey with members of [his] family, his daughters." Duffy responded that "if I were asked why is Jeffrey Epstein a client of the bank at this stage, I would have to answer, because of Jes Staley." *Id.* 69:11-13.

- In late 2012, as Justin Nelson was being assigned to cover Epstein, Nelson called Staley to "rais[e] [his] concerns" about Epstein as a client based on news coverage surrounding

reports of Epstein's sexual misconduct.  Nelson Tr. 117:18.  Staley told Nelson: "I trust him [Epstein] and have a good relationship with him."  Nelson Tr. 117:19-21.

JPMC reserves the right to amend or supplement these objections and responses upon the conclusion of fact discovery and thereafter as necessary.  Furthermore, this list does not include the additional instances in which Staley's advocated to retain Epstein as a JPMC client, but did not vouch for Epstein's character.

Dated: August 11, 2023

JPMORGAN CHASE BANK, N.A.

By its attorneys,

/s/ *John Butts*
Felicia H. Ellsworth (admitted *pro hac vice*)
John J. Butts (admitted *pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(t) (617) 526-6687
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com


Boyd M. Johnson III
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com

- 9 -

## VERIFICATION OF INTERROGATORY ANSWERS

I, Francis J. Pearn, state that, based on reasonable inquiry, including a review of documents and information provided by other employees of JPMorgan Chase Bank, N.A. and counsel, the foregoing answers are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATED:       August 11, 2023

By: __**Francis J. Pearn**_____
    Francis J. Pearn

## CERTIFICATE OF SERVICE

      I hereby certify that on August 11, 2023, the foregoing document, titled "JPMorgan Chase Bank, N.A.'s Supplemental Responses and Objections to Interrogatories In Lieu of Rule 30(b)(6) Deposition Testimony," was served in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York upon the attorneys for the third-party defendant in the above-entitled action by electronic mail.

DATED:    August 11, 2023

                                                                       */s/ John Butts*
                                                                       John J. Butts