# EXHIBIT 157

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Government of the United States Virgin Islands,

        Plaintiff,

vs.

JPMorgan Chase Bank, N.A.,

        Defendant.

CASE NO.:  1:22-cv-10904 (JSR)

---

## JPMORGAN CHASE BANK, N.A.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES IN LIEU OF RULE 30(B)(6) DEPOSITION TESTIMONY

Pursuant to Federal Rules of Civil Procedure 26, 30, and 33, and by agreement of the parties as an alternative to certain topics in Plaintiff's request for deposition testimony under Rule 30(b)(6), Defendant JPMorgan Chase Bank, N.A. ("JPMC") hereby serves its first supplemental objections and responses to the topics set forth below, based on information reasonably available to JPMC at this time and without prejudice to JPMC's right to revise, supplement, or amend these objections and responses in accordance with Rules 26 and 33.

## PRELIMINARY STATEMENT

These objections and responses are made solely for the purposes of the above-captioned case.  Each of JPMC's objections and responses to Plaintiff's Interrogatories is based on information and documents presently available to JPMC after reasonable inquiry.  Discovery is ongoing and JPMC specifically reserves the right to amend or supplement these objections and responses as necessary, including in the event further information and documents are discovered or produced by JPMC after discovery has been completed.  In addition, JPMC's objections and

responses are given without prejudice to its rights to introduce at trial evidence of any subsequently discovered or unintentionally omitted facts or documents.

To the extent JPMC responds to a specific interrogatory below, JPMC does not admit to Plaintiff's characterization of any documents, facts, theories, or conclusions. JPMC's responses to the Interrogatories do not constitute acquiescence or agreement to any definition proposed by Plaintiff.

JPMC's objections and responses are made without in any way waiving or intending to waive, but to the contrary, are intended to preserve:

1.      All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the responses or subject matter thereof, in this action or any subsequent proceeding associated with this action or any other matter;

2.      The right to object on any ground to the use of said responses, or the subject matter thereof, in any subsequent proceeding associated with this action or any other matter; and

3.      The right to object at any time to other requests or other discovery procedures involving or relating to the subject matter of these Interrogatories.

**GENERAL OBJECTIONS**

1.      JPMC incorporates by reference all General Objections stated in its Responses and Objections to Plaintiff's Notice of Deposition to JPMorgan Chase Bank, N.A., which JPMC served on February 15, 2023.

**OBJECTIONS TO DEFINITIONS**

1.      JPMC incorporates by reference all Objections to Definitions stated in its Responses and Objections to Plaintiff's Notice of Deposition to JPMorgan Chase Bank, N.A., which JPMC served on February 15, 2023.

- 2 -

## SPECIFIC RESPONSES

**TOPIC NO. 7**

Any discussion of Epstein or Epstein Accounts by Your compliance-related committees, senior executives, and/or Board members and committees, including any documentation, including, but not limited to, notes, memorandum, electronic mail about these discussions and decisions, if any, made as a result.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 7:**

In addition to and specifically incorporating its foregoing General Objections and Objections to Definitions, JPMC objects to Topic No. 7 on the grounds that complying with this topic would impose undue burden and expense that is disproportionate to the issues in the case. Fed. R. Civ. P. 26(b)(1). That is especially so where the information sought in Topic No. 7 can be obtained from a more convenient, less burdensome, or less expensive source, such as requests for production of documents under Rule 34 or depositions under Rule 30(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i); *Blackrock*, 2017 WL 9400671 at *2 ("[A] Rule 30(b)(6) deposition should not be a 'memory contest' of topics better suited to a written response or a supplemental document production." (citation omitted)). JPMC also objects to Topic No. 7 to the extent it seeks information prohibited from disclosure under federal law. *See, e.g.*, 15 U.S.C. § 6802; 31 U.S.C. § 5318. JPMC is prohibited by the Bank Secrecy Act and federal regulation from disclosing information related to SARs, including any material that would disclose whether or not a particular SAR was filed. The prohibition against disclosure cannot be waived by JPMC. *See* 31 U.S.C. § 5318(g)(2)(A)(i); 12 C.F.R. § 21.11; 31 C.F.R. § 1020.320.

