IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br>v.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>　　　Defendant/Third-Party Plaintiff,<br><br>v.<br><br>JAMES EDWARD STALEY<br><br>　　　Third-Party Defendant. | Case Number: 1:22-cv-10019-JSR |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>　　　Plaintiff,<br>v.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>　　　Defendant/Third-Party Plaintiff,<br>v.<br><br>JAMES EDWARD STALEY<br><br>　　　Third-Party Defendant. | Case Number: 1:22-cv-10904-JSR |

**THIRD-PARTY DEFENDANT JAMES STALEY'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. As a Matter of Law, the *Doe* Settlement Cannot Be Recovered Under a Contribution or Disguised Contribution Theory ................................................................................................ 1

II. JPMorgan Cannot Recover for the Money That It Might Owe USVI ...................................... 3

III. The Undisputed Facts Preclude the Indemnification Claims ...................................... 5

IV. JPMorgan's Employment Claims Are Time-Barred ................................................................ 7

CONCLUSION ................................................................................................................................ 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44 (S.D.N.Y. 2016)..............10

*Allstate Ins. Co. v. Am. Transit Ins. Co.*, 977 F. Supp. 197 (E.D.N.Y. 1997) ................................2

*Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC*,
   55 N.Y.S.3d 374 (2d. Dep't 2017)..............................................................................................6

*Cascade Builders Corp. v. Rugar*, 147 N.Y.S.3d 739 (3d Dep't 2021) ..........................................2

*Cole v. Miraflor*, 2006 WL 457817 (S.D.N.Y. Feb. 23, 2006)......................................................10

*De Sole v. Knoedler Gallery*, LLC, 137 F. Supp. 3d 387 (S.D.N.Y. 2015)...................................10

*Elican Holdings, Inc. v. Hudson Oil Refin. Corp.*, 466 N.Y.S.2d 22 (1st Dep't 1983)...................4

*Glaser v. M. Fortunoff of Westbury Corp.*, 524 N.E.2d 413 (N.Y. 1988) ......................................2

*Hartford Acc. & Indem. Co. v. Vill. of Hempstead*, 397 N.E.2d 737 (N.Y. 1979) .........................3

*In re Deepwater Horizon*, 753 F.3d 570 (5th Cir. 2014) ............................................................4, 5

*Laidlaw Env't Servs., Inc. v. Honeywell, Inc.*, 966 F. Supp. 1401 (D.S.C. 1996) ..........................4

*McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794 (N.Y. 2011)....................................................6

*Merchs. Bank of N.Y. v. Credit Suisse Bank*, 585 F. Supp. 304 (S.D.N.Y. 1984) .........................2

*Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000)..........................................................5

*O'Neill v. Yield House Inc.*, 964 F. Supp. 806 (S.D.N.Y. 1997) ....................................................3

*Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184 (N.Y. 2008) ...................................................9

*Robinson v. Great Performances/Artists as Waitresses, Inc.*,
   147 N.Y.S.3d 37 (1st Dep't 2021) ..............................................................................................4

*Rosado v. Proctor & Schwartz, Inc.*, 484 N.E.2d 1354 (N.Y. 1985)..................................1, 2, 3, 5

*Scalia v. MICA Contracting, LLC*, 2019 WL 6711616 (S.D. Ohio Dec. 10, 2019) .......................5

*Scott v. JPMorgan Chase & Co.*, 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014)...............................3

*Steinberg v. Sherman*, 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ..............................................6

*Trower v. MDI, Inc.*, 2009 WL 10671153 (C.D. Cal. May 15, 2009).........................................4, 5

*United States v. Whitehill*, 2018 WL 459300 (W.D.N.Y. Jan. 18, 2018) ......................................... 4

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) ........................................................ 7

## STATUTES AND RULES

N.Y. C.P.L.R. 3016(b) ........................................................................................................................ 9

N.Y. Gen. Oblig. Law § 15-108 ......................................................................................................... 1

## OTHER AUTHORITIES

David D. Siegel & Patrick M. Connors, *New York Practice* § 216 (6th ed.) .................................... 9

JPMorgan's opposition pulls a page out of the same tired playbook that has motivated this case from the start: Hoping to distract from the undisputed fact that it provided banking services to a known sex offender who used his JPMorgan accounts to engage in years of suspect transactions, the bank tries to drag Mr. Staley through the mud. But the mudslinging is irrelevant to Mr. Staley's pending motion. What does matter is that the bank has no answer to the numerous legal deficiencies that Mr. Staley has identified. The bank's opposition only confirms that summary judgment must be entered based on clear legal principles and undisputed facts.

