LAW OFFICES

**WILLIAMS & CONNOLLY**LLP®

STEPHEN L. WOHLGEMUTH
(202) 434-5390
swohlgemuth@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 12, 2024

**VIA ECF**

Re: *Doe v. JPMorgan Chase Bank, N.A.*, No. 1:22-cv-10019 (JSR); *USVI v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10904 (JSR) – Deposition Testimony Sealed Under Protective Order

Dear Judge Rakoff:

Mr. Staley opposes in part the letter motions filed by nonparty The New York Times Company ("the Times") in the above-captioned matters.

This Court has previously recognized the sensitive nature of the allegations in these cases and found "good cause" to issue an "appropriately tailored" protective order that governed the use of confidential information created or exchanged during discovery. *See* ECF No. 35, 22-cv-10019; ECF No. 15, 22-cv-10904. The Times seeks to unseal five exhibits to motions that contain excerpts from Jane Doe's deposition, all of which were filed under seal and subject to the Court's protective order. Two of the exhibits were filed in connection with Doe's class-certification motion. Mr. Staley takes no position on those, as they do not contain information relating to him.

The other three were filed in connection with the parties' various motions for summary judgment, none of which were ruled upon by the Court.[1] Mr. Staley opposes the unsealing of these three exhibits. The Times fails to address the most on-point authority explaining that sealed filings associated with motions that have not and will never be decided are not "judicial documents" subject to the public's presumption of access. And even if they were judicial documents, under every relevant standard these documents should remain sealed. Each contains deposition testimony regarding Doe's allegation of assault against Mr. Staley. Mr. Staley has consistently and repeatedly denied those false allegations. Moreover, the deposition in question occurred before Mr. Staley was a party to these cases—meaning that Mr. Staley's counsel did not participate in that deposition and had no opportunity to cross-examine her then. Indeed, Mr. Staley has never cross-examined Doe, because Mr. Staley's deposition of Doe was repeatedly delayed, including at

---

[1] Decl. of Felicia H. Ellsworth in Support of Mem. of Law in Opp'n to Mr. Staley's Mot. for Summ. J., Ex. 57, *Doe v. JPMorgan Chase & Co.*, No. 1:22-cv-10019 (JSR), ECF 212-57; Decl. of Felicia H. Ellsworth in Support of JPMC's Opp'n to USVI's Mot. for Partial Summ. J., Ex. 128, *USVI v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10904 (JSR), ECF No. 265-4; Decl. of Felicia H. Ellsworth in Support of JPMC's Opp'n to Mr. Staley's Mot. for Summ. J., Ex. 57, *USVI v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10904 (JSR), ECF 326-57.

WILLIAMS & CONNOLLY LLP
March 12, 2024
Page 2

Doe's request, and the case settled before the deposition took place. Nor has this Court ever had occasion to pass on the veracity of Doe's allegations, much less after being heard on the merits from Mr. Staley. The Times's motions therefore implicate the Second Circuit's concern that court files might be used to "promote scandal arising out of unproven potentially libelous statements." *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019). Well-established law protects the judicial process from being coopted in this manner and requires denial of the Times's request.

As the Times recognizes, the first step in evaluating any unsealing request under either the common law or the First Amendment is determining whether the documents at issue are "judicial documents" subject to a presumption of access. Mot. at 3-5; *Trump v. Deutsche Bank AG*, 940 F.3d 146, 151 (2d Cir. 2019). The "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Rather, an item "must be relevant to the performance of the judicial function *and* useful in the judicial process in order for it to be designated a judicial document." *Id.* (emphasis added). A court "performs the judicial function . . . when it rules on motions currently before it" or "properly exercis[es] its inherent 'supervisory powers.'" *Brown*, 929 F.3d at 49 (cleaned up). So to constitute a judicial document, a filed document must be (1) relevant to an actual exercise of judicial authority—whether adjudicatory or supervisory—and (2) useful in the exercise of that judicial action. Filings that do not meet both criteria are not "judicial documents" subject to a presumption of public access.

The three sealed exhibits at issue are not judicial documents as defined in the doctrine. The exhibits came before the Court in connection with JPMorgan's opposition briefs to summary judgment motions filed by Mr. Staley and the USVI. But the Court *never ruled on* those motions before the parties settled and the two cases were closed. The sealed documents therefore were not, and never will be, useful in the exercise of any judicial authority. For that reason, unsealing the exhibits would provide the public no window into assessing the Court's performance, which is the sole justification for unsealing. *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) *("Amodeo II")* ("[T]he presumption of access is based on the need for the public monitoring of federal courts."); *see also S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) (ruling that pretrial deposition transcripts "did not directly affect an adjudication nor . . . significantly determine litigants' substantive rights" and thus were not "judicial documents").

