UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ JANE DOE 1, Individually and on      │    22-cv-10019 (JSR)
│ Behalf of All Others Similarly       │
│ Situated,                            │    OPINION AND ORDER
│                                      │
│           Plaintiff,                 │
│                                      │
│      -v-                             │
│                                      │
│ JP MORGAN CHASE BANK, N.A.,          │
│                                      │
│           Defendant.                 │
└─────────────────────────────────────┘
```

```
┌─────────────────────────────────────┐
│ GOVERNMENT OF THE UNITED STATES      │    22-cv-10904 (JSR)
│ VIRGIN ISLANDS,                      │
│                                      │
│           Plaintiff,                 │
│                                      │
│      -v-                             │
│                                      │
│ JP MORGAN CHASE BANK, N.A.,          │
│                                      │
│           Defendant.                 │
└─────────────────────────────────────┘
```

JED S. RAKOFF, U.S.D.J.:

Before the Court is the motion of non-party the New York Times ("the Times") to unseal five exhibits that were filed in the above-captioned actions. The exhibits contain excerpts of the deposition of plaintiff Jane Doe 1 ("Doe"). Three of the exhibits were filed in connection with summary judgment briefing in the underlying

actions and all contain the same portion of Doe's deposition related to her alleged non-consensual interactions with Jes Staley. The other two exhibits were filed in connection with plaintiffs' motion for class certification and contain a different portion of Doe's deposition, where she recounts how she was initially recruited by Jeffrey Epstein. During the course of litigation, the Court granted the class certification motion, but never ruled on the summary judgment motions because the case settled while the motions were pending.

The Times argues that the common law and First Amendment right of access to court filings mandate unsealing. Doe opposes unsealing all five exhibits, arguing that doing so would risk revealing her identity and would force her to relive her traumatic experiences. Plaintiff Government of the United States Virgin Islands opposes unsealing on similar grounds. Staley opposes unsealing only the summary judgment transcripts, arguing that they are not judicial documents, because the court never ruled on that motion, and that he has his own privacy interest in keeping Doe's untested allegations sealed.

For the reasons set forth below, the Court grants in part and denies in part the Times' motion.

I.    <u>Legal Standard</u>

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment, and a slightly weaker form based in federal common law." *United States ex rel. United States v. Am. Univ. of Beirut*, 718 F. App'x 80, 81 (2d Cir. 2018). Both presumptions follow a three-step analysis, with their first step in common, *viz.*, the court must first determine "whether the [filings are] judicial document[s], as only judicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017).

At the second step of the First Amendment analysis, documents must satisfy one of two tests. Under one test, the right of access applies to documents that "have historically been open to the press and general public and . . . public access [to those documents] plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (citation and internal quotation marks omitted). Alternatively, "[t]he second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (citation and internal quotation marks omitted). If either test is satisfied, the First Amendment right attaches

and "sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* at 124.

At the second step of the common law right of access, the court must determine the weight of the presumption by assessing the role of the "material at issue [plays] in the exercise of the Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d. Cir. 1995) ("*Amodeo II*"). Then, "after determining the weight of the presumption of access, the court must balance competing considerations against [disclosure]." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted).

As compared to the common-law right of access, the First Amendment right of access "is stronger and can only be overcome under more stringent circumstances than the common law presumption." *United States v. Erie Cnty.*, 763 F.3d 235, 241 (2d Cir. 2014); *see also Lugosch*, 435 F.3d at 124 (classifying the First Amendment right as "more stringent"). Accordingly, when at the second step a court finds the First Amendment right attaches, it "need not . . . engage in such a common law analysis" because in any case where the First Amendment presumption of access is overcome, so too will the common-law presumption. *Erie Cnty.*, 763 F.3d at 241; *see also Accent Delight Int'l Ltd. v. Sotheby's*, 394

F. Supp. 3d 399, 416 (S.D.N.Y. 2019) (same); *In re Terrorist Attacks on September 11, 2001*, 2020 WL 8611148, at *1 (S.D.N.Y. Oct. 2, 2020) (same); *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 n.9 (2d Cir. 2013) ("Because in all cases where the First Amendment applies the common law right applies a fortiori, we need not address the common law right.").

