```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, <br><br> Plaintiff, <br><br> -v- <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant/Third-Party Plaintiff, <br><br> -v- <br><br> JAMES EDWARD STALEY, <br><br> Third-Party Defendant. | 22 Civ. 10904 (JSR) <br><br> OPINION & ORDER |

JED S. RAKOFF, U.S.D.J.:

Before the Court are the motions of non-parties The New York Times Company (the "Times") and Dow Jones and Company, Inc., publisher of the Wall Street Journal (the "Journal"), to unseal certain exhibits that were filed at the summary judgment stage of this litigation. The motions are now fully briefed. See ECF Nos. 370-380. For the reasons set forth below, the Court grants the motions as to the great majority of the documents sought, subject to certain limited redactions, but denies the motions as to a few documents specified below.

I.   Factual and Procedural Background

This case is one of many arising from the sex trafficking operation of Jeffrey Epstein. The Court assumes familiarity with the underlying allegations. See Doe 1 v. Deutsche Bank Aktiengesellschaft,

1

671 F. Supp. 3d 387, 396-400 (S.D.N.Y. 2023) (summarizing allegations in this and consolidated cases).

As relevant here, on July 24, 2023, plaintiff Government of the United States Virgin Islands (the "USVI") and defendant JPMorgan Chase Bank, N.A. ("JPMC") each moved for partial summary judgment. See ECF Nos. 217, 222. In support of its motion, the USVI filed a declaration and more than three hundred exhibits. See ECF No. 225 (declaration); ECF Nos. 225, 227, 230, 232-36 (exhibits). The USVI filed approximately 183 of its exhibits either under seal or with redactions. See ECF Nos. 237-45 (redacted exhibits). The USVI's motion was fully briefed on August 14, 2023, see ECF No. 278, and the Court held oral argument on August 31, 2023. While the USVI's motion was pending, the parties reached a settlement, and the USVI stipulated to the voluntary dismissal, with prejudice, of its claims against JPMC. See ECF Nos. 346 (stipulation), 348 (order approving stipulation).[1]

On February 27, 2024, the Times filed a motion to unseal, among other documents, certain excerpts of the transcript of the deposition that lead plaintiff Jane Doe 1 gave in this case and a consolidated case and that JPMC submitted as exhibits to its motion for partial summary judgment. See ECF No. 352. After considering briefing submitted

---

[1] In addition to the claims that the USVI brought against JPMC, this action encompassed third-party claims that JPMC brought against one of its former executives, third-party defendant James Edward Staley. See ECF No. 70. On August 18, 2023, the Court denied Staley's motion to dismiss JPMC's claims. See ECF No. 293. JPMC dismissed its claims against Staley, with prejudice, at the same time as the USVI dismissed its claims against JPMC. See ECF Nos. 347 (stipulation), 348 (order). JPMC's claims against Staley are not relevant to the instant motions.

by the Times and the parties, the Court issued an Opinion and Order on July 30, 2024, granting in part and denying in part the Times' motion. Doe 1 v. JP Morgan Chase Bank, N.A., 742 F. Supp. 3d 387, 399-400 (S.D.N.Y. 2024). The Court held, as a matter of first impression in the Second Circuit, that the exhibits constituted judicial documents and that the First Amendment right of public access to such documents applied to the exhibits because they were submitted in connection with JPMC's summary judgment motion, notwithstanding the fact that the case settled while that motion was pending. Id. at 393-97. However, the Court ultimately denied the Times' motion as to the deposition excerpts that JPMC submitted at summary judgment, because the Court found that the privacy interests of Doe and Staley warranted the continued sealing of the exhibits. Id. at 397-99.[2]

On August 14, 2025, Times reporter Matthew Goldstein wrote to the Court requesting the unsealing of "financial documents" that the USVI submitted in connection with its motion for partial summary judgment. See ECF No. 370. The Court solicited the parties' views on Goldstein's request and received briefing from the USVI, ECF No. 371, and JPMC, ECF No. 372. The Court also received the Times' reply to the parties'

---

[2] The Times also moved to unseal exhibits containing other excerpts from Doe's deposition that were submitted in connection with plaintiffs' motion for class certification. See ECF No. 356 at 2. The Court granted the Times' motion to unseal those exhibits because, in contrast to the excerpts submitted at summary judgment, they did not contain portions of Doe's deposition transcript that concerned descriptions of Doe's alleged non-consensual sexual relations. Doe 1, 742 F. Supp. 3d at 399-400.

submissions, ECF No. 373, as well as surreplies from JPMC, ECF No. 374, the USVI, ECF No. 375, and the Times, ECF No. 376.