JPMC further objects to Topic No. 7 to the extent that it seeks testimony pertaining to matters subject to attorney-client privilege, bank examiner privilege, work product doctrine, or any other applicable privilege. JPMC also objects to Topic No. 7 as vague and ambiguous because the topic preface "[a]ny discussion" is not defined and vastly overbroad, and so the scope of the

testimony sought is not limited with any reasonable particularity. Fed. R. Civ. P. 30(b)(6); *City of Almaty v. Sater*, 2022 WL 10374082, *3 (S.D.N.Y. Oct. 18, 2022). It would be impossible to educate a corporate representative on literally "any discussion" pertaining to Topic No. 7. JPMC further objects on the grounds that the terms "compliance-related committee" and "senior executives" are vague and ambiguous.

In the parties' meet and confers, JPMC agreed to provide, and USVI agreed to accept in lieu of testimony, an interrogatory answer identifying any meetings of JPMC's Board of Directors between 2000 and 2019 in which Epstein-related issues were discussed and, for any such meetings, to produce board minutes and presentations on those issues (redacting unrelated issues).

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC states that Epstein-related issues were not discussed at any of its Board of Directors' meetings between January 1, 2000 and August 31, 2019. Between September 2019 and December 31, 2019, Epstein-related issues were discussed at two of its Board of Directors' meetings. Each of those discussions, and related documents, are protected by attorney-client privilege. JPMC will not produce these documents. JPMC will, however, identify them on a privilege log in due course. In addition, Epstein related issues were addressed in an August 2019 update to the Board of Directors' Risk Committee and in a meeting of that committee held on September 16, 2019. JPMC will produce related documents with unrelated issues redacted.

## TOPIC NO. 16

Your handling of customers or accounts associated with potential commercial sex or human trafficking, including child sex trafficking, sex trafficking, forced labor, and child exploitation or child abuse or sex offenses unrelated to Epstein Accounts including the number of customers or accounts that were monitored, what due diligence was performed, and whether JPMorgan terminated relationships with any clients as a result thereof.

**RESPONSE TO TOPIC NO. 16:**

In addition to and specifically incorporating its foregoing General Objections and Objections to Definitions, JPMC objects to Topic No. 16 to the extent that it seeks information "unrelated to Epstein accounts," which is not "relevant to any party's claim or defense" and thus not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). JPMC also objects to Topic No. 16 because it seeks information that can be obtained from a more convenient, less burdensome, or less expensive source, such as requests for production of documents under Rule 34 or depositions under Rule 30(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i). JPMC also objects to Topic No. 16 because the phrases "handling of customers or accounts" and "associated with potential commercial sex or human trafficking" as well as the term "monitored" are vague and ambiguous. Topic No. 16 is also vague and ambiguous due its unclear use of coordinating conjunctions and multiple nested lists.

In the parties' meet and confers, JPMC agreed to provide, and USVI agreed to accept—in addition to 30(b)(6) testimony, at an appropriate level of generality, about JPMC's evaluation of typologies associated with Human Trafficking—an interrogatory answer: (1) explaining the general steps it took to monitor accounts for sex trafficking and the types of diligence performed; and (2) to the extent it can be determined from centralized sources of data, the number of customers/accounts monitored for sex trafficking or how many were terminated as a result of concerns relating to sex trafficking.

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC states that has taken various general steps to monitor accounts for a wide range of activity that might involve financial crime, which can be a byproduct of sex trafficking. With respect to customers, JPMC has implemented policies and compliance programs concerning Anti-Money Laundering, Know Your Customer due diligence, and Anti-Corruption, Anti-Money

Laundering, and Know Your Customer due diligence.  These efforts have included monitoring customer transactions using monitoring systems that have evolved over the years, and included SONAR, FORTENT, and MANTAS, as well as workflow management systems such as HALO and FCIP.  These transactions monitoring systems apply to all account activity within JPMC's Private Bank and have included monitoring for things like flow through transactions, certain types of transactions with high-risk countries, structured transactions to avoid currency transaction report requirements, and unusual transactions, and sudden activity within a dormant account. Further, around 2009-2010, JPMC undertook a focused study of human trafficking to, among other things, better understand how its AML policies could protect against money laundering involved in such trafficking, which resulted in the development of a typology for a marker of potential sex trafficking.