## I. As a Matter of Law, the *Doe* Settlement Cannot Be Recovered Under a Contribution or Disguised Contribution Theory.

JPMorgan concedes that section 15-108(c) applies to the *Doe* settlement. *See* Opp. 2. So both parties agree that the contribution claim is extinguished. *Id.* The only dispute, then, is whether the bank can turn around and seek the same relief under the label of a different cause of action, hollowing out section 15-108(c)'s settlement bar in the process.

JPMorgan asserts that section 15-108 applies only to causes of action explicitly denominated as "contribution" claims, Opp. 3, but case law from the New York Court of Appeals confirms the opposite. In *Rosado*, the Court explained that the legislature amended section 15-108 to grant finality to settlements and "remove a disincentive to settlement" posed by further litigation haggling over precise amounts owed. *Rosado v. Proctor & Schwartz, Inc.*, 484 N.E.2d 1354, 1356 (N.Y. 1985). Indemnification claims are spared "[i]nasmuch as an entire shifting of the loss to another would not act as a disincentive to settlement *or necessitate an examination of relative degrees of fault*." *Id.* (emphasis added). The Court warned against parties "circumvent[ing]" section 15-108 through artful pleading, and in *Rosado* the Court rejected a *de facto* contribution claim that a third-party plaintiff disguised as a common-law indemnification claim or alternatively as a claim for "breach of duty" owed to it. *Id.* at 1357. Survival of any post-

1

settlement claim seeking to recover from a third-party defendant thus "depends upon whether [the] claim is more accurately characterized as one for common-law indemnification or one for contribution," which in turn "requires a careful analysis of the theory of recovery." *Glaser v. M. Fortunoff of Westbury Corp.*, 524 N.E.2d 413, 415 (N.Y. 1988) (citation omitted). As explained in Mr. Staley's opening brief (at 8-9), recovery for the *Doe* settlement via the breach-of-fiduciary-duty claim here will require the very "examination of relative degrees of fault" that *Rosado* forbids. 484 N.E.2d at 1356. Importantly, the bank does not dispute that its fiduciary-duty claim will require such an examination of comparative fault. Its claim therefore is a disguised contribution claim that is barred by *Rosado* and its progeny.

JPMorgan ignores these settled principles in favor of citing unreasoned and distinguishable cases. *See* Opp. 3  One of its cases, *Merchants Bank*, was decided before *Rosado* and *Glaser*, and it contains zero indication that any party briefed whether claims other than a contribution claim should proceed after settlement; thus it is no help at all. *See Merchs. Bank of N.Y. v. Credit Suisse Bank*, 585 F. Supp. 304, 310 (S.D.N.Y. 1984). And both *Allstate Insurance* and *Cascade Builders* did not involve disguised contribution claims, as there is no indication that the plaintiffs were advancing claims that required divvying up a settlement based on relative degrees of fault. *Allstate Ins. Co. v. Am. Transit Ins. Co.*, 977 F. Supp. 197, 200 (E.D.N.Y. 1997) (finding no settlement bar where excess insurer merely claimed that the primary insurer breached its fiduciary duties by not providing notice of a lawsuit that eventually settled); *Cascade Builders Corp. v. Rugar*, 147 N.Y.S.3d 739, 742 (3d Dep't 2021) (finding no settlement bar where plaintiff did "not seek to recover . . . the proportionate share of damages"). The bank, by contrast, seeks exactly that.

JPMorgan otherwise tries to get around the bar on disguised contribution claims with word games, contending that the fiduciary duty claim somehow seeks money *based on* the *Doe*

2

settlement but not *for* the *Doe* settlement.  Opp. 4.  That is, instead of contribution, the bank says it wants damages "in the form of litigation costs and *any associated payments or awards*."  *Id.* (emphasis added).  But that is just a lawyer's way of saying that it wants to recoup Mr. Staley's proportionate share of the settlement, which it cannot do.  At bottom, JPMorgan would have the jury "examin[e]" the "relative degrees of fault" and award proportional reimbursement from Mr. Staley for the *Doe* settlement.  *Rosado*, 484 N.E.2d at 1356.  New York law bars that theory.