The Times fails to grapple with this basic issue, which dooms its motions. The Times ignores the holding from the undeniably most on-point authority on this issue. In *Giuffre v. Maxwell*, the court confronted the question of which, if any, sealed documents from a civil suit between Virginia Giuffre and Ghislaine Maxwell should be unsealed. 2020 WL 133570, at *1 (S.D.N.Y. Jan. 13, 2020), *reconsideration denied* 2020 WL 917057 (S.D.N.Y. Feb. 26, 2020). After the Second Circuit clarified the standard for unsealing, *see Brown*, 929 F.3d 41, Judge Preska on remand concluded that "only motions actually decided by Judge Sweet [the presiding judge]—along with documents relevant to Judge Sweet's decisions on those motions—are properly considered judicial documents to which a presumption of public access attaches." *Giuffre*, 2020 WL 133570, at *1. The reason for that is obvious: "[w]ith respect to motions left undecided . . . there was never, and now never can be, a judicial decision-making process that would trigger the public's right to access the undecided motions and the documents relevant to them." *Id.* at *2.

**WILLIAMS & CONNOLLY**LLP
March 12, 2024
Page 3

Although the Times cites to *Giuffre*, it ignores the part of the case that precisely describes the inquiry applicable to the three exhibits whose confidentiality Mr. Staley asks this Court to protect.

Regarding the summary judgment exhibits, the Times merely states that "[d]ocuments submitted to a court for its consideration in a summary judgment motion are - as a matter of law - judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Mot. 3, 5 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)). As support for that proposition, the Times cites the Second Circuit's decision in *Lugosch*. But *Lugosch* dealt with an *ongoing* case where the summary judgment motion was *still pending*. Thus, the motions for summary judgment at issue there—which had been contested and pending for over a year—likely *would be* ruled on by the district court, thereby providing a judicial adjudication that would incorporate the documents and be subject to public scrutiny. *See id.* at 121 (explaining that the summary judgment ruling would be "an adjudication [which is] a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny" (citation omitted)). And the Second Circuit grounded its ruling in the prejudice posed by the "long delays in adjudication" that the public deserved to assess in real-time. *Id.* at 127. Not so here, since the *Doe* and *USVI* cases are closed without any decision on the associated motions. The *Giuffre* court distinguished *Lugosch* on this same basis, explaining that *Lugosch* "involved the unsealing of materials relevant to a pending motion for summary judgment in active litigation, not motions that were rendered moot by settlement of a case." 2020 WL 133570, at *3 n.3.[2]

The fact that the three exhibits at issue here are not judicial documents is enough on its own to deny the Times's request. But even if they were judicial records, unsealing would be inappropriate under either the common law or First Amendment. The Court must balance the public's perceived benefits with the "countervailing factors," including the privacy interests of those resisting disclosure and innocent third parties. *See Amodeo II*, 71 F.3d at 1050; *see also Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("Certainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of . . . material should weigh heavily in a court's balancing."). In addition:

---

[2] More recent Second Circuit case law further confirms that documents become judicial documents only when they are tied to an actual judicial ruling. For example, in *Olson v. Major League Baseball*, the court reinforced that the "mere filing of" a document did not make it a judicial document; rather, the document at issue in that case was a judicial document because it "*was explicitly considered and rejected by the district court* in its Memorandum Order." 29 F.4th 59, 89 (2d Cir. 2022) (emphasis added). Such language would be unnecessary if documents merely attached to motions qualified as judicial documents. *See id.* (explaining that "access to" judicial material "assists the public in evaluating the merits *of the court's decision*" (emphasis added)). The Second Circuit likewise clarified in *Trump v. Deutsche Bank AG*, that assessing "court action" drives the judicial-document determination. If a document is neither "relevant to any issue [that the Court] need[s] to decide . . . nor a record of any court action," then "it is not a 'judicial document.'" 940 F.3d at 151-52. The case law is thus clear: Where there is no associated past or pending "court action" to scrutinize, there are no judicial documents.

**WILLIAMS & CONNOLLY**LLP®
March 12, 2024
Page 4

> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. . . . The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information. . . . The court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. . . . Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.

*Amodeo II*, 71 F.3d at 1051.