II.  Discussion

The exhibits the Times seeks to unseal are divided into two categories: (a) the summary judgment papers for the motion mooted by settlement and (b) the filings attached to the motion for class certification granted by the Court. Each category is discussed in turn.

A. Exhibits Attached to the Motion for Summary Judgment

1. Step One: Judicial Document Status

As noted, the threshold requirement for the First Amendment or common law right of access to apply is that the item under scrutiny must constitute a judicial document. Staley argues that the summary judgment transcripts do not satisfy this requirement, because the case settled while the summary judgment motions were pending and before the Court ever ruled on the matters. *See* Staley Opp. (Dkt. 293) at 1-3.

To be a judicial document, an item "must be relevant to the performance of the judicial function and useful in the judicial

process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). In general, documents filed with the court that "ask the court to grant (or reject) some relief," such as "pleadings and summary judgment papers," satisfy this test. *HSBC Bank*, 863 F.3d at 141-42. But "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019) (citation and internal quotation marks omitted).

The Second Circuit has held that summary judgment papers qualify as judicial documents, at least as a general matter. *See Lugosch*, 435 F.3d at 121 (holding that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents" even though the summary judgment motion was still pending and had not yet been ruled on); *Brown v. Maxwell*, 929 F.3d 41, 45 (2d. 2019) (finding denial of motion for summary judgment does not abrogate judicial documents status even when documents were not relied upon in ruling). Furthermore, the Second Circuit has held, at least with respect to pleadings that were filed under seal, "the fact that a suit is ultimately settled without a judgment on the merits does not impair . . . judicial record status." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) (internal quotation marks omitted). However, the Second Circuit has not addressed the

question of whether the settlement of a case while a summary judgment motion is pending impacts the judicial document status of those moving papers.

Other courts to address the question have split on the issue. The Fourth Circuit has recently held that papers filed with a summary judgment motion continue to be judicial documents even where the case settles before the motion is ruled on. *See United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 173 (4th Cir. 2024). District courts in the Second Circuit that have considered the issue have come out different ways. *Compare Giuffre v. Maxwell*, 2020 WL 133570, at *2, 4 (S.D.N.Y. Jan. 13, 2020) ("[U]ndecided motions and the papers associated with them are not judicial documents," since they are not part of any "live controversy to which the [Article III] judicial power can extend"), *In re IBM Arbitration Agreement Litig.*, 2022 WL 3043220, at *2 (S.D.N.Y. Aug. 2, 2022) (summary judgment filings mooted by granting prior motion to dismiss are not judicial documents since they have "no tendency" or "ability [] to influence this Court's ruling on [the] motion [to dismiss]") (alterations added); *with Lohnn v. IBM*, 2022 WL 3359737, at *4 (S.D.N.Y. Aug. 15, 2022) (arguing that *Maxwell* improperly conflates the first two steps of the right to access analysis and that summary judgment filings for mooted motions are judicial documents because of potential relevancy to judicial function), *Dawson v. Merck & Co.*, 2021 WL 242148, at *6 (E.D.N.Y.

Jan. 24, 2021) (documents attached to a *Daubert* motion deemed "judicial documents . . . notwithstanding settlement by the parties").

After carefully considering these conflicting precedents, this Court concludes that treating the documents here at issue as judicial documents is the correct approach and more consistent with Second Circuit precedent. Although in a context different from summary judgment, the Second Circuit has held that an item may be considered a judicial document irrespective of whether any court has actually relied on the document in issuing a ruling. *See Brown*, 929 F.3d at 50. The "inquiry is only whether the documents are relevant to the performance of the judicial function, not whether they were relied upon." *Id.* The Second Circuit has also emphasized that relevancy in this context is measured by potential, not actual, effect. *See id.* at 49 ("A document is thus 'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision.")(emphasis in text); *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (same). Since only potential and not actual reliance is required for judicial document status, the fact that a summary judgment motion is never ruled on prior to settlement does not

affect the judicial document status of exhibits filed in connection therewith.