While briefing on the Times' motion was in progress, the Journal contacted the Court and sought permission to file a motion for the unsealing of further exhibits attached to the USVI's motion for partial summary judgment. Unlike the Times, which sought the unsealing of only "financial records," the Journal also sought the unsealing of "other exhibits that are not financial records and are not at issue in the Times' motion." ECF No. 378 at 1. The Court authorized the Journal to file its motion and invited and received responses from the USVI, ECF No. 379, and JPMC, ECF No. 377. The Court also received a reply from the Journal. ECF No. 380. Briefing on the Journal's motion was complete on October 17, 2025. Thus, both the Times' and the Journals' motions are ripe for adjudication.

## II. Legal Standards

The Court set forth the legal standards governing public access to court documents in its Opinion and Order resolving the Times' previous motion for the unsealing of summary judgment exhibits in this case. See Doe 1, 742 F. Supp. 3d at 392-93. Subsequently, in a case involving another of Epstein's victims, the Second Circuit clarified those legal standards in an opinion that is consistent with this Court's approach. See Giuffre v. Maxwell, 146 F.4th 165 (2d Cir. 2025).

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment, and a slightly weaker form based in

4

federal common law." United States v. Am. Univ. of Beirut, 718 F. App'x 80, 81 (2d Cir. 2018) (summary order).[3] Both presumptions follow a three-step analysis, with their first step in common. That is, a court must initially determine "whether the [filings are] judicial document[s], as only judicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds." United States v. HSBC Bank USA, N.A., 863 F.3d 125, 134 (2d Cir. 2017). "To qualify as a judicial document[,] the materials at issue must be relevant to the performance of the judicial function and useful in the judicial process." Giuffre, 146 F.4th at 176. In Giuffre, the Second Circuit confirmed that exhibits filed at the summary judgment stage "are judicial documents to which a presumption of immediate public access attaches even before the motion has been decided." The Circuit also held that the determination of whether a document is or is not judicial "is a binary decision made as of the time of the document's filing." Id. at 176, 178. For that reason, "[a]ll that matters in identifying motion materials as judicial documents 'relevant to the performance of the judicial function' is that they 'would reasonably have the tendency to influence a district court's ruling on a motion,'" even if that motion is later mooted, including by settlement. Id. at 178 (quoting Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019)).

---

[3] Unless otherwise indicated, all quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation marks.

While this first step -- determining whether the documents at issue are judicial -- is the same under the First Amendment and the common law, the analysis bifurcates at the second and third steps. As to the First Amendment, judicial documents must satisfy one of two tests. Under one test, the right of public access applies to documents that "have historically been open to the press and general public" and where "public access [to those documents] plays a significant positive role in the functioning of the particular process in question." Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006). Alternatively, "[t]he second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." Id. If either test is satisfied, the First Amendment right of public access attaches, and, at the third step, continued "sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Id. at 124.

As to the common law, at the second step the court must determine the weight of the presumption of public access by assessing the role that the "material at issue [plays] in the exercise of the Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d. Cir. 1995). Then, at the third step, "after determining the weight of the presumption of access, the court must balance competing considerations against [disclosure]." Lugosch, 435 F.3d at 120.

6

Because the First Amendment right of access "is stronger and can only be overcome under more stringent circumstances than the common law presumption," United States v. Erie Cnty., 763 F.3d 235, 241 (2d Cir. 2014), a court "need not . . . engage in a common law analysis" when, at the second step, it finds that the First Amendment right attaches. Id.; see also In re Terrorist Attacks on September 11, 2001, No. 03 MDL 1570, 2020 WL 8611148, at *1 (S.D.N.Y. Oct. 2, 2020); Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 164 n.9 (2d Cir. 2013) ("Because in all cases where the First Amendment applies the common law right applies a fortiori, we need not address the common law right.").

III. Analysis

With this legal framework in mind, the Court turns to the Times' and the Journal's motions. Between them, the Times and the Journal request the unsealing of, or the removal of redactions contained in, 158 exhibits that the USVI filed in connection with its motion for partial summary judgment.[4] For convenience, the Court groups these exhibits into several categories and discusses each category in turn.[5]

---

[4] As the Court noted above, the Times moved for the unsealing of only "financial documents." See ECF No. 370. In briefing the Times' motion, the parties disputed what exhibits fall into this category. Because the Journal's motion is not limited to financial documents and because the Journal seeks the unsealing of all the documents whose unsealing the Times also sought, the Court need not decide what constitutes a financial document or which of the USVI's exhibits are such documents.