In addition, JPMC has been a member of the Wolfsberg Group, an association of 13 global banks that aims to develop frameworks and guidance for the management of financial crime risks, particularly with respect to AML and counter-terror financing policies.  It has also participated in the Joint Money Laundering Intelligence Taskforce, a public-private information sharing forum in the U.K., which has worked to understand and disrupt funding flows linked to threats such as organized immigration crime, human trafficking and modern slavery.

JPMC has terminated many accounts based on concerns about potential illegal activity that have arisen out of its BSA/AML and transaction monitoring program.  Between 2010 and 2019, JPMC approximately 3,200 accounts based on concerns related to human trafficking, sex trafficking, or prostitution.  Data does not exist to enable to assess the number of closures prior to 2010 that were based on such concerns.

**TOPIC NO. 18**

**RESPONSE TO TOPIC NO. 18**

DocuSign Envelope ID: F633BBA0-9BB9-4D9F-99D5-F9C1399D6BEA









## TOPIC NO. 21 (as amended)

Any information JPMorgan has relating to Epstein's illegal and/or conduct, including, but not limited:

(a)    Epstein's criminal history, including Epstein's 2006 Florida arrest and his 2008 guilty plea stemming from that arrest;

(b)    Epstein's registration as a sex offender;

(c)    large cash withdrawals from Epstein-related accounts;

(d)    wire transfers from Epstein-related accounts to women with Eastern European surnames;

(e)    Epstein's association with young or underage girls;

(f)    any visit by JPMorgan employees to one of Epstein's properties, including his Manhattan townhouse, Little St. James in the U.S. Virgin Islands, Zorro Ranch in New Mexico, and his home in Palm Beach;

(g)    Any litigation filed by alleged Epstein victims;

(h)    Government investigations of Epstein or any investigative material that is publicly available; and

(i)    News articles relating to Epstein's involvement in human trafficking or other sex-related crimes.

## RESPONSE TO TOPIC NO. 21

In addition to and specifically incorporating its foregoing General Objections and Objections to Definitions, JPMC objects to Topic No. 21 on the grounds that complying with this topic would impose undue burden and expense that is disproportionate to the issues in the case, especially where the information sought can be obtained from a more convenient, less burdensome, or less expensive source, such as requests for production of documents under Rule 34. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C)(i). JPMC also objects to the extent that this topic seeks testimony pertaining to matters subject to attorney-client privilege, work product doctrine, or any other applicable privilege. JPMC further objects on the grounds that this Topic contains terms are vague and ambiguous, including: "large cash withdrawals," "women with Eastern European surnames," and "association with young or underage girls."

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC provides the following responses:

(a)     Epstein's criminal history, including Epstein's 2006 Florida arrest and his 2008
        guilty plea stemming from that arrest;

(b)     Epstein's registration as a sex offender;

On July 26, 2006, a JPMC employee emailed a news article to other JPMC employees that discussed Epstein's indictment on one count of felony solicitation of prostitution. *See* JPM-SDNYLIT-00105789. On July 1, 2008, JPMC employees emailed and discussed a news article reporting Epstein's guilty plea to felony solicitation of prostitution and procuring a person under 18 for prostitution. *See* JPM-SDNYLIT-00002952. That article stated that upon Epstein's release from prison, he would need to register as a sex offender wherever he goes in the U.S. *See id.* On November 18, 2011, JPMC employees emailed a news article reporting that the New York Court of Appeals had upheld Epstein's status as a Level 3 sex offender. *See* JPM-SDNYLIT-00153179. Pursuant to Fed. R. Civ. P. 33(d), JPMC refers USVI to documents cited above. The burden of ascertaining the answer to this request from those documents is substantially the same for the USVI as JPMC.