**II.     JPMorgan Cannot Recover for the Money That It Might Owe USVI.**

In response to Mr. Staley's contention that he cannot be liable to JPMorgan for any civil penalties, disgorgement and/or restitution, punitive damages, or costs associated with equitable relief that the bank might ultimately owe USVI, JPMorgan (i) concedes that it cannot recover disgorgement (Opp. 9); (ii) never disputes that it cannot recover restitution or the costs of equitable relief (*id.* 5-9);[1] and (iii) agrees that it cannot recover civil penalties under its contribution claim (*id.* 6).  JPMorgan instead contends that it can recover civil penalties directed against it and owed to the USVI via its indemnification and fiduciary duty claims.[2]

The bank is wrong.  Remarkably, it does not cite even one case in which a plaintiff was able to offload civil penalties onto a third party.  That is no surprise—caselaw is clear that "public policy considerations preclude either indemnification or contribution for the consequences of . . .

---

[1] Failure to address an argument in an opposition brief concedes the point.  *Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (collecting cases).

[2] In a footnote, JPMorgan suggests that punitive damages can be shifted to a third party via an indemnification claim.  Opp. 8 n.6.  But "New York law clearly precludes indemnification for punitive damages."  *O'Neill v. Yield House Inc.*, 964 F. Supp. 806, 809 (S.D.N.Y. 1997).  While the bank notes that these cases arise in the context of contractual indemnification, there is no reason the rule should be any different for common-law indemnification.  After all, "punitive damages are imposed not as compensation but as punishment and as a deterrent"—therefore "the policy behind their imposition would be defeated were an individual insured permitted to avoid the burden of such damages by passing it on."  *Hartford Acc. & Indem. Co. v. Vill. of Hempstead*, 397 N.E.2d 737, 742 (N.Y. 1979).  And JPMorgan naturally fails to cite any case where a party *did* shift punitive damages to a third party via a common-law indemnification claim.

3

illegal acts." *Elican Holdings, Inc. v. Hudson Oil Refin. Corp.*, 466 N.Y.S.2d 22, 23 (1st Dep't 1983); *see also Robinson v. Great Performances/Artists as Waitresses, Inc.*, 147 N.Y.S. 37, 38 (1st Dep't 2021) (explaining that indemnification, "whether contractual or otherwise," is "against public policy" for violations of New York labor law).[3]  That authority ends the matter.

JPMorgan tries to read in an exception for instances in which civil penalties are assessed on a blameless defendant whose liability is attributable solely to the conduct of a third party. Opp. 7-8. But it cites no New York authority that actually articulates such a rule. And other courts have considered and rejected the same argument. The Fifth Circuit, for example, has held that indemnity is not available for civil penalties issued under the Clean Water Act even though penalties can be imposed "irrespective of knowledge, intent, or fault." *In re Deepwater Horizon*, 753 F.3d 570, 575 (5th Cir. 2014); *see also Trower v. MDI, Inc.*, 2009 WL 10671153, at *8 (C.D. Cal. May 15, 2009) (employer who violated FLSA could not sue "employee's supervisor for indemnification" simply because employer's liability resulted from "the supervisor's failure to adhere to company policy and detect said overtime work"); *Laidlaw Env't Servs., Inc. v. Honeywell, Inc.*, 966 F. Supp. 1401, 1415 (D.S.C. 1996) (company fined by EPA for pollution could not seek indemnification from company that sold it faulty equipment that caused the pollution), *aff'd*, 113 F.3d 1232 (4th Cir. 1997). The proper recourse for a party liable for civil penalties that it believes a third party caused is to ask the court "to consider any contributing cause as a mitigating factor at penalty calculation." *Deepwater Horizon*, 753 F.3d at 575. If found liable here, the bank may do the same.