These factors weigh against disclosure. Mr. Staley's interest in keeping Doe's false and untested testimony confidential is immense. The Second Circuit has recognized that "[r]aw, unverified information should not be as readily disclosed as matters that are verified." *Id*. Other courts have routinely cited the untested nature of accusations against even convicted criminal defendants as a basis to keep them sealed from the public. *See, e.g.*, *United States v. Corbitt*, 879 F.2d 224, 231 (7th Cir. 1989) (applying common law and First Amendment tests and justifying continued sealing of convicted felon's presentence report in part because "the defendant does not have the right to challenge 'evaluations'. . . contained in the report; thus, some of the most subjective, and potentially embarrassing or inflammatory, material in the report is immune to challenge");[3] *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983) (explaining that "frailties" of material appearing in presentence reports and grand jury testimony, including lack of cross-examination and untested accusations, justified not unsealing reports).

*Amodeo II* highlights this very concern. There the Second Circuit considered a sealed investigative report into allegations of corruption at a national union that contained "various accusations" about a prominent lawyer turned politician, Harold Ickes. *Amodeo II*, 71 F.3d at 1047. The Court reversed the district court's unsealing order as an abuse of discretion. *Id.* at 1053. Among other complications, the identities of the "sources and of Ickes' accusers [were] redacted" in the report, and unsealing "would circulate accusations that cannot be tested by the interested public because the sources and much of the subject matter" were obscured. *Id.* at 1052. Similarly, with Doe's name redacted but other salacious details of her false allegations revealed, Mr. Staley would not have a "fair opportunity . . . to respond to any accusations contained" in the unsealed documents—especially with these cases now closed. *Id.* at 1051. Continued sealing is entirely appropriate for inflammatory accusations from a publicly anonymous witness that has never had her allegations tested in court or been subjected to any examination by Mr. Staley's counsel.

---

[3] *Id.* ("[T]here is a strong possibility that the report will contain material which is untrustworthy or simply incorrect, or which the defendant has not been given a full opportunity to rebut," and "[t]his consideration, together with the certainty that the report will contain much highly personal, though accurate, information, counsels against disclosure of presentence reports to third parties, especially where the defendant objects.").

WILLIAMS & CONNOLLY LLP
March 12, 2024
Page 5

  The Times's contrary invocations of the "public interest" are unpersuasive. To start, the public's general interest in class action litigation does not apply to the three exhibits at issue here, as the Doe class settled with JPMorgan before motions for summary judgment were filed. Nor are these documents relevant to understanding "how the judicial system has responded" to the allegations against Mr. Staley. Mot. 4. The point is that the judicial system *has not responded* to these particular submissions because the case settled before the Court decided the relevant motions. *See supra*. Otherwise, the Times largely relies on vague references to "transparency" and contributing to greater public "understanding" of Jeffrey Epstein's misdeeds that do not approach any well-defined public interest, let alone a "compelling" one that overcomes Mr. Staley's interest in confidentiality.

  To be sure, Mr. Staley recognizes that there is some public interest in understanding Epstein's criminal activities. But even if that interest outweighed Mr. Staley's privacy concerns (it does not), the unverified, untested testimony of Jane Doe in the exhibits at issue is hardly a unique font of information on this subject. And even intense public interest does not suspend the normal rules for determining what constitutes judicial records or negate the interests of affected parties such as Mr. Staley. *See Giuffre*, 2020 WL 133570, at *3 (maintaining sealing despite same public interest); *Amodeo II*, 71 F.3d at 1052-53 (maintaining sealing over part of report despite public interest in corruption investigation into then-Deputy Chief of Staff to President Clinton); *Corbitt*, 879 F.2d at 230 (enforcing judicial-document inquiry for presentence report of police chief convicted of bribery and extortion). Moreover, the risk is too great that "[e]ven ordinarily critical readers may take the reference to 'court papers' as some sort of marker of reliability" for allegations that have never been tested in any court and denied by Mr. Staley. *Brown*, 929 F.3d at 53.[4] Avoiding the promotion of public scandal through unproven (and we say slanderous) accusations contained in judicial filings is "not only within a district court's power, but also among its responsibilities." *Id.* at 51.

*   *   *

  For the foregoing reasons, Mr. Staley asks the Court to deny in part the motions of nonparty The New York Times Company.

Respectfully submitted,

/s/ *Stephen L. Wohlgemuth*

Stephen L. Wohlgemuth

---

[4] *See, e.g.*, Priscilla DeGregory & Emily Crane, *Epstein Accuser Claims Pedophile Had Sex Tapes of Trump, Clinton, Prince Andrew and Richard Branson: New Docs*, NY Post (Jan. 8, 2024), https://nypost.com/2024/01/08/news/new-batch-of-jeffrey-epstein-court-documents-are-released.