Cases that hold to the contrary reason that, even if the items may have been judicial documents when filed, they lose this status once a settlement has taken place. This is because the "Article III's judicial power" only extends to "actual controversies arising between adverse litigants," but once a case settles no such controversy exists. *Maxwell*, 2020 WL 133570, at *2; *see also In re IBM*, 2022 WL 3043220, at *2 (similar). These cases further reason that whatever need there may be to oversee the functioning of the judicial power evaporates once a case settles and no future ruling is possible, such that the reason for the right of access dissipates as well.

However, this first argument "conflates the first two steps of the [public right to access] framework." *Lohnn*, 2022 WL 3359737, at *4. Second Circuit precedent suggests the presence of a live controversy only "speak[s] to the weight of the presumption rather than whether the documents are judicial documents in the first place." *Id.* at *15. A contrary rule cannot be squared with the Second Circuit's decision in *Bernstein*, which found that sealed pleadings remained judicial documents even though the case was mooted by settlement before any ruling on a motion to dismiss. 814 F.3d at 142.

The decision in *Bernstein* follows from the fact that the purpose of the right of access is broader than just monitoring actual decision-making. The judicial monitoring function that the presumption serves encompasses other interests, such as the right of "the public [to] discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed." *Bernstein*, 814 F.3d at 140 (citation and internal quotation marks omitted)); *see also Dawson*, 2021 WL 242148, at *5 (E.D.N.Y. Jan. 24, 2021) ("[I]nsights into the judicial process are essential to the public's understanding of, and ability to monitor, the functioning of the judiciary, even though no actual or potential judicial decision-making is involved."). These other interests are similarly implicated by documents attached to a mooted summary judgment motion.

Moreover, if settlement vitiated judicial document status, an oddity would arise in light of the Second Circuit's decision in *Lugosch*. In *Lugosch*, the court held that filings attached to motions for summary judgment are judicial documents and publicly accessible even when the motion is still pending. 435 F.3d at 121. If the position proposed by Staley were correct, such filings would retrospectively lose judicial document status and become inaccessible at any moment the case settled before a ruling. Since

the public would never know which cases may settle ahead of time, this would incentivize filing a motion to unseal the moment a motion for summary judgment is filed, undesirably increasing burdens on courts to address such motions while briefing is ongoing. And in a great number of cases the motion to unseal may be filed out of fear that the opportunity to do so later would be lost, rather than any ultimate desire for the sealed materials.

Thus, for the foregoing reasons, the Court concludes the deposition excerpts here in question constitute judicial documents.

## 2. Step Two: First Amendment Right of Access

Even where an item qualifies as a judicial document, the First Amendment right of access attaches only where the document satisfies at least one of two tests. Under the first test, the right attaches to judicial documents that "have historically been open to the press and general public" and to which "public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120. Under the second test, the right attaches if the documents "are derived from or [are] a necessary corollary of the public capacity to attend the relevant proceedings." *Id.* If the First Amendment right applies, it does so with the highest weight possible and sealing the documents can only be justified with "specific, on-the-record

findings that sealing is necessary to preserve higher values and is narrowly tailored to achieve that aim." *Id.* at 124.

Applying either test, the Second Circuit has held that "there exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion." *Id.; see also Brown*, 929 F.3d at 47 (same). However, neither the Second Circuit, nor any district court in the circuit, has addressed whether the First Amendment right continues to apply when a summary judgment motion is mooted by settlement. *See, e.g.*, *Lohnn*, 2022 WL 3359737, at *6 n.4(declining to address the question since the First Amendment right of access was not raised by any party, intervenor, or amicus). But, as mentioned above, the Fourth Circuit has recently addressed the question, ruling that First Amendment right does apply regardless of the settlement. *See* *Nelnet*, 105 F.4th at 173. The Court finds the Fourth Circuit's reasoning persuasive and in line with Second Circuit precedent.