[5] The Court does not address the small number of exhibits that the Times requested to be unsealed but that are already available on the public docket. See ECF No. 372 at 1-2. Nor does the Court address the exhibits that the USVI identified as "pervaded by information identifying survivors of sexual assault" and thus "should remain sealed

A.  Unopposed Requests

Neither the USVI nor JPMC opposes the unsealing of a significant majority of the documents that the Times and the Journal have identified. As to these documents, however, all the parties agree that, because Epstein's victims have strong interests in their privacy, the victims' identifying information should remain sealed. See ECF No. 373 at 2 (Times); ECF No. 378 at 3 (Journal). There is also agreement that Federal Rule of Civil Procedure 5.2 requires certain personal identifying information to be redacted from all documents filed with the Court. See Fed. R. Civ. P. 5.2(a).

Accordingly, the Court hereby orders that Exhibits 4-5, 30-31, 34, 37, 43, 54-55, 57-60, 75, 77, 86, 88-92, 95, 103, 105-06, 108-09, 112, 121, 124-25, 128-29, 131, 137, 146, 151, 155, 162, 164, 170, 174, 177-80, 182, 184, 186-87, 190-202, 204-05, 208, 210, 211-16, 219-24, 229-31, 233, 235-38, 240-41, 244-46, 249, 251-52, 257-59, 261-63, 265-66, 270-72, and 275-76 to the USVI's summary judgment motion be unsealed, subject to the imposition or maintenance of any redactions necessary to comply with Rule 5.2 and/or to protect victims' identities and other personal identifying information.

B.  Non-Party Documents

Thirteen of the exhibits as to which unsealing is sought were produced in this litigation by individuals or entities other than the

---

in their entirety or to the full extent to which they currently are sealed," ECF No. 371 at 2, because neither the Times nor the Journal now contends that such documents should be unsealed, see ECF No. 379.

USVI and JPMC. JPMC takes no position as to the unsealing of any of these "non-party documents," other than that any documents to be unsealed should be redacted as necessary to comply with Rule 5.2 and/or to protect victims' identities and other personal identifying information. See ECF No. 377 at 1 n.3. For its part, the USVI does not object to the unsealing of any of these documents, subject to the aforesaid redactions. See ECF No. 371 at 2-3; ECF No. 379.

The Court has carefully reviewed each of the non-party documents. At the first step of the analysis, the Court concludes that they are all judicial documents because they were submitted in support of the USVI's summary judgment motion. See Giuffre, 146 F.4th at 176. At the second step, the Court concludes that they are subject to the First Amendment right of public access because that right is "derived from or a necessary corollary of the capacity to attend the relevant proceedings," Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004), and "access to written documents filed in connection with" summary judgment motions "is particularly important" because such motions are "an alternative to a resolution at trial," Doe 1, 742 F. Supp. 3d at 397.[6]

The Court has then considered whether the continued sealing of any of the non-party documents "is necessary to preserve higher values and is narrowly tailored to achieve that aim." Id. (quoting Lugosch,

---

[6] Because the Court holds that the First Amendment right of public access attaches to these exhibits, it need not consider whether there is also a common-law right of public access to them.

435 F.3d at 124). Based on the Court's individualized review of these documents, which contain such materials as probate claims against Epstein's estate and correspondence involving Epstein, JPMC, and agencies of the USVI, the Court concludes that there are no countervailing interests that merit continued sealing of any of them.

As with the previous category of exhibits, however, several of these non-party documents contain information that must be, or must remain, redacted. In the case of Exhibits 17, 142, and 239, all redactions presently contained in those documents are necessary to comply with Rule 5.2 or to protect victims' identities and other personal identifying information. Accordingly, the Court hereby denies the motions to unseal as to those three documents. The Court hereby orders that Exhibits 181, 188-89, 217-18, 264, 267-68, 293, and 300 be unsealed, subject to the imposition or maintenance of any redactions necessary to comply with Rule 5.2 and/or to protect victims' identities and other personal identifying information.

C. Contested Exhibits

There are eighteen exhibits as to which the Times and/or the Journal seek unsealing but as to which JPMC objects on the basis that they "contain personal and financial information related to JPMC customers or other third parties that are irrelevant to" this case. ECF No. 380 at 2-3.[7] The USVI does not object to the unsealing of any

---

[7] JPMC represents that there are seventeen, rather than eighteen, such exhibits. Id. Nevertheless, it also requests that one line in an eighteenth exhibit be redacted. See id. at 4 n.6.

10

of these exhibits, subject to the redaction of any information identifying Epstein's victims. See ECF No. 379.