(c)     *large cash withdrawals from Epstein-related accounts;*

JPMC receives and records data from transactions, including cash transactions, involving a JPMC account at or about the time of the transaction. The date on which JPMC received information about cash transactions in Epstein accounts is reflected in account statements, which JPMC has produced at JPM-SDNYLIT-00037279 to JPM-SDNYLIT-00091034. In addition, cash withdrawals from Epstein's accounts are discussed in some Rapid Response Team documents, Know-Your-Customer documents, Due Diligence Review documents, ███████████████

███████. *See*, *e.g.* JPM-SDNYLIT-00149613–JPM-SDNYLIT-00149869; JPM-SDNYLIT-00036258–JPM-SDNYLIT-00037278. Pursuant to Fed. R. Civ. P. 33(d), JPMC refers USVI to documents cited above. The burden of ascertaining the answer to this request from those documents is substantially the same for the USVI as JPMC.

- 13 -

  (d) *wire transfer from Epstein-related accounts to women with Eastern European surnames;*

   Wire transfers from accounts of Epstein and potentially Epstein-related individuals and entities are reflected in documents in account statements which can be found at JPM-SDNYLIT00157291 – JPM-SDNYLIT-00173952.  Pursuant to Fed. R. Civ. P. 33(d), JPMC refers USVI to documents cited above.  The burden of ascertaining the answer to this request from those documents is substantially the same for the USVI as JPMC.

  (e) *Epstein's association with young or underage girls;*

   JPMC interprets the phrase "young or underage girls" to refer to females under the age of 18 and answers as follows:  On July 1, 2008, JPMC employees emailed and discussed a news article reporting Epstein's pleading guilty to felony solicitation of prostitution and procuring a person under 18 for prostitution.  *See* JPM-SDNYLIT-00002952. On November 18, 2011, JPMC employees emailed a news article that stated Epstein had been convicted of soliciting a minor.  *See* JPM-SDNYLIT-00153179.  At least some Know-Your-Customer ("KYC") and Due Diligence Review ("DDR") documents referenced Epstein's conviction and alleged conduct involving minors.  *See* JPM-SDNYLIT-00036570; JPM-SDNYLIT-00036300; JPM-SDNYLIT-00036258. In addition, JPMC employees also identified news coverage regarding Epstein's arrest in 2019 following his indictment for alleged conduct between 2002 and 2005.  *See* JPM-SDNYLIT-00150144; JPM-SDNYLIT-00154016.  Pursuant to Fed. R. Civ. P. 33(d), JPMC refers USVI to documents cited above.  The burden of ascertaining the answer to this request from those documents is substantially the same for the USVI as JPMC.

  (f) *any visit by JPMorgan employees to one of Epstein's properties, including his Manhattan townhouse, Little St. James in the U.S. Virgin Islands, Zorro Ranch in New Mexico, and his home in Palm Beach;*

JPMC understands that James Staley met with Epstein at his Manhattan townhouse on January 7, 2010; April 7, 2010; May 21, 2010; June 2, 2010; July 8, 2010; September 21, 2010; January 6, 2011; January 19, 2011.  Staley also traveled to Little St. James in the U.S. Virgin Islands on November 1, 2009 and on January 22, 2011.

Justin Nelson met with Epstein at his Manhattan townhouse on November 20, 2012; January 15, 2013; April 4, 2013 with Thomas McGraw; on April 24, 2013 with David Frame and Paul Barrett; June 6, 2013 with Chris French; May 8, 2014; December 3, 2014; May 4, 2015; September 29, 2015; November 19, 2015; December 14, 2015 with Carolyn Reers;  February 14, 2017.  In January 2016 he went to the Zorro Ranch..

Paul Morris met with Epstein at his Manhattan townhouse on April 8, 2010 with Jeffrey Matusow and on December 14, 2010 and May 10, 2012 with Thomas McGraw.