---

[3] JPMorgan also fails to distinguish *United States v. Whitehill*, 2018 WL 459300 (W.D.N.Y. Jan. 18, 2018). Opp. 8. Irrespective of whether the *Whitehill* defendant was "partially at fault" as a factual matter for violating the Clean Water Act, the court held that indemnification was categorically unavailable for civil penalties because the defendant had an "independent duty" to comply with the statute. 2018 WL 459300, at *4. Just the same, JPMorgan has an "independent duty" to comply with the TVPA and cannot pass on any civil penalties to third parties.

4

JPMorgan also fails to cite any case in which a plaintiff was able to recover civil penalties from a third party through a breach of fiduciary duty claim. Opp. 8-9. This, too, should come as no surprise. Shifting the costs of civil penalties onto a third party violates New York public policy, and nothing in the above-cited caselaw indicates that this policy can be circumvented with clever pleading. Outside New York, courts have held that third-party plaintiffs cannot subvert the bar on indemnity or contribution for civil penalties by seeking that same relief under alternative state-law claims. *See Scalia v. MICA Contracting, LLC*, 2019 WL 6711616, at *4 (Mag.) (S.D. Ohio Dec. 10, 2019) (rejecting breach of contract and breach of duty of good faith claims that could "only be construed as claims for indemnification or contribution" for civil penalties imposed under the FLSA); *Trower*, 2009 WL 10671153, at *8 (rejecting breach of fiduciary duty claim against "supervisory employee" whose conduct caused his employer to violate FLSA), *report and recommendation adopted*, 2020 WL 635908 (Feb. 11, 2020); *see also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 382-83 (E.D. Pa. 2000) (federal law prohibits "indemnification premised on violations of federal securities laws—whether those claims are clothed in state law tort claims or federal securities law claims"). JPMorgan cannot deny that its breach of fiduciary duty claim is a *de facto* indemnification claim for any civil penalties owed to the USVI, Opp. 8-9, so summary judgment as to this claim is appropriate.

### III. The Undisputed Facts Preclude the Indemnification Claims.

Mr. Staley's opening brief showed that the undisputed facts require summary judgment as to all aspects of the indemnification claims, but that these arguments applied with particular force as to recovery of the *Doe* settlement amount. On the latter point, all agree that Mr. Staley did not join JPMorgan's Private Bank until 1999, but the bank seeks indemnification for all $290 million of the *Doe* settlement *that covers all harm dating back to January 1998*. This timing mismatch is fatal to the claim, as a "party who has settled and seeks what it characterizes as indemnification

5

. . . must show that it may not be held responsible in any degree." *Rosado*, 484 N.E.2d at 1356-57. The bank addressed this glaring defect only in a buried footnote, offering that the jury "may still conclude that Staley is responsible . . . even if the injury occurred outside of Staley's tenure." Opp. 14 n.8. But the bank cites no evidence to support such a finding. Nor could it, as there is no way that Mr. Staley could have caused harm to victims that predates his tenure at the Private Bank or any engagement with Epstein's accounts or status as a JPMorgan client. For this reason alone, JPMorgan's indemnification claim in the *Doe* case must fail.

Regardless, the undisputed record cannot support the indemnification claims here. The bank invites the Court to ignore New York law, Opp. 9-10, but there is only one indemnification standard (whether a case involves a subcontractor or not). That standard requires that a proposed indemnitee be completely blameless, i.e., "vicariously liable without proof of any negligence or actual supervision on its own part." *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 801 (N.Y. 2011). A showing of "exclusive delegation" is necessarily required where the harm stems from a failure to maintain a safe environment, such as failure to maintain a premises in a reasonably safe condition (e.g., contractors), or as here with monitoring banking activity to prevent sex trafficking. If two parties instead *shared* responsibility to keep an environment safe, one cannot be liable to the other for indemnification, as "no right to implied indemnification exists when the proposed indemnitee retains a duty it owes directly to the plaintiff." *Steinberg v. Sherman*, 2008 WL 2156726, at *6 (S.D.N.Y. May 8, 2008) (cleaned up). In other words, an indemnification claim can stand only if the indemnitee's role in the harm was "solely passive." *Bd. of Managers of 125 N. 10th Condo. v. 125North10, LLC*, 55 N.Y.S.3d 374, 376 (2d. Dep't 2017). Nothing in the Court's motion-to-dismiss opinion conflicts with this well-established state-law rule. And regardless of what was alleged in the complaint, at summary judgment the undisputed evidence is

6

that there was no exclusive delegation to Mr. Staley and that the bank was *not* solely passive.