According to the Fourth Circuit, "[t]he First Amendment right of access to summary judgment materials does not depend on judicial resolution of the summary judgment motion or judicial reliance on the documents in resolving the motion." *Id.* at 172. This is because "[t]he public has an interest in ensuring basic fairness and deterring official misconduct not only in the outcome of certain proceedings, but also in the very proceedings themselves." *Id.* at 172-73. For cases that settle, "it is up to the public to decide

'why the case was brought (and fought) [] and what exactly was at stake in it,'" including the question of why the case was settled. *Id.* at 173 (quoting *Mueller v. Raemisch*, 740 F.3d 1128, 1135-36 (7th Cir. 2014)). Thus, access to filings attached to mooted motions satisfy the second test for the First Amendment, as a "'necessary corollary' of the right to attend protected proceedings." *Id.* at 173 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).

This position is consistent with reasoning adopted by the Second Circuit. The Second Circuit has suggested that "summary judgment is an adjudication, and an adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch*, 435 F.3d at 124 (citation and internal quotation marks omitted). Since "nothing about [the] timing" of a ruling on summary judgment is relevant to whether the First Amendment right applies, *id.* at 121, it is apparent that the First Amendment right "attaches immediately upon [the] filing [of summary judgment papers]." *Nelnet*, 105 F.4th at 172; *see also Lugosch*, 435 F.3d at 122 ("[R]elevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies, a framing that has nothing to do with how a court ultimately comes out on a motion.") (internal quotation marks omitted).

The Second Circuit's rule in *Bernstein* also weighs in favor of finding that the First Amendment right of access applies here. Pleadings in settled cases allow "the public to understand the activity of the federal courts, enhance[] the court system's accountability and legitimacy, and inform[] the public of matters of public concern." *Bernstein* 814 F.3d at 141. "Conversely, a sealed complaint leaves the public unaware that a claim has been leveled and that state power has been invoked—and public resources spent—in an effort to resolve the dispute." *Id.* Since "the district courts routinely engage in adjudicatory duties even in connection with complaints that are dismissed or settled," a public right of access to monitor courts is warranted even where "speedy settlement of the claim mean[s] that the court [will] not adjudicate the merits of the case." *Id.* at 143.

The same broad rationales apply to mooted summary judgment motions. Public access to documents attached to such motions allow for a better understanding of the courts, improving public perception and legitimacy, and informing the public of matters of concern, including how public resources are being spent. These documents may also help the public to understand why and how settlement was reached. For example, a party's review of its adversary's collected evidence and arguments after discovery may be sufficient incentive to force settlement.

Finally, the analogy between trial and summary judgment adjudication helps to understand why the presumption applies regardless of settlement. The First Amendment right of access to judicial documents is "derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004). "Where no hearing is held," as is the case for summary judgment, "access to written documents filed in connection with pretrial motions is particularly important" since the public otherwise lacks any ability to monitor court activity. *Lugosch*, 435 F.3d at 124 (internal quotation marks omitted). If a case settles in the midst of trial, all exhibits introduced to that point would remain in the public record regardless of that fact. A summary judgment motion is an alternative to a resolution at trial, and so the fact that a settlement makes such a motion moot similarly should not affect the public's right of access to exhibits that have already been filed.

For the aforementioned reasons, the Court finds the First Amendment right of access to apply to summary judgment filings regardless of whether the motion was mooted by settlement. Because the Court finds the First Amendment right attaches, it need not consider the weight of any common-law right of access to these documents.

3. <u>Countervailing Interests to the First Amendment Right</u>

Since the First Amendment right applies to the three exhibits attached to the summary judgment motions, sealing these excerpts can only be justified with "specific, on-the-record findings that sealing is necessary to preserve higher values and is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. The "privacy interests of those who resist disclosure" are one such higher value. *S.E.C. v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001).