As with the non-party documents, the Court has carefully reviewed each of these contested exhibits. For the same reasons as just stated, the Court concludes that they are judicial documents to which the First Amendment right of public access attaches. The question before the Court, then, is whether narrowly tailored sealing or redaction of these exhibits is necessary to preserve higher values. See Lugosch, 435 F.3d at 124.

As JPMC points out, many of the contested exhibits contain information about its clients or prospective clients other than Epstein. For instance, several exhibits contain internal JPMC correspondence concerning individuals and entities whose activities could pose various forms of financial and/or reputational risk to JPMC. Such individuals and entities, whose conduct was not at all at issue in this litigation, have substantial privacy interests that, as the Second Circuit has directed, "should weigh heavily" in a court's assessment of countervailing factors to the right of public access. Cf. Amodeo, 71 F.3d at 1050-51. In assessing such privacy interests, courts primarily "consider the degree to which the subject matter is traditionally considered private rather than public." Doe 1, 742 F. Supp. 3d at 397.

Having individually assessed the contested documents that contain information about other JPMC clients, the Court concludes that the continued sealing or redaction of such information is justified. The

11

privacy interests of the individuals and entities whose sensitive personal and financial affairs are discussed therein are "higher values" that merit protection. See Lugosch, 435 F.3d at 124. Accordingly, the Court hereby denies the motions to unseal as to Exhibits 93, 98, 168, 185, 256, and 301. As to Exhibits 85, 167, 203, and 228, each of which was filed under seal, the Court hereby orders JPMC to submit to the Court by no later than October 30, 2025, proposed redactions to protect the privacy interests of individuals and entities that are unrelated to this litigation.

Exhibits 123 and 133 contain an excerpt from a deposition transcript and an associated exhibit. These documents contain limited redactions to the name and email address of an individual who was unaffiliated with JPMC. Although the individual has a substantial privacy interest in his or her email address, as the Journal concedes, see ECF No. 380 at 2, he or she does not have such an interest in the fact that he or she corresponded with a JPMC executive about Epstein. Accordingly, the Court hereby orders that the redactions contained in Exhibits 123 and 133 be lifted, except for the email address in Exhibit 133, which is to remain redacted.

Exhibit 130, an email exchange among JPMC executives, contains two redactions designed to protect the identity of an individual who is identified in the exhibit as gay. The Journal acknowledges that "the sexual orientation of someone with no connection to Epstein [] may be redacted." ECF No. 380 at 2. Accordingly, and because this individual has a substantial privacy interest in the disclosure of his

12

or her sexual orientation, the Court denies the motions to unseal as to Exhibit 130.

Exhibit 173 contains redactions to the identity of one of Epstein's victims and to the email address (but not the name) of an individual who was unaffiliated with JPMC. The Court concludes that the privacy interests of the victim in her identity and of the other individual in his or her email address warrant continued redaction, and, accordingly, the Court denies the motions to unseal as to Exhibit 173.

Exhibit 175 is a sprawling spreadsheet that contains a single reference, at line 251, to a photograph that a JPMC executive and Epstein discussed in the email chain that is contained in Exhibit 302. The photograph is reproduced both in Exhibit 302, where it appears in black and white, and in Exhibit 303, where it appears in color. Appearing in the photograph, which in both its incarnations is very blurry, are two individuals of minor age whose identities are irrelevant to this litigation. The privacy interests of these minors clearly warrant continued protection, but the same is not true of either the bulk of the email exchange contained in Exhibit 302 or the bulk of the description of that email exchange contained in Exhibit 251. Accordingly, the Court hereby orders JPMC to submit to the Court by no later than October 30, 2025, proposed redactions to Exhibits 175 and 302 that are narrowly tailored to protect the privacy interests of the minors appearing in the photograph. The Court denies the motions to unseal as to Exhibit 303.

Finally, Exhibit 269 contains an email exchange in which a JPMC executive and an individual whose identity is irrelevant to this litigation discuss the individual's and the individual's family's financial situation. In the earliest email in the chain, the individual asks the JPMC executive whether certain details regarding the individual's finances "might help in lining up a meeting with Epstein." Because personal finances and family affairs are "traditionally considered private," Doe, 742 F. Supp. 3d at 397, this individual has substantial privacy interests in his or her identity and in his or her personal and family finances. The individual does not have such an interest, however, in the entirety of his or her correspondence with the JPMC executive in which the individual sought a connection with Epstein. Accordingly, the Court hereby orders JPMC to submit to the Court by no later than October 30, 2025, proposed redactions to Exhibit 269 that are narrowly tailored to protect the individual's privacy interests.