Mary Casey met with Epstein at his Manhattan townhouse on two or three occasions between 2000 and prior to his arrest in 2006.  Others from JPMC who she cannot recall attended each of those meetings with her.

Mary Erdoes met with Epstein twice at his Manhattan townhouse in 2011 and in the Summer of 2013.

John Duffy met with Epstein at his Manhattan townhouse on April 24, 2013.

Jim Condren and Joanna Jagoda met with Epstein at his Manhattan townhouse in May 2011.

(g)     *Any litigation filed by alleged Epstein victims;*

On July 23, 2010, a JPMC employee emailed another JPMC regarding a news article, which reported that Epstein had settled lawsuits with potential victims.  *See* JPM-SDNYLIT-00100251. On November 8, 2010, a JPMC employee emailed other JPMC employees news reports regarding Epstein, which discussed settlements between Epstein and alleged victims.  *See* JPM-

- 15 -

SDNYLIT-00010816. At least one KYC document stated that Epstein had settled up to a dozen civil lawsuits with alleged victims out of court. *See* JPM-SDNYLIT-00036258. Pursuant to Fed. R. Civ. P. 33(d), JPMC refers USVI to documents cited above. The burden of ascertaining the answer to this request from those documents is substantially the same for the USVI as JPMC.

> (h)     *Government investigations of Epstein or any investigative material that is publicly available; and*
> (i)     *News articles relating to Epstein's involvement in human trafficking or other sex-related crimes.*

Subsequent to his guilty plea, JPMC employees identified news coverage reporting that law enforcement authorities were continuing to investigate Epstein's activities prior to his arrest in the Florida matter. *See* JPM-SDNYLIT-00105789; JPM-SDNYLIT-00105857; JPM-SDNYLIT-00000314; JPM-SDNYLIT-00100251; JPM-SDNYLIT-00012008; JPM-SDNYLIT-00012010-11; JPM-SDNYLIT-00012014-15; JPM-SDNYLIT-00010816-17; JPM-SDNYLIT-00100251; JPM-SDNYLIT-00152738-42; JPM-SDNYLIT-00013432-33; JPM-SDNYLIT-00012008-15; JPM-SDNYLIT-00036570; JPM-SDNYLIT-00036300; JPM-SDNYLIT-00036258; JPM-SDNYLIT-00035173. JPMC employees also identified news coverage regarding Epstein's arrest in 2019 following his indictment for alleged conduct between 2002 and 2005. *See* JPM-SDNYLIT-00150144. Pursuant to Fed. R. Civ. P. 33(d), JPMC refers USVI to documents cited above. The burden of ascertaining the answer to this request from those documents is substantially the same for the USVI as JPMC.

## TOPIC NO. 26

Your Board of Directors,' including the Board's Audit, Risk, and Public Responsibility committees,' knowledge and oversight of Your BSA/AML Compliance Program, including, but not limited to, with respect to commercial sex or human trafficking, including child sex trafficking,

sex trafficking, forced labor, and child exploitation or sexual abuse, Government investigations and/or actions against JPMorgan, and the Epstein Accounts.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 26**

In addition to and specifically incorporating its foregoing General Objections and Objections to Definitions, JPMC objects to Topic No. 26 to the extent it seeks testimony on matters unrelated to Epstein or Epstein-related individuals and therefore not "relevant to any party's claim or defense" and not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). JPMC further objects to Topic No. 26 because it would be more convenient, less burdensome, and less expensive to obtain discovery into policies and procedures encompassed by this topic through requests for production under Rule 34. Fed. R. Civ. P. 26(b)(2)(C)(i); *Blackrock*, 2017 WL 9400671 at *2. JPMC also objects to the extent that it seeks testimony pertaining to matters subject to the attorney-client privilege, bank examiner privilege, work product doctrine, or any other applicable privilege. JPMC also objects to Topic No. 19 to the extent it seeks information prohibited from disclosure under federal law. *See, e.g.*, 15 U.S.C. § 6802; 31 U.S.C. § 5318. JPMC is prohibited by the Bank Secrecy Act and federal regulation from disclosing information related to SARs, including any material that would disclose whether or not a particular SAR was filed. The prohibition against disclosure cannot be waived by JPMC. *See* 31 U.S.C. § 5318(g)(2)(A)(i); 12 C.F.R. § 21.11; 31 C.F.R. § 1020.320.