The bank also tries to rescue its indemnification claim by pouring numerous curated "facts" into its brief to suggest Mr. Staley's culpability.  But these "facts" are irrelevant to Mr. Staley's motion and do not address the undisputed record that JPMorgan did not in fact delegate exclusive responsibility for Epstein to Mr. Staley and was not a solely passive party.  The bank has conceded that: ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  SUF ¶¶ 17, 19, 22-24, 29-31, 51-52.  The indemnification claim cannot survive summary judgment.

IV. **JPMorgan's Employment Claims Are Time-Barred.**

JPMorgan knew enough in 2019 to bring its employment claims.  Its choice to sit on its hands until it needed to use Mr. Staley as a scapegoat dooms those claims.  Mot. at 14-20.

Each of JPMorgan's three arguments opposing summary judgment fails.

The bank's lead argument is that its fiduciary duty claim did not accrue until it suffered damages, which it pegs at 2022 when "the *Doe* lawsuit was filed."  Opp. 15.  But in the very case JPMorgan cites, *Yukos Cap. S.A.R.L. v. Feldman*, the Second Circuit expressly held that "compensation under the faithless servant doctrine can satisfy the 'damage' element of a breach of fiduciary duty claim."  977 F.3d 216, 242 (2d Cir. 2020).  The Second Circuit could not have been clearer: "When a principal seeks to recover compensation from an unfaithful servant, the principal need not allege damage other than the compensation it paid the servant to satisfy the 'damage' element of a claim for breach of fiduciary duty under New York law."  *Id.* at 241. JPMorgan undisputedly paid Mr. Staley compensation from 2006 to 2013—indeed, it seeks to

7

recover that compensation in this suit. *See* ECF No. 311-70, at 13.[4] Under binding precedent, JPMorgan did not need to suffer any additional damages for its claim to accrue.

Next, JPMorgan argues that it was not on notice of Mr. Staley's alleged fraud until the *Doe* action was filed and it learned of additional allegations against Mr. Staley. Opp. 17-22. The bank goes on at length about how *helpful* Doe's allegations are to its claims here. Opp. 19-21. But that misses the point. JPMorgan—after hemming and hawing, Opp. 17-18[5]—admits that the controlling question is when it "had sufficient knowledge to allege all of the elements of its claim in a complaint." Opp. 18. The facts within JPMorgan's knowledge as of 2019 easily meet that standard. *See* Mot. at 15-19. The bank contends that Mr. Staley made statements to his colleagues "vouching" for Epstein—all while not disclosing the true nature of his relationship with Epstein. JPMorgan's LCvR 56.1(b) Response ("CSMF") ¶¶ 63-69, ECF No. 322. But by 2019 at the latest, the bank knew enough about Mr. Staley's relationship with Epstein to plead claims based on those events. After all, the bank indisputably knew of almost all the email communications between Mr. Staley and Epstein. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* SUF ¶ 55-56, 59-60; CSMF ¶¶ 44-49. That alone gave JPMorgan enough to plead its claims.

But the bank's knowledge went further, as, in 2019 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[4] Docket citations in this brief refer to entries in *USVI v. JPMorgan*, 22-cv-10904-JSR.
[5] JPMorgan cites cases stating that "mere suspicion" is not enough to trigger inquiry notice. Opp. 18-19. These cases are beside the point, as they relate to when a bank must inquire about the potential fraud. But by 2019 JPMorgan had already undertaken that inquiry by *conducting an extensive investigation* and uncovering much of what it now relies on. ECF No. 322, at 17-20.

8

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████ JPMorgan therefore had all that it needed to plead its claims of disloyalty in 2019, including by providing the time, place, and manner of Mr. Staley's supposed nondisclosures with the particularity required by Rule 9(b).