Both Staley and Doe assert privacy interests. Staley argues his interest is in "keeping Doe's false and uncontested testimony confidential" since unsealing the excerpts would not allow him any "fair opportunity to respond to any accusations contained" therein. Staley Opp. (Dkt. 293) at 4. For her part, Doe argues that her identity as a survivor of sexual assault as well as her related psychological and emotional wellbeing overcome the First Amendment presumption of access. Doe Opp. (Dkt. 292) at 2-3. Upon particularized review of the excerpted testimony in the exhibits, the Court finds these interests outweigh the public right to access the documents in their entirety.

Doe's privacy interest by itself warrants complete sealing of the three exhibits. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered

private rather than public. . . . The nature and degree of injury must also be weighed. This will entail consideration . . . of the sensitivity of the information and the subject." *Amodeo II*, 71 F.3d at 1051. Protecting the identity of sexual assault survivors and the details of their assaults is traditionally considered private and has been widely recognized as a compelling reason to limit public access to judicial documents. *See, e.g.*, *Murphy v. Warden of Attica Corr. Facility*, 2020 WL 6866403, at *2 (S.D.N.Y. Nov. 23, 2020) ("[P]rotecting the identity of the sexual assault victim [] provides a compelling reason to limit such access."); *Kemp v. Noeth*, 2021 WL 1512712, at *2 (S.D.N.Y. Apr. 15, 2021) (same); *Giuffre v. Dershowitz*, 2020 WL 5439623, at *2 (S.D.N.Y. Sept. 9, 2020) ("[Countervailing] interests are particularly acute given that the psychological and emotional wellbeing of survivors of alleged sexual assaults may be implicated by such a broad disclosure.").

Given the specific, graphic detail of the alleged non-consensual activity that Doe describes in these excerpts, the privacy interest Doe has in non-disclosure of her testimony is robust. Unsealing these documents would force Doe "to relive these traumatic moments from her deposition publicly, and the mere redaction of her name would not protect her from re-traumatization." Doe Opp. (Dkt. 292) at 3. Moreover, Doe's basic accusation that she was sexually assaulted by Staley is already in

the public record, as is Staley's denial. The further information contained in the excerpts serves little value aside from "cater[ing] to a morbid craving for that which is sensational and impure," to which "[c]ourts have long declined to allow public access." *Amodeo II*, 71 F.3d at 1051 (internal quotation marks omitted).

Nor would "targeted redactions of identifying information, rather than wholesale withholding" suffice as a narrowly tailored means to serving Doe's privacy interest, as the Times suggests. Times Reply (Dkt. 294) at 1. The Court has reviewed the relevant excerpts and finds that the extent of redactions needed to protect Doe's relevant privacy interests would render what remains of little value. Where privacy interests require redactions so systematic that unsealing a document is "more likely to mislead than [] inform the public," as would be the case here, sealing the entire document is the more appropriate course. *Amodeo II*, 71 F.3d at 1052.

Even assuming, *arguendo*, that Doe's interests are not independently sufficient to overcome the First Amendment right of access, Staley's privacy interests are also compelling and would, alongside Doe's interests, jointly warrant keeping the exhibits under seal. When determining the weight of an individual's privacy interest, "[t]he court should consider the reliability of the information. Raw, unverified information should not be as readily

disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.* at 1051.

These considerations clearly militate against disclosure here. As Staley points out, the deposition testimony was taken before he was even made a party to the case, so his counsel never had the opportunity to cross-examine Doe about her claims. Staley Opp. (Dkt. 293) at 1. Indeed, a deposition of Doe by Staley's counsel had been scheduled at the time the case settled. *Id.* at 1-2. Thus, unsealing her deposition would leave Staley devoid of any opportunity to respond to any allegations contained therein.