D.   Exhibits Implicating Bank Secrecy Act

JPMC objects to the unsealing of another eighteen exhibits -- Exhibits 2-3, 9, 36, 50-52, 56, 71, 78, 80-82, 87, 99, 158-59, and 274 -- on the basis that these documents "contain[] information statutorily protected from disclosure" under the Bank Secrecy Act, Pub. L. 91-508 (1970), and its implementing regulations. See ECF No. 374 at 1-2; ECF No. 377 at 4-5.[8] JPMC requests that, before ruling on

---

[8] JPMC states that the Journal is also seeking the unsealing of Exhibit 27 and objects to the unsealing of that exhibit on the same grounds.

14

these exhibits, the Court solicit the views of the federal regulators responsible for administering the Bank Secrecy Act and its regulations. See ECF No. 374 at 1; ECF No. 377 at 5.

The Court is unpersuaded. As the Times and the Journal argue, the confidentiality obligations that the Bank Secrecy Act imposes on regulated financial institutions are distinct from the right of access to judicial documents. See ECF No. 376 at 1-3 (Times); ECF No. 380 at 2 (Journal). Moreover, the confidentiality order on which JPMC speculates that the regulators relied, see ECF No. 377 at 5, announced that "[t]he Court retains unfettered discretion whether or not to afford confidential treatment to any Confidential Document or information contained in any Confidential Document submitted to the Court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court," ECF No. 15 ¶ 10, and also noted that "[a]ll persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial," id. See In re September 11 Litig., 723 F. Supp. 2d 526, 531 (S.D.N.Y. 2010) ("[A] party may not fully rely on a sealing order that is, on its face, 'temporary or limited,' or otherwise conditional."). Accordingly, the Court hereby orders that Exhibits 2-3, 36, 50-52, 71, 78, 80-82, 87, 99, and 158-59 be unsealed, subject to the imposition or maintenance of any redactions necessary to comply with Rule 5.2

---

ECF No. 380 at 4. However, the Journal's list of exhibits as to which it seeks unsealing does not mention Exhibit 27. See ECF No. 278 at 5.

15

and/or to protect victims' identities and other personal identifying information.

The remaining three exhibits in this category -- Exhibits 9, 56, and 274 -- also contain certain redactions concerning matters that fall outside the scope of the Bank Secrecy Act. Accordingly, the Court has considered, under the legal standards discussed above, whether the redactions that are unrelated to the Bank Secrecy Act are justified. As above, the Court again concludes that each of these exhibits is a judicial document to which the First Amendment right of public access attaches. Because each of these exhibits contains some redactions related to the Bank Secrecy Act, which must be lifted, and other redactions to the identities of Epstein's victims and/or other personal identifying information, which must remain, the Court hereby orders JPMC to submit to the Court by no later than October 30, 2025, proposed redactions that are narrowly tailored to protect victims' identities and other personal identifying information.

IV. Conclusion

For the reasons set forth above, subject to the imposition or maintenance of any redactions necessary to comply with Rule 5.2 and/or to protect victims' identities or other personal identifying information, and subject to any other limitations set forth above, the Court hereby grants the motions to unseal as to Exhibits 2-5, 30-31, 34, 36-37, 43, 50-52, 54-55, 57-60, 71, 75, 77-78, 80-82, 86-92, 95, 99, 103, 105-06, 108-09, 112, 121, 123-25, 128-29, 131, 133, 137, 146, 151, 155, 158-59, 162, 164, 170, 174, 177-81, 182, 184, 186-202, 204-

16

05, 208, 210, 211-24, 229-31, 233, 235-41, 244-46, 249, 251-52, 257-59, 261-64, 265-68, 270-72, 275-76, 293, and 300. Either the USVI or JPMC must supply copies of these exhibits, as so redacted, to the Times and the Journal by no later than October 30, 2025.[9] As to Exhibits 9, 56, 85, 167, 175, 203, 228, 269, 274, and 302, the Court orders JPMC to submit to the Court by no later than October 30, 2025, proposed redactions consistent with the Court's directions related to these exhibits. The Court otherwise denies the motions to unseal.

The Clerk of Court is respectfully directed to close the motions at docket numbers 370 and 378.

SO ORDERED.

New York, New York
October 24, 2025

JED S. RAKOFF, U.S.D.J.

---

[9] The Court notes JPMC's proposal, in its initial response to the Times' motion, that the Times be required to pay fees and costs associated with any further redactions that the Court might order. See ECF No. 372 at 2. JPMC did not cite any authority for its proposal, and, notably, JPMC did not repeat the proposal in any of its subsequent submissions to the Court. See ECF Nos. 374, 377. The Court declines to impose the costs of compliance with the First Amendment on either of the media organizations before it.

17