In the parties' meet and confers, JPMC agreed to provide, and USVI agreed to accept in lieu of testimony, an interrogatory answer identifying any meetings of JPMC's Board of Directors between 2000 and 2019 in which Epstein-related issues were discussed, and for any such meetings to provide board minutes and presentations on those issues (redacting unrelated issues).

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC states that Epstein-related issues were not discussed at any of its Board of

Directors' meetings between January 1, 2000 and August 31, 2019. Between September 1, 2019 and December 31, 2019, Epstein-related issues were discussed during two of its Board of Directors' meetings. Each of those discussions, and related documents, are protected by attorney-client privilege. JPMC will not produce these documents. JPMC will, however, identify them on a privilege log in due course. In addition, Epstein related issues were addressed in an August 2019 update to the Board of Directors' Risk Committee and in a meeting of that committee held on September 16, 2019.

**TOPIC NO. 28**

Any inquiries You made to local, state, federal, or international law enforcement agencies regarding Epstein and/or any Epstein Account.

**RESPONSE TO TOPIC NO. 28**

In addition to and specifically incorporating its foregoing General Objections and Objections to Definitions and Instructions, JPMC objects to Topic No. 28 on the grounds that it that it seeks testimony on matters that are not "relevant to any party's claim or defense," and would also impose an undue burden that is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving its objections, and based upon a reasonable and diligent investigation, JPMC states that in March 2011, at the direction of JPMC's then-General Counsel, Stephen Cutler, the then-General Counsel of JPMC's Investment Bank, Jonathan Schwartz, contacted the U.S. Attorney for the Southern District of Florida in an effort to determine whether there was an active criminal investigation into Epstein for alleged sex crimes. Mr. Schwartz contacted the U.S. Attorney in response to contemporaneous press reports regarding Epstein. Schwartz spoke to the U.S. Attorney, but the U.S. Attorney did not disclose the existence of any such investigation.

In addition, at some point around 2009-2011, Phillip DeLuca called Special Agent Tim Moyer, a regular contact of Mr. DeLuca's at the FBI, to inquire about Epstein. Mr. Moyer told Mr. DeLuca over the phone that he would call Mr. DeLuca back later to discuss Epstein, but Mr. Moyer did not do so.

Dated: April 14, 2023

JPMORGAN CHASE BANK, N.A.

By: *John Butts* _____

Boyd M. Johnson III
Robert L. Boone
Hillary Chutter-Ames
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
(f) (212) 230-8888
boyd.johnson@wilmerhale.com
robert.boone@wilmerhale.com
hillary.chutter-ames@wilmerhale.com

Felicia H. Ellsworth
John J. Butts
60 State Street
Boston, MA 02109
(t) (617) 526-6687
(f) (617) 526-5000
felicia.ellsworth@wilmerhale.com
john.butts@wilmerhale.com

## <u>VERIFICATION OF INTERROGATORY ANSWERS</u>

I, Francis J. Pearn, state that, based on reasonable inquiry, including a review of documents and information provided by other employees of JPMorgan Chase Bank, N.A. and counsel, the foregoing answers are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATED:       April 14, 2023

By:       **Francis J. Pearn**
          Francis J. Pearn

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, the foregoing document, titled "JPMorgan Chase Bank, N.A.'s Responses and Objections to Interrogatories In Lieu of Rule 30(b)(6) Deposition Testimony," was served in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York upon the attorneys for the plaintiff in the above-entitled action by electronic mail.

DATED:        April 14, 2023

By: _John Butts_
_____

John J. Butts