Moreover, the bank could have brought its claims (even those sounding in fraud) in New York courts, which are less demanding than their federal counterparts. *See* David D. Siegel & Patrick M. Connors, *New York Practice* § 216 (6th ed.) (discussing N.Y. C.P.L.R. 3016(b)); *see also* Mot. at 19; Opp. 15 n.9 (conceding New York procedural law governs limitations issue). The New York Court of Appeals has held that fraud claims in New York require only allegations "sufficient to permit *a reasonable inference*" of the fraud. *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184, 187 (N.Y. 2008) (emphasis added). A complaint in New York need not allege "unassailable proof of fraud," *id.*; all that is required are "circumstantial" allegations that "permit an inference" of fraud. *Id.* at 187 n.3. JPMorgan never responds to this point. On the undisputed record, JPMorgan could have cleared this low bar in 2019, even without any of Doe's allegations.

Finally, in a section of its brief that reads more like a press release than legal argument, JPMorgan contends that Mr. Staley's alleged "active concealment of his activities" tolled the limitations period. Opp. 22-23. But that argument lacks any foundation. As shown above, the bank in fact investigated Mr. Staley's relationship with Epstein and learned information that it could have used to bring its claims within two years of that investigation. *See* Opp. 15 (recognizing that the C.P.L.R. allows fraud claims to be brought within two years of discovery). Having actually

9

discovered its claims such that they could have been timely filed, the bank cannot rely on any supposed "concealment" for tolling, as its own cases recognize. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 66 (S.D.N.Y. 2016) (plaintiff must show "ignorance of the concealed misconduct"); *see also Cole v. Miraflor*, 2006 WL 457817, at *7 (S.D.N.Y. Feb. 23, 2006) (burden on plaintiff to show "the failure by the plaintiff to discover the operative facts underlying the action within the limitations period" (citations omitted)), *aff'd*, 305 F. App'x 781 (2d Cir. 2009). Moreover, Mr. Staley's alleged non-disclosure of his relationship with Epstein to JPMorgan cannot toll the limitations period as a matter of law. New York tolling law requires proof of "subsequent and specific actions" taken by defendants to conceal their activities that were "separate from those that provide the factual basis for the underlying cause of action." *De Sole v. Knoedler Gallery*, LLC, 137 F. Supp. 3d 387, 423 (S.D.N.Y. 2015) (cleaned up). In other words, there must be concealment that is distinct from any concealment that is part of the conduct underlying the cause of action. Here, Mr. Staley's alleged nondisclosure of his relationship with Epstein is the core of the bank's employment claims, not any "separate" *and* "subsequent" action.[6]

## CONCLUSION

For the foregoing reasons, Mr. Staley respectfully requests that the Court grant his motion.

---

[6] The bank also points to statements that Mr. Staley made after he left the bank, primarily relying on one in which Mr. Staley publicly asserted that he had a "professional relationship" with Epstein, that Mr. Staley "thought [he] knew [Epstein] well and [he] didn't," and that expressed his regret for the relationship. Opp. 23; CSMF ¶ 55. But even if Mr. Staley was downplaying his relationship with Epstein, "the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations" in order to invoke equitable tolling. *De Sole*, 137 F. Supp. 3d at 426 (collecting copious authority). The bank does not point to a single shred of evidence that it was even aware of Mr. Staley's statements, much less that it had relied on them. On the contrary, the record proves that the bank *did not* rely on these statements—or any other statement that it attributes to Mr. Staley—because by then it had already extensively investigated Mr. Staley ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶¶ 55-57, 59-60, 62-69. The bank's suggestion that Mr. Staley's statements might have "throw[n] . . . JPMC off the scent" is preposterous and has no evidentiary support. Opp. 23.

10

| | |
|---|---|
| Date: September 15, 2023 | Respectfully submitted, |

By: */s/ Stephen L. Wohlgemuth*

Brendan V. Sullivan Jr.
John M. McNichols
Zachary K. Warren
Eden Schiffmann
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5252
Fax: (202) 434-5029
bsullivan@wc.com

Stephen L. Wohlgemuth
WILLIAMS & CONNOLLY LLP
650 Fifth Avenue, Suite 1500
New York, NY 10019
Tel: (202) 434-5390
Fax: (202) 434-5029
swohlgemuth@wc.com

*Counsel for Third-Party Defendant James Edward Staley*