The Times contends that "Staley is not an innocent third party who somehow finds himself caught up in a civil case in which he has no real interest in the outcome." Times Reply (Dkt. 294) at 5. This argument, however, ignores the fact that Doe never brought any claim against Staley and that Staley was only brought into the case via a third-party complaint filed by JPMorgan. Indeed, Doe's original complaint did not even identify Staley by name. The Times also argues that Staley's interest against public disclosure of untested allegations is not cognizable because, if it were, "no complaint ever filed in a civil case would be public" unless

subject to subsequent testing. Times Reply (Dkt. 294) at 5.[1] But any allegations in a complaint are, by their nature untested, and so will be taken as such by any reader. By contrast, untested deposition testimony is a much more serious matter with potentially more far-ranging consequences. And of course, such untested testimony will remain under seal only in the unusual instance, such as that here, where the matters discussed in the testimony are particularly sensitive. Finally, even if arguably Staley's professed interest were insufficient standing alone to preclude disclosure, his interest when combined with the interest of Doe provides more than adequate basis to keep the transcripts under seal.

B. Exhibits Attached to the Motion for Class Certification

With respect to the two exhibits filed with the motion for class certification, which do not involve Staley, Doe does not dispute their status as judicial documents given that the Court in fact ruled on the class certification motion. Doe Opp. (Dkt. 292) at 2. Nor does Doe dispute that a First Amendment right of access and/or the common law presumption of access attach. *Id.* Rather, Doe argues that her privacy interest in maintaining the secrecy of her identity warrants against disclosure. *Id.*

---

[1] Although the Times cites no authority to support this argument, there is some Second Circuit precent that is least arguably consistent with it. *See Bernstein*, 814 F.3d at 143.

While the Court agrees Doe has a privacy interest in connection with these transcripts, that interest is less expansive than that in sealing the summary judgment transcripts. Unlike the transcripts filed with the motions for summary judgment that contained lurid descriptions of Doe's alleged non-consensual sexual relations with Staley, the transcripts that were filed with the parties' class certification briefing contain much more mundane descriptions of Doe's recruitment by Epstein. There is much less concern, if any, about disclosing intimate details of traumatic events. Further, whereas the public interest in viewing the summary judgment transcripts is nothing more than "a morbid craving for that which is sensational and impure," *Amodeo II*, 71 F.3d at 1051, the public's interest in viewing the class certification transcripts extends to the reasonable desire to understand how Epstein's organization operated and recruited victims.

Ultimately, the Court agrees that Doe's interest in maintaining the secrecy of her identity overcomes the First Amendment and common-law presumption of access, but the Court also find that this interest does not require complete sealing of the excerpts. Rather, the Court finds that redactions are capable of preserving Doe's anonymity while still leaving sufficient relevant material so as not to be misleading. *See Amodeo I*, 44 F.3d at 147 (suggesting courts have power to "edit and redact a judicial

document in order to allow access to appropriate portions of the document").

Class counsel argues that "merely redacting Jane Doe 1's name is not sufficient to protect her identity or privacy interests" because "the [e]xcerpts contain intimate details about Jane Doe 1's life that are specific to her, and whose publication could reveal her identity to the public and to those who harmed her who she fears might retaliate against her." Doe Opp. (Dkt. 292) at 3. The Court agrees that it is appropriate to redact more than simply Doe's name from the transcripts, and that other information that might be used to identify her, such as the location where Doe lived, should also be redacted. Similarly, portions of the transcripts that could be used to identify other victims should be redacted as well. But that still leaves much non-identifying information that can be unsealed.

III. Conclusion

For the reasons set forth above, the Court grants in part and denies in part the Times' motion to unseal. Specifically, the motion to unseal the exhibits submitted with the summary judgment motions is denied, but the motion to unseal the exhibits submitted with the motion for class certification is granted subject to redactions to preserve the anonymity of Doe and other victims. Class counsel is directed to, within two weeks of the date of this

Opinion, submit for the Court's *in camera* review proposed redactions of the relevant class certification transcripts that are consistent with this Opinion.

    SO ORDERED.

New York, NY
July __39__ , 2024

                                        JED S. RAKOFF, U.S.D.J.